UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
Nicole BROECKER,
et al,


        Plaintiffs,

      - against -

New York City Department of Education,
City of New York, Meisha Porter, in her
official and individual capacities, United
Federation of Teachers, Local 2, American
Federation of Teachers, AFL-CIO, Michael
Mulgrew, in his official and individual
capacities, John Doe #1-10, in their
official and individual capacities, and
Jane Doe #1-10 in their official and
individual capacities,


        Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**
21-CV-6387 (KAM)(RLM)

**MATSUMOTO, United States District Judge:**

      The 83 named Plaintiffs are individuals (collectively "Plaintiffs") who have not received at least a first dose of a COVID-19 vaccine and are employees at schools operated by the New York City Department of Education ("NYC DOE").[1] Named Defendants are the NYC DOE, the City of New York, Meisha Porter, the Chancellor of the NYC DOE, the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"), and Michael Mulgrew, President of the UFT (collectively

---

[1] Named Plaintiffs include a tenured principal, an assistant principal, tenured teachers, paraprofessionals, an education administrator, a speech language pathologist, a social worker, a parent coordinator, a guidance counselor, a school counselor, and a secretary. (ECF No. 1, Compl., at pp. 14-15.)

"Defendants").  Defendants NYC DOE and the City of New York are
entities responsible for enacting and enforcing a COVID-19
vaccination mandate (the "Vaccination Mandate") issued on August
24, 2021, requiring that all NYC DOE employees receive at least a
first dose of a COVID-19 vaccination by September 27, 2021, in
order to work at NYC DOE schools.  Defendant UFT is a labor
organization through which certain named Plaintiffs are covered
by a collective bargaining agreement ("CBA") with the NYC DOE.

Plaintiffs allege three categories of claims in their
Complaint. First, they allege that the Order violates their right
to procedural due process under the Due Process Clause of the
Fourteenth Amendment because Plaintiffs have a property interest
in their pay.  (ECF No. 2-10, Pl. Mem., at p. 1.)  Second,
Plaintiffs allege that the Vaccine Mandate violates their
statutory and contractual rights, as Plaintiffs have a right to
have charges proffered against them and have a hearing before
"discipline" is imposed pursuant to N.Y. Education Law § 3020-1,
or N.Y. Civil Service Law § 75, or the applicable CBA.  (ECF No.
2-10, Pl. Mem., at pp. 1-2.)  Third, Plaintiffs allege collusion
and aiding and abetting under 42 U.S.C. § 1983 against the UFT,
Mulgrew, Porter, and unnamed Jane and John Doe Defendants.  (ECF
No. 1, Compl. pp. 23-28.)

Plaintiffs seek a preliminary injunction to enjoin and
restrain (1) the Defendants from withholding pay from any and all

2

tenured principals, assistant principals, and teachers who have failed to take a COVID-19 vaccine; (2) the Defendants from withholding pay from any and all civil service employees entitled to N.Y. Civil Service Law § 75 rights who have failed to take a COVID-19 vaccine; (3) the Defendants from withholding pay from any and all employees of the NYC DOE who have failed to take a COVID-19 vaccine and who, as a term of their union's collective bargaining agreement with the NYC DOE, allegedly cannot be terminated or disciplined without a hearing; (4) the NYC DOE from disciplining, including but not limited to terminating, tenured principals, assistant principals, and teachers who have failed to take a COVID-19 vaccine without proffering charges and specifications and granting the tenured employees a hearing on the charges; (5) the NYC DOE from disciplining, including but not limited to terminating, any and all civil service employees entitled to N.Y. Civil Service Law § 75 rights who have failed to take a COVID-19 vaccine, without proffering charges and specifications; and, (6) the NYC DOE from disciplining, including but not limited to terminating any and all employees of the NYC DOE who have failed to take a COVID-19 vaccine and who, as a term of their union's collective bargaining agreement with the NYC DOE, allegedly cannot be terminated or disciplined without proffering charges and specifications and a hearing. (ECF No. 2, Pl. Proposed Order to Show Cause, at pp. 2-4.)

For the reasons stated below, Plaintiffs' motion for injunctive relief is DENIED.

**BACKGROUND**

## I. Factual Background

The COVID-19 pandemic and its devastating, lasting effects on society are well known.  The City of New York has enacted a series of COVID-19 related safety mandates and protocols as part of the City's effort to slow and contain the spread of the novel coronavirus.  On August 24, 2021, prior to the commencement of the New York City school year, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), issued an order requiring all NYC DOE employees to show proof of compliance with the Vaccine Mandate, meaning receipt of at least one dose of vaccination against COVID-19 by September 27, 2021.  (*See* ECF No. 18, Def. NYC DOE Mem. in Opp. at p. 1.)

On September 10, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the Vaccination Mandate.  (*See* ECF No. 19-1, O'Connor Decl., Ex. A (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the UFT (hereafter "Impact Arbitration Award"), at 4).)

Following expedited mediation and discussions between the NYC DOE, the City of New York, and the UFT, the appointed arbitrator, on September 10, 2021, the arbitrator issued a binding arbitration decision ("Impact Arbitration Award"), which established in relevant part (1) a processes for religious and medical exemptions and accommodation requests, namely, processes for staff to apply for, and appeal from adverse determinations for medical and religious accommodations to an independent arbitration panel (and the ability to remain on the DOE payroll and continued medical benefits coverage while such applications and appeals are pending); (2) options to voluntarily separate from DOE service with certain compensation benefits, or to elect for an extended non-disciplinary leave without pay ("LWOP"), all while maintaining health benefits until September 5, 2022; and (3) that as of December 1, 2021, the DOE may seek to unilaterally separate employees who have not complied with the Vaccination Mandate, or who have not obtained an approved exemption or accommodation and have not opted for either separation option. (*See* ECF No. 19-1, Impact Arbitration Award at pp. 6-18; ECF No. 18, Def. NYC DOE Opp. Mem. at p. 5; ECF No. 20, Def. UFT Opp. Mem., at p. 3.)  The Impact Arbitration Award further provides that employees extending their LWOP period to September 5, 2022, may return immediately to their positions at NYC DOE schools upon demonstrating compliance with the Vaccination Mandate.  (*Id*.)  As

to separation of service, the Impact Arbitration Award restricted the NYC DOE from seeking to separate DOE employees on LWOP due to non-compliance with the Vaccination Mandate, prior to December 1, 2021. (*See* ECF No. 19-1, Impact Arbitration Award at pp. 16-18.) Under the terms of the Impact Arbitration Award, on December 1, 2021, the separation restriction on the NYC DOE will be lifted, and the NYC DOE is authorized as of that date to seek the termination of noncompliant employees through existing procedures. (ECF No. 19-1, Impact Arbitration Award at pp. 17-18; ECF No. 18, Def. NYC DOE Opp. Mem. at p. 5; ECF No. 20, Def. UFT Opp. Mem., at p. 3.) Finally, and importantly, the Impact Arbitration Award states that the processes contained in the text of the Impact Arbitration Award for NYC DOE employees challenging the Vaccination Mandate or seeking exemptions,

> [S]hall constitute the exclusive and complete administrative processes for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

(ECF No. 19-1, Impact Arbitration Award at p. 13.) The UFT-specific Impact Arbitration Award covers the majority, but not

all, of named Plaintiffs.  (ECF No. 18, Def. NYC DOE Opp. Mem. at
p. 6.)  The UFT notified its members of the Impact Arbitration
Award on September 10, 2021, by circulating the Award and a
"plain-language" explanation to UFT members.  (ECF No. 20, Def.
UFT Opp. Mem. at p. 13.)

        Following the issuance of the September 10, 2021,
Impact Arbitration Award, the City's Office of Labor Relations
engaged in impact bargaining with the remaining unions
representing NYC DOE employees, including the Council of
Supervisors and Administrators ("CSA"), which represents NYC DOE
principals and assistant principals, and District Council 37 ("DC
37"), which represents many school-based employees such as school
aides, school food workers and Parent Coordinators.  (*Id.*;
O'Connor Decl. at Ex. B, September 15, 2021, Arbitration Award
Decision in Board of Education of the City School District of the
City of New York and the CSA.)  On September 15, 2021, an
arbitration decision in the matter of the City and the CSA was
issued that mirrored the Impact Arbitration Award, and on October
3, 2021, the City and the DC 37 reached an agreement that also
mirrors the Impact Arbitration Award.  (O'Connor Decl. at C,
Memorandum of Agreement DC 37, City of New York, and the Board of
Education of the City School District for the City of New York,

dated October 3, 2021.)[2]  This, all parties were subject to similar terms regarding the Vaccine Mandate procedures.

Plaintiffs were notified on October 2, 2021, that lack of compliance with the Vaccination Mandate would result in placement on LWOP as of October 4, 2021, and that NYC DOE would seek to separate noncompliant employees as of December 1, 2021 if they did not opt to extend their LWOP status and remained out of compliance with the Vaccination Mandate.  (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

Plaintiffs filed the Complaint in this action on November 17, 2021, 51 days after the September 27, 2021, deadline for demonstrating compliance with the Vaccine Mandate, and 44 days after the October 4, 2021.  (ECF No. 1, Compl.)  As of the date of Defendants' responses on November 19, 2021, seven of the named Plaintiffs had availed themselves of the accommodation request process, and decisions under the Impact Arbitration Award have been issued in connection with accommodation requests (unless withdrawn), made by Plaintiffs Porcello (who withdrew her request), Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos. (ECF No. 19-6, Ex. F.)  Plaintiffs' counsel represented to the

_____

[2] Though not all named Plaintiffs are members of the UFT, Plaintiffs have only named the UFT as a Defendant. The Court will restrict its analysis to the specific claims brought against the UFT, though the Court will incorporate into its discussion *infra* that the Impact Arbitration Award reached between the UFT and the Board of Education of the City School District for the City of New York "mirrors" the agreements reached between the Board of Education of the City School District for the City of New York and the CSA and DC 37.

Court during the November 23, 2021, show cause hearing that to date, no other Plaintiffs have availed themselves of the processes for seeking accommodations, and no Plaintiffs have received a COVID-19 vaccination.

## II. Procedural Background

Though unrelated to the proceedings currently before the Court, the instant action is part of a larger body of litigation related to COVID-19 vaccine mandates in New York. Specifically, the NYC DOE's Vaccination Mandate has been the subject of several legal challenges, unsuccessful thus far, brought in state and federal courts by plaintiffs seeking to enjoin the enforcement of the Vaccination Mandate. *See, e.g.*, *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021) (injunction denied) *aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021); *Kane v. de Blasio*, No. 21-CV-7863 (VEC) (injunction denied), 2021 WL 5037401 (S.D.N.Y. Oct. 12, 2021); *Keil v. The City of New York, et al.*, 21-cv-8773 (S.D.N.Y.)(VEC) (injunction denied); *New York City Municipal Labor Comm. ("MLC"), et al. v. City of New York, et al.*, Index No. 158368/2021 (Sup. Ct. N.Y. Cnty. Sep. 2021) (injunction denied). The courts in *Maniscalco*, *Kane*, *Keil*, and *MLC*, denied the plaintiffs' motions for temporary restraining orders and/or preliminary injunctions finding, in relevant part, a lack of likelihood of success on the merits. *See id*. The

Second Circuit also recently upheld a New York State vaccine mandate in the context of healthcare employees. *See We The Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983 (2d Cir. Nov. 4, 2021), *opinion clarified*, No. 21-2179, 2021 WL 5276624 (2d Cir. Nov. 12, 2021). It is against this backdrop of recent caselaw that Plaintiffs have chosen to file their Complaint, forty-four days after Plaintiffs' placement on LWOP status. (ECF No. 2, Pl. Emergency Mot.).

Plaintiffs filed their class action Complaint, on their own behalf and on behalf of all persons similarly situated, on November 17, 2021. (ECF No. 1, Compl., at ¶¶ 100-102.) On the same date, Plaintiffs filed an Emergency Motion for Preliminary Injunction and Temporary Restraining Order. (ECF No. 2, Pl. Motion for Preliminary Injunction and Temporary Restraining Order ("PI/TRO").) The Court, also on November 17, 2021, issued an Order to Show Cause, ordering: (1) personal service on all named Defendants to be made on or before 9:30 am, Thursday, November 18, 2021; (2) Defendants to respond to the Order to Show Cause via ECF by Friday, November 19, 2021, at 3:00 pm; and, (3) counsel for the named Plaintiffs and Defendants to appear for a hearing before the Court, with their clients with the opportunity to present testimony, on Tuesday, November 23, 2021, at 12:00 pm. (ECF No. 11, Nov. 17, 2021, Order to Show Cause ("OSC").)

All named Defendants filed papers in opposition to
Plaintiffs' motion for injunctive relief on November 19, 2021.
Defendants NYC DOE and Ms. Porter filed a memorandum of law in
opposition, the Declaration of Andrea O'Connor ("O'Connor
Decl."), and attached exhibits.  (ECF No. 18, Def. NYC DOE Opp.
Mem.; ECF No. 19, O'Connor Decl.)  Defendant UFT filed a
memorandum of law in opposition, the Declaration of Alan M.
Klinger ("Klinger Decl."), the Declaration of Beth Norton
("Norton Decl."), and attached exhibits.  (ECF No. 20, Def. UFT
Opp. Mem.; ECF No. 21, Klinger Decl.; ECF No. 22, Norton Decl.)

The parties appeared before the Court on November 23,
2021, for a show cause hearing. During the show cause hearing,
all parties requested supplemental briefing as to the specific
issue of due process surrounding the forthcoming separation of
nonexempt, unvaccinated Plaintiffs by the NYC DOE on and after
December 1, 2021.  Specifically, the parties requested further
briefing to address whether a vaccination requirement constitutes
a legitimate condition of employment, and what, if any, due
process requirements are implicated.  Given the parties' request,
the Court will limit its analysis and decision as to the
processes and procedures currently in the record governing the

Plaintiffs' current LWOP period *prior* to separation, from October 4, 2021, up to and including November 30, 2021.[3]

### LEGAL STANDARD

The party seeking the preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted).

Here, the traditional preliminary injunction analysis is complicated by three distinctions given the nature of the relief Plaintiffs seek. First, Plaintiffs seek a mandatory injunction against a government action taken in the public interest, and so must show both irreparable harm and a likelihood of success on the merits. *See Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 573-74 (2d Cir. 2002) ("In order to merit preliminary injunctive relief against 'government action taken in the public interest pursuant to a statutory or

---

[3] Plaintiffs sought expedited relief, and submitted matters for the Court's expedited consideration. (ECF No. 2, Pl. Emergency Mot.) Accordingly, the Court allowed Defendants to respond on an expedited basis. During the November 23, 2021, show cause hearing, the Court advised the parties it would decide the instant application for injunctive relief based on the parties' filings as of the date of the hearing, November 23, 2021. Consequently, Plaintiffs' belated submission (ECF No. 28) and Defendants' response (ECF No. 29) will not be entertained by this Court as part of this decision. In any event, even if the Court were to consider the belated submissions, the contents of the submissions would not impact the decision of the Court.

regulatory scheme,' a plaintiff must show 'irreparable harm in the absence of an injunction *and* a likelihood of success on the merits.'") (internal citation omitted) (emphasis added).

Second, Plaintiffs allege constitutional violations, and "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Maniscalco*, 2021 WL 4344267, at *2 (citing *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)). As Plaintiffs allege that their procedural due process rights have been violated, "no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984), and the Court will focus its analysis on the other factors for establishing an entitlement to injunctive relief.

Third and finally, parties seeking injunctive relief are required to meet the higher standard of a mandatory injunction where, as here, (1) the injunctive relief sought would alter, rather than maintain the status quo or (2) the injunction would grant the movant substantially all the relief sought, which relief could not be undone even if defendants would prevail on the merits. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, *33-34 (2d Cir. 1995). Here, Plaintiffs are seeking, in relevant part, to be restored to NYC DOE payroll, after having been placed on LWOP well over a month ago, for their failure to

comply with the Vaccination Mandate.  Accordingly, Plaintiffs
must meet the higher standard for a mandatory injunction, and
must show a "clear" or "substantial" likelihood of success on the
merits.  *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d
27 (2d Cir. 1995); *Doninger v. Niehoff*, 527 F.3d 41, *47 (2d Cir.
2008).

## DISCUSSION[4]

As a threshold matter, the Court notes that Plaintiffs
failed completely in their papers to address the existence and
effect of the Impact Arbitration Award reached between the UFT,
the Council of Supervisors and Administrators, and District
Counsel 37, which provides critical context for evaluating the
Plaintiffs' request for preliminary injunction.  The Court will
consider and incorporate the September 10, 2021, Impact
Arbitration Award, raised by Defendants, into its analysis.

## I.  Preliminary Injunction

### A. Likelihood of Success on the Merits

Plaintiffs failed, in their motion papers and at oral
argument during the November 23, 2021 show cause hearing, to
establish a "clear" or "substantial" likelihood of success on the

---

[4] Plaintiffs' only potential reference to their Section 1983 claims regarding
collusion and aiding and abetting in their memorandum of law is as follows:
"the Plaintiffs have a high likelihood of success on the merits of their 42
U.S.C. 1983 causes of action [] and therefore should be granted the relief
they request." (ECF No. 2-10, Pl. Mem., pp. 13, 18.) Plaintiffs do not cite to
any case law in support of this argument, and the Court will not address these
allegations as part of its preliminary injunction analysis.

merits on any of their claims. *See Tom Doherty Assocs.*, 60 F.3d 27 (2d Cir. 1995); *Doninger*, 527 F.3d at *47 (2d Cir. 2008).

First, it is dubious whether Plaintiffs have standing to challenge the terms of the Impact Arbitration Award, and similar awards and agreements, because their respective union representatives engaged on their behalf with the NYC DOE, which process resulted in the arbitration awards and agreement. *See Fleischer v. Barnard Coll.*, No. 20-4213, 2021 WL 5365581, at *4, n. 1 (2d Cir. Nov. 18, 2021) (because a union represented the adjunct professor plaintiff in the arbitration against the defendant, her employer college, plaintiff did not have standing to challenge the arbitration proceeding directly under the Federal Arbitration Act; she could only challenge the arbitration through her claim against the union for breach of its duty of fair representation.) (citing *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) ("[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.")). Plaintiffs have brought this action principally challenging their placement on LWOP, and the possibility of their separation from employment by the NYC DOE on or after December 1, 2021, both of which were the result of legitimate arbitrations between the City and the various unions representing the various categories of Plaintiffs. As Defendant

15

UFT correctly argues, and as counsel for Defendant UFT and
Defendant NYC DOE represented during the November 23, 2021, show
cause hearing, Plaintiffs' claims fail to account for the fact
that the binding arbitration award has become part of the
collective bargaining agreement.  (ECF No. 20, Def. UFT Opp.
Mem., at p. 4.)  Defendants' counsel confirmed to the Court
during the November 23, 2021, show cause hearing that the
arbitration between the UFT and the Board of Education of the
City School District for the City of New York was a binding
arbitration process, and that the resulting Impact Arbitration
Award altered the contractual terms of the CBA.  Accordingly,
Plaintiffs who are members of the UFT (and presumably the CSA and
DC 37) have been placed on LWOP consistent with their CBAs and
the incorporated arbitration awards.  (ECF No. 20, Def. UFT Opp.
Mem., at p. 4.)

It is undisputed that Plaintiffs were not a party to
the arbitration and negotiations that resulted in the Impact
Arbitration Award and accordingly, their standing to challenge
the Award is in doubt.  Even assuming that Plaintiffs do have
standing and can appropriately challenge the terms of the Impact
Arbitration Award which enables the NYC DOE to seek their
separation from employment as of December 1, 2021, Plaintiffs
still have not established a clear or substantial likelihood of
success on the merits on their claims.

The NYC DOE, in compliance with the Vaccination Mandate and for compelling public health reasons, cannot permit noncompliant, unvaccinated employees, absent exemption or accommodation, to work at NYC DOE schools, and the NYC DOE has acted pursuant to the terms of the Impact Arbitration Award for placing noncompliant, nonexempt employees on LWOP.[5]  The Impact Arbitration Award clearly explains the "exclusive" processes established for exemptions and accommodation requests and the appeals process. (ECF No. 19-1, Impact Arbitration Award, at pp. 6-13.)  The Impact Arbitration Award also clearly provides the procedures for leave, including procedures for extending LWOP, returning from LWOP, and a section on pregnancy and parental leave.  (*Id*. at pp. 13-16.)  Finally, the Impact Arbitration Award describes the options for separation, including on the part of the employee as well as on the part of the NYC DOE.  (*Id*. at pp. 16-18.)  Thus, the Impact Arbitration Award provides adequate processes for pre-deprivation notice and hearing.

_____

[5] The NYC DOE argued in its papers and at the November 23, 2021, show cause hearing that employees separated under the terms of the Vaccination Mandate, and under the express terms of the Impact Arbitration Award, are not being "disciplined," but are being terminated based on their ineligibility for employment.  *See e.g. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing *O'Connor v. Board of Education*, 48 A.D.3d 1254 (4th Dept. 2008) *lv. denied* 10 N.Y.3d 928 (2008) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).  As noted *supra*, the parties have requested, and the Court has granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation are being "disciplined" or subject to a legitimate condition of employment, and thus the Court will not reach that issue here.

Plaintiffs will be afforded the processes required by the applicable CBA and the Impact Arbitration Award when and if the NYC DOE seeks separation, undermining Plaintiffs' arguments that they will be terminated in violation of their constitutional right to due process without a post-deprivation hearing. The Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) (property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (internal citations omitted).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Having found that Plaintiffs have a protected property interest in their continued employment, the Court next looks to whether the process they have been afforded upon LWOP placement and upon separation is constitutionally adequate. To determine whether process is adequate, the Court looks to "[f]ederal constitutional

18

standards rather than state statutes [to] define the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987).

Based on the record before the Court, the Court considers that both the pre-deprivation and post-deprivation processes currently afforded to Plaintiffs were and are constitutionally adequate. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 547 n. 12, 105 S.Ct. 1487 (1985) ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."). The pre-deprivation and post-deprivation proceedings articulated in the Impact Arbitration Award have been incorporated into the Plaintiffs' collective bargaining agreements. (*See* ECF No. 20, Def. UFT Opp. Mem. at p. 4.) Pre-deprivation processes "need not be elaborate[,]" and the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (citing *Loudermill*, 470 U.S. at 545-546, 105 S.Ct. 1487). Plaintiffs received ample notice of (1) the Vaccination Mandate, (2) their ability to seek religious and medical exemptions and appeals, (3) their placement on LWOP if they continued to be noncompliant with the terms of the Vaccination Mandate, and (4) their options and opportunity to respond. The widely publicized Vaccination Mandate was implemented on August 24, 2021. In the

case of the Plaintiffs with UFT membership, these Plaintiffs have had notice of the LWOP and potential separation processes and procedures since September 10, 2021, the date of the issuance of the Impact Arbitration Award. (ECF No. 20, Def. UFT Opp. Mem. at p. 13.) Similarly, the CSA member employees had notice as of September 15, 2021, and DC 37 member employees had notice as of October 3, 2021. (ECF No. 18, Def. NYC DOE Opp. Mem. at p. 7.) Plaintiffs were then also notified on October 2, 2021, that if they were not in compliance with the Vaccination Mandate, they would be placed on LWOP as of October 4, 2021, and that NYC DOE would seek to separate them as of December 1, 2021, if they did not comply with the vaccine mandate or extend their LWOP status. (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). Though Plaintiffs note that the UFT was not accepting grievances related to the Vaccination Mandate, the UFT advised members inquiring about grievances that procedures regarding unvaccinated employees were governed by the binding Impact Arbitration Award which altered their CBA, which was circulated to UFT members "along with plain-language guidance of the Award's terms[.]" (ECF No. 20, Def. UFT Opp. Mem. at p. 13).

20

The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (noting that "CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process." (internal citations omitted); *see also Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (noting that guaranteed procedural rights could be satisfied by the pre-deprivation notice and hearing rights provided in the collective bargaining agreement grievance procedures) (citing *Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir.1987) (Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process).

Further, the Impact Arbitration Award provides for an expedited review process for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging their placement on LWOP. As of November 23, 2021, only seven named Plaintiffs have availed themselves of the processes available to them for seeking accommodations or exemptions. (*See* ECF No. 18, Def. NYC DOE Opp. Mem. at p. 24 ("Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of the process available to them to seek an accommodation with respect to the DOE Vaccination Mandate.").) As counsel for Defendant NYC DOE confirmed to the Court during

the November 23, 2021, show cause hearing, the remaining seventy-six named Plaintiffs have until November 30, 2021, to avail themselves of the procedures for requesting accommodations and exemptions, and opting to extend their LWOP status through September 5, 2022.  Finally, Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York State Supreme Court.  The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy.  *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").

Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate through the procedures established in the CBAs governing the terms of Plaintiffs' employment, including the Impact Arbitration Award procedures, which provide grievance and arbitration procedures, and undisturbed, well-established state court procedures.

**B. Irreparable Harm**

Though, as referenced *supra*, Plaintiffs need not make any further showing of irreparable harm once constitutional deprivations have been alleged, the Court is compelled to note that the harms resulting from noncompliance with the NYC DOE Vaccination Mandate identified by Plaintiff are by no means *irreparable*. Plaintiffs' articulated harms are: loss of income while on LWOP, and their possible separation from NYC DOE, which they allege will occur without adequate processes. These pecuniary harms are neither irreparable nor sufficient to justify the presently requested injunctive relief.

To be sure, the Court does not dispute that a loss of income is a hardship. The loss of one's wages, particularly for those with financial commitments and dependents, is a real, tangible harm. In order to demonstrate an entitlement to injunctive relief, Plaintiffs may not simply identify a general loss. Instead, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. In particular, in the Second Circuit, "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510-11 (2d Cir. 2005)

23

("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)).

Similarly, the Supreme Court has also held that "the temporary loss of income, []does not usually constitute irreparable injury . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Here, should Plaintiffs prevail, monetary relief will be available to compensate their loss of income. Consequently, injunctive relief is not warranted.

Further, Plaintiffs' lengthy delay in seeking to enjoin the NYC DOE's intent to seek separation of noncompliant and nonexempt employees on December 1, 2021—an occurrence that was entirely known to Plaintiffs at least by October 2, 2021, if not earlier—greatly undermines the strength of Plaintiffs' "emergency" motion for preliminary injunction. There was a delay of forty-four days between the date of Plaintiffs' actual placement on LWOP status and the filing of Plaintiffs' instant

24

request for preliminary injunction.  (ECF No. 2, Pl. Emergency
Mot.)  Plaintiffs' inaction does not convey a looming,
irreparable harm, and does not invoke the "urgent need for speedy
action to protect the plaintiffs' rights[,]" as is typical when
injunctions are sought on an expedited basis. *Citibank, N.A. v.
Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).

### C.   Balance of the Equities and D. The Public Interest

The Court finds that both the balance of equities and
the public interest disfavor the injunctive relief requested by
Plaintiffs.  As the Court has noted *supra*, the loss of income
while on LWOP status undoubtedly presents a hardship to the
Plaintiffs.  Plaintiffs face this continued hardship if they
continue to refuse to comply with the Vaccination Mandate.  The
role of the Court, however, is to "balance the competing claims
of injury on each party of either granting or withholding the
requested relief, paying particular regard to the public
consequences." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.
7 (2008).  On balance, the equities at stake and the importance
of safeguarding the public health and safety, and the public
interest weigh in favor of denying the preliminary injunction.

It "cannot be disputed that the State has a public
policy in favor of protecting children[.]" *City Sch. Dist. of
City of New York v. McGraham*, 17 N.Y.3d 917, 919-920, 958 N.E.2d
897 (2011).  There is an interest in providing in-person

schooling for students, as remote schooling can have negative impacts on education.[6]  There is also an obvious, significant governmental interest in preventing transmission of the COVID-19 virus and protecting students, thousands of whom remain ineligible for a COVID-19 vaccine, as well as NYC DOE teaching professionals and staff, and all related communities.  As Judge Cogan of this District recently noted in *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021) "[s]ince its emergence, COVID-19 has killed over 4.5 million people worldwide, with over 670,000 of those deaths taking place in the United States," and vaccination is "one of the most highly regarded" tools available to "reduce viral transmission."  Available scientific and medical data supports the use of vaccination as a lifesaving public policy measure, as data from the "Centers for Disease Control and Prevention shows that people who are unvaccinated are at a much greater risk than those who are fully vaccinated to test positive or die from COVID-19."[7]  Even despite the widespread implementation of vaccinations and booster shots, the United States has lost more lives in the year 2021 than in 2020, which

---

[6] Remote schooling during the 2020-21 academic year contributed to "highly significant" learning loss, according to a new study published by the National Bureau of Economic Research. *See* Clare Halloran, Rebecca Jack, James C. Okun, Emily Oster, *Pandemic Schooling Mode and Student Test Scores: Evidence from US States*, (National Bureau of Economic Research Working Paper, Paper No. 29497, Nov. 2021), https://www.nber.org/papers/w29497.

[7] Coronavirus in the U.S.: Latest Map and Case Count, N.Y. TIMES (updated Nov. 23, 2021), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

experts attribute at least in part to "lower-than-needed vaccination rates," and "the relaxation of everyday precautions, like masks and social distancing, and the rise of the highly contagious Delta variant."[8]  Based on the evidence available, there remains an urgent, compelling justification for the enforcement of the state- and city-mandated restrictions and policies enacted and designed to protect the most vulnerable among us from the COVID-19 pandemic.

Ultimately, "it is up to local government, 'not the courts, to balance the competing public health and business interests[,]'" and here, the New York City government and NYC DOE have done so in issuing and enforcing the COVID-19 Vaccination Mandate for employees of the Department of Education. *Maniscalco*, 2021 WL 4344267, at *4.

**CONCLUSION**

Accordingly, Plaintiffs' motion for a preliminary injunction and temporary restraining order is DENIED.

Further, the Court finds that Plaintiffs' have not demonstrated that they have standing to challenge the terms of the Impact Arbitration Award between the NYC DOE and the UFT in federal court.  Therefore, the Plaintiffs are ORDERED TO SHOW CAUSE by December 15, 2021, why this action should not be

---

[8] Covid Live Updates: U.S. Records More Deaths This Year Than in 2020, N.Y. TIMES (updated Nov. 23, 2021), https://www.nytimes.com/live/2021/11/23/world/covid-vaccine-boosters-mandates.

dismissed for lack of standing.

**SO ORDERED.**

/s/
_____
Kiyo A. Matsumoto
United States District Judge


Dated:  Brooklyn, New York
        November 24, 2021