UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
Nicole BROECKER, et al,

               *Plaintiff*,

      v.

New York City Department of Education,
et al,

               *Defendants*.
-----------------------------------X

**MEMORANDUM & ORDER**

21-CV-6387(KAM)(LRM)

**KIYO A. MATSUMOTO, United States District Judge:**

        The 93 named Plaintiffs in the Amended Complaint

(collectively "Plaintiffs") have not received at least a first

dose of a COVID-19 vaccine and are employed and work at schools

operated by the New York City Department of Education ("NYC

DOE"), and are members of various unions named as Defendants.

Named Defendants are the NYC DOE; the City of New York; Meisha

Porter, the Chancellor of the NYC DOE; the United Federation of

Teachers, Local 2, American Federation of Teachers, AFL-CIO

("UFT"); Michael Mulgrew, President of the UFT; Counsel of

Supervisors and Administrators ("CSA"), Mark Cannizzaro;

District Council 37, AFSCME AFL-CIO, Local 372 ("DC 37 Local

372") Henry Garrido; Shaun D. Francois I; District Council 37,

AFSCME AFL-CIO, Local 1251 ("DC 37 Local 1251") (together with

DC Local 372, "DC 37"); Martin F. Scheinman, Scheinman

Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services LLC (collectively "Defendants").

Defendants NYC DOE and the City of New York are entities responsible for enacting and enforcing a COVID-19 vaccination mandate (the "Vaccination Mandate") issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene ("COH Order") on August 24, 2021, requiring that all NYC DOE employees receive at least a first dose of a COVID-19 vaccination by September 27, 2021, in order to work at NYC DOE schools.  Defendants UFT, CSA, and DC 37 are labor organizations through which certain named Plaintiffs are covered by collective bargaining agreements ("CBAs") with the NYC DOE.

For the second time in this action, Plaintiffs seek a preliminary injunction to enjoin and restrain Defendant NYC DOE from "unilaterally terminating the Plaintiffs without due process."  (ECF No. 76-13, Pls. Mem., P. 2.)  Defendants UFT and CSA support Plaintiffs' motion.  (ECF No. 77.)[1]  For the reasons

---

[1] The Court has considered Defendants' UFT and CSA's "letter of support," regarding Plaintiffs' most recent request for injunctive relief, and after careful consideration, the Court finds it lacks merit.  The arguments raised in Defendants' UFT and CSA's letter of support are resolved *infra* by the Court's instant Memorandum and Order.  Importantly, as the Court noted at the February 7, 2022, pre-motion conference it is doubtful whether Defendants UFT and CSA have either organizational or associational standing in this action to seek injunctive relief alongside Plaintiffs. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)) (noting that to show organizational standing, an association must show (a) a distinct and palpable injury in fact to itself as an organization; (b) that is fairly traceable to the challenged action; and (c) that a favorable decision would redress its injuries); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 713-14 (2d Cir. 2004) (associational standing exists if: "(a) its members would otherwise have standing to sue in their own

discussed below, Plaintiffs' motion for preliminary injunction
and temporary restraining order is DENIED.

### BACKGROUND

The Court incorporates by reference in its entirety
the factual background, procedural background, and evidentiary
record described in and submitted in relation to the Court's
November 24, 2021, Memorandum and Order ("Order"). (ECF No.
33.) The November 24, 2021, the Order denied the Plaintiffs'
November 17, 2021, motion for preliminary injunction and
temporary restraining order ("First Motion for Preliminary
Injunction") which sought to enjoin the NYC DOE from
implementing procedures to seek termination of employees who
failed to obtain a first dose of the vaccine, apply for a
religious or medical exemption, or extend their leave without

---

right; (b) the interests it seeks to protect are germane to the
organization's purpose; and (c) neither the claim asserted nor the relief
requested requires the participation of individual members in the lawsuit.").
In the Amended Complaint, Plaintiffs sued Defendants UFT and CSA, and
Defendants UFT and CSA are adverse to Plaintiffs. Defendant UFT not only
opposed Plaintiffs' first preliminary injunction motion, but vigorously
defended the Impact Arbitration Award that Defendants maintain is illegal and
the result of collusion by the UFT, CSA, and others. (*See* ECF No. 33, Nov.
24, 2021, M&O; ECF No. 47, Am. Compl.) Most recently, Defendants UFT and CSA
both sought leave to move to dismiss the Amended Complaint in its entirety
against both unions. (ECFs No. 62; 71.) Moreover, pursuant to the
undersigned's Individual Chambers Practices and the Federal Rules of Civil
Procedure, letter briefs are not permitted. (III. C.2.); Federal Rule of
Civil Procedure 7 (Pleadings Allowed and Form of Motions and Other Papers).

3

pay ("LWOP") status while retaining health benefits.  (ECF No. 33, Nov. 24, 2021, M&O.)[2]

In the Court's November 24, 2021, Order, the Court noted that the effects and devastating impacts of the novel coronavirus, COVID-19, particularly on the unvaccinated, were well known.  Since the date of that Order, the rapid rise of new highly transmissible variants of COVID-19 once again plunged the City of New York and the entire country into further periods of uncertainty and risk of serious illness or death for the unvaccinated.  From December 2021 to January 2022, the Omicron variant descended on New York, bringing with it heightened levels of transmissibility and illness from COVID-19.[3]

Plaintiffs filed an Amended Complaint on January 10, 2022, naming additional parties.  (ECF No. 47, Am. Compl.)  On January 31, 2022, the NYC DOE notified employees who had failed to receive a COVID-19 vaccine and also failed to either (1) apply for and receive a medical or religious accommodation, or (2) extend their Leave Without Pay ("LWOP") status and continued medical benefits until September 2022, that their employment would terminate on February 11, 2022.  (See ECF No. 76-7, Pls.

---

[2] At the November 23, 2021, show cause hearing, the parties requested, and the Court granted leave for, supplemental briefing on the issue of vaccination as an NYC DOE job requirement.  (See Min. Entry, Nov. 23, 2021.)
[3] See Omicron Variant: What You Need to Know, CENTERS FOR DISEASE CONTROL AND PREVENTION (Updated Feb. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

Ex. A, Termination Notices.)  These termination notices stated

in relevant part:

> You have previously received notice regarding your
> failure to comply with the New York City Health
> Commissioner's Order requiring vaccination of all New
> York City Department of Education staff. Compliance
> with that Order is a condition of employment. Since
> you have not complied with the Order and have not
> chosen to extend your leave without pay, despite
> notice and an opportunity to do so, your employment
> with the New York City Department of Education is
> terminated, effective February 11, 2022. Please note
> that your health insurance coverage through the City
> will also cease upon termination....Information about
> COBRA will be mailed to you separately at the address
> on file in NYCAPS....If you believe you are receiving
> this notification in error, please email
> LWOPquestions@schools.nyc.gov no later than February
> 2, 2022.

(*See, e.g.*, ECF No. 76-7, Pls. Ex. A, p. 1.)  Of the ninety-

three Plaintiffs, forty-three[4] received termination notices and

---

[4] These forty-three Plaintiffs are Plaintiffs Gellman, Ben-Jacob, Udina,
Romero, Cruz, Narciso, Perez, LoParrino, Rodriguez, Toro, Mendez, Hussein,
Pereyra, Abreu, Backof, Porto, Miraglia, Silvestri-Incantalupo, Mavis,
Costello, Sanchez, Moore, Broecker, Nicchio, Genao, Hoffman, Jacobs,
DiProssimo, Martinez-van Bokkem, Ustares, Baker-Pacius, Moore, Placencio,
Russo, Simo, Charles, Palladino, Pagen, Kukla, Franzese, Schiano, Salamone,
Deidra Statuto.  (*See* ECF No. 76-1, Affidavit of Austin Graff ("Graff Aff."),
¶ 3.)

face termination from their employment at the NYC DOE, effective on February 11, 2022. (ECF No. 76-1, Graff Aff., n.1.)[5]

On February 4, 2022, four days after the NYC DOE termination notices were received—and 164 days after the Vaccination Mandate was first issued on August 24, 2021—Plaintiffs filed a pre-motion conference request, seeking leave to file an emergency application for preliminary injunction and temporary restraining Order against the NYC DOE's termination of noncompliant NYC DOE employees. (ECF No. 72, Pls. Pre-Motion Req.) On that same date, the Court deferred a ruling on the Plaintiffs' request for a pre-motion conference, and ordered all Defendants to respond to the Plaintiffs' pre-motion conference request on an expedited basis. (Dkt. Order, Feb. 4, 2022.) Defendants UFT and CSA filed a response in support of Plaintiffs' pre-motion conference request, and stated their own intention to seek injunctive relief against the NYC DOE. (ECF No. 73.) Defendants NYC DOE (ECF No. 74) and Defendants Martin

_____

[5] Of the ninety-three Plaintiffs, Plaintiffs Martino, Ciacca-Liss, Hagan, Trapani, Masullo, Klapakis, Hartz, Schmitter, Lotito, Mosley, Blasis-Maring, Meagan, Joergens, and Shaya, all signed NYC DOE Release Forms ("Release Forms") which extended their LWOP status to September 2022. (ECF No. 47, Am. Compl., ¶ 315.) The Release Forms included a waiver of the signing employee's rights to challenge the employee's "resignation, including, but not limited to, through a contractual or statutory disciplinary process," and a general release of the NYC DOE from "any and all claims, liabilities, or causes of actions[,]" related to the events surrounding the Release. (*See* ECF No. 47, Am. Compl. ¶¶ 306-315.) Plaintiff Lotito, who signed the release and, therefore, will *not* be terminated on February 11, 2022, is one of the Declarants for the Plaintiffs' instant Motion. (ECF No. 76-6, Declaration of Janelle Lotito.)

F. Scheinman and the Scheinman Arbitration and Mediation Services entities (ECF No. 75) filed letters in opposition to Plaintiffs' pre-motion conference request.

The Court granted the Plaintiffs' pre-motion conference request on February 7, 2022, and held a pre-motion conference on that same date. (Dkt. Order, Feb. 7, 2022; Min. Entry Feb. 7, 2022.) At the pre-motion conference, the Court ordered expedited briefing as to Plaintiffs' emergency application for injunctive relief. (Min. Entry Feb. 7, 2022.) Discussions during the pre-motion conference included Defendant UFT's lack of representative or associational standing to seek an injunction together with the Plaintiffs' against whom the UFT is adverse. Defendants UFT and CSA represented to the Court that they would submit only a letter stating support of the Plaintiffs' emergency application for injunctive relief. (*See id.*) Defendants UFT and CSA further represented that they would not separately seek injunctive relief in the instant action. (*Id.*)[6]

---

[6] On February 8, 2022, the union Defendants filed in state court an emergency motion seeking a temporary restraining order and preliminary injunction to enjoin the terminations of employees that had not complied with the Vaccination Mandate. *See The New York City Municipal Labor Committee, et al. v. City of New York*, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). The requested relief was denied by the Supreme Court of the State of New York, New York County, on February 10, 2022. *See id.*, NYSECF No. 51, Feb. 10, 2022, Order; *see also id.*, NYSECF No. 52, Feb. 10, 2022, Interim Order.

Plaintiffs filed a motion for preliminary injunction and temporary restraining order on February 8, 2022 (ECF No. 76), along with an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 76-1), supporting declarations from five of the forty-three Plaintiffs facing termination on February 11, 2022 (ECF Nos. 76-2—6), supporting exhibits (ECF No. 76-7—12), and an accompanying memorandum of law. (ECF No. 76-13.) The UFT filed a five-page letter in support of Plaintiffs' emergency application. (ECF No. 77.) On February 9, 2022, Defendant NYC DOE filed a memorandum in opposition to Plaintiffs' motion for preliminary injunction and temporary restraining Order (ECF No. 79, Def. NYC DOE Mem.), Appendix A providing copies of two relevant New York State Supreme Court Cases (ECF No. 79-2, Appx. A.), and Appendix B, providing the Affirmation of Dr. Michelle E. Morse, M.D., M.P.H., the Chief Medical Officer of the Department of Health and Mental Hygiene of the City of New York. (ECF No. 79-2, Appx. B.) On February 10, 2022, Plaintiffs filed a reply memorandum of law in further support of their motion for preliminary injunction. [7] (ECF No. 82, Pls. Reply Mem.)

## LEGAL STANDARD

The party seeking a preliminary injunction must

---

[7] Plaintiffs and Defendant NYC DOE filed unauthorized letters (ECF No. 86; ECF No. 87) pertaining to the New York State Supreme Court's recent orders in *The New York City Municipal Labor Committee, et al. v. City of New York*, Index

establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted).

Here, Plaintiffs seek both a prohibitory and mandatory injunction. (ECF No. 76-13, Pls. Mem. pp. 2-4.) The traditional preliminary injunction analysis is complicated by three distinctions given the nature of the mandatory injunctive relief Plaintiffs seek. First, because Plaintiffs seek a mandatory injunction against a government action taken in the public interest, they must show both irreparable harm and a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, *33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits)*; Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 573-74 (2d Cir. 2002) ("In order to merit preliminary injunctive relief against 'government action taken in the public interest pursuant

---

No. 151169/2022 (N.Y. Sup., N.Y. Cnty.), declining the motion for temporary restraining order and preliminary injunction brought by union Defendants and other unions which sought to enjoin the termination of employees not in compliance with the Vaccination Mandate. These submissions do not alter the Court's analysis.

to a statutory or regulatory scheme,' a plaintiff must show 'irreparable harm in the absence of an injunction and a likelihood of success on the merits.'") (internal citation omitted) (emphasis added); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Second, Plaintiffs allege constitutional violations, and "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Maniscalco*, 2021 WL 4344267, at *2 (citing *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)). As Plaintiffs allege that their procedural due process rights have been violated, "no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984), and the Court will focus its analysis on the other factors for establishing an entitlement to injunctive relief.

Third and finally, parties seeking mandatory injunctive relief are required to meet the higher standard where, as here, (1) the injunctive relief sought would alter,

rather than maintain, the status quo or (2) the injunction would grant the movant substantially all the relief sought, which relief could not be undone even if defendants prevail on the merits. *Tom Doherty Assocs.*, 60 F.3d at *33-34. Here, Plaintiffs are seeking, among other things, to enjoin the NYC DOE from terminating their employment without due process, and to be restored employment with the NYC DOE, after having been placed on LWOP several months ago on October 4, 2021, with notice of their eventual termination for failure to comply with the Vaccination Mandate. Plaintiffs also seek to enjoin the termination of their medical benefits on February 11, 2022, despite their ability by November 30, 2021, to have continued their LWOP status and medical benefits through September 2022. Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction, and must show a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs.*, 60 F.3d 27; *Doninger v. Niehoff*, 527 F.3d 41, *47 (2d Cir. 2008).

## DISCUSSION

Plaintiffs' renewed motion for injunctive relief demands that the Court revisit many of the same issues already decided in the Court's November 24, 2021, Memorandum and Order, with one notable exception. In its opposition to Plaintiffs' First Motion for Preliminary Injunction, the NYC DOE argued in its papers and at the November 23, 2021, show cause hearing that

11

employees separated under the terms of the Vaccination Mandate, and under the express terms of the Impact Arbitration Award, are not being "disciplined," but are being terminated based on their failure to satisfy a condition of employment. At the November 23, 2021, show cause hearing, the parties requested, and the Court granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation were being "disciplined" or subject to a legitimate condition of employment, and the Court did not expressly reach that issue in its November 24, 2021, Order. The Court reaches that specific issue here, as will be discussed *infra*.[8]

## I.   Preliminary Injunction

### A. Likelihood of Success on the Merits

Plaintiffs again have failed to establish a "clear" or "substantial" likelihood of success on the merits as to any of their claims. In their Amended Complaint, Plaintiffs seek an assortment of relief, including declaratory judgment as to the

---

[8] For the avoidance of doubt as to what the Court's November 24, 2021, Order decided, the Court *did* consider "whether the processes [Plaintiffs] ha[d] been afforded upon LWOP placement and *upon separation* [was] constitutionally adequate[,]" and found that they were. (ECF No. 33, M&O, p. 18) (emphasis added.) Plaintiffs' alleged deprivation of their property rights to continued pay and employment in the instant case occurred upon their placement on LWOP status. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("Under this Circuit's precedents, an employee who is placed on unpaid leave has been deprived of a protected property interest . . .."). As such, the Court already considered and decided the constitutional adequacy of processes provided to Plaintiffs, and found that the pre- and post-deprivation processes afforded to Plaintiffs to be constitutionally adequate. (*Id*. at p. 19.)

NYC DOE's allegedly violative suspension of Plaintiffs without pay and due process; declaratory judgment as to the allegedly illegal Arbitration Awards and agreements between the Defendant unions and the NYC DOE; declaratory judgment as to the allegedly coercive and void NYC DOE Release Forms signed by certain Plaintiffs; Title 42 U.S.C. Section 1983 claims against the NYC DOE, the Defendant unions, and the Scheinman Arbitration and Mediation defendants; and injunctive relief against the NYC DOE for the alleged violation of Plaintiffs' procedural due process rights. (*See generally*, ECF No. 47, Am. Compl.)  Central to many of Plaintiffs' claims, and critical to their renewed request for injunctive relief sought in the instant motion, is whether and what processes (as required by procedural due process, the applicable collective bargaining agreements ("CBAs"), the Arbitration Awards, and the relevant statutes) are triggered now that the NYC DOE is formally seeking separation.

**1. Procedural Due Process**

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Having found that Plaintiffs have a protected property

13

interest in their continued employment, the Court next considers whether the available processes that Plaintiffs may invoke upon deprivation of their property interests and, specifically, upon *termination*, are constitutionally adequate.

The Court must determine not whether state procedural law was correctly followed or applied, but rather, whether the processes provided by state procedures, contract rights, or other available processes satisfy constitutional requirements. To determine whether available processes are adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] *define* the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (emphasis added); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). As before, the Court finds that the processes available to Plaintiffs,

including but not limited to state statutes and contractual procedures, are constitutionally sufficient.

As the Court in its November 24, 2021, Order previously determined, the Court reaffirms here for the avoidance of doubt that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate.  (ECF No. 33, Nov. 24, 2021, M&O, pp. 17-22) ("Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate through the procedures established in the CBAs governing the terms of Plaintiffs' employment, including the Impact Arbitration Award[9] procedures, which provide grievance and arbitration procedures,

---

[9] The Impact Arbitration Award is specific to the UFT, but as the relevant CSA and DC 37 agreements are identical in all pertinent respects to the Impact Arbitration Award, all three will be referred to as the "Awards."  Pursuant to the terms of the relevant Awards, NYC DOE employee members of the UFT, CSA, and DC 37, who are not vaccinated and have not received an accommodation may either (a) take extended unpaid leave with health insurance and a right of return; (b) voluntarily separate; (c) be subject to the NYC DOE's negotiated unilateral right to seek the employees' separation; or (d) exercise all retained legal rights. The Awards state that LWOP status is not disciplinary. The Awards further provide that the NYC DOE may "seek to unilaterally separate" employees who have not selected either option after December 1, 2021, and that "except for the express provisions contained, herein, all parties retain all legal rights at all times."  (ECF No. 19-1, O'Connor Decl., Ex. A, UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at Ex. B, CSA Arbitration Award at III.C.)

15

and undisturbed, well-established [Article 78] state court
procedures.").

The Court, in addition to a review of the record
forming the bases of its prior November 24, 2021, Order, reaches
this same conclusion, after considering Plaintiffs' proffer of
additional evidence in support of their renewed motion for
injunctive relief.  Plaintiffs have not submitted any new or
supplemental evidence in support of their instant motion that
compels the Court to conclude that any of the adequate and
available processes have been withheld from the Plaintiffs.  In
support of their second motion for preliminary injunction,
Plaintiffs have submitted five declarations from specific
Plaintiffs: James Hoffman (ECF No. 76-2), Nathalie Charles (ECF
No. 76-3), Serena Mendez (ECF No. 76-4), Tara Palladino (ECF No.
76-5), and Janelle Lotito (ECF No. 76-6).  Plaintiff Lotito, as
noted previously, signed the NYC DOE Release Form associated
with extending her LWOP status until September 2022, and thus
will not be terminated on February 11, 2022.  (ECF No. 47, Am.
Compl., ¶ 315; ECF No. 76-6, Lotito Decl.)  None of the other
declarant-Plaintiffs state whether they availed themselves of
any of the pre- or post- deprivation processes, and none of the
declarant-Plaintiffs articulated their individual religious,
medical, or other bases for refusing to receive a COVID-19
vaccination.  Mr. Graff, counsel to Plaintiffs, did not include

16

in his signed Affidavit any information regarding which of the
ninety-three Plaintiffs, or the subset of forty-three Plaintiff
members who allegedly received termination notices,[10] had availed
themselves of any processes.  (*See* ECF No. 76-1, Graff Aff.)
The five Plaintiffs' declarations—and Mr. Graff's own
affirmation—included conclusory legal assertions, which, without
more, do not establish that the Plaintiffs were not afforded
adequate due process, and cannot support a finding that
Plaintiffs are likely to succeed on the merits.  (*See, e.g.* ECF
No. 76-4, Mendez Declaration, ¶ 5, "I earned my constitutional
right to due process, which the NYCDOE has violated by
terminating my employment without due process."; *see also* ECF
No. 76-1, Graff Aff. ¶ 4, "The Plaintiffs have not received any
due process before being terminated[.]")

The pre- and post-deprivation processes available to
Plaintiffs, as described in the Court's November 24, 2021,
Order, were made known to Plaintiffs well in advance of any
action by the NYC DOE, and were and are available through their
unions and through established state procedures.  First,
Plaintiffs received advanced notice of the Vaccination Mandate,
their ability to seek religious and medical exemptions and
appeals, their placement on LWOP for noncompliance with the

---

[10] Plaintiffs have submitted four termination notices in connection with the
instant motion.  (ECF No. 76-7, Exhibit A, Termination Notices.)

Vaccination Mandate, their options and opportunities to respond, and of the NYC DOE's intention to seek termination for continued noncompliance. The widely publicized Vaccination Mandate was implemented on August 24, 2021. Plaintiff-UFT members had notice of the LWOP and potential separation since September 10, 2021; CSA member employees had notice as of September 15, 2021; and DC 37 member employees had notice as of October 3, 2021. (*See* ECF No. 79, Def. NYC DOE Opp. Mem. pp. 6-7, 28.) Plaintiffs were further notified on October 2, 2021, that noncompliance with the Vaccination Mandate would result in placement on LWOP as of October 4, 2021, and that the NYC DOE would seek to separate them if they did not comply with the Vaccination Mandate or extend their LWOP status. (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

Second, the pre- and post-deprivation proceedings articulated in the Awards were incorporated into the Plaintiffs' collective bargaining agreements. (*See, e.g.,* ECF No. 20, Def. UFT Opp. Mem. at p. 4.) The UFT represented that it advised members inquiring about grievances that procedures regarding unvaccinated employees were governed by the binding Impact Arbitration Award which altered their CBA, and which was circulated to UFT members "along with plain-language guidance of the Award's terms[.]" (ECF No. 20, Def. UFT Opp. Mem. at p. 13.) Pre-deprivation processes "need not be elaborate[,]" and the

18

Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (citing *Loudermill, 470 U.S. at 545-546*). The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (noting that "CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process.") (internal citations omitted); *see also Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (noting that guaranteed procedural rights could be satisfied by the pre-deprivation notice and hearing rights provided in the collective bargaining agreement grievance procedures) (citing *Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir. 1987) (Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process).

Importantly, the parties do not dispute that the Awards and the CBAs provided for expedited review processes for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging the deprivation of their pay. Though it is not clear to the Court which, if any, Plaintiffs have availed themselves of these processes, the record clearly reflects that these processes exist. *See Ezekwo v. N.Y.C.*

19

*Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991) (An
employee's right to be provided with an opportunity to address
concerns before a final decision is made can be "accomplished
through informal procedures; no formal hearing [is] required.").

Plaintiffs had until November 30, 2021, to invoke the
procedures for requesting accommodations and exemptions, and/or
to opt to extend their LWOP status and medical benefits through
September 5, 2022. Finally, Plaintiffs, having received
multiple notices regarding the Vaccination Mandate and after
being notified of the applicable dates, procedures, and
consequences regarding continued noncompliance with the
Vaccination Mandate, could still have sought relief through an
Article 78 proceeding in New York state court. Indeed,
Plaintiffs can *still* seek relief through Article 78 proceedings.
The Second Circuit has advised that the Article 78 proceeding
can provide a sufficient post-deprivation remedy. *See Hellenic
Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877,
881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly
adequate post-deprivation remedy."). Beyond challenging their
placement on LWOP, Plaintiffs may avail themselves of Article 78
proceedings to challenge their termination. *See Tessler v.
Paterson*, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011) (finding that
terminated plaintiffs' procedural due process claims must fail
because of the availability of adequate post-deprivation

20

processes, and noting specifically that "[i]t is well-established that the Article 78 proceeding 'constitutes a wholly adequate post-deprivation hearing for due process purposes.'") (citing *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir.2001) (holding that terminated plaintiffs failed to allege a claim for violation of due process, and noting that an Article 78 proceeding constitutes a wholly adequate post-deprivation hearing for due process purposes.)).

Having again determined that the Plaintiffs were afforded constitutionally adequate pre- and post-deprivation due process, the Court next considers whether the vaccine requirement is a condition of employment and examines any corresponding due process requirements.

## 2. Vaccine Requirement as a Condition of Employment

The Court finds that the Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs as affected by the relevant Arbitration Awards or agreements and all relevant state statutes.

Plaintiffs do not challenge the lawfulness or validity of the Vaccination Mandate. In fact, none of the relevant parties dispute that the Vaccination Mandate is lawful and requires all NYC DOE employees to be vaccinated, or to receive an exemption or

accommodation. Instead, Plaintiffs assert that the *termination* of employees by the NYC DOE pursuant to the Vaccination Mandate is unlawful because: (1) the Commissioner of the New York City Department of Health and Mental Hygiene has no statutory or administrative authority to impose a new condition of employment upon NYC DOE employees; (2) New York Civil Service Law requires that all terms and conditions of employment for a public employer are mandatory subjects of bargaining pursuant to New York's "Taylor Law," N.Y. Civ. Serv. Law § 200; (3) the UFT has argued that the Vaccination Mandate does not impose a condition of employment, and thus, no condition of employment was created;[11] and (4) even if the Vaccination Mandate creates a condition of employment, this condition of employment does not "abrogate" Plaintiffs' due process rights or permit the NYC DOE to violate the Plaintiffs' protected property interest in their continued employment. (ECF No. 76-13, Pls. Mem. at pp. 7-8.) These arguments are unavailing.

The Court is not convinced by Plaintiffs' or Defendant unions arguments that the NYC DOE acted without statutory or administrative authority. Plaintiffs specifically argue that a condition of employment must comply with the N.Y. Education Law

---

[11] Even if Plaintiffs have accurately described the union Defendants' views, the Court need not and will not decide Plaintiffs' disputed motion based on the union Defendants' *ipse dixit* proclamations regarding whether the Vaccination Mandate is a condition of employment.

Section 2573.9, and that the NYC DOE sidestepped this integral requirement because neither the Board of Education nor the Panel for Educational Policy has determined that the vaccine is a qualification. (ECF No. 76-13, pp. 7-8.) Section 2573.9 provides:

> No principal, supervisor, director, or teacher shall be appointed to the teaching force of a city who does not possess qualifications required under this chapter and under the regulations prescribed by the commissioner of education for the persons employed in such positions in the schools of the cities of the state, but a board of education may prescribe additional or higher qualifications for the persons employed in any of such positions.

N.Y. Educ. Law § 2573.9. Notably, Section 2573.9 by its own terms applies only to the "teaching force" of principals, supervisors, directors, and teachers, not all staff that could feasibly work at NYC DOE schools. Plaintiffs mistakenly rely on Section 2573.9 of New York Education Law which notes that the statutory chapter establishes minimum pedagogical qualifications principals, supervisors, directors, and teachers. The burden of showing a likelihood of success is on Plaintiff, the moving party seeking injunctive relief. *See generally*, *Winter*, 555 U.S. 7. Plaintiffs, however, have not identified any authority that proscribes the NYC DOE from imposing a vaccine requirement during a global pandemic causing risks of severe illness and

death to the unvaccinated, many of whom include school age
children.[12]

The Court also finds unavailing Plaintiffs' further
argument that Defendant NYC DOE created a condition of
employment in contravention of New York Civil Service Law
Section 201.4, which requires the NYC DOE employer to negotiate
and bargain terms and conditions of employment.  Contrary to
Plaintiffs' argument, after reaching an impasse, the NYC DOE and
the Defendant unions did negotiate and bargain over the impact
of the COH Order, which ultimately resulted in the Arbitration
Awards.  The Arbitration Awards provide, *inter alia*, that the
NYC DOE may "seek to unilaterally separate" employees who have
not elected to voluntarily separate or to extend their LWOP
status after December 1, 2021, and that "except for the express
provisions contained, herein, all parties retain all legal
rights at all times."  (*See* ECF No. 19-1, O'Connor Decl., Ex. A,
UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at
Ex. B, CSA Arbitration Award at III.C.)  Based on the foregoing,

---

[12] *COVID-19 Vaccines for Children and Teens*, CENTERS FOR DISEASE CONTROL AND
PREVENTION (Updated Jan. 11, 2022), https://www.cdc.gov/coronavirus/2019-
ncov/vaccines/recommendations/children-teens.html (As of October 2021, one of
the three available COVID-19 vaccines in the U.S. became available for
children ages five and older, and no vaccine is yet approved for children
ages four and younger.).

the Court finds that the NYC DOE and the Defendant unions

complied with New York Civil Service Law Section 201.4.

The COH Order establishing the Vaccination Mandate has

established a lawful, enforceable condition of employment (named

differently, a qualification for employment or eligibility for

employment, etc.) which all NYC DOE employees must satisfy in

order to remain employed by the NYC DOE.[13]  As the NYC DOE has

accurately asserted, the NYC DOE has an obligation to maintain a

safe workplace.  *See* N.Y. Labor Law § 27-a.  The world, the

country, and certainly the City of New York, have been

contending with a public health emergency, which includes new

COVID-19 variants accompanied with heightened rates of

transmissibility and surges in COVID-19 infections.  Only

recently as of October 29, 2021, have vaccinations been approved

for children ages five and older.[14]  Given the ongoing pandemic,

---

[13] Defendant unions argue that the COVID-19 vaccine is not a job condition, asserting, "that some unvaccinated employees have been granted accommodations on medical or religious grounds, and others have remained employees on long-term leave, proves that vaccination is not a mandatory qualification: one cannot accommodate for an immutable statutory requirement for employment like licensure or residency." (*See* ECF No. 77, Defs. UFT and CSA Letter, p. 4.) Tellingly, the Union Defendants fail to disclose whether the accommodated employees are working in the classrooms or schools. Moreover, the accommodations and exemptions provided for the Vaccination Mandate are among the constitutional safeguards which the union Defendants negotiated and achieved in the Awards. (*See* ECF No. 20, Def. UFT Mem., p. 3); *see also* New York City Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021) (The UFT, together with other City unions, brought a challenge to the Vaccination Mandate, including the omission of religious and medical exemptions on constitutional and other grounds. After the New York State Supreme Court granted the Unions' application for a temporary restraining order, the City amended the Vaccination Mandate to allow for reasonable medical and religious accommodation.).

[14] *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age*, FDA.GOV (Oct. 29, 2021),

and the specific nature of Plaintiffs' jobs in New York City
public schools where Plaintiffs interact directly with
vulnerable students, and directly or indirectly with those
students' families and communities, the Commissioner of Health
was within his powers to implement safety and health standards
and require COVID-19 vaccinations as a condition of employment
for NYC DOE employees.

Recent case law from this Circuit and in the State of
New York supports a finding that vaccination is a lawful
condition of employment. Though not specific to the education
context, the Second Circuit has held that "[v]accination is a
condition of employment in the healthcare field." *We The
Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 2102566, 2021 WL
5121983, at *18 (2d Cir. 2021). Relatedly, as this Court
recently found in *Garland*, due to the specific nature of
plaintiff-F.D.N.Y. firefighters' and EMTs' public facing jobs,
vaccination is a lawful qualification for employment for
F.D.N.Y. firefighters. *See Garland v. New York City Fire Dep't*,
No. 21-cv-6586(KAM)(CLP), 2021 WL 5771687, at *6 (E.D.N.Y. Dec.
6, 2021) (in which the vaccination mandate at issue was created
by Order of the Commissioner of the New York City Department of
Health and Mental Hygiene on October 20, 2021, requiring all

---

https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-
biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age.

City employees to receive one dose of any COVID-19 vaccine by a date certain).

Additionally, in three recent and separate New York Supreme Court cases, the New York Supreme Court issued instructive decisions regarding Article 78 proceedings filed by tenured NYC DOE teachers who failed to comply with the Vaccination Mandate and challenged their placement on LWOP status. *See O'Reilly v. Bd. of Educ. of the City School Dist. of the City of New York,* No. 161040/2021, N.Y. Slip. Op. 30173(U), 2022 WL 180957, at *1 (N.Y. Sup. Ct. Jan. 20, 2022); *Lanzer v. Bd. of Educ., et al.,* Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); *Romero v. Bd. of Educ., et al.,* Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty). In *O'Reilly*, which involved a tenured teacher-petitioner, the New York Supreme Court held that the COH Order established vaccination against COVID-19 as a lawful "condition of employment" for NYC DOE employees. *See O'Reilly*, 2022 WL 180957, at *2 (finding that NYC DOE's employment action of placing teachers who did not comply with the Vaccination Mandate on LWOP status was not discipline under New York Education Law and was "merely a response to petitioner's refusal to comply with a condition of employment."). The New York Supreme Court accordingly held that petitioner was not entitled to the process required by New York Education Law Sections 3020 and 3020-a, and cited to *We The*

*Patriots* and *Garland* in support of its decision. *Id.* In *Lanzer* and *Romero*, the New York Supreme Court denied petitions brought pursuant to Articles 75 and 78, noting that the tenured teacher-petitioners, who "dispute[d] the requirement that teachers get a Covid-19 vaccine or seek an accommodation," were not entitled to a hearing under Section 3020-a on their placement on LWOP status, as these employment actions were not a disciplinary consequence of the NYC DOE employees' failure to comply with the Vaccination Mandate. *Romero*, Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); *Lanzer*, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty).

Plaintiffs advance a series of baseless arguments related to the NYC DOE's Vaccination Mandate as a condition of employment that do not support a finding that Plaintiffs are likely to succeed on the merits. Plaintiffs rely on the Lotito Declaration and an accompanying exhibit in support of their contention that "the NYCDOE's actions are inconsistent" with the NYC DOE's position that the Vaccination Mandate creates a legitimate condition of employment. Plaintiff-declarant Lotito asserts that because she was allowed to enter her son's school despite being unvaccinated, though she was asked to complete a Health Questionnaire as part of her visits, the NYC DOE's argument that she is unfit for employment must fail. (ECF No. 76-6, Lotito Decl.; ECF No. 76-8, Ex. B, Health Screening

Questionnaire).  This argument is inapplicable to the question of whether the NYC DOE has created a lawful condition of employment.  The conditions on *visitors* within the NYC DOE system do not impact the legitimacy of conditions imposed on NYC DOE *employees*.

Relatedly, Plaintiffs in their memorandum of law argue that they are physically and/or mentally capable of performing their duties, and if "they were to submit to medical examinations, many of the Plaintiffs would be able to show that they have natural immunity from the COVID-19 virus."  (ECF No. 76-13, p. 12.)  In support of their argument, the Plaintiffs offer a series of unexplained pictures and screenshots purportedly showing antibody tests pertaining to some of the Plaintiffs.  (ECF No. 76-9, Ex. C.)  The Court will not speculate how these exhibits may bear on the vaccine as a condition of employment, and will not entertain or attempt to interpret unexplained medical evidence.

The NYC DOE has not asserted that Plaintiffs are unfit for employment.  Rather, Defendant NYC DOE has submitted evidence that convincingly supports the vaccine requirement as a condition of employment, and undercuts Plaintiffs' arguments based on antibody tests, through the Declaration of Dr. Michelle E. Morse, M.D., M.P.H.  (*See* ECF No. 79-2, Appx. B, Morse Aff., ¶¶ 18, 19 (noting that vaccines are the most effective means of

29

reducing the spread of COVID-19, that the level and duration of
immune protection that results from a prior COVID-19 infection
remains uncertain, and that the CDC still recommends
vaccinations for people who have had prior COVID-19
infections)).

Plaintiffs also argue that because the NYC DOE's
contractors are advertising for jobs that do not include
vaccination as a qualification, the NYC DOE cannot argue that
its employees must be vaccinated.  (ECF No. 76-13, Pls. Mem., p.
10.)  Plaintiffs submit an "Indeed" job posting for a "speech
language pathologist and CFs" position (ECF No. 76-11, Ex. E),
which, according to the posting, is for a position with the
"Perfect Playground," a part of the Stepping Stones Group.
(*Id.*)  The posting provides that the company seeks employees for
"school assignments[.]"  (*Id.*)  This evidence does not establish
that the Stepping Stones Group is a NYC DOE contractor or that
the NYC DOE will not require vaccination as a qualification for
placement at an NYC DOE school.  Even assuming this limited
evidence relates to an NYC DOE position, it does not support a
finding that the NYC DOE's vaccination requirement is not a
valid condition of employment.  Plaintiffs' arguments are not
substantiated by credible or material evidence, nor do they have
any bearing on whether Plaintiffs were provided adequate due
process or whether the NYC DOE has implemented a lawful

condition of employment. Consequently, Plaintiffs have not shown a likelihood of success on the merits.

Pursuant to the Commissioner of Health's Order and NYC DOE's implementation, the Plaintiffs have been provided constitutionally adequate notice and opportunity to challenge the NYC DOE's separation of unvaccinated employees, absent an exemption or accommodation, from their employment in the NYC DOE's schools. The termination of NYC DOE employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary. Rather, Plaintiffs' separation is cause of their failure to avail themselves of existing processes or comply with a lawful job condition.

### 3. Corresponding Due Process

Accordingly, the Court need not consider whether N.Y. Education Law Sections 3020, 3020-a, or N.Y. Civil Service Law Section 75 were or will be appropriately followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020, 3020-a, or N.Y. Civil Service Law § 75. *See, e.g., O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 852 N.Y.S.2d 537, 538 (4th Dep't 2008) (petitioners terminated for failure to comply with the residency policy of their

employment agreements were not entitled to a hearing pursuant to
N.Y. Educ. Law §§ 3020, 3020-a because "[t]hose sections of the
Education Law are inapplicable[...] as they address issues relating
to a teacher's competency and the applicable disciplinary
procedures and penalties [...], while the residency policy 'is a
consideration unrelated to job performance, misconduct or
competency . . . a qualification of employment . . . [that
respondent] may impose it if chooses to do so without running afoul
of the Constitution or general laws of the State.") (citation
omitted), *appeal denied*, 892 N.E.2d 396 (2008); *Beck-Nichols v.
Bianco*, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency
requirement defines eligibility for employment . . . unrelated to
job performance, misconduct or competency" and thus concluding that
the plaintiffs were not entitled to a hearing pursuant to N.Y.
Educ. Law §§ 2509(2), 3020, and 3020-a); *Felix v. N.Y.C. Dept. of
Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004) ("the act of
failing to maintain one's residence within the municipality is
separate and distinct from an act of misconduct by a municipal
employee in the performance of his or her work. Failure to maintain
residence renders an individual ineligible for continued municipal

employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures . . .").

Based on the foregoing, because the Court finds that receiving a vaccination against COVID-19 is a condition of employment for NYC DOE employees, the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a or Civil Service Law Section 75 prior to terminating NYC DOE employees due to their noncompliance with the Vaccination Mandate. *See O'Connor*, 48 A.D.3d at 1255 (4th Dep't 2008); *Adrian v. Bd. of Ed.*, 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558–59 (2013); *Brown v. Bd. of Educ.*, 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009); *Felix v. Dep't of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004). The NYC DOE was and is required to provide notice and processes that comport with constitutional due process prior to or after termination, which the Court has already determined that the NYC DOE has done. Accordingly Plaintiffs have not established a likelihood of success on the merits.

### B. Irreparable Harm

Though, as referenced *supra*, Plaintiffs need not make any further showing of irreparable harm once constitutional

deprivations have been alleged, the Court notes that the harms
alleged by Plaintiffs directly resulting from their
noncompliance with the Vaccination Mandate are not irreparable.
At their core, Plaintiffs' articulated harms associated with the
instant motion for injunctive relief are: loss of employment and
the resulting loss of medical benefits.  As discussed in the
Court's previous decision, and again below, the Second Circuit
has held that these pecuniary harms are neither irreparable nor
sufficient to justify the presently requested injunctive relief.

In support of their motion for preliminary injunction,
Plaintiffs have submitted five declarations from Plaintiffs,
including the Declaration of Janelle Lotito. (ECF No. 76-6).
(See also ECF No. 76-2, Hoffman Decl., ECF No. 76-3, Charles
Decl., ECF No. 76-4, Mendez Decl., and ECF No. 76-5, Palladino
Decl.)  As previously noted, Plaintiff Lotito signed the NYC DOE
Release Form associated with extending her LWOP status and
medical benefits, and will not be terminated or lose her medical
benefits on February 11, 2022.  (ECF No. 76-6, Lotito Decl.)  Of
the other four declarations, Plaintiffs allege what are
fundamentally monetary harms resulting from a loss of their pay,
their employment related health benefits, and from having to pay
for alternative healthcare via the Consolidated Omnibus Budget
Reconciliation Act of 1985 ("COBRA").

This Court does not dispute that loss of income and/or loss of medical benefits are serious burdens.  The loss of one's wages and medical insurance, particularly for those with financial commitments and dependents, are serious hardships. The standard for equitable relief, however, demands a demonstration of an irreparable harm, harm for which available legal remedies and monetary damages would be inadequate. In the Second Circuit, "[i]rreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap*, *Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510-11 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)).  The Supreme Court has also held that "the temporary loss of income, []does not usually constitute irreparable injury . . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable

harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Here, should Plaintiffs prevail, monetary relief will be available to compensate their associated pecuniary losses.

Plaintiffs cite two cases for the proposition that their loss of medical benefits can constitute irreparable harm: *Communications Workers of Am., Dist. One, AFL–CIO v. NYNEX Corp.*, 898 F.2d 887 (2d Cir. 1990) and *Whelan v. Colgan*, 602 F.2d 1060 (2d Cir. 1979). Both these cases are distinguishable from the instant case: in *Whelan*, a case that pre-dates the enactment of COBRA, the Second Circuit affirmed the granting of a preliminary injunction where plaintiffs, striking workers, were likely to succeed on the merits, and where "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury." *Whelan*, 602 F.2d at 1062. *NYNEX* involved the denial of COBRA benefits as required under federal law. *NYNEX Corp.*, 898 F.2d 887. In *NYNEX*, the defendant-employer initially informed its employees that it intended to terminate medical benefits, which they could replace under COBRA. Defendant-employer then obstructed the employees' ability to secure COBRA benefits, which the district court considered an absolute termination of benefits. The Court of Appeals affirmed the district court's grant of a preliminary injunction ordering the defendant to allow for COBRA benefits. *See NYNEX*, 898 F.2d at

891-92.  Here, in contrast, nothing in the record indicates that
Plaintiffs will not retain their Congressionally-mandated
ability to secure medical coverage under COBRA.  (*See* ECF No.
76-7, Pls. Ex. A, Termination Notices p. 1 ("Information about
COBRA will be mailed to you separately at the address on file in
NYCAPS...")  Plaintiffs own declarations support a finding that
Plaintiffs' alleged harms are tethered to their ability to pay
for COBRA stemming from their loss of salary from the NYC DOE,
not to their complete inability to secure alternative medical
benefits.  (*See* ECF No. 76-2, Hoffman Decl., ECF No. 76-3,
Charles Decl., ECF No. 76-4, Mendez Decl., and ECF No. 76-5,
Palladino Decl.)

      More recently and relatedly, the Southern District of
New York in *Kane v. de Blasio,* No. 21-cv-7863 (VEC), 2021 WL
5909134 (S.D.N.Y. Dec. 14, 2021), denied injunctive relief to
NYC DOE teachers and administrators, noting that the teachers
alleged that they were faced with either a vaccination or the
possibility of "various penalties including the loss of health
insurance and other benefits[.]" *Id*. at*4. The Court determined
that the only alleged harms were economic and could be remedied
by money damages and, therefore Plaintiffs had not demonstrated
irreparable harm.  *Id*.[15]  Here too, injunctive relief is not

---

[15] The Court takes judicial notice that the Second Circuit very recently
denied the *Kane* plaintiffs' motion for an injunction pending appeal, finding
that the appellants had not shown the requisite likelihood that the district

warranted on the basis of Plaintiffs' alleged, compensable harms.

Plaintiffs argue that their harms are beyond monetary, and that the very choice they face between vaccination and termination is in itself an irreparable harm. Plaintiffs assert that the Second Circuit in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), by citing to the Fifth Circuit case *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) in a footnote, "raises the specter that in this Circuit the choice between a job and a jab is irreparable harm." (ECF No. 76-13, Pls. Mem., pp. 4-5) (citing *Kane*, 19 F.4th at 170, n. 18 ("*But see BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, ,618 (5th Cir. 2021) (finding irreparable harm where 'reluctant individual recipients [were] put to a choice between their job(s) and their jab(s)')".) This Court does not consider Plaintiffs' reading to be an accurate interpretation of the Second Circuit's footnote in *Kane*, in which the Court of Appeals first clearly stated that it did "not cast doubt on the well-established principle that 'loss of employment "does not usually constitute irreparable injury."'" *Kane*, 19 F.4th at 170, n. 18 (internal citations omitted). In the Second Circuit, the well-established principle remains that adverse employment consequences do not usually

court abused its discretion in denying the motion for preliminary injunction. *See Kane v. de Blasio*, No. 21-3043 (2d. Cir. Feb. 3, 2022.).

constitute irreparable harm.  *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294-95 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("It is well settled [...] that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages.") (citing *Sampson v. Murray*, 415 U.S. 61, 91-92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("[L]oss of income and ... the claim that her reputation would be damaged ... falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction[.]"); *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.").

Finally, the Court notes that Plaintiffs had ample notice and opportunity to invoke pre- and post-deprivation processes, including the option to extend their LWOP status and medical benefits through September 2022.  These processes, made available through state procedures and through their unions' collective bargaining and Arbitration Awards, are governed precisely by the State legislature and their unions.  It is not for this Court to decide whether the Plaintiffs, if they avail

39

themselves of those processes, should be granted the
corresponding remedies they seek.  Plaintiffs should not be
heard to complain that their due process rights were violated
when they have not shown that they availed themselves of any of
the existing processes to challenge the NYC DOE.  Nor should
Plaintiffs be heard in support of their motion for injunctive
relief to complain that they will suffer pecuniary harm because
of their own choices.

     Here, Plaintiffs' economic harms can be remedied with
monetary damages and/or reinstatement if Plaintiffs prevail on
the merits.  Further, the termination of Plaintiffs' medical
benefits, to which they are no longer entitled once they cease
to be employees of the NYC DOE, can be continued through COBRA.
Accordingly, Plaintiffs have failed to demonstrate that they
will suffer irreparable harm absent injunctive relief.

### C. Balance of the Equities and D. The Public Interest

     The Court finds that both the balance of the equities
and the public interest weigh against injunctive relief.
Plaintiffs seek an injunction barring "the NYC DOE from
unilaterally terminating the Plaintiffs without due process."
(ECF No. 76-13, at p. 2.)  The role of the Court, however, is to
"balance the competing claims of injury on each party of either
granting or withholding the requested relief, paying particular
regard to the public consequences."  *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7 (2008). On balance, the equities at stake and the importance of safeguarding the public health and safety of NYC DOE schools and all who work or learn there, and the public interest, weigh heavily in favor of upholding the implementation by the NYC DOE of the Vaccination Mandate ordered by the Commissioner of Health, and again denying a temporary restraining order and preliminary injunction.

The Vaccination Mandate and all of its consequences are plainly oriented around one goal: to protect the affected population from the adverse impact of COVID-19. In this instance, the relevant population includes NYC DOE staff and students. It "cannot be disputed that the State has a public policy in favor of protecting children[.]" *City Sch. Dist. Of City of New York v. McGraham*, 17 N.Y.3d 917, 919-920, 958 N.E.2d 897 (2011). Many of the more than one million students who learn within the NYC DOE school system network are still too young to be vaccinated, to say nothing of particularly vulnerable students who are immunocompromised, or have family members who are.

The Court in its November 24, 2021, Order, cited *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021), in which Judge Cogan of this District noted, "[s]ince its emergence, COVID-19 has killed over 4.5 million people

41

worldwide, with over 670,000 of those deaths taking place in the United States," and vaccination is "one of the most highly regarded" tools available to "reduce viral transmission."  Now, as of the date of the filing of this Memorandum and Order, COVID-19 has killed more than 5.7 million people worldwide.[16] More than 900,000 of those deaths have taken place in the United States.[17]

As Dr. Michelle E. Morse provided in her affidavit, "from a public safety perspective, vaccination provides a more certain and verifiable record of immunity than that afforded by prior COVID-19 infection," and consequently, "vaccination is a major public health imperative."  (ECF No. 79-2, Appx. B, ¶¶ 20-21.)  "In particular, vaccination of individuals providing City services and working in City facilities will save lives, protect public health, and promote public safety."  (*Id.* at ¶ 21.)  Available scientific and medical data supports the use of vaccination as a lifesaving public policy measure, as data from the "Centers for Disease Control and Prevention shows that

---

[16] *Coronavirus World Map: Tracking the Global Outbreak*, N.Y. TIMES (updated Feb. 11, 2022), https://www.nytimes.com/interactive/2021/world/covid-cases.html.
[17] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES (updated Feb. 11, 2022), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

people who are unvaccinated are at a much greater risk than those who are fully vaccinated to die from Covid-19."[18]

All available scientific and medical information is for the government and its agencies—and not for this Court—to formulate into the policies the City and State consider to be in the best interest of the public health and safety. The Court's role is limited to assessing claims of irreparable harm, the likelihood of success on the merits, and balancing the competing claims of injury and the public consequences of granting relief. In this case, for the second time, the Court considers that the equities and the public interest clearly disfavor injunctive relief.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order, accompanied by the Defendant unions' "supporting" letter, is DENIED.

**SO ORDERED.**

Dated:      February 11, 2022
            Brooklyn, New York

                                    /s/
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

---

[18] *Id.*