# 23-655

## In the
# United States Court of Appeals
## For the Second Circuit



NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA BRYAN, RENA GELLMAN, FONTINA LAMBOS, KERRY BEN-JACOB, EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA NARCISO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO,

*Plaintiffs-Appellants,*

*(See inside cover for continuation of caption and appearances)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

## JOINT APPENDIX
### Volume IV of VII (Pages JA-815 – JA-1081)

STROOCK & STROOCK
  & LAVAN LLP
*Attorneys for Defendants-Appellees
  United Federation of Teachers,
  Local 2, American Federation of
  Teachers, AFL-CIO, Michael
  Mulgrew, Council of Supervisors
  and Administrators and Mark
  Cannizzaro*
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aherskowitz@stroock.com
aklinger@stroock.com
dkolker@stroock.com

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040
agraff@scherlawfirm.com

NEW YORK CITY LAW DEPARTMENT
  APPEALS DIVISION
*Attorneys for Defendants-Appellees
  New York City Department of Education
  and Meisha Porter*
100 Church Street
New York, New York 10007
(212) 356-2067
jtownsen@law.nyc.gov

———————————————

ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN
MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANE PAGEN, LYNN PEPE,
STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ, SORAYA
SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY MUSSAFI, JESSICA
NICCHIO, DORCA GENAO, RACHEL MANISCALCO, JAMES HOFFMAN,
SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES DIPROSSIMO, CAROLA
MARTINEZ-VANBOKKEM, AYSE USTARES, ELIZABETH FIGUEROA, DIANNE
BAKER-PACIUS, NICOLE MOORE, ELIZABETH PLACENCIO, DEBBIE
BERTRAM, KIMBERLI MADDEN, FRAN SCHMITTER, VICTORIA RUSSO, PAUL
CIFARELLI, DANIELLE HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI
BENEDUCE, ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO,
JEANEAN SANCHEZ, MARIE MOSLEY, TARA PALLADINO,
DANIELLE MCGUIRE, JULIA HARDING, LEAH KUKLA, STEPHANIE
FRANZESE, JULIA BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE,
AURA MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER
ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO, LORRAINE
MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU and
HENRIETTA SHAYA,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER,
UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION
OF TEACHERS, AFL-CIO, MICHAEL MULGREW, COUNCIL OF SUPERVISORS
AND ADMINISTRATORS, MARK CANNIZZARO, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, HENRY GARRIDO, SHAUN D. FRANCOIS, I,
FRANCINE FRANCIS, MARTIN F. SCHEINMAN, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES, LLC, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 372, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees.*
*(See inside cover for additional appearances)*

———————————————

————————————————

COHEN, WEISS AND SIMON LLP
*Attorneys for Defendants-Appellees*
  *District Council 37, AFSCME AFL-CIO,*
  *Henry Garrido, Shaun D. Francois, I,*
  *Francine Francis, District Council 37,*
  *AFSCME AFL-CIO, Local 372 and*
  *District Council 37, AFSCME*
  *AFL-CIO, Local 1251*
900 3ʳᵈ Avenue, Suite 2100
New York, New York 10022
(212) 356-0216
pdechiara@cwsny.com

VIGORITO, BARKER, PATTERSON,
  NICHOLS & PORTER, LLP
*Attorneys for Defendants-Appellees*
  *Martin F. Scheinman, Scheinman*
  *Arbitration and Mediation Services,*
  *LLC and Scheinman Arbitration and*
  *Mediation Services*
300 Garden City Plaza, Suite 308
Garden City, New York 11530
(516) 282-3355
g.weinstock@vbpnplaw.com
a.medina@vbpnplaw.com

————————————————

i

# Table of Contents

**Page**

Docket Entries ............................................................ JA-1

Complaint, Dated November 17, 2021 ...........................................JA-49

    Exhibit A to Complaint -
    E-Mail from NYC Department of Education to
    Jeannine Lam, Dated October 2, 2021 .....................................JA-78

    Exhibit B to Complaint -
    Secretary Collective Bargaining Agreement (CBA) ................JA-80

    Exhibit C to Complaint -
    Paraprofessional Collective Bargaining Agreement (CBA) .....JA-184

    Exhibit D to Complaint -
    Teachers Collective Bargaining Agreement (CBA) .................JA-251

Proposed Order to Show Cause for a Temporary Restraining
    Order and a Preliminary Injunction ...........................................JA-489

Emergency Affirmation of Austin Graff, for Plaintiffs,
    in Support of Order to Show Cause,
    Dated November 17, 2021 ......................................................JA-497

Affidavit of Nicole Broecker, Plaintiff, in Support of
    Order to Show Cause, Sworn to November 16, 2021 ...............JA-501

Affidavit of Jeannine Lam, Plaintiff, in Support of
    Order to Show Cause, Sworn to November 15, 2021 ...............JA-503

    Exhibit 1 to Lam Affidavit -
    E-Mail from Jeannine Lam to Michael Mulgrew,
    Dated November 13, 2021 ......................................................JA-506

    Exhibit 2 to Lam Affidavit -
    Redacted E-Mail from Jeannine Lam to Austin Graff,
    Dated November 12, 2021 ......................................................JA-508

    Exhibit 3 to Lam Affidavit -
    Teachers Collective Bargaining Agreement (CBA)
    (Reproduced herein at pp. JA-251–JA-488) .............................JA-511

Affidavit of Stella Porto, Plaintiff, in Support of Order
    to Show Cause, Sworn to November 16, 2021 ........................JA-512

Affidavit of Gina Porcello, Plaintiff, in Support of Order
    to Show Cause, Sworn to November 15, 2021 ........................JA-514

ii

**Page**

Exhibit 1 to Porcello Affidavit -
Secretary Collective Bargaining Agreement (CBA)
(Reproduced herein at pp. JA-80–JA-183) ..............................JA-516

Affidavit of Dina Hussien, Plaintiff, in Support of Order
to Show Cause, Sworn to November 15, 2021 ........................JA-517

Exhibit 1 to Hussien Affidavit -
Paraprofessional Collective Bargaining Agreement (CBA)
(Reproduced herein at pp. JA-184–JA-250) ............................JA-520

Exhibit A  -
E-Mail from NYC Department of Education to
Jeannine Lam, Dated October 2, 2021
(Reproduced herein at pp. JA-78–JA-79) ................................JA-520

Plaintiffs' Memorandum of Law in Support of Motion,
Dated November 17, 2021 ......................................................JA-521

Order to Show Cause for a Temporary Restraining Order and
a Preliminary Injunction, Dated November 17, 2021 ...............JA-543

Defendants New York City Department of Education and
Meisha Porter's Memorandum of Law in Opposition
to Motion, Dated November 19, 2021......................................JA-546

Declaration of Andrea O'Connor, for Defendants New York
City Department of Education and Meisha Porter, in
Opposition to Order to Show Cause,
Dated November 19, 2021 ......................................................JA-580

Exhibit A to O'Connor Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and the United Federation of Teachers, Local 2,
AFT, AFL-CIO*, Dated September 10, 2021,
with Cover Letter ...................................................................JA-583

Exhibit B to O'Connor Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and the Council of Supervisors and Administrators,*
Dated September 15, 2021, with Cover Letter.........................JA-602

iii

Page

Exhibit C to O'Connor Declaration -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021 ...............................................................JA-617

Exhibit D to O'Connor Declaration -
Transcript of Proceedings, in the Matter of *Michael Kane v.
Bill De Blasio, et al.*, 21 Civ. 7863 (S.D.N.Y.)(VEC),
Dated October 12, 2021 .............................................................JA-624

Exhibit E to O'Connor Declaration -
Affidavit of Vicki Bernstein, in Opposition to Order to Show
Cause, Sworn to November 19, 2021.........................................JA-699

Exhibit F to O'Connor Declaration -
Various Arbitration Awards .......................................................JA-702

Defendant United Federation of Teachers, Local 2, AFL-CIO's
Memorandum of Law in Opposition to Order to Show Cause,
Dated November 19, 2021 .........................................................JA-709

Declaration of Alan M. Klinger, for Defendants United
Federation of Teachers, Local 2, AFL-CIO, in Opposition
to Order to Show Cause, Dated November 19, 2021 ................JA-737

Exhibit A to Klinger Declaration -
Declaration of Impasse, Dated September 1, 2021 ...................JA-745

Exhibit A to Declaration of Impasse -
E-Mail from Renee Campion to Harry Nespoli,
Dated July 27, 2021 ...............................................................JA-760

Exhibit B to Declaration of Impasse -
Order of Dave A. Chokshi, M.D. Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
or Testing for Staff in Public Healthcare Settings,
Dated July 21, 2021 ...............................................................JA-762

Exhibit C to Declaration of Impasse -
COVID-Safe Requirement: Frequently Asked Questions,
Issued August 11, 2021...........................................................JA-765

Exhibit D to Declaration of Impasse -
Letter from Harry Nespoli to Honorable Dean Fuleihan,
Emma Wolfe and Renee Campion, Dated August 12, 2021 .JA-775

iv

**Page**

Exhibit E to Declaration of Impasse -
Letter from Harry Nespoli to Honorable Dean Fuleihan,
Emma Wolfe and Renee Campion, Dated August 17, 2021 .JA-777

Exhibit F to Declaration of Impasse -
Order of Dave A. Chokshi, M.D. Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
for Department of Education Employees, Contractors
and Others, Dated August 24, 2021 ......................................JA-779

Exhibit B to Klinger Declaration -
Letter from William M. Conley to Meisha Porter and
Michael Mulgrew Regarding Appointment of Mediator,
Dated September 3, 2021 ...........................................................JA-783

Exhibit C to Klinger Declaration -
E-Mail from Alan M. Klinger to William M. Conley,
Dated September 6, 2021 ...........................................................JA-784

Exhibit D to Klinger Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and International Brotherhood of Teamsters,
Local 237,* Dated September 15, 2021, with Cover Letter........JA-785

Exhibit E to Klinger Declaration -
Amended Order to Show Cause for a Temporary Restraining
Order and a Preliminary Injunction, in the Matter of *The New
York City Municipal Labor Committee v. The City of New
York, et al.,* Index No. 158368/2021,
Dated September 9, 2021 ...........................................................JA-801

Declaration of Beth A. Norton, for Defendants United
Federation of Teachers, Local 2, AFL-CIO, in Opposition
to Order to Show Cause, Dated November 19, 2021 ...............JA-804

Exhibit A to Norton Declaration -
E-Mail from Jeannine Lam to Beth A. Norton,
Dated November 12, 2021 .........................................................JA-809

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated November 24, 2021, with Attachment............................JA-812

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated November 24, 2021 ......................JA-814

v

**Page**

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated November 24, 2021 ......................................................JA-815

Plaintiffs' Memorandum of Law, Dated November 30, 2021 ......JA-843

Defendants United Federation of Teachers, Local 2, AFL-CIO's
Supplemental Memorandum of Law,
Dated December 7, 2021 ........................................................JA-856

Declaration of Alan M. Klinger, for Defendant
United Federation of Teachers, Local 2, AFLO-CIO,
Dated December 7, 2021 ........................................................JA-880

Defendants New York City Department of Education
and Meisha Porter's Supplemental Briefing,
Dated December 7, 2021 ........................................................JA-883

Appendix A to Klinger Declaration -
Affirmation of Michelle E. Morse,
Dated November 15, 2021 ......................................................JA-907

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated December 9, 2021 ........................................................JA-915

Plaintiff's Response to the Court's Order to Show Cause
Regarding The Plaintiff's Standing,
Dated December 13, 2021 ......................................................JA-918

Defendants New York City Department of Education
and Meisha Porter's Memorandum of Law,
Dated December 20, 2021 ......................................................JA-935

Defendant United Federation of Teachers, Local 2, AFL-CIO's
Reply to Plaintiffs' Response to The Courts Order to Show
Cause Regarding Plaintiffs' Standing,
Dated December 20, 2021 ......................................................JA-944

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated December 20, 2021 ......................................................JA-959

Amended Complaint, Dated January 10, 2022 ............................JA-960

Exhibit A to Amended Complaint -
UFT's Webpage "About the UFT" ..........................................JA-1021

Exhibit B to Amended Complaint -
CSA's Webpage "What is CSA" ..............................................JA-1023

vi

**Page**

Exhibit C to Amended Complaint -
Local 372's Webpage "About Us"..............................................JA-1026

Exhibit D to Amended Complaint -
Local 1251's Webpage "About Us"...........................................JA-1029

Exhibit E to Amended Complaint -
UFT Arbitration Award, Dated September 10, 2021,
with Cover Letter ....................................................................JA-1034

Exhibit F to Amended Complaint -
Scheinman's Arbitration Award, Dated September 15, 2021,
with Cover Letter ....................................................................JA-1053

Exhibit G to Amended Complaint -
Order of The Commissioner of Health and Mental Hygiene,
Dated September 15, 2021 .......................................................JA-1068

Exhibit H to Amended Complaint -
New York Post Article Titled "DOE Skips Deadline to
Suspend Employees Who Havent's Show Proof of
Second Vax".............................................................................JA-1072

Exhibit I to Amended Complaint -
UFT's Declaration of Impasse, Dated September 1, 2021,
with Exhibit A to F...................................................................JA-1082

Exhibit J to Amended Complaint -
Letter from William M. Conley to Meisha Porter and
Michael Mulgrew Regarding Appointment of Mediator,
Dated September 3, 2021
(Reproduced herein at p. JA-783) .............................................JA-1126

Exhibit K to Amended Complaint -
E-Mail from Alan M. Klinger to William M. Conley,
Dated September 6, 2021
(Reproduced herein at p. JA-784) .............................................JA-1126

Exhibit L to Amended Complaint -
Joint Intentions and Commitments.............................................JA-1127

Exhibit M to Amended Complaint -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021
(Reproduced herein at pp. JA-617–JA-623) .............................JA-1365

**Page**

Exhibit N to Amended Complaint -
Waiver ......................................................................JA-1366

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 4, 2022 ...........................................JA-1367

Letter from Alan M. Klinger to Honorable Kiyo A. Matsumoto,
Dated February 4, 2022 ...........................................JA-1370

Letter from Andrea O'Connor to Honorable Kiyo A.
Matsumoto, Dated February 7, 20222 .......................JA-1373

Letter from Karolina Wiaderna to Honorable Kiyo A.
Matsumoto, Dated February 7, 2022 ........................JA-1378

Proposed Order to Show Cause .....................................JA-1380

Affirmation of Austin Graff, for Plaintiffs, in Support of
Order to Show Cause, Dated February 8, 2022 ........JA-1382

Declaration of James Hoffman, for Defendant New York City
Department of Education, Dated February 4, 2022 .................JA-1386

Declaration of Nathalie Charles, Dated February 4, 2022 ...........JA-1388

Declaration of Serina Mendez, Dated February 4, 2022 ..............JA-1390

Declaration of Tara Palladino, Dated February 7, 2022 ..............JA-1392

Declaration of Janelle Lotito, Dated February 8, 2022 ................JA-1394

Exhibit A to Graff Affirmation -
Termination Notice, Dated January 31, 2022,
with E-Mails ..............................................................JA-1396

Exhibit B to Graff Affirmation -
New York City Department of Education
Health Screening Questionnaire ................................JA-1402

Exhibit C to Graff Affirmation -
Plaintiffs' Antibody Tests for Covid-19 ...................JA-1403

Exhibit D to Graff Affirmation -
I Love You Day Flyer ...............................................JA-1408

Exhibit E to Graff Affirmation -
Job Post of Indeed ...................................................JA-1409

viii

**Page**

Exhibit F to Graff Affirmation -
Plaintiffs' Memorandum of Law, in Support of Motion,
Dated February 8, 2022 ...........................................................JA-1412

Letter from Alan M. Klinger to Honorable Kiyo A. Matsumoto,
Dated February 8, 2022.....................................................JA-1433

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 8, 2022.....................................................JA-1438

Defendants New York City Department of Education and
Meisha Porter's Memorandum of Law in Opposition to
Motion, Dated February 8, 2022 .................................................JA-1445

Appendix A to Memorandum of Law -
Decisions and Orders of Honorable Lyle E. Frank,
Dated January 21, 2022...............................................................JA-1488

Appendix B to Memorandum of Law -
Affirmation of Michelle E. Morse,
Dated November 15, 2021 ........................................................JA-1492

Plaintiffs' Reply Memorandum of Law in Further Support of
Motion, Dated February 10, 2022 .............................................JA-1500

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 11, 2022.........................JA-1514

Order to Show Cause for a Temporary Restraining Order and
Preliminary Injunction, Dated February 10, 2022.....................JA-1516

Interim Order of Honorable Judy H. Kim,
Dated February 10, 2022...........................................................JA-1520

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 11, 2022...........................................................JA-1522

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated February 11, 2022...........................................................JA-1523

Notice of Motion to Dismiss Amended Complaint,
Dated April 4, 2022...................................................................JA-1566

Declaration of Andrea O'Connor, for Defendants
New York City Department of Education and Meisha Porter,
in Support of Motion, Dated April 4, 2022 ...............................JA-1569

Exhibit A to O'Connor Declaration -
Order of Honorable Lynn R. Kotler, Dated March 15, 2022 ....JA-1572

ix

**Page**

Memorandum of Law, Dated April 4, 2022 ..................................JA-1582

Notice of Motion to Dismiss, Dated April 4, 2022 ......................JA-1614

Memorandum of Law in Support of Motion,
    Dated April 4, 2022.................................................................JA-1618

Reply Memorandum of Law in Further Support of Motion,
    Dated May 20, 2022................................................................JA-1642

Notice of Motion to Dismiss Amended Complaint,
    Dated April 4, 2022.................................................................JA-1655

Memorandum of Law in Support of Motion,
    Dated April 4, 2022.................................................................JA-1657

Notice of Motion to Dismiss Complaint,
    Dated April 4, 2022.................................................................JA-1682

Martin F. Scheinman, Scheinman Arbitration and Mediation
    Services and Scheinman Arbitration and Mediation
    Services, LLC's Memorandum of Law in
    Support of Motion, Dated April 4, 2022 ..................................JA-1686

Declaration of Karolina Wiaderna, for Defendants
    Martin F. Scheinman, Scheinman Arbitration and Mediation
    Services and Scheinman Arbitration and Mediation Services,
    LLC, in Support of Motion, Dated April 4, 2022 ....................JA-1705

Affirmation of Austin Graff, for Plaintiffs,
    in Opposition to Motion, Dated May 9, 2022 ...........................JA-1707

Exhibit A to Graff Affirmation -
Decisions by Scheinman Arbitration .........................................JA-1709

Exhibit B to Graff Affirmation -
Decisions by Scheinman Arbitration .........................................JA-1713

Exhibit C to Graff Affirmation -
Arbitration Award, Dated October 2, 2021 ...............................JA-1720

Exhibit D to Graff Affirmation -
Arbitration Award, Dated September 25, 2021..........................JA-1722

Exhibit E to Graff Affirmation -
Arbitration Award, Dated October 4, 2021 ...............................JA-1728

Exhibit F to Graff Affirmation -
Arbitration Award, Dated October 4, 2021 ...............................JA-1735

x

**Page**

Exhibit G to Graff Affirmation -
Notifications from New Yor State Department of Labor..........JA-1740

Plaintiffs' Memorandum of Law in Opposition to Motion,
Dated May 9, 2022 ....................................................................JA-1743

Memorandum of Law in Support of Motion,
Dated May 24, 2022 ..................................................................JA-1794

Reply Memorandum of Law in Further Support of Motion,
Dated May 24, 2022 ..................................................................JA-1808

Martin F. Scheinman, Scheinman Arbitration and Mediation
Services and Scheinman Arbitration and Mediation
Services, LLC's Reply Memorandum of Law in Further
Support of Motion, Dated May 24, 2022 ..................................JA-1823

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated July 7, 2022 ....................................................................JA-1834

Exhibit A to Letter -
New York Post Titled "DOE Suit Aims to Keep at Lease 82
Teachers Suspended without Pay Over Fake Vaccine Cards",
Dated July 6, 2022 ....................................................................JA-1837

Exhibit B to Letter -
Opinion and Order of Hon. Martin F. Scheinman,
Dated June 27, 2022 ..................................................................JA-1843

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated July 8, 2022 ....................................................................JA-1857

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated July 11, 2022 .................................JA-1859

Letter from Karolina Wiaderna to Honorable
Kiyo A. Matsumoto, Dated July 11, 2022 .................................JA-1861

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 16, 2023.........................JA-1862

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 17, 20232 .........................................................JA-1864

Exhibit 1 to Letter -
Announcement of Mayor BioGraphy News Officials,
Dated February 6, 2023 .............................................................JA-1866

xi

**Page**

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
    Dated February 17, 2023 ............................................................JA-1868

Letter from Hanan B. Kolko to Honorable Kiyo A. Matsumoto,
    Dated February 17, 2023 ............................................................JA-1870

Letter from Karolina Wiaderna to Honorable
    Kiyo A. Matsumoto, Dated February 20, 2023 ........................JA-1873

Memorandum and Order of Honorable Kiyo A. Matsumoto,
    Dated March 30, 2023 .................................................................JA-1874

Judgment of The United States District Court Eastern District
    of New York, Dated March 31, 2023, Appealed From .............JA-1916

Notice of Appeal, Dated April 20, 2023 .......................................JA-1917

Case 23-655, Document 74, 06/05/2023, 3525006, Page15 of 281

JA-815

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
Nicole BROECKER,
et al,


                    Plaintiffs,

                 - against -

New York City Department of Education,
City of New York, Meisha Porter, in her
official and individual capacities, United
Federation of Teachers, Local 2, American
Federation of Teachers, AFL-CIO, Michael
Mulgrew, in his official and individual
capacities, John Doe #1-10, in their
official and individual capacities, and
Jane Doe #1-10 in their official and
individual capacities,


                    Defendants.
--------------------------------X
```

**MEMORANDUM AND ORDER**
21-CV-6387 (KAM)(RLM)

**MATSUMOTO, United States District Judge:**

The 83 named Plaintiffs are individuals (collectively

"Plaintiffs") who have not received at least a first dose of a

COVID-19 vaccine and are employees at schools operated by the New

York City Department of Education ("NYC DOE").[1]  Named Defendants

are the NYC DOE, the City of New York, Meisha Porter, the

Chancellor of the NYC DOE, the United Federation of Teachers,

Local 2, American Federation of Teachers, AFL-CIO ("UFT"), and

Michael Mulgrew, President of the UFT (collectively

---

[1] Named Plaintiffs include a tenured principal, an assistant principal, tenured
teachers, paraprofessionals, an education administrator, a speech language
pathologist, a social worker, a parent coordinator, a guidance counselor, a
school counselor, and a secretary.  (ECF No. 1, Compl., at pp. 14-15.)

1

"Defendants").  Defendants NYC DOE and the City of New York are
entities responsible for enacting and enforcing a COVID-19
vaccination mandate (the "Vaccination Mandate") issued on August
24, 2021, requiring that all NYC DOE employees receive at least a
first dose of a COVID-19 vaccination by September 27, 2021, in
order to work at NYC DOE schools.  Defendant UFT is a labor
organization through which certain named Plaintiffs are covered
by a collective bargaining agreement ("CBA") with the NYC DOE.

Plaintiffs allege three categories of claims in their
Complaint. First, they allege that the Order violates their right
to procedural due process under the Due Process Clause of the
Fourteenth Amendment because Plaintiffs have a property interest
in their pay.  (ECF No. 2-10, Pl. Mem., at p. 1.)  Second,
Plaintiffs allege that the Vaccine Mandate violates their
statutory and contractual rights, as Plaintiffs have a right to
have charges proffered against them and have a hearing before
"discipline" is imposed pursuant to N.Y. Education Law § 3020-1,
or N.Y. Civil Service Law § 75, or the applicable CBA.  (ECF No.
2-10, Pl. Mem., at pp. 1-2.)  Third, Plaintiffs allege collusion
and aiding and abetting under 42 U.S.C. § 1983 against the UFT,
Mulgrew, Porter, and unnamed Jane and John Doe Defendants.  (ECF
No. 1, Compl. pp. 23-28.)

Plaintiffs seek a preliminary injunction to enjoin and
restrain (1) the Defendants from withholding pay from any and all

2

Case 23-655, Document 74, 06/05/2023, 3525006, Page17 of 281

JA-817

tenured principals, assistant principals, and teachers who have failed to take a COVID-19 vaccine; (2) the Defendants from withholding pay from any and all civil service employees entitled to N.Y. Civil Service Law § 75 rights who have failed to take a COVID-19 vaccine; (3) the Defendants from withholding pay from any and all employees of the NYC DOE who have failed to take a COVID-19 vaccine and who, as a term of their union's collective bargaining agreement with the NYC DOE, allegedly cannot be terminated or disciplined without a hearing; (4) the NYC DOE from disciplining, including but not limited to terminating, tenured principals, assistant principals, and teachers who have failed to take a COVID-19 vaccine without proffering charges and specifications and granting the tenured employees a hearing on the charges; (5) the NYC DOE from disciplining, including but not limited to terminating, any and all civil service employees entitled to N.Y. Civil Service Law § 75 rights who have failed to take a COVID-19 vaccine, without proffering charges and specifications; and, (6) the NYC DOE from disciplining, including but not limited to terminating any and all employees of the NYC DOE who have failed to take a COVID-19 vaccine and who, as a term of their union's collective bargaining agreement with the NYC DOE, allegedly cannot be terminated or disciplined without proffering charges and specifications and a hearing.  (ECF No. 2, Pl. Proposed Order to Show Cause, at pp. 2-4.)

3

For the reasons stated below, Plaintiffs' motion for injunctive relief is DENIED.

## BACKGROUND

### I.  Factual Background

The COVID-19 pandemic and its devastating, lasting effects on society are well known.  The City of New York has enacted a series of COVID-19 related safety mandates and protocols as part of the City's effort to slow and contain the spread of the novel coronavirus.  On August 24, 2021, prior to the commencement of the New York City school year, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), issued an order requiring all NYC DOE employees to show proof of compliance with the Vaccine Mandate, meaning receipt of at least one dose of vaccination against COVID-19 by September 27, 2021.  (*See* ECF No. 18, Def. NYC DOE Mem. in Opp. at p. 1.)

On September 10, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the Vaccination Mandate.  (*See* ECF No. 19-1, O'Connor Decl., Ex. A (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the UFT (hereafter "Impact Arbitration Award"), at 4).)

4

Following expedited mediation and discussions between the NYC DOE, the City of New York, and the UFT, the appointed arbitrator, on September 10, 2021, the arbitrator issued a binding arbitration decision ("Impact Arbitration Award"), which established in relevant part (1) a processes for religious and medical exemptions and accommodation requests, namely, processes for staff to apply for, and appeal from adverse determinations for medical and religious accommodations to an independent arbitration panel (and the ability to remain on the DOE payroll and continued medical benefits coverage while such applications and appeals are pending); (2) options to voluntarily separate from DOE service with certain compensation benefits, or to elect for an extended non-disciplinary leave without pay ("LWOP"), all while maintaining health benefits until September 5, 2022; and (3) that as of December 1, 2021, the DOE may seek to unilaterally separate employees who have not complied with the Vaccination Mandate, or who have not obtained an approved exemption or accommodation and have not opted for either separation option. (*See* ECF No. 19-1, Impact Arbitration Award at pp. 6-18; ECF No. 18, Def. NYC DOE Opp. Mem. at p. 5; ECF No. 20, Def. UFT Opp. Mem., at p. 3.)  The Impact Arbitration Award further provides that employees extending their LWOP period to September 5, 2022, may return immediately to their positions at NYC DOE schools upon demonstrating compliance with the Vaccination Mandate.  (*Id.*)  As

to separation of service, the Impact Arbitration Award restricted the NYC DOE from seeking to separate DOE employees on LWOP due to non-compliance with the Vaccination Mandate, prior to December 1, 2021. (*See* ECF No. 19-1, Impact Arbitration Award at pp. 16-18.) Under the terms of the Impact Arbitration Award, on December 1, 2021, the separation restriction on the NYC DOE will be lifted, and the NYC DOE is authorized as of that date to seek the termination of noncompliant employees through existing procedures. (ECF No. 19-1, Impact Arbitration Award at pp. 17-18; ECF No. 18, Def. NYC DOE Opp. Mem. at p. 5; ECF No. 20, Def. UFT Opp. Mem., at p. 3.) Finally, and importantly, the Impact Arbitration Award states that the processes contained in the text of the Impact Arbitration Award for NYC DOE employees challenging the Vaccination Mandate or seeking exemptions,

> [S]hall constitute the exclusive and complete administrative processes for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

(ECF No. 19-1, Impact Arbitration Award at p. 13.) The UFT-specific Impact Arbitration Award covers the majority, but not

all, of named Plaintiffs.  (ECF No. 18, Def. NYC DOE Opp. Mem. at p. 6.)  The UFT notified its members of the Impact Arbitration Award on September 10, 2021, by circulating the Award and a "plain-language" explanation to UFT members.  (ECF No. 20, Def. UFT Opp. Mem. at p. 13.)

Following the issuance of the September 10, 2021, Impact Arbitration Award, the City's Office of Labor Relations engaged in impact bargaining with the remaining unions representing NYC DOE employees, including the Council of Supervisors and Administrators ("CSA"), which represents NYC DOE principals and assistant principals, and District Council 37 ("DC 37"), which represents many school-based employees such as school aides, school food workers and Parent Coordinators.  (*Id.*; O'Connor Decl. at Ex. B, September 15, 2021, Arbitration Award Decision in Board of Education of the City School District of the City of New York and the CSA.)  On September 15, 2021, an arbitration decision in the matter of the City and the CSA was issued that mirrored the Impact Arbitration Award, and on October 3, 2021, the City and the DC 37 reached an agreement that also mirrors the Impact Arbitration Award.  (O'Connor Decl. at C, Memorandum of Agreement DC 37, City of New York, and the Board of Education of the City School District for the City of New York,

dated October 3, 2021.)[2]  This, all parties were subject to similar terms regarding the Vaccine Mandate procedures.

Plaintiffs were notified on October 2, 2021, that lack of compliance with the Vaccination Mandate would result in placement on LWOP as of October 4, 2021, and that NYC DOE would seek to separate noncompliant employees as of December 1, 2021 if they did not opt to extend their LWOP status and remained out of compliance with the Vaccination Mandate.  (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

Plaintiffs filed the Complaint in this action on November 17, 2021, 51 days after the September 27, 2021, deadline for demonstrating compliance with the Vaccine Mandate, and 44 days after the October 4, 2021.  (ECF No. 1, Compl.)  As of the date of Defendants' responses on November 19, 2021, seven of the named Plaintiffs had availed themselves of the accommodation request process, and decisions under the Impact Arbitration Award have been issued in connection with accommodation requests (unless withdrawn), made by Plaintiffs Porcello (who withdrew her request), Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos. (ECF No. 19-6, Ex. F.)  Plaintiffs' counsel represented to the

---

[2] Though not all named Plaintiffs are members of the UFT, Plaintiffs have only named the UFT as a Defendant. The Court will restrict its analysis to the specific claims brought against the UFT, though the Court will incorporate into its discussion *infra* that the Impact Arbitration Award reached between the UFT and the Board of Education of the City School District for the City of New York "mirrors" the agreements reached between the Board of Education of the City School District for the City of New York and the CSA and DC 37.

Court during the November 23, 2021, show cause hearing that to
date, no other Plaintiffs have availed themselves of the
processes for seeking accommodations, and no Plaintiffs have
received a COVID-19 vaccination.

## II.  Procedural Background

Though unrelated to the proceedings currently before
the Court, the instant action is part of a larger body of
litigation related to COVID-19 vaccine mandates in New York.
Specifically, the NYC DOE's Vaccination Mandate has been the
subject of several legal challenges, unsuccessful thus far,
brought in state and federal courts by plaintiffs seeking to
enjoin the enforcement of the Vaccination Mandate. *See, e.g.*,
*Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC),
2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021) (injunction denied)
*aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021); *Kane
v. de Blasio*, No. 21-CV-7863 (VEC) (injunction denied), 2021 WL
5037401 (S.D.N.Y. Oct. 12, 2021); *Keil v. The City of New York,
et al.*, 21-cv-8773 (S.D.N.Y.)(VEC) (injunction denied); *New York
City Municipal Labor Comm.* ("*MLC*")*, et al. v. City of New York,
et al.*, Index No. 158368/2021 (Sup. Ct. N.Y. Cnty. Sep. 2021)
(injunction denied).  The courts in *Maniscalco*, *Kane*, *Keil*, and
*MLC*, denied the plaintiffs' motions for temporary restraining
orders and/or preliminary injunctions finding, in relevant part,
a lack of likelihood of success on the merits.  *See id.*  The

9

Second Circuit also recently upheld a New York State vaccine
mandate in the context of healthcare employees. *See We The
Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983 (2d
Cir. Nov. 4, 2021), *opinion clarified*, No. 21-2179, 2021 WL
5276624 (2d Cir. Nov. 12, 2021). It is against this backdrop of
recent caselaw that Plaintiffs have chosen to file their
Complaint, forty-four days after Plaintiffs' placement on LWOP
status. (ECF No. 2, Pl. Emergency Mot.).

　　Plaintiffs filed their class action Complaint, on their
own behalf and on behalf of all persons similarly situated, on
November 17, 2021. (ECF No. 1, Compl., at ¶¶ 100-102.) On the
same date, Plaintiffs filed an Emergency Motion for Preliminary
Injunction and Temporary Restraining Order. (ECF No. 2, Pl.
Motion for Preliminary Injunction and Temporary Restraining Order
("PI/TRO").) The Court, also on November 17, 2021, issued an
Order to Show Cause, ordering: (1) personal service on all named
Defendants to be made on or before 9:30 am, Thursday, November
18, 2021; (2) Defendants to respond to the Order to Show Cause
via ECF by Friday, November 19, 2021, at 3:00 pm; and, (3)
counsel for the named Plaintiffs and Defendants to appear for a
hearing before the Court, with their clients with the opportunity
to present testimony, on Tuesday, November 23, 2021, at 12:00 pm.
(ECF No. 11, Nov. 17, 2021, Order to Show Cause ("OSC").)

All named Defendants filed papers in opposition to Plaintiffs' motion for injunctive relief on November 19, 2021. Defendants NYC DOE and Ms. Porter filed a memorandum of law in opposition, the Declaration of Andrea O'Connor ("O'Connor Decl."), and attached exhibits.  (ECF No. 18, Def. NYC DOE Opp. Mem.; ECF No. 19, O'Connor Decl.)  Defendant UFT filed a memorandum of law in opposition, the Declaration of Alan M. Klinger ("Klinger Decl."), the Declaration of Beth Norton ("Norton Decl."), and attached exhibits.  (ECF No. 20, Def. UFT Opp. Mem.; ECF No. 21, Klinger Decl.; ECF No. 22, Norton Decl.)

The parties appeared before the Court on November 23, 2021, for a show cause hearing. During the show cause hearing, all parties requested supplemental briefing as to the specific issue of due process surrounding the forthcoming separation of nonexempt, unvaccinated Plaintiffs by the NYC DOE on and after December 1, 2021.  Specifically, the parties requested further briefing to address whether a vaccination requirement constitutes a legitimate condition of employment, and what, if any, due process requirements are implicated.  Given the parties' request, the Court will limit its analysis and decision as to the processes and procedures currently in the record governing the

JA-826

Plaintiffs' current LWOP period *prior* to separation, from October 4, 2021, up to and including November 30, 2021.[3]

## LEGAL STANDARD

The party seeking the preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted).

Here, the traditional preliminary injunction analysis is complicated by three distinctions given the nature of the relief Plaintiffs seek.  First, Plaintiffs seek a mandatory injunction against a government action taken in the public interest, and so must show both irreparable harm and a likelihood of success on the merits. *See Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 573-74 (2d Cir. 2002) ("In order to merit preliminary injunctive relief against 'government action taken in the public interest pursuant to a statutory or

---

[3] Plaintiffs sought expedited relief, and submitted matters for the Court's expedited consideration.  (ECF No. 2, Pl. Emergency Mot.)  Accordingly, the Court allowed Defendants to respond on an expedited basis. During the November 23, 2021, show cause hearing, the Court advised the parties it would decide the instant application for injunctive relief based on the parties' filings as of the date of the hearing, November 23, 2021. Consequently, Plaintiffs' belated submission (ECF No. 28) and Defendants' response (ECF No. 29) will not be entertained by this Court as part of this decision. In any event, even if the Court were to consider the belated submissions, the contents of the submissions would not impact the decision of the Court.

JA-827

regulatory scheme,' a plaintiff must show 'irreparable harm in the absence of an injunction *and* a likelihood of success on the merits.'") (internal citation omitted) (emphasis added).

Second, Plaintiffs allege constitutional violations, and "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Maniscalco*, 2021 WL 4344267, at *2 (citing *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)). As Plaintiffs allege that their procedural due process rights have been violated, "no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984), and the Court will focus its analysis on the other factors for establishing an entitlement to injunctive relief.

Third and finally, parties seeking injunctive relief are required to meet the higher standard of a mandatory injunction where, as here, (1) the injunctive relief sought would alter, rather than maintain the status quo or (2) the injunction would grant the movant substantially all the relief sought, which relief could not be undone even if defendants would prevail on the merits. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, *33-34 (2d Cir. 1995). Here, Plaintiffs are seeking, in relevant part, to be restored to NYC DOE payroll, after having been placed on LWOP well over a month ago, for their failure to

JA-828

comply with the Vaccination Mandate.  Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction, and must show a "clear" or "substantial" likelihood of success on the merits.  *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995); *Doninger v. Niehoff*, 527 F.3d 41, *47 (2d Cir. 2008)*.

## DISCUSSION[4]

As a threshold matter, the Court notes that Plaintiffs failed completely in their papers to address the existence and effect of the Impact Arbitration Award reached between the UFT, the Council of Supervisors and Administrators, and District Counsel 37, which provides critical context for evaluating the Plaintiffs' request for preliminary injunction.  The Court will consider and incorporate the September 10, 2021, Impact Arbitration Award, raised by Defendants, into its analysis.

I.    **Preliminary Injunction**

  A. **Likelihood of Success on the Merits**

Plaintiffs failed, in their motion papers and at oral argument during the November 23, 2021 show cause hearing, to establish a "clear" or "substantial" likelihood of success on the

---

[4] Plaintiffs' only potential reference to their Section 1983 claims regarding collusion and aiding and abetting in their memorandum of law is as follows: "the Plaintiffs have a high likelihood of success on the merits of their 42 U.S.C. 1983 causes of action [] and therefore should be granted the relief they request." (ECF No. 2-10, Pl. Mem., pp. 13, 18.) Plaintiffs do not cite to any case law in support of this argument, and the Court will not address these allegations as part of its preliminary injunction analysis.

merits on any of their claims. *See Tom Doherty Assocs.*, 60 F.3d 27 (2d Cir. 1995); *Doninger*, 527 F.3d at *47 (2d Cir. 2008).

First, it is dubious whether Plaintiffs have standing to challenge the terms of the Impact Arbitration Award, and similar awards and agreements, because their respective union representatives engaged on their behalf with the NYC DOE, which process resulted in the arbitration awards and agreement. *See Fleischer v. Barnard Coll.*, No. 20-4213, 2021 WL 5365581, at *4, n. 1 (2d Cir. Nov. 18, 2021) (because a union represented the adjunct professor plaintiff in the arbitration against the defendant, her employer college, plaintiff did not have standing to challenge the arbitration proceeding directly under the Federal Arbitration Act; she could only challenge the arbitration through her claim against the union for breach of its duty of fair representation.) (citing *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) ("[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.")). Plaintiffs have brought this action principally challenging their placement on LWOP, and the possibility of their separation from employment by the NYC DOE on or after December 1, 2021, both of which were the result of legitimate arbitrations between the City and the various unions representing the various categories of Plaintiffs. As Defendant

JA-830

UFT correctly argues, and as counsel for Defendant UFT and Defendant NYC DOE represented during the November 23, 2021, show cause hearing, Plaintiffs' claims fail to account for the fact that the binding arbitration award has become part of the collective bargaining agreement.  (ECF No. 20, Def. UFT Opp. Mem., at p. 4.)  Defendants' counsel confirmed to the Court during the November 23, 2021, show cause hearing that the arbitration between the UFT and the Board of Education of the City School District for the City of New York was a binding arbitration process, and that the resulting Impact Arbitration Award altered the contractual terms of the CBA.  Accordingly, Plaintiffs who are members of the UFT (and presumably the CSA and DC 37) have been placed on LWOP consistent with their CBAs and the incorporated arbitration awards.  (ECF No. 20, Def. UFT Opp. Mem., at p. 4.)

It is undisputed that Plaintiffs were not a party to the arbitration and negotiations that resulted in the Impact Arbitration Award and accordingly, their standing to challenge the Award is in doubt.  Even assuming that Plaintiffs do have standing and can appropriately challenge the terms of the Impact Arbitration Award which enables the NYC DOE to seek their separation from employment as of December 1, 2021, Plaintiffs still have not established a clear or substantial likelihood of success on the merits on their claims.

16

JA-831

The NYC DOE, in compliance with the Vaccination Mandate and for compelling public health reasons, cannot permit noncompliant, unvaccinated employees, absent exemption or accommodation, to work at NYC DOE schools, and the NYC DOE has acted pursuant to the terms of the Impact Arbitration Award for placing noncompliant, nonexempt employees on LWOP.[5]  The Impact Arbitration Award clearly explains the "exclusive" processes established for exemptions and accommodation requests and the appeals process. (ECF No. 19-1, Impact Arbitration Award, at pp. 6-13.)  The Impact Arbitration Award also clearly provides the procedures for leave, including procedures for extending LWOP, returning from LWOP, and a section on pregnancy and parental leave.  (*Id*. at pp. 13-16.)  Finally, the Impact Arbitration Award describes the options for separation, including on the part of the employee as well as on the part of the NYC DOE.  (*Id*. at pp. 16-18.)  Thus, the Impact Arbitration Award provides adequate processes for pre-deprivation notice and hearing.

---

[5] The NYC DOE argued in its papers and at the November 23, 2021, show cause hearing that employees separated under the terms of the Vaccination Mandate, and under the express terms of the Impact Arbitration Award, are not being "disciplined," but are being terminated based on their ineligibility for employment.  *See e.g. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing *O'Connor v. Board of Education*, 48 A.D.3d 1254 (4th Dept. 2008) *lv. denied* 10 N.Y.3d 928 (2008) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).  As noted *supra*, the parties have requested, and the Court has granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation are being "disciplined" or subject to a legitimate condition of employment, and thus the Court will not reach that issue here.

Plaintiffs will be afforded the processes required by the applicable CBA and the Impact Arbitration Award when and if the NYC DOE seeks separation, undermining Plaintiffs' arguments that they will be terminated in violation of their constitutional right to due process without a post-deprivation hearing. The Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) (property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (internal citations omitted).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Having found that Plaintiffs have a protected property interest in their continued employment, the Court next looks to whether the process they have been afforded upon LWOP placement and upon separation is constitutionally adequate. To determine whether process is adequate, the Court looks to "[f]ederal constitutional

standards rather than state statutes [to] define the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987).

Based on the record before the Court, the Court considers that both the pre-deprivation and post-deprivation processes currently afforded to Plaintiffs were and are constitutionally adequate. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 547 n. 12, 105 S.Ct. 1487 (1985) ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."). The pre-deprivation and post-deprivation proceedings articulated in the Impact Arbitration Award have been incorporated into the Plaintiffs' collective bargaining agreements. (*See* ECF No. 20, Def. UFT Opp. Mem. at p. 4.) Pre-deprivation processes "need not be elaborate[,]" and the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (citing *Loudermill*, 470 U.S. at 545-546, 105 S.Ct. 1487). Plaintiffs received ample notice of (1) the Vaccination Mandate, (2) their ability to seek religious and medical exemptions and appeals, (3) their placement on LWOP if they continued to be noncompliant with the terms of the Vaccination Mandate, and (4) their options and opportunity to respond. The widely publicized Vaccination Mandate was implemented on August 24, 2021. In the

case of the Plaintiffs with UFT membership, these Plaintiffs have had notice of the LWOP and potential separation processes and procedures since September 10, 2021, the date of the issuance of the Impact Arbitration Award.  (ECF No. 20, Def. UFT Opp. Mem. at p. 13.)  Similarly, the CSA member employees had notice as of September 15, 2021, and DC 37 member employees had notice as of October 3, 2021.  (ECF No. 18, Def. NYC DOE Opp. Mem. at p. 7.) Plaintiffs were then also notified on October 2, 2021, that if they were not in compliance with the Vaccination Mandate, they would be placed on LWOP as of October 4, 2021, and that NYC DOE would seek to separate them as of December 1, 2021, if they did not comply with the vaccine mandate or extend their LWOP status. (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991).  Though Plaintiffs note that the UFT was not accepting grievances related to the Vaccination Mandate, the UFT advised members inquiring about grievances that procedures regarding unvaccinated employees were governed by the binding Impact Arbitration Award which altered their CBA, which was circulated to UFT members "along with plain-language guidance of the Award's terms[.]"  (ECF No. 20, Def. UFT Opp. Mem. at p. 13).

20

**JA-835**

The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (noting that "CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process." (internal citations omitted); *see also Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (noting that guaranteed procedural rights could be satisfied by the pre-deprivation notice and hearing rights provided in the collective bargaining agreement grievance procedures) (citing *Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir.1987) (Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process).

Further, the Impact Arbitration Award provides for an expedited review process for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging their placement on LWOP. As of November 23, 2021, only seven named Plaintiffs have availed themselves of the processes available to them for seeking accommodations or exemptions. (*See* ECF No. 18, Def. NYC DOE Opp. Mem. at p. 24 ("Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of the process available to them to seek an accommodation with respect to the DOE Vaccination Mandate.").) As counsel for Defendant NYC DOE confirmed to the Court during

21

the November 23, 2021, show cause hearing, the remaining seventy-six named Plaintiffs have until November 30, 2021, to avail themselves of the procedures for requesting accommodations and exemptions, and opting to extend their LWOP status through September 5, 2022.  Finally, Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York State Supreme Court.  The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy.  *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").

　　　Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate through the procedures established in the CBAs governing the terms of Plaintiffs' employment, including the Impact Arbitration Award procedures, which provide grievance and arbitration procedures, and undisturbed, well-established state court procedures.

**B. Irreparable Harm**

Though, as referenced *supra*, Plaintiffs need not make any further showing of irreparable harm once constitutional deprivations have been alleged, the Court is compelled to note that the harms resulting from noncompliance with the NYC DOE Vaccination Mandate identified by Plaintiff are by no means *irreparable*. Plaintiffs' articulated harms are: loss of income while on LWOP, and their possible separation from NYC DOE, which they allege will occur without adequate processes. These pecuniary harms are neither irreparable nor sufficient to justify the presently requested injunctive relief.

To be sure, the Court does not dispute that a loss of income is a hardship. The loss of one's wages, particularly for those with financial commitments and dependents, is a real, tangible harm. In order to demonstrate an entitlement to injunctive relief, Plaintiffs may not simply identify a general loss. Instead, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. In particular, in the Second Circuit, "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510-11 (2d Cir. 2005)

23

("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)).

Similarly, the Supreme Court has also held that "the temporary loss of income, []does not usually constitute irreparable injury . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Here, should Plaintiffs prevail, monetary relief will be available to compensate their loss of income. Consequently, injunctive relief is not warranted.

Further, Plaintiffs' lengthy delay in seeking to enjoin the NYC DOE's intent to seek separation of noncompliant and nonexempt employees on December 1, 2021—an occurrence that was entirely known to Plaintiffs at least by October 2, 2021, if not earlier—greatly undermines the strength of Plaintiffs' "emergency" motion for preliminary injunction.  There was a delay of forty-four days between the date of Plaintiffs' actual placement on LWOP status and the filing of Plaintiffs' instant

24

JA-839

request for preliminary injunction.  (ECF No. 2, Pl. Emergency Mot.)  Plaintiffs' inaction does not convey a looming, irreparable harm, and does not invoke the "urgent need for speedy action to protect the plaintiffs' rights[,]" as is typical when injunctions are sought on an expedited basis.  *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).

   C.   **Balance of the Equities and D. The Public Interest**

        The Court finds that both the balance of equities and the public interest disfavor the injunctive relief requested by Plaintiffs.  As the Court has noted *supra*, the loss of income while on LWOP status undoubtedly presents a hardship to the Plaintiffs.  Plaintiffs face this continued hardship if they continue to refuse to comply with the Vaccination Mandate.  The role of the Court, however, is to "balance the competing claims of injury on each party of either granting or withholding the requested relief, paying particular regard to the public consequences."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).  On balance, the equities at stake and the importance of safeguarding the public health and safety, and the public interest weigh in favor of denying the preliminary injunction.

        It "cannot be disputed that the State has a public policy in favor of protecting children[.]"  *City Sch. Dist. of City of New York v. McGraham*, 17 N.Y.3d 917, 919-920, 958 N.E.2d 897 (2011).  There is an interest in providing in-person

JA-840

schooling for students, as remote schooling can have negative impacts on education.[6]  There is also an obvious, significant governmental interest in preventing transmission of the COVID-19 virus and protecting students, thousands of whom remain ineligible for a COVID-19 vaccine, as well as NYC DOE teaching professionals and staff, and all related communities.  As Judge Cogan of this District recently noted in *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021) "[s]ince its emergence, COVID-19 has killed over 4.5 million people worldwide, with over 670,000 of those deaths taking place in the United States," and vaccination is "one of the most highly regarded" tools available to "reduce viral transmission."  Available scientific and medical data supports the use of vaccination as a lifesaving public policy measure, as data from the "Centers for Disease Control and Prevention shows that people who are unvaccinated are at a much greater risk than those who are fully vaccinated to test positive or die from COVID-19."[7]  Even despite the widespread implementation of vaccinations and booster shots, the United States has lost more lives in the year 2021 than in 2020, which

---

[6] Remote schooling during the 2020-21 academic year contributed to "highly significant" learning loss, according to a new study published by the National Bureau of Economic Research. *See* Clare Halloran, Rebecca Jack, James C. Okun, Emily Oster, *Pandemic Schooling Mode and Student Test Scores: Evidence from US States*, (National Bureau of Economic Research Working Paper, Paper No. 29497, Nov. 2021), https://www.nber.org/papers/w29497.

[7] Coronavirus in the U.S.: Latest Map and Case Count, N.Y. TIMES (updated Nov. 23, 2021), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

experts attribute at least in part to "lower-than-needed vaccination rates," and "the relaxation of everyday precautions, like masks and social distancing, and the rise of the highly contagious Delta variant."[8]  Based on the evidence available, there remains an urgent, compelling justification for the enforcement of the state- and city-mandated restrictions and policies enacted and designed to protect the most vulnerable among us from the COVID-19 pandemic.

Ultimately, "it is up to local government, 'not the courts, to balance the competing public health and business interests[,]'" and here, the New York City government and NYC DOE have done so in issuing and enforcing the COVID-19 Vaccination Mandate for employees of the Department of Education. *Maniscalco*, 2021 WL 4344267, at *4.

## CONCLUSION

Accordingly, Plaintiffs' motion for a preliminary injunction and temporary restraining order is DENIED.

Further, the Court finds that Plaintiffs' have not demonstrated that they have standing to challenge the terms of the Impact Arbitration Award between the NYC DOE and the UFT in federal court.  Therefore, the Plaintiffs are ORDERED TO SHOW CAUSE by December 15, 2021, why this action should not be

---

[8] *Covid Live Updates: U.S. Records More Deaths This Year Than in 2020*, N.Y. TIMES (updated Nov. 23, 2021), https://www.nytimes.com/live/2021/11/23/world/covid-vaccine-boosters-mandates.

JA-842

dismissed for lack of standing.

**SO ORDERED.**

_____/s/_____
Kiyo A. Matsumoto
United States District Judge


Dated:  Brooklyn, New York
        November 24, 2021

28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                          Plaintiffs,

**INDEX NO. 21-cv-6387**

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, MEISHA PORTER, in her official
and individual capacities, UNITED FEDERATION
OF TEACHERS, LOCAL 2, AMERICAN
FEDERATION OF TEACHERS, AFL-CIO,
MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their
official and individual capacities; and JANE DOE
#1-10 in their official and individual capacities,

                          Defendants.
------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW REGARDING NEW YORK CITY
DEPARTMENT OF EDUCATION'S THREAT TO UNILATERALLY TERMINATE
THE PLAINTIFFS ON OR AFTER DECEMBER 1, 2021**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

LEGAL ISSUE ...................................................................................................... 1

BRIEF ANSWER ................................................................................................. 2

ARGUMENT......................................................................................................... 3

   A.  Commissioner's Mandate Did Not Make A COVID-19 Vaccine A
      Job Requirement To Be An NYCDOE Employee .................................. 3

   B.  Mayor's Executive Orders Does Not Impose A COVID-19 Vaccine
      As A Job Requirement Upon Current NYCDOE Employees, Like
      The Plaintiff.............................................................................................. 3

   C.  N.Y. Education Law § 913 and N.Y. Education Law § 2568
      Requires Procedural Safeguards Before A School District Employee
      Is Determined Unfit For Duty.................................................................. 5

   D.  Since The Vaccine Is Not A Job Requirement, Then The Plaintiffs
      Are Entitled To Due Process Pursuant To N.Y. Education Law §
      3020-a, N.Y. Civil Service Law § 75, or contractual due process in
      accordance with their unions' collective bargaining agreements with
      the NYCDOE............................................................................................ 7

     1.  Word "Seek" Implies Due Process Is Required Before
        Termination........................................................................................ 7

     2.  Since The Vaccine Is Not A Job Requirement, The Plaintiffs
        Maintain Their Due Process Rights Before Termination ................. 8

CONCLUSION....................................................................................................... 10

JA-845

# TABLE OF AUTHORITIES

**Cases**

*Felix v. NY City Dept. of Citywide Admin. Servs.*, 3 N.Y.3d 498 (2004) ...................................... 9

*Matter of Adrian v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 92 A.D.3d 1272 (4th Dept 2012).................................................................... 9

*Matter of O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 48 A.D.3d 1254 (4th Dept 2008).................................................................... 9

*Newman v. Bd. of Educ.*, 594 F.2d 299, 304 (2d Cir 1979)......................................... 7

**Statutes**

N.Y. Education Law § 2568 ................................................................................. 5

N.Y. Education Law § 913 .................................................................................. 5

**Other Authorities**

https://www.merriam-webster.com/dictionary/seek (visited November 26, 2021).................................................................................................... 8

https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf (visited November 29, 2021) ................................ 3

https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2021/eo-75.pdf (visited November 29, 2021) .................................... 4

https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2021/eo-75.pdf (visited November 30, 2021) ............................. 2, 9

https://www1.nyc.gov/office-of-the-mayor/news/078-000/executive-order-78 (visited November 30, 2021) ............................................. 2, 4, 9

Case 23-655, Document 74, 06/05/2023, 3525006, Page46 of 281

JA-846

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs in this Action in support of their position that the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") cannot lawfully unilaterally terminate the Plaintiffs on or after December 1, 2021 because the Plaintiffs are not vaccinated with a COVID-19 vaccine.

## LEGAL ISSUE

The NYCDOE argued in opposition to the Plaintiffs' Motion for a Preliminary Injunction that the COVID-19 vaccine is a job requirement to be an employee of the NYCDOE and also argued that the COVID-19 vaccine is a fitness for duty requirement to work for the NYCDOE. As a result, the NYCDOE threatened that on December 1, 2021, the NYCDOE will enforce the COVID-19 vaccine mandate and unilaterally terminate the Plaintiffs.

The Arbitration Award (**ECF Doc. No. 19-1**) states: "Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Section III(A) and IIII(B). Except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein." **ECF Doc. No. 19-1**, at pages 18-19.

The Arbitration Award, which this Court has held governs the COVID-19 vaccine mandate enforcement (**ECF Doc. No. 33**) with respect to the Plaintiffs, uses the word "seek" to describe how the NYCDOE shall seek to separate employees on or after December 1, 2021.

Therefore, the legal issue is: Does the NYCDOE have the legal authority to terminate the Plaintiffs, who are unvaccinated, on or after December 1, 2021 without due process, when the governing document uses the word "seek" to separate?

1

Case 23-655, Document 74, 06/05/2023, 3525006, Page47 of 281

## BRIEF ANSWER

No, the NYCDOE cannot terminate the Plaintiffs without due process because the COVID-19 mandate issued by the New York City Health Commissioner ("Commissioner") did not make the COVID-19 vaccine a job requirement to work for the NYCDOE.

In addition, Executive Order 75 issued by Mayor Bill DeBlasio ("Mayor") imposed a COVID-19 vaccine mandate to work for New York City only on new hires, not current employees of the City, such as the Plaintiffs. *See,* https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2021/eo-75.pdf (visited November 30, 2021).

Further, the Mayor's Executive Order 78 did not impose the vaccine mandate on current employees because it gave City employees an opportunity to have PCR testing weekly instead of the vaccine. *See,* https://www1.nyc.gov/office-of-the-mayor/news/078-000/executive-order-78 (visited November 30, 2021).

In addition, N.Y. Education Law requires a process for a school district, such as the NYCDOE to determine whether an employee of the school district is fit for duty. The NYCDOE has not complied with the N.Y. Education Law process to determine fitness for duty for an NYCDOE employee who is not vaccinated. Therefore, without complying with the N.Y. Education Law, the NYCDOE cannot lawfully unilaterally separate the Plaintiffs from their jobs with the NYCDOE.

In addition, the word "seek" implies that it cannot, on its own, accomplish termination, but must pursue a specific avenue of due process before termination can be finalized.

Accordingly, the NYCDOE cannot terminate the Plaintiffs without due process because they are not vaccinated.

Case 23-655, Document 74, 06/05/2023, 3525006, Page48 of 281

**JA-848**

## ARGUMENT

### A.  Commissioner's Mandate Did Not Make A COVID-19 Vaccine A Job Requirement To Be An NYCDOE Employee

The Commissioner's September 15, 2021 Order (https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf (visited November 29, 2021)) ("Order") states: "1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below: a. DOE staff must provide proof of vaccination to the DOE...."

The Order does not state that the Commissioner's Mandate is a job requirement.

Moreover, if it was a job requirement, the fact that exemptions were offered and, in some cases, granted, raises the questions whether it is in fact a true job requirement. *See,* **ECF Doc. No. 19-1.** If it is in fact a true job requirement and a condition of employment, why are certain employees granted exemptions from a job requirement.

If it is a true job requirement that a person have a COVID-19 vaccine, then how can any employee be exempted for any reason from the job requirement?

### B.  Mayor's Executive Orders Does Not Impose A COVID-19 Vaccine As A Job Requirement Upon Current NYCDOE Employees, Such As The Plaintiffs

On August 2, 2021, the Mayor issued Executive Order 75 ("EO 75"). EO 75 states:

> Section 1. All persons newly hired for employment by any City agency must provide proof of having received at least one dose of an approved COVID-19 vaccine prior to beginning their employment, except for those who obtain an exception due to medical or religious reasons through the reasonable accommodation process.
>
> § 2. After receiving a conditional offer of employment from a City agency, an applicant for employment must provide proof of having

3

Case 23-655, Document 74, 06/05/2023, 3525006, Page49 of 281

received at least one dose of an approved COVID-19 vaccine within a reasonable period of time. Failure by the applicant to provide the agency with proof of having received at least one dose of an approved COVID-19 vaccine will result in the agency revoking the conditional offer, unless the applicant obtains an exception through the reasonable accommodation process.

§ 3. Any person to whom this Order applies, who begins their employment after providing proof of having received only one dose in a 2-dose series of a COVID-19 vaccine, will also be required to provide their City agency with proof of receipt of a second dose within 30 days of the first dose. Failure to do so will result in termination.

§ 4. The Department of Citywide Administration Services shall promulgate guidance to agencies regarding this Order immediately.

§ 5. This Order shall take effect immediately.

https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2021/eo-75.pdf          (visited November 29, 2021).

EO 75 does not apply to the Plaintiffs since they are currently employed by the NYCDOE and are not new hires.

On August 31, 2021, the Mayor issued Executive Order 78 ("EO 78") that applies to current New York City employees.  EO 78 states, in relevant part:

Section 1. City employees must either:
a.    Provide the City agency or office where they work with proof of full vaccination by September 13, 2021, or
b.    Beginning September 13, 2021, and on a weekly basis thereafter until the employee submits proof of full vaccination, provide the City agency or office where they work with proof of a negative COVID-19 PCR diagnostic test (not an antibody test).

*See,* https://www1.nyc.gov/office-of-the-mayor/news/078-000/executive-order-78

If the Order was a job requirement as the NYCDOE argued before this Court in response to the Plaintiffs' Motion for Preliminary Injunction, then why did the Mayor have to issue EO 75 and why does EO 78 conflict with the Order?

EO 75 would be redundant with respect to new hires at the NYCDOE if the Order is a job requirement for all NYCDOE employees.

EO 78, which gives a testing option is the real job requirement, one the NYCDOE has ignored without explanation.

EO 75 does not impose a job requirement upon the Plaintiffs because they are not new hires. EO 78 gives the Plaintiffs a testing option, one that the NYCDOE has ignored.

**C.   N.Y. Education Law § 913 and N.Y. Education Law § 2568 Requires Procedural Safeguards Before A School District Employee Is Determined Unfit For Duty**

N.Y. Education Law § 913 states:

> In order to safeguard the health of children attending the public schools, the board of education or trustees of any school district or a board of cooperative educational services shall be empowered to require any person employed by the board of education or trustees or board of cooperative educational services to submit to a medical examination by a physician or other health care provider of his or her choice or the director of school health services of the board of education or trustees or board of cooperative educational services, in order to determine the physical or mental capacity of such person to perform his or her duties. The person required to submit to such medical examination shall be entitled to be accompanied by a physician or other person of his or her choice. The determination based upon such examination as to the physical or mental capacity of such person to perform his or her duties shall be reported to the board of education or trustees or board of cooperative educational services and may be referred to and considered for the evaluation of service of the person examined or for disability retirement.

N.Y. Education Law § 2568 states:

5

Case 23-655, Document 74, 06/05/2023, 3525006, Page51 of 281

> The superintendent of schools of a city having a population of one million or more shall be empowered to require any person employed by the board of education of such city to submit to a medical examination by a physician or school medical inspector of the board, in order to determine the mental or physical capacity of such person to perform his duties, whenever it has been recommended in a report in writing that such examination should be made. Such report to the superintendent may be made only by a person under whose supervision or direction the person recommended for such medical examination is employed. The person required to submit to such medical examination shall be entitled to be accompanied by a physician or other person of his own choice. The findings upon such examination shall be reported to the superintendent of schools and may be referred to and considered for the evaluation of service of the person examined or for disability retirement.

Repeatedly, in opposition to the Plaintiffs' Motion for a Preliminary Injunction, the NYCDOE argued that the vaccine is required because it is a "fitness for duty" qualification. *See,* **ECF Doc. No. 18,** at pages 2, 3, 15, 16, and 18.

The phrase "fitness for duty" is a term of art that has with it, procedural due process rights and statutory protections owed to the Plaintiffs as employees of the NYCDOE.

Whether pursuant to N.Y. Education Law § 913 or N.Y. Education Law §2568, the NYCDOE must follow the statutory procedure to initiate a fitness for duty evaluation and an evaluation by a physician must be conducted before the NYCDOE determines that an individual plaintiff is unfit for duty.

However, the fitness for duty examination of the Plaintiffs will likely include a blood test to determine whether the Plaintiffs have antibodies to the COVID-19 virus. If antibodies are present in Plaintiffs' blood samples, the Plaintiffs will be fit for duty without the vaccine because the fitness must be whether a NYCDOE employee has antibodies to COVID.

The NYCDOE cannot lawfully unilaterally determine all NYCDOE who have failed to take a vaccine are unfit for duty because the NYCDOE employees may be fit from having COVID-19 in the past and they may possess immunity.

In *Newman v. Bd. of Educ.*, 594 F.2d 299, 304 (2d Cir 1979), the Court of Appeals, analyzing and interpreting N.Y. Education Law § 2568 held: "[h]ere the private interest at stake the right of a tenured teacher to continue practicing her profession, free of any stigma flowing from an indefinite suspension attributable to mental unfitness is substantial indeed."

The Court in *Newman* went on to state: "Although the public clearly has an interest in ridding classrooms of mentally unfit teachers promptly and without undue burden or expense, this is counterbalanced not only by the due process interests of the teacher but also by the public's interest in attracting competent instructors to assume teaching positions in our public schools by the assurance that they will not be suspended unfairly or through error." *Newman v. Bd. of Educ.*, 594 F.2d at 304.

Here, the Plaintiffs have due process rights as established by the N.Y. Education Law, whether it be from N.Y. Education Law § 913 or N.Y. Education Law § 2568. In either case, the NYCDOE cannot lawfully unilaterally decide that the Plaintiffs are unfit for duty without a medical examination.

The NYCDOE's threat to terminate the Plaintiffs because they did not take a COVID-19 vaccine violates the Plaintiffs' statutory due process rights. The Court should determine that if the NYCDOE takes the position that the COVID-19 vaccine is a fitness for duty qualification, the NYCDOE must provide the Plaintiffs their due process rights under N.Y. Education Law § 913 and N.Y. Education Law § 2568.

**D.** **Since The Vaccine Is Not A Job Requirement, Then The Plaintiffs Are Entitled To Due Process Pursuant To N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or contractual due process in accordance with their unions' collective bargaining agreements with the NYCDOE**

1.   Word "Seek" Implies Due Process Is Required Before Termination

The Arbitration Award states: "Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Section III(A) and

7

**JA-853**

IIII(B).  Except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein."  **ECF Doc. No. 19-1,** at pages 18-19.

Merriam-Webster defines "seek" as: (1) to search for (someone or something): to try to find (someone or something) (2) to ask for (help, advice, etc.); (3) to try to get or achieve (something).  https://www.merriam-webster.com/dictionary/seek (visited November 26, 2021).

The most appropriate definition is the third definition because the NYCDOE can try to get or achieve the Plaintiffs' termination after December 1, 2021.

Interestingly, the Arbitrator added a second sentence that indicates that the word "seek" requires due process.  The Arbitrator stated that "all parties retain all legal rights at all times relevant....", which must include tenure rights under N.Y. Education Law § 3020, N.Y. Civil Service Law § 75 and due process rights under collective bargaining agreements.

The additional language was not a mistake but had the intent of preserving the Plaintiffs' due process rights if they did not take the COVID-19 vaccine within the stated time periods.

In addition, the words "seek unilaterally" means without the UFT, but does not authorize the NYCDOE to terminate the Plaintiffs without due process because the Arbitrator held that the parties retained all legal rights, which had to include due process rights.

The Arbitration Award does not support the NYCDOE's position that it can terminate the Plaintiffs without due process after December 1, 2021.

     2.    <u>Since The Vaccine Is Not A Job Requirement, The Plaintiffs Maintain Their Due Process Rights Before Termination</u>

The NYCDOE argued that the vaccine is a job requirement, like a residency requirement and Courts have upheld public employers' terminations of public employees who fail to comply with residency requirements.

Case 23-655, Document 74, 06/05/2023, 3525006, Page54 of 281

The problem with the NYCDOE argument is that the cases cited in opposition to the Plaintiffs' Motion for Preliminary Injunction to support their argument were situations when the local legislative body has imposed a residency requirement (*Matter of Adrian v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 92 A.D.3d 1272 (4th Dept 2012); *Felix v. NY City Dept. of Citywide Admin. Servs.*, 3 N.Y.3d 498 (2004)) or where the public employee entered into a contract with the public employer imposing upon the employee a residency requirement. *See, Matter of O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 48 A.D.3d 1254 (4th Dept 2008).

Here there has been no enactment by a legislative body imposing upon the NYCDOE employees a COVID-19 vaccine job requirement. In fact, no part of the City government has imposed a COVID-19 vaccine mandate on current NYCDOE employees. The Mayor, through EO 75 has imposed that all new hires be vaccinated (https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2021/eo-75.pdf), but the Mayor did not extend the vaccine job requirement upon current employees of the City. The Mayor, through EO 78, granted employees a testing option instead of a vaccine mandate. *See,* https://www1.nyc.gov/office-of-the-mayor/news/078-000/executive-order-78. The NYCDOE has ignored EO 78's testing option.

Since no part of the City government has made the COVID-19 vaccine a job requirement of current employees (because EO 78 grants a testing option), such as the Plaintiffs, whether by Executive Order, legislative enactment, or any other government act, the NYCDOE stating that it is a job requirement in papers submitted to this Court, does not constitute a government act.

As a result, the Plaintiffs maintain their right to due process, whether pursuant to N.Y. Education Law § 3020, N.Y. Education Law § 913, N.Y. Education § 2568, N.Y. Civil Service Law § 75, or through the contractual rights obtained in various collective bargaining agreements entered into between the NYCDOE and the unions representing the Plaintiffs.

Accordingly, the Plaintiffs retain all due process rights. This Court should hold that the NYCDOE's threat to terminate the Plaintiffs without due process is illegal and unconstitutional.

Case 23-655, Document 74, 06/05/2023, 3525006, Page55 of 281

## CONCLUSION

For the reasons argued in this Memorandum of Law, the Court should hold that the NYCDOE cannot terminate the Plaintiffs' employment without due process, requiring the NYCDOE to grant to the Plaintiffs due process under N.Y. Education Law § 913, N.Y. Education Law § 2568, N.Y. Education Law § 3020, N.Y. Civil Service Law § 75, or the due process procedures in the collective bargaining agreements between the Plaintiffs' unions and the NYCDOE.

Dated:     Carle Place, New York
           November 30, 2021

Austin Graff
The Scher Law Firm, LLP
*Attorneys for the Plaintiffs*
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

JA-856

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
BROECKER *et al*.,                                    :
                                                      :
                                                      :
                              Plaintiffs,             :
                                                      :
             -against-                                :          Index No. 21-cv-6387
                                                      :
                                                      :
NEW YORK CITY DEPARTMENT OF                           :
EDUCATION, *et al.*,                                  :
                                                      :
                              Defendants.             :
-------------------------------------------------------------- X

**DEFENDANT UNITED FEDERATION OF TEACHERS, LOCAL 2, AFL-CIO'S
SUPPLEMENTAL MEMORANDUM OF LAW**

JA-857

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... II

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.  **DOE EMPLOYEES ARE ENTITLED TO DUE PROCESS AS
    "UNILATERAL SEPARATION" CONSTITUTES DISCRETIONARY
    ACTION BY THE DOE** ........................................................................................... 2

   A. Public Employees in New York State May Not Be Terminated Without Due Process If
      Their Termination is Discretionary ............................................................................ 2

   B. The DOE Retains Discretion Over How To Treat Unvaccinated Employees ................... 6

II. **THE "UNILATERAL SEPARATION" OF UNVACCINATED TEACHERS
    IS DISCIPLINARY ACTION AND DEMANDS THE PROCESS DUE
    UNDER STATUTE AND CONTRACT** ................................................................. 11

   A)  Fitness For Duty, Including On Medical Grounds, Is An Issue Of Discipline ........... 11

   B)  The Refusal To Comply With The Vaccine Mandate Order Is Analogous To Other
       Situations Treated As Disciplinary And Requiring Due Process .............................. 13

   C)  The Award Does Not Waive DOE Employees' Due Process Rights ........................ 14

CONCLUSION ...................................................................................................................... 17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adrian v. Bd. of Ed.,
   92 A.D.3d 1272 (4th Dep't 2012) ........................................................4, 8

Appeal of the Bd. of Educ. of the City Sch. Dist. of the City of Oswego,
   31 Ed. Dept. Rep., Decision No. 12593 (1991) ...................................13

Bd. of Regents v. Roth,
   408 U.S. 564 (1972).................................................................................2

Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
   No. 102678/09, 2009 WL 2416131 (Sup. Ct. N.Y. Cnty. July 22, 2009) ...............5

Brown v. City of Syracuse,
   673 F.3d 141 (2d Cir. 2012).....................................................................4

City of Niagara Falls v. N.Y. State Pub. Emp. Relations Bd.,
   34 Misc. 3d 1227(A) (Sup. Ct. Albany Cnty. 2012)..............................8

Conde v. Yeshiva Univ.,
   16 A.D.3d 185 (1st Dep't 2005) ............................................................15

Matter of District Council 37,
   6 OCB2d 24 (BCB 2013).........................................................................9

Appeal of Elaine Cuoco,
   31 Ed Dept. Rep., Decision No. 12582 (1991) ....................................13

Matter of Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
   3 N.Y.3d 498 (2004) ............................................................................4, 8

Fitzpatrick v. Bd. of Educ. of Mamaroneck Union Free School Dist.,
   96 A.D.2d 557 (2d Dep't 1983), appeal denied 61 N.Y.2d 607 (1984) ................12

Gardner v. Niskayuna Cent. School Dist.,
   42 A.D.3d 633 (3d Dep't 2007), lv. denied 9 N.Y.3d 813 (2007).........12

Gargiul v. Bd. of Educ.,
   69 A.D.2d 986 (4th Dep't 1979) .....................................................13, 14

Appeal of Grossberg,
   33 Ed.. Dept. Rep., Decision No. 12976 (1993) ..................................11

ii

Hewitt v. D'Ambrose,
    418 F. Supp. 966 (S.D.N.Y. 1976) ...................................................................3

Matter of Koutros v. Dep't of Educ. of City of N.Y.,
    No. 104279/12, 2013 WL 6980455 (Sup. Ct. N.Y. Cnty. Oct. 22, 2013) aff'd,
    129 A.D.3d 434 (1st Dep't 2015) ....................................................................4

Kuhnle v. Ambach,
    91 A.D.2d 779 (3d Dep't 1982).......................................................................13

Legal Aid Society v. City of New York,
    114 F. Supp. 2d 204 (S.D.N.Y. 2000).............................................................15

Matter of Lutz v. Krokoff,
    102 A.D.3d 146 (3d Dep't 2012), lv denied 20 N.Y.3d 860 (2013)..................5

Mandelkern v. City of Buffalo,
    64 A.D.2d 279 (4th Dep't 1978)....................................................................4, 8

Mandelkern v. City of Buffalo,
    92 Misc. 2d 425 (Sup. Ct. Erie Cnty. 1977), rev'd, 64 A.D.2d 279 (4th Dep't
    1978) ..................................................................................................................8

New York State Inspection, Sec. & Law Enf't Emps., Dist. Council, 82 v. Cuomo,
    64 N.Y.2d 233 (1984) ......................................................................................6

Matter of New York State Off. of Child. & Fam. Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ......................................................................................4

Niagara Frontier Transit Metro System, Inc. v. Amalgamated Transit Local Union
1342,
    100 A.D.3d 1469 (4th Dep't 2012) ...............................................................2, 3

O'Connor v. Bd. of Educ.,
    48 A.D.3d 1254 (4th Dep't 2008) ..................................................................4, 8

Ricca v. Bd. of Educ. of City School Dist. of City of N.Y.,
    47 N.Y.2d 385 (1979) ........................................................................15, 16, 17

Matter of Richie v. Coughlin,
    148 A.D.2d 178 (3d Dep't 1989), appeal dismissed 75 N.Y.2d 765 (1989), lv
    denied 75 N.Y.2d 707 (1990) ...............................................................3, 7, 10

Seven–Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc.,
    686 F.Supp. 1015 (S.D.N.Y.1988) .................................................................14

Town of Southampton v. N.Y. State Pub. Emp. Rels. Bd.,
    2 N.Y.3d 513 (2004) .......................................................................................15

We the Patriots USA, Inc. v. Hochul,
  Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021) ..................5, 6

Wright v. Universal Maritime Serv. Corp.,
  525 U.S. 70 (1998).................................................................................................14

**Statutes**

N.Y. Civil Service Law § 50(4) .....................................................................................3

N.Y. Civil Service Law § 72 .......................................................................................12

N.Y. Civil Service Law § 73 .......................................................................................12

N.Y. Civil Service Law § 75 .......................................................................5, 10, 12, 17

N.Y. Education Law § 913 ......................................................................................11, 12

N.Y. Education Law § 2568 ....................................................................................11, 12

N.Y. Education Law § 2590-j(7)(b).................................................................................11

N.Y. Education Law § 3001(2)........................................................................................8

N.Y. Education Law § 3020-a ............................................................................. *passim*

**Other Authorities**

Merriam-Webster, https://www.merriam-webster.com/dictionary/seek ...................16

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
  Vaccination For Department of Education Employees, Contractors, Visitors,
  and Others, New York City Department of Health and Mental Hygiene
  (Aug. 24, 2021),
  https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
  requirement-doe.pdf................................................................................................7

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
  Vaccination For Department of Education Employees, Contractors, Visitors,
  and Others, New York City Department of Health and Mental Hygiene
  (Sept. 28, 2021),
  https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
  requirement-doe-3.pdf .............................................................................................7

Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
Vaccination For Department of Education Employees, Contractors, Visitors,
and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
(Sept. 15, 2021),
https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
requirement-doe-2.pdf ........................................................................................................7

JA-862

## PRELIMINARY STATEMENT

The COVID-19 pandemic has wreaked havoc on the lives and livelihoods of people in New York and around the world. In response, state and local governments—including New York City's—have sought to expand and exercise their existing authorities in new and significant ways. The United Federation of Teachers ("UFT") has supported efforts to bring the pandemic to an end and ameliorate its impacts on New Yorkers, while simultaneously and continuously fighting to protect the rights of the public employees it represents from undue encroachment.

Per the Court's directive, this brief addresses the limited issue of whether, as Defendant New York City Department of Education ("DOE") alleges, public employees who have refrained from being vaccinated or choosing one of the alternatives available under the September 10 binding impasse arbitration award (the "Award")[1] may be summarily terminated without satisfying statutory and contractual due process. They may not. The discretionary termination of public employees without due process tramples on the protected property interest public employees have in their jobs and violates established precedent that when a public employer has *any* discretion in their decision whether to terminate a public employee, the employee must receive due process. This is true even where the employer claims that an employee is not "fit" for duty, as the DOE does here. As made clear during the UFT/DOE mediation/arbitration process and resulting Award, the statutory and contractual procedural protections against undue termination of UFT-represented employees have not been waived or modified with regard to separation from service. Accordingly, should the DOE seek to terminate unvaccinated employees, it must pursue such action under existing procedures.

---

[1] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021), Klinger Declaration in Opposition to Emergency Motion, Ex. D. (dkt# 21)

1

## **ARGUMENT**

**I.    DOE EMPLOYEES ARE ENTITLED TO DUE PROCESS AS "UNILATERAL SEPARATION" CONSTITUTES DISCRETIONARY ACTION BY THE DOE**

A. Public Employees in New York State May Not Be Terminated Without Due Process If Their Termination is Discretionary

As recognized by this Court, Plaintiffs are public employees who have a constitutionally protected property interest in their continued employment. Mem. and Order Den. Mot. Prelim. Inj. ("Order"), 18 (citing Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985)). Public employees' property interests in their continued employment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). That interest is protected by a panoply of both statutory and contractual due process procedures applicable to employees serving in various titles and at various points in their careers.

New York courts have consistently found that when public employers have discretion in whether or not to terminate a public employee's employment, the employee is entitled to procedural due process. Only when the employee's continued service is prevented by a statutory or regulatory requirement under which the public employer has no discretion may the employer terminate their employment without due process. Niagara Frontier Transit Metro System, Inc. v. Amalgamated Transit Local Union 1342, 100 A.D.3d 1469 (4th Dep't 2012), is instructive. There, a transit worker failed to disclose, as required, past injuries on her employment application. Id. at 1470. The court held that although she could be disciplined, because the failure to disclose did not automatically disqualify her "any disqualification would be discretionary." Id. (citing Prue v. Hunt, 157 A.D.2d 160, 165 (4th Dep't 1990), aff'd at 78 N.Y.2d 364 (1991)) Because of the discretionary nature of the termination, "the employee must be afforded a

2

Case 23-655, Document 74, 06/05/2023, 3525006, Page64 of 281

meaningful opportunity to invoke the discretion of the decision maker [as] a precondition to his [or her] termination." Id., at 1470-71.

This is true even where the facts of the case are largely undisputed. In Matter of Richie v. Coughlin, 148 A.D.2d 178, 180 (3d Dep't 1989), appeal dismissed 75 N.Y.2d 765 (1989), lv denied 75 N.Y.2d 707 (1990), an individual who had escaped prison and remained a fugitive for more than 15 years applied to a state agency for a job, and lied on his job application about whether he had been convicted of a felony. After obtaining permanent status, he was discovered to be a felon, disqualified from his employment under Civil Service Law § 50(4),[2] and summarily separated. Id. at 180-81. The court held that while the state agency could terminate his employment without due process if they "were *required to terminate such an employee*," Civil Service Law § 50(4) made the decision to disqualify someone discretionary, with the employee allowed to present explanations against termination and the Civil Service Commission allowed to consider mitigating and aggravating factors in "how their discretion should be exercised." Id. at 182-83 (emphasis added). Because there was discretion, the plaintiff was entitled to due process, and the alternative would "reduce the employee's right to have respondents act rationally and objectively to an empty ritual." Id.; see also Hewitt v. D'Ambrose, 418 F. Supp. 966, 969 (S.D.N.Y. 1976) (a public employee who misrepresented their age in combination with years of military service to take a qualifying exam was entitled to due process prior to termination).

---

[2] Civil Service Law § 50(4) provides that the state civil service department or municipal civil service commissions "may" disqualify or refuse to appoint an otherwise eligible applicant who, *inter alia*, "has been guilty of a crime." § 50(4) similarly provides that an otherwise eligible applicant may be disqualified if found to have a disability "which renders the applicant unfit to perform in a reasonable manner the duties of the position." The state department or municipal commissions may also investigate an eligible applicant after appointment, and if facts which would have rendered them ineligible at the time of appointment are discovered, the department or commission may revoke the employee's certification and terminate them, but only within three years of hiring, except in the case of fraud.

In this context, whether discretion for the employer exists is determinative of the existence of due process protections. A protected property interest can cease to exist only if the employer ceases to have discretion over the individual's continued employment. See Brown v. City of Syracuse, 673 F.3d 141, 147-50 (2d Cir. 2012) (a police officer convicted of endangering a minor lost their property interest in employment after state courts reversed prior determinations and held that endangering a minor was an "oath of office" crime which automatically vacated one's employment).

The question of discretion is also key to the analysis in the cases relied on by the DOE in its Memorandum of Law in Opposition to Emergency Motion ("DOE Br.") (dkt# 18) at 15-20, previously submitted in this matter. In Matter of Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505-06 (2004), the court found that teachers could be separated without a hearing for violating a statutory residency requirement, as this was a mandatory qualification rather than an issue of discipline. The court reasoned that the respondent teacher "forfeited his position by operation of local law" and that his removal was not "discretionary." Id. at 499; see also O'Connor v. Bd. of Educ., 48 A.D.3d 1254 (4th Dep't 2008) (concerning Niagara Falls' residency requirement); Adrian v. Bd. of Ed., 92 A.D.3d 1272 (4th Dep't 2012) (same), Mandelkern v. City of Buffalo, 64 A.D.2d 279, 281 (4th Dep't 1978) (concerning Buffalo's residency requirement).

The same rule applies to issues of licensure as a teacher. See Matter of Koutros v. Dep't of Educ. of City of N.Y., No. 104279/12, 2013 WL 6980455, at *2 (Sup. Ct. N.Y. Cnty. Oct. 22, 2013) aff'd, 129 A.D.3d 434 (1st Dep't 2015) (when a teacher was "unqualified as a matter of law" for not having a teaching certificate, they could be released without due process); see also Matter of New York State Off. of Child. & Fam. Servs. v. Lanterman, 14 N.Y.3d 275, 282

4

(2010) (holding the same as applied to licenses relevant to employees covered by Civil Service Law § 75). It has also been applied to questions of immigration status. See Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., No. 102678/09, 2009 WL 2416131 (Sup. Ct. N.Y. Cnty. July 22, 2009) (holding that a teacher whose continued employment violated immigration law could be dismissed without a disciplinary hearing).

However, the requirement in question must expressly state that a qualification is mandatory for the position in order for summary dismissal to be valid. The implication that a qualification is mandatory is insufficient. See Matter of Lutz v. Krokoff, 102 A.D.3d 146, 148-49 (3d Dep't 2012), lv denied 20 N.Y.3d 860 (2013) (holding that a driver's license requirement for a position where not all employees drove was not an express statement, and thus a hearing was required prior to termination).

Vaccination as a so called "condition of employment" under the state's public health regulations is likewise not the same thing as a mandatory qualification for which no discretion exists. Although the DOE attempts to make much of a passing comment in the Second Circuit's decision in We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021), that case concerned entirely different claims. There, the Court addressed whether New York State's vaccination mandate for certain healthcare workers performing certain functions violated the Free Exercise Clause and *substantive* due process protections under the Fourteenth Amendment, with the Court holding that they did not. The Court mentioned that other vaccination requirements had historically been required and treated as conditions of employment, without any discussion of what, if any, impact that has on *procedural* due process. As is more relevant to the instant matter, the Court specifically recognized that because that mandate, like the DOE mandate, applied only to staff engaging in

5

certain high contact activities, it was conceivable that some unvaccinated staff could be accommodated by being assigned to telehealth services. Id., at 48. Thus, even for those subject to that mandate, termination was not necessarily the only option. The Court did not discuss, let alone signal, whether all employees under all mandates could be subject to summary dismissal without due process.[3]

In the instant case, the UFT does not here challenge the City's right to mandate vaccination for public employees on substantive due process grounds (that challenge having already been unsuccessfully pressed in state court). Rather, the UFT contests only the DOE's attempt to circumvent due process protections for public employees by framing a matter of discipline as a matter of mandatory statutory qualification. Tellingly, the City's mandate does not describe vaccination as a "condition of employment," but in fact does not mention employment at all. See Sec. I.B, infra.

In the cases relied on by the DOE, the hands of the public employer in question were bound by statute or regulation. They did not have the choice whether to end the public employee's employment, but had to do so in order to follow the law. Where disqualification or termination from one's position is discretionary, the public employer must provide due process before ending the public employee's employment.

B. The DOE Retains Discretion Over How To Treat Unvaccinated Employees

Under its own admission, the DOE has discretion in how to implement orders to exclude unvaccinated individuals from school settings. DOE Br. at 16 ("[T]he obligation of how best to

_____

[3] The DOE also cites New York State Inspection, Sec. & Law Enforcement Emps. Dist. Council, 82 v. Cuomo, 64 N.Y.2d 233 (1984), which concerns whether corrections personnel could enforce the statutory right to a "safe workplace" to prevent the closure of a state prison. The court's holding—that the discretion of the governor to close a prison made the matter a nonjusticiable political question, and that alleged harm was speculative—is also unrelated to the matter at hand.

6

[maintain a safe workplace] is within the discretion of the employer."). The language of the

mandate itself and the DOE's actions in implementing their vaccination mandate policies

demonstrate the breadth of their discretion.

On August 24, 2021, the Commissioner of Health and Mental Hygiene (the "DOHMH

Commissioner") issued an order to DOE staff and a range of other workers who work "in-

person" in school buildings to be vaccinated, as well as excluding unvaccinated visitors from

school settings ("the DOE vaccine mandate order").[4] However, unlike the kinds of requirements

which eliminate employer discretion, the DOE vaccine mandate order made no direct statement

concerning noncompliant employees' *employment status*.[5] The order states, in relevant part, that

"all DOE staff must provide proof to the DOE that [they have been vaccinated]." While DOE

employees are obligated to respect the vaccine mandate order, there is no mention of an effect on

employment at all. The order does not state any employment consequence to DOE employees'

refusal to abide by it, let alone automatic dismissal. Moreover, having had considerable

discussion and argument during the mediation/arbitration phrase of the proceeding whether

---

[4] See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf (hereinafter, "Aug. 24 Order"). That Order was amended twice – once to include reasonable medical and religious accommodations, Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf, (hereinafter, "Sept. 15 Order"). and again following the dissolution of the Second Circuit's temporary restraining order in a separate matter challenging the Citywide Mandate. Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf (hereinafter, "Sept. 28 Order").

[5] While unrelated to the present issue, Plaintiffs' apparent assertion in their supplemental brief that the City's executive order making vaccination a "qualification" for new hires may strip them prospectively of due process rights is also incorrect. See e.g., Matter of Richie, 148 A.D.2d at 182 (that felony status may have disqualified employee upon hire, did not foreclose due process when it was discovered that the employee had lied on his application).

"process would be due" before any contemplated termination, it is telling that the Award came to a similar conclusion, stating that the DOE vaccine mandate order did not "address matters of due process with regard to job and benefits protection." See Supplemental Declaration of Alan M. Klinger ("Klinger Suppl. Decl."), dated December 7, 2021, at ¶¶ 8-11; Award at 3.

By contrast, the laws at issue in cases cited by the DOE are extremely clear. In Matter of Felix, 3 N.Y.3d at 502, the plaintiff was subject to New York City Administrative Code § 12-120, which states a residency requirement and that "[f]ailure to establish or maintain city residence as required by this section shall constitute a forfeiture of employment." As described by the court in City of Niagara Falls v. N.Y. State Pub. Emp. Relations Bd., 34 Misc. 3d 1227(A) (Sup. Ct. Albany Cnty. 2012), the Niagara Falls ordinance at issue in O'Connor, 48 A.D.3d at 1255, and Adrian, 92 A.D.3d at 1272-73, provided that if the employee is found by the city manager to not be a resident, "the employee would be deemed to have voluntarily resigned from his or her employment." The residency ordinance at issue in Mandelkern, 64 A.D.2d at 280, provided for some due process, specifically a hearing to establish the facts, but explicitly provided that once lack of residency was established, the employee "shall forfeit his employment and shall be removed therefrom." Mandelkern v. City of Buffalo, 92 Misc. 2d 425, 429 (Sup. Ct. Erie Cnty. 1977), rev'd, 64 A.D.2d at 282. Similarly, as previously and correctly stated by the DOE, "New York's Education Law expressly states that a teacher who does not possess a teaching certificate issued by the State of New York is unqualified, as a matter of law." DOE Br. at 17. Under the law, only qualified teachers may be employed as such.[6] While these laws clearly

---

[6] See Education Law § 3001(2) ("No person shall be employed or authorized to teach in the public schools of the state who is…[n]ot in possession of a teacher's certificate issued under the authority of this chapter or a diploma issued on the completion of a course in a state college for teachers or state teachers college of this state.")

**JA-870**

instruct both employers and employees as to the consequences of violation, the DOE vaccine mandate order is not just vague, it is *silent* on the issue.

In addition, the existence of and terms of the Award itself demonstrate the DOE's discretion in how the mandate is implemented. Initially, the Award is the result of a process set out by state law regarding when and how public employers are required to negotiate with the unions representing their workers. That same law provides that where a new requirement is being imposed on existing employees, the implementation of that requirement is a mandatory subject of bargaining and therefore cannot be accomplished absent bargaining. See e.g., Matter of District Council 37, 6 OCB2d 24 (BCB 2013) ("A bargaining obligation arises when new qualifications of employment are applied to incumbent employees because they constitute new terms and conditions of employment. Qualifications of continuing employment that may require bargaining include appropriate licensure.") (internal citations omitted). This rule recognizes how unfair it can be to impose new, disqualifying requirements on those who took and have maintained their positions based upon other requirements. It also implicitly recognizes that discretion is available to the public employer with regard to how a requirement is implemented. The Award in this case, although achieved after reaching impasse, exemplifies this.

Under the Award, unvaccinated DOE employees may opt for leave without pay (LWOP) while remaining DOE employees, retaining health insurance, retaining the right to return to their current position should they become vaccinated, and avoiding disciplinary action. Award at II(A)-(C), III(B). This option caries a required waiver of rights (including due process rights) as consideration of the benefits offered. Employees who receive medical or religious exemptions may continue to work remotely or be reassigned to a position where they are not in contact with students. Award at I(K). That these particular Plaintiffs have not availed themselves of these

9

options is not the point. The fact that these options exist demonstrates that the DOE has the discretion to find alternatives to termination and thus any termination is not *required* by the mandate. Contrary to the DOE's assertions, there is no legal inability of an unvaccinated individual to serve as a teacher (or other schools staff member). Conversely, violations of immigration law, licensure, or residency requirements could not be avoided by assigning employees to remote instruction. As in the cases cited by the DOE, they would be barred from employment in the position as a matter of law.

Finally, that there may be limited facts in dispute in a § 3020-a hearing, Civil Service Law § 75 hearing or contractual arbitration—or, for that matter, that the DOE feels it will have a strong case for termination in such hearing—does not obviate the requirement that a hearing be had. In Matter of Richie, 148 A.D.2d at 180, the fact of plaintiff public employee's felony conviction and failure to disclose was undisputed; rather, the plaintiff sought to raise mitigating evidence and challenge that he had concealed his identity. The court explicitly held that even while the plaintiff clearly met the criteria for dismissal under the statute, he was still entitled to due process, as the law was intended to consider "a variety of aggravating and mitigating factors," and failure to provide due process would be "profoundly inappropriate conduct." Id. at 182. The provisions of NY Education Law § 3020-a and Civil Service Law § 75 provide similar discretion to public employers and hearing officers in choosing what discipline is due based on the facts and circumstances of the individual case. While the DOE may believe they have a strong case for the termination of DOE employees who refused to get vaccinated or avail themselves of the alternatives under the Award, process is still due.

## II.  THE "UNILATERAL SEPARATION" OF UNVACCINATED TEACHERS IS DISCIPLINARY ACTION AND DEMANDS THE PROCESS DUE UNDER STATUTE AND CONTRACT

### A) Fitness For Duty, Including On Medical Grounds, Is An Issue Of Discipline

The DOE misstates the law and treats termination for lack of fitness for duty—a statutory reason for disciplinary action—as somehow lacking either due process protection entirely or the same protection as other forms of discipline. DOE Br. at 16-20. While the UFT does not necessarily agree that failure to become vaccinated is a "fitness" question, fitness for duty is, nonetheless, explicitly provided as a basis for disciplinary action, alongside misconduct and incompetence. For example, under Education Law § 2590-j(7)(b), tenured teachers may be terminated under § 3020-a for a range of offenses, including:

> "unauthorized absence from duty or excessive lateness; neglect of duty; conduct unbecoming his position, or conduct prejudicial to the good order, efficiency or discipline of the service…[a] violation of the by-laws, rules or regulations of the city board, chancellor, or the community board; or [a]ny substantial cause that renders the employee unfit to perform his obligations properly…"

Disciplinary matters defined by § 2590-j(7)(b) are subject to the procedural protections of §3020-a. Refusal to comply with the options provided by the Award—become vaccinated, obtain an accommodation, take extended LWOP, or voluntarily separate—could constitute one or more of a range of offenses under § 3020-a, but process is due for all of them.

Even in cases involving teachers who are unfit for duty on medical grounds, due process under § 3020-a is required if termination is being sought. Pursuant to Education Law §§ 913 and 2568, which establish parallel requirements for districts in cities of different sizes, school employers may require teachers to submit to a medical examination under certain circumstances to "safeguard the health of children attending the public schools." Section K of the UFT-DOE collective bargaining agreement establishes substantial due-process procedures for obtaining a

11

medical examination under § 2568, including the right to a neutral medical arbitrator to review the findings of the DOE Medical Bureau in instances including "termination of the teacher's services." Comp., Ex. D, 372-73 (dkt# 1). Teachers may be excluded from the classroom for medical reasons, but are not automatically separated from employment when this is the case. See generally, Appeal of Grossberg, 33 Ed.. Dept. Rep., Decision No. 12976 (1993) (discussing the requirement for disciplinary charges prior to termination for teachers found unfit after medical examinations pursuant to §§ 913 and 2568).

If found unfit to teach for medical reasons, teachers must then be brought up on § 3020-a charges in order to terminate them, and teachers may seek judicial review of those decisions just like any other disciplinary matter. See, e.g., Fitzpatrick v. Bd. of Educ. of Mamaroneck Union Free School Dist., 96 A.D.2d 557 (2d Dep't 1983), appeal denied 61 N.Y.2d 607 (1984); see also Gardner v. Niskayuna Cent. School Dist., 42 A.D.3d 633, 634 (3d Dep't 2007), lv. denied 9 N.Y.3d 813 (2007) (same for dismissal under Civil Service Law § 75). While the DOE seems to suggest that teachers believed to be medically unfit for duty have no due process protection, they actually have two layers. Analogous protections exist for employees covered by contractual or other statutory provisions.[7]

Moreover, the DOE's treatment of unvaccinated teachers illustrates that vaccination is hardly a universal "medical fitness" requirement. Under the Award, some employees are

---

[7] While the language and processes mandated under the Civil Service Law are not identical to those under the Education Law, public employees covered by the Civil Service Law who are alleged to be medically unfit for continued service receive extensive due process protections pursuant to Civil Service Law §§ 72 and 73. These include evaluation by a neutral medical provider, both a hearing and an appeal for disputed claims of unfitness with the burden of proof on the charging party, and the requirement that public employers allow for at least one year of leave before being allowed to seek the termination of an individual placed on leave under Civil Service Law § 72. Moreover, other unions, not named as defendants in this case may have other contractual provisions that modify or supplement that process for DOE employees employed in titles they represent. Accordingly, artificial distinctions between "fitness" and "discipline" do not translate into the DOE's ability to summarily dismiss any employee on any ground.

permitted to continue to work with accommodations (including some working remotely), while those who have opted to take extended LWOP continue to hold rights to their positions and receive health benefits during their leave. Award at I(K), II(A)-(C), III(B). Unvaccinated teachers may not be "fit" for in-person classroom duty (while still being fit for other duty), but fitness for duty is statutorily defined and process is therefore due.

B) The Refusal To Comply With The Vaccine Mandate Order Is Analogous To Other Situations Treated As Disciplinary And Requiring Due Process

In addition to charges alleging that an unvaccinated teacher is unfit for duty on medical grounds (which the UFT does not believe are the most appropriate to the situation), there are several other types of disciplinary charges that might be appropriately brought in connection with a failure to vaccinate: there is nothing novel about such charges such that due process could be avoided. For example, teachers who refuse to undergo a statutorily authorized medical examination before returning to work may be subject to discipline for insubordination. See Gargiul v. Bd. of Educ., 69 A.D.2d 986 (4th Dep't 1979). Similarly, an unauthorized absence from work may be grounds for discipline, which may be available even in cases where the teacher has medical issues as long as leave is not granted. See Appeal of Elaine Cuoco, 31 Ed Dept. Rep., Decision No. 12582 (1991); see also Kuhnle v. Ambach, 91 A.D.2d 779 (3d Dep't 1982) (three-month unauthorized absence). Failing to maintain necessary but non-statutory qualifications may be grounds for dismissal, but may also be grounds for suspension until qualifications are obtained. See Appeal of the Bd. of Educ. of the City Sch. Dist. of the City of Oswego, 31 Ed. Dept. Rep., Decision No. 12593, *2 (1991) (respondent Latin teacher who did not obtain new qualifications while Latin enrollment declined was not terminated for incompetence, even as the school had no other work for which the respondent was eligible). In all cases though, process was due under § 3020-a prior to termination.

13

The facts of <u>Gargiul</u> are particularly instructive. There, a teacher was excluded from the workplace for refusal to undergo a medical procedure. 69 A.D.2d at 986. When she refused on conscience-based grounds, the school district successfully sought to terminate her for insubordination and incompetency, and the court upheld the termination, as well as refused to award back pay for the time when she was validly excluded from the classroom—but not yet terminated—on medical grounds. <u>Id</u>. The import though is not that she was terminated, but that despite being excluded from the classroom and refusing to undertake a medical procedure that would allow her to return, she was *entitled to and received due process* before being terminated.

The DOE makes the bare assertion that unilaterally separated teachers are not being disciplined. Yet, New York courts and the New York Commissioner of Education have found that comparable conduct constitutes grounds for discipline that may or may not conclude in termination. As such, adequate process under existing disciplinary procedures is due.

C) <u>The Award Does Not Waive DOE Employees' Due Process Rights</u>

The DOE also argues that even if the termination of unvaccinated public employees is disciplinary, no process is due because the Award eliminated those rights for those who remain unvaccinated after December 1. DOE Br. at 20-21. While the Award modifies the UFT-DOE collective bargaining agreement in a number of respects, contrary to the DOE's stance, however, and as indicated *supra*, the Award does not waive covered employees' right to a disciplinary proceeding meeting the constitutional standard for due process. Whether, as the DOE claims, another form of due process would be constitutionally adequate is misdirection. The only question is if due process attaches at all. If it does, then state law and contract provides what process is due and the DOE may not ignore its obligations.

Under New York state law, "waivers of rights in contract will not be inferred unless the intent to waive is clear." <u>Seven–Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc.</u>, 686 F.Supp.

14

1015, 1023 (S.D.N.Y.1988) (internal citations omitted). Implied waiver is especially disfavored when the rights at issue are statutory, and courts will not infer such a waiver from a general contractual provision unless the waiver is "explicitly stated" and "clear and unmistakable." Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80 (1998) (holding that a union waiver of employee rights to a federal judicial forum for employment discrimination claims had to be clear and unmistakable); see also Conde v. Yeshiva Univ., 16 A.D.3d 185 (1st Dep't 2005) (same). The same is true of constitutional rights. See Legal Aid Society v. City of New York, 114 F. Supp. 2d 204, 227 (S.D.N.Y. 2000) ("[A] waiver of constitutional rights in any context must, at the very least, be clear.") (internal citations omitted). Moreover, in interpreting state law and regulations, New York courts "construe the tenure system broadly in favor of the teacher, and…strictly police procedures which might result in the corruption of that system." Ricca v. Bd. of Educ. of City School Dist. of City of N.Y., 47 N.Y.2d 385, 391 (1979). A binding arbitration award is treated as "redefining" the terms of the collective bargaining agreement. See Town of Southampton v. N.Y. State Pub. Emp. Rels. Bd., 2 N.Y.3d 513, 523 (2004).

Pursuant to the terms of the Award, DOE employees who are not vaccinated and have not received an accommodation may either (a) take unpaid leave; or (b) voluntarily separate. Award at II-III. The Award states that the unpaid leave is not disciplinary. The Award then provides that the DOE may only "seek to unilaterally separate" employees who have not selected either unpaid leave or voluntary separation from employment after December 1, 2021, but that "except for the express provisions contained, herein, all parties retain all legal rights at all times." Award at III(B)-(C). No further reference is made to due process rights, there is no mention of the waiver of any rights with regard to termination, and—as the Award recognizes in its introduction—the

15

DOE vaccine mandate order did not itself "address matters of due process with regard to job and benefits protection." Award at 3.

The "unilateral separation" described in the Award is clearly different from either the voluntary extended LWOP or voluntary bilateral separation put forward as explicitly non-disciplinary options under the Award. Indeed, both the bilateral separation and extended LWOP options require employees to sign separate, individual waivers to their right to challenge the leave or separation, respectively, including through a contractual or statutory disciplinary process, as consideration for the benefits of those options. Award at III(A)-(B). Conversely, "unilateral separation" is not described as non-disciplinary, does not mention waiver, and the arbitrator's use of "seek to" shows that the process is not automatic.[8] The Award's statement that "all legal rights" are retained by "all parties" specifically addresses the current matter, confirming that no due process rights have been waived or bargained away under the Award. This is also consistent with discussions and arguments had during the mediation and arbitration, where the parties raised the issue of whether charges would need be brough and differed on the issue. See Klinger Suppl. Decl., at ¶ 10. Accordingly, not only is there no clear intent to waive due process rights in the language of the Award but just the opposite is true: There is a clear intent to *preserve* legal rights which are not explicitly modified by the Award.

Moreover, following Ricca, any matter affecting the stability of the tenure system should be construed in favor of maintaining tenure and its attended rights. 47 N.Y.2d at 391. The treatment of easily modifiable non-statutory requirements implemented through executive

---

[8] Merriam-Webster defines "seek" as: "1: to resort to : go to; 2(a): to go in search of : look for, [or] (b): to try to discover; 3: to ask for; 4: to try to acquire or gain[, to] aim at; [or] 5: to make an attempt – [this definition] used with to and an infinitive." *Definition of "Seek"*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/seek (last visited: Dec. 7, 2021). Definitions, 3, 4 and 5 are most applicable in the context, and all three imply the possibility of failure for the party "seeking" the outcome. Interpreting the Award to allow automatic unilateral separation of unvaccinated employees after December 1 would not be the best reading of the language.

16

discretion—such as vaccination by an arbitrary date (with different dates assigned to different workforces)—as qualifications that waive due process prior to termination risks "corrupting" that system. The Court of Appeals in Ricca warned correctly that "[e]ven good faith violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions." 47 N.Y.2d at 391. As maintaining due process prior to "unilateral separation" is not only a plausible reading, but the preferred one, it should be upheld as a matter of public policy.

If employees do not abide by the options in the Award, the DOE may *seek* to dismiss them for not abiding by the terms of the Award and the mandate. But nowhere in the Award does the UFT waive the applicability of § 3020-a, any other statutory or contractual processes, or the concomitant due process protections for same. The failure of public employees to comply with the terms of the DOE's implementation of the mandate is squarely a disciplinary matter within the scope of these procedures.

## CONCLUSION

For the reasons set forth herein and in the accompanying submissions, the UFT respectfully requests that the Court:

1. hold that employees who have refused to comply with the vaccine mandate may only be terminated pursuant to disciplinary procedures under Education Law §3020-a, Civil Service Law § 75, and/or the due process procedures in their respective collective bargaining agreements; and

2. award such other and further relief as the Court deems just and proper.

Dated: December 7, 2021                     Respectfully submitted,

17

_____/s/ ALAN M. KLINGER_____
STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
Dina Kolker, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com
dkolker@stroock.com

- and –

Beth A. Norton, Esq.
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
bnorton@uft.org

*Co-counsel for Defendant UFT*

18

JA-880

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X

BROECKER *et al.*,                                      :
                                                         :
                              Plaintiffs,                :
                                                         :
        -against-                                        :
                                                         :         Index No. 21-cv-6387
                                                         :
NEW YORK CITY DEPARTMENT OF                              :
EDUCATION, *et al.*,                                     :
                                                         :
                              Defendants.                :

----------------------------------------------------------- X

## DECLARATION OF ALAN M. KLINGER IN SUPPORT OF DEFENDANT UNITED FEDERATION OF TEACHERS, LOCAL 2, AFL-CIO'S POSITION IN SUPPLEMENTAL BRIEFING

**Alan M. Klinger**, pursuant to 28 U.S.C. § 1746, declares the following to be true under penalty of perjury:

1.      I am an attorney duly admitted to practice in the State of New York and not a party to the above-captioned action.

2.      I am a partner with the firm of Stroock & Stroock & Lavan LLP, co-counsel for Defendant United Federation of Teachers, Local 2, AFL-CIO (the "UFT") in this matter.

3.      I have personal knowledge of the matters set forth in this declaration, except for such matters as are based on my review of court files or other relevant documents, and I believe such matters to be true.

4.      I submit this declaration pursuant to the Court's request for supplemental briefing regarding whether the New York City Department of Education ("DOE") must comply with existing statutory and contractual due process rights should it seek to terminate unvaccinated employees after December 1, 2021.

JA-881

5.      On August 24, 2021, DOHMH Commissioner Chokshi imposed the first version of a COVID-19 vaccination mandate (the "Mandate") for all employees in the City school district, which requires all DOE staff, City employees, and contractors who "work in-person in a DOE school setting or DOE building" and others in City schools to—no later than September 27, 2021—provide proof that they have at least received the first dose of a vaccine.[1]

6.      As previously set forth in the UFT's submission in opposition to Plaintiffs' application for emergency and preliminary relief, the UFT immediately proceeded to expedited negotiations regarding the Mandate's implementation, culminating in an expedited mediation and then arbitration presided over by Martin F. Scheinman.[2]  Arbitrator Scheinman issued his award (the "Award") on September 10, 2021.

7.      I served as counsel to the UFT throughout negotiations between the UFT and the DOE and subsequent mediation and arbitration proceedings.

8.      During these proceedings, the questions (i) of whether the Mandate itself spoke to any specific employment consequences for employees and (ii) of whether statutory and contractual due process would be due to DOE employees who declined to become vaccinated, did not obtain an accommodation, or opt for an alternative option were raised on multiple occasions.

9.      With regard to the first issue, Arbitrator Scheinman concluded that the Mandate did not itself "address matters of due process with regard to job and benefits protection."[3]

---

[1] Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf

[2] The procedural history and outcome of the UFT and DOE's negotiations, mediation, and arbitration, as well as relevant documents, are respectively described and attached as exhibits to Klinger Declaration in Opposition to Emergency Motion, ¶¶ 8-22(dkt# 21).

[3] Klinger Declaration in Opposition to Emergency Motion, Ex. D at 3.

2

JA-882

10.     With regard to the second issue, on all occasions that the issue was raised, the parties disagreed on whether such process would be due to these DOE employees, with the UFT taking the position that any attempt to separate or otherwise discipline DOE employees for noncompliance with the Mandate would by law require statutory and contractual due process, and that such process would not be waived. The DOE took a contrary position.

11.     The language of the Award states that "except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein."[4]

12.     Accordingly, based upon the arguments presented to the Arbitrator and the plain language of the Award, the Award does not waive or modify existing applicable due process rights.

Dated: December 7, 2021                              Respectfully submitted,

                                        /s/ ALAN M. KLINGER
                                        STROOCK & STROOCK & LAVAN LLP
                                        Alan M. Klinger, Esq.
                                        180 Maiden Lane
                                        New York, New York 10038
                                        (212) 806-5400
                                        aklinger@stroock.com

                                        *Counsel for Defendant UFT*

---

[4] Klinger Declaration in Opposition to Emergency Motion, Ex. D at 17-18.

3

JA-883

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,

                                             Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual capacities,
UNITED FEDERATION OF TEACHERS, LOCAL 2,
AMERICAN FEDERATION OF TEACHERS, AFL-CIO,
MICHAEL MULGREW, in his official and individual
capacities, JOHN DOE #1-10, in their official and individual
capacities; and JANE DOE #1-10 in their official and
individual capacities,

                                             Defendants.

-------------------------------------------------------------------- x

No. 21 Civ 6387 (KAM)(LB)

**DEFENDANTS NEW YORK CITY DEPARTMENT OF EDUCATION AND MEISHA
PORTER'S SUPPLEMENTAL BRIEFING AS TO THE ISSUE OF VACCINATION AS
A JOB REQUIREMENT**

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants DOE and Porter
100 Church Street
New York, New York 10007

*Of Counsel:*        Andrea O'Connor
                     Iván A. Méndez, Jr.
                     Maxwell Leighton

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ............................................................................................................ 3

    A.    THE COH ORDER CREATES A LAWFUL CONDITION
           OF EMPLOYMENT ....................................................................... 3

    B.    PLAINTIFFS HAVE BEEN PROVIDED ALL DUE
           PROCESS OWED ......................................................................... 10

           1) NOTICE .................................................................................. 11

           2) OPPORTUNITY TO BE HEARD ........................................ 12

    C.    EDUCATION § 3020-a AND CIVIL SERVICE LAW § 75
           ARE NOT APPLICABLE .............................................................. 17

CONCLUSION ....................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adrian v. Bd. of Ed.*,
  92 A.D.3d 1272 (4th Dep't 2012), <u>leave to appeal granted</u>, 19 N.Y.3d 804
  (2012)............................................................................................................10, 11

*Beck-Nichols v. Bianco*,
  20 N.Y.3d 540 (2013) ...........................................................................10, 13, 14

*Brown v. Bd. of Educ.*,
  2009 N.Y. Misc. LEXIS 5475 (Sup. Ct. N.Y. Co. July 22, 2009)..........................10

*C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
  2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009)....................................7, 11

*Cafeteria Workers v. McElroy*,
  367 U.S. 886 (1961).............................................................................................15

*Capul v. City of N.Y.*,
  No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27,
  2020), <u>aff'd</u> 832 F. App'x. 766 (2d Cir. 2021) ................................................18, 19

*Carr v New York State Dep't of Transportation*,
  70 A.D.3d 1110, <u>lv to app. den.</u>, 14 N.Y.3d 709 (2010)......................................11

*City School District v. McGraham*,
  17 N.Y.3d 917 (2011) ..........................................................................................11

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985)............................................................................................15

*Cravatta v New York State Dep't of Transportation*,
  77 A.D.3d 1399 (4th Dep't 2010)........................................................................11

*Ezekwo v. N.Y.C. Health & Hosps. Corp.*,
  940 F.2d 775 (2d Cir. 1991).........................................................................16, 18

*Felix v. Dep't of Citywide Admin. Servs.*,
  3 N.Y.3d 498 (2004) .....................................................................................passim

*Garland, et al. v. New York City Fire Department, et al.*,
  Docket No. 21 CV 6586 (KAM)(CLP).............................................................passim

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
  101 F.3d 877 (2d Cir. 1996), <u>cert. denied</u>, 521 U.S. 1140 (1997)...........................19

Holt v. Bd. of Educ.,
  52 N.Y.2d 625 (1981) ..................................................................................10

In the Matter of Ingrid Romero v. The Board of Education of the City School
District of the City of New York, et al.,
  Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty.) ...................................21

Johnston v. Tn. of Orangetown,
  562 F. App`x 39 (2d Cir. 2014) ................................................................20

Kane v. de Blasio,
  21 Civ. 7863 (S.D.N.Y.) (VEC)...........................................................5, 8

Keil v. The City of New York, et al.,
  21 Civ. 8773 (SDNY)(VEC)..................................................................5, 8

Matter of Koutros v. Dep`t of Educ. of City of N.Y.,
  2013 NY Slip Op 33491 (Sup. Ct. N.Y. County October 22, 2013) affirmed at
  129 A.D.3d 434 (App. Div. 1st Dept.).....................................................12

Locurto v. Safir,
  264 F.3d 154 (2d Cir. 2001)......................................................................20

Mandelkern v. City of Buffalo,
  64 A.D.2d 279 (4th Dept. 1978) ..............................................................12

Maniscalco v. N.Y. City Dept. of Educ.,
  No. 21 Civ.5055 (E.D.N.Y.) (BMC)......................................................5, 8

Mathews v. Eldridge,
  424 U.S. 319 (1976)..................................................................15, 16, 18

Moogan v. N.Y. State Dep`t of Health,
  8 A.D.3d 68 (1st Dep`t 2004) ............................................................11, 18

Morrissey v. Brewer,
  408 U.S. 471 (1972)..................................................................................15

Naliboff v. Davis,
  133 A.D.2d 632 (2d Dep`t 1987), lv to app. den., 71 N.Y.2d 805 (1988)..............................11

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82
v. Cuomo,
  64 N.Y.2d 233 (1984) .................................................................................7

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
  14 N.Y.3d 275 (2010) ...............................................................10, 13, 14

O'Connor v. Board of Education,
    48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)
    ................................................................................................ passim

In the Matter of Rachel Maniscalco v. The Board of Education of the City School
    District of the City of New York, et al.,
    Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.) ....................................................21

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987) .................................................................................15

Schrimer v. Town of Harrison,
    98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) ....................11

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006) .................................................................................20

Sorano v. City of Yonkers,
    37 A.D.3d 839 (2d Dep't 2007) ...........................................................................15

Tessler v. Paterson,
    768 F. Supp. 2d 661 (S.D.N.Y. 2011) ..................................................................20

In the matter of the Application of Andrew Ansbro, as President of the Uniformed
    Firefighters Association v. de Blasio, et al.,
    Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) ..................................................22

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
    New York, et al.,
    Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ..............................................6, 8

We the Patriots USA, Inc. v. Hochul,
    Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021)
    opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov.
    12, 2021). Here, the COH Order .............................................................................7

Case 23-655, Document 74, 06/05/2023, 3525006, Page88 of 281

## PRELIMINARY STATEMENT

This memorandum of law is submitted by Defendants New York City Department of Education ("DOE") and Meisha Porter (collectively "DOE Defendants"), pursuant to the Court's November 23, 2021 order directing the parties to "provide supplemental briefing as to the issue of vaccination as a job requirement and any corresponding due process rights." See ECF Minute Entry for proceedings held before Judge Kiyo A. Matsumoto: Show Cause Hearing held on 11/23/2021.

As set forth in this memorandum, the order issued by the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dave A. Chokshi, requiring DOE employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (the "COH Order") created a lawful condition of employment. The COH Order states, in pertinent part, that: "No later than September 27, 2021[1], or prior to beginning employment, the following individuals must provide proof of vaccination as described below: a. DOE staff must provide proof of vaccination to the DOE; b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer . . ."

The COH Order is unequivocal. It requires all DOE employees, both current and prospective, to be vaccinated. The COH Order is also lawful. See, e.g., Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ.5055 (E.D.N.Y.) (BMC); Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC); The New York City

---

[1]   This date was later amended to October 1, 2021. See https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf. Last accessed on Dec. 1, 2021.

Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).

Furthermore, on December 6, 2021, this Court determined that a nearly identical order issued by Commissioner Chokshi on October 20, 2021 requiring all New York City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021 ("Citywide COH Order") created a "condition of employment" for employees of the New York City Fire Department ("FDNY"). See Memorandum and Order in Garland, et al. v. New York City Fire Department, et al., Docket No. 21 CV 6586 (KAM)(CLP), ECF Doc. No. 24 (hereinafter "Garland Order"). Similarly, the COH Order at issue here creates an unassailably clear and legally sound condition of employment for all DOE employees.

Because the COH Order creates a condition of employment for DOE employees to be vaccinated against COVID-19, well-settled case law firmly establishes that DOE can terminate those employees, including tenured employees, who fail to satisfy that condition without invoking any disciplinary process provided under N.Y. Education § 3020-a ("§ 3020-a") or N.Y. Civil Service Law § 75 ("§ 75"). In examining the Citywide COH Order, this Court determined that the "termination of a public employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the [applicable] disciplinary procedures." See Garland Order at 12. The same analysis holds here. Finally, and as detailed below, plaintiffs have been provided with notice and ample opportunities to be heard and therefore have been afforded all process owed to them under the due process clause of the U.S. Constitution.

**STATEMENT OF FACTS**

For a full and complete recitation of the facts applicable to this supplemental memorandum of law, DOE Defendants respectfully refer the Court to the Statement of Facts contained in their Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary

JA-890

Injunction, dated November 19, 2021 ("DOE Defendants' Opposition Memo").  See ECF Dkt. No.

18.

## ARGUMENT

### A.  The COH Order Created a Lawful Condition of Employment

As detailed in DOE Defendants' Opposition Memo, the DOE, as a government employer, has a duty to maintain a safe workplace.  See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the municipal employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  The DOE, consistent with that obligation, and in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform work for the DOE.  When employees are ineligible to perform their duties under these circumstances, they are not being "suspended" but rather are unable to work due to ineligibility caused by their failure to comply with a lawful job requirement.  C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)(teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).

Indeed, the Second Circuit earlier this month upheld vaccination as a "condition of employment" in the healthcare field.  We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021) opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov. 12, 2021).  Here, the COH Order no less establishes that a COVID-19 vaccination is a "condition of employment" for DOE employees.

Despite this, plaintiffs contend the COH Order did not create a lawful job requirement because such a requirement may only be established via a legislative act or contract.

3

Case 23-655, Document 74, 06/05/2023, 3525006, Page91 of 281

See Plaintiffs' Memorandum of Law Regarding New York City Department of Education's Threat to Unilaterally Terminate the Plaintiffs on or After December 1, 2021, dated November 30, 2021 ("Plaintiffs' Supplemental Memo") at 9.  Not so.

Pursuant to Section 3.01(d) of the New York City Health Code, Commissioner Chokshi is authorized to issue orders and take actions that he deems necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect against an existing threat and a public health emergency has been declared pursuant to that section.  In exercising this power, Commissioner Chokshi issued the COH Order "to prevent, mitigate, control and abate" the public health emergency created by COVID-19.  The COH Order then requires DOE employees to provide proof of vaccination.  Given these facts, it is without question that the COH Order created a lawful, enforceable job requirement that all DOE employees must meet in order to remain employed.[2]  See e.g. Maniscalco, No. 21 Civ.5055 (E.D.N.Y.) (BMC)[3]; Kane, 21 Civ. 7863 (S.D.N.Y.) (VEC); Keil., 21 Civ. 8773 (SDNY)(VEC); MLC, Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).

In examining this issue in connection with the Citywide COH Order, this Court held that "[g]iven the state of public health emergency that our nation finds itself in due to the Coronavirus, the more transmissible Delta and Omicron variants, and the nature of Plaintiffs' job as firefighters and EMT employees, interacting with members of the public on an emergency basis, and living in close quarters during their shifts the [DOHMH] Commissioner was within his powers

---

[2] Notably, since issuing the COH Order pertaining to DOE employees, Commissioner Chokshi further has issued health orders mandating vaccination for employees of childcare and early intervention programs and within nonpublic schools.  See https://www1.nyc.gov/site/doh/about/hearings-and-notices/official-notices.page.  With that, the issuance of COVID-19 vaccination mandates for essentially all employees charged with the care and education of New York City children altogether solidifies the unassailable fact that it is a job requirement.

[3] Plaintiff Maniscalco, who is a plaintiff in this action, is also the lead plaintiff in Maniscalco.

**JA-892**

to require COVID-19 vaccination as a qualification of employment for FDNY employees." See Garland Order at 14.

Here, the same analysis applies. The nature of plaintiffs' jobs as DOE teachers and staff necessarily requires prolonged contact with the children in DOE's care—hundreds of thousands of whom are unvaccinated, and many of whom have underlying health conditions that make them more at risk of severe illness in the event of COVID-19 infection. Requiring DOE employees to be vaccinated significantly decreases the risk of children getting sick and/or needing to quarantine, and in turn helps reduce interruptions of in-person instruction, which is a critical priority for the City of New York's one million school children after multiple school years affected by COVID-19. Moreover, requiring DOE employees to be vaccinated reduces the risk of COVID-19 spreading throughout DOE schools and broader communities. Thus, just as the Citywide COH Order created a lawful condition of employment for FDNY employees, the COH Order creates one for plaintiffs.

Because it is clear that a COVID-19 vaccination is a condition of employment for DOE employees, the only questions that remain are whether: (1) the notice and processes provided by DOE Defendants comport with constitutional due process; and (2) DOE can terminate employees that do not meet this condition of employment without the processes detailed in § 3020-a or § 75. As detailed below, the notice provided to plaintiffs and processes available to them more than satisfy the constitutional minimum and well-settled case law firmly establishes that DOE can terminate employees, including tenured employees, without invoking the § 3020-a or § 75 disciplinary procedures, for failing to maintain a condition of employment. [4]

---

[4] Plaintiffs' Supplemental Memo makes reference to Executive Orders 75 and 78. However, these Executive Orders are only applicable to City employees employed at City agencies. These Executive Orders are therefore not applicable to DOE. Nevertheless, the condition that new employees of the City and of the DOE must be vaccinated against COVID-19 only certifies that it

**JA-893**

### B. Education Law § 3020-a and Civil Service Law § 75 are Not Applicable

"The purpose of [Education Law § 3020-a] is to protect teachers from arbitrary imposition of formal <u>discipline</u>.  It was not intended to interfere with the day-to-day operation of the educational system . . . ." <u>Holt v. Bd. of Educ.</u>, 52 N.Y.2d 625, 632 (1981) (emphasis added). Because of that, § 3020-a and/or § 75 hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency."  <u>O'Connor v. Bd. of Educ.</u>, 48 A.D.3d 1254, 1255 (4th Dep't 2008) (3020-a hearing not required when teacher is terminated for failure to comply with residency requirement as this constitutes a job qualification, not discipline), <u>appeal dismissed</u>, 10 N.Y.3d 928 (2008); <u>Adrian v. Bd. of Ed.</u>, 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), <u>leave to appeal granted</u>, 19 N.Y.3d 804 (2012); <u>Beck-Nichols v. Bianco</u>, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); <u>Brown v. Bd. of Educ.</u>, 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009) ("The termination of Petitioner did not implicate the procedural protections of Education Law § 3020-a because Petitioner's termination was due to her legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence on her part.")(citations omitted); <u>Felix v. Dep't of Citywide Admin. Servs.</u>, 3 N.Y.3d 498, 505 (2004)(failure to maintain residency requirement does not trigger the protections of Civil Service Law § 75 because it is a matter of job eligibility, not discipline for misconduct).

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary

---

constitutes a categorical job requirement, whether for those seeking to enter the position or incumbent employees.

6

procedures, from a "qualification of employment" which is not subject to such procedures. <u>Matter of New York State Off. of Children & Family Servs. v. Lanterman</u>, 14 N.Y.3d 275, 282 (2010); <u>see also</u> <u>City School District v. McGraham</u>, 17 N.Y.3d 917, 918 n.1 (2011); <u>Cravatta v New York State Dep't of Transportation</u>, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); <u>Carr v New York State Dep't of Transportation</u>, 70 A.D.3d 1110 (3d Dep't), <u>lv to app. den.</u>, 14 N.Y.3d 709 (2010) (same; loss of CDL); <u>Moogan v. N.Y. State Dep't of Health</u>, 8 A.D.3d 68, 69 (1st Dep't 2004) (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses.  Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); <u>Naliboff v. Davis</u>, 133 A.D.2d 632 (2d Dep't 1987), <u>lv to app. den.</u>, 71 N.Y.2d 805 (1988); <u>Schrimer v. Town of Harrison</u>, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

While providing proof of a COVID-19 vaccination is a new condition of employment put in place to combat a novel virus, the analysis remains unchanged.  DOE is enforcing the lawful COH Order by removing unvaccinated employees from the workplace because they are no longer eligible for employment.  Thus, plaintiffs are not entitled to a § 3020-a or § 75 hearing in advance of being placed on leave without pay ("LWOP") or ultimately separated.  In arguing otherwise, plaintiffs seek to redefine "discipline" to include a failure to meet a qualification of their DOE employment.  The Courts have repeatedly rejected such attempts, including this Court in the <u>Garland</u> Order. <u>See</u> <u>Garland</u> Order at 11-13; <u>O'Connor</u>, 48 A.D.3d at 1255; <u>Adrian</u>, 92 A.D.3d at 1273; <u>Brown</u>, 2009 N.Y. Misc. LEXIS 5475, at *9-10; <u>Felix</u>, 3 N.Y.3d at 505.

JA-895

Indeed, in O'Connor, the petitioners were tenured teachers employed by the Niagara Falls Board of Education who were terminated for their failure to comply with a residency requirement.  O'Connor, 48 A.D.3d 1254, 1255.  In bringing a procedural due process claim challenging their termination, the petitioners argued that they could not be terminated without the Board of Education first issuing disciplinary charges against them, followed by a hearing under § 3020-a.  Id.

The Court disagreed, holding that § 3020-a was inapplicable because that section deals solely with "issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto."  Id.  In contrast, the residency requirement was a "qualification of employment" that was "unrelated to job performance, misconduct or competency" and therefore the Board of Education "may impose it if [it] chooses to do so without running afoul of the Constitution or general laws of the State."  Id., citing Mandelkern v. City of Buffalo, 64 A.D.2d 279, 281 (4th Dept. 1978).

Similarly, in Matter of Koutros v. Dep't of Educ. of City of N.Y., 2013 NY Slip Op 33491 (Sup. Ct. N.Y. County October 22, 2013) affirmed at 129 A.D.3d 434 (App. Div. 1st Dept.), the Court held that the termination of a tenured teacher did not implicate the procedural protections of § 3020-a because plaintiff's termination was due to his legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence.

N.Y. Education Law § 2573, which mandates that a teacher must complete four years of service to achieve tenure, is instructive.  See O'Connor Decl., dated November 18, 2021, Ex. E, Affidavit of Vicki Bernstein at 2, ECF Dkt. No. 19-5.  New York State's Education Department permits a teacher to begin teaching with what is referred to as an "Initial Certificate," which is valid for five years, during which time the teacher is expected to obtain a master's degree and a "Professional Certificate" and complete all necessary certification requirements.  Id.  A teacher

8

may complete probation during this time period and, pursuant to the collective bargaining agreement between the Department and UFT, thereupon becomes entitled to the protections afforded by Education Law § 3020-a.  Id.

Each year, the DOE reviews certification statuses for teachers and other staff and identifies staff who have an expired Initial Certificate (including teachers and other pedagogical staff who have completed probation) and who have not completed the necessary certifications.  Id. at 4.  Once identified, the DOE then separates these employees from service without a hearing pursuant to § 3020-a.  Id.  Indeed, the union representing most of the plaintiffs in this case, the United Federation of Teachers, on its own website, cautions that "although you can be tenured while holding an initial certificate, you can be terminated without the right to due process for failure to complete the requirements for the professional certificate in the same license area" See id., citing "How do I achieve Tenure" available at https://www.uft.org/teaching/new-teachers/tenure; last accessed on Nov. 18, 2021.  For example, in the 2018-19 school year, DOE separated 136 staff (131 teachers, 3 guidance counselors, and 2 social workers); in the 2019-20 school year, DOE separated 30 staff (27 teachers, and 3 social workers); and in the 2020-2021 school year, DOE separated 217 staff (198 teachers, 3 guidance counselors, 15 social workers, 1 psychologist) from service based on their failure to obtain the required certifications.  Id. at 5.

Similarly, under Civil Service Law § 75, it is equally well-settled that the failure to maintain eligibility for employment is not an act of misconduct or related to job performance so as to implicate the disciplinary procedures mandated by Civil Service Law § 75.  See Lanterman, 14 N.Y.3d at 282 (2010); Felix, 3 N.Y.3d 498 at 505.

In the Garland Order, this Court cited approvingly to O'Connor, Beck-Nichols and Felix in holding that "the Court need not consider whether section 15-113 of the New York City Administrative Code was correctly followed because under New York law, the termination of a

9

public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth section 15-113." See Garland Order at 12. This Court further held that "[l]ike the state statutory provisions that were considered in O'Connor [§ 3020], Beck-Nichols [§ 3020] and Felix [§ 75], section 15-113 of the New York City Administrative Code is related to discipline of FDNY members based on their job performance, misconduct, or competency. Discipline of Plaintiffs for job performance, misconduct, or competency is not at issue here." Id. at 13. Therefore, this Court held that the applicable disciplinary procedures contained in the Administrative Code are not implicated when a FDNY employee is terminated based on their "failure to satisfy a qualification of employment." Id. Here, as was the case in Garland, plaintiffs face termination due to their failure to maintain qualification of employment and therefore termination is warranted without resort to the § 3020-a or § 75 processes. See id.; see also Lanterman, 14 N.Y.3d at 282.

Here, the City's Health Commissioner promulgated a lawful job requirement: to be eligible to perform work for DOE, an individual must provide proof of vaccination against COVID-19. Plaintiffs have not complied with that lawful requirement and are therefore subject to termination without a disciplinary hearing. Plaintiffs' failure to maintain this job requirement in no way implicates the disciplinary procedures delineated in § 3020-a and § 75 because it does not pertain to misconduct or job performance. Thus, they can be separated from service without statutory disciplinary procedures.

C. **Plaintiffs Have Been Provided All Due Process Owed**

To begin, plaintiffs conflate the process they believe they are owed under § 3020-a and § 75, with the constitutional minima required by the Due Process Clause. However, the processes provided by these statutes are not co-extensive with, and far exceed, the constitutional minima. Thus, the Court's inquiry here (as this case is premised solely on federal question

jurisdiction), is not whether the process being afforded to plaintiffs prior to being terminated comports with § 3020-a and § 75. Rather, the Court's inquiry should be limited to whether the requirements of <u>constitutional</u> due process have been met. <u>See</u> <u>Garland</u> Order at 10 <u>quoting</u> <u>Robison v. Via</u>, 821 F.2d 913, 923 (2d Cir. 1987).

      "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976); <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985) ("The essential requirements of due process…are notice and an opportunity to respond."); <u>Felix</u>, 3 N.Y.3d at 504-06 ("A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement"; here the process provided in Administrative Code § 12-120, which provides for notice and an opportunity to refute allegations of non-residence, are all the process due); <u>Sorano v. City of Yonkers</u>, 37 A.D.3d 839 (2d Dep't 2007)(in accordance with <u>Felix</u>, a police officer can be terminated for non-residency without § 75 process but due process requires that the employee be provided with notice of the non-compliance and an opportunity to respond prior to termination). Moreover, as the Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895 (1961). '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)." <u>Mathews</u>, 424 U.S. 319 at 334.

    **1)  Notice**

      All plaintiffs were provided with ample notice that they were being placed on LWOP and that, as a result of their non-compliance with the COH Order, they would be separated from the DOE. In fact, the vast majority of plaintiffs have had notice of these potential outcomes since

September 10, 2021, when the highly publicized Impact Arbitration Decision was issued. Furthermore, on October 2, 2021, nearly immediately after the September 27, 2021 implementation date for the COH Order, plaintiffs were notified that they were not in compliance with the order and therefore would be placed on LWOP as of October 4, 2021, and that DOE would seek to separate them as of December 1, 2021 if they did not opt to extend their LWOP status and remained out of compliance with the mandate. See Dkt. No. 1-1. Additionally, the October 2, 2021 set forth the below-described processes that plaintiff could – and, in some instances, did -- avail themselves of. Id. In sum, any DOE employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal, or could have voluntarily separated from the DOE via a number of different avenues. After this notice was given, plaintiffs certainly could have sought – and in the case of Plaintiffs Maniscalco and Romero did seek -- relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy. Thus, it is undisputed that DOE Defendants have satisfied the notice requirement.

### 2) Opportunity to be Heard

Following the issuance of the October 2, 2021 email, DOE Defendants provided plaintiffs with multiple and various opportunities to be heard. The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required." Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991).

The October 2, 2021 email to plaintiffs laid out all of the processes available to them via the Impact Arbitration Decision. First, the Impact Arbitration Decision established a process

by which DOE employees could apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remained unable to mount an immune response.  See O'Connor Decl., Exh. A, Impact Arbitration Decision at 6-13. The Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Id.  Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of this process to seek an accommodation with respect to the DOE Vaccination Mandate, including appealing to the arbitrator panel.  See O'Connor Decl. at Ex. F.

Next, the Impact Arbitration Decision set forth a process for separation from employment or the extension of LWOP.  See id. at 16-17.  Under this process, DOE employees who had not complied with the DOE Vaccination Mandate by October 29, 2021, could have opted to be separated from employment and continue to be eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from another source.  Id. at 16. Employees could have, in the alternative, opted to have their leave without pay extended through September 5, 2022, and maintain health coverage.  Id. at 17. To the extent those employees who chose to extend their LWOP did not come into compliance with the COH Order by the end of that ultimate period, they will be deemed to have voluntarily resigned.  Id.  DOE employees had through October 29, 2021 to select the separation option provided by the Impact Arbitration Decision, and through November 30, 2021 to select to extend their leave without pay with health benefits.  Those who did not avail themselves of either of these options were subject to unilateral separation by DOE beginning December 1, 2021.  Id.

That plaintiffs may not like this process, and certain plaintiffs may have chosen not to avail themselves of these options, but that does not change the fact that this process was available

13

to them.  See Garland Order at 18 ("Plaintiffs, not having availed themselves of the pre-deprivation

opportunity to be heard, cannot now claim that they were deprived of their constitutional right to

due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727,

at *39  (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process

protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766

(2d Cir. 2021).  Indeed, in examining a nearly identical notice and process in Garland in connection

with the Citywide COH Order, this Court found that "there was sufficient pre-deprivation notice

and opportunity to respond."  See Garland Order at 17.

To the extent plaintiffs contend that due process requires a hearing to be held, such

contention is unsupported.  Ezekwo makes clear that an "opportunity to be heard" does not equate

to a "hearing."  940 F.2d at 786.  This is particularly true when there are no factual disputes that

require resolution via a hearing.  This is precisely the point of the Supreme Court's teaching that

"due process is flexible and calls for such procedural protections as the particular situation

demands." Mathews, 424 U.S. at 334 (emphasis added).  For example, in Moogan, it was

undisputed that the plaintiff failed to maintain a qualification of employment, namely, his EMT

certification.  See Moogan, 8 A.D.3d at 69.  Because of that, the Court held that there was "no

factual issue to be determined at a hearing" and therefore neither "§ 75 or federal constitutional

due process" required a hearing before his termination.  Id.  Here, the same is true.  Plaintiffs

unquestionably failed to maintain a qualification of employment, namely, providing proof of a

COVID-19 vaccine.  Thus, there is "no factual issue" necessitating a full adversarial or fact-finding

hearing.

Plaintiffs further contend that they are entitled to hearings pursuant to their

respective collective bargaining agreements.  See Dkt. No. 2-10, Plaintiffs' Memorandum of Law

at 16-17. This argument again conflates the constitutional minimum required by the due process

JA-902

clause with contractual agreements that do not implicate the United States Constitution. Moreover, the collective bargaining agreements governing the terms of plaintiffs' employment establish grievance and arbitration procedures that plaintiffs could use to challenge the so-called "disciplinary actions" taken against them. Thus, plaintiffs' procedural rights were also adequately protected by the grievance procedures contained in the applicable collective bargaining agreements. The fact that plaintiffs chose not to utilize such procedures does not change this outcome. Cf. Capul., 2020 U.S. Dist. LEXIS 92727, at *39 (holding that City employees' failure to avail themselves of adequate post-deprivation remedies did not render their procedural due process claims viable).

To the extent that certain plaintiffs are claiming that UFT was "not accepting" grievances prior to November 12, 2021, see Dkt. No. 2-3, Affidavit of Jeannine Lam, that allegation does not impact the constitutional analysis vis-à-vis the DOE, and, in any event, has been directly controverted by their own union. Indeed, while plaintiffs may be claiming that UFT breached its duty of fair representation by allegedly failing to accept grievances, that alleged failure on UFT's part does not change the fact that plaintiffs had ample process at their disposal via their collective bargaining agreements (or via Article 78 proceedings brought in New York State Supreme Court). Thus, UFT's supposed – and contested - failure to bring grievances does not suffice to establish a Constitutional violation against DOE.

Finally, while it is clear that DOE Defendants provided plaintiffs with a full panoply of processes, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997).

Here, the post-deprivation procedures provided by DOE Defendants clearly satisfy the constitutional minimum. As indicated above, the Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision. Additionally, while an appeal is pending, the employee would remain on payroll pending the appeal. See O'Connor Decl., Exh. A, Impact Arbitration Decision at 11. In the event an appeal was denied, the employee would be placed on LWOP. Id. at 14. If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same school within a week of providing proof of vaccination to DOE. A nearly identical process applied to those plaintiffs who are covered by the DC 37 Agreement. These post-deprivation processes satisfy the constitutional minimum for due process. See Garland Order at 18.

Finally, the availability of an Article 78 review further precludes plaintiffs' due process claims. Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge [the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).[5]

---

[5] Indeed, Plaintiffs Maniscalco and Romero has already availed themselves of this remedy and have filed Article 78 proceedings in New York State Supreme Court challenging their placement on LWOP and possible termination as violative of their due process rights pursuant to § 3020-a.

**JA-904**

Given all of the notice and opportunities to be heard plaintiffs have admittedly been provided, and the availability of an Article 78 proceeding, they have been afforded all process due to them.

### C.   Education Law §§ 913 and 2568 are Not Applicable

Plaintiffs' Supplemental Memo argues that the vaccine requirement contained in the COH Order necessarily invokes the procedures set forth in Education Law §§ 913 and 2568. These sections permit the DOE to require an employee to submit to a medical examination to determine the mental or physical capacity of the employee to continue to perform their job duties. See Plaintiffs' Supplemental Memo at 5-6.  Thus, plaintiffs are arguing that – in advance of enforcing the COH Order – DOE should have required all unvaccinated employees to submit to an involuntary physical examination by a physician of DOE's choosing and to have that physician issue a written report regarding the unvaccinated employee's fitness for duty.  Plaintiffs hypothesize that this physical examination would "likely include a blood test to determine whether the Plaintiffs have antibodies to the COVID-19 virus" and that any plaintiff with antibodies would be deemed "fit for duty without the vaccine because the fitness must be whether a NYCDOE employee has antibodies to COVID." Id. at 6.

The absurdity of this argument cannot be overstated.  Initially, it is **not** DOE Defendants' position that unvaccinated employees are physically or mentally incapable of performing their job duties.  Rather, it is DOE Defendants' position that the COH Order creates a lawful condition of employment that plaintiffs do not currently meet and are therefore ineligible

---

See In the Matter of Ingrid Romero v. The Board of Education of the City School District of the City of New York, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty.); In the Matter of Rachel Maniscalco v. The Board of Education of the City School District of the City of New York, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.).

JA-905

for continued employment.  Therefore, DOE Defendants respectfully submit that the Court need not even entertain this argument.

And, even so, plaintiffs' reasoning for why §§ 913 and 2568 would arguably apply, i.e. that detectable COVID-19 antibodies in a blood sample is a substitute for vaccination, is as wrong as it is irresponsible.  This notion of "natural immunity as a substitute for vaccination" has been widely rejected, including by reliable medical authorities like the CDC which has determined that a prior COVID-19 infection is no substitute for the robust protections afforded by vaccination. See New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection, U.S.       Centers        for        Disease        Control,       August       6,       2021; https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html.

Indeed, Michelle Morse, M.D., M.P.H, the Chief Medical Officer for DOHMH, has illustrated the highly compelling grounds for mandating vaccination against COVID-19 even for those with a prior COVID-19 infection.  See Affirmation of Michelle E. Morse, M.D., M.P.H. in In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty); NYSCEF Doc. No. 20.[6] As Dr. Morse explains, "the level and duration of immune protection that results from a prior COVID-19 infection (sometimes referred to as 'natural immunity') remains uncertain and can vary based on individual characteristics. Those who have had prior COVID-19 infection also get additional benefit from vaccination. There is evidence that vaccines may provide better protection against current variants than natural immunity, and studies have shown that people who are unvaccinated have higher rates of reinfection compared to people who are vaccinated."  See id.

---

[6] A copy of Dr. Morse's Affirmation is annexed hereto for the Court's convenience as Appendix A.

JA-906

The COH Order itself mandates vaccination – there is no reference to so-called natural immunity to exclude anyone from that mandate.  Thus, plaintiffs' contention that the COH Order somehow invokes §§ 913 and 2568 because a DOE employee with COVID-19 antibodies would be "fit for duty" is entirely misplaced and, frankly, reckless in light of the ample medical evidence that both supports and urges vaccination for individuals with prior COVID-19 infections.

## **CONCLUSION**

For the foregoing reasons, DOE Defendants respectfully submit that this Court issue a determination that (1) the COH Order creates a lawful condition of employment, (2) DOE can terminate employees, including tenured employees, without invoking the § 3020-a, § 75, or any other similar disciplinary procedures for failing to maintain that lawful condition of employment, and (3) plaintiffs have been provided all constitutional process owed to them in connection with their placement on LWOP and potential termination.

Dated:       New York, New York
             December 7, 2021

GEORGIA M. PESTANA
Corporation Counsel of the
  City of New York
Attorney for Defendants DOE and Porter
100 Church Street, Room 2-100
New York, New York 10007
212-356-4015

By: _____/s/_____
       Andrea O'Connor
       Assistant Corporation Counsel

JA-907

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------- X

In the Matter of the Application of Andrew Ansbro, as
President of the Uniformed Firefighters Association
(UFA),

                                   Petitioner,

For a Judgement Pursuant to Article 78 of the Civil
Practice Law and Rules, vacating the mandatory
vaccination order issued by Respondents for all City
employees to the extent that it is applied to firefighters,
fire marshals, marine pilots and marine engineers
employed by the Fire Department of the City of New
York

                      - against -

Bill de Blasio, as Mayor of the City of New York; The New
York City Department of Health and Mental Hygiene; and
the Fire Department of the City of New York,

                                   Respondents.

---------------------------------------------------------------------- X

Index No. 159738/2021

**AFFIRMATION OF
MICHELLE E. MORSE,
MD., MPH**

     I, Michelle E. Morse, hereby affirm, pursuant to Rule 2106 of the New York Civil Practice
Law and Rules ("CPLR") as follows:

     1.     I am the Chief Medical Officer of the Department of Health and Mental Hygiene
("DOHMH" or "the Health Department") of the City of New York.

     2.     I received my BA from the University of Virginia in 2003, my MD from the
University of Pennsylvania in 2008, and an MPH from Harvard School of Public Health in 2012.

     3.     Prior to working at the Department of Health and Mental Hygiene, I served as a
Health Policy Fellow at the National Academy of Medicine; Assistant Professor at Harvard

JA-908

INDEX NO. 159738/2021
Case 1:21-cv-06387-KAM-LB Document 37-1 Filed 12/07/21 Page 3 of 9 PageID #: 1525

Medical School; Assistant Program Director of the Internal Medicine Residency Program at Brigham and Women's Hospital; and Deputy Chief Medical Officer at Partners In Health.

4.      The information provided in this affirmation is based on my personal knowledge and professional expertise.

5.      Coronavirus disease, or the 2019 Novel Coronavirus (COVID-19), is an infectious disease caused by the SARS-CoV-2 virus.

6.      COVID-19 most commonly spreads between people who are in close proximity, i.e., within approximately 6 feet with one another.  It is spread primarily when someone infected with the virus releases droplets or particles when talking, coughing, sneezing, or singing, and the droplets or particles are breathed in by another individual or land in another individual's eyes, nose, or mouth.

7.      COVID-19 has affected the lives of hundreds of millions of people worldwide and remains a serious threat all over the world and, in particular as it relates to the instant litigation, to New York City residents.  As of the date of this affirmation, there have been at least 253 million reported       cases       of       COVID-19       worldwide       (Johns       Hopkins, https://www.arcgis.com/apps/dashboards/bda7594740fd40299423467b48e9ecf6,       accessed 11/15/21), including over 46 million in the United States (CDC, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases, accessed 11/4/21), of which over 928,000 have been in New York City (DOHMH,  https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page,  accessed  11/15/21). There have been over  5 million reported deaths from COVID-19 worldwide (Johns Hopkins, https://www.arcgis.com/apps/dashboards/bda7594740fd40299423467b48e9ecf6,       accessed 11/15/21); 759,552 reported deaths in the United States (CDC, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases, accessed 11/15/21); and 34,688 confirmed and probable deaths in New

2

JA-909

York City alone (DOHMH, https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page, accessed 11/15/21).

8.      On January 31, 2020, the United States Department of Health and Human Services declared the COVID-19 virus a public safety emergency, and on March 11, 2020, the World Health Organization declared it to be a global pandemic.

9.      In the late winter/spring of 2020, New York City was the epicenter of the COVID-19 pandemic in the U.S. It suffered from a shortage of medical equipment, personal protective equipment, intensive care unit beds, and medical personnel.

10.     Accordingly, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, which remains in effect today, declaring a state of emergency in New York City.

11.     On March 25, 2020, the then-Commissioner of the Health Department declared COVID-19 a public health emergency within the City. That declaration remains in effect today.

12.     As of the date of this affirmation, New York City still is battling COVID-19. In particular, "variants of concern," including the Delta variant, which currently predominates in New York City, accounting for the vast majority of COVID-19 infections.

13.     Some variants of COVID-19 are particularly concerning because they are more easily and quickly transmitted. In particular, the Delta variant is highly contagious – more than twice as contagious as previous variants, according to the CDC – and may cause more severe illness, particularly in unvaccinated individuals. This is the case because individuals infected with the Delta variant tend to have much higher "viral loads," meaning that they have a higher amount of the virus in their systems. A higher viral load makes an individual more contagious and allows spread of the virus in a shorter time period after exposure.

3

JA-910

FILED: NEW YORK COUNTY CLERK 11/17/2021 02:54 PM INDEX NO. 159738/2021
Case 1:21-cv-06387-KAM-LB Document 37-1 Filed 12/07/21 Page 5 of 9 PageID #: 1527
NYSCEF DOC. NO. 20 RECEIVED NYSCEF: 11/17/2021

14.     It is because of the ease in speed of the spread of the Delta variant, in particular, that testing, even if frequent, cannot be relied upon to keep New York City employees and the public they serve safe. Because the Delta variant can spread so quickly, and because the timing between exposure and becoming infectious varies, it is possible for an individual to be exposed, test negative the next day, and begin spreading the virus during the following days. Thus, testing even once a week is not sufficient to prevent the spread of the virus. This is exacerbated by the fact that someone who is infected with COVID-19 may be asymptomatic and still capable of spreading the virus to others.

15.     In late 2020 and early 2021, three vaccines were given emergency authorization in the United States. Specifically, on December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the Pfizer-BioNTech COVID-19 vaccine; on December 18, 2020, the FDA issued an EUA for the Moderna COVID-19 vaccine; and on February 27, 2021, the FDA issued an EAU for the Johnson & Johnson/Janssen COVID-19 vaccine. Then, on August 23, 2021, the FDA gave full approval to the Pfizer vaccine for people ages 16 and older.

16.     These vaccines have proven highly effective in preventing the spread of COVID-19. In clinical trials, the Pfizer vaccine had a vaccine efficacy of 95% for symptomatic infection (ages 16 and older); the Moderna vaccine had a vaccine efficacy of 94.1% for symptomatic infection, and the Johnson & Johnson vaccine had a vaccine efficacy of 85% for prevention of severe disease. Numerous studies have since shown that the vaccines have been very effective at preventing severe COVID-19 outcomes. For example, a study of 89,000 hospitalized patients with confirmed COVID-19 showed that the Pfizer and Moderna vaccines were 90% effective at preventing       hospitalization       in       immunocompetent       patients

4

JA-911

(https://www.cdc.gov/mmwr/volumes/70/wr/mm7044e3.htm?s_cid=mm7043e3_w).          The

COVID-19 vaccines benefit both the vaccine recipients and those with whom they come into

contact, including children too young to be vaccinated and people who are immunocompromised.

More people vaccinated also means fewer infections and less opportunity for the virus to mutate

into new more dangerous variants.

17.     At this point in time, most cases and nearly all severe cases in New York City are

among people who are not vaccinated against COVID-19. The Health Department reports that

between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated

accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of

COVID-19 deaths in New York City.  Additionally, between January 17 and October 27, 2021,

there have been a total of 42,587 hospitalizations among people who are not vaccinated and only

2,342 among people who are fully vaccinated in New York City. During the same time period,

there was a total of 7,465 reported deaths among people who are not vaccinated and 319 among

people who are fully vaccinated (DOHMH, https://www1.nyc.gov/site/doh/covid/covid-19-

data.page#daily, as of 10/27/21).

18.     Wearing a mask and getting tested frequently for COVID-19 are helpful in reducing

the spread of COVID-19, but much less so than the vaccines.

19.     Further, the level and duration of immune protection that results from a prior

COVID-19 infection (sometimes referred to as "natural immunity") remains uncertain and can

vary based on individual characteristics.  Those who have had prior COVID-19 infection also get

additional benefit from vaccination. There is evidence that vaccines may provide better protection

against current variants than natural immunity, and studies have shown that people who are

unvaccinated have higher rates of reinfection compared to people who are vaccinated. For

5

FILED: NEW YORK COUNTY CLERK 11/17/2021 02:54 PM          INDEX NO. 159738/2021
Case 1:21-cv-06387-KAM-LB   Document 37-1   Filed 12/07/21   Page 7 of 9 PageID #: 1529
NYSCEF DOC. NO. 20                                          RECEIVED NYSCEF: 11/17/2021

example, a recent study showed that, among hospitalized adults with COVID-19-like illness, the adjusted odds of confirmed COVID-19 among unvaccinated patients with prior COVID-19 infection were more than 5 times higher than the odds among people fully vaccinated with the Pfizer or Moderna vaccine and no previous documented infection (https://www.cdc.gov/mmwr/volumes/70/wr/mm7044e1.htm). For this reason, the CDC recommends vaccination for people who have had a prior COVID-19 infection. This recommendation reflects current scientific evidence indicating that vaccination after infection significantly enhances protection and further reduces risk of reinfection.

20.     Moreover, from a public safety perspective, vaccination provides a more certain and verifiable record of immunity than that afforded by prior COVID-19 infection. Testing for antibodies is not currently recommended to assess for immunity to SARS-CoV-2 (the virus that causes COVID-19), nor is it recommended to assess the need for vaccination in an unvaccinated person or to determine the need to quarantine after a close contact with someone who has COVID-19. At this time there is no specific antibody test or antibody threshold that can determine an individual's risk of subsequent infection.

21.     It is therefore of critical importance that residents of New York City get vaccinated and encouraging vaccination is a major public health imperative.  In particular, vaccination of individuals providing City services and working in City facilities will save lives, protect public health, and promote public safety.

22.     To that end, the Health Department has engaged in and implemented a wide range of efforts, policies, and requirements to encourage widespread vaccination of New Yorkers, beginning with education and outreach; ensuring the vaccines are widely available; offering incentives to vaccination; and finally, moving forward with a series of escalating mandates

JA-913

Case 1:21-cv-06387-KAM-LB   Document 37-1   Filed 12/07/21   Page 8 of 9 PageID #: 1530

beginning with protecting the City's frontline healthcare workers[1] and some of the most at-risk populations (those in certain congregate settings, such as shelters, adult day care centers, and supportive housing).[2]

23.     Once COVID-19 vaccines became available in late 2020, the Health Department worked to provide universal access to no-cost vaccination sites operating across the five boroughs at locations and during hours convenient to New Yorkers.  Vaccination priority began with those working with the public – including health care workers and other professionals, like the New York Police Department, whose public-facing work puts them at increased risk for COVID-19. Over the course of many months, the Health Department disseminated widespread messaging, including through media campaigns, webinars, social media, community conversations, print materials, about the importance, effectiveness, and safety of COVID-19 vaccines tailored to specific neighborhoods, available in appropriate languages, and delivered by trusted and knowledgeable community partners.

24.     In summer 2021, notwithstanding ensuring access to all populations at convenient places across New York City, the City saw that vaccination uptake was declining and instituted vaccination incentives, including $100 pre-paid debit cards, free tickets to sporting events, and free memberships to various museums and theatres.   Despite the efforts and policies described above, upon information and belief, the City employee vaccination rate, as of late summer 2021, had only reached about 65%.

---

[1] On July 21, 2021, the Commissioner of the Health Department issued an Order requiring COVID-19 vaccination or weekly testing for Health Department staff working in clinical settings and for all NYC Health + Hospitals staff. This Order is no longer in effect as it was superseded by regulations issued by the New York State Department of Health.

[2] On August 10, 2021, the Commissioner of the Health Department issued an Order requiring COVID-19 vaccination or weekly testing for City staff and contractors working in residential or congregate settings.

7

JA-914

25.    To address the vaccination rate, and as part of a broader effort to protect at-risk New Yorkers, including children not yet eligible to be vaccinated, the Commissioner of the Health Department issued an Order on August 24, 2021, requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a Department of Education building or school setting.  That Order was re-issued on September 12 and 15, 2021, and subsequently amended on September 28, 2021.  The Order and Amendment were ratified by the New York City Board of Health on September 17, 2021 and October 18, 2021.

26.    Additionally, on August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test.

27.    City employees provide services to all New Yorkers that are critical to their health, safety, and well-being, and the City must take all reasonable measures to reduce transmission of COVID-19 when providing such services, both within the City workforce itself, as well as between City employees and the general public that they serve.

28.    Vaccination is the most effective measure available to reduce COVID-19 transmission, and that is why it was determined that the City employee vaccination mandate, as set forth in the Commissioner's Order issued on October 20, 2021, was necessary to save lives, protect public health, and promote public safety.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated:    New York, New York
          November 15, 2021

_____
Michelle E. Morse, M.D., MPH

8

JA-915

# STROOCK

Dina Kolker
Direct Dial:  212.806.5606
dkolker@stroock.com

December 9, 2021

**By ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re:   **Broecker, _et al._ v. New York City Department of Education, _et al._**
       **Docket No. 21 Civ. 6387 (KAM)(LB)**

Dear Judge Matsumoto:

I write on behalf of defendant United Federation of Teachers ("UFT") pursuant to leave granted at the conference held on December 8, 2021, to address issues raised by the NYC Department of Education ("DOE") in its supplemental submission pertaining to this Court's December 6, 2021 order in Garland, et al. v. New York City Fire Department, et al., Docket No. 21 CV 6586 (KAM)(CLP), ECF Doc. No. 24. (the "Garland Order").

While the Garland Order states in footnote 8 that it does not reach the City defendants' argument in that case—analogous to the DOE Defendants' argument here—that due process does not attach, DOE Defendants seized upon the Garland Order in their supplemental briefing (dkt# 37) and urge its narrow holding to be broadly applied to all public employees.  For the foregoing reasons, that determination is inapposite to determining the due process rights of DOE employees in Broecker.

Initially, the relevant statutes, parties, and procedural postures in the cases are all distinct, and unlike in Garland, the UFT-DOE collective bargaining agreement and its modification by the September 10 binding impasse arbitration award (the "Award")[1] provide still additional differentiation.

Moreover, while the primary issue in Garland appears to have been the adequacy of process, here the essential question is whether due process attaches at all.  Because the DOE has not yet sought to separate any employee and different employees will be covered by various statutory and contractual processes, the Court need not determine what specific process is applicable in each

---

[1] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021), Klinger Declaration in Opposition to Emergency Motion, Ex. D. (dkt# 21).

Court
December 9, 2021

instance, only that due process applies and summary termination without resort to established procedures is not permissible.

The Garland Order correctly recognizes that when determining whether an employee can be terminated without due process, the key factor is whether they are legally ineligible to maintain their employment. Garland Order at 12 n.8. New York courts agree, but rather than relying on what label the employer gives the requirement (requirement, mandate or fitness), the legal analysis centers on a question of employer discretion, an argument seemingly not presented to the Court in Garland. If a public employer has discretion over whether to terminate an employee, the employee must receive due process, while if the employer is required to terminate the employee (not empowered or required to merely exclude them from the workplace), then termination does not trigger statutory due process.[2] So long as the public employee is legally eligible for their position, they cannot be terminated without due process.

State courts' use of discretion as a benchmark is rooted in the concern that public employers could seek to circumvent due process by refashioning issues of discipline or fitness for duty into questions of qualification. Here, claiming support from Garland, the DOE attempts to do exactly that, framing what is fundamentally an issue of discipline as a question of qualification and inventing a new category of "unfit" teachers whose termination is not mandated by law but who also lack due process protections prior to termination. However, no such variety of unfitness exists: existing categories of unfitness—medical and disciplinary—both require due process before termination.[3] Across two cases and multiple submissions, the City—here represented by DOE Defendants—have presented no case where termination without due process was permissible for failure to meet a workplace safety rule or for being unfit for duty (whether medically or otherwise).[4]

DOE Defendants also misstate the applicability of the phrase "condition of employment" and this Court's reference to it in Garland.[5] That vaccination is described elsewhere as a "condition of employment" does not render it a *nondiscretionary* condition under which those who do not meet it are legally ineligible for their positions. In We the Patriots USA, Inc. v. Hochul, 17 F.4th 266, 278, 290 n.30 (2d Cir. 2021), opinion clarified, 17 F.4th 368 (2d Cir. 2021), the workers at issue were private-sector employees, whose employers were at liberty to impose vaccine mandates separate from state law. Their employers were not *mandated* to terminate them: the court said employers could—but were not required to—give unvaccinated employees other duties such as telemedicine. Id. at 292. Here, the DOE is explicitly granted similar leeway for dealing with unvaccinated staff in the Award.[6] Legal ineligibility of the type DOE Defendants claim applies

---

[2] See Memorandum of Law in Opposition re: ECF Doc. No. 34 Memorandum in Support, ECF Doc. No. 33 Memorandum and Order on Motion for Preliminary Injunction in Opposition to Emergency Motion ("UFT Supplemental Br.") (dkt# 35) at 2-3.
[3] UFT Supplemental Br. at 11-14.
[4] See, e.g., Memorandum of Law in Opposition re: ECF Doc. No. 34 Memorandum in Support - Supplemental Briefing as to the Issue of Vaccination as a Job Requirement, (dkt# 37), at 6-10 ("DOE Supplemental Br.").
[5] DOE Supplemental Br. at 3.
[6] UFT Supplemental Br. at 9-10, 15-16.

Court
December 9, 2021

cannot be avoided by assigning ineligible employees tele-work or placing them on unpaid (but not uncompensated) leave. That DOE Defendants are directly granted these options by the Award further shows the discretionary nature of the DOE's intention to terminate unvaccinated employees.

Contrary to what DOE Defendants claim Garland says, constitutional, statutory and contractual strictures cannot be pushed aside at the mere mention of COVID-19. See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) ("Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."). The UFT does not here challenge the validity of any vaccination mandate. But the failure to comply with that rule, like the failure to comply with other rules, is subject to applicable due process procedures. DOE Defendants' claim that Garland obviates the need for due process in an entirely different set of circumstances, and seek to create a dangerous precedent for all public employees going forward.

Respectfully submitted,

*/s/ Dina Kolker*

  Dina Kolker

cc:       Counsel of Record (By ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                                  Plaintiffs,

**INDEX NO. 21-cv-6387**

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, MEISHA PORTER, in her official
and individual capacities, UNITED FEDERATION
OF TEACHERS, LOCAL 2, AMERICAN
FEDERATION OF TEACHERS, AFL-CIO,
MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their
official and individual capacities; and JANE DOE
#1-10 in their official and individual capacities,

                                  Defendants.
-------------------------------------------------------------------X

**PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
REGARDING THE PLAINTIFFS' STANDING**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................... 3

THE AWARD RESULTED FROM A VIOLATION OF N.Y. CIVIL
SERVICE LAW § 209 ................................................................................................. 3

PLAINTIFFS DID NOT FREELY, KNOWINGLY, AND OPENLY
WAIVE THEIR STATUTORY AND CONSTITUTIONAL RIGHTS ........................ 7

THE NYCDOE'S AND UFT'S COLLECTIVE BARGAINING
AGREEMENT WAS NOT AMENDED BY THE AWARD ........................................ 8

AN ARBITRATION AGREEMENT BETWEEN A UNION AND THE
EMPLOYER MUST CONTAIN A CLEAR AND UNEQUIVOCAL
WAIVER OF THE PLAINTIFFS' RIGHTS, WHICH THE AWARD
DOES NOT CONTAIN SUCH A PROVISION ........................................................ 10

AS THE UFT ARGUED, THE AWARD DID NOT IMPACT THE
PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS ...................................... 12

CONCLUSION.......................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) ............................................................ 10

*Abramovich v. Bd. of Educ.*, 46 N.Y.2d 450, 455 (1979).............................................................. 7

*Barrentine v. Arkansas-Best Frgt. Sys.*, 450 U.S. 728, 744 (1981) ............................................ 10

*Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir 2002)................................... 6, 8, 10

*Cummings v. City of NY*, 2020 US Dist LEXIS 31572, at *39 (S.D.N.Y. 2020) ....................................................................................................................................... 1

*Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016) ..................................................................................................................................... 10

*Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir 1990) ...................................................................................................................... 1

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019) ................................................................. 1

*Town of Southampton v. NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513 (2004)........................................................................................................................................ 8, 9

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) *cert. denied, Waronker v Hempstead Union Free Sch. Dist.*, 140 S.Ct 2669 (2020) ............................................................................................................... 2

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-81 (1998) ........................................... 11

*Yu-Shih Chen v. Wharton*, 112 A.D.2d 636, 637-638 (3d Dept 1985)........................................ 7

**Statutes**

N.Y. Civil Service Law § 209.2. ........................................................................................... 5, 6

N.Y. Civil Service Law § 209.3(a) ............................................................................................ 4

N.Y. Civil Service Law § 209.3(b) ............................................................................................ 5

N.Y. Civil Service Law § 209.3(e) ............................................................................................ 5

N.Y. Civil Service Law § 209.3(f) ......................................................................................... 5, 9

ii

JA-921

N.Y. Civil Service Law §209.4. ................................................................................................ 4

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of the Plaintiffs and all others similarly situated in this Action responding to the Court's Order to Show Cause regarding the Plaintiffs' standing to challenge the terms of the Impact Arbitration Award ("Award") between the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") and the UNITED FEDERATION OF TEACHERS ("UFT").

In *Cummings v. City of NY*, 2020 US Dist LEXIS 31572, at *39 (S.D.N.Y. 2020), the Court held:

> Plaintiff lacks standing to assert a breach of the contract between DOE and the Union. By becoming a union member, an individual employee "has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union." *Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist.*, 80 A.D.2d 572, 435 N.Y.S.2d 793, 794 (2d Dep't 1981), *aff'd* 55 N.Y.2d 912, 433 N.E.2d 1278, 449 N.Y.S.2d 30 (N.Y. 1982).

The Plaintiffs in this Action are not alleging a breach of the UFT's and NYCDOE's collective bargaining agreement. The Plaintiffs are instead alleging a conspiracy between the UFT and the NYCDOE to impede, interfere with, and infringe upon the Plaintiffs' constitutional rights based upon the Award, which, as discussed below, is not a part of the parties' collective bargaining agreement.

The Plaintiffs are challenging the constitutionality of an Award that is procedurally defective (because the parties did not have statutory or contractual authority to yield the authority to negotiate the impact of the COVID-19 vaccine mandate to an arbitrator) and which does not clearly or unequivocally bar the Plaintiffs from seeking federal court review and relief from an Award that infringes upon their constitutional due process rights (*Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir 1990)) and their property interest rights to their pay. *See, Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019); *Waronker v.*

1

*Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) *cert. denied, Waronker v Hempstead Union Free Sch. Dist.*, 140 S.Ct 2669 (2020).

The NYCDOE and the UFT have conspired in procuring the Award that interferes with, impedes, and infringe upon the Plaintiffs' due process rights and property interest right in their pay.

No statute or collective bargained provision authorized the UFT and the NYCDOE to agree to arbitration to determine what should have been a negotiated resolution to the impact of the COVID-19 mandate

The UFT wrongly argues that the Award is now incorporated into the collective bargaining agreement between the UFT and the NYCDOE, but the members of the UFT did not vote on the Award to ratify it as an amendment to the collective bargaining agreement and the UFT's collective bargaining agreements with the NYCDOE do not contain provisions that permit amendments to the agreement.

The Plaintiff's standing is based upon causes of action against the NYCDOE and the UFT, pursuant to 42 U.S.C. § 1983, for purportedly agreeing to binding arbitration during a collective bargaining impasse pursuant to N.Y. Civil Service Law § 209. The statute, however, does not empower the NYCDOE or the UFT to agree to binding arbitration because of the NYCDOE's status as a school district.

Since the procedure that resulted in the Award was statutorily defective, the result of the defective procedure violated the Plaintiffs' constitutional rights. Thus, the proper mechanism to seek relief from the NYCDOE's and UFT's misconduct is a 42 U.S.C. § 1983 claim.

The Plaintiffs are not alleging that the UFT or the NYCDOE breached the parties' collective bargaining agreement, only that the Award is unconstitutional and because of that, the UFT and the NYCDOE violated the Plaintiffs' constitutional rights and therefore the Plaintiffs have standing pursuant to 42 U.S.C. § 1983.

2

In addition, the Plaintiffs have standing to challenge the terms of the Award for four other additional reasons: (1) the Plaintiffs did not freely, knowingly, and openly waive their statutory and constitutional rights in the Award; (2) the NYCDOE's and UFT's collective bargaining agreement was not amended by the Award and therefore it did not modify the arbitration provisions in the collective bargaining agreements; (3) an arbitration agreement between a union and the employer must contain a clear and unequivocal waiver of the Plaintiffs' rights, and the Award does not contain such a provision; and (4) as the UFT argued, the Award did not impact the Plaintiffs' procedural due process rights.

Each of these issues will be addressed in this Memorandum of Law.  In the end, the Plaintiffs have standing to challenge the Award and this Court should not dismiss this Action for lack of standing.

## ARGUMENT

### THE AWARD RESULTED FROM A VIOLATION OF N.Y. CIVIL SERVICE LAW § 209

The NYCDOE described the procedural history of the Award as follows:

> Defendant United Federation of Teachers ("UFT") is the bargaining unit for Teachers, Secretaries, Paraprofessionals, Guidance Counselors, Speech Language Pathologists, School Psychologists, and Social Workers, among other titles, employed by DOE. See "About Your Union" available at https://www.uft.org/your-union/about-uft; last accessed Nov. 19, 2021. On September 10, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the DOE Vaccination Mandate. See O'Connor Decl., Exh. A (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO (hereafter "Impact Arbitration Decision"), at 4. PERB appointed an arbitrator and several days of discussions were held. Id. On September 10, 2021, the arbitrator issued a decision, which established (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with

3

> certain benefits; and (3) that the DOE may "unilaterally separate
> employees" who have not complied with the Vaccination Mandate
> or have an approved exemption or accommodation and have not
> opted for either separation option. Id. at 6-13.

**ECF Docket No. 18**, at page 5.

The UFT described the procedural history of the Award as follows:

> While the amendment to the Mandate forced by the Unions' court
> challenges aided in moving the implementation bargaining process
> forward, the looming start date for the new school year created
> urgency in negotiation process on both sides. With the parties far
> from agreement, the UFT sought a declaration of impasse from the
> New York Public Employment Relations Board ("PERB") and the
> appointment of a mediator to assist the negotiations. When several
> sessions of mediation did not produce a final agreement, the parties
> moved to arbitration, which resulted in a binding impasse arbitration
> award (the "Award").

**ECF Docket No. 20**, at pages 1-2.

What the parties describe is the impasse provisions of N.Y. Civil Service Law § 209. Despite the UFT's and the NYCDOE's agreement to make the Award binding upon the Plaintiffs, the statute does not authorize binding arbitration in a school setting, but only in fire and police disputes with the public employer. *See,* N.Y. Civil Service Law §209.4. There is no statutory or contractual basis for a mediator to issue a binding arbitration award in an impasse in impact bargaining, and in this situation the impact bargaining was over the impact of the COVID-19 vaccine mandate.

N.Y. Civil Service Law § 209 permits the New York State Public Employment Relations Board ("PERB") to appoint a mediator "to assist the parties to effect a voluntary resolution of the dispute...." N.Y. Civil Service Law § 209.3(a).

4

Case 23-655, Document 74, 06/05/2023, 3525006, Page126 of 281

If the mediator does not assist the parties in breaking the impasse, PERB is required to "appoint a fact-finding board … to make public recommendations for the resolution of the dispute." N.Y. Civil Service Law § 209.3(b).

If the fact-finding recommendations do not result in an agreement and the impasse continues, the legislative body of the public employer "shall take such action as it deems to be in the public interest, including the interest of the public employees" and can impose a resolution. N.Y. Civil Service Law § 209.3(e).

However, "where the public employer is a school district" the legislative body of the school district cannot impose a resolution after fact finding. N.Y. Civil Service Law § 209.3(f).

There is no provision in N.Y. Civil Service Law § 209 that creates a binding arbitration process when the school district is the public employer.

The NYCDOE and the UFT may argue that N.Y. Civil Service Law § 209.2. authorized the parties to enter into binding arbitration to resolve the dispute over the vaccine mandate.

N.Y. Civil Service Law § 209.2. states "Public employers are hereby empowered to enter into written agreements with recognized or certified employee organizations setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations."

At oral argument on the Plaintiffs' Preliminary Injunction Motion, the UFT represented to the Court that the sole evidence that the parties agreed to binding arbitration was a letter from the UFT's counsel to PERB that stated "the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce. Arbitration sessions are being held on Sept. 6[th].   We will keep PERB apprised as to status." **ECF Docket No. 21-3.**

5

JA-927

There was no "written agreement" between the NYCDOE and the UFT "setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations." N.Y. Civil Service Law § 209.2.

As a result, there was no statutory or contractual authority for the NYCDOE and the UFT to agree to binding arbitration such that the Award violated the Plaintiffs' constitutional due process rights and property interests in their pay.

Since there was no statutory or contractual basis for the Award and the Award has resulted in a deprivation of the Plaintiffs' constitutional rights, the Plaintiffs have a valid 42 U.S.C. § 1983 claim against both the NYCDOE and the UFT for implementing the arbitration decision that was not validly arrived at.

The Plaintiffs have standing because the Award was arrived at through a conspiracy between the NYCDOE and the UFT.

In *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir 2002), the Court opined:

> "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Spear, 954 F.2d at 68. Put differently, a private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970) (quoting United States v. Price, 383 U.S. 787, 794, 16 L. Ed. 2d 267, 86 S. Ct. 1152 (1966)). A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity. Spear, 954 F.2d at 68.

The Plaintiffs have more than conclusory allegation that the UFT acted in concert with the NYCDOE. There is both documentary and testimonial evidence submitted by the NYCDOE and the UFT that they entered into an arrangement that led to the Award.

**JA-928**

Accordingly, under a 42 U.S.C. § 1983 claim, the Plaintiffs have standing to assert claims against both the NYCDOE and the UFT for violating the Plaintiffs' constitutional rights to due process and their property right in their pay.

## PLAINTIFFS DID NOT FREELY, KNOWINGLY, AND OPENLY WAIVE THEIR STATUTORY AND CONSTITUTIONAL RIGHTS

The Award, even though it was procedurally defective (*see*, N.Y. Civil Service Law § 209), the Court has determined that it waived the Plaintiffs' procedural due process rights. *See*, **ECF Docket No. 33**, at page 16.

The Plaintiffs disagree with the Court because as the New York State Court of Appeals held in *Abramovich v. Bd. of Educ.*, 46 N.Y.2d 450, 455 (1979) only "when a waiver is freely, knowingly and openly arrived at, without taint of coercion or duress, the sturdy public policy underpinnings of section 3020-a are not undermined."

In *Yu-Shih Chen v. Wharton*, 112 A.D.2d 636, 637-638 (3d Dept 1985), the Court held

> a teacher may waive valid rights in settling a grievance, provided the waiver is knowingly and freely made without coercion and results in a desired benefit in return for the waiver (*see, Matter of Feinerman v Board of Coop. Educ. Servs*. 48 NY2d 491, 496-497; *Matter of Abramavich v Board of Educ.*, 46 NY2d 450, *cert denied* 444 U.S. 845; *see also, Matter of American Broadcasting Cos. v Roberts*, 61 NY2d 244, 249-250). The waiver may even extend to a grievant's constitutional right to procedural due process (*cf. Matter of Miller v Coughlin*, 59 NY2d 490; *Matter of Abramovich v Board of Educ., supra*).

Nowhere in the Award did the Plaintiffs knowingly and freely waive any of their rights in return for a benefit to them.

The Award serves as the basis for the NYCDOE to suspend the Plaintiffs without pay and, as argued by the NYCDOE, may authorize the Plaintiffs to be terminated without due process. *See,* **ECF Doc. No. 37**.

7

The Plaintiffs have a valid 42 U.S.C. § 1983 claim against the NYCDOE and the UFT for conspiring to violate the Plaintiffs' constitutional rights. The UFT, acting in concert with the NYCDOE, authorized the Arbitrator to have free reign to determine and come to a conclusion regarding the impact of the COVID-19 vaccine mandate. There is both documentary and testimonial evidence submitted by the NYCDOE and the UFT that they entered into an arrangement that led to the Award.

Therefore, under a 42 U.S.C. § 1983 theory, the Plaintiffs have standing to assert claims against both the NYCDOE and the UFT for violating the Plaintiffs' constitutional rights to due process and their property right in their pay. *See, Ciambriello v. County of Nassau*, 292 F.3d at 324.

Accordingly, under a 42 U.S.C. § 1983 claim, the Plaintiffs have standing to assert claims against both the NYCDOE and the UFT for violating the Plaintiffs' constitutional rights to due process and their property right in their pay.

## THE NYCDOE'S AND UFT'S COLLECTIVE BARGAINING AGREEMENT WAS NOT AMENDED BY THE AWARD

The UFT argued to this Court that the Award is "incorporated into the UFT and DOE's CBA by law, and supersedes provisions to the contrary." **ECF Doc. No. 20**, at page 18-19.

The UFT cites to the case of *Town of Southampton v. NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513 (2004) to support its argument. But this is a misrepresentation of the law.

*Town of Southampton* involved the Town's collective bargaining agreement with the Police Benevolent Association of Southampton Town, Inc.

N.Y. Civil Service Law § 209(4) sets forth the procedure when a public employer reaches an impasse with police or fire unions. The statute authorizes interest arbitration, which "prescribe[s] compulsory and binding arbitration to resolve an impasse in collective negotiations between employee organizations representing police and firefighters outside the City of New York

8

and their local government employers." *Town of Southampton v NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513, 516 (2004).

The statute addressed in *Town of Southampton* does not apply with the NYCDOE since "where the public employer is a school district" there is no interest arbitration and no compulsory and binding arbitration to resolve an impasse in collective negotiations.  N.Y. Civil Service Law § 209.3(f).

Finally, examining the collective bargaining agreements between the UFT and the NYCDOE, there is no provision in the documents for amendments.  *See,* **ECF Docket Nos. 1-2, 1-3,** and **1-4.**

There was no ratification vote by the UFT members approving the terms of the Award.

The Award was just imposed by the Arbitrator without any authority under the parties' collective bargaining agreement.

The UFT's and the NYCDOE's collective bargaining agreements are consistent in that the arbitrator "shall limit his/her decision strictly to the application and interpretation of the provisions of this Agreement and he/she shall be without power or authority to make any decision: 1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law...." **ECF Doc No. 1.4,** at Article 22.C.

If the NYCDOE and the UFT suggest that the Award was promulgated pursuant to the terms of the parties' collective bargaining agreement, then the Award violated the arbitrator's authority since it modified and is inconsistent with applicable law (Plaintiffs' due process rights and property interest in their pay).

Yet, the UFT and the NYCDOE have just accepted the Award and its impact upon the Plaintiffs' rights to due process and property interest in their pay.

Therefore, under a 42 U.S.C. § 1983 theory, the Plaintiffs have standing to assert claims against both the NYCDOE and the UFT for violating the Plaintiffs' constitutional rights to due process and their property right in their pay. *See, Ciambriello v. County of Nassau*, 292 F.3d at 324.

Accordingly, under a 42 U.S.C. § 1983 claim, the Plaintiffs have standing to assert claims against both the NYCDOE and the UFT for violating the Plaintiffs' constitutional rights to due process and their property right in their pay.

### AN ARBITRATION AGREEMENT BETWEEN A UNION AND THE EMPLOYER MUST CONTAIN A CLEAR AND UNEQUIVOCAL WAIVER OF THE PLAINTIFFS' RIGHTS, WHICH THE AWARD DOES NOT CONTAIN SUCH A PROVISION

In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009), the Court held "that a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law."

In *Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016), the Court held that the collective bargaining agreement in that case was

> broad and requires arbitration for "all disputes," but its antidiscrimination section does not reference any specific antidiscrimination statutes that would be subject to exclusive arbitration, nor does it specify whether arbitration is required for state or federal claims at all. In view of post-<u>Pyett</u> precedent in this circuit, the court holds that the arbitration and antidiscrimination clauses above do not mandate arbitration of Fernandez's statutory claims.

In *Barrentine v. Arkansas-Best Frgt. Sys.*, 450 U.S. 728, 744 (1981), the Court held that

> Moreover, even though a particular arbitrator may be competent to interpret and apply statutory law, he may not have the contractual authority to do so. An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement. *Gardner-Denver*, 415 U.S., at 53. He "has no general authority to invoke public laws

10

that conflict with the bargain between the parties." *Ibid*. His task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties. Accordingly, "[if] an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced." *Ibid.*, quoting *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S., at 597.

Because the arbitrator is required to effectuate the intent of the parties, rather than to enforce the statute, he may issue a ruling that is inimical to the public policies underlying the FLSA, thus depriving an employee of protected statutory rights.

In *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-81 (1998), the Court held

[n]ot only is petitioner's statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear. In *Metropolitan Edison Co.* v. *NLRB*, 460 U.S. 693, 75 L. Ed. 2d 387, 103 S. Ct. 1467 (1983), we stated that a union could waive its officers' statutory right under § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), to be free of antiunion discrimination, but we held that such a waiver must be clear and unmistakable. "We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable." 460 U.S. at 708; see also *Livadas v. Bradshaw*, 512 U.S. 107, 125, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994) (dictum); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409, n. 9, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) (dictum); cf. *Mastro Plastics Corp.* v. *NLRB*, 350 U.S. 270, 283, 100 L. Ed. 309, 76 S. Ct. 349 (1956).

We think the same standard applicable to a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination. Although that is not a substantive right, see *Gilmer*, 500 U.S. at 26, and whether or not *Gardner-Denver*'s seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*, *Gardner-Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA. The CBA in this case does not meet that standard. Its arbitration clause is very general, providing for arbitration of "matters under dispute," App. 43a -- which could be

11

understood to mean matters in dispute under the contract. And the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements. (Indeed, it does not even contain, as did the CBAs in *Austin* and *Gardner-Denver*, its own specific antidiscrimination provision.) The Fourth Circuit relied upon the fact that the equivalently broad arbitration clause in *Gilmer* -- applying to "any dispute, claim or controversy" -- was held to embrace federal statutory claims. But *Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees -- and hence the "clear and unmistakable" standard was not applicable.

Nowhere in the UFT's and the NYCDOE's agreement, nor in the Award is there a clear and unequivocal waiver of the Plaintiffs' due process rights or property interests rights in their pay.

Without a clear and unmistakable waiver of a union members' constitutional rights and statutory rights in the collective bargaining agreement between the UFT and the NYCDOE, the Plaintiffs cannot be barred from asserting their individual constitutional rights were violated as a result of the Award, and thus they have standing to protect their individual liberties in federal court despite the fact that the UFT and the NYCDOE conspired to violate the Plaintiffs' constitutional rights by acquiescing to the Award, which was procured in violation of N.Y. Civil Service Law § 209.

## AS THE UFT ARGUED, THE AWARD DID NOT IMPACT THE PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS

The Plaintiffs' argument in this Action has always been that the Plaintiffs maintain their due process rights and cannot be terminated without the NYCDOE complying with N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or the due process mechanisms in the collective bargaining agreements with the Plaintiffs' unions. *See,* **ECF Doc. No. 2-10,** at pages 13-17.

The UFT agrees. *See,* **ECF Doc. No. 35.**

12

JA-934

To the extent that the NYCDOE violates the Plaintiffs' due process rights, the Plaintiffs have standing to challenge the NYCDOE's threat to terminate the Plaintiffs without due process.

The UFT, one of the parties to the Award, does not believe that the Award granted to the NYCDOE the authority to terminate the Plaintiffs without due process. *See,* **ECF Doc. No. 35**, at page 10 (arguing: "While the DOE may believe they have a strong case for the termination of DOE employees who refused to get vaccinated or avail themselves of the alternatives under the Award, process is still due.").

As a result, the Plaintiffs claims with respect to due process is not a challenge to the Award. In fact, the Award states that "all parties retain all legal rights at all times relevant, herein." **ECF Doc. No. 19-1**, at pages 18-19.

Since the UFT, a party to the Award does not believe that the Plaintiffs have lost their due process rights pursuant to the terms of the Award, the Plaintiffs have standing to assert a cause of action against the NYCDOE for violating the Plaintiffs' due process rights.

## CONCLUSION

For the reasons argued in this Memorandum of Law the Court should determine that the Plaintiffs have standing to prosecute this Action.

Dated:       Carle Place, New York
             December 13, 2021

                                        Respectfully submitted

                                        THE SCHER LAW FIRM, LLP
                                        *Attorneys for the Plaintiffs*

                                        Austin Graff, Esq.
                                        The Scher Law Firm, LLP
                                        One Old Country Road, Suite 385
                                        Carle Place, New York 11514
                                        (516) 7460-5040

13

JA-935

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,

                               Plaintiffs,        No. 21 Civ 6387 (KAM)(LB)

                 - against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual capacities,
UNITED FEDERATION OF TEACHERS, LOCAL 2,
AMERICAN FEDERATION OF TEACHERS, AFL-CIO,
MICHAEL MULGREW, in his official and individual
capacities, JOHN DOE #1-10, in their official and individual
capacities; and JANE DOE #1-10 in their official and
individual capacities,

                              Defendants.
-------------------------------------------------------------------- x

**DEFENDANTS NEW YORK CITY DEPARTMENT OF EDUCATION AND MEISHA
PORTER'S MEMORANDUM OF LAW CONCERNING PLAINTIFFS' LACK OF
STANDING**

           **GEORGIA M. PESTANA**
           Corporation Counsel of the City of New York
           Attorney for Defendants DOE and Porter
           100 Church Street
           New York, New York 10007

           *Of Counsel:*      Andrea O'Connor

## PRELIMINARY STATEMENT

This memorandum of law is submitted by Defendants New York City Department of Education ("DOE") and Meisha Porter (collectively "DOE Defendants"), in opposition to Plaintiffs' Response to the Court's Order to Show Cause Regarding the Plaintiffs' Standing, dated December 13, 2021 ("Plaintiffs' Response"). Despite the conspiratorial musings contained in Plaintiffs' Response, the Impact Arbitration Award was issued to resolve a dispute between the DOE and plaintiffs' collective bargaining representatives—the United Federation of Teachers ("UFT"). Therefore, absent any claimed breach of duty of fair representation, plaintiffs lack standing to challenge the process their union participated in creating.

## STATEMENT OF FACTS

For a full and complete recitation of the facts applicable to this supplemental memorandum of law, DOE Defendants respectfully refer the Court to the Statement of Facts contained in their Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated November 19, 2021.  See ECF Dkt. No. 18.

## ARGUMENT

### POINT I

### PLAINTIFFS LACK STANDING TO CHALLENGE THE IMPACT ARBITRATION AWARD

Plaintiff UFT members[1] are challenging their placement on leave without pay ("LWOP"), and the possibility of their separation from employment by DOE, both of which are

---

[1] This memorandum of law is solely addressed to the lack of standing of plaintiff UFT members. As the Court is aware, some plaintiffs are represented by a different union, District Council 37, AFSCME, which is not a party to this action, and which negotiated a separate agreement with the DOE concerning the vaccine mandate.

employment decisions that directly result from the Impact Arbitration Award.  Importantly, the Court has already held in this case that the Impact Arbitration Award is incorporated into Plaintiffs' collective bargaining agreement ("CBA").  See Broecker v. N.Y.C. Dep't of Educ., No. 21-CV-6387, 2021 U.S. Dist. LEXIS 226848, at *18-19 (E.D.N.Y. Nov. 24, 2021).  While much of Plaintiffs' Response is dedicated to revisiting this finding, such efforts are unsuccessful as this determination is now law of the case.

Under the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless 'cogent and compelling reasons militate otherwise.'" In re LIBOR-Based Fin. Instruments Antitrust Litig., 27 F. Supp. 3d 447, 473 (S.D.N.Y. 2014) quoting Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009); see also United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although not binding, law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons).  Here, the Court previously found that the Impact Arbitration Agreement has been incorporated into the applicable CBA.  See Broecker, 2021 U.S. Dist. LEXIS 226848, at *18-19.  The arguments set forth in Plaintiffs' Response to the contrary, i.e. that the Impact Arbitration Award was either illegally promulgated or the result of some conspiracy between the DOE and UFT, are duplicative of those asserted by Plaintiffs during the litigation of their preliminary injunction motion—nothing has changed since the Court issued its prior decision.  As such, there is no "cogent and compelling reason" for the Court to revisit its' prior ruling that the Impact Arbitration Award has become part of the CBA covering Plaintiffs.

Similarly, this Court also previously held that Plaintiffs "have been placed on LWOP consistent with [their] CBA[] and the incorporated arbitration award[]." Id.  Thus, it is also law of the case that Plaintiffs' placement on LWOP was pursuant to the arbitration award and, in

turn, the CBA between the DOE and UFT.  Again, Plaintiffs' Response sets forth no cogent or compelling reason for the Court to disturb this finding.

As a result of these rulings, Plaintiffs do not have standing to challenge the Impact Arbitration Award and, consequently, their placement on LWOP.  It is well established that "an individual employee represented by a union [in a labor arbitration] generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994)(per curiam).  The remedy for an individual is to pursue a duty of fair representation claim against his or her union. See Katir, 15 F.3d at 24-25; see also Velasco v. Beth Isr. Med. Ctr., 279 F. Supp. 2d 333, 336 (S.D.N.Y. 2003) (dismissing challenge to arbitration award on standing grounds); Blake v. Potter, 2004 U.S. Dist. LEXIS 6596, at *9 (S.D.N.Y. Apr. 12, 2004) (same).

It is equally well-settled, that "[a] union member has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union." Berlyn v. Board of Education, 80 A.D.2d 572, 573 (2d Dep't 1981) (citations omitted). Again, the only exception to this rule is where the employee establishes that the union breached its duty of fair representation. See Sapadin v. Bd. of Educ., 246 A.D.2d 359, 360 (1st Dep't 1998).

In both of these circumstances, the employee is bound to the decisions of the union with regard to negotiations and any resulting arbitration agreement or CBA provision. Plaintiffs, therefore, do not have standing to challenge the terms of the Impact Arbitration Award because their union engaged on their behalf with the City, which resulted in the Impact Arbitration Award. See Matter of Donas v. N.Y. City Dep't of Envtl. Protection, 60 Misc 3d 1221(A), 2018 N.Y. Slip. Op. 51192(U), *12 (Sup. Ct., New York Co. 2018) ("In general, an employee has no standing to initiate an arbitration-related proceeding where the employee is not a signatory to the contract which provides that the union, rather than the individual employees, has the sole right to arbitrate,

JA-939

and where the union and the government agency, rather than the employee participate in the arbitration."); see also Fleischer v. Barnard Coll., 2021 U.S. App. LEXIS 34226 *11 n. 1 (2d Cir. Nov. 18, 2021) (because a union represented the plaintiff in the arbitration against the defendant, plaintiff lacked standing to challenge the arbitration proceeding directly under the Federal Arbitration Act and could only challenge the arbitration through her claim against the union for breach of its duty of fair representation.).

## POINT II

### PLAINTIFFS' REMAINING ARGUMENTS ARE IRRELEVANT TO THE QUESTION OF STANDING

As detailed above, the Court has already found that the Impact Arbitration Award is incorporated into Plaintiffs' CBA and that Plaintiffs' placement on LWOP was pursuant to the Impact Arbitration Award. See Broecker, 2021 U.S. Dist. LEXIS 226848, at *18-19. It appears as though much of Plaintiffs' Response seeks to attack those rulings rather than address the standing issue. DOE Defendants respectfully submit that, for the reasons set forth below, the Court should reject any attempt to revisit these rulings based on the unpersuasive arguments set forth in the Plaintiffs' Response.

Plaintiffs' Response first argues that the Impact Arbitration Award should – essentially – be nullified because "there was no statutory or contractual authority for the NYCDOE and the UFT to agree to binding arbitration." See Plaintiffs' Response at 6. Specifically, Plaintiffs contend that Civil Service Law Section 209, which is a provision of the Civil Service Law known as the Taylor Law, does not authorize binding arbitration in the circumstances here. Indeed, Plaintiffs argue that the DOE and UFT willfully violated the Taylor Law by proceeding to binding arbitration, which resulted in the Impact Arbitration Award, in furtherance of a "conspiracy" between the DOE Defendants and the UFT to deprive Plaintiffs of their constitutional rights. Id.

4

**JA-940**

In support of this argument, Plaintiffs contend that they have demonstrated that the UFT "acted in concert" with DOE Defendants to deprive them of their rights.  Id.

The Impact Arbitration Award was the result of negotiations between the City/DOE and UFT.  See Statement of Impasse at Dkt. No. 21-1.  Once the negotiations reached an impasse, UFT filed a Declaration of Impasse with the New York State Public Employment Relations Board ("PERB").  Id.  PERB accepted this Declaration of Impasse and appointed an arbitrator to attempt to resolve the impasse.  See Impact Arbitration Award at 4.

PERB was created by the Public Employees' Fair Employment Act of 1967, commonly referred to as the Taylor Law.  PERB's mission includes: the impartial application and enforcement of the Act; the prevention of strikes, protecting the delivery of services to constituents; the protection of the rights of public employees to organize without interference or detriment; the determination of appropriate bargaining units and the direction of the process of representative selection; and issuance of determinations on charges of improper employment practices.  See "Who We Are" at https://perb.ny.gov/ last accessed on Dec. 17, 2021.  The agency also has the statutory responsibility to provide impasse resolution services.  Id.

Thus, in order to accept Plaintiffs' argument that the City and UFT proceeded to binding arbitration in violation of the Taylor Law, the Court would have to accept that PERB – the state agency specifically charged with enforcement of the Taylor Law – knowingly and willfully violated that law by accepting the Declaration of Impasse and appointing an arbitrator to resolve the impasse.  There is simply no evidence in the record to support such a fanciful allegation.

Thus, there is no evidence demonstrating that DOE Defendants and the UFT conspired to deprive Plaintiffs of their constitutional rights via the Impact Arbitration Award.  To be sure, the Complaint does not even mention the existence of the Impact Arbitration Award let alone allege that the award was somehow the fruit of a far-flung conspiracy between defendants

**JA-941**

that necessarily included PERB.  As such, Plaintiffs allegations regarding a "conspiracy" are not only unsupported but are also irrelevant to the issue of standing.

Next, Plaintiffs argue that Plaintiffs did not agree to waive their statutory and constitutional rights via the Impact Arbitration Agreement.  See Plaintiffs' Response at 7.  However, Plaintiffs arguments in support of this contention entirely misconstrue DOE Defendants' arguments as to standing.

Plaintiffs are challenging their placement on LWOP and, potentially, their separation from DOE. However, their placement on LWOP and their projected separation was the result of negotiations between the City and UFT.  As such, and as stated above, Plaintiffs have "no individual rights under a collective bargaining agreement which [they] can enforce against [their] employer except through the union."  Berlyn, 435 N.Y.S.2d at 794.  Further, unions are free to negotiate a departure from statutory schemes, such as Education Law Section 3020-a, on behalf of their members. See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 260 (2009).  If a union member disagrees with the outcome of a negotiation and resulting agreement, the remedy is for the member to pursue a duty of fair representation claim against his or her union.

DOE Defendants are not arguing that the Impact Arbitration Award somehow requires that all § 1983 claims, such as this one, must be arbitrated via contractual processes and therefore Plaintiffs do not have standing to bring such a claim on any grounds.  Rather, it is DOE Defendants' position that Plaintiffs do not have standing to challenge the Impact Arbitration Award and the changes in employment status that directly flow from it.

The cases relied upon in Plaintiffs' Response are inapposite to DOE Defendants' standing argument because they deal with sweeping clauses that require all disputes between an employer and employee be arbitrated.  For example, at issue in Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351 (S.D.N.Y. 2016) was a clause in the CBA that contained broad language

**JA-942**

that required "all disputes" between an employee and the employer be arbitrated via the grievance process contained in the CBA.  The Court found that this type of broad clause which requires any and all unidentified disputes to proceed only through arbitration was unenforceable.  Id. at 361.

Similarly, in Wright v. Universal Mar. Serv. Corp., 525 U.S. 70 (1998), the Supreme Court examined a clause in a CBA which provided that the CBA "is intended to cover all matters affecting wages, hours, and other terms and conditions of employment."  The District Court had dismissed the plaintiff's claims under the Americans with Disabilities Act without prejudice because the plaintiff had failed to pursue the arbitration procedure provided by the CBA and the Fourth Circuit affirmed.  The Supreme Court disagreed and held that the broad arbitration clause did not waive a covered employee's rights to pursue federal discrimination claims in federal court.  See id. at 81.

Again, DOE Defendants are not arguing that Plaintiffs lack standing to bring any and all § 1983 claims against the DOE as was the position of the employer in Wright and Fernandez.  Rather, Plaintiffs lack standing to bring a challenge to the leave and separation procedures set forth in the Impact Arbitration Agreement.

Finally, to the extent Plaintiffs' Response reiterates their arguments with respect to their due process claims, see Plaintiffs' Response at 12-13, DOE Defendants respectfully refer the Court to DOE Defendants' Supplemental Briefing as to the Issue of Vaccination as a Job Requirement at Docket Number 37 for a full recitation of DOE Defendants' arguments in connection with Plaintiffs' procedural due process claim.

JA-943

## <u>CONCLUSION</u>

For the foregoing reasons, DOE Defendants respectfully submit that Plaintiffs do not have standing to bring a challenge to the Impact Arbitration Award nor do they have standing to challenge their placement on LWOP.

Dated:  New York, New York
        December 20, 2021

                        GEORGIA M. PESTANA
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendants DOE and Porter
                        100 Church Street, Room 2-100
                        New York, New York 10007
                        212-356-4015


                        By: _____/s/_____
                              Andrea O'Connor
                              Assistant Corporation Counsel

8

JA-944

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

BROECKER *et al.*,

                              Plaintiffs,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                         Defendants.

--------------------------------------------------------------- X

Index No. 21-cv-6387

**DEFENDANT UNITED FEDERATION OF TEACHERS, LOCAL 2, AFL-CIO'S REPLY
TO PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
<u>REGARDING PLAINTIFFS' STANDING</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.     PARTIES MAY MUTUALLY AGREE TO ENGAGE IN BINDING
ARBITRATION UNDER THE TAYLOR LAW .................................................................. 2

     A.  CIVIL SERVICE LAW § 209 REGULATES HOW THE PUBLIC
EMPLOYMENT RELATIONS BOARD ("PERB") ASSISTS PARTIES IN
RESOLVING LABOR DISPUTES, BUT DOES NOT PREVENT PARTIES
FROM ENGAGING IN MUTUALLY AGREED-UPON BINDING
ARBITRATION ........................................................................................................ 2

     B.  THE UFT AND DOE ESTABLISHED A WRITTEN AGREEMENT UNDER
CIVIL SERVICE LAW § 209(2) ............................................................................. 4

II.    THE AWARD, REACHED THROUGH AN ADVERSARIAL PROCESS, IS
NOT THE RESULT OF A "CONSPIRACY" BETWEEN THE UFT AND THE
DOE ...................................................................................................................................... 5

III.   THE UFT IS NOT REQUIRED TO SEEK RATIFICATION OF THE AWARD ............ 7

IV.   THE AWARD DOES NOT WAIVE PLAINTIFFS' STATUTORY AND
CONSTITUTIONAL RIGHTS, BUT IT DOES MODIFY THE COLLECTIVE
BARGAINING AGREEMENT ......................................................................................... 8

i

JA-946

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

14 Penn Plaza LLC v. Pyett,
  556 U.S. 247 (2009)...................................................................................10

Matter of Alden Cent. Sch. Dist. v. Watson,
  56 A.D.2d 713 (4th Dep't 1977)..................................................................2

Bd. of Regents v. Roth,
  408 U.S. 564 (1972)....................................................................................9

Catterson v. Caso,
  472 F. Supp. 833 (E.D.N.Y. 1979)............................................................9

Ciambriello v. County of Nassau,
  292 F.3d 307 (2d Cir. 2002)........................................................................6

Matter of City University of New York (Soffer),
  20 PERB ¶ 3051 (1987)..............................................................................7

Decolator, Cohen & DePrisco LLP v. Lysagt Lysagt & Kramer, P.C.,
  304 A.D.2d 86 (1st Dep't 2003) ................................................................4

Fiore v Town of Whitestown,
  125 A.D.3d 1527 (4th Dep't 2015)..............................................................4

Higgins v. Int'l Union, Sec., Police, Fire Professionals of Am. (SPFPA),
  398 F.3d 384 (6th Cir. 2005) ......................................................................7

Matter of Incorp. Village of Garden City,
  32 PERB ¶ 4555 (1999), aff'd, 32 PERB ¶ 3043 (1999)............................7

Margiotta v. Kaye,
  283 F. Supp. 2d 857 (E.D.N.Y. 2003) ....................................................2, 3

McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen &
  Helpers of Am.,
  107 F. Supp. 2d 311 (S.D.N.Y. 2000).........................................................6

Naldi v. Grunberg,
  80 A.D.3d 1 (1st Dep't 2010) .....................................................................4

Newburgh v. Public Employment Relations Bd.,
  97 A.D.2d 258 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984)....................3

Palancia v. Roosevelt Raceway, Inc.,
    551 F. Supp. 549 (E.D.N.Y. 1982), aff'd 742 F.2d 1432 (2d Cir. 1983)..................................4

Prof'l, Clerical, Tech. Empls. Ass'n v. Buffalo Bd. of Educ.,
    90 N.Y.2d 364 (1997) ........................................................................................................2

Matter of Roma v. Ruffo,
    92 N.Y.2d 489 .................................................................................................................4

Town of Southampton v. N.Y. State Pub. Empl. Rels. Bd.,
    2 N.Y.3d 513 (2004) ........................................................................................................9

Matter of Uniform Firefighters of Cohoes v. Cuevas,
    276 A.D.2d 184 (3d Dep't 2000) .....................................................................................8

Matter of Wald v. Nassau Ch. Civ. Serv. Empls. Assn.,
    72 Misc. 2d 723 (Sup. Ct. Nassau Cnty. 1972)...............................................................7

White v. White Rose Food, a Div. of DiGiorgio Corp.,
    237 F.3d 174 (2d Cir. 2001)............................................................................................7

**Statutes**

42 U.S.C. § 1983..........................................................................................................5, 6

N.Y. Civil Service Law § 209 ........................................................................................2

N.Y. Civil Service Law § 209(2) .............................................................................2, 4, 5

N.Y. Civil Service Law § 209(4) .............................................................................3, 9

N.Y. Civil Service Law § 200..........................................................................................2

JA-948

**PRELIMINARY STATEMENT**

In response to the efforts of the New York City and State governments to mandate vaccination of public employees against COVID-19, the United Federation of Teachers ("UFT") has defended the due process rights of the public employees it represents while bargaining with the New York City Department of Education ("DOE") over implementation of the vaccine mandates. Throughout, the UFT has sought to balance the varying needs of its members and the practical realities of a global pandemic, resulting in hard-won benefits such as the alternatives to vaccination or termination provided by the September 10 binding impasse arbitration award (the "Award").[1] At the same time, the UFT remains committed to protecting public employees' rights from encroachment by employers seeking to run roughshod over the constitutionally protected property interests in their employment, even as the contours of these interests shift in response to changes to their collective bargaining agreements.

The UFT here seeks to clarify the misstatements of law, fact, and UFT policy made by Plaintiffs in their Response to this Court's Order to Show Cause concerning Plaintiffs' standing (dkt# 40) ("Plaintiffs' Resp.") such that the Court has the proper context for making its determination. Contrary to Plaintiffs' assertions: (1) the UFT and DOE may mutually agree to proceed to binding arbitration to resolve an impasse in adversarial negotiations; (2) the Award is not the result of a "conspiracy"; (3) the Award need not have been ratified by all UFT members; and (4) the UFT has not waived Plaintiffs' rights to sue, but rather the Award validly modifies the contours of their protected property interests in their employment as defined by state law and contract.

---

[1] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021), Klinger Declaration in Opposition to Emergency Motion, Ex. D. (dkt# 21)

1

JA-949

## ARGUMENT

I. **PARTIES MAY MUTUALLY AGREE TO ENGAGE IN BINDING ARBITRATION UNDER THE TAYLOR LAW**

    A.    <u>Civil Service Law § 209 Regulates How The Public Employment Relations Board ("PERB") Assists Parties In Resolving Labor Disputes, But Does Not Prevent Parties From Engaging In Mutually Agreed-Upon Binding Arbitration</u>

Plaintiffs assert that the Award is "procedurally defective" and thus invalid because the Taylor Law (N.Y. Civil Service Law §200, *et seq.*) does not "[create] a binding arbitration process when the school district is the public employer." Plaintiffs' Resp. at 4-7. This is contrary to both the letter and public policy of the Taylor Law, which exists to "promote harmonious and cooperative relationships between the government and its employees and to protect the public by assuring…the orderly and uninterrupted operations and functions of government." N.Y. Civil Service Law § 200; see also Prof'l, Clerical, Tech. Empls. Ass'n v. Buffalo Bd. of Educ., 90 N.Y.2d 364, 372 (1997) ("[P]ublic policy…favors arbitral resolution of public sector labor disputes."); Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713 (4th Dep't 1977) ("The public policy of this State is to encourage voluntary resolution of labor disputes involving public employees."). This statutory policy is reflected in Civil Service Law § 209, which allows PERB to offer specified assistance to the parties, but leaves them free to resolve disputes in their own way by mutual agreement. The UFT and the DOE agreed to resolve an impasse in bargaining through binding arbitration with PERB's blessing: there is no basis in the law to treat this agreement as invalid.

Civil Service Law § 209 governs what PERB may do when parties reach an impasse. Contrary to Plaintiffs' argument, the law authorizes (but does not require) parties (1) to establish advance procedures for resolving an impasse; and (2) to seek assistance from PERB in resolving their disputes. Civil Service Law § 209(2). PERB may intervene in a labor dispute that has

2

JA-950

reached impasse on the motion of either party or on its own. See Margiotta v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) (citing § 209(3)). If PERB's assistance is invoked, the first step is to appoint a mediator to work with the parties in reaching a voluntary resolution. If this is unsuccessful, impasses for non-public safety employees may move to either a PERB-appointed fact-finding board, or "[i]n the alternative, the parties together may voluntarily submit to arbitration." Id.

Furthermore, § 209(3) states that, if PERB has determined an impasse exists and either it or a party has moved to assist, "the board shall *render assistance*" according to the subsequent procedure (emphasis added). Though the law limits what PERB may impose on the parties in resolving an impasse, there is nothing in the law that prohibits the parties from resolving their dispute in another way. That PERB is required to move to binding arbitration under § 209(4) for public-safety employees but not for other public employees under § 209(3) is irrelevant: nothing in the statute prohibits the voluntary resolution of disputes by mutual agreement, whether through negotiation or arbitration. Parties are not required to establish procedures to resolve an impasse prior to reaching one, nor are they required to engage PERB's assistance at all. Limiting the options of parties at impasse solely to a fact-finding process has no basis in the statutory text.

Limiting the options for a mutually agreed-upon resolution process once PERB is involved would also frustrate the strong public policy of the Taylor Law - *i.e.* encouraging the voluntary resolution of disputes between public employers and employee organizations. Moreover, as PERB is the agency "charged with interpreting and implementing the statute, [their] … construction of the Taylor Law must be accepted if not unreasonable." Newburgh v. Public Employment Relations Bd., 97 A.D.2d 258, 260 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984). PERB allowed the UFT and DOE to move ahead with binding arbitration after mediation

3

failed to resolve the impasse. Overruling this decision would be contrary to state court holdings deferring to PERB's interpretation of its own statute: contrary to Plaintiffs' request, the Court should also defer to PERB's expertise.

    B.    <u>The UFT And DOE Established A Written Agreement Under Civil Service Law §</u>
        <u>209(2)</u>

Not only does the Taylor Law *not* prohibit the UFT and the DOE from voluntarily agreeing to move to binding arbitration to resolve an impasse in bargaining under § 209(3), it specifically permits such arrangements to be made. As Plaintiffs themselves recognize, Civil Service Law § 209(2) "empower[s public employers] to enter into written agreements…setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations." What constitutes a "written agreement" is not further defined by the statute. Under New York law generally, email messages constitute writings for the purpose of contract formation and disputes. <u>See</u>, <u>e.g.</u>, <u>Naldi v. Grunberg</u>, 80 A.D.3d 1, 10-12 (1st Dep't 2010) (holding that "writing" and "subscribed" under state law are construed to include, respectively, records of electronic communications and electronic signatures).

While a writing is not necessary to prove the existence of an agreement when the parties to the agreement—here, the UFT and the DOE—acknowledge its existence, there is, in fact, a writing in the record memorializing the parties' agreement to arbitrate.[2] Though Plaintiffs attempt to disregard the email message from UFT counsel Alan Klinger informing PERB that the

---

[2] Plaintiffs also have no basis to challenge the existence of an agreement that the parties to the agreement—the UFT and DOE—agree exists. Third parties cannot challenge a contract in this fashion. <u>Decolator, Cohen & DePrisco LLP v. Lysagt Lysagt & Kramer, P.C.</u>, 304 A.D.2d 86 (1st Dep't 2003) (holding that a person who is not party to an agreement generally lacks standing to challenge its enforceability, unless they are a third-party beneficiary of the agreement); <u>see also</u> <u>Fiore v Town of Whitestown</u>, 125 A.D.3d 1527, 1530 (4th Dep't 2015) (employee had no right to enforce collective bargaining agreement as a third-party beneficiary). "[The] Taylor Law does not alter basic contract law principles…merely because the contract in dispute is a collective bargaining agreement." <u>Matter of Roma v. Ruffo</u>, 92 N.Y.2d 489, 494 1998); <u>see also</u> <u>Palancia v. Roosevelt Raceway, Inc.</u>, 551 F. Supp. 549, 553 (E.D.N.Y. 1982), <u>aff'd</u> 742 F.2d 1432 (2d Cir. 1983) (holding that collective bargaining agreements "are contracts that remain subject to the general principles of contract law").

JA-952

parties had not resolved the impasse through mediation and had agreed to move to binding arbitration (Plaintiffs' Resp. at 6), that email constitutes a writing.[3] Despite Plaintiffs' insinuation, there is no statutory requirement that a written agreement be voluminous: it must be a *writing*, which the email in question constitutes. Simply, the law explicitly provides for parties to establish their own process for resolution of impasse under § 209(2), which they have done.

## II.  THE AWARD, REACHED THROUGH AN ADVERSARIAL PROCESS, IS NOT THE RESULT OF A "CONSPIRACY" BETWEEN THE UFT AND THE DOE

Plaintiffs now allege that the existence of the Award constitutes a conspiracy between the UFT and the DOE. Plaintiff's Resp. at 2, 6. This new articulation of Plaintiffs' claim differs entirely from what is alleged in the Complaint and is patently false. In their Complaint, Plaintiffs alleged that the UFT had engaged in a conspiracy with the DOE by refraining from the prosecution of specific grievances, and made no mention of the Award. Compl. at ¶¶ 92-93 (dkt# 1). Faced with the fact that the processes and alternatives offered by the Award render these claims baseless, Plaintiffs alter their story. Just as before, however, Plaintiffs provide nothing but conclusory claims of a conspiracy: the UFT is still not a state actor, and adversarial processes such as contractual negotiation or impasse arbitration are still not only not evidence of a conspiracy, they are evidence that there is no conspiracy.

As discussed in its prior submission, the UFT is not a state actor, as it is not a state agency, nor does it meet any of the criteria qualifying it as a private actor acting under color of state law for the purposes of 42 U.S.C. § 1983. See Memorandum of Law in Opposition to Emergency Motion ("UFT Initial Br.") at 14-18 (dkt# 20).

---

[3] See UFT/DOE Impasse Update (Sept. 6, 2021), Klinger Declaration in Opposition to Emergency Motion, Ex. C. (dkt# 21).

A conspiracy claim, such as Plaintiffs', requires more than an offering of conclusory allegations that a private defendant has been a willful participant in the constitutional violations of a state actor. Allegations of conspiracy based on adversarial actions between the private defendant and a state defendant are particularly disfavored. See Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (claims of conspiracy between a union and employer ring "especially hollow" when the evidence of conspiracy is drawn from an adversarial proceeding). When the private defendant is a labor union, negotiating with a public employer and pursuing grievance proceedings under a collective bargaining agreement are both considered adversarial actions. See, e.g., McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am., 107 F. Supp. 2d 311 (S.D.N.Y. 2000) (negotiation of a collective bargaining agreement); Ciambriello v., 292 F.3d at 312-13 (grievance proceeding). That the outcome of these adversarial processes may not fully satisfy the desires of either the labor union or some of its members does not transform them into a conspiracy. See, McGovern, 107 F. Supp. 2d at 317-18.

Here, the UFT has actively sought to protect the interests of its members—including those who choose not to become vaccinated—throughout the announcement and implementation of the DOE's vaccine mandate policies, engaging in both adversarial negotiations and suits against the City in multiple forums challenging the mandates. See generally UFT Initial Br. at 4-13. When the UFT and the DOE reached an impasse in bargaining, they agreed to binding arbitration to resolve a contentious and adversarial labor dispute in a timely manner, and the UFT gained substantial benefits from the Arbitrator's ruling. These actions constitute significantly more adversity to the interests of the City than courts have found necessary to stave off a § 1983 claim against a private actor.

6

### III.  THE UFT IS NOT REQUIRED TO SEEK RATIFICATION OF THE AWARD

As a general rule, whether a collective bargaining agreement requires ratification by a labor union's membership is a matter of internal union governance, rather than a matter for the courts. Here, contrary to Plaintiffs' assertion, the UFT is not required to seek ratification of a decision to move to binding arbitration to resolve an impasse in bargaining, nor are they required to—or truly able to—seek ratification of a *binding* arbitration award produced by that process.

Under federal labor law, a labor union is not required to seek ratification of a collective bargaining agreement or its modification by membership, unless either the agreement itself expressly requires ratification or the constitution, by-laws, or rules and regulations of the union require ratification. See White v. White Rose Food, a Div. of DiGiorgio Corp., 237 F.3d 174, 182 (2d Cir. 2001). Even if the original agreement expressly required ratification, so long as later modifications do not also require ratification, the original agreement can be validly modified by the parties without ratification. Id. at 177. This is also true under the Taylor Law. See Matter of City University of New York (Soffer), 20 PERB ¶ 3051 (1987) ("[T]he Act contains no per se requirement that ratification of either a collective bargaining agreement, or the modification of a collective bargaining agreement, take place…"); see also Matter of Wald v. Nassau Ch. Civ. Serv. Empls. Assn., 72 Misc. 2d 723, 724 (Sup. Ct. Nassau Cnty. 1972). PERB precedent also provides that a union's duty (or lack thereof) to ratify agreements is based on their constitution, by-laws, and rules and regulations. See Matter of Incorp. Village of Garden City, 32 PERB ¶ 4555 (1999), aff'd, 32 PERB ¶ 3043 (1999) (rejecting that a union's constitution and by-laws required ratification). Past organizational practice may help establish a right to ratification, or the lack thereof. See, e.g., Higgins v. Int'l Union, Sec., Police, Fire Professionals of Am. (SPFPA), 398 F.3d 384, 388 (6th Cir. 2005) (holding that membership ratification was not required given parties' past practice).

JA-955

Plaintiffs argue that the Award is invalid because it was not ratified by a vote of the UFT's membership. Plaintiff's Resp. at 2, 9. While the UFT traditionally puts new successor agreements to a ratification vote before they are final, there is no requirement that new matters arising during the life of an existing agreement be ratified. Unions routinely negotiate myriad issues with employers that are resolved through side letter, clarification, modification or arbitration during the effective periods of collective bargaining agreements without putting each such matter to a ratification vote. Nor, most importantly, would there have been any purpose to having a ratification vote on a *binding* arbitration award, as the vote would not change the binding nature of the Award. Accordingly, the absence of a ratification vote does not impact the validity of the Award.

## IV.   THE AWARD DOES NOT WAIVE PLAINTIFFS' STATUTORY AND CONSTITUTIONAL RIGHTS, BUT IT DOES MODIFY THE COLLECTIVE BARGAINING AGREEMENT

While state law recognizes that "employee organizations may waive, through the voluntary process of entering into collective bargaining agreements, certain constitutional and statutory rights of their employee members," Matter of Uniform Firefighters of Cohoes v. Cuevas, 276 A.D.2d 184, 191 (3d Dep't 2000), the UFT has not claimed to have waived any of the Plaintiffs' rights under the Award. Conversely, the UFT has vociferously argued in this very litigation to protect members—including Plaintiffs themselves—from termination in violation of statutory and contractual due process protections. See Memorandum of Law in Opposition ("UFT Supplemental Br.") at 13-17 (dkt# 35). Rather, the Award, as a modification of the collective bargaining agreement, changed the contours of Plaintiffs' constitutional property

JA-956

interest in their employment with regard to placement on leave without pay ("LWOP"). Such a modification does not constitute waiver that would destroy Plaintiffs' standing.[4]

As recognized by this Court, Plaintiffs are public employees who have a constitutionally protected property interest in their continued employment. Mem. and Order Den. Mot. Prelim. Inj. ("Order"), 18 (citing Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985)). Public employees' property interests in their employment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). See also Catterson v. Caso, 472 F. Supp. 833, 838 (E.D.N.Y. 1979) ("A property interest in employment can be created by contract, by ordinance, or by implied contract. To determine the sufficiency of the claim, the court must look to state law."). Under New York state law, a binding arbitration award (however it is reached) "effectively redefine[s] the parties' agreement on [a] mandatory term and condition of employment," and supersedes contractual provisions to the contrary. See Town of Southampton v. N.Y. State Pub. Empl. Rels. Bd., 2 N.Y.3d 513, 523 (2004).[5]

Plaintiffs' arguments that the Award does not modify the collective bargaining agreement because such arbitration is prohibited under the Taylor Law, or that the arbitrator is barred from modifying the collective bargaining agreement, are baseless. As discussed in Section I of this brief, § 209 does not prohibit the use of binding arbitration by mutual agreement of the parties. Similarly, the subsection of the collective bargaining agreement cited by Plaintiffs to argue that an arbitrator cannot modify the agreement concerns the powers of an arbitrator in the contractual

---

[4] With regard to the DOE's stated intention to separate unvaccinated employees from service, the Award plainly and specifically preserves all existing rights to contractual and statutory due process prior to termination. UFT Supplemental Br. at 13-17. The UFT opposes any attempt to terminate DOE employees without due process.

[5] Plaintiffs' claim that Town of Southampton does not apply because it deals with binding interest arbitration under Civil Service Law § 209(4) is misleading. The case is cited not for its direct applicability, but for the general proposition that binding arbitration redefines the terms of a collective bargaining agreement.

JA-957

grievance process established pursuant to the agreement, not the powers of an arbitrator empowered to make decisions to resolve a bargaining impasse.

Also contrary to Plaintiffs' claims, the Award's modification of the collective bargaining agreement does not waive the rights of members to pursue any claim in court. Cases cited by Plaintiffs on this point, such as 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), are inapposite, for they concern whether a collective bargaining agreement had waived a right to go to court in favor of arbitrating federal claims. However, when the issue is placement on LWOP, the Award acts to modify the property interest that the Plaintiffs hold in their employment. Pursuant to the Award, Plaintiffs' rights to *contest* being placed on LWOP have not been waived; yet, so long as they are unvaccinated and have not received an accommodation, they have no contractual right to avoid mandatory LWOP.  Plaintiffs may seek redress from the Court, but they do not have a valid claim that their civil rights have been violated, as—unlike the threat of termination without process—their property interest in their employment does not include any protection from placement on LWOP for refraining from vaccination or selecting one of the alternatives to vaccination under the Award.

Dated: December 20, 2021                     Respectfully submitted,

                              /s/ ALAN M. KLINGER
                         STROOCK & STROOCK & LAVAN LLP
                         Alan M. Klinger, Esq.
                         Dina Kolker, Esq.
                         180 Maiden Lane
                         New York, New York 10038
                         (212) 806-5400
                         aklinger@stroock.com
                         dkolker@stroock.com

                         - and –

10

JA-958

Beth A. Norton, Esq.
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
bnorton@uft.org

*Co-counsel for Defendant UFT*

JA-959

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD, SUITE 385
### CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L. SCHER**

AUSTIN R. GRAFF*

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

TEL. 516-746-5040

FAX. 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1959-2013)

December 20, 2021

**By ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
>       Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action.

The NYCDOE made two material misrepresentations in their response to the Plaintiffs' papers regarding standing that must be corrected.

First, the NYCDOE states, twice, that PERB "appointed an arbitrator to attempt to resolve the impasse". **Docket Entry #41**, at page 5. PERB appointed a mediator, not an arbitrator. **Docket Entry #21-2.**

Second, the NYCDOE states that the Plaintiffs' "placement on LWOP and their projected separation was the result of negotiations between the City and UFT." **Docket Entry # 41**, at page 6. The Impact Arbitration Award was not the result of negotiations, but a binding arbitration award. As the UFT states, there would have been no "purpose to having a ratification vote on a *binding* arbitration award, as the vote would not change the binding nature of the Award." **Docket Entry #42**, at page 8 (emphasis in original).

Thank you.

Respectfully submitted,
THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NICOLE BROECKER, MICHELLE MARTINO, GINA
PORCELLO, AMOURA BRYAN, RENA GELLMAN,
FOTINA LAMBOS, KERRY BEN-JACOB,
EKATERINA UDINA, ANDREA TICHIO,
MARIANNA CIACCA-LISS, ANITA QUASH,
KELLY DIXON, FELICIA HAGAN, MARITZA
ROMERO, MARIA RUSCELLI, BETZIADA CRUZ,
FRANCINE TRAPANI, JEANNINE LAM, JESSICA
NARCISO, BRIANNA PEREZ, NICOLETTA
MASULLO, ANASTASIA CHRISTOPOULOS, FAYE
KOTZER, BENEDICT LOPARRINO, YADITZA
RODRIGUEZ, RAFAEL ADRIAN TORO, SERINA
MENDEZ, DINA HUSSIEN, HERENDYRA
PEREYRA, ROSA ABREU, JOAN GIAMMARINO,
ANDREA JACKSON, MARIA KLAPAKIS, STELLA
PORTO, TONIANN MIRAGLIA, ROSEANNA
SILVESTRI-INCANTALUPO, JULIA A. MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF,
DIANE PAGEN, LYNN PEPE, STEPHANIE
EDMONDS, YVONNE COSTELLO, DEBBY HARTZ,
SORAYA SANCHEZ, MONIQUE MOORE, ANGELA
VELEZ, SALLY MUSSAFI, JESSICA NICCHIO,
DORCA GENAO, RACHEL MANISCALCO, JAMES
HOFFMAN, SHARLAYNE JACOBS, CRYSTAL
SALAS, FRANCES DIPROSSIMO, CAROLA
MARTINEZ-VAN BOKKEM, AYSE USTARES,
ELIZABETH FIGUEROA, DIANNE BAKER-PACIUS,
NICOLE MOORE, ELIZABETH PLACENCIO,
DEBBIE BERTRAM, KIMBERLI MADDEN, FRAN
SCHMITTER, VICTORIA RUSSO, PAUL
CIFARELLI, DANIELLE HEAL, SARA COOMBS-
MORENO, LISA SIMO, TAMI BENEDUCE,
ZABDIEL VALERA, NATHALIE CHARLES,
JANELLE LOTITO, JEANEAN SANCHEZ, MARIE
MOSLEY, TARA PALLADINO, DANIELLE
MCGUIRE, JULIA HARDING, LEAH KUKLA,
STEPHANIE FRANZESE, JULIA BALASIS-
MARING, BETH SCHIANO, MEAGAN VELEZ,
JENNIFER ZACCARIELLO, ELENI GERASIMOU,
LAURA SALAMONE, AUBREY JOERGENS,
DEIDRA STATUTO, LORRAINE MASCIARELLI,
HENRIETTA SHAYA, AURA MOODY, ELIZABETH
LOIACONO, RICHARD JOSEPH, on behalf of
themselves and all other similarly situated employees of
the New York City Department of Education,

                                                    Plaintiffs,

-against-

**INDEX NO. 21-cv-06387**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

1

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER, in her official and individual capacities, UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, MICHAEL MULGREW, in his official and individual capacities, COUNCIL OF SUPERVISORS AND ADMINISTRATORS, MARK CANNIZZARO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372, SHAUN D. FRANCOIS I, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251, FRANCINE FRANCIS, in her official and individual capacities, MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC, JOHN DOE #1-10, in their official and individual capacities; and JANE DOE #1-10 in their official and individual capacities,

                                                    Defendants.
-------------------------------------------------------------------X

The Plaintiffs by their attorneys, The Scher Law Firm, LLP, alleges the following as their Complaint:

## I.      PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff NICOLE BROECKER ("Broecker") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the New York City Department of Education ("NYCDOE").

2.      The Plaintiff MICHELLE MARTINO ("Martino") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

2

3.      The Plaintiff GINA PORCELLO ("Porcello") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a secretary with the NYCDOE.

4.      The Plaintiff AMOURA BRYAN ("Bryan") was and still is a natural person who resides in and is a domiciliary of the County of Essex, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

5.      The Plaintiff RENA GELLMAN ("Gellman") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

6.      The Plaintiff FOTINA LAMBOS ("Lambos") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a school counselor with the NYCDOE.

7.      The Plaintiff KERRY BEN-JACOB ("Ben-Jacob") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

8.      The Plaintiff EKATERINA UDINA ("Udina") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

9.      The Plaintiff ANDREA TICHIO ("Tichio") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

10.     The Plaintiff MARIANNA CIACCA-LISS ("Ciacca-Liss") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

11.     The Plaintiff ANITA QUASH ("Quash") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a paraprofessional with the NYCDOE.

12.     The Plaintiff KELLY DIXON ("Dixon") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

13.     The Plaintiff FELICIA HAGAN ("Hagan") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

14.     The Plaintiff MARITZA ROMERO ("Romero") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

15.     The Plaintiff MARIA RUSCELLI ("Ruscelli") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

16.     The Plaintiff BETZIADA CRUZ ("Cruz") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

17.     The Plaintiff FRANCINE TRAPANI ("Trapani") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

18.     The Plaintiff JEANNINE LAM ("Lam") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

4

19.      The Plaintiff JESSICA NARCISO ("Narciso") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

20.      The Plaintiff BRIANNA PEREZ ("Perez") was and still is a natural person who resides in and is a domiciliary of the County of New York, State of New York and is employed as a Paraprofessional with the NYCDOE.

21.      The Plaintiff NICOLETTA MASULLO ("Masullo") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

22.      The Plaintiff ANASTASIA CHRISTOPOULOS ("Christopoulos") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured speech language pathologist with the NYCDOE.

23.      The Plaintiff FAYE KOTZER ("Kotzer") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured Principal with the NYCDOE.

24.      The Plaintiff BENEDICT LOPARRINO ("LoParrino") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

25.      The Plaintiff YADITZA RODRIGUEZ ("Rodriguez") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a Parent Coordinator with the NYCDOE.

26.      The Plaintiff RAFAEL ADRIAN TORO ("Toro") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

27.     The Plaintiff SERINA MENDEZ ("Mendez") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured teacher with the NYCDOE.

28.     The Plaintiff DINA HUSSIEN ("Hussein") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a Paraprofessional with the NYCDOE.

29.     The Plaintiff HERENDYRA PEREYRA ("Pereyra") was and still is a natural person who resides in and is a domiciliary of Westchester County, State of New York and is employed as a tenured teacher with the NYCDOE.

30.     The Plaintiff ROSA ABREU ("Abreu") was and still is a natural person who resides in and is a domiciliary of Bergen County, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

31.     The Plaintiff JOAN GIAMMARINO ("Giammarino") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher for the speech and hearing-handicapped with the NYCDOE.

32.     The Plaintiff ANDREA JACKSON ("Jackson") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

33.     The Plaintiff MARIA KLAPAKIS ("Klapakis") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

34.     The Plaintiff STELLA PORTO ("Porto") was and still is a natural person who resides in and is a domiciliary of the County of Middlesex, State of New Jersey and is employed as a tenured Assistant Principal with the NYCDOE.

35.     The Plaintiff TONIANN MIRAGLIA ("Miraglia") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

36.     The Plaintiff ROSEANNA SILVESTRI-INCANTALUPO ("Silvestri-Incantalupo") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

37.     The Plaintiff JULIA A. MAVIS ("Mavis") was and still is a natural person who resides in and is a domiciliary of the County of Monmouth, State of New Jersey and is employed as a Paraprofessional with the NYCDOE.

38.     The Plaintiff CHRISTOPHER HANSEN ("Hansen") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

39.     The Plaintiff ANNETE BACKOF ("Backof") was and still is a natural person who resides in and is a domiciliary of the County of Middlesex, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

40.     The Plaintiff DIANE PAGEN ("Pagen") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Social Worker with the NYCDOE.

41.     The Plaintiff LYNN PEPE ("Pepe") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

42.     The Plaintiff STEPHANIE EDMONDS ("Edmonds") was and still is a natural person who resides in and is a domiciliary of the County of Fairfield, State of Connecticut and is employed as a tenured teacher with the NYCDOE.

43.     The Plaintiff YVONNE COSTELLO ("Costello") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

44.     The Plaintiff DEBBY HARTZ ("Hartz") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a Guidance Counselor with the NYCDOE.

45.     The Plaintiff SORAYA SANCHEZ ("Sanchez") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured special education teacher with the NYCDOE.

46.     The Plaintiff MONIQUE MOORE ("Moore") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

47.     The Plaintiff ANGELA VELEZ ("Velez") was and still is a natural person who resides in and is a domiciliary of the County of Putnam, State of New York and is employed as a tenured School Counselor with the NYCDOE.

48.     The Plaintiff SALLY MUSSAFI ("Mussafi") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

49.     The Plaintiff JESSICA NICCHIO ("Nicchio") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

50.     The Plaintiff DORCA GENAO ("Genao") was and still is a natural person who resides in and is a domiciliary of the County of Fairfield, State of Connecticut and is employed as a Paraprofessional with the NYCDOE.

**JA-968**

51.     The Plaintiff RACHEL MANISCALCO ("Maniscalco") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

52.     The Plaintiff JAMES HOFFMAN ("Hoffman") was and still is a natural person who resides in and is a domiciliary of the County of Fairfield, State of Connecticut and is employed as a tenured teacher with the NYCDOE.

53.     The Plaintiff SHARLAYNE JACOBS ("Jacobs") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

54.     The Plaintiff CRYSTAL SALAS ("Salas") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured speech-language teacher with the NYCDOE.

55.     The Plaintiff FRANCES DIPROSSIMO ("DiProssimo") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

56.     The Plaintiff CAROLA MARTINEZ-VAN BOKKEM ("Martinez-Van Bokkem") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a tenured teacher of the deaf with the NYCDOE.

57.     The Plaintiff AYSE USTARES ("Ustares") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured Social Worker with the NYCDOE.

58.     The Plaintiff ELIZABETH FIGUEROA ("Figueroa") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

9

59.     The Plaintiff DIANNE BAKER-PACIUS ("Baker-Pacius") was and still is a natural person who resides in and is a domiciliary of the County of New York, State of New York and is employed as a tenured teacher with the NYCDOE.

60.     The Plaintiff NICOLE MOORE ("Nicole") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

61.     The Plaintiff ELIZABETH PLACENCIO ("Placencio") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured teacher with the NYCDOE.

62.     The Plaintiff DEBBIE BERTRAM ("Bertram") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

63.     The Plaintiff KIMBERLI MADDEN ("Madden") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a tenured teacher with the NYCDOE.

64.     The Plaintiff FRAN SCHMITTER ("Schmitter") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

65.     The Plaintiff VICTORIA RUSSO ("Russo") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

66.     The Plaintiff PAUL CIFARELLI ("Cifarelli") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

67.     The Plaintiff DANIELLE HEAL ("Heal") was and still is a natural person who resides in and is a domiciliary of the County of Monmouth, State of New Jersey and is employed as a tenured teacher with the NYCDOE.

68.     The Plaintiff SARA COOMBS-MORENO ("Coombs-Moreno") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

69.     The Plaintiff LISA SIMO ("Simo") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

70.     The Plaintiff TAMI BENEDUCE ("Beneduce") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

71.     The Plaintiff ZABDIEL VALERA ("Valera") was and still is a natural person who resides in and is a domiciliary of the County of Essex, State of New Jersey and is employed as a tenured Special Education teacher with the NYCDOE.

72.     The Plaintiff NATHALIE CHARLES ("Charles") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a tenured teacher with the NYCDOE.

73.     The Plaintiff JANELLE LOTITO ("Lotito") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Paraprofessional with the NYCDOE.

74.     The Plaintiff JEANEAN SANCHEZ ("Jeanean") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

75.    The Plaintiff MARIE MOSLEY ("Mosley") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a Guidance Counselor with the NYCDOE.

76.    The Plaintiff TARA PALLADINO ("Palladino") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured teacher with the NYCDOE.

77.    The Plaintiff DANIELLE MCGUIRE ("McGuire") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

78.    The Plaintiff JULIA HARDING ("Harding") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured Education Administrator with the NYCDOE.

79.    The Plaintiff LEAH KUKLA ("Kukla") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

80.    The Plaintiff STEPHANIE FRANZESE ("Franzese") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

81.    The Plaintiff JULIA BALASIS-MARING ("Balasis-Maring") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

82.    The Plaintiff BETH SCHIANO ("Schiano") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

12

83.     The Plaintiff MEAGAN VELEZ ("Meagan") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

84.     The Plaintiff JENNIFER ZACCARIELLO ("Zaccariello") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a Occupational Therapist with the NYCDOE.

85.     The Plaintiff ELENI GERASIMOU ("Gerasimou") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

86.     The Plaintiff LAURA SALAMONE ("Salamone") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a tenured teacher with the NYCDOE.

87.     The Plaintiff AUBREY JOERGENS ("Joergens") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a tenured teacher with the NYCDOE.

88.     The Plaintiff DEIDRA STATUTO ("Statuto") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured Special Education teacher with the NYCDOE.

89.     The Plaintiff LORRAINE MASCIARELLI ("Masciarelli") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a tenured teacher with the NYCDOE.

90.     The Plaintiff HENRIETTA SHAYA ("Shaya") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a tenured teacher with the NYCDOE.

13

91.     The Plaintiff AURA MOODY ("Moody") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a tenured Social Worker with the NYCDOE.

92.     The Plaintiff ELIZABETH LOIACONO ("Loiacono") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a tenured teacher with the NYCDOE.

93.     The Plaintiff RICHARD JOSEPH ("Joseph") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a Paraprofessional with the NYCDOE.

94.     The Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") was and still is a municipal corporation duly organized under the laws of New York State with its principal place of business is located in the County of Kings, State of New York.

95.     The Defendant CITY OF NEW YORK ("NYC") was and still is a municipal corporation organized under the laws of the State of New York.

96.     The Defendant MEISHA PORTER ("Porter") was and still is a natural person whose principal place of business is located in the County of Kings, State of New York.

97.     The Defendant UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO ("UFT") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

98.     The Defendant MICHAEL MULGREW ("Mulgrew") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

14

99.    The Defendant COUNCIL OF SUPERVISORS AND ADMINISTRATORS ("CSA") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

100.    The Defendant MARK CANNIZZARO ("Cannizzaro") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

101.    The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO ("DC37") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

102.    The Defendant HENRY GARRIDO ("Garrido") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

103.    The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372 ("Local 372") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

104.    The Defendant SHAUN D. FRANCOIS I ("Francois") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

105.    The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251 ("Local 1251") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

106.    The Defendant FRANCINE FRANCIS ("Francis") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

Case 23-655, Document 74, 06/05/2023, 3525006, Page175 of 281

107.    The Defendant MARTIN F. SCHEINMAN ("Scheinman") was and still is a natural person whose principal place of business is located in the County of Nassau, State of New York.

108.    Upon information and belief, the Defendant SCHEINMAN ARBITRATION AND MEDIATION SERVICES ("SAMS") was and still is a domestic company authorized to do business in New York, with its principal place of business located in the County of Nassau, State of New York.

109.    The Defendant SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC ("SAMS, LLC") is a domestic limited liability company authorized to do business in New York, with its principal place of business located in the County of Nassau, State of New York.

110.    The Defendants JOHN DOE #1-10 ("John Doe") are unknown persons who have directly participated in, have knowledge of, and have had personal involvement in the deprivation of the Plaintiffs' constitutional rights.

111.    The Defendants JANE DOE #1-10 ("Jane Doe") are unknown persons who have directly participated in, have knowledge of, and have had personal involvement in the deprivation of the Plaintiffs' constitutional rights.

112.    This is a civil action seeking injunctive relief, declaratory judgment relief to protect the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

113.    This is a civil action seeking a monetary damages award on behalf of the Plaintiffs and against the Defendants pursuant to 42 U.S.C. § 1983 for a conspiracy to violate the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

114.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

115.    This Court has personal jurisdiction over the Defendants.

116.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(d), because, the Defendants have offices within this judicial district.

## II.    FACTS

### A.    Plaintiffs

117.    The Plaintiffs, except for Lambos, have not taken a COVID-19 vaccine.[1]

118.    The Plaintiffs have been suspended without pay for not taking a COVID-19 vaccine.

119.    The Plaintiffs are either: (1) tenured employees of the NYCDOE, entitled to the due process protections of N.Y. Education Law §§ 3020 and 3020-a; or (2) permanent employees of the NYCDOE, entitling them to the due process protections of N.Y. Civil Service Law § 75; or (3) entitled to due process protections through their union's collective bargaining agreement with the NYCDOE.

120.    The Plaintiffs are:

(a)    A tenured principal (Kotzer);
(b)    An assistant principal (Porto);
(c)    Tenured teachers (Broecker, Martino, Bryan, Gellman, Ben-Jacob, Udina, Tichio, Ciaccia-Liss, Dixon, Hagen, Romero, Ruscelli, Cruz, Trapani, Lam, Narciso, Masullo, LoParrino, Toro, Mendez, Pereyra, Abreu, Giammarino, Jackson, Klapakis, Hansen, Backof, Pepe, Edmonds, Costello, Sanchez, Moore, Mussafi, Maniscalco, Hoffman, Jacobs, DiProssimo, Martinez-van Bokken, Figueroa, Baker-Pacius, Nicole, Placencio, Bertram, Madden, Russo, Cifarelli, Heal, Coombs-Moreno, Beneduce, Valera, Charles, Jeanean, Palladino, McGuire, Kukla, Franzese, Balasis-Marring, Schiano, Meagan, Gerasimou, Salamone, Joergens, Statuto, Masciarelli, Shaya, Loiacono);

---

[1] Lambos continues as a Plaintiff in this Action, seeking backpay for the period of time she was suspended without pay.

      (d)      Paraprofessionals (Quash, Perez, Hussien, Miraglia, Silverstri-Incantalupo, Mavis, Nicchio, Genao, Schmitter, Simo, Lotito, Joseph);

      (e)      Education Administrator (Harding)

      (f)      Speech language pathologist (Christopoulos, Salas);

      (g)      Social workers (Pagen, Ustares, Moody);

      (h)      Parent Coordinator (Rodriguez);

      (i)      Guidance counselors (Hartz, Mosley);

      (j)      School counselors (Lambos, Velez);

      (k)      Secretary (Porcello); and

      (l)      Occupational Therapist (Zaccariello)

**B.**    **Defendants**

    1.   <u>NYCDOE</u>

121.    The NYCDOE is a State actor.

122.    Porter was the Chancellor of the NYCDOE during all relevant times that are at issue in this Action.

    2.   <u>UFT</u>

123.    "The UFT, which represents nearly 200,000 members, is the sole bargaining agent for most of the non-supervisory educators who work in the New York City public schools." **Exhibit A**, a copy of the UFT's webpage "About the UFT" (visited December 27, 2021).

124.    "The UFT represents approximately 75,000 teachers and 19,000 classroom paraprofessionals, along with school secretaries, attendance teachers, school counselors, psychologists, social workers, adult education teachers, administrative law judges, nurses, laboratory technicians, speech therapists, family child care providers and 64,000 retired members." **Exhibit A**.

125.    Mulgrew is President of the UFT.

3.    CSA

126.   "The Council of School Supervisors and Administrators is the collective bargaining unit for 6,100 Principals, Assistant Principals, Supervisors and Education Administrators who work in the NYC public schools and 200 Directors and Assistant Directors who work in city-subsidized Centers for Early Childhood Education (ECE). CSA also has more than 10,000 members in its Retiree Chapter." **Exhibit B**, a copy of the CSA's webpage "What is CSA" (visited December 27, 2021).

127.   Cannizzaro is President of the CSA.

4.    DC37

128.   DC37 has two local units that represent NYCDOE employees.

129.   Garrido is the Executive Director of DC37.

130.   The members of Local 372 are "Community Assistant, Community Associate, Community Coordinator, Consumer Advocates, Family Assistant, Family Associate, Family Auxiliaries, Family Auxiliary Paraprofessionals, Family Worker, Film Inspection Assistant, Health Aide, Health Service Aides, Instructor of Addiction, Junior School Neighborhood Worker, Parent Program Assistant, Principal School Neighborhood Worker, School Aide, School Crossing Guard, School Health Service Aide, School Lunch Aide, School Lunch Assistant, School Lunch Assistant (Cook), School Lunch Helper, School Lunch Loader & Handler, School Neighborhood Worker, School Neighborhood Worker (Task Force Monitors), Senior School Lunch Aide, Senior School Lunch Aide (Cook), Senior School Lunch Helper, Senior School Neighborhood Worker, Senior School Neighborhood Worker (Aide), Substitute School Lunch Helper, Substitute Senior School Lunch Helper, Substance Abuse Prevention & Intervention Specialist and Task Force Monitor." **Exhibit C**, a copy of Local 372's webpage "About Us" (visited December 27, 2021).

131.    Francois is the President of Local 372.

132.    The members of Local 1251 are: "Clerical Aides, Clerical Associates, Secretaries, Investigators and Interpreters. Local 1251 members work in a variety of job titles and at different levels." **Exhibit D**, a copy of the Local 1251's webpage "About Us" (visited December 27, 2021).

133.    Francis is the President of Local 1251.

        5.      Scheinman, SAMS and SAMS, LLC

134.    Scheinman was appointed by the New York State Public Employment Relations Board ("PERB") to mediate an impasse in the negotiations between the UFT and the NYCDOE regarding the New York Commissioner Of Health's COVID Vaccine Mandate.

135.    Instead of mediating the impasse, the UFT and the NYCDOE conspired with Scheinman to have Scheinman issue a binding arbitration award ("UFT Arbitration Award") that resolved the impasse between the UFT and the NYCDOE.  *See,* **Exhibit E**, a copy of the UFT Arbitration Award.

136.    There was no statutory or contractual authority for Scheinman to issue the UFT Arbitration Award.

137.    In the UFT Arbitration Award, Scheinman appointed SAMS to oversee the appeal process for any accommodation requests.  *See,* **Exhibit E**, at page 10.

138.    In the UFT Arbitration Award, Scheinman appointed SAMS, LLC to oversee the appeal process for any accommodation requests.  *See,* **Exhibit E**, at page 10.

139.    In addition, the CSA and the NYCDOE "reached out to [Scheinman] to similarly address" the implementation of the New York Commissioner Of Health's COVID Vaccine Mandate.  *See,* **Exhibit F**, a copy of Scheinman's Arbitration Award regarding the CSA, at page 2 ("CSA Arbitration Award").

20

140.    In the CSA Arbitration Award, Scheinman appointed SAMS to oversee the appeal process for any accommodation requests. *See,* **Exhibit F**, at page 6-7.

141.    In the CSA Arbitration Award, Scheinman appointed SAMS, LLC to oversee the appeal process for any accommodation requests. *See,* **Exhibit F**, at page 6-7.

**C.    New York Commissioner Of Health's COVID Vaccine Mandate**

142.    On August 24, 2021, the New York City Commissioner of Health issued an Order requiring NYCDOE employees, contractors and others to obtain a COVID-19 vaccine. *See,* **Exhibit G**, a copy of the August 24, 2021 Order of the Commissioner of Health and Mental Hygiene ("Vaccine Mandate Order").

143.    The Vaccine Mandate Order required all NYCDOE staff to provide proof of vaccination no later than September 27, 2021. *See,* **Exhibit G**.

144.    On December 25, 2021, the *New York Post* reported that "City school employees who have not shown proof they got a second vaccine shot under Mayor de Blasio's mandate have been allowed to continue working a month past the deadline with "reminders" instead of being put on unpaid leave." **Exhibit H**, a copy of the *New York Post* article entitled "DOE Skips Deadline To Suspend Employees Who Haven't Shown Proof Of Second Vax."

145.    According to the *New York Post* the deadline for NYCDOE employees to get a second vaccine was November 18, 2021. *See,* **Exhibit H**.

**D.    UFT's Impact Bargaining With NYCDOE And Illegal Arbitration Award**

146.    Pursuant to the New York Taylor Law (N.Y. Civil Service Law § 209.3(a)), the UFT and the NYCDOE entered into negotiations over the impact of the Vaccine Mandate Order.

147.   The UFT and the NYCDOE held bargaining sessions on August 25, 2021 and August 30, 2021.  *See*, **Exhibit I**, a copy of the UFT's Declaration of Impasse, at Schedule A.

148.   On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board over the impact of the Vaccine Mandate Order.  *See*, **Exhibit I**.

149.   Pursuant to N.Y. Civil Service Law § 209, PERB appointed Scheinman as a mediator to mediate the impact of the Vaccine Mandate Order.  *See*, **Exhibit J**, a copy of PERB's Appointment Of Mediator.

150.   Virtual mediation sessions between the NYCDOE and the UFT with Scheinman on September 2, 3, 4, and 5, 2021.  *See*, **Exhibit K**, a copy of the email from Alan M. Klinger ("Klinger") to PERB dated September 6, 2021.

151.   On September 6, 2021, the UFT informed PERB that "with the start of the school year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13th and Sept. 27th, respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce.  Arbitration sessions are being held on Sept. 6[th]."  **Exhibit K**.

152.   As a consequence of this agreement to move to "an expedited arbitration", on September 10, 2021, Scheinman issued the UFT Arbitration Award.  **Exhibit E**.

153.   Scheinman wrote: "in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand."  **Exhibit E**, at page 6.

154.   There was no statutory authority for Scheinman to arbitrate the impasse in negotiations over the impact of the Vaccine Mandate Order.

155.   N.Y. Civil Service Law § 209 does not authorize binding arbitration in school districts.  *See*, N.Y. Civil Service Law § 209.3(f).

156.    There was no contractual authority for Scheinman to arbitrate the impasse in negotiations over the impact of the Vaccine Mandate Order. *See,* **Exhibit L**, a copy of the UFT collective bargaining agreement with the NYCDOE, at Article 22.C.

157.    The UFT's and the NYCDOE's collective bargaining agreements are consistent in that the arbitrator "shall limit his/her decision strictly to the application and interpretation of the provisions of this Agreement and he/she shall be without power or authority to make any decision: 1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law…." **Exhibit L**, at Article 22.C.

158.    The UFT Arbitration Award exceeded Scheinman's authority since it modified and is inconsistent with applicable law since it violates the Plaintiffs' due process rights and property interests in their pay.

159.    The UFT and the NYCDOE did not negotiate a resolution of the impact of the Vaccine Mandate Order, but improperly, illegally, and without any contractual authority yielded their negotiation rights to Scheinman to impose a resolution.

**E.    CSA's Impact Bargaining With NYCDOE And Illegal Arbitration Award**

160.    Following Scheinman's issuance of the illegal UFT Arbitration Award, the CSA and the NYCDOE "reached out to [Scheinman] to similarly address their concerns" regarding the Vaccine Mandate Order. **Exhibit F**, at page 2.

161.    "Given the exigencies of the opening of school and the imminent effective date of the City's mandate, it was agreed the [CSA and the NYCDOE] would promptly move to arbitration." **Exhibit F**, at page 2.

162.    There was no statutory authority for Scheinman to promulgate the CSA Arbitration Award.

163.   There was no contractual authority for Scheinman to promulgate the CSA Arbitration Award.

**F.**   **DC37's Agreement With NYCDOE**

164.   On or about October 3, 2021, DC37 entered into a negotiated "agreement regarding a process for requests for exemptions to [the Vaccine Mandate Order] and the leave status of those who do not comply with the mandate." **Exhibit M,** a copy of the Memorandum of Agreement between DC37 and the NYCDOE.

165.   On or about October 3, 2021, Local 372 entered into a negotiated "agreement regarding a process for requests for exemptions to [the Vaccine Mandate Order] and the leave status of those who do not comply with the mandate." **Exhibit M.**

**G.**   **UFT's Arbitration Award Violated The Plaintiffs' Constitutional Rights**

166.   The UFT Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the UFT who did not take a COVID vaccine, thus violating the UFT members-Plaintiffs' constitutional rights to due process.

167.   The UFT Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the UFT who did not take a COVID vaccine, thus the UFT members-Plaintiffs' constitutional property right in their pay.

168.   The UFT conspired with the NYCDOE to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

169.    Mulgrew conspired with the NYCDOE to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

170.    The UFT conspired with Porter to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

171.    Mulgrew conspired with Porter to have Scheinman promulgate the UFT Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award.

172.    As a result of the conspiracy between the UFT, NYCDOE, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

173.    As a result of the conspiracy between the UFT, Porter, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

174.    As a result of the conspiracy between the Mulgrew, NYCDOE, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

175.    As a result of the conspiracy between the Mulgrew, Porter, Scheinman, SAMS, and SAMS LLC, the UFT members-Plaintiffs' constitutional rights have been violated.

176.    The UFT-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

**H.     CSA's Arbitration Award Violated The Plaintiffs' Constitutional Rights**

177.    The CSA Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the CSA who did not take a COVID vaccine, thus violating the CSA members-Plaintiffs' constitutional rights to due process.

25

178.    The CSA Arbitration Award, although promulgated without any statutory or contractual authority, authorized the NYCDOE to suspend without pay the members of the CSA who did not take a COVID vaccine, thus the CSA members-Plaintiffs' constitutional property right in their pay.

179.    The CSA conspired with the NYCDOE to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

180.    Cannizzaro conspired with the NYCDOE to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

181.    The CSA conspired with Porter to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

182.    Cannizzaro conspired with Porter to have Scheinman promulgate the CSA Arbitration Award, even though Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award.

183.    As a result of the conspiracy between the CSA, NYCDOE, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

184.    As a result of the conspiracy between the CSA, Porter, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

185.    As a result of the conspiracy between the Cannizzaro, NYCDOE, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

186.    As a result of the conspiracy between the Cannizzaro, Porter, Scheinman, SAMS, and SAMS LLC, the CSA members-Plaintiffs' constitutional rights have been violated.

Case 23-655, Document 74, 06/05/2023, 3525006, Page186 of 281

187.    The CSA-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

**I.      DC37's Agreement With The NYCDOE Violated The Plaintiffs' Constitutional Rights**

188.    DC37's Agreement with the NYCDOE authorized the NYCDOE to suspend without pay the members of DC37 who did not take a COVID vaccine, thus violating the DC37 members-Plaintiffs' constitutional rights to due process.

189.    DC37's Agreement, authorized the NYCDOE to suspend without pay the members of DC37 who did not take a COVID vaccine, thus the DC37 members-Plaintiffs' constitutional property right in their pay.

190.    Local 372's Agreement with the NYCDOE authorized the NYCDOE to suspend without pay the members of Local 372 who did not take a COVID vaccine, thus violating the Local 372 members-Plaintiffs' constitutional rights to due process.

191.    Local 372's Agreement, authorized the NYCDOE to suspend without pay the members of Local 372 who did not take a COVID vaccine, thus the Local 372 members-Plaintiffs' constitutional property right in their pay.

192.    Local 1251's Agreement with the NYCDOE authorized the NYCDOE to suspend without pay the members of Local 1251 who did not take a COVID vaccine, thus violating the Local 372 members-Plaintiffs' constitutional rights to due process.

193.    Local 1251's Agreement, authorized the NYCDOE to suspend without pay the members of Local 1251 who did not take a COVID vaccine, thus the Local 1251 members-Plaintiffs' constitutional property right in their pay.

194.    DC37 conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

195.    Local 372 conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

196.    Local 1251 conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

197.    Garrido conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

198.    Francois conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

199.    Francis conspired with the NYCDOE by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

200.    DC37 conspired with Porter by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

201.    Local 372 conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

202.    Local 1251 conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

203.    Garrido conspired with Porter by entering into an agreement with the NYCDOE that violated the DC37 members-Plaintiffs' constitutional rights.

204.    Francois conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 372 members-Plaintiffs' constitutional rights.

205.    Francis conspired with Porter by entering into an agreement with the NYCDOE that violated the Local 1251 members-Plaintiffs' constitutional rights.

206.   As a result of the conspiracy between the DC37 and the NYCDOE, the DC37 members-Plaintiffs' constitutional rights have been violated.

207.   As a result of the conspiracy between the DC37 and Porter, the DC37 members-Plaintiffs' constitutional rights have been violated.

208.   As a result of the conspiracy between Garrido and the NYCDOE, the DC37 members-Plaintiffs' constitutional rights have been violated.

209.   As a result of the conspiracy between Garrido and Porter, the DC37 members-Plaintiffs' constitutional rights have been violated.

210.   As a result of the conspiracy between Local 372 and the NYCDOE, the Local 372 members-Plaintiffs' constitutional rights have been violated.

211.   As a result of the conspiracy between Local 372 and Porter, the Local 372 members-Plaintiffs' constitutional rights have been violated.

212.   As a result of the conspiracy between Francois and the NYCDOE, the Local 372 members-Plaintiffs' constitutional rights have been violated.

213.   As a result of the conspiracy between Francois and Porter, the Local 372 members-Plaintiffs' constitutional rights have been violated.

214.   As a result of the conspiracy between Local 1251 and the NYCDOE, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

215.   As a result of the conspiracy between Local 1251 and Porter, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

216.   As a result of the conspiracy between Francis and the NYCDOE, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

217.   As a result of the conspiracy between Francis and Porter, the Local 1251 members-Plaintiffs' constitutional rights have been violated.

218.    The DC37-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

219.    The Local 372-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

220.    The Local 1251-members-Plaintiffs have suffered without pay since on or about October 4, 2021 and continue every day in violation of their constitutional property right interest in their pay.

*****************

221.    The Plaintiffs' constitutional rights have been trampled on by the NYCDOE.

222.    The Plaintiffs' constitutional rights have been trampled on by Porter.

223.    The Plaintiffs' constitutional rights have been trampled on the UFT.

224.    The Plaintiffs' constitutional rights have been trampled on by Mulgrew.

225.    The Plaintiffs' constitutional rights have been trampled on by the CSA.

226.    The Plaintiffs' constitutional rights have been trampled on Cannizzaro.

227.    The Plaintiffs' constitutional rights have been trampled on by DC37.

228.    The Plaintiffs' constitutional rights have been trampled on by Garrido.

229.    The Plaintiffs' constitutional rights have been trampled on Local 372.

230.    The Plaintiffs' constitutional rights have been trampled on by Francois.

231.    The Plaintiffs' constitutional rights have been trampled on by Local 1251.

30

232. The Plaintiffs' constitutional rights have been trampled on by Francis.

233. The Plaintiffs' constitutional rights have been trampled on by Scheinman.

234. The Plaintiffs' constitutional rights have been trampled on by SAMS.

235. The Plaintiffs' constitutional rights have been trampled on by SAMS, LLC.

**J.    Class Allegations**

236. NYCDOE's suspension of the UFT members-Plaintiffs without pay without due process was pursuant to the illegal and unauthorized UFT Arbitration Award.

237. NYCDOE's suspension of the CSA members-Plaintiffs without pay without due process was pursuant to the illegal and unauthorized CSA Arbitration Award.

238. NYCDOE's suspension of the DC37 members-Plaintiffs without pay without due process was pursuant to the illegal and unauthorized DC37 agreement with the NYCDOE.

239. The decision by the NYCDOE to authorize Scheinman to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

240. The decision by the NYCDOE to authorize SAMS to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

241. The decision by the NYCDOE to authorize SAMS, LLC to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

242. The decision by the NYCDOE to authorize Scheinman to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

243. The decision by the NYCDOE to authorize SAMS to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

244.    The decision by the NYCDOE to authorize SAMS, LLC to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the NYCDOE.

245.    The decision by the NYCDOE to enter into the agreement with DC37 was pursuant to policies, customs, and/or practices of the NYCDOE.

246.    The decision by the NYCDOE to enter into the agreement with DC37 was pursuant to policies, customs, and/or practices of the NYCDOE.

247.    The decision by the NYCDOE to enter into the agreement with DC37 was pursuant to policies, customs, and/or practices of the NYCDOE.

248.    The decision by the UFT to authorize Scheinman to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the UFT.

249.    The decision by the UFT to authorize SAMS to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the UFT.

250.    The decision by the UFT to authorize SAMS, LLC to promulgate the UFT Arbitration Award was pursuant to policies, customs, and/or practices of the UFT.

251.    The decision by the CSA to authorize Scheinman to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the CSA.

252.    The decision by the CSA to authorize SAMS to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the CSA.

253.    The decision by the CSA to authorize SAMS, LLC to promulgate the CSA Arbitration Award was pursuant to policies, customs, and/or practices of the CSA.

254.    The decision by DC37 to enter into the agreement with the NYCDOE was pursuant to policies, customs, and/or practices of DC37.

**JA-992**

255.    The decision by DC37 to enter into the agreement with the NYCDOE was pursuant to policies, customs, and/or practices of the DC37.

256.    The decision by DC37 to enter into the agreement with the NYCDOE was pursuant to policies, customs, and/or practices of DC37.

257.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the UFT Arbitration Award was illegal and unenforceable.

258.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the CSA Arbitration Award was illegal and unenforceable.

259.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the agreement between the NYCDOE and DC37 was illegal and unenforceable.

260.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the NYCDOE's suspension of the Plaintiffs without pay without due process was illegal and a violation of the Plaintiffs' constitutional rights.

261.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order awarding the Plaintiffs back pay for the period of time that they were suspended without pay.

262.    Plaintiffs bring this Action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3).

263.    Plaintiffs seek a certification of a class defined as follows: All NYCDOE employees suspended without pay for not taking the COVID-19 vaccine who have a statutory or contractual right to charges and a hearing before the employee is disciplined or terminated.

264.    Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical.  Plaintiffs do not know the exact number of

class members.  Plaintiffs are informed and believe, and thereupon allege that there are more than 100 persons in the class defined above.

265.   Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are question of law and fact common to the class, including but not limited to:

(a)   Whether a NYCDOE tenured principal, assistant principal, or teacher possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

(b)   Whether a NYCDOE employee possessing N.Y. Civil Service Law § 75 possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

(c)   Whether a NYDOE employee whose collective bargaining agreement with the NYDOE grants the union member the right to charges and a hearing before discipline or termination possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

(d)   Whether a NYCDOE tenured principal, assistant principal, or teacher possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.;

(e)   Whether a NYCDOE employee possessing N.Y. Civil Service Law § 75 possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.;

(f)   Whether a NYDOE employee, whose collective bargaining agreement with the NYDOE grants the union member the right to charges and a hearing before discipline or termination possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.

266.   Pursuant to Federal Rules of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent.  The Plaintiffs have all been suspended without pay without due process.  Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class.  Each proposed class member suffered actual damages as a result of the challenged conduct.  Plaintiffs' claims arose because of the NYCDOE's policies, customs, and/or practices.

267.    Plaintiffs' claims arose because of the UFT's policies, customs, and/or practices.

268.    Plaintiffs' claims arose because of the CSA's policies, customs, and/or practices.

269.    Plaintiffs' claims arose because of the DC37's policies, customs, and/or practices.

270.    Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this Action against Defendants.  Counsel knows of no conflicts among members of the class, or between counsel and any members of the class.

271.    Pursuant to Federal Rules of Civil Procedure 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  If this action is certified as a class action, Plaintiffs contemplate that individual notice will be given to class members, at such last known address by first class mail, as well as notice by publication informing them of the following:

   i.    The pendency of the class action and the issues common to the class;

   ii.    The nature of the action;

   iii.    Their right to "opt-out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

   iv.    Their right to "opt-out" to be represented by their own counsel and to enter an appearance in the case; otherwise they will be represented by the named class plaintiffs and their counsel; and

   v.    Their right, if they do not "opt-out" to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

35

## III.   CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

272.   The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 271, as if fully set forth herein.

273.   The Plaintiffs are tenured employees of the NYCDOE who have statutory rights to due process pursuant to N.Y. Education Law § 3020.

274.   The Plaintiffs are employees that possess N.Y. Civil Service Law § 75 rights.

275.   The Plaintiffs are employee-union members entitled to charges and a hearing pursuant to their union's collective bargaining agreement with the NYCDOE.

276.   The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights.

277.   There is an actual controversy over whether what the NYCDOE did to the Plaintiffs, namely suspend the Plaintiffs without pay and without due process violating the Plaintiffs' Fourteenth Amendment rights.

278.   The Plaintiffs request an Order declaring that what the NYCDOE did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and violating the Plaintiffs' property right in their pay without due process.

279.   The Plaintiffs have no adequate remedy at law.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

280.   The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 279, as if fully set forth herein.

281.    There was no statutory authority for Scheinman to promulgate the UFT Arbitration Award.

282.    There was no contractual authority for Scheinman to promulgate the UFT Arbitration Award.

283.    Pursuant to N.Y. Civil Service Law § 209, Scheinman was appointed by PERB to mediate the impasse negotiations between the UFT and the NYCDOE regarding the impact of the COVID Vaccine Order.

284.    Pursuant to N.Y. Civil Service Law § 209.3(f), there is no statutory authority for binding arbitration between a school district and a union to resolve an impasse in negotiations.

285.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and the NYCDOE relies upon the UFT Arbitration Award as the basis for the Plaintiffs' suspension without pay.

286.    There is an actual controversy over the statutory and/or contractual authority Scheinman had to promulgate the UFT Arbitration Award.

287.    The Plaintiffs request an Order declaring that the UFT Arbitration Award was promulgated without any statutory authority.

288.    The Plaintiffs request an Order declaring that the UFT Arbitration Award was promulgated without any contractual authority.

289.    The Plaintiffs request an Order declaring that since the UFT Arbitration Award was promulgated without any statutory and/or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

290.    The Plaintiffs have no adequate remedy at law.

**JA-997**

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

291.     The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 290, as if fully set forth herein.

292.     There was no statutory authority for Scheinman to promulgate the CSA Arbitration Award.

293.     There was no contractual authority for Scheinman to promulgate the CSA Arbitration Award.

294.     The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and the NYCDOE relies upon the CSA Arbitration Award as the basis for the Plaintiffs' suspension without pay.

295.     There is an actual controversy over the statutory and/or contractual authority Scheinman had to promulgate the CSA Arbitration Award.

296.     The Plaintiffs request an Order declaring that the CSA Arbitration Award was promulgated without any statutory authority.

297.     The Plaintiffs request an Order declaring that the CSA Arbitration Award was promulgated without any contractual authority.

298.     The Plaintiffs request an Order declaring that since the CSA Arbitration Award was promulgated without any statutory and/or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

299.     The Plaintiffs have no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

300.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 299, as if fully set forth herein.

301.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and the NYCDOE relies upon the agreement between DC37 and the NYCDOE as the basis for the Plaintiffs' suspension without pay.

302.    There is an actual controversy over the contractual authority DC37 and the NYCDOE had to enter into the agreement.

303.    The Plaintiffs request an Order declaring that the agreement between DC37 and the NYCDOE was entered into without any contractual authority.

304.    The Plaintiffs request an Order declaring that the agreement between DC37 and the NYCDOE was entered into without any contractual authority and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

305.    The Plaintiffs have no adequate remedy at law.

## AS AND FOR A FIFTH CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

306.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 305, as if fully set forth herein.

307.    The UFT Arbitration Award granted UFT members the option to choose, by November 30, 2021, to be placed on leave without pay due to vaccination status and if they do so, the UFT members would continue to receive health insurance through the NYCDOE. *See,* **Exhibit E**, at Section III.B.

308.    "In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the [NYC] DOE which includes a waiver of the employee's rights to challenge the employee's resignation, including, but not limited to, through a contractual or statutory disciplinary process." **Exhibit E**, at Section III.B.

309.    The form created by the NYCDOE not only included the "waiver of the employee's rights to challenge the employee's resignation, including, but not limited to, through a contractual or statutory disciplinary process", but also included a general release of "the [NYC]DOE and any of its present or former employees or agents (collectively the "Release Parties"), from any and all claims, liabilities, or causes of action which were or could have been asserted by me against any of the Release Parties based upon anything that has happened up to now and including the date of the execution of this Attestation, including, but not limited to, any right or claim that may exist or arise up to and including the date that this Attestation is signed." **Exhibit N**, a copy of the waiver ("Release").

310.    The form created by the NYCDOE stated that "[i]n exchange for the right to return and extended health benefits as set forth herein" the UFT member was required to execute the Release. **Exhibit N**.

311.    In addition, the form created by the NYCDOE included language regarding the Older Workers Benefit Protection Act ("OWBPA"). *See,* **Exhibit N**.

312.    Despite stating that the Plaintiffs had twenty-one (21) days to review the Release (**Exhibit N**), the first and only time the Plaintiffs could review the Release was when they clicked on the choice to extend their leave of absence without pay to September 2022.

313.    The Plaintiffs were not afforded the twenty-one (21) days to review the Release as required by the OWBPA.

314.    The Release that the NYCDOE required UFT members to extend their leave without pay and maintain health insurance conflicts with the UFT Arbitration Award because the UFT Arbitration Award did not require UFT members to execute a general release of the NYCDOE in order to extend their leave without pay and/or maintain their health insurance.

315.    The following Plaintiffs executed the Release under duress to obtain the extended leave without pay and their health insurance through September 2022: Martino, Ciacca-Liss, Hagan, Trapani, Masullo, Klapakis, Hartz, Schmitter, Lotito, Mosely, Blasis-Maring, Meagan, Joergens, and Shaya (collectively referred to as "Releasing Plaintiffs").

316.    The Release Plaintiffs are all UFT members.

317.    The Releasing Plaintiffs repudiate the Release.

318.    The Releasing Plaintiffs request an Order declaring that the Release in the form created by the NYCDOE violated the UFT Arbitration Award and is therefore voidable.

319.    The Releasing Plaintiffs request an Order declaring that the Release void and unenforceable.

320.    The Releasing Plaintiffs have no adequate remedy at law.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR PERMANENT INJUNCTION

321.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 320, as if fully set forth herein.

322.    The Plaintiffs have a high likelihood of success on the merits because the Plaintiffs possess a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution.

323.    The Plaintiffs have a high likelihood of success on the merits because the Plaintiffs possess a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.

324.    The Plaintiffs have a high likelihood of success on the merits because the NYCDOE has violated their property-based, procedural due process right to their pay.

41

325.    The Plaintiffs have a high likelihood of success on the merits because the NYCDOE has violated their procedural due process to their jobs.

326.    The violation of the Plaintiffs' constitutional rights constitutes irreparable harm.

327.    Without a permanent injunction, the Plaintiffs will have no adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NYCDOE, PORTER, UFT, MULGREW, SCHEINMAN, SAMS, and SAMS, LLC

328.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 327, as if fully set forth herein.

329.    The NYCDOE is a State actor.

330.    Porter is a State actor.

331.    The UFT conspired with the NYCDOE to have Scheinman issue the UFT Arbitration Award.

332.    The UFT conspired with the NYCDOE to have SAMS issue the UFT Arbitration Award.

333.    The UFT conspired with the NYCDOE to have SAMS, LLC issue the UFT Arbitration Award.

334.    Scheinman, SAMS, and SAMS, LLC conspired with the UFT and the NYCDOE to grant to SAMS and SAMS, LLC authority to determine appeals from determinations regarding exemptions for religious and/or disability.

335.    The UFT Arbitration Award, in a form of kickback scheme, granted Scheinman, SAMS, and SAMS, LLC additional business at the expense of the Plaintiffs' constitutional rights.

336.    Scheinman did not have any statutory authority to issue the UFT Arbitration Award.

337.    Scheinman did not have any contractual authority to issue the UFT Arbitration Award.

338.    The UFT Arbitration Award was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution.

339.    The UFT, Mulgrew, Scheinman, SAMS, and SAMS, LLC conspired with the NYCDOE and Porter to provide the NYCDOE and Porter with a basis to suspend the Plaintiffs without pay even though there was no statutory or contractual basis for the UFT Arbitration Award.

340.    The NYCDOE through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

341.    The UFT conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

342.    The UFT conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

Case 23-655, Document 74, 06/05/2023, 3525006, Page203 of 281

343.    The UFT conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

344.    Mulgrew conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

345.    Mulgrew conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

346.    Mulgrew conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

347.    The NYCDOE conspired with the UFT to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

348.    The NYCDOE conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

349.    The NYCDOE conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y.

Case 23-655, Document 74, 06/05/2023, 3525006, Page204 of 281

Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

350. Porter conspired with the UFT to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

351. Porter conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

352. Porter conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

353. The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

354. The NYCDOE is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

355. But-for the UFT Arbitration Award, the NYCDOE would not have had any justification for the violation of the Plaintiffs' constitutional rights.

356. The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in their jobs, and could not be suspended without pay without due process.

Case 23-655, Document 74, 06/05/2023, 3525006, Page205 of 281

357.    As a result of the illegal and unauthorized UFT Arbitration Award, the NYCDOE has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected property interest.

358.    The NYCDOE, Porter, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Porter, John Doe and Jane Doe.

359.    The NYCDOE and Porter in a conspiracy with the UFT, Mulgrew, Scheinman, SAMS and SAMS, LLC acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

360.    As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, being subjected to scandalous claims and investigations and have suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to their reputation.

361.    As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continues to suffer suspension, leave of absence, diminished employment, and have suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

362.    As a result of the conspiracy between the NYCDOE, Porter, the UFT, Mulgrew, Scheinman, SAMS, and SAMS, LLC, Plaintiffs suffered and are entitled to, damage sustained to

46

Case 23-655, Document 74, 06/05/2023, 3525006, Page206 of 281

date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

363.    As a result of the NYCDOE's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NYCDOE, PORTER, CSA, CANNIZZARO , SCHEINMAN, SAMS, and SAMS, LLC

364.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 363, as if fully set forth herein.

365.    The NYCDOE is a State actor.

366.    Porter is a State actor.

367.    The CSA conspired with the NYCDOE to have Scheinman issue the CSA Arbitration Award.

368.    The CSA conspired with the NYCDOE to have SAMS issue the CSA Arbitration Award.

369.    The CSA conspired with the NYCDOE to have SAMS, LLC issue the CSA Arbitration Award.

370.    Scheinman, SAMS, and SAMS, LLC conspired with the CSA and the NYCDOE to grant to SAMS and SAM, LLC authority to determine appeals from determinations regarding exemptions for religious and/or disability.

371.   The CSA Arbitration Award, in a form of kickback scheme, granted Scheinman, SAMS, and SAMS, LLC additional business at the expense of the Plaintiffs' constitutional rights.

372.   Scheinman did not have any statutory authority to issue the CSA Arbitration Award.

373.   Scheinman did not have any contractual authority to issue the CSA Arbitration Award.

374.   The CSA Arbitration Award was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

375.   The CSA, Cannizzaro, Scheinman, SAMS, and SAMS, LLC conspired with the NYCDOE and Porter to provide the NYCDOE and Porter with a basis to suspend the Plaintiffs without pay even though there was no statutory or contractual basis for the UFT Arbitration Award.

376.   The NYCDOE through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

377.   The CSA conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

378.   The CSA conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y.

Case 23-655, Document 74, 06/05/2023, 3525006, Page208 of 281

Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

379.   The CSA conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the UFT and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

380.   Cannizzaro conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

381.   Cannizzaro conspired with Scheinman and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

382.   Cannizzaro conspired with SAMS and SAMS LLC and the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

383.   The NYCDOE conspired with the CSA to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

384.   The NYCDOE conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

385.    The NYCDOE conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

386.    Porter conspired with the CSA to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

387.    Porter conspired with Scheinman to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

388.    Porter conspired with SAMS and SAMS, LLC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the CSA and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

389.    The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

390.    The NYCDOE is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

391.    But-for the CSA Arbitration Award, the NYCDOE would not have had any justification for the violation of the Plaintiffs' constitutional rights.

392.    The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in his job, and could not be suspended without pay without due process.

393.    As a result of the illegal and unauthorized CSA Arbitration Award, the NYCDOE has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

394.    The NYCDOE, Porter, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Porter, John Doe and Jane Doe.

395.    The NYCDOE and Porter in a conspiracy with the CSA, Cannizzaro, Scheinman, SAMS and SAMS, LLC acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

396.    As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, being subjected to scandalous claims and investigations and have suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to their reputation.

397.    As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continues to suffer suspension, leave of absence, diminished employment, and have suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

Case 23-655, Document 74, 06/05/2023, 3525006, Page211 of 281

398.    As a result of the conspiracy between the NYCDOE, Porter, the CSA, Cannizzaro, Scheinman, SAMS, and SAMS, LLC, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

399.    As a result of the NYCDOE's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

Case 23-655, Document 74, 06/05/2023, 3525006, Page212 of 281

## AS AND FOR A NINTH CAUSE OF ACTION
### FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NYCDOE, PORTER, DC37, GARRIDO, LOCAL 372, FRANCOIS, LOCAL 1251, and FRANCIS

400.     The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 399, as if fully set forth herein.

401.     The NYCDOE is a State actor.

402.     Porter is a State actor.

403.     DC37 conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

404.     Garrido conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

405.     Local 372 conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

406.     Francois conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

407.     Local 1251 conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

408.     Francis conspired with the NYCDOE to enter into an agreement with the NYCDOE that resulted in a violation of the Plaintiffs' constitutional rights.

409.     The agreement between DC37 and the NYCDOE was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

410.    The agreement between Local 372 and the NYCDOE was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

411.    The agreement between Local 1251 and the NYCDOE was the cover given to the NYCDOE to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

412.    The DC37, Garrido, Local 372, Francois, Local 1251, and Francis conspired with the NYCDOE and Porter to provide the NYCDOE and Porter with a basis to suspend the Plaintiffs without pay even though the agreement between DC37 and the NYCDOE violated the Plaintiffs' constitutional rights.

413.    The NYCDOE through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

414.    DC37 conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

415.    Local 372 conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

416.    Local 1251 conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service

Case 23-655, Document 74, 06/05/2023, 3525006, Page214 of 281

**JA-1014**

Law § 75) or by contract (collective bargaining agreements between the Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

417.    Garrido conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

418.    Francois conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

419.    Francis conspired with the NYCDOE to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between the Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

420.    The NYCDOE conspired with DC37 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

421.    The NYCDOE conspired with Local 372 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

422.    The NYCDOE conspired with Local 1251 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

Case 23-655, Document 74, 06/05/2023, 3525006, Page215 of 281

423.   Porter conspired with DC37 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between DC37 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

424.   Porter conspired with Local 372 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 372 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

425.   Porter conspired with Local 1251 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or by contract (collective bargaining agreements between Local 1251 and the NYCDOE) under the Fourteenth Amendment of the United States Constitution.

426.   The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

427.   The NYCDOE is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

428.   But-for the agreement between the DC37 and NYCDOE, the NYCDOE would not have had any justification for the violation of the Plaintiffs' constitutional rights.

429.   The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in his job, and could not be suspended without pay without due process.

430.   As a result of the DC37 and the NYCDOE, the NYCDOE has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

431.   The NYCDOE, Porter, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Porter, John Doe and Jane Doe.

432.   The NYCDOE and Porter in a conspiracy with DC37, Garrido, Local 372, Francois, Local 1251, and Francis acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

433.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, being subjected to scandalous claims and investigations and have suffered and continue to suffer distress, humiliation, great expense, embarrassment, and damages to their reputation.

434.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer suspension, leave of absence, diminished employment, and have suffered and continue to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

435.   As a result of the conspiracy between the NYCDOE, Porter, DC37, Garrido, Local 372, Francois, Local 1251, and Francis, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

JA-1017

436.    As a result of the NYCDOE's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

**AS AND FOR A TENTH CAUSE OF ACTION
FOR DIRECT PARTICIPATION AND AIDING AND ABETTING IN VIOLATION OF
42 U.S.C. § 1983 AGAINST PORTER, MULGREW, CANNIZZARO, GARRIDO,
FRANCOIS, FRANCIS, SCHEINMAN, JOHN DOE AND JANE DOE**

437.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 436, as if fully set forth herein.

438.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively did foster and encourage the NYCDOE to violate the Plaintiffs' constitutional rights.

439.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively, jointly and severally, violated the Plaintiffs' constitutional rights when they failed to stop the NYCDOE from suspending the Plaintiffs without pay without due process.

440.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively knew and had reason to know that the NYCDOE violated the Plaintiffs' constitutional rights when the NYCDOE suspended the Plaintiffs without pay without due process.

441.    Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe, individually and collectively jointly and severally, did foster and encourage the NYCDOE to violate the Plaintiffs' constitutional rights by suspending the Plaintiffs without pay without due process.

442.    Based on the foregoing, the Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe directly participated in and/or tacitly condoned the violation of the Plaintiffs' constitutional rights, violating 42 U.S.C. § 1983.

**WHEREFORE,** the Plaintiffs demand judgment:

(1)     on the First Cause of Action for a declaratory judgment, declaring that what the NYCDOE did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and to their pay without due process;

(2)     on the Second Cause of Action for a declaratory judgment, declaring that: (a) the UFT Arbitration Award was promulgated without any statutory authority; (b) the UFT Arbitration Award was promulgated without any contractual authority; and (c) since the UFT Arbitration Award was promulgated without any statutory or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay;

(3)     on the Third Cause of Action for a declaratory judgment, declaring that: (a) the CSA Arbitration Award was promulgated without any statutory authority; (b) the CSA Arbitration Award was promulgated without any contractual authority; and (c) since the CSA Arbitration Award was promulgated without any statutory or contractual authority, and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay;

(4)     on the Fourth Cause of Action for a declaratory judgment, declaring that: (a) the agreement between DC37 and the NYCDOE was entered into

without any contractual authority; and (b) the agreement between DC37 and the NYCDOE was entered into without any contractual authority and therefore, the NYCDOE's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay;

(5)    on the Fifth Cause of Action for a declaratory judgment, declaring that: (a) that the Release in the form created by the NYCDOE violated the UFT Arbitration Award and is therefore voidable; and (b) the Release void and unenforceable.

(6)    on the Sixth Cause of Action for a permanent injunction, enjoining the NYCDOE from violating the Plaintiffs' constitutional rights;

(7)    on the Seventh Cause of Action for violation of 42 U.S.C. § 1983 against the NYCDOE, Porter, UFT, Mulgrew, Scheinman, SAMS, and SAMS, LLC for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial;

(8)    on the Eighth Cause of Action for violation of 42 U.S.C. § 1983 against the NYCDOE, Porter, CSA, Cannizzaro, Scheinman, SAMS, and SAMS, LLC for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial;

(9)    on the Ninth Cause of Action for violation of 42 U.S.C. § 1983 against the NYCDOE, Porter, DC37, Garrido, Local 372, Francois, Local 1251 and Francis for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial;

JA-1020

(10)    on the Tenth Cause of Action for violation of 42 U.S.C. § 1983 against Porter, Mulgrew, Cannizzaro, Garrido, Francois, Francis, Scheinman, John Doe, and Jane Doe for direct participation in and aiding and abetting of the violation of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial; and

(11)    on all causes of action, an award of attorneys' fees, and costs; and

(12)    such other and further relief the Court deems just and fair.

Dated:    Carle Place, New York
           January 10, 2022

*Austin Graff*
_____
Austin Graff
THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

JA-1021



## About the UFT



Marvin Jones

Outside the U.S. Supreme Court in Washington, D.C., hundreds of public-sector union members protested the attack on workers' rights as oral arguments in the Friedrichs v. California Teachers Association case were taking place inside the courthouse.

The UFT, which represents nearly 200,000 members, is the sole bargaining agent for most of the non-supervisory educators who work in the New York City public schools. We represent approximately 75,000 teachers and 19,000 classroom paraprofessionals, along with school secretaries, attendance teachers, school counselors, psychologists, social workers, adult education teachers, administrative law judges, nurses, laboratory technicians, speech therapists, family child care providers and 64,000 retired members. We also represent teachers and other employees at a number of private educational institutions and some charter schools.

The Federation of Nurses/UFT represents some 2,800 registered nurses of the New York City Visiting Nurse Service and several private New York City hospitals and health care institutions.

## UFT governance structure

The twelve officers, elected for three-year terms, are

- the president;
- six vice presidents selected at large (including one each from elementary, junior high/intermediate, academic high and career and technical high schools, special education and non-DOE members);
- secretary and assistant secretary;
- treasurer and assistant treasurer.

The union has an office in each borough and fields a borough representative for each borough and a district representative for each community school district, high school district and District 75.

Each school has a chapter leader elected by the members of that school. In addition, there are "functional chapters" to represent non-teacher members, each with a chapter leader elected citywide.

The UFT has three governing bodies. The 3,400-member Delegate Assembly is the union's legislature, with elected representatives

JA-1022

from every school. The 102-member elected Executive Board sets policy on a variety of education, labor and union issues. The Administrative Committee, composed of the eleven officers, borough representatives and selected department heads, oversees day-to-day operations.

## UFT office locations

The UFT's central headquarters is located at 50/52 Broadway in Manhattan. There are also UFT offices in each of the five boroughs where members can go to get help with certification, licensing, salaries, grievances and pensions.

Each UFT borough office is open from 10 a.m. to 6 p.m., Monday through Friday, when school is in session. To better serve members, each office is open until 7 p.m. at least one day a week.

Get directions to UFT headquarters and the UFT borough offices »

## UFT union affiliations

The UFT was founded in 1960 as Local 2 of the now 1.4 million-member American Federation of Teachers (AFT). Our union is also affiliated with the 600,000-member New York State United Teachers (NYSUT) and a member of the AFL-CIO and the New York City Central Labor Council.

**Source URL:** *https://www.uft.org/your-union/about-uft*

Search...



**What Is CSA?**

CSA History

Advisory Committee

Executive Board

District Chairs

Field Service Teams

Central Office Staff

**WHO WE ARE**

The Council of School Supervisors and Administrators is the collective bargaining unit for 6,100 Principals, Assistant Principals, Supervisors and Education Administrators who work in the NYC public schools and 200 Directors and Assistant Directors who work in city-subsidized Centers for Early Childhood Education (ECE). CSA also has more than 10,000 members in its Retiree Chapter.

**OUR VISION**

Through our collective strength and unity, our members engage in a rewarding and distinguished profession while maintaining a respectable quality of life.

**OUR MISSION**

To effectively communicate and engage with all members and ensure that their concerns are appropriately addressed.

JA-1024

To continually strengthen the public image of New York City school leaders. To ensure that all collective bargaining rights, wages and benefits, and working conditions of all our members are protected and fairly negotiated. To Provide the students of New York City with a well-rounded education of the highest quality.

**WHAT WE DO**

On behalf of its members, CSA negotiates salary, benefits and working conditions related to the administration and supervision of NYC public schools. CSA monitors the enforcement of its contract with the city and fights for members' legal rights. CSA also provides exemplary professional development for its members through the Executive Leadership Institute, a non-profit branch of the union. CSA offers confidential mentoring to individual members through the Supervisory Support Program, a professional development program provided through the union's contract.

CSA is Local 1 of the American Federation of School Administrators (AFSA), AFL-CIO, located in Washington, DC. CSA is also affiliated with the NYS Federation of School Administrators (NYSFSA), which is, in turn, a member of the NYS School Administrators Consortium (NYSSAC).

ABOUT CSA
WHAT IS CSA?
CSA HISTORY
ADVISORY COMMITTEE
EXECUTIVE BOARD
DISTRICT CHAIRS
FIELD SERVICES TEAMS
CENTRAL OFFICE STAFF

FOR CSA MEMBERS
DOE MEMBERS
ECE MEMBERS
Welfare Fund
SUPERVISORY SUPPORT PROGRAM
CSA TRAVEL DESK

PRESS
CSA NEWS
WHAT'S NEW
COMMUNICATIONS
RELATED WEBSITES

EXECUTIVE LEADERSHIP INSTITUTE
ELI WEBSITE
OTHER

CONTACT US
PRESIDENT'S CORNER
POLITICAL ACTION

What Is CSA? - CSA



COUNCIL OF SCHOOL SUPERVISORS AND ADMINISTRATORS | 40 RECTOR STREET | 12TH FLOOR | NEW YORK, NY 10006 | (212) 823-2020

© 2017 CSA NYC PRIVACY POLICY

JA-1026



## About Us

Home ☐ About Us ☐ Locals ☐ Local 372

# Local 372 NYC Board of Education Employees

**President**

Shaun D. Francois I

**Telephone Number**

212-815-1050

**Website**

www.local372.com



**We Work As**

Community Assistant, Community Associate, Community Coordinator, Consumer Advocates, Family Assistant, Family Associate, Family Auxiliaries, Family Auxiliary Paraprofessionals, Family Worker, Film Inspection Assistant, Health Aide, Health Service Aides, Instructor of Addiction, Junior School Neighborhood Worker, Parent Program Assistant, Principal School Neighborhood Worker, School Aide, School Crossing Guard, School Health Service Aide, School Lunch Aide, School Lunch Assistant, School Lunch Assistant (Cook), School Lunch Helper, School Lunch Loader & Handler, School Neighborhood Worker, School Neighborhood Worker (Task Force Monitors), Senior School Lunch Aide, Senior School Lunch Aide (Cook), Senior School Lunch Helper, Senior School Neighborhood Worker, Senior School Neighborhood Worker (Aide), Substitute School Lunch Helper, Substitute Senior School Lunch Helper, Substance Abuse Prevention & Intervention Specialist and Task Force Monitor. Local 372 members work in a variety of job titles and at different levels. This is just a brief description of who we are and how we help make this city run.

**We Work In**

JA-1027

Local 372, NYC Board of Education Employees

The New York City Department of Education and the New York City Police Department.

**Share this:**

☐ Facebook   ☐ Twitter   ☐ LinkedIn   ☐ Email   ☐ Google   ☐ Print

## ABOUT US

- **Contact Us**
- **Leadership**
- **Divisions**
- **Locals**
- **Retirees**
- **Committees**
- **Constitution**
- **Code of Ethics**
- **History**
- **WE NEVER QUIT**

## DC 37 BLOG

### Met Museum Restores Vacation to Local 1503 Guards

December 23, 2021

By DIANE S. WILLIAMS Local 1503 settled a grievance on behalf of 80 Security Officers and Senior Security Officers at the Metropolitan Museum of Art after management denied them an opportunity to schedule their vacations. Additionally, the Met had robbed 40 guards of their vacation time when management forfeited their accrued leave time In October, […]

### NYS Paid Family Leave Gives Dad Bonding Time With New Son

December 22, 2021

By DIANE S. WILLIAMS DC 37 members attended three virtual Paid Family Leave (PFL) workshops sponsored by the Center for Parental Leadership to learn more about the program that pays city workers a partial salary as they put family first. The workshop also discussed steps for planning for leave. New York State's Paid Family […]

### Local 1501 Grievance Victory Creates 11 Full-Time Jobs at Wildlife Conservation Society

December 21, 2021

By DIANE S. WILLIAMS Local 1501 cleared a career path for the Wildlife Conservation Society's lowest paid workers when it settled a grievance that creates 11 Unit Manager jobs and curtails the WCS's extended use of nonunion seasonal staff. "For too long the WCS has scheduled seasonal employees to work four, eight and even 12 months […]

### MELS COVID-19 UPDATE: New York State Homeowners Assistance Fund – Up to $50,000 Available for Distressed Home, Coop and Condo Owners

December 20, 2021

Homeowners at risk of foreclosure or displacement due to a financial hardship suffered as a result of the COVID-19 pandemic may be eligible for up to $50,000.00 through the New York State Homeowner Assistance Fund. Applications open as of January 3, 2022. To qualify you must be: Residing in the home, coop or condo; and […]

 Follow The DC 37 Blog

| ABOUT DISTRICT COUNCIL 37 | QUICK LINKS | | CONNECT WITH DC 37 |
|---|---|---|---|

DC 37 is New York City's largest public employee union, represents about 150,000 members and 50,000 retirees. Our members help make New York run by working in over 1,000 titles – everything from Accountants to Zookeepers.

District Council 37, AFSCME, AFL-CIO
125 Barclay Street, New York, NY 10007

Leadership

Media

DC 37

Organizing

Contact Us

Sitemap

Privacy Policy

Health Benefits

Education

Benefits

DC 37 Services

Civil Service

Exams

Economic

Contract

Politics

Become A DC 37 Member:
Click Here To Join

Copyright © District Council 37

JA-1029



✉ **SIGN UP** For DC 37 News                                    ✕

🅕  🐦  ▶  📷

**District Council 37** AFSCME AFL-CIO  New York City's Largest Public Employee Union

News & Events Info: (212) 815-7555

| HOME | ABOUT | ORGANIZING | NEWSROOM | BENEFITS |
|------|-------|-----------|----------|----------|

| SERVICES | CONTRACTS | POLITICS | CONTACT US |
|----------|-----------|----------|-----------|

**LATEST NEWS ❯**     Engage and empower our union! To volunteer in Community

[SEARCH THIS SITE]

# About Us

Home ＞ About Us ＞ Locals ＞ Local 1251

## Local 1251
## NYC Board of Education Clerical-Administrative Employees

**President**

Francine Francis

**Telephone Number**

212-815-1060

**We Work As**

Clerical Aides, Clerical Associates, Secretaries, Investigators and Interpreters. Local 1251 members work in a variety of job titles and at different levels. This is just a brief description of who we are and how we help make this city run.

**We Work In**

The Department of Education and the School Construction Authority.

---

**Share this:**

### ABOUT US

- **Contact Us**
- **Leadership**
- **Divisions**
- **Locals**
- **Retirees**
- **Committees**
- **Constitution**
- **Code of Ethics**
- **History**
- **WE NEVER QUIT**

### DC 37 BLOG

**Met Museum Restores Vacation to Local 1503 Guards**

December 23, 2021

12/27/21, 12:59 AM    Case 1:21-cv-06387-KAM-LB    Document 43-4    Filed 01/10/22    Page 2 of 5 PageID #: 1656
                      Local 1251, NYC Board of Education, Clerical-Administrative Employees



SIGN UP For DC 37 News    ✕

settled a grievance on behalf of 80 Security Officers and Senior Security Officers at the Metropolitan Museum of Art after management denied them an opportunity to schedule their vacations. Additionally, the Met had robbed 40 guards of their vacation time when management forfeited their accrued leave time In October, […]

### NYS Paid Family Leave Gives Dad Bonding Time With New Son

December 22, 2021

By DIANE S. WILLIAMS DC 37 members attended three virtual Paid Family Leave (PFL) workshops sponsored by the Center for Parental Leadership to learn more about the program that pays city workers a partial salary as they put family first. The

12/27/21, 10:59 AM    Case 1:21-cv-06387-KAM-LB    Document 43-4 of Education Clerical Administrative Employee...    Filed 01/10/22    Page 3 of 5 PageID #: 1657



SIGN UP For DC 37 News                                ✕

planning for leave. New
York State's Paid
Family […]

### Local 1501 Grievance Victory Creates 11 Full-Time Jobs at Wildlife Conservation Society

December 21, 2021

By DIANE S.
WILLIAMS Local 1501
cleared a career path
for the Wildlife
Conservation Society's
lowest paid workers
when it settled a
grievance that creates
11 Unit Manager jobs
and curtails the WCS's
extended use of
nonunion seasonal
staff. "For too long the
WCS has scheduled
seasonal employees to
work four, eight and
even 12 months […]

### MELS COVID-19 UPDATE:



SIGN UP For DC 37 News ✕

### Homeowners Assistance Fund – Up to $50,000 Available for Distressed Home, Coop and Condo Owners

December 20, 2021

Homeowners at risk of foreclosure or displacement due to a financial hardship suffered as a result of the COVID-19 pandemic may be eligible for up to $50,000.00 through the New York State Homeowner Assistance Fund. Applications open as of January 3, 2022. To qualify you must be: Residing in the home, coop or condo; and […]

Follow The DC 37 Blog

 **SIGN UP** For DC 37 News &#10005;

DC 37 is New York City's
largest public employee
union, represents about
150,000 members and
50,000 retirees. Our
members help make New
York run by working in over
1,000 titles – everything from
Accountants to Zookeepers.

District Council 37, AFSCME,
AFL-CIO
125 Barclay Street, New
York, NY 10007

Leadership

Media

DC 37
Organizing

Contact Us

Sitemap

Privacy
Policy

Health
Benefits

Education
Benefits

DC 37
Services

Civil
Service

Exams

Economic

Contract

Politics









Copyright © District Council 37



### SCHEINMAN
ARBITRATION & MEDIATION SERVICES

September 10, 2021

**Via E-Mail Only**
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:   **Board of Education of the City School District of the City of New York**
      **and**
      **United Federation of Teachers, Local 2, AFT, AFL-CIO**
      **(Impact Bargaining)**

Dear Counsel:

Enclosed please find my Award in the above referenced matter.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

```
-------------------------------- X
In the Matter of the Arbitration
                                 X
            between
                                 X
BOARD OF EDUCATION OF THE CITY              Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF   X
NEW YORK
                                 X
            "Department"
                                 X
        -and-
                                 X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO            X

            "Union"              X

-------------------------------- X
```

**APPEARANCES**

> **For the Department**
>   Renee Campion, Commissioner of Labor Relations
>   Steven H. Banks, Esq., First Deputy Commissioner
>   and General Counsel of Labor Relations

> **For the Union**
> STROOCK & STROOCK & LAVAN, L.L.P.
>     Alan M. Klinger, Esq.

> Beth Norton, Esq., UFT General Counsel
> Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**JA-1036**

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

**JA-1037**

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning.  They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters.  In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate.  That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits.  This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions.  They did so.  Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate.  I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I.    Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

   A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

considerations for COVID-19 vaccination.  Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

**JA-1043**

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

Case 23-655, Document 74, 06/05/2023, 3525006, Page246 of 281

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

Case 23-655, Document 74, 06/05/2023, 3525006, Page247 of 281

**JA-1047**

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. <u>Leave</u>

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

**JA-1048**

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i.  Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii.  No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii.  Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

Case 23-655, Document 74, 06/05/2023, 3525006, Page249 of 281

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

> vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III.   Separation

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.   An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

**JA-1052**

contained, herein, all parties retain all legal rights at all times relevant, herein.

September /0 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK      )
                       )   ss.:
COUNTY OF NASSAU       )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September /0 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18



**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

September 15, 2021

<u>**Via E-Mail Only**</u>
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

David N. Grandwetter, Esq., General Counsel
Mark Cannizzaro, President
Council of Supervisors and Administrators
40 Rector Street, 12th Floor
New York, NY 10006

Re:   **Board of Education of the City School District of the City of New York
and
Council of Supervisors and Administrators
(Impact Bargaining)**

Dear Counsel:

Enclosed please find my Award in the above referenced matter.

Thank you.

Sincerely,

*Martin F. Scheinman*

MFS/sk
BOE-CSA-Impact Bargaining.tmos

```
-------------------------------- X
In the Matter of the Arbitration
                                 X
             between
                                 X
BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF   X        Re: Impact Bargaining
NEW YORK
                                 X
             "Department"
                                 X
             -and-
                                 X
COUNCIL OF SUPERVISORS
AND ADMINISTRATORS               X

               "Union"           X

-------------------------------- X
```

**APPEARANCES**

> **For the Department**
>   Renee Campion, Commissioner of Labor Relations
>   Steven H. Banks, Esq., First Deputy Commissioner
>   and General Counsel of Labor Relations

> **For the Union**
> STROOCK & STROOCK & LAVAN, L.L.P.
>       Alan M. Klinger, Esq.

>   David N. Grandwetter, Esq., General Counsel
>   Mark Cannizzaro, President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**JA-1055**

## BACKGROUND

In the aftermath of the Arbitration Award issued by the undersigned to resolve the Impasse regarding the implementation of the City's Vaccine Only mandate between the United Federation of Teachers ("UFT"), on the one hand, and the City of New York and NYC Department of Education ("DOE"), dated September 10, 2021, on the other, the Council of Supervisors & Administrators ("CSA") and the City of New York ("City") reached out to me to similarly address their concerns. Given the exigencies of the opening of school and the imminent effective date of the City's mandate, it was agreed the parties would promptly move to arbitration. Accordingly, an arbitration session was held on September 14, 2021, in which representatives of all parties participated.

At the September 14, 2021, session, it became apparent much of the UFT/DOE Award would govern, here. The proceeding thereupon focused on the few, but important matters, at issue. Therefore, I find that the terms of the UFT/DOE Award shall apply with the three (3) modifications set forth below and in my Opinion and Award:

1.   Due to the imminent deadlines for submission of exemption requests, I issued an interim direction that SOLAS portal be opened to any CSA member at the start of business on September 15, 2021. Any CSA member may now apply in SOLAS for a COVID-19 Vaccination Mandate Related Exemption or Accommodation. The deadline for requests to be considered

2

**JA-1056**

as part of this process must be submitted via SOLAS system by Tuesday, September 21 at 5:00 p.m.

2. The assigned arbitrator identified by SAMS who shall hear appeals for exemptions or accommodations may request the employee or the DOE to submit additional documentation from the Doctors as part of this appeal review process.

3. Section II (E) references to "CSA Parental Leave" shall be changed to "CSA Paid Parental Leave".

## Opinion

After having carefully considered the record evidence, and after having the parties respond to countless inquiries, I have requested to permit me to make a final determination, I make the rulings set forth, below.  While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone.  I hereby issue the following Award:

## I.   Exemption and Accommodation Requests & Appeal Process

As an alternative to any statutory reasonable accommodation process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and CSA (collectively the "Parties) shall be subject to the following Expedited Review Process to be implemented immediately for Principals, Assistant Principals, Education Administrators and Clinical Supervisors.  This process shall only apply to (a) religious and medical exemption requests to

3

**JA-1057**

the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Tuesday, September 21, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

4

**JA-1058**

- o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

- o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or

5

philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services

("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation.  The assigned arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be

7

provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

8

**JA-1062**

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be

9

deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II.  **Leave**

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one

10

**JA-1064**

(1) week following notice and submission of documentation to the DOE.

E. CSA Paid Parental Leave

    i.   Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence CSA Paid Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii.   No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii.   Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days, at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

    iv.   Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during

11

the regular maternity recovery period if they have opted to use Parental Leave.

v.   In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child.   As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi.   If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section).

vii.   All other eligibility and use rules regarding CSA Parental Leave as well as FMLA remain in place.

**III. <u>Separation</u>**

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited

Case 23-655, Document 74, 06/05/2023, 3525006, Page266 of 281

**JA-1066**

to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.  An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022.

Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE.  Existing rules regarding notice of leave intention and rights to apply for other leaves still apply.  Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein.

September /5, 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK          )
                           )   ss.:
COUNTY OF NASSAU           )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September /5, 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.CSA.Impact Bargaining.awd

14

**JA-1068**

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS,** a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS,** unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

Case 23-655, Document 74, 06/05/2023, 3525006, Page270 of 281

2.  An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3.  Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
    a.  Been fully vaccinated; or
    b.  Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
    c.  Received the first dose of a two-dose vaccine.

4.  Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5.  For the purposes of this Order:

    "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

    "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

    "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

    "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

    "Proof of vaccination" means proof that an individual:
    a.  Has been fully vaccinated;
    b.  Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
    c.  Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

    "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

Page 3 of 4

JA-1071

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

  a. Students attending school or school-related activities in a DOE school setting;
  b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
  c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
  d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
  e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
  f. Individuals entering for the purpose of COVID-19 vaccination;
  g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
  h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

12/30/21, 3:59 PM        Case 1:21-cv-06387-KAM-LB   Document 43-9   Filed 01/10/22   Page 2 of 10 PageID #: 1698
                         DOE skips deadline to suspend employees who haven't shown proof of second vax

*NEW YORK POST*

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |

TRY IT FREE



ADVERTISEMENT

METRO

## DOE skips deadline to suspend employees who haven't shown proof of second vax

By Susan Edelman

December 25, 2021    3:33pm    Updated

12/30/21, 9:09 PM                    DOE skips deadline to suspend employees who haven't shown proof of second vax

NEW YORK POST

LOG IN

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |



Experts said the failure to fully vaccinate put staffers and students at greater risk of infection.

AP Photo/Mary Altaffer, File

**MORE ON:**
*COVID VACCINE*

**J&J vaccine and booster provide high protection against Omicron: study**

**'Tsunami of cases': WHO boss issues warning over increasing Omicron, Delta variants**

**An air-travel vax mandate would do no more to vanquish COVID than Biden's other disastrous rules**

**CDC keeps sowing more confusion and distrust — it's got to do better**

City school employees who have not shown proof they got a second vaccine shot under Mayor de Blasio's mandate have been allowed to continue working a month past the deadline with "reminders" instead of being put on unpaid leave, The Post has learned.

The Department of Education last week sent principals a sample letter to give staffers who are "not in full compliance" with the city's COVID-19 vaccine mandate, which required proof of a double dose of the Pfizer or Moderna vaccine 45 days after the first.

The original deadline to comply was Nov. 18.

A Queens teacher blasted what she called lax enforcement.

"The taxpayers of NYC have been paying these unvaccinated teachers' salaries for the last month while the UFT has happily collected their dues," she said. "All the while, Covid is rampant among staff in city schools. Is this the gold standard of safety, Mr. Mayor?"

Asked repeatedly, the DOE would not say how many of its 146,000 full-time workers did not show proof of both shots.

12/30/21, 9:09 PM        Case 1:21-cv-06387-KAM-LB    DOE skips deadline to suspend employees who haven't shown proof of second vax    Document 43-9    Filed 01/10/22    Page 3 of 10 PageID #: 1700

*NEW YORK POST*

LOG IN

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |



New York Mayor Bill de Blasio required proof of a double dose of the Pfizer or Moderna vaccine 45 days after the first.
AP Photo/Richard Drew, File

"We have sent out notices reminding staff who have not uploaded proof of a second dose to do so as soon as possible," said spokeswoman Katie O'Hanlon.

Experts said the failure to fully vaccinate put staffers and students at greater risk of infection.

"Individuals with only one shot will contract the virus and get sick at substantially higher rates than those who are fully vaccinated," said Dr. Robert Darnell, a professor and senior physician at The Rockefeller University.

The immunity gained from one shot wanes faster than with two, and protection against variants like Delta or Omicron is weaker, he added.

JA-1075

*NEW YORK POST*

LOG IN

| BBC apologises for Alan Dershowitz... | Chinese residents 'starving' as... | Keith Olbermann is the new 'Scrooge' after... | 'Karen' who slapped Delta passenger is... | Pro-democracy Hong Kong website silenc... | Two NYPD cops punished for walking away... | Rep. Marjorie Taylor Greene suggests a... | Homeless man sucker-punched inside NYC ba... |

The original deadline to comply was Nov. 18.

Shutterstock / FellowNeko

"The bottom line is that staff, kids and family all have a much higher risk with a single shot than they would if all were fully vaccinated," Darnell said.

On Thursday, the last day of school before the Christmas break — and the last under Mayor de Blasio's tenure — the DOE's COVID-19 Situation Room tallied 1,009 new infections: 658 students, and 351 staffers, bringing the total since September to 22,981. Currently, 11 schools and 357 classrooms are closed; 3,986 classrooms are partially quarantined.

— ADVERTISEMENT —

# NEW YORK POST

LOG IN

| BBC apologizes for Alan Dershowitz... | Chinese residents 'starving' as... | Keith Olbermann is the new 'Scrooge' after... | 'Karen' who slapped Delta passenger is... | Pro-democracy Hong Kong website silenc... | Two NYPD cops punished for walking away... | Rep. Marjorie Taylor Greene suggests a... | Homeless man sucker-punched inside NYC ba... |

READ NEXT    **Greg Jennings opens up about 'non-existent' Aaron Rodgers relationship**

## SPONSORED STORIES



The New Comfortable Mask Is Taking Mineola By Storm
Hilipert™ KF94 MASK



Mineola: Unsold Caribbean Cruise Cabins Are Almost Being Given Away
All-Inclusive Cruise Deals | Search Ads



Dr. Kellyann: "Weight Loss After 55 Comes Down to This"
drkellyannwellness.com



If You Get 7/10 On This Basic History Quiz Your IQ Is 145
QuizGriz



[Photos] Meet The Wives Of The Richest Men On The Planet
Bon Voyaged

12/30/21, 9:19 PM      DOE skips deadline to suspend employees who haven't shown proof of second vax

*NEW YORK POST*

LOG IN

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |



OT cheat says LIRR, union knew about 'commonplace' sleeping on the job



Bodybuilder shot LI parents in dispute over his 1-year-old baby, police say

Recommended    2/5



Skip Ad ▶|

Read More ›

12/30/21, 9:56 PM            DOE skips deadline to suspend employees who haven't shown proof of second vax

## NEW YORK POST

LOG IN

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |





**A Loud House Christmas**
The new live-action holiday movie is now streaming on Paramount+. Try it FREE!
Paramount+

**[Photos] Jen Psaki Is Happily Married To Her Partner**
Sport Pirate

**These Pants Look like a Pant but Feel like a Legging**
American Giant on Real Simple





Video shows cops kick mom and child from NYC restaurant over vaccine…

NYPD directive to record race, gender during traffic stops sparks officer…

12/30/21, 9:09 PM    Case 1:21-cv-06387-KAM-LB    DOE skips deadline to suspend employees who haven't shown proof of second vax    PageID #: 1705

*NEW YORK POST*

LOG IN

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |



**[Pics] Don't Dress Yourself Old: These 17 Fashion Items Make You Look Older**
Tiparents

**"Nature's Morphine", Could Help Against Joint Pain & Arthritis**
behealth.space

**Top 6 Dividend Stocks for 2022**
thealphacut.com

16 People Reacted

**What's your reaction to this article?**

      

Top Notch        So-so        Next!

1              0            24

AdChoices ▷              Sponsored

**AROUND THE WEB**

   

Case 1:21-cv-06387-KAM-LB Document 43-9 Filed 01/10/22 Page 9 of 10 PageID #: 1706

12/30/21, 9:47 PM                     DOE skips deadline to suspend employees who haven't shown proof of second vax

### NEW YORK POST

LOG IN

| BBC apologizes for Alan Dershowitz… | Chinese residents 'starving' as… | Keith Olbermann is the new 'Scrooge' after… | 'Karen' who slapped Delta passenger is… | Pro-democracy Hong Kong website silenc… | Two NYPD cops punished for walking away… | Rep. Marjorie Taylor Greene suggests a… | Homeless man sucker-punched inside NYC ba… |



**Here's Where To Find The Absolute Best Gyros In The U.S.**
Mashed.com



**Olympian Agnes Tirop Found Dead At 25 After A Terrifying Attack**
TMZ.com



**A Suspicious Detail Emerged About Baldwin's Gun Handler**
TMZ.com



**R. Kelly Is Getting What He Deserves In Prison**
NickiSwift.com



**Sad Details About Kimberly Guilfoyle**
NickiSwift.com



**New Leaked Texts Could Have Biden In Some Hot Water**
NYPost.com

Powered by ZergNet

---

### *RECOMMENDED FOR YOU*





https://nypost.com/2021/12/25/doe-skips-deadline-to-suspend-employees-who-havent-shown-proof-of-second-vax/                     9/10

12/30/21, 1:49 PM    Case 1:21-cv-06387-KAM-LB    Document 47-8    Filed 11/10/22    Page 10 of 10 PageID #: 1707

*NEW YORK POST*

LOG IN

| BBC apologizes for Alan Dershowitz... | Chinese residents 'starving' as... | Keith Olbermann is the new 'Scrooge' after... | 'Karen' who slapped Delta passenger is... | Pro-democracy Hong Kong website silenc... | Two NYPD cops punished for walking away... | Rep. Marjorie Taylor Greene suggests a... | Homeless man sucker-punched inside NYC ba... |

Realtor.com                                                                     New York Post



**Halle Berry lounges topless on vacation and more star snaps**
Page Six

**Lubricants Market Size 2021, Share Estimation, Trend Analysis...**
MarketWatch



**Radiofrequency-Based Devices Market Statistics, Development and...**
MarketWatch

**Former NHL Player Mike Green Lists Washington, D.C., Home for...**
Mansion Global

*NEW YORK POST*

© 2021 NYP Holdings, Inc. All Rights Reserved | Terms of Use | Membership Terms | Privacy Notice | Your Ad Choices | Sitemap | Your California Privacy Rights

Powered by WordPress.com VIP



Get notifications from The New York Post
Click 'Sign Up' then 'Allow'

Dismiss        Sign Up