# 23-655

## In the
# United States Court of Appeals
## For the Second Circuit



NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA
BRYAN, RENA GELLMAN, FONTINA LAMBOS, KERRY BEN-JACOB,
EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA
QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA
RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA
NARCISO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA
CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA
RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA
PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO,

*Plaintiffs-Appellants,*

*(See inside cover for continuation of caption and appearances)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

## JOINT APPENDIX
### Volume VI of VII (Pages JA-1367 – JA-1654)

STROOCK & STROOCK
& LAVAN LLP
*Attorneys for Defendants-Appellees*
*United Federation of Teachers,*
*Local 2, American Federation of*
*Teachers, AFL-CIO, Michael*
*Mulgrew, Council of Supervisors*
*and Administrators and Mark*
*Cannizzaro*
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aherskowitz@stroock.com
aklinger@stroock.com
dkolker@stroock.com

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040
agraff@scherlawfirm.com

NEW YORK CITY LAW DEPARTMENT
APPEALS DIVISION
*Attorneys for Defendants-Appellees*
*New York City Department of Education*
*and Meisha Porter*
100 Church Street
New York, New York 10007
(212) 356-2067
jtownsen@law.nyc.gov

———————————————

ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN
MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANE PAGEN, LYNN PEPE,
STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ, SORAYA
SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY MUSSAFI, JESSICA
NICCHIO, DORCA GENAO, RACHEL MANISCALCO, JAMES HOFFMAN,
SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES DIPROSSIMO, CAROLA
MARTINEZ-VANBOKKEM, AYSE USTARES, ELIZABETH FIGUEROA, DIANNE
BAKER-PACIUS, NICOLE MOORE, ELIZABETH PLACENCIO, DEBBIE
BERTRAM, KIMBERLI MADDEN, FRAN SCHMITTER, VICTORIA RUSSO, PAUL
CIFARELLI, DANIELLE HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI
BENEDUCE, ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO,
JEANEAN SANCHEZ, MARIE MOSLEY, TARA PALLADINO,
DANIELLE MCGUIRE, JULIA HARDING, LEAH KUKLA, STEPHANIE
FRANZESE, JULIA BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE,
AURA MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER
ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO, LORRAINE
MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU and
HENRIETTA SHAYA,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER,
UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION
OF TEACHERS, AFL-CIO, MICHAEL MULGREW, COUNCIL OF SUPERVISORS
AND ADMINISTRATORS, MARK CANNIZZARO, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, HENRY GARRIDO, SHAUN D. FRANCOIS, I,
FRANCINE FRANCIS, MARTIN F. SCHEINMAN, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES, LLC, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 372, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees.*
*(See inside cover for additional appearances)*

———————————————

————————————————

COHEN, WEISS AND SIMON LLP
*Attorneys for Defendants-Appellees*
  *District Council 37, AFSCME AFL-CIO,*
  *Henry Garrido, Shaun D. Francois, I,*
  *Francine Francis, District Council 37,*
  *AFSCME AFL-CIO, Local 372 and*
  *District Council 37, AFSCME*
  *AFL-CIO, Local 1251*
900 3rd Avenue, Suite 2100
New York, New York 10022
(212) 356-0216
pdechiara@cwsny.com

VIGORITO, BARKER, PATTERSON,
  NICHOLS & PORTER, LLP
*Attorneys for Defendants-Appellees*
  *Martin F. Scheinman, Scheinman*
  *Arbitration and Mediation Services,*
  *LLC and Scheinman Arbitration and*
  *Mediation Services*
300 Garden City Plaza, Suite 308
Garden City, New York 11530
(516) 282-3355
g.weinstock@vbpnplaw.com
a.medina@vbpnplaw.com

————————————————

i

# Table of Contents

**Page**

Docket Entries ............................................................. JA-1

Complaint, Dated November 17, 2021 .......................... JA-49

    Exhibit A to Complaint -
    E-Mail from NYC Department of Education to
    Jeannine Lam, Dated October 2, 2021 ..................... JA-78

    Exhibit B to Complaint -
    Secretary Collective Bargaining Agreement (CBA) ................ JA-80

    Exhibit C to Complaint -
    Paraprofessional Collective Bargaining Agreement (CBA) ..... JA-184

    Exhibit D to Complaint -
    Teachers Collective Bargaining Agreement (CBA) ................ JA-251

Proposed Order to Show Cause for a Temporary Restraining
    Order and a Preliminary Injunction ........................... JA-489

Emergency Affirmation of Austin Graff, for Plaintiffs,
    in Support of Order to Show Cause,
    Dated November 17, 2021 ...................................... JA-497

Affidavit of Nicole Broecker, Plaintiff, in Support of
    Order to Show Cause, Sworn to November 16, 2021 ............... JA-501

Affidavit of Jeannine Lam, Plaintiff, in Support of
    Order to Show Cause, Sworn to November 15, 2021 ............... JA-503

    Exhibit 1 to Lam Affidavit -
    E-Mail from Jeannine Lam to Michael Mulgrew,
    Dated November 13, 2021 ...................................... JA-506

    Exhibit 2 to Lam Affidavit -
    Redacted E-Mail from Jeannine Lam to Austin Graff,
    Dated November 12, 2021 ...................................... JA-508

    Exhibit 3 to Lam Affidavit -
    Teachers Collective Bargaining Agreement (CBA)
    (Reproduced herein at pp. JA-251–JA-488) ............... JA-511

Affidavit of Stella Porto, Plaintiff, in Support of Order
    to Show Cause, Sworn to November 16, 2021 ........................ JA-512

Affidavit of Gina Porcello, Plaintiff, in Support of Order
    to Show Cause, Sworn to November 15, 2021 ........................ JA-514

ii

**Page**

Exhibit 1 to Porcello Affidavit -
Secretary Collective Bargaining Agreement (CBA)
(Reproduced herein at pp. JA-80–JA-183) ..............................JA-516

Affidavit of Dina Hussien, Plaintiff, in Support of Order
to Show Cause, Sworn to November 15, 2021 ........................JA-517

Exhibit 1 to Hussien Affidavit -
Paraprofessional Collective Bargaining Agreement (CBA)
(Reproduced herein at pp. JA-184–JA-250) ............................JA-520

Exhibit A -
E-Mail from NYC Department of Education to
Jeannine Lam, Dated October 2, 2021
(Reproduced herein at pp. JA-78–JA-79) ................................JA-520

Plaintiffs' Memorandum of Law in Support of Motion,
Dated November 17, 2021 ......................................................JA-521

Order to Show Cause for a Temporary Restraining Order and
a Preliminary Injunction, Dated November 17, 2021 ...............JA-543

Defendants New York City Department of Education and
Meisha Porter's Memorandum of Law in Opposition
to Motion, Dated November 19, 2021......................................JA-546

Declaration of Andrea O'Connor, for Defendants New York
City Department of Education and Meisha Porter, in
Opposition to Order to Show Cause,
Dated November 19, 2021 ......................................................JA-580

Exhibit A to O'Connor Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and the United Federation of Teachers, Local 2,
AFT, AFL-CIO*, Dated September 10, 2021,
with Cover Letter ..................................................................JA-583

Exhibit B to O'Connor Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and the Council of Supervisors and Administrators,*
Dated September 15, 2021, with Cover Letter.........................JA-602

iii

**Page**

Exhibit C to O'Connor Declaration -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021 ............................................................JA-617

Exhibit D to O'Connor Declaration -
Transcript of Proceedings, in the Matter of *Michael Kane v.
Bill De Blasio, et al.*, 21 Civ. 7863 (S.D.N.Y.)(VEC),
Dated October 12, 2021 ..........................................................JA-624

Exhibit E to O'Connor Declaration -
Affidavit of Vicki Bernstein, in Opposition to Order to Show
Cause, Sworn to November 19, 2021........................................JA-699

Exhibit F to O'Connor Declaration -
Various Arbitration Awards ......................................................JA-702

Defendant United Federation of Teachers, Local 2, AFL-CIO's
Memorandum of Law in Opposition to Order to Show Cause,
Dated November 19, 2021 ........................................................JA-709

Declaration of Alan M. Klinger, for Defendants United
Federation of Teachers, Local 2, AFL-CIO, in Opposition
to Order to Show Cause, Dated November 19, 2021 ................JA-737

Exhibit A to Klinger Declaration -
Declaration of Impasse, Dated September 1, 2021 ..................JA-745

Exhibit A to Declaration of Impasse -
E-Mail from Renee Campion to Harry Nespoli,
Dated July 27, 2021 ............................................................JA-760

Exhibit B to Declaration of Impasse -
Order of Dave A. Chokshi, M.D. Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
or Testing for Staff in Public Healthcare Settings,
Dated July 21, 2021 ............................................................JA-762

Exhibit C to Declaration of Impasse -
COVID-Safe Requirement: Frequently Asked Questions,
Issued August 11, 2021........................................................JA-765

Exhibit D to Declaration of Impasse -
Letter from Harry Nespoli to Honorable Dean Fuleihan,
Emma Wolfe and Renee Campion, Dated August 12, 2021 .JA-775

iv

**Page**

Exhibit E to Declaration of Impasse -
Letter from Harry Nespoli to Honorable Dean Fuleihan,
Emma Wolfe and Renee Campion, Dated August 17, 2021 .JA-777

Exhibit F to Declaration of Impasse -
Order of Dave A. Chokshi, M.D. Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
for Department of Education Employees, Contractors
and Others, Dated August 24, 2021 ......................................JA-779

Exhibit B to Klinger Declaration -
Letter from William M. Conley to Meisha Porter and
Michael Mulgrew Regarding Appointment of Mediator,
Dated September 3, 2021 ..........................................................JA-783

Exhibit C to Klinger Declaration -
E-Mail from Alan M. Klinger to William M. Conley,
Dated September 6, 2021 ..........................................................JA-784

Exhibit D to Klinger Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and International Brotherhood of Teamsters,
Local 237*, Dated September 15, 2021, with Cover Letter........JA-785

Exhibit E to Klinger Declaration -
Amended Order to Show Cause for a Temporary Restraining
Order and a Preliminary Injunction, in the Matter of *The New
York City Municipal Labor Committee v. The City of New
York, et al.*, Index No. 158368/2021,
Dated September 9, 2021 ..........................................................JA-801

Declaration of Beth A. Norton, for Defendants United
Federation of Teachers, Local 2, AFL-CIO, in Opposition
to Order to Show Cause, Dated November 19, 2021 ................JA-804

Exhibit A to Norton Declaration -
E-Mail from Jeannine Lam to Beth A. Norton,
Dated November 12, 2021 ........................................................JA-809

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated November 24, 2021, with Attachment............................JA-812

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated November 24, 2021 ......................JA-814

v

**Page**

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated November 24, 2021 ......................................................JA-815

Plaintiffs' Memorandum of Law, Dated November 30, 2021 ......JA-843

Defendants United Federation of Teachers, Local 2, AFL-CIO's
Supplemental Memorandum of Law,
Dated December 7, 2021 ........................................................JA-856

Declaration of Alan M. Klinger, for Defendant
United Federation of Teachers, Local 2, AFLO-CIO,
Dated December 7, 2021 ........................................................JA-880

Defendants New York City Department of Education
and Meisha Porter's Supplemental Briefing,
Dated December 7, 2021 ........................................................JA-883

Appendix A to Klinger Declaration -
Affirmation of Michelle E. Morse,
Dated November 15, 2021 ......................................................JA-907

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated December 9, 2021 ........................................................JA-915

Plaintiff's Response to the Court's Order to Show Cause
Regarding The Plaintiff's Standing,
Dated December 13, 2021 ......................................................JA-918

Defendants New York City Department of Education
and Meisha Porter's Memorandum of Law,
Dated December 20, 2021 ......................................................JA-935

Defendant United Federation of Teachers, Local 2, AFL-CIO's
Reply to Plaintiffs' Response to The Courts Order to Show
Cause Regarding Plaintiffs' Standing,
Dated December 20, 2021 ......................................................JA-944

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated December 20, 2021 ......................................................JA-959

Amended Complaint, Dated January 10, 2022 ............................JA-960

Exhibit A to Amended Complaint -
UFT's Webpage "About the UFT" ..........................................JA-1021

Exhibit B to Amended Complaint -
CSA's Webpage "What is CSA" ..............................................JA-1023

vi

**Page**

Exhibit C to Amended Complaint -
Local 372's Webpage "About Us"............................................JA-1026

Exhibit D to Amended Complaint -
Local 1251's Webpage "About Us".........................................JA-1029

Exhibit E to Amended Complaint -
UFT Arbitration Award, Dated September 10, 2021,
with Cover Letter ....................................................................JA-1034

Exhibit F to Amended Complaint -
Scheinman's Arbitration Award, Dated September 15, 2021,
with Cover Letter ....................................................................JA-1053

Exhibit G to Amended Complaint -
Order of The Commissioner of Health and Mental Hygiene,
Dated September 15, 2021 .......................................................JA-1068

Exhibit H to Amended Complaint -
New York Post Article Titled "DOE Skips Deadline to
Suspend Employees Who Havent's Show Proof of
Second Vax".............................................................................JA-1072

Exhibit I to Amended Complaint -
UFT's Declaration of Impasse, Dated September 1, 2021,
with Exhibit A to F ..................................................................JA-1082

Exhibit J to Amended Complaint -
Letter from William M. Conley to Meisha Porter and
Michael Mulgrew Regarding Appointment of Mediator,
Dated September 3, 2021
(Reproduced herein at p. JA-783) .............................................JA-1126

Exhibit K to Amended Complaint -
E-Mail from Alan M. Klinger to William M. Conley,
Dated September 6, 2021
(Reproduced herein at p. JA-784) .............................................JA-1126

Exhibit L to Amended Complaint -
Joint Intentions and Commitments.............................................JA-1127

Exhibit M to Amended Complaint -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021
(Reproduced herein at pp. JA-617–JA-623) .............................JA-1365

vii

**Page**

Exhibit N to Amended Complaint -
Waiver ........................................................................JA-1366

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 4, 2022 .............................................JA-1367

Letter from Alan M. Klinger to Honorable Kiyo A. Matsumoto,
Dated February 4, 2022 .............................................JA-1370

Letter from Andrea O'Connor to Honorable Kiyo A.
Matsumoto, Dated February 7, 20222.........................JA-1373

Letter from Karolina Wiaderna to Honorable Kiyo A.
Matsumoto, Dated February 7, 2022..........................JA-1378

Proposed Order to Show Cause.......................................JA-1380

Affirmation of Austin Graff, for Plaintiffs, in Support of
Order to Show Cause, Dated February 8, 2022.........JA-1382

Declaration of James Hoffman, for Defendant New York City
Department of Education, Dated February 4, 2022 ..................JA-1386

Declaration of Nathalie Charles, Dated February 4, 2022 ............JA-1388

Declaration of Serina Mendez, Dated February 4, 2022...............JA-1390

Declaration of Tara Palladino, Dated February 7, 2022 ...............JA-1392

Declaration of Janelle Lotito, Dated February 8, 2022 .................JA-1394

Exhibit A to Graff Affirmation -
Termination Notice, Dated January 31, 2022,
with E-Mails..............................................................JA-1396

Exhibit B to Graff Affirmation -
New York City Department of Education
Health Screening Questionnaire...................................JA-1402

Exhibit C to Graff Affirmation -
Plaintiffs' Antibody Tests for Covid-19....................................JA-1403

Exhibit D to Graff Affirmation -
I Love You Day Flyer .............................................................JA-1408

Exhibit E to Graff Affirmation -
Job Post of Indeed ..................................................................JA-1409

viii

**Page**

Exhibit F to Graff Affirmation -
Plaintiffs' Memorandum of Law, in Support of Motion,
Dated February 8, 2022 ...........................................................JA-1412

Letter from Alan M. Klinger to Honorable Kiyo A. Matsumoto,
Dated February 8, 2022................................................................JA-1433

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 8, 2022................................................................JA-1438

Defendants New York City Department of Education and
Meisha Porter's Memorandum of Law in Opposition to
Motion, Dated February 8, 2022 ................................................JA-1445

Appendix A to Memorandum of Law -
Decisions and Orders of Honorable Lyle E. Frank,
Dated January 21, 2022...............................................................JA-1488

Appendix B to Memorandum of Law -
Affirmation of Michelle E. Morse,
Dated November 15, 2021 ..........................................................JA-1492

Plaintiffs' Reply Memorandum of Law in Further Support of
Motion, Dated February 10, 2022 ..............................................JA-1500

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 11, 2022.........................JA-1514

Order to Show Cause for a Temporary Restraining Order and
Preliminary Injunction, Dated February 10, 2022.....................JA-1516

Interim Order of Honorable Judy H. Kim,
Dated February 10, 2022.............................................................JA-1520

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 11, 2022.............................................................JA-1522

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated February 11, 2022.............................................................JA-1523

Notice of Motion to Dismiss Amended Complaint,
Dated April 4, 2022.....................................................................JA-1566

Declaration of Andrea O'Connor, for Defendants
New York City Department of Education and Meisha Porter,
in Support of Motion, Dated April 4, 2022 ...............................JA-1569

Exhibit A to O'Connor Declaration -
Order of Honorable Lynn R. Kotler, Dated March 15, 2022....JA-1572

ix

**Page**

Memorandum of Law, Dated April 4, 2022 ..................................JA-1582

Notice of Motion to Dismiss, Dated April 4, 2022 ......................JA-1614

Memorandum of Law in Support of Motion,
    Dated April 4, 2022....................................................................JA-1618

Reply Memorandum of Law in Further Support of Motion,
    Dated May 20, 2022..................................................................JA-1642

Notice of Motion to Dismiss Amended Complaint,
    Dated April 4, 2022....................................................................JA-1655

Memorandum of Law in Support of Motion,
    Dated April 4, 2022....................................................................JA-1657

Notice of Motion to Dismiss Complaint,
    Dated April 4, 2022....................................................................JA-1682

Martin F. Scheinman, Scheinman Arbitration and Mediation
    Services and Scheinman Arbitration and Mediation
    Services, LLC's Memorandum of Law in
    Support of Motion, Dated April 4, 2022 ...................................JA-1686

Declaration of Karolina Wiaderna, for Defendants
    Martin F. Scheinman, Scheinman Arbitration and Mediation
    Services and Scheinman Arbitration and Mediation Services,
    LLC, in Support of Motion, Dated April 4, 2022 .....................JA-1705

Affirmation of Austin Graff, for Plaintiffs,
    in Opposition to Motion, Dated May 9, 2022 ...........................JA-1707

Exhibit A to Graff Affirmation -
Decisions by Scheinman Arbitration .........................................JA-1709

Exhibit B to Graff Affirmation -
Decisions by Scheinman Arbitration .........................................JA-1713

Exhibit C to Graff Affirmation -
Arbitration Award, Dated October 2, 2021 ...............................JA-1720

Exhibit D to Graff Affirmation -
Arbitration Award, Dated September 25, 2021..........................JA-1722

Exhibit E to Graff Affirmation -
Arbitration Award, Dated October 4, 2021 ...............................JA-1728

Exhibit F to Graff Affirmation -
Arbitration Award, Dated October 4, 2021 ...............................JA-1735

x

**Page**

Exhibit G to Graff Affirmation -
Notifications from New Yor State Department of Labor..........JA-1740

Plaintiffs' Memorandum of Law in Opposition to Motion,
Dated May 9, 2022 ....................................................................JA-1743

Memorandum of Law in Support of Motion,
Dated May 24, 2022 ..................................................................JA-1794

Reply Memorandum of Law in Further Support of Motion,
Dated May 24, 2022 ..................................................................JA-1808

Martin F. Scheinman, Scheinman Arbitration and Mediation
Services and Scheinman Arbitration and Mediation
Services, LLC's Reply Memorandum of Law in Further
Support of Motion, Dated May 24, 2022 ..................................JA-1823

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated July 7, 2022 ....................................................................JA-1834

Exhibit A to Letter -
New York Post Titled "DOE Suit Aims to Keep at Lease 82
Teachers Suspended without Pay Over Fake Vaccine Cards",
Dated July 6, 2022 ....................................................................JA-1837

Exhibit B to Letter -
Opinion and Order of Hon. Martin F. Scheinman,
Dated June 27, 2022 .................................................................JA-1843

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated July 8, 2022 ....................................................................JA-1857

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated July 11, 2022 ................................JA-1859

Letter from Karolina Wiaderna to Honorable
Kiyo A. Matsumoto, Dated July 11, 2022 ................................JA-1861

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 16, 2023........................JA-1862

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 17, 20232 .........................................................JA-1864

Exhibit 1 to Letter -
Announcement of Mayor BioGraphy News Officials,
Dated February 6, 2023 ............................................................JA-1866

xi

**Page**

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated February 17, 2023............................................................JA-1868

Letter from Hanan B. Kolko to Honorable Kiyo A. Matsumoto,
Dated February 17, 2023............................................................JA-1870

Letter from Karolina Wiaderna to Honorable
Kiyo A. Matsumoto, Dated February 20, 2023........................JA-1873

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated March 30, 2023.................................................................JA-1874

Judgment of The United States District Court Eastern District
of New York, Dated March 31, 2023, Appealed From.............JA-1916

Notice of Appeal, Dated April 20, 2023 ........................................JA-1917

Case 23-655, Document 76, 06/05/2023, 3525010, Page15 of 302

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE. NY 11514

MARTIN H  SCHER*
JONATHAN L  SCHER**

AUSTIN R  GRAFF*

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

TEL  516-746-6040

FAX·  516-746-5043

W  SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P  BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S NAYBERG
(1959-2012)

February 4, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

<div style="text-align:center">

Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
      Docket No. 21-CV-06387-KAM-LB

</div>

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action.  This letter shall serve as the Plaintiffs' pre-motion conference letter for permission to make a Motion, by Order to Show Cause seeking a Temporary Restraining Order and a Preliminary Injunction enjoining the New York City Department of Education ("NYCDOE") from terminating the Plaintiffs without due process.

A review of the Court's Individual Rules, it was unclear whether the Plaintiffs need to request a pre-motion conference to make an emergency application.  In an abundance of caution, the Plaintiffs file the within letter to comply with the Court's Individual Rules.

On January 31, 2022, many of the Plaintiffs, those Plaintiffs who have not selected to be placed on Leave Without Pay until September 2022 or who have no accommodation requests pending, received notice that effective February 11, 2022 they will be terminated from their employment with the NYCDOE.

The NYCDOE states that the COVID-19 vaccine mandate is a condition of employment and since the Plaintiffs have not met the condition, they are being terminated.  As will be discussed in our Motion, in order for a condition of employment to be created it must either be pursuant to N.Y. Education Law § 2572.9 that sets forth the process for a City school district to create a new qualification for employment or through mandatory negotiations pursuant to the Taylor Law (*see*, N.Y. Civil Service Law § 201.4. defining "terms and conditions of employment").

The NYCDOE has failed to comply with the procedure set forth in the Education Law or reached agreement with its unions to create a new condition of employment.

# The Scher Law Firm, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 4, 2022
Page 2 of 3

---

As a result, the NYCDOE's unilateral statement that the COVID-19 vaccine is a condition of employment is unsupported by any authority. In fact, the only authority relied upon for the NYCDOE's actions is the Commissioner of Health's Order imposing a COVID-19 vaccine mandate, but the language of the Commissioner's Order does not state that the vaccine is a condition of employment. It only limits where a person without a vaccine can go (*i.e.*, school property).

As was previously briefed to this Court (**Docket Entry Nos. 34 through 39**), the NYCDOE does not have the authority to unilaterally terminate the Plaintiffs without providing the Plaintiffs due process, yet the NYCDOE has done so.

As will be addressed at length in the Plaintiffs' Motion that they request permission to make, the NYCDOE's unilateral action violates the Plaintiffs' 14th Amendment right to due process. The Court should impose a Temporary Restraining Order and ultimately a Preliminary Injunction enjoining the NYCDOE from terminating the Plaintiffs without due process.

As this Court stated in its November 24, 2021 Memorandum and Order in this Action:

> Plaintiffs will be afforded the processes required by the applicable CBA and the Impact Arbitration Award when and if the NYC DOE seeks separation, undermining Plaintiffs' arguments that they will be terminated in violation of their constitutional right to due process without a post-deprivation hearing. The Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) (property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (internal citations omitted).

**Docket Entry No. 33**, at page 18.

The NYCDOE has provided notice that it is terminating the Plaintiffs effective February 11, 2022 without providing the Plaintiffs due process, through violating the Plaintiff's protected property interest in their continued employment.

**JA-1369**

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 4, 2022
Page 3 of 3

Accordingly, the Court should grant the Plaintiffs permission to file a Motion by Order to Show Cause to seek a Temporary Restraining Order and a Preliminary Injunction to enjoin the Plaintiffs' terminations.

Very truly yours,
THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

**JA-1370**

# STROOCK

February 4, 2022
Alan M. Klinger
Direct Dial: 212.806.5818
aklinger@stroock.com

Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    Broecker, et al. v. New York City Department of Education, et al., 21-cv-6387

Dear Judge Matsumoto:

We represent defendants United Federation of Teachers ("UFT") and Council of School Supervisors & Administrators ("CSA"). We write in connection with the letter filed earlier today (Dkt. #72) by Plaintiffs seeking permission to file an emergency application in connection with the New York City Department of Education's (the "DOE") recent notice to unvaccinated employees advising that they will be summarily terminated on February 11, 2022 pursuant to notices issues earlier this week, on January 31, 2022, and your Honor's direction regarding same.

The UFT and the CSA, while disagreeing with Plaintiffs as to their attack on the Scheinman Arbitration Award, support the challenge to the summary termination of these employees and also seek to file an emergency application defending the due process rights of the DOE employees they represent. These employees are at risk of summarily losing essential health benefits for which they have foregone other gainful employment while on leave without pay ("LWOP").

As the Court is aware from prior briefing, the UFT and now CSA have consistently taken the position that employees may not be terminated without satisfaction of their respective due process rights under state law and contract. Indeed, public employees have constitutionally protected property interests in their continued employment. See Mem. and Order Den. Mot. Prelim. Inj. ("Order"), 18 (citing Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985)).

New York courts have consistently found that when public employers have any discretion to terminate a public worker's employment, the employee is entitled to procedural due process. And, as stated by this Court in Garland v. New York City Fire Department, 21-cv-6586 (KAM)(CLP), 2021 WL 5771687 at *6 n.8 (E.D.N.Y. Dec. 6, 2021), the key factor in determining if an employee can be terminated without due process is whether they are "legally ineligible" to maintain their employment. While this Court did not reach the question of whether process is due prior to termination, the legal standard identified by the Court is correct.

A protected property interest in employment can cease to exist only if the employer ceases to have discretion over the individual's continued employment. See Brown v. City of Syracuse, 673 F.3d 141, 147-50 (2d Cir. 2012). To validate summary dismissal, the requirement in question must expressly state that a qualification is mandatory for employment in the position.

Here, the Mandate does not require termination for the unvaccinated, and the DOE has granted myriad accommodations for those who have not undergone inoculation for medical and religious

February 4, 2022

reasons – thereby evidencing that vaccination status does not automatically qualify or disqualify an individual from service.

While the DOE may argue, as it has prior, that vaccination is a "qualification" or "condition" for employment, thereby removing termination on those grounds from the gamut of due process, this is incorrect and belied by their own employment decisions.  *That some unvaccinated employees have been granted reasonable accommodations on medical, religious, and other grounds proves that vaccination is not an employment qualification, for one cannot accommodate for an immutable statutory requirement for employment.*  Furthermore, the DOE continued health insurance for certain unvaccinated employees from December 1 onwards.  Were vaccination truly a "qualification" for employment, the City would have revoked healthcare for the hundreds (if not thousands) of uninoculated immediately, as it could not legally continue to retain such individuals.

Under the Scheinman Awards, unvaccinated DOE employees may opt for LWOP while remaining DOE employees, retaining health insurance, retaining the right to return to their current position should they become vaccinated, and avoiding disciplinary action.  This option carries a required waiver of rights as consideration of the benefits offered.  Employees who receive medical or religious exemptions may continue to work remotely or be reassigned to a position where they are not in contact with students.  The fact that these options exist demonstrates that the DOE has the discretion to find alternatives to termination and thus any termination is not *required.*  Moreover, the Awards state that the DOE may only "seek to unilaterally separate" certain employees after December 1, 2021, but that "except for the express provisions contained, herein, all parties retain all legal rights at all times."  No further reference is made to due process rights and there is no mention of the waiver of any rights with regard to termination.

While the DOE may attempt to obfuscate the need for due process by terming vaccination a "qualification" of employment, clever verbiage does not vitiate their constitutional, statutory, and contractual obligations.  Under Education Law § 2590-j(7)(b), tenured pedagogues may be terminated under § 3020-a for a range of offenses, arguably including failure to vaccinate – but due process is due for all of them.  See also N.Y. Educ. Law § 2590-j(7)b) (defining disciplinary matters subject to § 3020-a process).  Likewise, N.Y. Civ. Serv. Law § 75 provides due process protections for covered civil service titles before they can be disciplined or terminated.

UFT and CSA satisfy all elements necessary for injunctive relief under Fed. R. Civ. P. 65.

As argued *supra*, employees are entitled to, and have in no way waived, due process prior to termination.  Even assuming *arguendo* that vaccination is a "qualification" or "condition" of employment (which it is not), the DOE is obligated to satisfy statutory and contractual procedure prior to rendering an adverse employment action.

DOE's attempts to deprive employees of their procedural due process rights itself constitutes a sufficient showing of irreparable harm to support injunctive relief.  See e.g., See Statharos v. N.Y.C. Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999) (recognizing that the alleged deprivation of a constitutional right sufficiently shows irreparable harm); see also, e.g., Connecticut Dep't of Envt'l Prot. v. O.S.H.A., 356 F.3d 226, 231 (2d Cir. 2004).

February 4, 2022

UFT's and CSA's represented employees, who are already on LWOP, will suffer irreparable harm manifesting in the loss of health benefits particularly during a pandemic. The cost of COBRA is significant, and will increase pressure on families with difficulties paying for housing, food, medical procedures, and medications. Myriad courts, including the Second Circuit, have found irreparable harm in situations implicating dangers to health, health insurance, and shelter. See, e.g., LaForest v. Former Clean Air Holding Co., Inc., 376 F.3d 48, 55 (2d Cir. 2004); Wheelan v. Colgan, 602 F.2d 1060, 1062 (2d Cir. 1979); Terrell v. Terrell, 279 A.D.2d 301, 303 (1st Dep't 2001). Similarly, the loss of healthcare on top of the loss of wages has been found to be an irreparable harm warranting injunctive relief. See Montgomery-Costa v. The City of New York, No. 114374-2009, 2009 WL 8639689 (Sup. Ct. N.Y. Cnty. Oct. 28, 2009)

Furthermore, when loss of health insurance amidst financial stress is considered in conjunction with the deprivation of rights at issue here, these harms elevate to the level of irreparable injury. See, e.g., U.S. Navy SEALs 1-26 v. Biden, ___ F.Supp.3d ___, 2022 WL 34443, at *12-13 (N.D. Tx. 2022) ("these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, this Court must conclude that Plaintiffs have suffered irreparable harm.").

The balance of equities also tips decidedly in UFT's and CSA's favor. To allow the DOE to willfully sidestep due process rights sets dangerous precedent undermining constitutional, statutory, and contractual protections for all municipal workers in the future. The DOE also suffers minimal harm in keeping the unvaccinated *unpaid* and on healthcare until due process is satisfied.

In contrast, the harm to employees cannot be overstated – the lack of health benefits on top of their lack of income will impair their ability to maintain necessary healthcare and stable finances, resulting in a downward spiral that may, for many, result in harms that cannot restituted.

On February 4, 2022 at 11:58 A.M., we advised counsel for the DOE defendants of our intent to make an emergency application by order to show cause.

Respectfully submitted,

_____/s/ ALAN M. KLINGER_____

STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com

*Co-Counsel for Defendants UFT and CSA*

CC: all counsel of record

**JA-1373**



THE CITY OF NEW YORK

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

GEORGIA M. PESTANA
*Corporation Counsel*

Andrea O'Connor
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

February 7, 2022

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re:   Broecker, et al. v. NYC Department of Education, et al.
        Docket No. 21 CV 6387 (KAM)(LB)

Dear Judge Matsumoto:

      I am an Assistant Corporation Counsel in the office of Georgia M. Pestana, Corporation Counsel of the City of New York, attorney for defendants New York City Department of Education and Meisha Porter (collectively, "DOE Defendants") in the above-captioned matter. I write in response to the Court's February 4, 2022 Order directing all defendants to respond to Plaintiffs' pre-motion conference request by 12:00 p.m. today. For the reasons set forth below, DOE Defendants respectfully submit that Plaintiffs' request for a pre-motion conference be denied. Similarly, DOE Defendants further submit that Defendants UFT and CSA's request for pre-motion conference also be denied.[1]

      Turning first to Defendants UFT[2] and CSA's request for a pre-motion conference in connection with unspecified "emergency application defending the due process rights of the

---

[1] Subsequent to the Court's issuance of the February 4 Order, defendants UFT and CSA filed their own request for a pre-motion conference in connection with an anticipated motion seeking an injunction to enjoin the terminations of non-party DOE employees. Rather than submitting a separate response to UFT and CSA's request, DOE Defendants submit one combined letter opposition.

[2] It is worth noting that, as explained below, Plaintiffs sought the exact same relief in their November 17, 2021 motion for a temporary restraining order and preliminary injunction. Defendant UFT opposed the November 17 motion and did not seek appellate review of the portion of the Court's order denying Plaintiffs' motion seeking to enjoin Plaintiffs' terminations.

DOE employees they represent." See Dkt. No. 73.  In short, UFT and CSA seek relief on behalf of non-parties that their counsel does not represent in this action.  Because of this, DOE Defendants respectfully submit that this request is patently improper and must be summarily denied.  UFT and CSA make this application on behalf of non-parties to this action, i.e. DOE employees who are members of the UFT or CSA.  Indeed, UFT and CSA assert that, in connection with this application, they are seeking to "defend[] the due process rights of the DOE employees they **represent**."  Id. (emphasis added).  The fact that UFT and CSA are the bargaining agents for certain DOE employees, does not mean that counsel for UFT and CSA "represent" these employees in this action.  Nor could they because these employees, but for the Plaintiffs, are not parties.

Further, UFT and CSA do not have either organizational or representative standing in this action to seek the relief requested.  See Rodriguez v. Winski, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) ("Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and (2) associational standing.").  UFT and CSA cannot establish that they have organizational standing because their application articulates harm to only their members and not any distinctive injury to the unions.  Massone v. Washington, No. 20 CV 7906 (LJL), 2021 U.S. Dist. LEXIS 163860, at *9-10 (S.D.N.Y. Aug. 30, 2021).  UFT and CSA also cannot establish representative standing.  Whether an association has standing to seek relief on behalf of its members is governed by the three-part test articulated in Bano v. Union Carbide Corp., 361 F.3d 696 (2d Cir. 2004). Under Bano, an association has standing if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 713-14.  Even assuming UFT and CSA could establish the first and second Bano factors, they cannot establish the third.  "In order to establish that the participation of individual members is not required, the organization must show that there is no conflict of interest or diversity of views that would prevent the organization from effectively representing its membership." N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446, 458 (E.D.N.Y. 2002).  Here, UFT and CSA represent no individual members.  Rather, the only individual union members in this case, i.e. the Plaintiffs, are adverse to UFT and CSA.  Indeed, Plaintiffs claim that UFT and CSA conspired with the other defendants to violate their constitutional rights.  Certainly, that allegation alone demonstrates that there is an "actual or potential conflict" between the Plaintiffs herein and either the unions or other union members who chose not to join this action.[3]  As such, UFT and CSA lack standing in this action to seek the relief requested in their application.

With respect to Plaintiffs' request for a pre-motion conference, Plaintiffs seek the Court's permission to file a motion for a temporary restraining order and preliminary injunction to enjoin Plaintiffs' terminations.  See Dkt. No. 72.  Plaintiffs, however, already sought this exact same relief from the Court via their November 17, 2022 emergency motion for injunctive

---

[3] DOE Defendants also note that UFT and CSA have filed a joint application seeking to dismiss the Amended Complaint in this action "in its entirety."  See Dkt. No. 62.  The Amended Complaint seeks a permanent injunction enjoining Plaintiffs' terminations.  As such, on one hand UFT and CSA are arguing that Plaintiffs' Amended Complaint should be dismissed in its entirety and on the other hand are now arguing in support of the claim made in the Amended Complaint for injunctive relief.

2

relief.  See Dkt. No. 2 (Plaintiffs' motion seeking an order "enjoining and restraining [DOE] from disciplining, including but not limited to **terminating** any and all tenured [Principals, Assistant Principals, employees covered by the DC 37 agreement and] teachers who have failed to take a COVID-19 vaccine without proffering charges and specifications and granting the [employee] a hearing on the charges")(emphasis added).  Plaintiffs' November 17 motion was fully briefed and argued prior to that motion being denied by the Court on November 24, 2022.  See Dkt. No. 33.  Plaintiffs did not seek an appeal of this denial and the time to do so has expired.

Plaintiffs are now seeking a second bite at the injunctive relief apple.  Plaintiffs' February 4, 2022 letter to the Court sets forth the exact same arguments that were asserted by Plaintiffs in their November 17 emergency application.  Compare Dkt. No. 2 with Dkt. No. 72.  Indeed, Plaintiffs' February 4 letter argues that Plaintiffs' anticipated terminations violate their procedural due process rights because DOE did not follow the disciplinary procedures set forth in Education Law Section 3020-a.  See Dkt. No. 72.  This is the exact same argument made by Plaintiffs in support of their November 17 motion.  See Dkt. No. 2-10.  Further, Plaintiffs' February 4 letter asserts that Plaintiffs' termination notices state that vaccination is a "condition of employment" and that their failure to become vaccinated will result in their termination.  See Dkt. No. 72.  This is the exact same argument asserted by DOE Defendants in opposition to Plaintiffs' November 17 motion.  See Dkt. No. 18.  Thus, Plaintiffs' February 4 letter sets forth no facts or arguments that were not before the Court in deciding Plaintiffs' November 17 motion.

Under the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless 'cogent and compelling reasons militate otherwise.'"  In re LIBOR-Based Fin. Instruments Antitrust Litig., 27 F. Supp. 3d 447, 473 (S.D.N.Y. 2014) quoting Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009); see also United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although not binding, law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons).  Here, the Court previously denied the exact same injunctive relief sought now.  Further, the arguments and facts set forth in Plaintiffs' February 4 letter are duplicative of those asserted by Plaintiffs during the litigation of their November 17 preliminary injunction motion.  As such, there is no "cogent and compelling reason" for the Court to revisit its' prior denial of Plaintiffs' request for an order enjoining Plaintiffs' terminations.

Finally, Plaintiffs' request for a pre-motion conference must be denied because the anticipated motions for a temporary restraining order and preliminary injunction to enjoin Plaintiffs' terminations will likely meet the same fate as the prior, identical application.  As fully detailed in DOE Defendants' pre-motion conference letter filed on January 26, 2022, Plaintiffs' due process claims are without merit.  See Dkt. No. 62.  Because of that, Plaintiffs will, again, be unable to demonstrate a likelihood of success on the merits in connection with their proposed motion for preliminary injunction.

Indeed, last month three decisions were issued by New York Supreme Court in connection with Article 78 proceedings filed by teachers who were challenging their anticipated terminations due to their failure to be vaccinated.  Those decisions all held that vaccination is now a lawful condition of employment for DOE teachers and that a non-compliant teacher's termination due to their failure to be vaccinated did not require the invocation of the disciplinary procedures contained in § 3020-a.  See Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y.

Sup., N.Y. Cnty); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); O'Reilly v. BOE, et al., Index No. 161040/2021 (N.Y. Sup., N.Y. Cnty).

These three New York Supreme Court decisions comport with Your Honor's decision issued in connection with a preliminary injunction motion seeking to enjoin the terminations of City employees due to their failure to be vaccinated. See Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021)(in examining the vaccination order issued by the New York City Health Commissioner applicable to City employees, Your Honor held that "[g]iven the state of public health emergency that our nation finds itself in due to the Coronavirus, the more transmissible Delta and Omicron variants, and the nature of Plaintiffs' job as firefighters and EMT employees, interacting with members of the public on an emergency basis, and living in close quarters during their shifts the [Health] Commissioner was within his powers to require COVID-19 vaccination as a qualification of employment for FDNY employees."). Thus, because COVID-19 vaccination is a condition of employment for DOE employees, DOE need not resort to the disciplinary procedures contained in § 3020-a or § 75 prior to terminating employees due to their failure to comply with this condition of employment. See O'Connor, 48 A.D.3d at 1255 (4th Dep't 2008); Adrian v. Bd. of Ed., 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); Beck-Nichols v. Bianco, 20 N.Y.3d 540, 558–59 (2013); Brown v. Bd. of Educ., 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009); Felix v. Dep't of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004). Rather, DOE need only provide notice and processes that comport with constitutional due process before termination. DOE Defendants respectfully submit that they have done so as a matter of law and therefore Plaintiffs' anticipated motion for injunctive relief has no likelihood of success on the merits.

Further, Plaintiffs will be unable to demonstrate the requisite irreparable harm necessary to warrant injunctive relief. In Garland, this Court held that "to demonstrate an entitlement to injunctive relief, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. As noted decades ago by the United States Supreme Court, the type of harm Plaintiffs allege, loss of employment and pay, are definitionally reparable." See Garland, 2021 U.S. Dist. LEXIS 233142 at *22-23 citing Sampson v. Murray, 415 U.S. 61, 89-92, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)(holding that injuries generally associated with discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute "irreparable harm"); Piercy v. Fed. Rsrv. Bank of N.Y., Nos. 02 CV 5005, 02 CV 9291 (DC), 2003 U.S. Dist. LEXIS 379, 2003 WL 115230, at *3 (S.D.N.Y. Jan. 13, 2003) ("Plaintiffs wrongfully discharged from employment generally may be made whole by monetary damages and reinstatement after a full trial on the merits."). This Court went on to hold that the plaintiffs failed to make a showing of irreparable harm because "loss of employment and pay constitute harm that may be remedied from money damages." Garland, 2021 U.S. Dist. LEXIS 233142 at *22-23.

Here, the "loss of employment is insufficient to carry [Plaintiffs'] burden of showing irreparable harm because [they] make no showing that the loss of [their] employment cannot be remedied with money damages." Buckley v. N.Y. & Presbyterian Hosp., No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21, 2021); see also Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ("the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."); Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992)("injuries that generally

attend a discharge from employment — loss of reputation, loss of income and difficulty in finding other employment — do not constitute the irreparable harm necessary to obtain a preliminary injunction")(internal citations omitted).  Indeed, even a loss of "benefits" attendant to employment does not constitute irreparable harm.   See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012) (back pay includes lost fringe benefits such as vacation pay and pension benefits); E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus., 164 F.3d 89, 101 (2d Cir. 1998)(holding same); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(a reinstatement order issued by the District Court could award "full pension benefits, including an award of seniority status covering the interim between termination and a final disposition of the parties' rights.").  Because Plaintiffs will be unable to demonstrate irreparable harm, their request for a pre-motion conference in connection with their motion for a preliminary injunction must be denied.

       For the foregoing reasons, DOE Defendants respectfully submit that Plaintiffs' and UFT and CSA's requests for a pre-motion conference must be denied.

Respectfully submitted,
/s/
Andrea O'Connor
Assistant Corporation Counsel

cc:     All Counsel, By ECF

5

Alfred P. Vigorito
John W. Barker
Gary W. Patterson, Jr.*
Jeffrey R. Nichols*
Mamle Stathatos Fulgieri
Scott A. Singer
Gregg D. Weinstock** ■ =
Kiki Chrisomallides*
Kevin D. Porter
Susan Vari

Edward J. Arevalo
Graig R. Avino*
Michael J. Battiste
Robert Boccio
Dylan Braverman
Thomas Brennan ▲
Dawn Bristol
Kenneth J. Burford
Gilbert H. Choi
Joshua R. Cohen
Adam S. Covitt

Charles K. Faillace ±
Jerry Giardina
Danielle M. Hansen
Anna Hock
Thomas Jaffa
Gemma Kenney ***
Ruth Bogatyrow Kraft
Douglas Langholz
Megan A. Lawlessz
Guy A. Lawrence
Timothy P. Lewis□
Neil Mascolo, Jr.
Adonald Medina*
Ralph Vincent Morales
Carolyn Rankin
Miles S. Reiner
Bhalinder L. Rikhye
Tammy A. Trees
Christopher Whitton
Julia F. Wilcox ±
Nicole R. Wittman
Arthur L. Yankowitz*

Theresa A. Bohm
Angela R. Bonica *
Lindsey T. Brown
Matthew M. Califano ±
Patricia M. Conzblo = =
Brian DiPentima*
Michael P. Diven * **
Tyler M. Fiorillo
Lauren P. Ingvoldstad□
Rani B. Kulkarni
Nicole E. Martens
Daniel O'Connell *
Brian C. Pearn
Andres J. Sandoval
Kathleen M. Thompson
Claudine Travers
Alexandra Zerrillo * ** =
Erion B. Zilber *

Of Counsel
Margaret Antonino* ■
Josie M. Condley
Rossana V. Driscoll
Mary M. Holupka
Joseph P. Mascaralla
Seema Palmeeson
Nicole C. Salerno *
Valerie L. Siragusa
Diana V. Solla
Karolina Wiadema

* Also Admitted to Practice in NJ
** Also Admitted to Practice in CT
*** Also Admitted to Practice in NJ, CT, DC
▲ Also Admitted to Practice in AL
■ Also Admitted to Practice in FL
‡ Also Admitted to Practice in NJ and PA
± Also Admitted to Practice in MA
▲ Also Admitted to Practice in AZ, CA and NJ
= Admitted to Practice in CO
† Admission Pending



# VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP

February 7, 2022

Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

<div align="center">

Re:   Broecker et al., v. Scheinman Arbitration et al
Docket No.: 21-cv-6387
VBPNP File No.: 72-066

</div>

Dear Judge Matsumoto:

In response to Your Honor's Order dated February 4, 2022, Defendants Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services, LLC (hereinafter "Scheinman Defendants") respectfully request that Plaintiffs' request for a pre-motion conference be denied.

Plaintiffs claim that "the NYCDOE has provided notice that it is terminating the Plaintiffs effective February 11, 2022" (Docket No. 72) and therefore request permission to file a Motion seeking a Temporary Restraining Order (hereinafter "TRO") and a Preliminary Injunction (hereinafter "PI"). For the reasons set below, Plaintiffs request should be denied as Plaintiffs entirely failed to establish irreparable harm which is a *sine qua non* of the relief sought.

Briefly, a party seeking a preliminary injunction or temporary restraining order "must ... show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Clapper*, 804 F.3d at 622 (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The burden on the moving party is even higher where a party seeks a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo. The Second Circuit has instructed that a mandatory injunction "should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

The showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction," *Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir.1983), and the moving party must show that injury is likely before the other requirements for an injunction will be considered. *See Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir.1999) (per curiam). To establish irreparable harm, a party seeking preliminary injunctive relief must show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation." *N.Y. Pathological & X–Ray Labs., Inc. v. INS,* 523 F.2d 79, 81 (2d Cir.1975); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002)

In their application, Plaintiffs failed to show that "money damages cannot provide adequate compensation" that for their termination or that the claimed harm which cannot be adequately redressed by final relief on the merits. As Plaintiffs did not claim that an irreparable harm would ensue, their request for the TRO and PI has no merit and should be denied.

Respectfully submitted,

*Karolina Wiaderna*

Karolina Wiaderna

cc:    all counsel of record

**JA-1380**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, *et al.,* on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                                 Plaintiffs,

         -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                                 Defendants.
-------------------------------------------------------------------X

**INDEX NO. 21-cv-6387**

**ORDER TO SHOW CAUSE**

     Upon the Declaration of James Hoffman, executed on the 4th day of February 2022, the Declaration of Nathalie Charles, executed on the 4th day of February 2022, Declaration of Serena Mendez, executed on the 4th day of February 2022, the Declaration of Tara Palladino, executed on the 7th day of February 2022, the Declaration of Janelle Lotito executed on the 8th day of February 2022, accompanying Affirmation of Austin Graff, affirmed to on the 8th day of February 2022 and upon the accompanying exhibits, the accompanying Memorandum of Law, it is

     **ORDERED**, that the above named Defendants show cause before a motion term of this Court at Room ___, United States Courthouse, _____, _____, County of _____, State of New York on _____ _____, 2022 at _____ o'clock in the ____noon thereof, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure:

                            enjoining and restraining the Defendant New York City Department of Education from terminating the employment of any Plaintiff before following the procedures set forth in N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or pursuant to collective bargaining agreements;
and it is further

1

JA-1381

**ORDERED**, that, sufficient reason having been shown therefore, pending the hearing of Plaintiffs' application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., the Defendants are temporarily:

enjoined and restrained the Defendant New York City Department of Education from terminating the employment of any Plaintiff before following the procedures set forth in N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or pursuant to collective bargaining agreements

and its further

**ORDERED** that security in the amount of $0.00 be posted by the Plaintiffs prior to _____ _____, 2022, at _____ o'clock in the ___noon of that day; and it is further

**ORDERED,** that personal service of a copy of this Order and the papers submitted in support of the Motion on or before _____ o'clock in the ____noon, _____ ___, 2022 shall be deemed good and sufficient service thereof upon the Defendants.

Dated: _____, New York
Issued: _____


_____
United States District Judge

2

**JA-1382**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NICOLE BROECKER, *et al.,* on behalf of themselves
and all other similarly situated employees of the New
York City Department of Education,

                                                      Plaintiffs,

                          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
*et al.,*

                                                      Defendants.
------------------------------------------------------------------------X

**INDEX NO. 21-cv-6387**

**AFFIRMATION OF AUSTIN
GRAFF IN SUPPORT OF THE
MOTION BY ORDER TO SHOW
CAUSE**

      **AUSTIN GRAFF**, an attorney admitted to practice law before this Court, who is not a party to this Action, affirmed to be true under penalties of perjury says:

      1.     I am associated with The Scher Law Firm, LLP, the attorneys for the Plaintiffs, in the above-entitled Action, and am familiar with the relevant facts and circumstances surrounding the allegations that comprise this litigation based upon the records maintained by my office regarding this matter. I submit this Affirmation in support of the Plaintiffs' Motion for a Preliminary Injunction pursuant to FRCP Rule 65.

      2.     On January 31, 2022, the Plaintiffs who did not comply with the COVID-19 vaccination mandate order issued by the Commissioner New York City Department of Health and Mental Hygiene ("COH") or submit an extension request for a leave of absence without pay received an email stating that his/her "employment with the New York City Department of Education is terminated, effective February 11, 2022." **Exhibit A**, copies of the termination notices.

      3.     The Plaintiffs who received termination notices are: Rena Gellman, Kerry Ben-Jacob, Ekaterina Udina, Maritza Romero, Betiziada Cruz, Jessica Narciso, Brianna Perez, Benedict LoParrino, Yaditza Rodriguez, Rafael Adrian Toro, Serina Mendez, Dina Hussien, Herendyra Pereyra, Rosa Abreu, Annette Backof, Stella Porto, Toniann Miraglia, RoseAnna Silvestri-Incantalupo, Julia Mavis, Yvonne Costello, Soraya Sanchez, Monique Moore, Nicole Broecker, Jessica Nicchio, Dorca Genao, James Hoffman, Sharlayne Jacobs, Frances

Case 23-655, Document 76, 06/05/2023, 3525010, Page31 of 302

DiProssimo, Carola Martinez-van Bokkem, Ayse, Ustares, Dianne Baker-Pacius, Nicole Moore, Elizabeth Placencio, Victoria Russo, Lisa Simo, Nathalie Charles, Tara Palladino, Diane Pagen, Leah Kukla, Stephanie Franzese, Beth Schiano, Laura Salamone, and Deidra Statuto.[1]

4.      The Plaintiffs have not received any due process before being terminated. The New York City Department of Education ("NYCDOE") states in the email that "[c]ompliance with the [COH's] Order is a condition of employment." **Exhibit A**.

5.      However, as discussed at length in the accompanying Memorandum of Law, to create a condition of employment in a New York school district, like the NYCDOE it requires either a vote of the Board of Education (N.Y. Education Law § 2573.9.) or an agreement with the school district's union (N.Y. Civil Service Law § 201.4.).

6.      The NYCDOE's Board of Education (which is called the Panel for Educational Policy) never adopted a resolution to make the COH Order a job qualification for employees of the NYCDOE.

7.      In addition, as the Defendant United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") has stated to this Court, the Plaintiffs are entitled to due process before they are terminated from their employment from the District. *See,* **Docket Entry No. 35**.

8.      The NYCDOE calling the DOH Order a condition of employment is insufficient as a matter of law to make it a condition of employment. There needs to be a statutory or contractual basis for a new condition of employment, neither of which the NYCDOE has and therefore, the NYCDOE does not possess such unilateral authority.

9.      As previously briefed to the Court (**Docket Entry Nos. 34, 35, 37**), the UFT and the NYCDOE disagree over the impact of the Arbitration Award has on the Plaintiffs' due process rights. Now that the NYCDOE has actually terminated the Plaintiffs effective February

---

[1] Forty-four Plaintiffs received termination notices. One, Danielle McGuire, received a follow-up email that stated the termination notice was sent in error and she was not being terminated effective February 11, 2022. Therefore, there are only forty-three Plaintiffs effective by the termination notices.

Case 23-655, Document 76, 06/05/2023, 3525010, Page32 of 302

11, 2022 (**Exhibit A**), the issue requires judicial intervention to prevent a violation of the Plaintiffs' due process rights and irreparable harm.

10.   The NYCDOE's stated intention to terminate the Plaintiffs effective February 11, 2022 violates the Plaintiffs' due process rights as tenured principals, assistant principals, teachers, and other NYCDOE employees who possess due process rights through statute (N.Y. Education Law § 3020-a or N.Y. Civil Service Law § 75) or through collective bargaining agreements.

11.   Finally, the NYCDOE has chosen February 11, 2022 as the effective date for the Plaintiffs' termination. Yet, it scheduled a program across all NYCDOE schools entitled "PS. I Love You Day" "to support kindness, anti-bullying, and suicide prevention." **Exhibit D, a** copy of the PS. I Love You Flyer. The NYCDOE is both unkind and bullying the Plaintiffs when it comes to the vaccine mandate. The fact that the terminations and anti-bullying program are scheduled for the same day is not only ironic, but reflective of what the NYCDOE feels about the Plaintiffs.

12.   This Court should grant an injunction barring the NYCDOE from terminating the Plaintiffs without due process.

13.   For the reasons argued in this Motion, the accompanying Affidavits, and in the accompanying Memorandum of Law, the Plaintiffs request a preliminary injunction be granted.

14.   The Plaintiffs rely upon the following exhibits in support of their Motion:

    a.   **Exhibit A** are copies of the termination notices received by the Plaintiffs from the NYCDOE;
    b.   **Exhibit B** is a copy of the Health Screening Questionnaire;
    c.   **Exhibit C** are copies of four Plaintiffs' antibody tests for COVID-19;
    d.   **Exhibit D** is a copy of the PS. I Love You Day flyer;
    e.   **Exhibit E** is a copy of the Indeed Job Post; and
    f.   **Exhibit F** is a copy of the Amended Complaint and Exhibits

**THEREFORE,** the Plaintiffs respectfully request that the Court grant this Motion, as well as such other and further relief as may be just and proper.

Dated:        Carle Place, New York
                February 8, 2022

_____
Austin Graff

JA-1386

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

INDEX NO. 21-cv-06387

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

Defendants.
-------------------------------------------------------------------X

## DECLARATION OF JAMES HOFFMAN

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      I am one of the Plaintiffs in this Action.  I am a tenured teacher employed by the Defendant New York City Department of Education ("NYCDOE").  On January 31, 2022, I received an email stating that I am terminated from my tenured position effective February 11, 2022 because I did not comply with the COVID-19 vaccine mandate.  *See,* **Exhibit A-1,** a copy of the email I received from the NYCDOE.  I offer this Declaration based upon my own personal knowledge.

2.      I have an autoimmune disease that requires daily treatment.  Without this treatment I will surely come out of remission and have to deal with painful flareups of my condition.  One of the horrible side effects of my autoimmune disease is internal bleeding.  I have also have two small children who are on my health insurance.

3.      Since I have been suspended without pay since October, 2021, I have been struggling to pay my bills.  I have a mortgage and am the primary provider for my family.  I can barely pay the mortgage as it is since I have been placed on a leave without pay since I have not taken a COVID-19 vaccine.

1

4.   If I lose my health insurance as a result of a termination of my employment, I will not be able to pay both for COBRA and my mortgage. I will have to make the Hobbesian choice of paying for a roof over my head or health insurance that covers the cost of my daily treatment for my autoimmune disease.

5.   The termination of my employment will cause me irreparable harm, which includes the risk of foreclosure and/or the loss of health insurance, which places my health at risk.

6.   Having worked ten years for the NYCDOE as a teacher, I earned my constitutional right to due process, which the NYCDOE has violated by terminating my employment without due process.

7.   I request the Court grant the Plaintiffs a preliminary injunction restraining and enjoining the NYCDOE from terminating my employment.

8.   I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 4th day of February 2022

James Hoffman

2

Case 23-655, Document 76, 06/05/2023, 3525010, Page36 of 302

JA-1388

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                                      Plaintiffs,

         -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                                      Defendants.
------------------------------------------------------------X

**INDEX NO. 21-cv-06387**

### DECLARATION OF NATHALIE CHARLES

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.    I am one of the Plaintiffs in this Action.  I am a tenured teacher employed by the Defendant New York City Department of Education ("NYCDOE").  On January 31, 2022, I received an email stating that I am terminated from my tenured position effective February 11, 2022 because I did not comply with the COVID-19 vaccine mandate.  *See*, **Exhibit A-2**, a copy of the email I received from the NYCDOE.  I offer this Declaration based upon my own personal knowledge.

2.    I am a widow raising my daughter as a single mother.  If I am terminated from my employment and I lose health insurance, my daughter and I will have no health coverage.  I have no source of income right now.

3.    I will be unable to pay for COBRA benefits because, as it is, I struggle to make my monthly mortgage payments since I have been suspended without pay.

4.    I have hypertension and take a daily prescription medication for my hypertension. If I lose my health insurance, I will be unable to afford my prescription.

5.    The termination of my employment will cause me irreparable harm, which includes risking my health and the health of my daughter if we lose health insurance.

6.    Having worked 14 years for the NYCDOE as a teacher.  I earned my constitutional right to due process, which the NYCDOE has violated by terminating my employment without due process.

7.    I request the Court grant the Plaintiffs a preliminary injunction restraining and enjoining the NYCDOE from terminating my employment.

8.    I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 4th day of February 2022

_Nathalie Charles_
Nathalie Charles

**JA-1390**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of themselves
and all other similarly situated employees of the New                    **INDEX NO. 21-cv-06387**
York City Department of Education,

                                                    Plaintiffs,

                                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
*et al.*,

                                                    Defendants.
-------------------------------------------------------------------X

## DECLARATION OF SERINA MENDEZ

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      I am one of the Plaintiffs in this Action.  I am a tenured special education teacher employed by the Defendant New York City Department of Education ("NYCDOE").   On January 31, 2022, I received an email stating that I am terminated from my tenured position effective February 11, 2022 because I did not comply with the COVID-19 vaccine mandate. *See,* **Exhibit A-3,** a copy of the email I received from the NYCDOE.  I offer this Declaration based upon my own personal knowledge.

2.      My husband and I are both not receiving any income, my husband because he was laid off during COVID, and I having not received a COVID-19 vaccine. If I am terminated from my employment and I lose health insurance, my husband and I will not have any health coverage.  My husband and I have no source of income right now.  My husband and I rely upon my health insurance coverage through the NYCDOE

3.      If we are required to make COBRA payments it will be impossible for us to both pay for COBRA and pay our mortgage and our monthly bills.  If I am terminated and must pay for COBRA, we will have to choose between paying for health insurance or paying our mortgage, putting our home at risk of foreclosure.

1

    4.    The termination of my employment will cause me irreparable harm, which includes the risk of foreclosure.

    5.    Having worked fifteen years for the NYCDOE as a special education teacher.  I earned my constitutional right to due process, which the NYCDOE has violated by terminating my employment without due process.

    6.    I request the Court grant the Plaintiffs a preliminary injunction restraining and enjoining the NYCDOE from terminating my employment.

    7.    I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 4th day of February 2022

_Serina Mendez_
Serina Mendez

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                              Plaintiffs,

           -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                            Defendants.
------------------------------------------------------------------X

**INDEX NO. 21-cv-06387**

### DECLARATION OF TARA PALLADINO

    Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

    1.    I am one of the Plaintiffs in this Action.  I am a tenured teacher employed by the Defendant New York City Department of Education ("NYCDOE,,).  On January 31, 2022, I received an email stating that I am terminated from my tenured position effective February 11, 2022 because I did not comply with the COVID-19 vaccine mandate.  *See,* **Exhibit A-4**, a copy of the email I received from the NYCDOE.  I offer this Declaration based upon my own personal knowledge.

    2.    I am a divorced mother of two children, ages 10 and 6.  I have a mortgage and am the sole provider for my family.  I can barely pay the mortgage as it is since I have been placed on a leave without pay since I have not taken a COVID-19 vaccine.

    3.    If I lose my health insurance as a result of a termination of my employment, I will not be able to pay both for COBRA and my mortgage.  I will have to make the Hobbesian choice of paying for a roof over my children's head or health insurance in case they become sick.

4.      The termination of my employment will cause me irreparable harm, which includes the risk of foreclosure and/or the loss of health insurance.

5.      Having worked 22 years for the NYCDOE as a teacher. I earned my constitutional right to due process, which the NYCDOE has violated by terminating my employment without due process.

6.      I request the Court grant the Plaintiffs a preliminary injunction restraining and enjoining the NYCDOE from terminating my employment.

7.      I declare under penalty of perjury, that the foregoing is true and correct.


Executed on this 7th day of February 2022

*Tara Palladino*

Tara Palladino

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NICOLE BROECKER. *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education.

                       Plaintiffs,

         -against-

NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION, *et al.*,

                    Defendants.
------------------------------------------------------------------X

**INDEX NO. 21-cv-06387**

### DECLARATION OF JANELLE LOTITO

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.     I am one of the Plaintiffs in this Action.  I offer this Declaration based upon my own personal knowledge.

2.     Despite being an unvaccinated person, I was permitted into my son's school when I dropped him off at school.  I have never been not asked to complete any documents or show proof of vaccination or even a health screen questionnaire.  I have had to fill out a health screen questionnaire for my son who attends a NYCDOE school every day.  *See,* **Exhibit B**, a copy of the Health Screen Questionnaire.

3.     Over the last several months, I have had to pick up my son at his NYCDOE school.  I was able to stand inside the building and watch him walk to me from the foyer near the security guard.

4.     The NYCDOE's argument that I am unfit to work in the schools is contradicted by the NYCDOE permitting unvaccinated parents access to the schools without any health screening or proof of vaccine.  The inconsistency in NYCDOE's rhetoric versus the NYCDOE's conduct reveals that the vaccine is not a condition of employment or makes me fit for

1

**JA-1395**

employment.  It is an attempt to bully me and my fellow employees into conforming to their worldview of fighting COVID-19, one which I do not adopt.

5.      I request that the Court grant the Plaintiffs a Temporary Restraining Order and Preliminary Injunction.

6.      I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 8th day of February 2022

_____

Janelle Lotito

2

JA-1396

**Ruth Nassir**

| | |
|---|---|
| **From:** | James Hoffman [jhoffman_19@yahoo.com] |
| **Sent:** | Monday, January 31, 2022 9:00 PM |
| **To:** | Ruth Nassir |
| **Subject:** | Re: Activity in Case 1:21-cv-06387-KAM-LB Broecker et al v. New York City Department of Education et al |

Ruth,
Here is a screenshot of the email I received from the division of Human Resources about me being terminated.

Best regards,



## February 11 Termination of Employment from the NYCDOE

**Division of Human Resources**
Mon 1/31/2022 3:15 PM

Dear DOE Employee,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff. Compliance with that Order is a condition of employment. Since you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022. Please note that your health insurance coverage through the City will also cease upon termination.

You must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

If you believe you are receiving this notification in error, please email LWOPquestions@schools.nyc.gov no later than February 2, 2022.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources

**Ruth Nassir**

| | |
|---|---|
| **From:** | N C [nathalie0205@gmail.com] |
| **Sent:** | Tuesday, February 8, 2022 10:59 AM |
| **To:** | Ruth Nassir |
| **Subject:** | Fwd: Fw: February 11 Termination of Employment from the NYCDOE |

Hello Ruth,

As per our phone conversation this morning here is the termination letter I received from the DOE.

Thank you,
Nathalie Charles
---------- Forwarded message ---------
From: **Charles Nathalie** <NCharles2@schools.nyc.gov>
Date: Mon, Jan 31, 2022 at 5:45 PM
Subject: Fw: February 11 Termination of Employment from the NYCDOE
To: Nathalie Charles <nathalie0205@gmail.com>

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Monday, January 31, 2022 3:17 PM
**Subject:** February 11 Termination of Employment from the NYCDOE

Dear DOE Employee,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff. Compliance with that Order is a condition of employment. Since you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022. Please note that your health insurance coverage through the City will also cease upon termination.

You must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

If you believe you are receiving this notification in error, please email LWOPquestions@schools.nyc.gov no later than February 2, 2022.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources

1

**JA-1399**

Case 1:21-cv-06387-KAM-LB   Document 76-7   Filed 02/08/22   Page 8 of 11 PageID #: 2160

**Ruth Nassir**

| | |
|---|---|
| **From:** | Mendez Serina [SMendez10@schools.nyc.gov] |
| **Sent:** | Monday, January 31, 2022 8:13 PM |
| **To:** | Ruth Nassir |
| **Subject:** | Serina Mendez Termination Letter. Please let me know that you received it. Thanks. |

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Monday, January 31, 2022 3:18 PM
**Subject:** February 11 Termination of Employment from the NYCDOE

Dear DOE Employee,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff. Compliance with that Order is a condition of employment. Since you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022. Please note that your health insurance coverage through the City will also cease upon termination.

You must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

If you believe you are receiving this notification in error, please email LWOPquestions@schools.nyc.gov no later than February 2, 2022.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources

1

JA-1400

**Ruth Nassir**

| | |
|---|---|
| **From:** | pallyjr@optonline.net |
| **Sent:** | Monday, January 31, 2022 8:35 PM |
| **To:** | Ruth Nassir |
| **Subject:** | Fwd: Fw: February 11 Termination of Employment from the NYCDOE |

Dear Ruth,

This is the email I received from the DOE. Please let me know when you receive this email. Thank you for your help in all of this.

Sincerely,

Tara Palladino

------ Original Message ------
From: TPallad@schools.nyc.gov
To: pallyjr@optonline.net
Sent: Monday, January 31, 2022 8:27 PM
Subject: Fw: February 11 Termination of Employment from the NYCDOE

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Monday, January 31, 2022 3:18 PM
**Subject:** February 11 Termination of Employment from the NYCDOE

Dear DOE Employee,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff. Compliance with that Order is a condition of employment. Since you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022. Please note that your health insurance coverage through the City will also cease upon termination.

You must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

If you believe you are receiving this notification in error, please email LWOPquestions@schools.nyc.gov no later than February 2, 2022.

Thank you for your service to the New York City Department of Education.

Sincerely,

1

JA-1401

**NYCDOE Division of Human Resources**

NYC Department of Education

**Health Screening Questionnaire**

All DOE students, employees, and visitors must complete a health screening before entering DOE facilities. This health screening must be completed on each day of arrival. This health screening can also be completed online at: https://healthscreening.schools.nyc/. Upon entering the facility, if you have not completed the online health form you will be asked to provide responses to the questions below. As a reminder, all DOE employees must be vaccinated to enter our school buildings.

1. Have you experienced any symptoms of COVID-19, including a fever of 100.0 degrees F or greater, a new cough, sore throat, loss of taste or smell or shortness of breath that started in the past 10 days?
   - ☐ No. Go to the next question.
   - ☐ Yes, and I have received a negative result from a COVID-19 diagnostic test performed by a health care provider OR I am a student or school-based staff member who received two negative results from a take-home test taken at least 24 hours apart since the onset of symptoms AND have only mild symptoms (no runny nose; if cough, cough minimal and non-productive, fever-free for 24 hours without the use of medication). Go to the next question.
   - ☐ Yes, and I am a school-based staff member returning on Day 6 of isolation with mild symptoms (no runny nose, if cough, cough minimal and non-productive, fever-free for 72 hours without the use of medication), wearing a higher grade face covering such as a KN95 or N95. Go to the next question.
   - ☐ Yes, and I am not in the categories above. No further screening is needed. The individual may not enter the building.

2. In the past 10 days, have you gotten a positive result from a COVID-19 diagnostic test? Please note that 10 days is measured from the day you were tested, not from the day when you got the test result.
   - ☐ No. Go to the next question.
   - ☐ Yes, and I am a school-based staff member returning on Day 6 of isolation with no symptoms or mild symptoms that are improving (no runny nose, if cough, cough minimal and non-productive, have been fever free for 72 hours without the use of medication), wearing a higher grade face covering such as a KN95 or N95. Go to the next question.
   - ☐ Yes. No further screening is needed. The individual may not enter the building.

3. In the past 10 days, were you in close contact with someone who tested positive for COVID-19?
   - ☐ No. The individual may enter the building.
   - ☐ Yes, I was exposed at school, and am taking COVID-19 diagnostic test(s) as directed by my school and have NOT received a positive result on these tests. If I test positive, I will begin isolation. The individual may enter the building.
   - ☐ Yes, I was exposed at school but I have not received a home test kit. Please contact your school to ensure you receive a home test kit today. The individual may enter the building.
   - ☐ Yes, and I am not fully vaccinated returning from quarantine from an exposure outside of school on Day 6 with proof of a negative diagnostic COVID-19 test performed on Day 5 or later. The individual may enter the building.
   - ☐ Yes, I was exposed outside of school, but I am considered fully vaccinated. The individual may enter the building.
   - ☐ Yes, and I was exposed outside of school and I am not fully vaccinated. The individual may not enter the building.

As a reminder, in accordance with New York State Department of Health requirements, Centers for Disease Control and Prevention recommendations, and DOE policies, all individuals in a DOE school building and all DOE staff and contractors in DOE offices MUST wear a face covering at all times, unless eating or drinking, or unless they have a medical exemption.

*This health screening is not intended to be a substitute for professional medical advice, diagnosis, or treatment. Always seek the advice of a qualified health provider with any questions you may have regarding a medical condition. Health screening results will be reviewed for the sole purpose of granting access to facilities and confidentiality will be maintained.*

The NYC Department of Education may change recommendations as the situation evolves. January 3, 2022



JA-1403

**Results Report** Released

Operator ID: CP

System serial number

| C / P | Module | SID | Name | Assay | Result | Flags | Code | Date / Time |
|-------|--------|-----|------|-------|--------|-------|------|-------------|
| U730/1 | 2 | USTARES A | | COV-2 IgM | 0.15 Index Negative | | | 10 06 2021 20 12 |
| U730/1 | 2 | USTARES A | | COV-2 IgG | 2.91 Index Positive | | | 10 06 2021 20 11 |

Printed on 10.06.2021 8 20 12PM

**ARCHITECT**

Page 1 of 1

McGuire, Danielle

**① SARS CoV2, IgG Spike S QN**

Collected 11/23/2021 13:45

Orde

| | Ref Range & Units | 2 wk ago |
|---|---|---|
| SARS COV2, IgG, Spike QN | ≥0.80 U/mL | >250.00 ▲ |

**Narrative**

| Result | Interpretation |
|---|---|
| <0.80 U/mL | Negative for anti-SARS-CoV-2 S |
| >= 0.80 to 250 U/mL value | Positive for anti-SARS-CoV-2 S, numeric witin measuring interval. |
| >250 U/mL value | Positive for anti-SARS-CoV-2 S, numeric >250 U/mL. |

Elecsys Anti-SARS-CoV-2 S is an electrochemiluminescence immunoassay (ECLIA) intended for qualitative and semi-quantitative detection of antibodies to SARS-CoV-2 spike (S) protein receptor binding domain (RBD) in human serum and plasma.

This test is intended for use as an aid in identifying individuals with an adaptive immune response to SARS-CoV-2, indicating recent or prior infection. This test also measures immune response to SARS-CoV-2 SPIKE (S) RBD containing vaccines.

Negative results do not preclude acute SARS-CoV-2 infection. At this time, it is unknown for how long antibodies persist following infection and if the presence of antibodies confers protective immunity.

The Elecsys Anti-SARS-CoV-2 S should not be used to diagnose acute SARS-CoV-2 infection. The spike protein is the target of many COVID-19 vaccines in development.

The results of this semi-quantitative test should not be interpreted as an indication or degree of immunity or protection from reinfection.

The Elecsys Anti-SARS-Cov-2 S assay is only for use under the Food and Drug Administration's Emergency Use Authorization (EUA) by laboratories certified under the Clinical Laboratory Improvement Amendments of 1988, to perform moderate and high complexity tests. For health care provider fact sheet and patient fact sheet, go to http://diagnostics.roche.com.

**Related Result Highlights**                                          11/23/2021

**⊙ Vitamin D 25 hydroxy** Final result

McGuire, Danielle                              la Vicari (2518 at 12-1-2021 10:53...  Page 2 of

**JA-1405**



**JA-1406**

**Jack Fatiha MD PC**

Russo, Victoria, F, ▮▮▮▮▮

📞 718-373-3513

701 AVENUE U , BROOKLYN, NY 11223-4133
📞 718-336-0100

FINAL RESULT

| Accession ID: 6610769 | Lab Ref ID: 6610769 |
|---|---|
| Order Date: 10/12/2021 | Received: 10/13/2021 06:18:02 |
| Collection Date: 10/12/2021 13:06:00 | Report: 10/13/2021 06:14:00 |

Requesting Physician:Fatiha  Jack

# COVID 19 IgG QUANT, PLASMA (SEPARATE LAVENDER)

| NAME | VALUE | REFERENCE RANGE |
|---|---|---|
| F   LIAISON SARS-CoV-2 TrimericS IgG | **21.8** H | <13.0 (AU/mL) |

- Patient results should be interpreted as follows:
- AU/mL           Interpretation          Description
- < 13.0 AU/mL    Negative               Antibodies for SARS-CoV-2 not detected
- >/= 13.0 AU/mL  Positive               Antibodies for SARS-CoV-2 are detected
- The LIAISON SARS-CoV-2 TrimericS IgG is a chemiluminescent immunoassay (CLIA)
- intended for the qualitative and semi-quantitative detection of IgG antibodies
- to SARS-CoV-2 in human serum.
- The LIAISON SARS-CoV-2 TrimericS IgG is intended for use as an aid in
- identifying individuals with an adaptive immune response to SARS-CoV-2,
- indicating recent or prior infection. At this time, it is unknown for how long
- antibodies persist following infection and if the presence of antibodies
- confers protective immunity. The LIAISON SARS-CoV-2 TrimericS IgG should not
- be used to diagnose or exclude acute SARS-CoV-2 infection.
- Results are for the detection of SARS CoV-2 IgG antibodies. IgG antibodies to
- SARS-CoV-2 are generally detectable in blood several days after initial
- infection, although the duration of time antibodies are present post-infection
- is not well characterized. Individuals may have detectable virus present for
- several weeks following seroconversion. Negative results do not preclude acute
- SARS-CoV-2 infection. If acute infection is suspected, direct testing for
- SARSCoV-2 is necessary. False positive results for LIAISON SARS-CoV-2
- TrimericS IgG may occur due to cross-reactivity from pre-existing antibodies or
- other possible causes.
- The LIAISON SARS-CoV-2 TrimericS IgG is only for use under the Food and Drug
- Administrations Emergency Use Authorization.
- Serial measurements of COVID 19 IgG must be interpreted with caution.  Lenco
- Diagnostic Laboratory has recently changed methodologies for this test and the

JA-1407

NAME                                              VALUE                    REFERENCE RANGE

- previous test had different cut off values and performance characteristics.

- Please refer to Lenco Diagnostic Lab updates for details of these changes.

F   PDFReport                                      H

| PERFORM NG LAB: Lifepoint Support  99887  LENCO LABS  1857 86TH STREET BROOKLYN |
| --- |

**Result:**              Normal              **Accession ID:**              6610769



docs.google.com/presentation/d/1Jo_RjgDNqPrxKnlqL0pVh6inyiiTi1Ajkmdw3cfpgAg/edit#slide=id.g10faade1588_0_4992
TW Memo 013122
File Edit View Tools Help
Last edit was made yesterday at 5:26 AM by Neil McNeill
Slideshow
Share
View only
PS. I Love You Day
February 11th, 2022
Times are tough and this year, more than ever, it is important to check in on the mental health of our students. We have already began that work with DESSA and EF, and we continue to find ways to lift up our students and our school community.
This year, we are introducing P.S. I Love You Day. It is celebrated across New York in elementary schools, middle schools, and high schools. We will participate by having students and staff wear purple on February 11th, 2022 to support kindness, anti-bullying, and suicide prevention. We will also participate in a 5 day kindness challenge. We ask that you post the calendar of kindness related activities for your students, the week of February 7th. Check out the P.S. I Love You Day website here: http://psiloveyouday.net/
If you have any questions you can email Katie Burke in room 305- she will be printing and distributing any materials needed for the activities (Positive affirmation activity to collect and hang up for Wednesday and Kindness Grams for Thursday)
Kindness Challenge
Type here to search
27°F
6:21 AM
2/1/2022

JA-1409

**indeed**

Sign in    ☰



# Speech Language Pathologist and CFs - $1,000 Bonus

The Perfect Playground
Brooklyn, NY
Up to $65 an hour  - Full-time

**The Perfect Playground**                                      ›
████████ 12 reviews
Read what people are saying about working here.

Apply now

## Job details

**Salary**
Up to $65 an hour

**Job Type**
Full-time

**Number of hires for this role**
On-going need to fill this role

## Qualifications

- Master's (Preferred)

## Benefits

*Pulled from the full job description*

JA-1410

Continuing education credits  Health savings account  Health insurance  Dental insurance  401(k)

Flexible spending account  Tuition reimbursement  Paid time off  Vision insurance  Employee discount

Professional development assistance  Life insurance  Referral program

## Full Job Description

**Perfect Playground (part of the SSG family) is currently interviewing Speech Language Pathologists and Clinical Fellows like YOU for school assignments! Locations include Staten Island, Brooklyn, Queens, Bronx and Manhattan!**

**$1,000 BONUS & Up to $65/Hour**

*\*Please note this applies to new employee's and for all locations*

Join our team and together, we will continue our mission of transforming the lives of children and families, improving the quality of therapeutic and behavioral services, and joining with like-minded therapists, clinicians and educators in order to have a greater impact in our communities.

**We offer Clinical Support at every stage of your career, Professional Development, Comprehensive Benefits Package, CEU webinars and much more!**

- Professional development allowance & wellness stipend
- Mentoring & Clinical support for Speech Language Pathologists at all stages of your career
- Online resources including ASHA approved webinars, therapy ideas, and free CEUs

**Qualifications:**

- Master's degree from an accredited university
- NY Speech Language Pathologist License Required - School Based Experience Preferred
- We encourage New Grads to apply

Our passionate leadership team and expansive clinical support network ensure the delivery of the highest quality therapeutic and behavioral health services nationwide. The Stepping Stones Group is committed to diversity and inclusion beyond conceptual factors.

Job Type: Full-time

Pay: Up to $65.00 per hour

Benefits:

- 401(k)
- Dental insurance
- Employee discount
- Flexible spending account
- Health insurance
- Health savings account
- Life insurance
- Paid time off
- Professional development assistance
- Referral program
- Tuition reimbursement
- Vision insurance

JA-1411

Medical Specialty:

- Pediatrics

Schedule:

- Monday to Friday

Education:

- Master's (Preferred)

License/Certification:

- NY SLP License (Preferred)

Work Location: One location

20 days ago

If you require alternative methods of application or screening, you must approach the employer directly to request this as Indeed is not responsible for the employer's application process.

**Report job**

Speech Language Pathologist jobs in Brooklyn, NY

Jobs at The Perfect Playground in Brooklyn, NY

Speech Language Pathologist salaries in Brooklyn, NY

Hiring Lab    Career Advice    Browse Jobs    Browse Companies    Salaries    Find Certifications

Browse Schools    Indeed Events    Work at Indeed    Countries    About    Help Center

© 2022 Indeed    Do Not Sell My Personal Information    Accessibility at Indeed    Privacy Center    Cookies

Privacy    Terms

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                        Plaintiffs,

              -against-

NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION, *et al.*,

                        Defendants.
------------------------------------------------------------------X

**INDEX NO. 21-cv-6387**


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION**


THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

JA-1413

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ....................................................................... 1

POINT I.   STANDARD OF REVIEW FOR A PRELIMINARY
           INJUNCTION ................................................................................ 2

   A.   Irreparable Harm ................................................................................ 4

   B.   Clear Showing Of Entitlement To Relief .......................................... 6

POINT II.   COH HAS NO LEGAL AUTHORITY TO CREATE A
            CONDITION   OF   EMPLOYMENT   FOR   THE
            EMPLOYEES OF THE NYCDOE ................................................ 7

POINT III.   THE   PLAINTIFFS'   DUE   PROCESS   RIGHTS
             REGARDING FITNESS FOR DUTY HAVE BEEN
             VIOLATED ................................................................................. 11

POINT IV.   NYCDOE   IS   VIOLATING   THE   PLAINTIFFS'
            PROCEDURAL DUE PROCESS RIGHTS ................................ 12

   A.   Tenured Principals, Tenured Assistant Principals, and Tenured
        Teachers .......................................................................................... 13

   B.   NYDOE's Civil Service Employees With N.Y. Civil Service Law §
        75 Rights ......................................................................................... 14

   C.   NYCDOE Employees Entitled To Hearings Pursuant To Collective
        Bargaining Agreements ................................................................... 15

CONCLUSION ............................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990) ............................................................................. 6

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir 1985) ...................... 3

*Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 743-744 (2d Cir 2000) ................................................................................................................. 3

*BST Holdings, L.L.C. v OSHA*, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir 2021) ........................................................................................................... 4

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ......... 13, 16

*Communications Workers of Am., Dist. One v Nynex Corp.*, 898 F2d 887, 891 (2d Cir 1990) .............................................................................................. 5

*Dwyer v. Regan*, 777 F.2d 825, 831 (2d Cir 1985) ..................................... 15

*Evans v Newman*, 71 A.D.2d 240, 243 (3d Dept 1979) .............................. 6

*Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex 2022) ...... 4, 12

*Golden v Kelsey-Hayes Co.*, 845 F.Supp. 410, 415-416 (E.D. Mich. 1994) ............... 5

*Jackson v. Roslyn Bd. of Educ.*, 652 F.Supp.2d 332, 343 (E.D.N.Y. 2009) .............. 15

*Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *26, n 18 (2d Cir 2021) ................................................................................................................. 4

*Newman v. Bd. of Educ.*, 594 F.2d 299, 304 (2d Cir 1979) ....................... 12

*Plaza Health Labs., Inc. v. Perales*, 878 F2d 577 (2d Cir 1989) ............. 2, 3

*S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988) ....... 15

*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 44 (2d Cir 2001) ....... 13

*Shaul v. Cherry Val.-Springfield Cent. Sch. Dist.*, 218 F.Supp.2d 266, 271 (N.D.N.Y. 2002) ............................................................................................. 14

*Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir 1990):.................................................................................................................. 14

*Whelan v Colgan*, 602 F.2d 1060, 1062 (2d Cir 1979)................................................................ 5

**Statutes**

N.Y. Civil Service Law § 75.1. .................................................................................................... 14

N.Y. Education Law § 2568 .......................................................................................................... 11

N.Y. Education Law § 913 ............................................................................................................ 12

**Other Authorities**

https://nypost.com/2021/12/25/doe-skips-deadline-to-suspend-employees-who-havent-shown-proof-of-second-vax/ (visited January 27, 2022)......................................... 11

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs and all others similarly situated in this Action in support of their Motion, on an emergency basis, for a Temporary Restraining Order and Preliminary Injunction, enjoining the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") from violating the Plaintiffs' due process.

On January 31, 2022, the Plaintiffs who did not comply with the COVID-19 vaccination mandate order issued by the Commissioner of New York City Department of Health and Mental Hygiene ("COH") or submit an extension request for a leave of absence without pay received an email stating that his/her "employment with the New York City Department of Education is terminated, effective February 11, 2022." **Exhibit A**, copies of the exact, generic, termination notice received by the Plaintiffs.

The Plaintiffs who have received termination notices are a tenured Assistant Principal, tenured teachers, school social workers, para professionals, and parent coordinator. All of these employees of the NYCDOE have tenure rights pursuant to N.Y. Education Law § 3020-a or rights pursuant to N.Y. Civil Service Law § 75 or rights pursuant to a collective bargaining agreement that entitle them to charges and a hearing before being terminated.

The NYCDOE couches the COH Order requiring a COVID-19 vaccine as a "condition of employment". **Exhibit A**. However, as discussed at length in this Memorandum of Law, the NYCDOE failed to take the necessary statutory steps to create a new condition of employment and therefore, the NYCDOE's unilateral pronouncement that the COH Order is a condition of employment fails as a matter of law.

This Court was told by the NYCDOE and the Court stated in its prior ruling on the Plaintiffs' application for a preliminary injunction:

> Plaintiffs will be afforded the processes required by the applicable CBA and the Impact Arbitration Award when and if the NYC DOE seeks separation, undermining Plaintiffs' arguments that they will

1

be terminated in violation of their constitutional right to due process without a post-deprivation hearing. The Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) (property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (internal citations omitted).

**Docket Entry No. 33**, at page 18.

The NYCDOE has acted in contradiction to the representation made to the Court prior to the Court's decision on the Plaintiffs' application for a preliminary injunction. The NYCDOE has terminated the Plaintiffs' employment without any due process.

If the sole source of authority to terminate the Plaintiff's employment, the COH Order, is not a condition of employment, the NYCDOE has no legal authority to terminate the Plaintiffs without due process.

Accordingly, this Court should hold that the NYCDOE's statement that the DOH Order imposes a new condition of employment upon the employees of the NYCDOE to be improper as a matter of law and should grant the Plaintiffs a Temporary Restraining Order and ultimately a Preliminary Injunction barring the NYCDOE from unilaterally terminating the Plaintiffs without due process.

**POINT I.   STANDARD OF REVIEW FOR A PRELIMINARY INJUNCTION**

The Second Circuit has set forth two standards of review for a District Court to analyze whether an injunction should issue. Both standards come from the Court's decision in *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577 (2d Cir 1989).

The first standard states that

[i]n general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

*Plaza Health Labs., Inc. v. Perales*, 878 F.2d at 580.

The second standard states that

where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim.

*Plaza Health Labs., Inc. v. Perales*, 878 F.2d at 580.

In *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir 1985), the Court held

[w]here such is the case, an injunction is often deemed mandatory, rather than prohibitory, and a greater showing is required of the moving party. *See Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 (2d Cir. 1977). In these circumstances, we have held that an injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested," *Flintkote Co. v. Blumenthal*, 469 F. Supp. 115, 125-26 (N.D.N.Y.), *aff'd*, 596 F.2d 51 (2d Cir. 1979), or where "extreme or very serious damage will result" from a denial of preliminary relief, *Clune v. Publishers' Ass'n*, 214 F. Supp. 520, 531 (S.D.N.Y.), *aff'd*, 314 F.2d 343 (2d Cir. 1963). In sum, we have shown "greater reluctance to issue a mandatory injunction than a prohibitory injunction." *Hurley v. Toia*, 432 F. Supp. 1170, 1175 (S.D.N.Y.), *aff'd mem.*, 573 F.2d 1291 (2d Cir. 1977).

In *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 743-744 (2d Cir 2000), the Court held

3

> [i]n most cases, a party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. *See Forest City Daly Hous., Inc. v. Town of North Hempstead,* 175 F.3d 144, 149 (2d Cir. 1999). In some cases, a significantly higher standard applies. The moving party must make a "clear" or "substantial" showing of a likelihood of success in two instances: where (1) the injunction sought is mandatory, i.e., "will alter, rather than maintain, the status quo"; or (2) the injunction sought "will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir. 1996) (internal quotation marks omitted).

The Plaintiffs can meet their heavy burden in this Motion.

## A.   Irreparable Harm

Since the Court's ruling in this Action denying the Plaintiffs' preliminary injunction to restore the Plaintiffs to payroll (**Docket Entry No. 33**), the choice between one's job(s) and their jab(s) has been determined to be an irreparable injury. *See, BST Holdings, L.L.C. v OSHA*, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir 2021) (holding "the Mandate threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s). For the individual petitioners, the loss of constitutional freedoms "for even minimal periods of time . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").).

In *Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex 2022), the Court held that "the choice between one's "job(s) and their jab(s)" is an irreparable injury."

The Second Circuit in *Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *26, n 18 (2d Cir 2021) (emphasis in original) recognized that the loss of employment does not *usually* constitute irreparable injury, the Court cited to *BST Holdings, LLC* for the proposition that irreparable harm

4

**JA-1420**

can be found where reluctant recipients were put to a choice between their job(s) and their jab(s). The citation to *BST Holdings, LLC* by the Second Circuit raises the specter that in this Circuit, the choice between a job and a jab is irreparable harm.

In this case, the Plaintiffs are being forced to choose between their job and a jab (vaccine) and are being told that because they did not choose a jab (vaccine), they are losing their job, without due process, which they are entitled to as tenured employees (or have due process pursuant to a collective bargaining agreement) of the NYCDOE.

In addition, in *Communications Workers of Am., Dist. One v Nynex Corp.*, 898 F2d 887, 891 (2d Cir 1990), the Court held "the threat of termination of medical benefits to striking workers has been held to constitute irreparable harm."

In *Whelan v Colgan*, 602 F.2d 1060, 1062 (2d Cir 1979), "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury."

In *Golden v Kelsey-Hayes Co.*, 845 F.Supp. 410, 415-416 (E.D. Mich. 1994), the Court opined that "[n]umerous courts have found that reductions in retiree insurance coverage constitute irreparable harm, meriting a preliminary injunction...."

As discussed in the Declaration of James Hoffman, executed on the 4th day of February 2022, the Declaration of Nathalie Charles, executed on the 4th day of February 2022, Declaration of Serena Mendez, executed on the 4th day of February 2022, the Declaration of Tara Palladino, executed on the 7th day of February 2022, the loss of medical benefits will result in irreparable harm to the Plaintiffs.

Accordingly, the Plaintiffs can show irreparable injury.

**JA-1421**

**B.      Clear Showing Of Entitlement To Relief**

As this Court opined: "[t]he Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants." **Docket Entry No. 33**, at page 18.

Yet, the NYCDOE has decided to ignore the fact that the Plaintiffs, as public employees, have a protected property interest in their continued employment and has decided to terminate the Plaintiffs without affording them due process.

As discussed at Point II below, the COH has no statutory or administrative authority to impose a new condition of employment upon NYCDOE employees.  Pursuant to N.Y. Education Law § 2573.9. only a City's Board of Education, or in the case of the NYCDOE, the Panel for Educational Policy, can impose a new qualification for employment in a City school district.  There is no evidence that the NYCDOE's Panel for Educational Policy adopted a resolution imposing a COVID-19 vaccine as a qualification for employment with the NYCDOE as authorized by N.Y. Education Law § 2573.9.

Additionally, N.Y. Civil Service Law requires that all terms and conditions of employment for a public employer are mandatory subjects of bargaining.  *See, Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990); *Evans v Newman*, 71 A.D.2d 240, 243 (3d Dept 1979).

Since the UFT has argued before this Court that it does not agree that the COVID-19 vaccine is a condition of employment and before a member of the UFT can be terminated the NYCDOE must comply with N.Y. Education Law § 3020-a (*see*, **Docket Entry No. 35**), the NYCDOE failed to comply with the Taylor Law and negotiate a new condition of employment.

Accordingly, the NYCDOE's unilateral pronouncement that the COVID-19 vaccine is a new condition of employment is unsupported by the law.  The NYCDOE has no legal authority to

JA-1422

create a new condition out of whole cloth without complying with either the N.Y. Education Law or N.Y. Civil Service Law.

The NYCDOE cannot infringe or violate the Plaintiffs' due process rights by calling the COVID-19 vaccine a condition of employment.

As a result, the Plaintiffs have a high likelihood of success that they will defeat the NYCDOE's argument that the COVID-19 vaccine is a condition of employment to be employed by the NYCDOE.

*************

The Plaintiffs are seeking affirmative relief injunction (or mandatory injunction), seeking to alter the status quo, restoring the Plaintiffs to their employment and altering the NYCDOE's effective date for the termination of the Plaintiff from their employment.

Here, the Plaintiffs are asking for a mandatory injunction, seeking to be restored to their employment, since the NYCDOE improperly, illegally, and unconstitutionally have terminated them without due process.

Since the Plaintiffs can set forth a clear and unambiguous violation of their constitutional rights, the Court should grant the Plaintiffs both (1) a mandatory injunction, reinstating the Plaintiff's employment, and (2) a prohibitory injunction barring the NYCDOE from terminating the Plaintiffs without due process.

Accordingly, the Plaintiffs' requested relief should be granted.

**POINT II.    COH HAS NO LEGAL AUTHORITY TO CREATE A CONDITION OF EMPLOYMENT FOR THE EMPLOYEES OF THE NYCDOE**

The COH's Order does not state that the COVID-19 vaccine is a condition of employment to be employed by the NYCDOE. *See,* **Docket Entry No. 47-7**.  The NYCDOE is taking the

7

extraordinary step of creating a "condition of employment" out of whole cloth.  There is no basis in law or fact to create such a condition of employment.[1]

Even if the NYCDOE is correct that the COVID-19 vaccine is a condition of employment, it does not abrogate the Plaintiffs' due process rights and permit the NYCDOE to violate the Plaintiffs' protected property interest in their continued employment.

### A.    N.Y. Education Law § 2573.9. Requires A Vote Of The Board Of Education To Impose A New Job Qualification

N.Y. Education Law and its implementing regulations set the qualifications for administrators, teachers, social workers, and other employees of the NYCDOE.  *See, e.g.,* N.Y. Education Law § 3001; 8 N.Y.C.R.R § 80-2.4.

However, the NYCDOE is not required to limit itself to State-imposed qualifications and may set additional qualifications for those employed by the NYCDOE.

N.Y. Education Law § 2573.9. authorizes "a board of education may prescribe additional or higher qualifications for the persons employed in" the positions of principal, supervisor, director or teacher appointed to the teaching force of a city.

While the NYCDOE is not governed by a Board of Education, but by a Panel for Educational Policy (*see,* https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws (visited January 26, 2022)), there is no evidence, and the Defendants have never argued that the Panel for Educational Policy has adopted a resolution establishing that a COVID-19 vaccine is a qualification of employment for the NYCDOE.

---

[1] The NYCDOE is likely to rely upon three New York State Supreme Court cases that held that the vaccine is a condition of employment. *See, Lanzer v. BOE, et al.,* Index No. 160017/21 (N.Y. Sup. N.Y. County); *Romero v. BOE, et al.,* Index No. 160353/21 (N.Y. Sup., N.Y. County); *O'Reilly v. BOE, et al.* Index No. 161040/21 (N.Y. Sup., N.Y. County).  The Courts in these cases did not set forth the basis for its decision, whether a statute, an exhibit to the Motion, or a prior Court's decision.  The Plaintiffs are requesting this Court to determine that the NYCDOE does not have the authority to create a new condition of employment without complying with N.Y. Education Law and/or make it a mandatory subject of negotiation with the unions pursuant to the Taylor Law.  The State Court decisions do not consider these issues and therefore are binding upon this Court's determination in this Action.

There is no evidence that the NYCDOE's Panel for Education Panel adopted a resolution that established that a qualification for employment with the NYCDOE is being vaccinated from COVID-19, pursuant to N.Y. Education Law § 2573.9.

Absent a resolution of the Panel for Educational Policy, the NYCDOE has failed to comply with N.Y. Education Law § 2573.9. and therefore, a COVID-19 vaccine is not a qualification for employment with the NYCDOE.

**B.      N.Y. Civil Service Law § 201.4. Defines Terms And Conditions Of Employment And Makes Changes To Terms And Conditions Of Employment A Mandatory Subject Of Negotiation, Which Has Not Occurred**

N.Y. Civil Service Law § 201.4. defines "terms and conditions of employment" to include "salaries, wages, hours, and other terms and conditions of employment." *See,* N.Y. Civil Service Law § 201.4.

"Pursuant to article 14 [of the Civil Service Law (Taylor Law)], an employer is required to negotiate terms and conditions of employment." *Evans v Newman,* 71 A.D.2d 240, 243 (3d Dept 1979).

"The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a 'strong and sweeping policy of the State' (*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774, 778; *Board of Educ. v Associated Teachers,* 30 NY2d 122, 129)." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.,* 75 N.Y.2d at 667.

It is clear that based upon the position of the UFT (**Docket Entry No. 35**), which supports the Plaintiffs' position that the NYCDOE must employ N.Y. Education Law § 3020-a, Civil Service Law § 75 and/or collective bargaining agreement due process procedures before the NYCDOE disciplines the Plaintiffs, that the NYCDOE has failed to negotiate and reach resolution with the UFT on whether the COVID-19 vaccine mandate is a condition of employment as that phrase is defined in N.Y. Civil Service law § 201.4.

9

Without an agreement on a mandatory subject of negotiation, the NYCDOE cannot simply implement it without violating the Taylor Law. *See, Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 667.

Accordingly, the NYCDOE has failed to comply with the N.Y. Civil Service Law before it unilaterally declared the COH Order is a condition of employment for all NYCDOE employees. As a result, the NYCDOE's unilateral declaration that the COH Order is a condition of employment is, as a matter of law, invalid and unenforceable.

### C.      Lack Of Authority For DOH To Impose A New Condition Of Employment Upon NYCDOE Employees

While the Plaintiffs can show statutory authority that the DOH cannot impose a new condition of employment upon NYCDOE employees, the NYCDOE has never set forth any statutory authority for the COH to impose a new condition of employment upon NYCDOE employees, whether that authority comes from the N.Y.C. Charter, the N.Y.C. Administrative Code, or New York State statutes.

The failure of the NYCDOE to set forth any statutory authority that establishes the authority of the DOH to impose a new qualification or even a condition of employment on the employees of the NYCDOE without compliance with N.Y. Education Law § 2573.9. or the Taylor Law is fatal to the NYCDOE's statement that the DOH Order is a condition of employment to work for the NYCDOE.

As a result, the Defendants' argument that a COVID-19 vaccination is a condition of employment fails as a matter of New York law because there was no authority to impose it and it was not negotiated with the UFT. Following that logic then, when the NYCDOE terminated the Plaintiffs' employment effective February 11, 2022, the NYCDOE violated the Plaintiffs' due process rights.

In addition, the NYCDOE's contractors have been advertising for Speech Language Pathologist and CFs and nowhere in the job qualifications is to be vaccinated. *See,* **Exhibit E,** a

copy of the Indeed post. If the NYCDOE is hiring non-vaccinated individuals through contractors how can the NYCDOE argue that its employees must be vaccinated.

The Court should grant the Plaintiffs' a Temporary Restraining Order and a Preliminary Injunction.

**POINT III.   THE PLAINTIFFS' DUE PROCESS RIGHTS REGARDING FITNESS FOR DUTY HAVE BEEN VIOLATED**

The NYCDOE has argued to this Court that the Plaintiffs are not fit for employment because they have not taken a COVID-19 vaccination. Yet, the NYCDOE has permitted employees who have not completed the vaccine regimen to continue to work. *See,* https://nypost.com/2021/12/25/doe-skips-deadline-to-suspend-employees-who-havent-shown-proof-of-second-vax/ (visited January 27, 2022).

In addition, the NYCDOE has permitted parents and other visitors into NYCDOE schools without any documents or proof of vaccine. Parents of students must complete a Health Screening Questionnaire before the student enters the building everyday. *See,* **Exhibit B**, a copy of the Health Screening Questionnaire. *See also,* the Declaration of Janelle Lotito executed on the 8th day of February 2022.

The NYCDOE's actions are inconsistent with their argument in this Action.

Despite this inconsistency, and focusing on the Plaintiffs' due process rights, N.Y. Education Law has several provisions that govern situations where a school district does not believe that its employee is fit for duty. Both N.Y. Education Law § 913 and N.Y. Education Law § 2568 provide for procedures that the school district must follow before determining that an employee is unfit for duty. At no point has the NYCDOE followed either of these State law provisions to determine the Plaintiffs' fitness for duty.

When the NYCDOE states it has an obligation to provide a safe workplace and therefore cannot permit the Plaintiffs-unvaccinated employees to perform their duties (**Docket No. 61**, at

page 2), the NYCDOE's language is consistent with N.Y. Education Law § 913 that states: "[i]n order to safeguard the health of children attending the public schools, the board of education ... shall be empowered to require any person employed by the board of education ... to submit to a medical examination by a physician or other health care provider of his or her choice ... in order to determine the physical or mental capacity of such person to perform his or her duties."

The Plaintiffs have not been required to submit to medical examinations to determine their physical or mental capacity to perform their duties.   If they were to submit to medical examinations, many of the Plaintiffs would be able to show that they have natural immunity from the COVID-19 virus.  *See,* **Exhibit C**, a copy of several Plaintiffs' antibody blood test results.

As a result, the suspension of the Plaintiffs without pay based upon a perception that they are unfit, violates the Plaintiffs' due process rights and property rights.  *See, Newman v. Bd. of Educ.*, 594 F.2d 299, 304 (2d Cir 1979).

If the NYCDOE believes that the Plaintiffs are unfit to perform their duties, the Court should require the NYCDOE to comply with N.Y. Education Law to determine the Plaintiffs' fitness.  Without complying with N.Y. Education Law, the NYDOE is violating the Plaintiffs' due process rights.  This Court should issue an injunction enjoining the NYCDOE for terminating the Plaintiffs based upon the NYCDOE's perception of unfitness for duty.

## POINT IV.   NYCDOE IS VIOLATING THE PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS

The Plaintiffs have been terminated from their employment without any due process.  *See,* **Exhibit A**.[2]

---

[2] The NYCDOE may argue that the Plaintiffs have no due process rights pre-termination because they can avail themselves of N.Y. CPLR Article 78 proceedings post-termination. This Court should not force the Plaintiffs to file individual N.Y. CPLR Article 78 proceedings in New York State Courts after termination when the issues are ripe for determination pre-termination.  *See, Feds v Biden,* 2022 US Dist LEXIS 11145, at *10 (holding "requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to 'to bet the farm by taking the violative action before testing the validity of the law.' *Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010).").

Case 23-655, Document 76, 06/05/2023, 3525010, Page76 of 302

As this Court recognized, "[t]he Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants." **Docket Entry No. 33**, at page 18.

"The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

The NYCDOE have violated the Plaintiffs' constitutional rights to due process by terminating them from their NYCDOE employment without any charges nor an opportunity for a hearing.

Accordingly, the Court should issue a Temporary Restraining Order and a Preliminary Injunction to stop the NYCDOE's unconstitutional conduct.

**A.     Tenured Principals, Tenured Assistant Principals, and Tenured Teachers**

For tenured principals, tenured assistant principals, and tenured teachers

> [u]nder New York law a "tenured teacher has a protected property interest in her position and a right to retain it subject to being discharged for cause in accordance with the provisions of [the Education Law]." *Gould v. Board of Educ.*, 81 N.Y.2d 446, 451, 599 N.Y.S.2d 787, 616 N.E.2d 142 (1993); *accord Strong v. Board of Educ.*, 902 F.2d 208, 211 (2d Cir. 1990) (position as tenured teacher is a property interest protected by Fourteenth Amendment); *see also* N.Y. Educ. Law §§ 2509(2), 3012(2), 3020(1) (McKinney 1995) (tenured employees are not removable except for cause after a hearing).

*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 44 (2d Cir 2001).

13

JA-1429

"Under New York law a tenured teacher may be removed only pursuant to certain substantive and procedural safeguards, including notice and a full-blown adversarial hearing." *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir 1990).

"It is well established that tenured public teachers are employees who have a constitutionally protected property interest in their employment." *Shaul v. Cherry Val.-Springfield Cent. Sch. Dist.*, 218 F.Supp.2d 266, 271 (N.D.N.Y. 2002).

The constitutional and statutory protections that the tenured principal, tenured assistant principal, and tenured teachers have been ignored, trampled upon, and violated by the NYCDOE when the Plaintiffs and all others similarly situated were terminated effective February 11, 2022. *See,* **Exhibit A.**

For tenured employees, the NYCDOE cannot terminate the Plaintiffs without due process. The fact that the NYCDOE has done so, violates the Plaintiffs' constitutional rights.

The Court should grant a Temporary Restraining Order and a Preliminary Injunction enjoining the NYCDOE from terminating the Plaintiffs from their employment with the NYCDOE.

**B.     NYDOE's Civil Service Employees With N.Y. Civil Service Law § 75 Rights**

For those NYCDOE Civil Service employees who have N.Y. Civil Service Law § 75 rights, N.Y. Civil Service Law § 75 bars the NYCDOE from "remov[ing] or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civil Service Law § 75.1.

"[C]ivil service employment is a property right which cannot be taken from her without satisfying the dictates of due process of law." *Palermo v. Eisenberg*, 81 Misc.2d 1014, 1015 (Sup. Ct., 1975).

14

In *Dwyer v. Regan*, 777 F.2d 825, 831 (2d Cir 1985), the Court opined:

> Under New York law, the State would not have been allowed to remove Dwyer from his ongoing position without showing that he was incompetent or had engaged in misconduct. N.Y. Civ. Serv. Law § 75(1). Thus, if the State had determined that it wished simply to separate Dwyer from his position, it would have been required by due process to accord him a pretermination hearing.

"Due process ordinarily requires that persons receive 'some kind of hearing' prior to the deprivation of a property interest." *Jackson v. Roslyn Bd. of Educ.*, 652 F.Supp.2d 332, 343 (E.D.N.Y. 2009).

The NYCDOE has provided no "kind of hearing" to the Plaintiffs who have N.Y. Civil Service Law § 75 rights. The NYCDOE has unilaterally and without regard for their due process rights terminated he Plaintiffs and all others similarly situated. *See,* **Exhibit A.**

For Plaintiffs who have N.Y. Civil Service Law § 75 rights, the NYCDOE cannot "unilaterally separate employees" from their jobs without due process. The NYCDOE have violated the Plaintiffs' constitutional rights.

The Court should grant a Temporary Restraining Order and a Preliminary Injunction enjoining the NYCDOE from terminating the Plaintiffs' employment without due process.

## C.    NYCDOE Employees Entitled To Hearings Pursuant To Collective Bargaining Agreements

"In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause.*" *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988).

The NYCDOE has entered into collective bargaining agreements with its unions that provide that the members of the unions have a right to a reason for their discharge and a hearing before the employee-union member is discharged. The collective bargaining agreements between

15

Case 23-655, Document 76, 06/05/2023, 3525010, Page79 of 302

the NYCDOE and its unions create a contract-based property interest for the employees-union members. *See*, **Docket Entry No. 2-6,** at Exhibit 1, at Article Twenty-Three; **Docket Entry No. 2-5,** at Exhibit 1, at Article 16.F.

The NYCDOE, by terminating the NYCDOE-employees who possess the contract-based property interest without due process, the NYCDOE has violated those employees' constitutional rights.

For Plaintiffs who possess the contract-based property interest, the NYCDOE cannot terminate their employment without due process.  Since the NYCDOE has done just that, the NYCDOE has violated the Plaintiffs' constitutional rights.

The Court should grant a Temporary Restraining Order and a Preliminary Injunction enjoining the NYCDOE from terminating the Plaintiffs' employment without due process.

****************

The NYCDOE has shown no regard for the Plaintiffs' due process rights.  The NYCDOE has terminated the Plaintiffs without providing the Plaintiffs the minimum level of due process as required by the United States Supreme Court in *Cleveland Bd. of Educ.*, namely "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

This Court should grant the Plaintiffs a Temporary Restraining Order and a Preliminary Injunction to protect the Plaintiffs from irreparable harm preventing the NYCDOE from terminating the Plaintiffs from their employment from the NYCDOE.

"When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (internal quotation marks omitted).

**JA-1432**

The Plaintiffs have a high likelihood of success on the merits since the NYCDOE has not followed the statutory process to create a new condition of employment and therefore the Plaintiffs should be granted the relief they request.

Accordingly, the Plaintiffs' Motion should be granted.

## CONCLUSION

For the reasons argued in this Memorandum of Law, the Plaintiffs' Motion should be granted and the Plaintiffs' constitutional rights should be restored forthwith.

Dated:    Carle Place, New York
          February 8, 2022

                                        Respectfully submitted

                                        THE SCHER LAW FIRM, LLP

                                        _____
                                        Austin Graff, Esq.
                                        *Attorneys for the Plaintiffs*
                                        One Old Country Road, Suite 385
                                        Carle Place, New York 11514
                                        (516) 7460-5040

17

# STROOCK

February 8, 2022

Alan M. Klinger
Direct Dial:  212.806.5818
aklinger@stroock.com

**VIA ECF**
Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     Broecker et al. v. New York City Department of Education, et al., 21-cv-6387

We submit this letter on behalf of defendants United Federation of Teachers ("UFT") and Council of School Supervisors and Administrators ("CSA") (collectively "Union Defendants") pursuant to this Court's instructions at the pre-motion conference held on February 7, 2022, in support of Plaintiffs' emergency application for a temporary restraining order and preliminary injunction to the extent that such application seeks to enjoin the termination of Plaintiffs and similarly situated employees of the NYC Department of Education ("DOE").

While Plaintiffs and Union Defendants disagree as to whether Plaintiffs' due process rights have been violated through their placement on leave without pay ("LWOP") pursuant to the September 10 ("UFT Award")[1] and September 15[2] ("CSA Award") binding arbitration awards (the "Awards"), the parties agree that **termination** without applicable due process violates constitutional prescriptions, state law and contract.

As stated by the Supreme Court in Quern v. Jordan, "[t]he doctrine of law of the case[3] comes into play only with respect to issues previously determined." 440 U.S. 332, 347, n. 18 (1979). Here, while the issue of due process prior to placement on LWOP has been decided, the issue of **termination** has not. The language of the parties' collective bargaining agreements (CBAs) as modified by the Awards; the statements and actions of both Union Defendants and DOE; and this Court's rulings as to the issue all show that placement on LWOP and termination are distinct issues, and whether process is due prior to termination has not been directly resolved.

## I. LWOP and Termination Are And Have Been Treated As Distinct Adverse Actions

This distinction between LWOP and termination has been consistently raised by UFT. In UFT's first memorandum of law filed with the Court in opposition to Plaintiffs' application for injunctive

---

[1] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021), Klinger Declaration in Opposition to Emergency Motion, Ex. D. (dkt# 21).

[2] Board of Education of the City School District of the City of New York and Council of Supervisors and Administrators (Impact Bargaining), Arbitration Award (Sept. 15, 2021), Amended Complaint, Ex. F. (dkt# 47);

[3] The doctrine is also not often applied in connection with preliminary determinations, such as a ruling on a preliminary injunction. See Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 274 (2d Cir. 1992).

February 8, 2022

relief, UFT made the distinction between LWOP and termination clear: while after December 1, 2021, the DOE would be able to *seek to terminate* individuals who had not yet selected an option (vaccination accommodation, voluntary LWOP, or a buyout), through *existing procedures*, this was not tantamount to actual termination.[4]  In its own papers, DOE did not dispute that placement on LWOP and "projected termination" are distinct adverse actions towards DOE employees, but disagreed that further process was required because Plaintiffs lacked a "qualification" akin to licensure or residency.[5]

Based on this disagreement, as stated in the Court's November 23rd entry, "all parties"[6] requested, and the Court granted, leave for "supplemental briefing as to the issue of vaccination as a job requirement and any corresponding due process rights" under state law.  This Court has not issued a ruling directly on this question, whether in this case or any other.[7]  On November 24, 2021, this Court also issued an order denying Plaintiffs' motion for injunctive relief as to their ongoing placement on LWOP, which had begun 44 days prior.  In so ruling, the Court stated that it would not reach the issue of whether after December 1, 2021, DOE employees retained due process protections against discipline, or could be terminated without due process as failing to meet a qualification of employment.[8]  The Court also held that "Plaintiffs will be afforded the processes required by the applicable CBA and the [Award] **when and if** the NYC DOE seeks separation." (emphasis added).[9]

Per the Court's footnote reserving decision and prior order, supplemental briefing on precisely the issue before the Court now was submitted after the Order was issued.  At a December 8, 2021 conference, this Court asked DOE whether any, and if so how many, DOE employees the DOE had attempted to separate.  DOE stated that no separations had occurred as of December 8, and that they had no information as to when separations would occur.  At the same conference, the Court permitted UFT to submit one additional document further addressing the question of termination on December 9.  Subsequently, while the DOE was able to "seek" unilateral separation, it did not do so until January 31, 2022, when DOE, among other New York City agencies, issued letters to employees summarily terminating their employment, healthcare, other benefits, and employment rights without due process, effective February 11, 2022.[10]  During this

---

[4] UFT Memorandum of Law in Opposition to Plaintiffs' Application for a Temporary Restraining Order and Permanent Injunction (dk# 20), at 3.

[5] Department of Education Memorandum of Law in Opposition to Emergency Motion (dkt# 18) at 13.

[6] Defendant CSA was not yet a party at this time, joining the case only after Plaintiffs filed an Amended Complaint (dkt# 47) on January 10, 2022.

[7] Indeed, in another case, though finding the process there met minimum constitutional requirements, the Court did not reach the City's argument that "a public employer may lawfully, and summarily, separate employees from service without process due to the employee's legal ineligibility to maintain their employment." See Garland v. New York City Fire Dept., 21-cv-6586 (KAM)(CLP), 2021 WL 5771687, at *6 n.8 (E.D.N.Y. Dec. 6, 2021).  Nor did the Court have the benefit of the arguments raised in Garland.

[8] Memorandum and Order Denying Motion for Preliminary Injunction, (dkt# 33) at 17 n.5.

[9] Id. at 18.

[10] While an issue had initially been raised regarding UFT's processing of grievances that pertained to challenges to placement on LWOP, UFT did permit Plaintiffs—some 37 of which did—and others to file.  Those grievances are distinct from that of due process prior to termination.  Some UFT-represented titles have separate contractual rights to challenge improper termination via grievance.  The time for the filing of such grievances has not yet run and these

Case 23-655, Document 76, 06/05/2023, 3525010, Page83 of 302

February 8, 2022

interval UFT and other unions were in contact with the City's Office of Labor Relations on this question. Unions were consistently advised that no decision had yet been made whether to seek termination and how. How then could UFT and other unions stand accused—as we were yesterday by DOE—of sleeping on our rights when we were advised that no decision had been made and that the issue already had been briefed to this Court? And, indeed, how would an injunctive application have been ripe before termination notices had issued?

The plain language of the Awards also clearly distinguishes between LWOP and termination. Pursuant to the terms of the Awards, DOE employees who are not vaccinated and have not received an accommodation may either (a) take extended unpaid leave with health insurance and a right of return; or (b) voluntarily separate. The Awards state that the unpaid leave is not disciplinary. Separately, the Awards provide that the DOE may only "***seek to*** unilaterally separate" employees who have not selected either option after December 1, 2021, but that "except for the express provisions contained, herein, **all parties retain all legal rights at all times**."[11] There is no mention of the waiver of any rights with regard to termination. Accordingly, there is a clear intent to preserve legal rights which are not explicitly modified by the Awards.

In several instances, DOE employees who have been placed on LWOP have sought their own review from state courts.[12] Like this Court, these courts have denied them relief from placement on LWOP on the basis that the Award provides the process due. However, none of these courts reached the question of what process is due to DOE employees who are terminated. As such, no court has reached this issue directly. Given DOE's recent announcement a resolution of this question is now direly needed, and thus Union Defendants support Plaintiffs' application for a temporary restraining order and preliminary injunction in this limited regard.

## II. DOE Employees Are Owed Due Process Prior to Termination

The question is not what minimal due process is allowed under the Constitution, but whether they have received the due process provided to them by state law and contract. As discussed *supra*, termination is a distinct adverse action from placement on LWOP with health benefits. The Awards govern DOE employees with regard to new procedures before placement on LWOP, but provide no procedures for termination and explicitly *preserve* pre-existing procedures based on law and contract, including pre-existing due process protections against disciplinary and fitness charges. As such, the Court need determine what process is actually due.

New York courts have consistently found that when public employers have any discretion to terminate a public worker's employment, the employee is entitled to procedural due process. By

---

grievances could not have been filed until a notice of termination was received. UFT is in the process of working with the more than 700 impacted members in disparate titles to file grievances and other requests, as applicable in order of urgency with regard to timeline. Titles, such as teachers, follow a distinct statutory process that commences with DOE preferring charges, rather than a grievance and has a shorter timeframe for seeking a hearing than is required for filing a grievance. Some six Plaintiffs subject to the statutory process have already requested hearings. UFT is continuing to work with others to file requests and grievances, as appropriate.

[11] See UFT Award at III.C; CSA Award at III.C.

[12] See Lanzer v. BOE, et al., Index No. 160017/2021 (Sup. Ct. N.Y. Cnty.); Romero v. BOE, et al., Index No. 160353/2021 (Sup. Ct. N.Y. Cnty) and O'Reilly v. BOE, et al., Index No. 161040/2021 (Sup. Ct. N.Y. Cnty.).

February 8, 2022

whatever label given—condition, qualification, requirement—employers may only terminate employees without due process when the employee is "legally ineligible," *i.e.*, the employee's continued service is prevented by a statutory requirement under which the employer cannot continue their employment, and therefore must terminate them.[13] This is true even when the issue is framed as a qualification, or where there are few if any facts in dispute: so long as the public employer may refrain from termination, they must provide the process due, otherwise it would reduce due process to "an empty ritual." See e.g. Matter of Richie v. Coughlin, 148 A.D.2d 178, 182-83 (3d Dep't 1989), appeal dismissed 75 N.Y.2d 765 (1989), lv denied 75 N.Y.2d 707 (1990) (holding an escaped prisoner who became a tenured public employee required due process prior to termination on grounds that he was a felon). Of course, public employers may enforce qualifications and standards which do not automatically render their employee legally ineligible for the job, terminating employees on disciplinary or competency grounds, but under these normal circumstances, process is due under laws—e.g., Education Law § 3020-a; § Civil Service Law 75—and contract prior to termination.

Conversely, where the employer has no discretion because a statutory or regulatory requirement prevents them from continuing a worker's employment, they can be terminated without due process. This has primarily been raised in the context of residency and licensure requirements. See Matter of Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505-06 (2004) (residency); Matter of New York State Off. of Child. & Fam. Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010) (licensure).

While the DOE argues that vaccination is akin to a license or residency requirement, this is incorrect and belied by their own employment decisions: that some unvaccinated employees have been granted accommodations on medical or religious grounds, and others have remained employees on long-term leave, proves that vaccination is not a mandatory qualification: one cannot accommodate for an immutable statutory requirement for employment like licensure or residency.

The DOHMH Mandate on which DOE bases its personnel policy does not make any direct statement concerning noncompliant workers' employment status or consequences for noncompliance.[14] Rather, the Mandate merely requires proof of vaccination to enter certain DOE facilities. The Mandate does not state any employment consequence to DOE employees' refusal to abide by it, let alone automatic dismissal. DOE employees with accommodations have been allowed to continue working remotely, while pursuant to the Awards those who have taken voluntary unpaid leave remain DOE employees with continued health insurance and a right of

---

[13] Garland, 2021 WL 5771687, at *6 n.8. A more fulsome version of this and related arguments can be found in UFT's prior supplemental briefing on the issue. See Supplemental Memorandum of Law in Opposition (dkt# 35).
[14] See Order of the Commissioner of Health and Mental Hygiene Revising the Effective Date for Required COVID-19 Vaccination of Department of Education Employees, Contractors, Visitors and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf ("September 28 Order"). The Mandate superseded two earlier DOHMH orders for DOE worker vaccination, dated August 24, 2021 and September 15, 2021.

JA-1437

February 8, 2022

return if they choose vaccination. Had DOE simply decided that other unvaccinated teachers could work remotely, pursuant to the Mandate, they would not have had to become vaccinated.

This stands in stark contrast to the analogized requirements. Teachers who lack licenses required by statute, or public employees who live outside a community with a residency requirement, cannot be accommodated no matter how much their employer wishes to keep them on—**they must either abide by the rule or be terminated**. That the DOE, for its own reasons, has limited remote work to those with accommodations, or negotiated for long-term LWOP for unvaccinated employees, does not transmute the Mandate into a statutory impediment to employment.

Finally, despite DOE's claims to the contrary, noncompliance with the Mandate falls squarely within the realm of discipline. For example, teachers who refuse to undergo a statutorily authorized medical examination could be insubordinate. See Gargiul v. Bd. of Educ. of Liverpool Cent. Sch. Dist., 69 A.D.2d 986 (4th Dep't 1979). Similarly, an unauthorized absence from work may be grounds for discipline. See Kuhnle v. Ambach, 91 A.D.2d 779 (3d Dep't 1982). Union Defendants do not dispute that DOE may seek discipline against those who failed to follow the procedures laid out in the Awards. What DOE *may not do* is refashion a health order which is silent on employment into a statutory requirement for continued employment, and wield it as a weapon to destroy employees' constitutionally protected rights and New York's carefully articulated balance of labor and management rights in the public sector in the process. To allow otherwise would upend New York's public policy of granting due process rights to all public employees: nothing would prevent the DOE or other agencies from inventing and imposing any number of new mandatory "qualifications" on incumbent employees that obviate due process.

Termination without due process is a distinct adverse action from Plaintiffs' placement on LWOP, the legality of which has not been directly addressed by this Court or any other court. Insofar as Plaintiffs' emergency application for a temporary restraining order and preliminary injunction reaches this question, Union Defendants urge the Court to grant the sought injunction against the DOE's imminent terminations of its employees without due process.

Respectfully submitted,


 /s/ ALAN M. KLINGER
STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com

*Co-counsel for Defendants UFT and CSA*

CC: all counsel of record

**JA-1438**

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L SCHER**

AUSTIN R. GRAFF*

TEL 516 746-5040

FAX 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S NAYBERG
(1950-2011)

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

February 8, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
      Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs in the above-referenced Action. This letter shall serve as the Plaintiffs' response to the pre-motion conference letters submitted by the Defendants New York City Department of Education ("NYCDOE") and Meisha Porter ("Porter") (collectively referred to as "NYCDOE Defendants") (**Docket No. 61**), Defendant United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") (**Docket No. 62**) Defendant Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA") (**Docket No. 71**), and the Defendants Martin F. Scheinman ("Scheinman"), Scheinman Arbitration and Mediation Services ("SAMS"), and Scheinman Arbitration and Mediation Services, LLC ("SAMS, LLC") (collectively referred to as "Scheinman Defendants") (**Docket No. 69**), in support of their applications for Motions to Dismiss.

The Plaintiffs are not challenging the COVID-19 vaccine mandate. The Plaintiffs, while they disagree with the mandate, assume the mandate is valid as a matter of law. This Action and the Plaintiffs' claims focus on the conduct of the NYCDOE Defendants', the UFT's and the other defendants' implementation of the mandate and the mandate's effects upon the Plaintiffs' employment with the NYCDOE. The Plaintiffs' claims are a challenge to the Arbitration Awards of Scheinman (**Docket No. 19-1** and **Docket No. 47-6**) that violated N.Y. Civil Service Law § 209.3(f) and resulted from conspiracy, collusion, and corruption between the NYCDOE Defendants, UFT, CSA, and Scheinman and his companies.

This letter first addresses the NYCDOE Defendants' request for a pre-motion conference as a preliminary step to making a Motion to Dismiss. Then, the Plaintiffs will address the UFT's request for a pre-motion conference at which time the UFT will ask to make a Motion to Dismiss. The Plaintiffs will then address the CSA's request for a pre-motion conference. Finally, the Plaintiff will address the Scheinman Defendants request for a pre-motion conference. For the reasons discussed in this letter, the NYCDOE Defendants and UFT and the CSA should be denied an opportunity to make Motions to Dismiss because the Motions would be futile.

# THE SCHER LAW FIRM, LLP

<div align="right">

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 8, 2022
Page 2 of 7

</div>

---

### A.     NYCDOE Defendants' Application Should Be Denied

#### 1.     The NYCDOE Cannot Unilaterally Create A Condition Of Employment

N.Y. Education Law and its implementing regulations set the qualifications for administrators, teachers, and other employees of the NYCDOE. *See, e.g.*, N.Y. Education Law § 3001; 8 N.Y.C.R.R § 80-2.4.

However, the NYCDOE is not required to limit itself to State-imposed qualifications and may set additional qualifications for those employed by the NYCDOE.

N.Y. Education Law § 2573.9. authorizes "a board of education may prescribe additional or higher qualifications for the persons employed in" the positions of principal, supervisor, director or teacher appointed to the teaching force of a city.

The NYCDOB is not governed by a Board of Education, but by a Panel for Education Policy. *See,* https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws (visited January 26, 2022).

There is no evidence, and the NYCDOE Defendants do not argue that, the Panel for Educational Policy, pursuant to N.Y. Education Law § 2573.9. adopted a resolution that established that a qualification for employment with the NYCDOE is a vaccination against COVID-19.

Pursuant to N.Y. Education Law, only the NYCDOB's Panel for Education Policy can create new qualifications for employment for those employed by the NYCDOE, not, as the NYCDOE Defendants argue, the Commissioner of the New York City Department of Health and Mental Hygiene ("NYCDOH Commissioner").

In addition, N.Y. Civil Service Law §201.4. defines "terms and conditions of employment" to include "salaries, wages, hours, and other terms and conditions of employment." *See,* N.Y. Civil Service Law § 201.4. "Pursuant to article 14 [of the Civil Service Law (Taylor Law)], an employer is required to negotiate terms and conditions of employment." *Evans v Newman*, 71 A.D.2d 240, 243 (3d Dept 1979).

"The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a strong and sweeping policy of the State." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990) (internal quotation marks omitted).

It is clear that based upon the position of the UFT and the CSA, which both support the Plaintiffs' position that the NYCDOE must employ N.Y. Education Law § 3020-a, Civil Service Law § 75 and/or collective bargaining agreement due process procedures before the NYCDOE disciplines the Plaintiffs **(Docket Entry No. 77)**, the NYCDOE has failed to negotiate and reach resolution with the UFT and the CSA as to whether the COVID-19 vaccine mandate is a condition of employment as that phrase is defined in N.Y. Civil Service Law § 201.4. The NYCDOE has failed to negotiate a condition of employment that is a mandatory subject of negotiation.

Further, the NYCDOE fails to set forth any statutory bases that establishes the authority of the NYCDOH Commissioner to impose a new qualification or even a condition of employment on the employees of the NYCDOE without compliance with N.Y. Education Law § 2573.9. or the Taylor Law. To make matters worse, the language of the NYCDOH Commissioner's Order does not state that a vaccine is a condition of employment or a new qualification to be employed by the NYCDOE. The Order is silent as to these issues. *See,* **Docket Entry No. 47-7.**

As a result, the Defendants' argument that a COVID-19 vaccination is a condition of employment fails as a matter of New York law because there was no authority to impose it and it was not negotiated with the UFT or the CSA.

Finally, the NYCDOE cites to several New York State Article 78 proceeding decisions to support their argument that the vaccine is a condition of employment. However, the New York State Courts do not cite to any statutory authority that authorized the NYCDOE to unilaterally impose a condition of employment without N.Y. Education Law procedure being followed or a negotiated settlement with the

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 8, 2022
Page 3 of 7

UFT, the CSA or the other unions regarding the matter. As a result, this Court should not rely upon those cases.

As a matter of law, just because the NYCDOE states that the vaccine is a condition of employment is insufficient and the State Courts should not have just blindly adopted the NYCDOE's position. The NYCDOE's position has to be based upon statutory authority, whether in N.Y. Education Law, the New York City Administrative Code, or after collective bargaining with the UFT, the CSA, and the other NYCDOE unions.

The NYCDOE does not cite to any authority it had to unilaterally create a new condition of employment out of whole cloth. The creation of the new condition of employment violated the Plaintiffs' constitutional rights and therefore the Plaintiffs' § 1983 claims against the Defendants are valid, enforceable, and can withstand a Rule 12(b)(6) Motion to Dismiss.

2.     Plaintiffs' Due Process Claims Withstand A Motion To Dismiss

The NYCDOE Defendants argue that the Plaintiffs are not fit for employment because they have not taken a COVID-19 vaccination. Yet, the NYCDOE has permitted employees who have not completed the vaccine regimen to continue to work. *See,* https://nypost.com/2021/12/25/doe-skips-deadline-to-suspend-employees-who-havent-shown-proof-of-second-vax/ (visited January 27, 2022). The NYCDOE's actions are inconsistent with their argument in this Action.

Despite this inconsistency, and focusing on the Plaintiffs' due process rights, N.Y. Education Law has several provisions that govern situations where a school district does not believe that its employee is fit for duty. Both N.Y. Education Law §§ 913 and 2568 provide for procedures that a school district must follow before determining that an employee is unfit for duty. At no point has the NYCDOE followed either of these statutory provisions to determine the Plaintiffs' fitness for duty.

When the NYCDOE states it has an obligation to provide a safe workplace and therefore cannot permit the Plaintiffs-unvaccinated employees to perform their duties (**Docket No. 61**, at page 2), the NYCDOE's language is consistent with N.Y. Education Law § 913 that states: "[i]n order to safeguard the health of children attending the public schools, the board of education ... shall be empowered to require any person employed by the board of education ... to submit to a medical examination by a physician or other health care provider of his or her choice ... in order to determine the physical or mental capacity of such person to perform his or her duties."

The Plaintiffs have not been required to submit to medical examinations to determine their physical or mental capacity to perform their duties. As a result, the suspension of the Plaintiffs without pay based upon a perception that they are unfit, violates the Plaintiffs' due process rights and property rights. *See, Newman v. Bd. of Educ.,* 594 F.2d 299, 304 (2d Cir 1979).

The NYCDOE Defendants further argue that the Plaintiffs have no claims, pre-termination because they can avail themselves of Article 78 proceedings post-termination.

This Court should not force the Plaintiffs to file individual Article 78 proceedings in New York State Courts after termination when the issues are ripe for determination pre-termination. *See, Feds v Biden,* 2022 US Dist LEXIS 11145, at *10 (S.D. Tex. 2022) (holding "requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to 'to bet the farm by taking the violative action before testing the validity of the law.' *Enter. Fund v. Pub. Co. Acct. Oversight Bd.,* 561 U.S. 477, 490, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010).").

The NYCDOE has not set forth a legally cognizable explanation why this Court should not determine the Plaintiffs' rights in this Action. The Plaintiffs' due process claims will survive a Motion to Dismiss and the Court should deny the Defendants permission to make the motion.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 8, 2022
Page 4 of 7

---

3.   Conspiracy Claims

As discussed below when addressing the UFT's pre-motion conference request, the NYCDOE Defendants conspired with the UFT to violate N.Y. Civil Service Law § 209 when they colluded with the UFT and the "Arbitrator" to resolve impact bargaining over the COVID-19 vaccine mandate. N.Y. Civil Service Law § 209 does not authorize binding arbitration in impasse resolutions relating to schools. *See,* N.Y. Civil Service Law § 209.3(f). *See also, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.,* 75 N.Y.2d at 671. Therefore, any argument that the Arbitration Award binds the impact and the procedures regarding the mandate violates N.Y. Civil Service Law § 209.3(f) and therefore, the reliance upon the Arbitration Award to violate the Plaintiffs' constitutional rights was a conspiracy between the NYCDOE Defendants and the UFT and the NYCDOE Defendants and the CSA.

To make matters worse, the "Arbitrator" is a political contributor of former Mayor DeBlasio who even hosted a fundraiser for him in his home. *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited January 27, 2022). To further show the conspiracy and the misconduct relating to the Arbitration Award, any appeals of accommodation requests were handled by the Arbitrator's own company, resulting in a windfall profit center for the Arbitrator, a political contributor to the Mayor.

The whole "arbitration" process and award is infected with collusion, misconduct, and corruption. The Plaintiffs can state a claim for conspiracy against the NYCDOE Defendants for violating the Plaintiffs' constitutional rights. The Plaintiffs' conspiracy claims survive a Motion to Dismiss.

4.   Class Claims

The Plaintiffs have valid claims against the Defendants. The Plaintiffs can meet the prerequisites pursuant to FRCP Rule 23(a), namely numerosity, common questions of law and fact, the class representatives' claims are typical of all of the class claims, and the representatives can fairly and adequately protect the interests of the class. The Plaintiffs' class claims survive a Motion to Dismiss.

5.   Briefing Schedule

The Plaintiffs are suspended without pay. The Plaintiffs are entitled to a resolution of this matter in a relatively expedited manner. The NYCDOE Defendants' proposed schedule results in unnecessary delay. The Plaintiffs request a short briefing schedule, namely two weeks for motion papers, two weeks to oppose, and a week for reply.

**B.   UFT's Application Should Be Denied**

The NYCDOE Defendants/UFT and the Plaintiffs have a fundamental disagreement regarding whether N.Y. Civil Service Law § 209 permits a school district (NYCDOE) and a union (UFT) to go to mandatory, binding arbitration regarding impact bargaining. As a matter of clear, unambiguous statutory language, namely N.Y. Civil Service Law § 209.3(f), a PERB fact finder's report cannot be imposed upon the school district or the union. *See, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.,* 75 N.Y.2d at 671 (stating "the apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare,* Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f]).").

In addition, N.Y. Civil Service Law § 209.4. only permits binding arbitration in certain types of employment that the New York State Legislature deemed "essential to public health and safety." *See, Margiotta v Kaye,* 283 F.Supp.2d 857, 864 (E.D.N.Y. 2003).

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 8, 2022
Page 5 of 7

The UFT relies upon *Margiotta* for the proposition that "under the Taylor Law, parties may agree to move to binding impasse arbitration rather than follow PERB's procedure." **Docket No. 62**, pages 2-3. But *Margiotta* actually supports the Plaintiffs' argument that the Arbitration Award agreed to by the UFT violated N.Y. Civil Service Law § 209. In *Margiotta*, the Court denied the Court Officers Benevolent Associations of Nassau County binding arbitration pursuant to N.Y. Civil Service Law § 209.4. because "[t]he legislature specifically determined that impasses by police officers, fire fighters, and other miscellaneous public safety employees, and employees of the transit authority should be resolved by compulsory arbitration. N.Y. Civil Service Law §§ 209.4, 209.5." *Margiotta v Kaye*, 283 F Supp 2d at 865.

The Plaintiffs are employees of a school district. There is a specific statutory provision barring the imposition of a fact finder's report on a school district and its union. *See,* N.Y. Civil Service Law § 209.3.(f). *See, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671 (1990) (stating "the apparent failure of the Legislature to provide any final impasse resolution mechanism

in the case of school district negotiations (*compare*, Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f]).").

Because the UFT agreed to and relinquished its power to bargain and come to (or not come to) a final agreement on the impact of the COVID-19 vaccine mandate, it participated in and conspired with the NYCDOE to violate the Plaintiffs' constitutional right to due process and constitutional property right interest in their pay.

Based solely upon the illegal Arbitration Award, the NYCDOE has suspended the Plaintiffs without pay. Without and but-for the UFT's affirmative consent to "binding" arbitration even though there is no legal authority for binding arbitration, the NYCDOE would not have had any legal basis to suspend the Plaintiffs without pay for not taking a COVID-19 vaccine.

The UFT argues that it is not a State actor and therefore not subject to 42 U.S.C. § 1983. However, in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007), the Court held "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

That is exactly what happened to the Plaintiffs. The UFT conspired with the NYCDOE to violate N.Y. Civil Service Law § 209.3(f) by agreeing to "binding" arbitration and the NYCDOE has used the "binding" arbitration award as a basis to suspend the Plaintiffs without pay in violation of their constitutional right to due process and constitutional property right in their pay.

Unlike what the UFT argues, there was no adversarial action between the UFT and NYCDOE, instead, there was actual consent to illegal "binding" arbitration. *See,* **Docket No. 21-3** (stating "the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce."). Yet, there is no statutory authority for "expedited arbitration". *See, Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671.

If the UFT was truly adversarial to the NYCDOE it would have bargained until an agreement was reached (or not reached) regarding the impact of the COVID-19 vaccine mandate. If there was no agreement on the impact, that would have been acceptable because the UFT would have been acting in the best interests of those members who were opposed to the vaccine. Instead, the UFT kowtowed to the NYCDOE and relinquished its bargaining power to an arbitrator who had no legal authority to issue a binding arbitration award. *See,* N.Y. Civil Service Law § 209.3(f).

The Plaintiffs question the independence of the arbitrator, a political fundraiser for Mayor DeBlasio (https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited January 27, 2022)) and questions how the arbitrator was allowed to select his company to review the appeals of the accommodation requests, creating a financial windfall. *See,* **Docket No. 19-1**, at page 12.

The UFT did not defend its members who opposed the vaccine mandate. Instead, it relinquished its bargaining power and authority to negotiate a deal with the NYCDOE that would have represented the

# THE SCHER LAW FIRM, LLP

<div align="right">

Honorable Kiyo A. Matsumoto, U.S.D.J.
February 8, 2022
Page 6 of 7

</div>

---

best interests of the UFT's members. The fact that the UFT agreed to "expedited arbitration" where the imposed Arbitration Award violated its members' due process rights and property rights in their pay, resulted in an illegal conspiracy between the UFT, the NYCDOE and Scheinman that resulted in the violation of the Plaintiffs' constitutional rights.

The UFT's request for a pre-motion conference should be denied because any Motion to Dismiss would be fruitless.

### C.     CSA's Application Should Be Denied

The CSA admits in its letter that the CSA, the NYCDOE and Scheinman conspired, without the intervention of PERB to enter into "binding arbitration to resolve a looming bargaining dispute." **Docket No. 71**, at page 1. The CSA argues that it "submit[ted] an adversarial dispute to an arbitrator…." **Docket No. 71**, at page 2. But the COVID-19 mandate was something the CSA and the NYCDOE should have negotiated about and the CSA should have (or should not have) come to a negotiated settlement on the

impact of the COVID-19 mandate. But that is not what happened. Instead, the CSA agreed to binding arbitration.

Yet, the CSA cites no contractual or statutory authority for the CSA to resolve a bargaining dispute or an adversarial dispute in negotiations through binding arbitration. Oddly, the CSA argues that there is "no contractual prohibition in the CSA CBA against moving to binding arbitration to resolve a bargaining dispute…" **Docket Entry No. 71**, at page 2. Yet, the CSA does not identify an affirmative source granting the CSA authority to enter into binding arbitration to resolve a bargaining dispute.

Typically bargaining disputes are resolved by the parties through collective bargaining at a bargaining table. A mediator may be needed to help the parties resolve the matter, but the mediator never is the one that imposes a solution to the parties' bargaining dispute. The CSA does not argue that the arbitration was in response to the grievance mechanism in the parties' collective bargaining agreement, which would have made sense, but that is not what happened.

Instead, it cites to *Town of Southampton v NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513 (2004) for the proposition that the terms of the CSA Award was incorporated into the CBA. *See*, **Docket Entry No. 71**, at page 3. *Town of Southampton* concerns impasse negotiations between the town and the police officers' union and binding arbitration pursuant to N.Y. Civil Service Law § 209.4. Strangely, the CSA argues that PERB has no authority over what occurred between the CSA and NYCDOE because no impasse was declared. *See,* **Docket Entry No. 71**, at page 2. The citation to *Town of Southampton* and its position on PERB's involvement in the binding arbitration decision are contradictory and confusing.

What the CSA does admit to is that it conspired with the NYCDOE to agree to give away its bargaining power, bargaining authority, and ultimate consent to the outcome to Scheinman to make a decision over hot to resolve a "looming bargaining dispute" (**Docket No. 71**, at page 1) that it could not control, could not determine its outcome, and ultimately led to the violation of its members' constitutional rights.

In *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7, the Court held "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The CSA did just that by permitting Scheinman to issue an Arbitration Award that authorized the NYCDOE to deprive the Plaintiffs of their constitutional rights to due process and the property rights in their pay. There was no basis in law or contract for Scheinman to issue a binding arbitration award to "resolve a looming bargaining dispute" (**Docket No. 71**, at page 1) and when the Arbitration Award deprived the Plaintiffs of their constitutional rights, the CSA became liable in conspiracy for the damages incurred by the Plaintiffs-CSA members.

The CSA's request to make a Motion to Dismiss should be denied because the Motion would be fruitless.

THE SCHER LAW FIRM, LLP

<div align="right">
Honorable Kiyo A. Matsumoto, U.S.D.J.<br>
February 8, 2022<br>
Page 7 of 7
</div>

**D.    Scheinman Defendants' Request Should Be Denied**

The Scheinman Defendants are seeking a pre-motion conference seeking permission to file a Motion to Dismiss based upon an "arbitrators' quasi-judicial immunity and a complete lack of any allegations giving rise to a cognizable § 1983 claim." **Docket Entry No. 69.**

The Arbitration Awards that serve as the basis for the NYCDOE to suspend the Plaintiffs without pay and without due process were issued by Scheinman. *See*, **Docket No. 19-1** and **Docket No. 47-6.** The Plaintiffs allege that the Scheinman Defendants conspired with the NYCDOE and the UFT and the NYCDOE and the CSA to violate N.Y. Civil Service Law § 209, which does not authorize binding arbitration to resolve impasse negotiations in a school district settling. *See*, N.Y. Civil Service Law § 209.3.(f).    Additionally, the Arbitration Awards violate the Plaintiffs' due process rights and the Plaintiffs' constitutional property rights in their pay.  But-for the Arbitration Awards the NYCDOE did not have any legal authority to suspend the Plaintiffs without pay without due process.

While the Scheinman Defendants argue "quasi-judicial immunity" the immunity cannot protect the Scheinman Defendants in this Action because: (1) Scheinman knew that there is no binding arbitration in school district settings and therefore he had no legal or contractual authority to issue the binding Arbitration Awards (N.Y. Civil Service Law § 209.3(f)); and (2) his Arbitration Awards awarded himself a financial windfall when he appointed SAMS to be the sole appellate review of all accommodation requests that were denied by the NYCDOE. *See*, **Docket No. 19-1**, at page 11; **Docket No. 47-6**, at page 6-7.

"[A]rbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process." *Austern v Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990).  However, these Arbitration Awards were not based upon any contract, but were issued in violation of N.Y. Civil Service Law § 209 and the Taylor Law and the manner in which Scheinman wove himself and his companies into the appeal process was not a determination within the scope of the arbitral process.

Scheinman did not just render an arbitration decision, SAMS became an integral part of the decision-making process regarding whether religious or medical exemptions/accommodations should be granted.  Scheinman inserted SAMS directly into the process by which the Plaintiffs were denied due process.  The continued oversight and control over the process defeats the Scheinman Defendants' quasi-judicial immunity argument.

Additionally, since the Scheinman Defendants were the sole appellate review of the NYCDOE's denial of accommodations, the Scheinman Defendants became State actors.  When determining the appeals of the Plaintiffs who were denied accommodations, the Scheinman Defendants were acting under color of State law with the actual authority granted to it by the NYCDOE to conduct appellate review of the NYCDOE's initial determinations.

Accordingly, the Plaintiffs have stated a plausible claim of § 1983 violations and conspiracy by the Scheinman Defendants and therefore, a Motion to Dismiss would be fruitless.

<div align="center">*************</div>

The Defendants' requests for a pre-motion conference should be denied because Motions to Dismiss would not be successful.

<div align="right">
Very truly yours,<br>
THE SCHER LAW FIRM, LLP<br>
<br>
Austin Graff
</div>

cc: Counsel of Record (by ECF)

JA-1445

21 Civ. 6387 (KAM)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,

                                                    Plaintiff,

                    -against-


NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, et al.

                                                    Defendants.

### DEFENDANTS NEW YORK CITY DEPARTMENT OF EDUCATION AND MEISHA PORTER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**GEORGIA M. PESTANA**
*Corporation Counsel of the City of New York*
Attorney for Defendants DOE and Porter
100 Church Street
New York, NY 10007


Of Counsel: Andrea O'Connor
Tel: (212) 356-4015

JA-1446

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................. 5

ARGUMENT ...................................................................................................... 7

    A.    Plaintiffs' Motion is Duplicative of their Prior Application for Injuntive Relief ................................................................................. 7

    B.    Union Defendants Do Not Have Standing in Connection with Plaintiffs' Motion ................................................................... 10

    C.    Plaintiffs Do Not Meet the Standard for a Preliminary Injunction .......................................................................................... 13

        1.    Plaintiffs Cannot Establish Irreperable Harm ........................... 14

        2.    Plaintiffs Are Unlikey to Suceed on the Merits ........................ 19

        3.    The Balance of Equities Does Not Tip in Plaintiffs' Favor and an Injunction is Not in the Public Interest ............... 32

CONCLUSION ................................................................................................ 35

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Almontaser v. N.Y. City Dep't of Educ.,
    519 F.3d 505 (2d Cir. 2008)................................................................13

Anderson v. United Airlines,
    No. 21 CV 1050 (TJC)(LLL), 2021 U.S. Dist. LEXIS 249771 (M.D. Fla. Dec.
    30, 2021) ................................................................................18

Bano v. Union Carbide Corp.,
    361 F.3d 696 (2d Cir. 2004).............................................................11

Beck-Nichols v. Bianco,
    20 N.Y.3d 540 (2013) ....................................................................21

Beckerich v. St. Elizabeth Med. Ctr.,
    2021 U.S. Dist. LEXIS 183757 (E.D. Ky. Sept. 24, 2021) ...................................18

Bilyeu v. Ut-Battelle,
    No. 21 CV 352, 2021 U.S. Dist. LEXIS 250124 (E.D. Tenn. Oct. 29, 2021) .......................18

BST Holdings, L.L.C. v. OSHA,
    No. 21 CV 60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) ....................16, 17

Buckley v. N.Y. & Presbyterian Hosp.,
    No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21,
    2021) ....................................................................................15

C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
    2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009).........................................20

Cafeteria Workers v. McElroy,
    367 U.S. 886 (1961)......................................................................26

Carr v New York State Dep't of Transportation,
    70 A.D.3d 1110, lv to app. den., 14 N.Y.3d 709 (2010).......................................22

City School District v. McGraham,
    17 N.Y.3d 917 (2011) ....................................................................22

Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).......................................26

Cornejo v. Bell,
    592 F.3d 121 (2d Cir. 2010)..............................................................18

Cravatta v New York State Dep't of Transportation,
    77 A.D.3d 1399 (4th Dep't 2010) ........................................................22

Dechberry v. N.Y.C. Fire Dep't,
    124 F. Supp. 3d 131 (E.D.N.Y. 2015) ................................................19

Donohue v. Mangano,
    886 F. Supp. 2d 126 (E.D.N.Y. 2012) ...............................................16

E.E.O.C. v. Joint Apprenticeship Comm. Of Joint Indus. Bd. Of the Elec. Indus.,
    164 F.3d 89 (2d Cir. 1998)..................................................................16

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
    940 F.2d 775 (2d Cir. 1991).........................................................28, 29

Feds v. Biden,
    No. 21 CV 356, 2022 U.S. Dist. LEXIS 11145 (S.D. Tex. Jan. 21, 2022)......................16, 17

Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) .............................................................21, 22, 26

Ford v. Reynolds,
    316 F.3d 351 (2d Cir. 2003)................................................................16

Garland v. N.Y.C. Fire Dep't,
    No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y.
    Dec. 6, 2021) ............................................................................ *passim*

Guitard v. United States Sec'y of Navy,
    967 F.2d 737 (2d Cir. 1992)................................................................16

Hellenic Am. Neighborhood Action Comm. v. City of New York,
    101 F.3d 877 (2d Cir. 1996)................................................................30

Holt v. Continental Group,
    708 F.2d 87 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ............................15

Impax Media Inc. v. Northeast Adver. Corp.,
    No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. Jan. 10, 2018)............................13

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)..................................................................19

Javaraj v. Scappini,
    66 F.3d 36 (2d Cir. 1995)....................................................................16

Johnston v. Tn. of Orangetown,
    562 F. App'x 39 (2d Cir. 2014) ..........................................................30

ii

JSG Trading Corp. v. Trav-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990)..................................................................................13

Kane v. de Blasio,
    21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order) ....................................................17

Kane v. De Blasio,
    No. 21 CV 7863 (VEC), 2021 U.S. Dist. LEXIS 239124 (S.D.N.Y. Dec. 14,
    2021) ................................................................................................................9, 15

Keil v. The City of New York, et al.,
    21 Civ. 8773 (SDNY)(VEC)...............................................................................17

Lanzer v. BOE, et al.,
    Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ..............................................2, 9

In re LIBOR-Based Fin. Instruments Antitrust Litig.,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014)......................................................................9

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001)..................................................................................31

MacFall v. City of Rochester,
    495 F. App`x 158 (2d Cir. 2012) ..........................................................................19

Maniscalco v. N.Y. City Dept. of Educ.,
    No. 21 Civ.5055 (E.D.N.Y.) (BMC)....................................................................17

Massone v. Washington,
    No. 20 CV 7906 (LJL), 2021 U.S. Dist. LEXIS 163860 (S.D.N.Y. Aug. 30,
    2021) ....................................................................................................................11

Mathews v. Eldridge,
    424 U.S. 319 (1976)..............................................................................26, 27, 29

Moogan v. N.Y. State Dep't of Health,
    8 A.D.3d 68 (1st Dep't 2004) ..........................................................................22, 29

Moore v. Consol. Edison Co. of N.Y., Inc.,
    409 F.3d 506 (2d Cir. 2005)..................................................................................16

Morrissey v. Brewer,
    408 U.S. 471 (1972)..............................................................................................26

N.A.A.C.P. v. Acusport Corp.,
    210 F.R.D. 446 (E.D.N.Y. 2002).....................................................................12, 13

N.Y.C. Mun. Labor Comm. V. City of N.Y.,
    2021 NY Slip Op 21260 (Sup. Ct.)........................................................................15

N.Y.C. Mun. Labor Comm. V. City of N.Y.,
  2021 NY Slip Op 21260 (Sup. Ct.)...................................................................................15

Naliboff v. Davis,
  133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988)..............................22

Nat'l Ass'n of College Bookstores, Inc. v. Cambridge University Press,
  990 F. Supp. 245 (S.D.N.Y. 1997)....................................................................................12

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82
  v. Cuomo,
  64 N.Y.2d 233 (1984).....................................................................................................20

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
  14 N.Y.3d 275 (2010).....................................................................................................22

Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.,
  697 F.3d 209 (2d Cir. 2012)............................................................................................16

O'Connor v. Board of Education,
  48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)......................................22

O'Hailpin v. Hawaiian Airlines, Inc.,
  No. 22 CV 00007 (JAO)(KJM), 2022 U.S. Dist. LEXIS 18640 (D. Haw. Feb.
  2, 2022) ......................................................................................................................18

O'Reilly v. Bd. of Educ.,
  Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan.
  20, 2022) ...........................................................................................................2, 3, 9, 21

O'Reilly v. Bd. of Educ.,
  Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan.
  20, 2022) ......................................................................................................................21

Payton v. Walsh,
  No. 21 CV 02817 (JPH)(MG), 2022 U.S. Dist. LEXIS 3418 (S.D. Ind. Jan. 7,
  2022) ..........................................................................................................................18

Piercy v. Fed. Rsrv. Bank of N.Y.,
  Nos. 02 CV 5005.............................................................................................................14

In the Matter of Rachel Maniscalco v. The Board of Education of the City School
  District of the City of New York, et al.,
  Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.) ................................................................31

Rodriguez v. Winski,
  444 F. Supp. 3d 488 (S.D.N.Y. 2020)................................................................................11

Romano v. Blue Cross Blue Shield of Mich.,
  No. 21 CV 12966, 2022 U.S. Dist. LEXIS 764 (E.D. Mich. Jan. 3, 2022) ............................18

Romero v. BOE, et al.,
   Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) ..............................................2, 9, 31

Russell v. Coughlin,
   910 F.2d 75 (2d Cir. 1990).....................................................................................25, 26

Sambrano v. United Airlines, Inc.,
   No. 21 CV 1074-P, 2021 U.S. Dist. LEXIS 215285 (N.D. Tex. Nov. 8, 2021)
   denial of injunction aff'd at 2021 U.S. App. LEXIS 36679 (5th Cir. Dec. 13,
   2021) ...................................................................................................................................18

Sampson v. Murray,
   415 U.S. 61 (1974)........................................................................................................14

Schrimer v. Town of Harrison,
   98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) ....................22

Score, Inc. v. Cap Cities/ABC, Inc.,
   724 F. Supp. 194 (S.D.N.Y. 1989) ..........................................................................13

Segal v. City of New York,
   459 F.3d 207 (2d Cir. 2006)........................................................................................31

Sorano v. City of Yonkers,
   37 A.D.3d 839 (2d Dep't 2007).................................................................................26

Tessler v. Paterson,
   768 F. Supp. 2d 661 (S.D.N.Y. 2011).......................................................................31

In the matter of the Application of Andrew Ansbro, as President of the Uniformed
   Firefighters Association v. de Blasio, et al.,
   Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) ....................................................25

The New York City Municipal Labor Committee, et al. v. City of New York, et
   al.,
   Index No..........................................................................................................................11

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
   New York, et al.,
   Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ...................................................17

Together Emples. v. Mass Gen. Brigham Inc.,
   No. 21 CV 1909, 2021 U.S. App. LEXIS 34298 (1st Cir. Nov. 18, 2021) ...........18

Trump v. Deutsche Bank AG,
   943 F.3d 627 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct.
   2019 (2020)........................................................................................................................31

United States v. Tenzer,
   213 F.3d 34 (2d Cir. 2000)............................................................................................9

We the Patriots USA, Inc. v. Hochul,
  Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021)
  opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov.
  12, 2021) ........................................................................................................................20

Weinberger v. Romero-Barcelo,
  456 U.S. 305 (1982)........................................................................................................31

Winter v. Natural Res. Def. Council, Inc.,
  555 U.S. 7 (2008)......................................................................................................13, 31

**Statutes**

Civil Service Law Section 201.4 ...............................................................................................23

Education Law Sections 913 and 2568..........................................................................23, 24, 25

Education Law Section 2573(9)...................................................................................................23

Education Law § 3020-a ................................................................................................... *passim*

N.Y. Civil Service Law § 75.............................................................................................. *passim*

N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a........................................................................21

N.Y. Labor Law § 27-a ...............................................................................................................20

Case 23-655, Document 76, 06/05/2023, 3525010, Page101 of 302

## PRELIMINARY STATEMENT

On February 8, 2022, Plaintiffs filed a second motion for a temporary restraining and preliminary injunction ("Plaintiffs' Motion") seeking to enjoin the terminations of 43 Plaintiffs[1] for their failure to comply with the August 24, 2021 Order issued by the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (hereinafter "COH Order").[2]   Moments after Plaintiffs' Motion was filed, Defendants UFT and CSA filed a letter in support of Plaintiffs' Motion.   As detailed below, Plaintiffs' Motion must be denied as they cannot meet the high standard for injunctive relief.   Further, Defendants UFT and CSA's (collectively "Union Defendants") support of Plaintiffs' Motion must be disregarded by the Court given those defendants' lack of standing on this issue.

The COH Order is unequivocal.   It requires all DOE employees, both current and prospective, to be vaccinated.   The COH Order, and the nearly identical order issued by the DOHMH Commissioner applicable to employees of the City of New York ("City"), has been repeatedly upheld as lawful by every Court that has considered it.   Thus, the COH Order is unassailable and legally sound.

Critical to this case is that the COH Order creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated.   The DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent an exemption or accommodation required by law, to perform work for the DOE.   On this point, Your Honor recently held that the

---

[1] Plaintiffs identify the 43 Plaintiffs in Dkt. No 76-1.

[2] COH Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf. Last accessed on Feb. 9, 2022.  Note that the September 27, 2021 deadline was extended to October 1, 2021 via a subsequent order.

nearly identical order issued by the DOHMH Commissioner requiring vaccination against COVID-19 for all City employees (hereinafter "City COH Order") created a "qualification of employment" for City employees employed at the New York City Fire Department.  See Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021).

In addition, the New York Supreme Court also recently issued decisions on this exact issue in connection with three Article 78 proceedings filed by tenured teachers who failed to comply with the COH Order and were challenging their placement on leave without pay ("LWOP") as "constructive terminations" without due process.  See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty)(denying the petition and holding that petitioner is not entitled to a hearing under § 3020-a in advance of her placement on LWOP and/or termination because those employment actions are not a "disciplinary consequence" of the petitioner's failure to comply with the COH Order); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty)(same).[3]

In O'Reilly, the petitioner, a tenured teacher, argued that her placement on LWOP was an effective "termination" and that her "dismissal" violated her due process because she was not afforded "notice and evidentiary hearing required by Education Law § 3020-a." 22 N.Y. Slip. Op. 30173(U) ¶ 2.  The Court, however, found that the petitioner "chose to ignore all of the[] options" available to her in that "she did not show proof of vaccination, did not apply for an accommodation and did not seek to extend her leave without pay in exchange for extended health benefits." Id.  The Court therefore held that the employment actions taken by DOE as a result of

---

[3] The decisions in Lanzer and Romero are not yet published.  For the Court's convenience, copies of those decisions are annexed hereto as Appendix A.

her inaction were "not discipline under the Education Law and instead was merely a response to petitioner's refusal to comply with a condition of employment." Id. at ¶ 2.  Notably, the Court went on to hold that "[d]iscipline involves alleged misconduct, not a **prerequisite** to doing the job in the first instance."  Id. at ¶ 3.  In denying the Article 78 petition, the Court noted that the petitioner was "seek[ing] an end run around challenging the legality of the mandate by classifying it [i.e. her placement on LWOP and termination] as discipline – [which is] a completely different situation.  The requirement to follow the mandate at issue is, as stated above, a condition of employment and petitioner admits that she did not satisfy that condition or seek an exemption." Id. at ¶ 5.

Despite this firm precedent that Plaintiffs relegate to a footnote in their motion, Plaintiffs now – once again – seek the Court's emergency intervention to enjoin the consequence of 43 of the Plaintiffs' failure to comply with a lawful condition of their DOE employment. Plaintiffs do not dispute the legitimacy of the COH Order.  Rather, they just failed to comply with the condition of employment it creates.  They refuse to do so despite the fact that they have been afforded repeated notice of the COH Order's requirement and have been given **five** months to come into compliance with it.  They have also failed to request an exemption or accommodation to the COH Order.  Similarly, they have failed to avail themselves of one of the offered extended leave options in order to maintain their health benefits.  These 43 Plaintiffs have chosen inaction, and now seek the Court's emergency intervention to enjoin the consequence of their failure to avail themselves of the various options negotiated by their unions and offered to them.

In seeking yet another order prohibiting their termination, Plaintiffs merely reup the claim they made in their first preliminary injunction motion; namely, that any termination without resort to the processes detailed in Education Law § 3020-a ("§ 3020-a"), or N.Y. Civil Service Law § 75 ("§ 75") violates their procedural due process rights.  For this reason, Plaintiffs'

Motion must be denied because the Court has already ruled on this issue and denied an identical request for injunctive relief.  In so doing, this Court held that the processes available to Plaintiffs comport with constitutional due process and that Plaintiffs' anticipated terminations do not amount to irreparable harm.  See Dkt. No. 33, Memorandum and Order dated November 24, 2021 (herein after "November 24 Order").   As detailed below, there is no compelling reason to disturb these holdings and therefore, based on law of the case doctrine, Plaintiffs' Motion must similarly be denied.

Next, DOE Defendants respectfully submit that the Court should not consider the letter submitted by Union Defendants in support of Plaintiffs' Motion.  As detailed below, Union Defendants do not have standing in connection with Plaintiffs' Motion.

Further, because the COH Order creates a condition of employment for DOE employees to be vaccinated against COVID-19, well-settled case law firmly establishes that the DOE can terminate those employees, including tenured employees, who fail to satisfy that condition without invoking disciplinary processes.  And, as detailed below, Plaintiffs have been provided with notice and ample opportunities to be heard and therefore have been afforded all process owed to them under the due process clause of the U.S. Constitution.  As such, Plaintiffs' due process claim has no likelihood of success on the merits.

Finally, Plaintiffs also cannot establish that any alleged harm they may suffer, absent the requested relief is irreparable, as termination from employment is a quintessential *reparable* harm.   Nor can Plaintiffs demonstrate the balance of equities tip in their favor. Accordingly, Plaintiffs' Motion must be denied.

## STATEMENT OF FACTS

For a full and complete recitation of applicable facts, DOE Defendants respectfully refer the Court to the Statement of Facts contained in their Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated November 19, 2021.  See ECF Dkt. No. 18.

Briefly, on August 23, 2021, Mayor de Blasio and the DOHMH Commissioner announced that DOE employees would be subject to a "vaccine only" mandate, as opposed to a vaccination-or-testing requirement, as described thereafter in the COH Order.  See COH Order. Under this policy, by September 27, 2021, DOE employees were required to submit proof that they were fully vaccinated; or received a single dose vaccine, or the second dose of a two-dose vaccine; or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  Id.

On September 10, 2021, Defendant UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the COH Order.  See O'Connor Decl., dated Nov. 19, 2021, Exh. A, (hereafter "Impact Arbitration Decision"), at 4.  PERB then appointed an arbitrator and several days of discussions were held.  Id.  On September 10, 2021, the arbitrator issued a decision, which established: (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits or extend the LWOP available for employees who did not comply with the Vaccination Mandate; and (3) that the DOE may "unilaterally separate employees" who have not complied with the Vaccination Mandate or do not have an approved exemption or accommodation or have not either opted for separation or extended their LWOP pursuant to the provisions set forth in the Impact Arbitration Decision. Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of

**JA-1458**

vaccination, remain unable to mount an immune response.  See id. at 6-13.  It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on LWOP by the DOE starting September 28, 2021.  See id. at 13.  While on leave without pay, employees continue to be eligible for health insurance. Id. at 15. Employees who submit proof of vaccination before November 30, 2021, will be eligible to return to their school within one week of submitting their documentation to the DOE.  Id. at 14.

The Impact Arbitration Decision also sets forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of LWOP and with health benefits.  See id. at 14.  DOE employees who did not comply with the COH Order could opt to either separate from service by October 29, 2021 and receive enhanced payment of accrued paid time off and health insurance through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16.  Alternatively, as a second option, employees could have opted to have their LWOP extended through September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who chose to extend their LWOP ultimately do not comply with the COH Order by the end of the leave period, they will be deemed to have voluntarily resigned.  Id.  In addition, the Impact Arbitration Decision provides that starting on December 1, 2021, DOE can unilaterally separate employees who remain out of compliance with the COH Order and have not applied for either the extended leave or separation.  Id.

Critically, and as Plaintiffs' Motion makes clear, more than half of the Plaintiffs availed themselves of one of these processes and therefore will not be terminated from the DOE. See ECF Dkt. No. 76-1 (identifying the 43 Plaintiffs that received notices of termination).

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the remaining unions representing DOE employees, including Defendant CSA and Defendant District Council 37, City of New York ("DC

**JA-1459**

37"). Similar to the process that led to the Impact Arbitration Decision – which covers the majority of plaintiffs herein – the negotiations with CSA reached an impasse and the parties proceeded to arbitration. See O'Connor Decl. dated Nov. 19, 2021 at Ex. B. On September 15, 2021, an arbitration award was issued that exactly mirrors that of the Impact Arbitration Decision. Id.

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave procedures for those DOE employees who do not comply with the DOE Vaccination Mandate and, again, reached an agreement that mirrors that of the Impact Arbitration Decision. See O'Connor Decl. dated Nov. 19, 2022 at Ex. C, Memorandum of Agreement District Council 37, City of New York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021.[4]

## ARGUMENT

### A.    Plaintiffs' Motion is Duplicative of Their Prior Application for Injunctive Relief

On November 17, 2021, Plaintiffs filed an emergency motion for injunctive relief seeking to enjoin their terminations during the pendency of this litigation. See Dkt. No. 2 (Plaintiffs seeking an order "enjoining and restraining [DOE] from disciplining, including but not limited to **terminating** any and all tenured [Principals, Assistant Principals, employees covered by the DC 37 agreement and] teachers who have failed to take a COVID-19 vaccine without proffering charges and specifications and granting the [employee] a hearing on the charges")(emphasis added). Plaintiffs' November 17 motion was fully briefed and argued prior to that motion being denied by the Court via the November 24 Order. See November 24 Order. Plaintiffs did appeal the November 24 Order, and their time to do so has long expired.

---

[4] Because the applicable CSA decision and the DC 37 agreement are identical in all relevant respects to the Impact Arbitration Decision, for ease of reference this memorandum will refer to all three as the Impact Arbitration Decision.

In analyzing whether Plaintiffs' November 17 Motion demonstrated a likelihood of success on the merits, this Court held that "both the pre-deprivation and post-deprivation processes currently afforded to Plaintiffs were and are constitutionally adequate." See November 24 Order at 19.  In so doing, this Court found that "Plaintiffs received ample notice of (1) the Vaccination Mandate, (2) their ability to seek religious and medical exemptions and appeals, (3) their placement on LWOP if they continued to be noncompliant with the terms of the Vaccination Mandate, and (4) their options and opportunity to respond." Id. at 19.

With respect to post-deprivation processes, this Court held that – in addition to remedies available to them via their respective collective bargaining agreements – "Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York State Supreme Court. The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy." Id. at 22 citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy.").  Indeed, Plaintiffs can still file Article 78 proceedings challenging their terminations – notably, Plaintiffs Giammarino, Salas, Maniscalco and Romero already have.  As for irreparable harm, this Court held that "should Plaintiffs prevail, monetary relief will be available to compensate their loss of income. Consequently, injunctive relief is not warranted." See November 24 Order at 24.

Despite these unequivocal holdings, Plaintiffs now seek a second bite at the injunctive relief apple.  Plaintiffs' Motion sets forth the exact same arguments that were asserted by Plaintiffs in their November 17 application. Compare Dkt. No. 2 with Dkt. No. 76-13. Indeed, Plaintiffs' Motion argues that Plaintiffs' anticipated terminations violate their procedural due

process rights because DOE did not follow the disciplinary procedures set forth in § 3020-a or §

75 in advance of taking the challenged employment actions. See Dkt. No. 76-13. This is the exact

same argument made by Plaintiffs in support of their November 17 motion. See Dkt. No. 2-10.

Further, Plaintiffs' Motion asserts that the termination notices received by certain Plaintiffs states

that vaccination is a "condition of employment" and that their failure to become vaccinated will

result in their termination. See Dkt. No. 72. This is the exact same argument asserted by DOE

Defendants in opposition to Plaintiffs' November 17 motion and was therefore before the Court

during its consideration of Plaintiffs' November 17 motion. See Dkt. No. 18. Thus, Plaintiffs'

Motion sets forth no facts or arguments that were not before the Court in deciding Plaintiffs'

November 17 motion.

       Under the law of the case doctrine, "when a court has ruled on an issue, that decision

should generally be adhered to by that court in subsequent stages of the same case unless 'cogent

and compelling reasons militate otherwise.'" In re LIBOR-Based Fin. Instruments Antitrust Litig.,

27 F. Supp. 3d 447, 473 (S.D.N.Y. 2014) quoting Johnson v. Holder, 564 F.3d 95, 99 (2d Cir.

2009); see also United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although

not binding, law of the case doctrine counsels a court against revisiting its prior rulings in

subsequent stages of the same case absent cogent and compelling reasons). Here, the Court

previously denied the exact same injunctive relief sought now. Further, the arguments and facts

set forth in Plaintiffs' Motion are duplicative of those asserted by Plaintiffs during the litigation of

their November 17 preliminary injunction motion.

       In addition, since the issuance of the November 24 Order: (1) this Court issued a

decision denying injunctive relief in Garland in connection with the City COH Order; (2) the

Southern District of New York in Kane v. De Blasio, No. 21 CV 7863 (VEC), 2021 U.S. Dist.

**JA-1462**

LEXIS 239124 (S.D.N.Y. Dec. 14, 2021)[5] denied injunctive relief to DOE tenured teachers seeking to enjoin their terminations for failure to comply with the COH Order; and (3) the New York Supreme Court has held that tenured DOE employees may be terminated for failure to comply with the COH Order without resort to statutory disciplinary procedures. See O'Reilly, 2022 N.Y. Slip. Op. 30173(U), ¶ 3; Lanzer, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero, Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty).   Thus, since the issuance of the November 24 Order there has been intervening case law that further supports this Court's prior denial of injunctive relief.

Therefore, because there is no "cogent and compelling reason" for the Court to revisit its prior denial of Plaintiffs' request for an order enjoining their terminations, Plaintiffs' Motion should be denied.

**B.     Union Defendants Do Not Have Standing in Connection with Plaintiffs' Motion**

On February 4, 2022, Union Defendants filed a request for a pre-motion conference in connection with an unspecified "emergency application defending the due process rights of the DOE employees they represent." See Dkt. No. 73.  However, during a conference on February 7, 2022, counsel for Union Defendants stated that they would not seek to file their own motion for injunctive relief but rather would file a letter in support of Plaintiffs' Motion.  This is a distinction without a difference because, as explained below, Union Defendants do not have standing in connection with Plaintiffs' Motion.

As an initial matter, DOE Defendants respectfully submit that the letter filed by Union Defendants at Docket Number 77 is not a "related letter of support," which was the form of the submission contemplated by the Court following the February 7, 2022 conference.  See Minute

---

[5] This denial of injunctive relief was affirmed by the Second Circuit on February 3, 2022.  A copy of the Second Circuit's decision is annexed hereto as Appendix B.

**JA-1463**

Entry for 2/7/21 Conference.  Rather, Union Defendants' February 8 Letter is quite clearly a standalone application for injunctive relief.  The February 8 Letter makes brand new arguments and assertions completely separate and apart from those asserted in Plaintiffs' Motion.  It is also quite clear that Union Defendants are seeking relief on behalf of non-parties in that they advocate for the Court to enjoin <u>all</u> terminations of non-compliant DOE employees and not just the termination of those 43 Plaintiffs at issue here.  <u>See</u> Dkt. No. 77 at 5 ("Union Defendants urge the Court to grant the sought injunction against the DOE's imminent terminations of its employees without due process.").  For this reason, the Court should decline to consider the February 8 Letter because, as explained below, Union Defendants lack standing to seek this relief.

However styled, it is clear that Union Defendants are seeking relief on behalf of non-parties that they do not represent in this action. Because of this, DOE Defendants respectfully submit that Union Defendants' submission in support of Plaintiffs' Motion must be disregarded by the Court.  It should go without saying that counsel for Union Defendants do not represent the specific Plaintiffs who received a termination notice and for whom the instant motion seeks relief. In fact, Union Defendants are adverse to these Plaintiffs—they have sought leave from this Court to dismiss their claims as against the Unions, including claims that their Unions and DOE conspired to deprive them of their constitutional rights.  Further, to the extent Union Defendants are seeking relief on behalf of DOE employees for whom UFT and CSA are the bargaining agents, these "DOE employees" are non-parties and are therefore unable to obtain relief in this case. Plainly, Union Defendants have no dog in this particular fight.[6]

---

[6] DOE Defendants note that Union Defendants, along with dozens of other unions, filed an action against the City and DOE today by order to show cause seeking, in part, a temporary restraining order enjoining the City and DOE from terminating employees to their failure to comply with the COH Order or the City COH Order.  <u>See</u> <u>The New York City Municipal Labor Committee, et al. v. City of New York, et al.</u>, Index No. Unassigned, (N.Y. Sup., N.Y. Cnty).

Further, Union Defendants do not have either organizational or representative standing in this action to support relief requested on behalf of Plaintiffs or non-party DOE employees. See Rodriguez v. Winski, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) ("Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and (2) associational standing."). Union Defendants cannot establish that they have organizational standing because their application articulates harm to only their members and not any distinctive injury to the unions. Massone v. Washington, No. 20 CV 7906 (LJL), 2021 U.S. Dist. LEXIS 163860, at *9-10 (S.D.N.Y. Aug. 30, 2021).

Union Defendants also cannot establish representative standing. Whether an association has standing to seek relief on behalf of its members is governed by the three-part test articulated in Bano v. Union Carbide Corp., 361 F.3d 696 (2d Cir. 2004). Under Bano, an association has standing if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit" Id. at 713-14. Even assuming Union Defendants could establish the first and second Bano factors, they cannot establish the third. "In order to establish that the participation of individual members is not required, the organization must show that there is no conflict of interest or diversity of views that would prevent the organization from effectively representing its membership." N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446, 458 (E.D.N.Y. 2002).

To assess "the severity of the internal dissent," Courts generally look to two factors: "First, whether the decision to bring suit was made in accordance with the association's normal procedures, and second, the extent to which the suit brings members' interests into actual or potential conflict." Nat'l Ass'n of College Bookstores, Inc. v. Cambridge University Press, 990 F. Supp. 245, 251 (S.D.N.Y. 1997).

In this case, Union Defendants represent no individual members.  There is also no evidence in the record regarding whether UFT and CSA's decision to support Plaintiffs' Motion was made in accordance with their "normal procedures."  Further, it is clear from the face of the Amended Complaint that there is a deep and divisive conflict between the interests of UFT and CSA members.  Indeed, Plaintiffs herein claim that Union Defendants conspired to deprive them of their constitutional rights in connection with the issuance of the Impact Arbitration Award.  Based on that allegation alone, there is clearly a conflict between UFT and CSA and Plaintiffs.  Further, the Impact Arbitration Decision impacted tens of thousands of DOE employees.  But only 95 of those impacted DOE employees have chosen to join this action as a plaintiff.  This is further evidence that that there is an "actual or potential conflict" between the Plaintiffs herein and other UFT or CSA members who chose not to join this action.[7]  As such, Union Defendants lack standing in this action to "support" the relief requested in Plaintiffs' Motion and their submission must be disregarded by the Court.

To the extent the Court considers Union Defendants' submission, DOE Defendants respectfully refer the Court to the below arguments as to why injunctive relief is not warranted and therefore Plaintiffs' Motion should be denied.

## C.    Plaintiffs Do Not Meet the Standard for a Preliminary Injunction

In order to justify a preliminary injunction, Plaintiffs must demonstrate:  (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) the balance of equities tips decidedly in their favor; and (4) that the public interest weighs in favor of granting an injunction.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser

---

[7] DOE Defendants also note that Union Defendants have filed a joint application seeking to dismiss the Amended Complaint in this action "in its entirety."  See Dkt. No. 62.  The Amended Complaint seeks a permanent injunction enjoining Plaintiffs' terminations.  As such, on one hand Union Defendants are arguing that Plaintiffs' Amended Complaint should be dismissed in its entirety and on the other hand are now arguing in support of the claim made in the Amended Complaint for injunctive relief.

v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).   Of these requirements, a showing

of likely irreparable harm is often referred to as the **most** important. See, e.g., Citibank, N.A., 756

F.2d at 275.   An injunction is unwarranted because Plaintiffs cannot demonstrate any of these

requirements.

    **1) Plaintiffs Cannot Establish Irreparable Harm**

       "[I]rreparable harm is the 'single most important prerequisite for the issuance of a

preliminary injunction.'" Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018

U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v.

Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)).   In making a showing of irreparable harm,

Plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies

are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).

"Irreparable injury is one that cannot be redressed through a monetary award. Where money

damages are adequate compensation a preliminary injunction should not issue." JSG Trading

Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).   As the Supreme Court has held "the

temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury

. . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended

in the absence of a stay, are not enough. The possibility that adequate compensatory or other

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily

against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

       Plaintiffs' Motion asserts two alleged harms: loss of employment and a so-called

"impossible choice" of choosing between getting vaccinated and maintaining their public

employment.

       Turning first to the loss of employment, Plaintiffs' Motion and the accompanying

affidavits from Plaintiffs Hoffman, Charles, Mendez, Palladino and Lotito make clear that the only

harm flowing from their termination is economic harm in the form of continued lost wages and the costs associated with obtaining alternative healthcare via COBRA.  See Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, dated February 8, 2022 (hereinafter "Plaintiffs' Memorandum"), at 4-5.  The caselaw of this Circuit and of New York State is quite clear that these alleged economic harms do not warrant equitable relief.

In Garland, this Court held that "to demonstrate an entitlement to injunctive relief, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. As noted decades ago by the United States Supreme Court, the type of harm Plaintiffs allege, loss of employment and pay, are definitionally reparable." See Garland, 2021 U.S. Dist. LEXIS 233142 at *22-23 citing Sampson v. Murray, 415 U.S. 61, 89-92, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)(holding that injuries generally associated with discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute "irreparable harm"); Piercy v. Fed. Rsrv. Bank of N.Y., Nos. 02 CV 5005, 02 CV 9291 (DC), 2003 U.S. Dist. LEXIS 379, 2003 WL 115230, at *3 (S.D.N.Y. Jan. 13, 2003) ("Plaintiffs wrongfully discharged from employment generally may be made whole by monetary damages and reinstatement after a full trial on the merits.").  This Court went on to hold that the plaintiffs failed to make a showing of irreparable harm because "loss of employment and pay constitute harm that may be remedied through money damages." Garland, 2021 U.S. Dist. LEXIS 233142 at *22-23.

Similarly, in examining the COH Order in N.Y.C. Mun. Labor Comm. V. City of N.Y., 2021 NY Slip Op 21260 (Sup. Ct.), New York Supreme Court held that the petitioners were "unlikely to be succeed on the second prong of the preliminary injunction test as they cannot establish an irreparable harm as the loss of employment is compensable by money damages and

**JA-1468**

reinstatement to said employment. Petitioners represented employees who refuse to accept vaccination and are ineligible for an exemption are still entitled to contest any negative outcome through their union procedures and additionally are able to pursue their profession outside of those schools impacted by the Order." See N.Y.C. Mun. Labor Comm. V. City of N.Y., 2021 NY Slip Op 21260, ¶ 5 (Sup. Ct.).

Further, the plaintiffs in Kane, like Plaintiffs here, are tenured DOE teachers who have not complied with the COH Order and sought a preliminary injunction to enjoin their terminations.  In their application, the Kane plaintiffs argued that the irreparable harm they faced absent injunctive relief was termination and an attendant "loss of health insurance and other benefits." Kane, 2021 U.S. Dist. LEXIS 239124 at *10.  In denying the plaintiffs' motion, the Court found that because "the only alleged harm is economic," the plaintiffs "are not entitled to injunctive relief because they have not demonstrated irreparable harm." Id.  As noted above, the Second Circuit recently affirmed this denial of injunctive relief.

These recent holdings are in line with the well-established case law that the "loss of employment is insufficient to carry [Plaintiffs'] burden of showing irreparable harm because [they] make no showing that the loss of [their] employment cannot be remedied with money damages." Buckley v. N.Y. & Presbyterian Hosp., No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21, 2021); see also Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ("the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."); Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992)("injuries that generally attend a discharge from employment — loss of reputation, loss of income and difficulty in finding other employment — do not constitute the irreparable harm necessary to obtain a preliminary injunction")(internal citations omitted).

Further, even a loss of "benefits" attendant to employment does not constitute irreparable harm.  See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012) (back pay includes lost fringe benefits such as vacation pay and pension benefits); E.E.O.C. v. Joint Apprenticeship Comm. Of Joint Indus. Bd. Of the Elec. Indus., 164 F.3d 89, 101 (2d Cir. 1998)(holding same); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(a reinstatement order issued by the District Court could award "full pension benefits, including an award of seniority status covering the interim between termination and a final disposition of the parties' rights.").

Further, with respect to alleged constitutional violations as the claimed "harm," an allegation of a constitutional violation "is insufficient to automatically trigger a finding of irreparable harm," unless "the constitutional deprivation is convincingly shown and that violation carries **noncompensable** damages..."  Donohue v. Mangano, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012)(emphasis added).  Here, however, the alleged harm that flow from the claimed procedural due process violation, i.e. termination, is undoubtedly **reparable** harms.  See Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005); Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003).

Turning to Plaintiffs' "impossible choice" theory of irreparable harm, Plaintiffs' reliance on BST Holdings, L.L.C. v. OSHA, No. 21 CV 60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) and Feds v. Biden, No. 21 CV 356, 2022 U.S. Dist. LEXIS 11145 (S.D. Tex. Jan. 21, 2022) is misplaced.  BST Holdings is a recent decision staying the OSHA emergency temporary standard requiring COVID vaccinations at large private employers. That decision is based primarily on administrative law and the OSHA enabling statute.  See generally BST Holdings, L.L.C., 2021 U.S. App. LEXIS 33698.  Nevertheless, in both BST Holdings and Feds, the plaintiffs sought to enjoin the enforcement of federally-imposed vaccine mandates during the

Case 23-655, Document 76, 06/05/2023, 3525010, Page118 of 302

pendency of the underlying litigation – litigation which will determine whether such mandates were legally enforceable.  Given that the enforceability of the mandates themselves had not yet been decided, the Southern District of Texas, in reliance BST Holdings, held that "no legal remedy adequately protects the liberty interests of employees who must choose between violating a mandate of doubtful validity or consenting to an unwanted medical procedure that cannot be undone" and therefore found there was irreparable harm sufficient to warrant injunctive relief. 2022 U.S. Dist. LEXIS 11145 at *12.

This case is in a much different procedural posture.  The validity of the COH Order has been fully litigated and decided—repeatedly.  The COH Order is fully enforceable as to Plaintiffs. See Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ.5055 (E.D.N.Y.) (BMC); Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC); The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).  Therefore, BLS Holdings and Feds are inapplicable because here the COH Order has already been deemed as legally enforceable as to DOE employees.

Setting aside the inapplicability of BLS Holdings and Feds, Plaintiffs assert a theory of irreparable harm amounting to that they are being forced to choose between their livelihood and getting vaccinated against COVID-19.[8]  This "impossible choice" theory of irreparable harm is, however, inapplicable here as the deadline for being vaccinated has long since passed.  Thus, there is no "impossible choice" left for Plaintiffs to make.  They have already made their choice to not (1) get vaccinated, **or** (2) seek an accommodation from the mandate, **or** (3) choose among any of the leave options negotiated by their unions to avoid termination.

---

[8] Notably, not a single Plaintiff herein submitted an affidavit in connection with this motion detailing the basis for their objection to the vaccination.

In any event, this "impossible choice" theory of irreparable harm as it pertains to vaccination mandates has been widely rejected by the Courts, including the First and Fifth Circuits. See e.g. Sambrano v. United Airlines, Inc., No. 21 CV 1074-P, 2021 U.S. Dist. LEXIS 215285 (N.D. Tex. Nov. 8, 2021) denial of injunction aff'd at 2021 U.S. App. LEXIS 36679 (5th Cir. Dec. 13, 2021); Together Emples. v. Mass Gen. Brigham Inc., No. 21 CV 1909, 2021 U.S. App. LEXIS 34298 (1st Cir. Nov. 18, 2021); Bilyeu v. Ut-Battelle, No. 21 CV 352, 2021 U.S. Dist. LEXIS 250124 (E.D. Tenn. Oct. 29, 2021); Anderson v. United Airlines, No. 21 CV 1050 (TJC)(LLL), 2021 U.S. Dist. LEXIS 249771 (M.D. Fla. Dec. 30, 2021); O'Hailpin v. Hawaiian Airlines, Inc., No. 22 CV 00007 (JAO)(KJM), 2022 U.S. Dist. LEXIS 18640 (D. Haw. Feb. 2, 2022); Payton v. Walsh, No. 21 CV 02817 (JPH)(MG), 2022 U.S. Dist. LEXIS 3418 (S.D. Ind. Jan. 7, 2022); Romano v. Blue Cross Blue Shield of Mich., No. 21 CV 12966, 2022 U.S. Dist. LEXIS 764 (E.D. Mich. Jan. 3, 2022); Beckerich v. St. Elizabeth Med. Ctr., 2021 U.S. Dist. LEXIS 183757 (E.D. Ky. Sept. 24, 2021).  DOE Defendants respectfully submit that the "impossible choice" theory of irreparable harm asserted here is similarly insufficient to warrant injunctive relief.

Because Plaintiffs are unable to demonstrate irreparable harm, Plaintiffs' Motion must be denied.

**2) Plaintiffs Are Unlikely to Succeed on the Merits**

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).  "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v.

N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." Id. (internal citation and quotation marks omitted). "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." MacFall v. City of Rochester, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994). In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it. Id. (quoting McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)).

Plaintiffs argue that, absent injunctive relief, they will be terminated without the due process owed to them and therefore they are likely to succeed on the merits. Plaintiffs are incorrect.

### a) Plaintiffs Are Not Being Subject to Discipline

Plaintiffs premise their procedural due process claim on the faulty notion that they are being subjected to "discipline" without the process owed to them via Education Law § 3020-a or Civil Service Law § 75. Not so. Rather, by virtue of Plaintiffs' unwillingness to comply with the COH Order, their unwillingness to seek an accommodation in connection with the COH Order

and their unwillingness to opt for any of the separation options offered detailed in the Impact Arbitration Decision, they cannot continue their public employment with the DOE.

The DOE, as a government employer, has a duty to maintain a safe workplace. See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the municipal employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  Here, all parties agree that the COH Order is both lawful and enforceable in that it requires all DOE employees to be vaccinated, absent a granted exemption or accommodation.  Given these facts, it is without question that the COH Order creates a lawful, enforceable condition of employment that all DOE employees must meet in order to remain employed.  See Garland, 2021 U.S. Dist. LEXIS 233142 at *25; see also We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021) opinion clarified, No. 21-2179, 2021 U.S. App. LEXIS 33691 (2d Cir. Nov. 12, 2021)(upholding vaccination as a "condition of employment" in the healthcare field).

Thus, DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform work for the DOE. When employees are ineligible to perform their duties under these circumstances, their removal from the workplace is not "discipline." Rather their ineligibility to work is caused by their failure to comply with a lawful job condition.  C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008)(teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).

In addition, "under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance,

misconduct, or competency does not implicate the disciplinary procedures set forth" in the applicable disciplinary statute. See Garland, 2021 U.S. Dist. LEXIS 233142 at **11-12 citing O'Connor, 852 N.Y.S.2d at 538; Beck-Nichols v. Bianco, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures ").

Further, and as indicated above, just last month the New York Supreme Court held that the COH Order created a lawful condition of employment, i.e. vaccination against COVID-19, for DOE employees. See O'Reilly, 2022 N.Y. Slip. Op. 30173(U) at ¶ 3. In O'Reilly, the Court went on to hold that employment actions taken by the DOE as a result of a teacher's non-compliance with the COH Order was "in response to [the teacher]'s refusal to comply with a **condition of employment**[,]" namely, vaccination against COVID-19. See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022)(emphasis added). While Plaintiffs dismiss these cases as inapplicable, they are, in fact, directly on point.

Because it is clear that a COVID-19 vaccination is a condition of employment for DOE employees, well-settled case law firmly establishes that DOE can terminate employees, including tenured employees, without invoking the applicable disciplinary procedures, for failing to maintain a condition of employment. Indeed, the Court of Appeals has upheld the distinction

between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary procedures, from a "condition of employment" which is not subject to such procedures. Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011); Cravatta v New York State Dep't of Transportation, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); Carr v New York State Dep't of Transportation, 70 A.D.3d 1110 (3d Dep't), lv to app. den., 14 N.Y.3d 709 (2010) (same; loss of CDL); Moogan v. N.Y. State Dep't of Health, 8 A.D.3d 68, 69 (1st Dep't 2004) (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses.  Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); Naliboff v. Davis, 133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988); Schrimer v. Town of Harrison, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

Section 3020-a hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency." O'Connor, 48 A.D.3d at 1255 (citation omitted).  Indeed, the Court of Appeals has explicitly held that termination for failure to have a teaching certification is not discipline and termination is required. Lanterman, 14 N.Y.3d at 282; see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011). Similarly, under Civil Service Law § 75, it is equally well-settled that the failure to maintain eligibility for employment is not an act of misconduct or one related to job performance so as to implicate the disciplinary procedures mandated by Civil Service Law § 75.  See Lanterman, 14 N.Y.3d at 282 (2010); Felix, 3 N.Y.3d 498 at 505.

23

Case 23-655, Document 76, 06/05/2023, 3525010, Page124 of 302

Here, it is undisputed that in order to maintain employment at the DOE, an individual must be vaccinated against COVID-19. Plaintiffs are not vaccinated against COVID-19 and therefore cannot maintain their DOE employment. This ineligibility in no way implicates the disciplinary procedures delineated in Education Law § 3020-a or Civil Service Law § 75 because it does not pertain to misconduct or job performance. Therefore, Plaintiffs can be separated from service without the disciplinary procedures delineated in § 3020-a and/or § 75.

**b) Education Law Section 2573(9) is Inapplicable and DOE has Complied with the Taylor Law**

Despite the clear legal precedent articulated above, Plaintiffs further argue that a condition of employment can only be created via the process detailed in Education Law Section 2573(9). See Plaintiffs' Memorandum at 6. However, Section 2573(9) states: "No principal, supervisor, director, or teacher shall be appointed to the teaching force of a city who does not possess qualifications required under this chapter and under the regulations prescribed by the commissioner of education for the persons employed in such positions in the schools of the cities of the state, but a board of education may prescribe additional or higher qualifications for the persons employed in any of such positions." In relying on 2573(9), Plaintiffs are conflating the minimum qualifications an individual must possess in order to be appointed as pedagogical staff with a condition of employment imposed by DOE. As such, Section 2573(9) is inapplicable.

Plaintiffs' argument with respect to Civil Service Law Section 201.4 also fails because Plaintiffs ignore the fact that the DOE and the affected unions **did** collectively bargain over the impact of the COH Order. These negotiations ultimately led to the Impact Arbitration Award – which permits the DOE to seek to unilaterally separate non-compliant employees – and the agreement between DC 37 and the City – which also permits the DOE to seek to unilaterally separate non-compliant employees. As such, DOE and the City complied with all applicable provisions of the Taylor Law and Plaintiffs' arguments otherwise are without merit.

24

JA-1477

### c) Education Law Sections 913 and 2568 are Inapplicable

Plaintiffs' further argue that the vaccine requirement contained in the COH Order necessarily invokes the procedures set forth in Education Law §§ 913 and 2568.   These sections permit the DOE to require an employee to submit to a medical examination to determine the mental or physical capacity of the employee to continue to perform their job duties.   Thus, Plaintiffs are arguing that – in advance of enforcing the COH Order – DOE should have required all unvaccinated employees to submit to an involuntary physical examination by a physician of DOE's choosing and to have that physician issue a written report regarding the unvaccinated employee's fitness for duty.   Plaintiffs hypothesize that if they were required to submit to a medical examination "many of the Plaintiffs would be able to show that they have natural immunity from the COVID-19 virus."  Plaintiffs' Memorandum at 12.

The absurdity of this argument cannot be overstated.   Initially, it is **not** DOE Defendants' position that unvaccinated employees are physically or mentally incapable of performing their job duties.  Rather, it is DOE Defendants' position that the COH Order creates a lawful condition of employment that certain Plaintiffs do not currently meet and are therefore ineligible for continued employment.   Therefore, DOE Defendants respectfully submit that the Court need not even entertain this argument.

And, even so, Plaintiffs' reasoning for why §§ 913 and 2568 would arguably apply, i.e. that detectable COVID-19 antibodies in a blood sample is a substitute for vaccination, is as wrong as it is irresponsible.  This notion of "natural immunity as a substitute for vaccination" has been widely rejected, including by reliable medical authorities like the CDC which has determined that a prior COVID-19 infection is no substitute for the robust protections afforded by vaccination. See New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection,

U.S.      Centers      for      Disease      Control,      August      6,      2021;
https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html.

Indeed, Michelle Morse, M.D., M.P.H, the Chief Medical Officer for DOHMH, has
illustrated the highly compelling grounds for mandating vaccination against COVID-19 even for
those with a prior COVID-19 infection.   See Dkt. No. 37-1, Affirmation of Michelle E. Morse,
M.D., M.P.H. in In the matter of the Application of Andrew Ansbro, as President of the Uniformed
Firefighters Association v. de Blasio, et al., Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty).   As
Dr. Morse explains, "the level and duration of immune protection that results from a prior COVID-
19 infection (sometimes referred to as 'natural immunity') remains uncertain and can vary based
on individual characteristics. Those who have had prior COVID-19 infection also get additional
benefit from vaccination. There is evidence that vaccines may provide better protection against
current variants than natural immunity, and studies have shown that people who are unvaccinated
have higher rates of reinfection compared to people who are vaccinated."   See id.

The COH Order itself mandates vaccination – there is no reference to so-called
natural immunity to exclude anyone from that mandate.   Thus, Plaintiffs' contention that the COH
Order somehow invokes §§ 913 and 2568 because a DOE employee with COVID-19 antibodies
would be "fit for duty" is entirely misplaced and, frankly, reckless in light of the ample medical
evidence that both supports and urges vaccination for individuals with prior COVID-19 infections.

### d)  Plaintiffs Have Been Provided All Process Owed to Them

To begin, Plaintiffs conflate the process they believe they are owed under § 3020-
a and § 75, with the constitutional minima required by the Due Process Clause. However, the
processes provided by these statutes are not co-extensive with, and far exceed, the constitutional
minima.  As this Court held in Garland, "to determine whether process is adequate, the Court looks
to '[f]ederal constitutional standards rather than state statutes [to] define the requirements of

26

procedural due process.'" <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142, at *11 (alternation in original)

<u>quoting</u> <u>Robison v. Via</u>, 821 F.2d 913, 923 (2d Cir. 1987); <u>also</u> <u>citing</u> <u>Cleveland Bd. of Educ. v.</u>

<u>Loudermill</u>, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("In short, once it is

determined that the Due Process Clause applies, the question remains what process is due. . . . The

answer to that question is not to be found in the [state] statute.") (internal citation and quotation

marks omitted); <u>Russell v. Coughlin</u>, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State

may have specified its own procedures that it may deem adequate for determining the

preconditions to adverse official action . . . does not settle what protection the federal due process

clause requires.") (internal quotation marks and citation omitted).   Thus, and contrary to Union

Defendants' argument, "at issue is not whether state procedural law was correctly followed or

applied, but whether the process provided satisfies the requirements imposed by the Constitution."

<u>Id.</u>

   "The fundamental requirement of due process is the opportunity to be heard at a

meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976);

<u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985) ("The essential requirements of

due process…are notice and an opportunity to respond."); <u>Felix</u>, 3 N.Y.3d at 504-06 ("A municipal

employee must be afforded procedural due process before he or she is dismissed from employment

for violating New York City's residency requirement"; here the process provided for in

Administrative Code § 12-120, which provides for notice and an opportunity to refute allegations

of non-residence, are all the process due); <u>Sorano v. City of Yonkers</u>, 37 A.D.3d 839 (2d Dep't

2007)(in accordance with <u>Felix</u>, a police officer can be terminated for non-residency without a

Civil Service Law § 75 process but due process requires that the employee be provided with notice

of the non-compliance and an opportunity to respond prior to termination). Moreover, as the

Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical

**JA-1480**

conception with a fixed content unrelated to time, place and circumstances.' Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961). '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' Morrissey v. Brewer, 408 U.S. 471, 481 (1972)." Mathews, 424 U.S. 319 at 334.

   All Plaintiffs were provided with ample advance notice that, as a result of their non-compliance with the COH Order, they would be terminated from the DOE.  In fact, the vast majority of plaintiffs have had notice of this outcome since September 10, 2021, when the highly publicized Impact Arbitration Decision was issued.  Furthermore, on October 2, 2021, nearly immediately after the October 1, 2021 deadline to submit proof of vaccination under the COH Order, Plaintiffs were notified that they were not in compliance with the order and therefore would be placed on LWOP as of October 4, 2021, and that DOE would terminate them if they did not opt to extend their LWOP status and remained out of compliance with the mandate.  See Dkt. No. 1-1.  Additionally, the October 2, 2021 email set forth the below-described processes that a plaintiff could – and, in some instances, did available themselves of.  Id.  In sum, any DOE employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal, or could have voluntarily separated from the DOE or extended their LWOP with health benefits. After this notice was given, plaintiffs certainly could have – and in the case of some Plaintiffs did -- sought relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy.

   In addition to the notice provided in October, on January 31, 2022, non-compliant DOE employees received **another** notification that they would be terminated effective February 11, 2022 due to their failure to comply with the COH Order.  See Dkt Nos. 76-7 at Exhibits A-1 through A-4.  This January 31, 2022 notice also provided the recipients with the opportunity to

advise DOE if they were receiving the notification in error in advance of the termination date.  See id.  Thus, it is undisputed that DOE Defendants have satisfied the notice requirement.

Following the issuance of the October 2, 2021 email, DOE Defendants provided Plaintiffs with multiple and various opportunities to be heard.    The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required."  Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991).

The October 2, 2021 email to Plaintiffs laid out all of the processes available to them via the Impact Arbitration Decision.  First, the Impact Arbitration Decision established a process by which DOE employees may apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remained unable to mount an immune response.  See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact Arbitration Decision at 6-13.  The Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Id. Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of this process to seek an accommodation with respect to the DOE Vaccination Mandate, including appealing to the arbitrator panel.  See O'Connor Decl., dated Nov. 19, 2021, at Ex. F.

Next, the Impact Arbitration Decision set forth a process for separation from employment or the extension of LWOP.  See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact Arbitration Decision at 6-13.  Under this process, DOE employees who had not complied with the

**JA-1482**

DOE Vaccination Mandate by October 29, 2021, could have opted to be separated from employment **and continue to be eligible for health insurance** through September 5, 2022, unless they are eligible for health insurance from another source.  Id. at 16.  Employees could also, in the alternative, opt to have their LWOP extended through September 5, 2022**, and maintain health coverage**.  Id. at 17. To the extent those employees who chose to extend their LWOP did not come into compliance with the COH Order by the end of that ultimate period, they will be deemed to have voluntarily resigned.  Id.  DOE employees had through October 29, 2021 to select the separation option provided by the Impact Arbitration Decision, and through November 30, 2021 to select to extend their LWOP **with** health benefits.  In accordance with the Impact Arbitration Decision, those who did not avail themselves of either of these options were notified that they would be terminated.  Id.

That Plaintiffs may not like these processes, and 43 out of the 95 Plaintiffs may have chosen not to avail themselves of these options, does not change the fact that these processes were available to all of them.  See Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18 ("Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39  (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766 (2d Cir. 2021).  Indeed, in similar processes in Garland, the Court found that "there was sufficient pre-deprivation notice and opportunity to respond."  See Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18.

To the extent plaintiffs contend that due process requires a hearing to be held, such contention is unsupported.  Ezekwo makes clear that an "opportunity to be heard" does not equate to a "hearing."  940 F.2d at 786.  This is particularly true when there are no factual disputes that

require resolution via a hearing.  This is precisely the point of the Supreme Court's teaching that "due process is flexible and calls for such procedural protections <u>as the particular situation demands</u>." <u>Mathews</u>, 424 U.S. at 334 (emphasis added).  For example, in <u>Moogan</u>, it was undisputed that the plaintiff failed to maintain a qualification of employment, namely, his EMT certification.  <u>See Moogan</u>, 8 A.D.3d at 69.  Because of that, the Court held that there was "no factual issue to be determined at a hearing" and therefore neither "§ 75 or federal constitutional due process" required a hearing before his termination. <u>Id.</u>  Here, the same is true.  Forty-three of the 95 Plaintiffs unquestionably failed to maintain a condition of employment, namely, providing proof of a COVID-19 vaccine.  Thus, there is "no factual issue" necessitating a full adversarial or fact-finding hearing.

Plaintiffs further contend that they are entitled to hearings pursuant to their respective collective bargaining agreements.  <u>See</u> Plaintiffs' Memorandum at 15-17.  This argument again conflates the constitutional minimum required by the due process clause with contractual agreements that do not implicate the United States Constitution.

While it is clear that DOE Defendants provided plaintiffs with a full panoply of processes, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." <u>Hellenic Am. Neighborhood Action Comm</u>, 101 F.3d at 880.

Here, the post-deprivation procedures available to Plaintiffs clearly satisfy the constitutional minimum.  As indicated above, for employees who sought exemptions from the vaccination requirement, the Impact Arbitration Decision further provided an additional review layer, that employees could challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.

Additionally, while an appeal was pending, the employee remained on payroll pending the appeal. See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact Arbitration Decision at 11. In the event an appeal was denied, the employee would be placed on LWOP. Id. at 14. If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same school within a week of providing proof of vaccination to DOE. A nearly identical process applied to those plaintiffs who are covered by the DC 37 Agreement. These post-deprivation processes satisfy the constitutional minimum for due process. See Garland, 2021 U.S. Dist. LEXIS 233142, at *16.

Finally, the availability of an Article 78 review further precludes Plaintiffs' due process claims. Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge [the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).[9]

Given all of the notice and opportunities to be heard plaintiffs have admittedly been

---

[9] Indeed, Plaintiffs Maniscalco and Romero has already availed themselves of this remedy and have filed Article 78 proceedings in New York State Supreme Court challenging their placement on LWOP and possible termination as violative of their due process rights pursuant to § 3020-a. See In the Matter of Ingrid Romero v. The Board of Education of the City School District of the City of New York, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty.); In the Matter of Rachel Maniscalco v. The Board of Education of the City School District of the City of New York, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty.).

Case 23-655, Document 76, 06/05/2023, 3525010, Page133 of 302

provided, and the availability of an Article 78 proceeding, they have been afforded all process due to them.  Therefore, their procedural due process claims are not likely to succeed.

### 3) The Balance of Equities Does Not Tip in Plaintiffs' Favor and an Injunction is Not in the Public Interest

Even if Plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor.  Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020).  To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief.  Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of DOE.  The City's public health experts, who are charged with ensuring the safety and wellbeing of the City's residents, determined that the most effective means of containing the deadly COVID-19 pandemic in schools and keep school children safe was to mandate that school staff be vaccinated. The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the CDC's extolling vaccination as the primary strategy to stop the spread of COVID-19 and recommending that teachers, school administrators and other employees working in school building be vaccinated as soon as possible to help schools safely resume full operations. Further, and to that end, DOE is the largest school district in the country, with around one million students, hundreds of thousands of whom are not yet vaccinated.  Simply put, the COH Order is fully premised on potentially saving lives, protecting public health, and promoting public safety as well as minimizing disruption to in-person classroom disruption. The harm DOE seeks to

JA-1486

prevent here, the death or serious illness of students and staff, and further disruption to the education of approximately one million students, is not compensable.

By contrast, Plaintiffs are not in danger of irreparable harm. Should they succeed in this litigation, they can be made whole and compensated. In light of the foregoing, it is plain that the equities tip heavily in favor of the DOE.

In examining the City COH Order in <u>Garland</u>, this Court found that both "the balance of equities and the public interest in protecting the public health disfavor the injunctive relief requested by Plaintiffs."  <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142, at *24.  In so doing the Court noted it had the "difficult task of balancing the needs of the vast majority against the concerns of a few, and here, the public health and safety concerns far outweigh the concerns of Plaintiffs." <u>Id.</u>  Finally the Court held that

> All of us have been navigating unchartered waters over the course of the pandemic, including health and government officials, who have been tirelessly pursuing and implementing the best means to provide for the health and safety of all. Ultimately, it is up to local government, not the courts, to balance the competing public health and business interests, and here, the New York City government and the FDNY have done so in issuing and enforcing the vaccination requirement for employees of the FDNY.

<u>Id.</u> at *26 (internal quotations and alterations omitted).

As such, it is clear that the balance of the equities tips in DOE Defendants' favor and a denial of the requested injunction is in the public interest.

JA-1487

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be

denied.

Dated:       New York, New York
             February 8, 2022

> **GEORGIA M. PESTANA**
> Corporation Counsel of the
>  City of New York
> Attorney for Defendants DOE and Porter
> 100 Church Street, Room 2-100
> New York, New York 10007
> 212-356-4015
>
>
> By: _____/s/_____
>         Andrea O'Connor
>         Assistant Corporation Counsel

35

## JA-1488

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. LYLE E. FRANK**                              PART          **11M**

*Justice*

-------------------------------------------------------------------X

LUCIA LANZER,

                          Petitioner,

            - v -

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, COMMUNITY
SCHOOL DISTRICT 28 OF THE BOARD OF EDUCATION
OF THE CITY OF NEW YORK

                       Respondent.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160017/2021 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38

were read on this motion to/for            ARTICLE 78 (BODY OR OFFICER)            .

      Petitioner brings the instant petition pursuant to Article 75 and Article 78 of the CPLR

primarily disputing her placement on leave without pay status without a hearing regarding the

change in status.  Respondents oppose the petition and cross move to dismiss the petition on the

grounds that petitioner was not entitled to a hearing on the matter and her placement on leave

without pay status is lawful.  For the reasons set forth below the petition is denied.

      Petitioner is a tenured teacher employed by the New York City Department of Education.

This petition, like others brought under the same or very similar factual scenarios, attempts to

dispute the requirement that teachers get a Covid-19 vaccine or seek an accommodation from

respondents.  Although petitioner does not explicitly challenge the vaccine mandate, she seeks to

return to work in contravention of the directives of the underlying arbitrator's decision.

Moreover, petitioner contends that the arbitrator exceeded its jurisdiction.

The vaccine requirement and the process by which to seek exemption was implemented

by the arbitration decision of Arbitrator Martin F. Scheinman, dated September 10, 2021. *See*

NYSCEF Doc. 4.  The decision delineated specific requirements on the members of United

Federation of Teachers (UFT) to become vaccinated by a date certain or seek an exemption as is

outlined in the decision.  Moreover, the decision specifically states

> "Any unvaccinated employee who has not requested an exemption
> pursuant to Section 1, or who has requested an exemption which
> has been denied, may be placed by the DOE on leave without pay
> effective September 28, 2021, or upon denial of appeal, whichever
> is later, through November 30, 2021. Such leave may be
> unilaterally imposed by the DOE and may be extended at the
> request of the employee [...]."

See NYCEF Doc. 4 at page13.

Based upon the reading of the decision in question, petitioner is not entitled to a hearing

on her placement to leave without pay status, as it is not a disciplinary consequence.  Further, the

Court agrees with the arguments of the respondents that petitioner lacks standing to challenge the

arbitrator's decision as she was not a party to the underlying arbitration.  The Court finds that

petitioner has not established that she was wrongfully placed on leave without pay as the record

is devoid of any evidence of compliance or attempted compliance with the rules and procedures

enumerated in the decision.  Accordingly, it is hereby

ADJUDGED that the petition is denied.

| | |
|---|---|
| **1/21/2022** | **LYLE E. FRANK, J.S.C.** |
| **DATE** | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

160017/2021 Motion No.  001                                    Page 2 of 2

**JA-1490**

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. LYLE E. FRANK**

*Justice*

| | |
|---|---|
| | PART 11M |

-------------------------------------------------------------------X

INGRID ROMERO,

|  |  |
|---|---|
| INDEX NO. | 160353/2021 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

Petitioner,

- v -

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, COMMUNITY
SCHOOL DISTRICT 24 OF THE BOARD OF EDUCATION
OF THE CITY OF NEW YORK

**DECISION + ORDER ON
MOTION**

Respondent.

--------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 17, 19, 20, [herera-mendez.pdf]
21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37

were read on this motion to/for                     ARTICLE 78 (BODY OR OFFICER)                   .

Petitioner brings the instant petition pursuant to Article 75 and Article 78 of the CPLR

primarily disputing her placement on leave without pay status without a hearing regarding the

change in status.  Respondents oppose the petition and cross move to dismiss the petition on the

grounds that petitioner was not entitled to a hearing on the matter and her placement on leave

without pay status is lawful.  For the reasons set forth below the petition is denied.

Petitioner is a tenured teacher employed by the New York City Department of Education.

This petition, like others brought under the same or very similar factual scenarios, attempts to

dispute the requirement that teachers get a Covid-19 vaccine or seek an accommodation from

respondents.  Although petitioner does not explicitly challenge the vaccine mandate, she seeks to

return to work in contravention of the directives of the underlying arbitrator's decision.

Moreover, petitioner contends that the arbitrator exceeded its jurisdiction.

The vaccine requirement and the process by which to seek exemption was implemented

by the arbitration decision of Arbitrator Martin F. Scheinman, dated September 10, 2021. *See*

NYSCEF Doc. 4.  The decision delineated specific requirements on the members of United

Federation of Teachers (UFT) to become vaccinated by a date certain or seek an exemption as is

outlined in the decision.  Moreover, the decision specifically states

> "Any unvaccinated employee who has not requested an exemption
> pursuant to Section 1, or who has requested an exemption which
> has been denied, may be placed by the DOE on leave without pay
> effective September 28, 2021, or upon denial of appeal, whichever
> is later, through November 30, 2021. Such leave may be
> unilaterally imposed by the DOE and may be extended at the
> request of the employee [...]."

See NYCEF Doc. 4 at page13.

Based upon the reading of the decision in question, petitioner is not entitled to a hearing

on her placement to leave without pay status, as it is not a disciplinary consequence.  Further, the

Court agrees with the arguments of the respondents that petitioner lacks standing to challenge the

arbitrator's decision as she was not a party to the underlying arbitration.  The Court finds that

petitioner has not established that she was wrongfully placed on leave without pay as the record

is devoid of any evidence of compliance or attempted compliance with the rules and procedures

enumerated in the decision.  Accordingly, it is hereby

ADJUDGED that the petition is denied.

| 1/21/2022 | | | | |
|---|---|---|---|---|
| **DATE** | | | **LYLE E. FRANK, J.S.C.** | |
| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
| | [ ] GRANTED  [X] DENIED | | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

160353/2021 Motion No. 001                                                    **Page 2 of 2**

FILED: NEW YORK COUNTY CLERK 11/17/2021 02:54 PM INDEX NO. 159738/2021

NYSCEF DOC. NO. 20                                              RECEIVED NYSCEF: 11/17/2021

Case 1:21-cv-06387-KAM-LB   Document 79-2   Filed 02/09/22   Page 2 of 9 PageID #: 2678

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------ X

In the Matter of the Application of Andrew Ansbro, as
President of the Uniformed Firefighters Association
(UFA),

                               Petitioner,      Index No. 159738/2021

For a Judgement Pursuant to Article 78 of the Civil
Practice Law and Rules, vacating the mandatory **AFFIRMATION OF**
vaccination order issued by Respondents for all City **MICHELLE E. MORSE,**
employees to the extent that it is applied to firefighters, **MD., MPH**
fire marshals, marine pilots and marine engineers
employed by the Fire Department of the City of New
York

                      - against -

Bill de Blasio, as Mayor of the City of New York; The New
York City Department of Health and Mental Hygiene; and
the Fire Department of the City of New York,

                              Respondents.

------------------------------------------------------------------ X

     I, Michelle E. Morse, hereby affirm, pursuant to Rule 2106 of the New York Civil Practice

Law and Rules ("CPLR") as follows:

     1.     I am the Chief Medical Officer of the Department of Health and Mental Hygiene

("DOHMH" or "the Health Department") of the City of New York.

     2.     I received my BA from the University of Virginia in 2003, my MD from the

University of Pennsylvania in 2008, and an MPH from Harvard School of Public Health in 2012.

     3.     Prior to working at the Department of Health and Mental Hygiene, I served as a

Health Policy Fellow at the National Academy of Medicine; Assistant Professor at Harvard

JA-1493

Case 1:21-cv-06387-KAM-LB Document 79-2 Filed 02/09/22 Page 3 of 9 PageID #: 2679

Medical School; Assistant Program Director of the Internal Medicine Residency Program at

Brigham and Women's Hospital; and Deputy Chief Medical Officer at Partners In Health.

4.      The information provided in this affirmation is based on my personal knowledge

and professional expertise.

5.      Coronavirus disease, or the 2019 Novel Coronavirus (COVID-19), is an infectious

disease caused by the SARS-CoV-2 virus.

6.      COVID-19 most commonly spreads between people who are in close proximity,

i.e., within approximately 6 feet with one another.  It is spread primarily when someone infected

with the virus releases droplets or particles when talking, coughing, sneezing, or singing, and the

droplets or particles are breathed in by another individual or land in another individual's eyes,

nose, or mouth.

7.      COVID-19 has affected the lives of hundreds of millions of people worldwide and

remains a serious threat all over the world and, in particular as it relates to the instant litigation, to

New York City residents.  As of the date of this affirmation, there have been at least 253 million

reported        cases        of        COVID-19        worldwide        (Johns        Hopkins,

https://www.arcgis.com/apps/dashboards/bda7594740fd40299423467b48e9ecf6,            accessed

11/15/21), including over 46 million in the United States (CDC, https://covid.cdc.gov/covid-data-

tracker/#trends_dailycases, accessed 11/4/21), of which over 928,000 have been in New York City

(DOHMH,  https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page,  accessed  11/15/21).

There have been over  5 million reported deaths from COVID-19 worldwide (Johns Hopkins,

https://www.arcgis.com/apps/dashboards/bda7594740fd40299423467b48e9ecf6,            accessed

11/15/21); 759,552 reported deaths in the United States (CDC, https://covid.cdc.gov/covid-data-

tracker/#trends_dailycases, accessed 11/15/21); and 34,688 confirmed and probable deaths in New

2

JA-1494

York City alone (DOHMH, https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page, accessed 11/15/21).

8.      On January 31, 2020, the United States Department of Health and Human Services declared the COVID-19 virus a public safety emergency, and on March 11, 2020, the World Health Organization declared it to be a global pandemic.

9.      In the late winter/spring of 2020, New York City was the epicenter of the COVID-19 pandemic in the U.S. It suffered from a shortage of medical equipment, personal protective equipment, intensive care unit beds, and medical personnel.

10.     Accordingly, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, which remains in effect today, declaring a state of emergency in New York City.

11.     On March 25, 2020, the then-Commissioner of the Health Department declared COVID-19 a public health emergency within the City. That declaration remains in effect today.

12.     As of the date of this affirmation, New York City still is battling COVID-19. In particular, "variants of concern," including the Delta variant, which currently predominates in New York City, accounting for the vast majority of COVID-19 infections.

13.     Some variants of COVID-19 are particularly concerning because they are more easily and quickly transmitted. In particular, the Delta variant is highly contagious – more than twice as contagious as previous variants, according to the CDC – and may cause more severe illness, particularly in unvaccinated individuals. This is the case because individuals infected with the Delta variant tend to have much higher "viral loads," meaning that they have a higher amount of the virus in their systems. A higher viral load makes an individual more contagious and allows spread of the virus in a shorter time period after exposure.

3

JA-1495

14.     It is because of the ease in speed of the spread of the Delta variant, in particular, that testing, even if frequent, cannot be relied upon to keep New York City employees and the public they serve safe.  Because the Delta variant can spread so quickly, and because the timing between exposure and becoming infectious varies, it is possible for an individual to be exposed, test negative the next day, and begin spreading the virus during the following days.  Thus, testing even once a week is not sufficient to prevent the spread of the virus. This is exacerbated by the fact that someone who is infected with COVID-19 may be asymptomatic and still capable of spreading the virus to others.

15.     In late 2020 and early 2021, three vaccines were given emergency authorization in the United States.  Specifically, on December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the Pfizer-BioNTech COVID-19 vaccine; on December 18, 2020, the FDA issued an EUA for the Moderna COVID-19 vaccine; and on February 27, 2021, the FDA issued an EAU for the Johnson & Johnson/Janssen COVID-19 vaccine.  Then, on August 23, 2021, the FDA gave full approval to the Pfizer vaccine for people ages 16 and older.

16.     These vaccines have proven highly effective in preventing the spread of COVID-19.  In clinical trials, the Pfizer vaccine had a vaccine efficacy of 95% for symptomatic infection (ages 16 and older); the Moderna vaccine had a vaccine efficacy of 94.1% for symptomatic infection, and the Johnson & Johnson vaccine had a vaccine efficacy of 85% for prevention of severe disease.  Numerous studies have since shown that the vaccines have been very effective at preventing severe COVID-19 outcomes. For example, a study of 89,000 hospitalized patients with confirmed COVID-19 showed that the Pfizer and Moderna vaccines were 90% effective at preventing       hospitalization       in       immunocompetent       patients

4

JA-1496

(https://www.cdc.gov/mmwr/volumes/70/wr/mm7044e3.htm?s_cid=mm7043e3_w).       The

COVID-19 vaccines benefit both the vaccine recipients and those with whom they come into

contact, including children too young to be vaccinated and people who are immunocompromised.

More people vaccinated also means fewer infections and less opportunity for the virus to mutate

into new more dangerous variants.

17.    At this point in time, most cases and nearly all severe cases in New York City are

among people who are not vaccinated against COVID-19. The Health Department reports that

between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated

accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of

COVID-19 deaths in New York City.  Additionally, between January 17 and October 27, 2021,

there have been a total of 42,587 hospitalizations among people who are not vaccinated and only

2,342 among people who are fully vaccinated in New York City. During the same time period,

there was a total of 7,465 reported deaths among people who are not vaccinated and 319 among

people who are fully vaccinated (DOHMH, https://www1.nyc.gov/site/doh/covid/covid-19-

data.page#daily, as of 10/27/21).

18.    Wearing a mask and getting tested frequently for COVID-19 are helpful in reducing

the spread of COVID-19, but much less so than the vaccines.

19.    Further, the level and duration of immune protection that results from a prior

COVID-19 infection (sometimes referred to as "natural immunity") remains uncertain and can

vary based on individual characteristics.  Those who have had prior COVID-19 infection also get

additional benefit from vaccination. There is evidence that vaccines may provide better protection

against current variants than natural immunity, and studies have shown that people who are

unvaccinated have higher rates of reinfection compared to people who are vaccinated. For

5

FILED: NEW YORK COUNTY CLERK 11/17/2021 02:54 PM          INDEX NO. 159738/2021
NYSCEF DOC. NO. 20                                        RECEIVED NYSCEF: 11/17/2021

example, a recent study showed that, among hospitalized adults with COVID-19-like illness, the adjusted odds of confirmed COVID-19 among unvaccinated patients with prior COVID-19 infection were more than 5 times higher than the odds among people fully vaccinated with the Pfizer or Moderna vaccine and no previous documented infection (https://www.cdc.gov/mmwr/volumes/70/wr/mm7044e1.htm). For this reason, the CDC recommends vaccination for people who have had a prior COVID-19 infection. This recommendation reflects current scientific evidence indicating that vaccination after infection significantly enhances protection and further reduces risk of reinfection.

20.     Moreover, from a public safety perspective, vaccination provides a more certain and verifiable record of immunity than that afforded by prior COVID-19 infection. Testing for antibodies is not currently recommended to assess for immunity to SARS-CoV-2 (the virus that causes COVID-19), nor is it recommended to assess the need for vaccination in an unvaccinated person or to determine the need to quarantine after a close contact with someone who has COVID-19. At this time there is no specific antibody test or antibody threshold that can determine an individual's risk of subsequent infection.

21.     It is therefore of critical importance that residents of New York City get vaccinated and encouraging vaccination is a major public health imperative.  In particular, vaccination of individuals providing City services and working in City facilities will save lives, protect public health, and promote public safety.

22.     To that end, the Health Department has engaged in and implemented a wide range of efforts, policies, and requirements to encourage widespread vaccination of New Yorkers, beginning with education and outreach; ensuring the vaccines are widely available; offering incentives to vaccination; and finally, moving forward with a series of escalating mandates

6

FILED: NEW YORK COUNTY CLERK 11/17/2021 02:54 PM          INDEX NO. 159738/2021
NYSCEF DOC. NO. 20                                         RECEIVED NYSCEF: 11/17/2021

Case 1:21-cv-06387-KAM-LB  Document 79-2  Filed 02/09/22  Page 8 of 9 PageID #: 2684

beginning with protecting the City's frontline healthcare workers[1] and some of the most at-risk

populations (those in certain congregate settings, such as shelters, adult day care centers, and

supportive housing).[2]

     23.    Once COVID-19 vaccines became available in late 2020, the Health Department

worked to provide universal access to no-cost vaccination sites operating across the five boroughs

at locations and during hours convenient to New Yorkers.  Vaccination priority began with those

working with the public – including health care workers and other professionals, like the New

York Police Department, whose public-facing work puts them at increased risk for COVID-19.

Over the course of many months, the Health Department disseminated widespread messaging,

including through media campaigns, webinars, social media, community conversations, print

materials, about the importance, effectiveness, and safety of COVID-19 vaccines tailored to

specific neighborhoods, available in appropriate languages, and delivered by trusted and

knowledgeable community partners.

     24.    In summer 2021, notwithstanding ensuring access to all populations at convenient

places across New York City, the City saw that vaccination uptake was declining and instituted

vaccination incentives, including $100 pre-paid debit cards, free tickets to sporting events, and

free memberships to various museums and theatres.   Despite the efforts and policies described

above, upon information and belief, the City employee vaccination rate, as of late summer 2021,

had only reached about 65%.

---

[1] On July 21, 2021, the Commissioner of the Health Department issued an Order requiring COVID-19 vaccination
or weekly testing for Health Department staff working in clinical settings and for all NYC Health + Hospitals staff.
This Order is no longer in effect as it was superseded by regulations issued by the New York State Department of
Health.
[2] On August 10, 2021, the Commissioner of the Health Department issued an Order requiring COVID-19
vaccination or weekly testing for City staff and contractors working in residential or congregate settings.

7

**JA-1499**

25.     To address the vaccination rate, and as part of a broader effort to protect at-risk New Yorkers, including children not yet eligible to be vaccinated, the Commissioner of the Health Department issued an Order on August 24, 2021, requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a Department of Education building or school setting.  That Order was re-issued on September 12 and 15, 2021, and subsequently amended on September 28, 2021.  The Order and Amendment were ratified by the New York City Board of Health on September 17, 2021 and October 18, 2021.

26.     Additionally, on August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test.

27.     City employees provide services to all New Yorkers that are critical to their health, safety, and well-being, and the City must take all reasonable measures to reduce transmission of COVID-19 when providing such services, both within the City workforce itself, as well as between City employees and the general public that they serve.

28.     Vaccination is the most effective measure available to reduce COVID-19 transmission, and that is why it was determined that the City employee vaccination mandate, as set forth in the Commissioner's Order issued on October 20, 2021, was necessary to save lives, protect public health, and promote public safety.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated:          New York, New York
                November 15, 2021

                                                Michelle E. Morse, M.D., MPH

8

**JA-1500**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                                 Plaintiffs,

               -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                               Defendants.
------------------------------------------------------------------------X

**INDEX NO. 21-cv-6387**

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND IN REPLY TO THE OPPOSITION SUBMITTED
BY THE DEFENDANT NEW YORK CITY DEPARTMENT OF EDUCATION**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT .................................................................... 1

PLAINTIFFS' RESPONSES TO THE NYCDOE'S ARGUMENTS .................. 3

   A.  The Court Did Not Address Whether The Plaintiffs Are Entitled To
      Due Process Before Termination .......................................................... 3

   B.  The Plaintiffs Can Show Irreparable Harm ........................................ 3

   C.  The Vaccine Mandate Is Not A Condition Of Employment ................. 4

      1.  NYCDOE's Changing Nomenclature ......................................... 4

      2.  The Comparison Between The COVID Vaccine Mandate With
          Residency Requirements And Licensing Requirements Supports
          The Plaintiffs' Argument .......................................................... 6

      3.  COVID-19 Vaccine Mandate Not Type Of Condition Of
          Employment That Obviates Due Process ................................... 7

   D.  The Arbitration Awards Violated N.Y. Civil Service Law § 209.3.(f)
      ................................................................................................... 8

   E.  The Court Should Reject The NYCDOE's Argument That Post-
      Deprivation Article 78 Review Is The Proper Mechanism For
      Review .............................................................................................. 9

   F.  Balance of the Equities ...................................................................... 9

CONCLUSION ........................................................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990) .................................................................... 6, 10

*Biden v Missouri*, __ U.S.__, 142 S Ct 647 (2022) ............................. 1, 11

*BST Holdings, L.L.C. v OSHA*, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir 2021) ......................................................................................... 5

*Communications Workers of Am., Dist. One v Nynex Corp.*, 898 F2d 887, 891 (2d Cir 1990) ................................................................................. 5

*Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex. 2022) .......... 11

*Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *26, n 18 (2d Cir 2021) ................................................................................................... 4

*Richie v Coughlin*, 148 A.D.2d 178, 182-183 (3d Dept 1989) ................... 9

*Whelan v Colgan*, 602 F.2d 1060, 1062 (2d Cir 1979) ............................. 5

**Statutes**

N.Y. Civil Service Law § 209.3.(f) .......................................................... 10

N.Y. Education Law § 2568 .................................................................... 7

N.Y. Education Law § 2573.9. ................................................................. 6

N.Y. Education Law § 3001 .................................................................... 9

N.Y. Education Law § 3001.2. ................................................................. 9

N.Y. Education Law § 3012.2(a) .............................................................. 2

N.Y. Education Law § 913 ...................................................................... 7

N.Y. Public Officers Law § 3.2 ............................................................... 9

**Other Authorities**

Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity:
reinfections versus breakthrough infections ] medRxiv (visited February 9,
2022) ............................................................................................................... 6

*https://patch.com/new-york/new-york-city/nypd-officers-should-live-nyc-mayor-says* (visited February 9, 2022) ............................................................... 7

https://thelawdictionary.org/?s=insubordination (visited February 9, 2022) ................................ 2

*https://www.bloomberg.com/news/articles/2022-01-13/nyc-mayor-to-consider-temporary-remote-option-for-schools* ............................................................... 6

Natural immunity gets another boost from two new U.S. studies –
ClarkCountyToday.com (visited February 9, 2022) ....................................... 6

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs in further support of their Motion seeking a Temporary Restraining Order and Preliminary Injunction enjoining the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") from terminating forty-three Plaintiffs without due process afforded to them by the Fourteenth Amendment to the United States Constitution.

The COVID-19 pandemic did not grant the Commissioner of the New York City Department of Health and Mental Hygiene ("DOH") unlimited and universal power and authority. *See, Biden v Missouri*, __ U.S.__, 142 S Ct 647 (2022) (opining "[t]he challenges posed by a global pandemic do not allow a federal agency to exercise power that Congress has not conferred upon it. At the same time, such unprecedented circumstances provide no grounds for limiting the exercise of authorities the agency has long been recognized to have.").

The NYCDOE argues that the "the COH Order creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated." **Docket Entry No. 79**, at page 1.

Yet, the NYCDOE does not identify any statutory provision, administrative code provision, New York City Charter provision, or any other legal authority that granted to the Commissioner of the DOH the authority to create a condition employment for the NYCDOE. By failing to identify any legal authority for the Commissioner of the DOH to create a new condition of employment unilaterally, the NYCDOE tacitly acknowledges that the Commissioner of the DOH had no authority to create a condition of employment for NYCDOE employees.

The Plaintiffs are not questioning the authority of the Commissioner of DOH to issue the vaccine, but the NYCDOE is taking the mandate to the additional step that is unsupported by the language of the Commissioner's Order or any statutory or administrative authority. The NYCDOE is converting the Commissioner's Order into grounds for terminating forty-three Plaintiffs without establishing how the Commissioner's Order morphed into a condition of employment without any statutory or administrative authority or any language in the Commissioner's Order stating that it is a condition of employment.

The NYCDOE's citation to New York State Supreme Court decisions does not relieve the NYCDOE from setting forth the statutory or administrative authority it relies upon to convert the Commissioner's Order into a new condition of employment for all current NYCDOE employees.

1

Despite the NYCDOE's argument that the mandate is a condition of employment, the NYCDOE actually argues that the forty-three Plaintiffs facing termination "have been afforded repeated notice of the COH Order's requirement and have been given **five** months to come into compliance with it." **Docket Entry No. 79**, at page 3 (emphasis in original).  In addition, the NYCDOE states that the Plaintiffs are being terminated "by virtue of Plaintiffs' unwillingness to comply with the COH Order, their unwillingness to seek an accommodation in connection with the COH Order and their unwillingness to opt for any of the separation options offered…they cannot continue their public employment with the DOE. **Docket Entry No. 79**, at pages 20-21.

In other words, the Plaintiffs are being terminated for not coming into compliance with a lawful directive to become vaccinated, which by definition is insubordination.  Insubordination is one of the few statutory grounds for terminating a tenured employee under N.Y. Education Law. *See,* N.Y. Education Law § 3012.2(a).

Insubordination is defined as "to have a lack of respect or the refusing to obey orders of a person in authority."  https://thelawdictionary.org/?s=insubordination (visited February 9, 2022).

What the Plaintiffs are being terminated for is insubordination and under New York law as tenured professionals, they are entitled to the due process procedures set forth in N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, and their collective bargaining agreements. *See,* N.Y. Education Law § 3012.2(a).

The NYCDOE's arguments to the contrary have no justification in the law and there is no legal authority for the Commissioner of the DOH to create a new condition of employment that impacts NYCDOE employees.  Just by repeating the phrase "condition of employment" does not make it so.  There needs to be a legal basis for the creation of such a condition of employment.  The NYCDOE has not set forth such a basis because none exist.

Accordingly, the Plaintiffs' Motion should be granted and the NYCDOE should be restrained and enjoined from terminating the Plaintiffs' employment without complying with due process.

## PLAINTIFFS' RESPONSES TO THE NYCDOE'S ARGUMENTS

### A.   The Court Did Not Address Whether The Plaintiffs Are Entitled To Due Process Before Termination

The NYCDOE makes an argument that this Court previously addressed the issue of the NYCDOE's entitlement to terminate the Plaintiffs without due process, but that simply is unsupported by the Court's own decision and the subsequent conduct of the parties.

This Court specifically stated at Footnote 5 in its November 24, 2021 Memorandum and Order that while the NYCDOE was arguing that the Plaintiffs' separation was not discipline but rather ineligibility for employment, the Court was not going to address the issue in its decision. The Court clearly and unequivocally stated "the parties have requested, and the Court has granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation are being "disciplined" or subject to a legitimate condition of employment, and thus the Court will not reach that issue here." **Docket Entry No. 33,** at Footnote 5.

Then, on November 30, 2021 and December 7, 2021, the Plaintiffs, the UFT, and the NYCDOE submitted the supplemental briefing as directed by the Court. *See,* **Docket Entry Nos. 34, 35,** and **37.**

The Court did not address the issue in this Motion in its prior decision, namely whether the Plaintiffs' termination is disciplinary, and if it is disciplinary, entitling the Plaintiffs to N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, and/or their collective bargaining agreements due process procedures or whether the NYCDOE can unilaterally terminate the Plaintiffs because the vaccine is a condition of employment.

Since the Court did not address this issue in its prior decision, the NYCDOE's argument fails, and the matter is now ripe for this Court's determination.

### B.   The Plaintiffs Can Show Irreparable Harm

Since this Court issued its decision in November 2021, several Courts have adopted the irreparable harm standard that requiring a jab or lose one's job is irreparable harm.

The Second Circuit in *Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *26, n 18 (2d Cir 2021) (emphasis in original) recognized that the loss of employment does not *usually* constitute

3

irreparable injury, however, the Court cited to *BST Holdings, L.L.C. v OSHA*, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir 2021), for the proposition that irreparable harm can be found where reluctant recipients were put to a choice between their job(s) and their jab(s).

The citation to *BST Holdings, LLC* by the Second Circuit raises the specter that in this Circuit, the choice between a job and a jab is considered irreparable harm.

This is exactly what the Plaintiffs are facing -- if they do not get the vaccine they are going to be terminated. The holding in *BST Holdings, LLC* and its acceptance and recognition by the Second Circuit in *Kane* provides the legal basis for the Plaintiffs' irreparable injury such that this Court should grant the Plaintiffs an injunction.

In addition, the Plaintiffs have produced uncontested Declarations that the Plaintiffs risk loss of health insurance benefits which will adversely affect their medical conditions and those of their family members. *See,* **Docket Entries 76-2; 76-3; 76-4; 76-5.**

The Second Circuit has repeatedly held that the threat of the loss of health benefits constitutes irreparable injury. *See, Communications Workers of Am., Dist. One v Nynex Corp.,* 898 F2d 887, 891 (2d Cir 1990), (holding "the threat of termination of medical benefits to striking workers has been held to constitute irreparable harm."); *Whelan v Colgan,* 602 F.2d 1060, 1062 (2d Cir 1979), (holding "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury.").

The Plaintiff can satisfy the irreparable injury standard.

**C.    The Vaccine Mandate Is Not A Condition Of Employment**

1.    NYCDOE's Changing Nomenclature

The NYCDOE makes a blanket, unsupported statement that the Commissioner's Order is a condition of employment.

The NYCDOE admits that the vaccine mandate is being "imposed by DOE" but it is also not a qualification for employment. *See,* **Docket No. 79**, at page 24. Yet, in the past, the NYCDOE has argued that the due process procedures in N.Y. Education Law, N.Y. Civil Service Law, or in collective bargaining agreements requiring the NYCDOE to pursue when an employee commits

misconduct, is different from qualifications of employment which are not subject to due process procedures. *See,* **Docket No. 37**, at pages 6-7.

The NYCDOE previously called the vaccine mandate a qualification of employment, stating that the vaccine is a "qualification of their DOE employment." **Docket Entry No. 37**, at page 7.

However, faced with the statutory authority in N.Y. Education Law § 2573.9. that authorizes only a Board of Education (in the case of the NYCDOE, the Panel for Educational Policy) to create a new qualification for employment, the NYCDOE has changed its argument (and its nomenclature) and now admits that the vaccine mandate is not a qualification of employment because the Panel for Educational Policy has not approved it to be a qualification. This change in position reflects that the NYCDOE is trying to fit its mandate into a legal phrase so that the NYCDOE can terminate the Plaintiffs without due process in violation of their constitutional rights.

The NYCDOE also ignores the fact that it did not negotiate the new condition of employment with its labor unions. The UFT and CSA both disagree that the Arbitration Awards grant to the NYCDOE *carte blanche* termination authority to non-compliant employees of the NYCDOE. *See,* **Docket Entry No. 77**.

The NYCDOE has violated the Taylor Law when it failed to collectively bargain with the NYCDOE's unions a new condition of employment. "The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a strong and sweeping policy of the State." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 667 (1990) (internal quotation marks omitted).

The NYCDOE does not explain how it can, as it says "impose[ ]" a new condition of employment upon the employees of the NYCDOE without collectively bargaining the issue at the bargaining table. *See,* **Docket Entry No. 79**, at page 24.

Finally, the NYCDOE changed its argument in another significant way. The NYCDOE had previously argued that the unvaccinated Plaintiffs "lack fitness [to perform their job functions] under the COH Order." **Docket Entry No. 18**, at page 16.

Now, when faced with the fact that N.Y. Education Law § 913 and N.Y. Education Law § 2568 both provide due process rights to NYCDOE employees who the NYCDOE believes is unfit to perform their duties, the NYCDOE again changes its nomenclature. At one point in this Action,

the NYCDOE used the word "unfit" to describe the unvaccinated NYCDOE employees. The phrase has a statutory meaning, but because it does not fit within the NYCDOE's paradigm, the NYCDOE scoffs at the argument and does not address the statutory rights that a purported unfit NYCDOE employee has under N.Y. Education Law.[1]

While the NCDOE dismisses the idea, it is possible that a fitness for duty examination of the 43 Plaintiffs may show that they have natural immunity, which, as new studies show, may be better than a vaccine. The NYCDOE has a myopic view of COVID-19 prevention, even though the recent Omicron variant showed that the vaccine did not prevent infection in NYCDOE schools. *See* *https://www.bloomberg.com/news/articles/2022-01-13/nyc-mayor-to-consider-temporary-remote-option-for-schools* (visited February 9, 2022) (identifying over 1,000 staff members (who were presumably vaccinated) were infected with COVID-19).

In any event, the Plaintiffs who will be terminated without due process are having their fundamental constitutional rights violated. The NYCDOE cannot decide whether the vaccine mandate is a qualification (**Docket Entry No 37**, at page 4), fitness for duty matter (**Docket Entry No. 18**, at page 16), or a condition of employment (**Docket Entry No. 79**, at page 1). Each and every one of the NYCDOE's arguments fail entitling the Plaintiffs to due process rights in accordance with N.Y. Education Law, N.Y. Civil Service Law or the collective bargaining agreements. Accordingly, the Court should grant the Plaintiffs an injunction.

      2.    The Comparison Between The COVID Vaccine Mandate With Residency Requirements And Licensing Requirements Supports The Plaintiffs' Argument

The NYCDOE compares the vaccine mandate to a residency requirement or a licensing requirement whereby the NYCDOE can terminate an employee without due process if the employee does not comply with the residency requirement or the licensing requirement. However, there is a very significant distinction between the vaccine mandate and the residency/licensing

---

[1] It is important to note that the NYCDOE's citation to studies relating to natural immunity are contradicted by other studies that support the natural immunity over vaccinations. *See,* Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections | medRxiv (visited February 9, 2022) (stating that the study demonstrated that natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity.); Natural immunity gets another boost from two new U.S. studies – ClarkCountyToday.com (visited February 9, 2022).

requirements – a residency requirement and/or a licensing requirement are imposed pursuant to statute or by legislative acts, not by an Order from a Commissioner of Health who has no legal authority to impose a new condition of employment upon NYCDOE employees.

In January 2022, newly-sworn-in Mayor Eric Adams endorsed a change in the **law** that would require New York City Police Officers to reside in New York City. *See, https://patch.com/new-york/new-york-city/nypd-officers-should-live-nyc-mayor-says* (visited February 9, 2022). But Mayor Adams cannot direct the NYPD Commissioner to execute an Order to change the residency requirement. Only the State Legislature can make the change. *See,* N.Y. Public Officer Law § 3.2.

Similarly, when the NYCDOE argues that a licensing requirement is similar to the vaccine mandate, N.Y. Education Law § 3001 requires the "possession of a teacher's certificate" in order for a teacher to teach in the public schools in New York. N.Y. Education Law § 3001.2.

While the Commissioner of the DOH had the legal authority to impose a COVID-19 mandate, he did not have any authority to create a new condition of employment for the employees of the NYCDOE. The NYCDOE does not cite a single statute, administrative code section, or the New York City Charter provision that granted the Commissioner of the DOH authority to create the condition of employment. Unlike the statutory authority regarding residency (N.Y. Public Officers Law § 3.2) or licensing (N.Y. Education Law § 3001), the entity that imposed such a condition of employment or qualification (the State Legislature) had the legal authority to impose it, unlike the Commissioner of the DOH and the COVID-19 vaccine mandate.

    3.    <u>COVID-19 Vaccine Mandate Not Type Of Condition Of Employment That Obviates Due Process</u>

The NYCDOE has had discretion and has exercised that discretion whether to grant accommodations to NYCDOE employees for religious or medical reasons. Unlike a licensing requirement for teachers, where the State statute requires a license to teach in New York (N.Y. Education Law § 3001), where the NYCDOE has no authority to retainer or hire an unlicensed teacher, the NYCDOE has discretion and exercised that discretion to determine whether a person who is unvaccinated can continue to be employed by the NYCDOE.

New York State Courts have held that when the public employer has discretion regarding conditions of employment, the non-compliant employee must be provided due process before termination. *See, Richie v Coughlin*, 148 A.D.2d 178, 182-183 (3d Dept 1989).

The fact that some of the NYCDOE employees do not have to comply with the Commissioner's Order, but others who were denied accommodations and therefore must comply makes the decision to terminate the forty-three Plaintiffs a discretionary decision. Since it is discretionary and not mandatory, the Plaintiffs should be granted due process pursuant to N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or pursuant to a collective bargaining agreement.

Finally, since the Commissioner's Order does not state that the vaccine is a condition of employment or that if the vaccine is not taken by a NYCDOE employee that employee is subject to termination, the NYCDOE must provide due process to those it is choosing to terminate for non-compliance, *i.e.,* insubordination.

The Court should grant the Plaintiffs an injunction.

**D.    The Arbitration Awards Violated N.Y. Civil Service Law § 209.3.(f)**

The NYCDOE relies upon the Arbitration Awards to argue that the Plaintiffs received all of the due process they were entitled to under the Constitution. *See,* **Docket Entry No. 79**, at page 28.

The Arbitration Awards were impact bargaining "binding" arbitration awards that violated N.Y. Civil Service Law § 209.3.(f), which states "where the public employer is a school district" there is no binding arbitration or any legal mechanism for the school district to impose a resolution in impact bargaining.

In fact, the New York State Court of Appeals recognized that there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations...." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671.

The NYCDOE's reliance upon illegal Arbitration Awards to support its argument that the Plaintiffs have received all the due process they are entitled to receive is a way for the NYCDOE to violate the Plaintiffs' due process rights.  The Arbitration Award, arrived out through a

conspiracy between the NYCDOE and its unions and the Arbitrator in order to further the NYCDOE's mission to terminate the Plaintiffs without due process must be rejected by the Court.

Since there was no statutory authority for the NYCDOE and its unions to permit an "Arbitrator" to resolve a school district impasse bargaining dispute, the reliance upon the Arbitration Awards to provide due process to the Plaintiffs must be rejected by the Court.

**E.    The Court Should Reject The NYCDOE's Argument That Post-Deprivation Article 78 Review Is The Proper Mechanism For Review**

The NYCDOE argues that the Plaintiffs' Motion should be denied because the Plaintiffs can seek N.Y. CPLR Article 78 review post-termination. However, the NYCDOE does not explain why this Court should not determine the issues in this Motion instead of leaving it to a post-termination determination.

This Court should not force the Plaintiffs to file individual N.Y. CPLR Article 78 proceedings in New York State Courts after termination when the issues are ripe for determination pre-termination before this Court. *See, Feds v Biden*, 2022 US Dist LEXIS 11145, at *10 (S.D. Tex. 2022) (holding "requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to 'to bet the farm by taking the violative action before testing the validity of the law.' *Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010).").

The Court should reject the NYCDOE's argument that a N.Y. CPLR Article 78 proceeding is a substitute for a determination in this proceeding.

**F.    Balance of the Equities**

As the United States Supreme Court made clear "[t]he challenges posed by a global pandemic do not allow a federal agency to exercise power that Congress has not conferred upon it.   At the same time, such unprecedented circumstances provide no grounds for limiting the exercise of authorities the agency has long been recognized to have." *Biden v Missouri*, __ U.S.__, 142 S Ct 647 .

The same is true for State and City agencies.   The Commissioner of the DOH has no authority, legally or administratively, to impose a new condition of employment upon NYCDOE

**JA-1513**

employees. The NYCDOE has not identified a source of law that granted the Commissioner such authority.

Since the Commissioner had no authority to unilaterally create a new condition of employment and by using the newly created condition of employment to violate the Plaintiffs' constitutional rights to due process, the balance of the equities balances in favor of the Plaintiffs because the Plaintiffs should not suffer a deprivation of their constitutional rights when the Commissioner did not have the authority to create a new condition of employment on his own.

As Governor Hochul recognized on February 9, 2022, New York is no longer in a crisis with COVID and has lifted the New York State indoor mask mandate. This decision by the Governor reveals that the State and City are no longer in a crisis situation and the conditions regarding COVID are improving. To continue to treat COVID as an imminent crisis ignores reality and using COVID to violate the constitutional rights of the Plaintiffs is improper, illegal, and unconstitutional.

The equities balance in favor of the Plaintiffs.

## CONCLUSION

For the reasons argued in this Reply Memorandum of Law and in the papers submitted in support of the Motion, the Plaintiffs' Motion should be granted and the NYCDOE should be barred from terminating the Plaintiffs without due process afforded to them by N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, and the collective bargaining agreements with the NYCDOE.

Dated:        Carle Place, New York
              February 10, 2022

                                        Respectfully submitted

                                        THE SCHER LAW FIRM, LLP

                                        Austin Graff, Esq.
                                        *Attorneys for the Plaintiffs*
                                        One Old Country Road, Suite 385
                                        Carle Place, New York 11514
                                        (516) 7460-5040

10

**JA-1514**



THE CITY OF NEW YORK

**GEORGIA M. PESTANA**
*Corporation Counsel*

# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**Andrea O'Connor**
*Labor & Employment Law Division*
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

February 11, 2022

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re:   Broecker. et al. v. New York City Department of Education. et al.,
Docket No. 21 Civ 6387

Dear Judge Matsumoto:

I am the Assistant Corporation Counsel in the office of James E. Johnson, Corporation Counsel of the City of New York, attorney for defendants New York City Department of Education and Meisha Porta (collectively, "DOE Defendants") in the above-captioned matter. I write today in connection with Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction docketed at Document Number 76 and Defendants' UFT and CSA letter in support of that motion docketed at Document Number 77.

On February 8, 2022, Defendants UFT, CSA and District Council 37, along with approximately 30 other unions representing employees of the City of New York and DOE, filed an emergency motion seeking a temporary restraining order and preliminary injunction to enjoin the terminations of employees that had not complied with the applicable vaccination mandate issued by the New York City Department of Health Commissioner. See The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.).

On February 10, 2022, the City and DOE filed an opposition to this motion. Also on February 10, 2022, the Court issued an order declining to enter the temporary restraining order and scheduling a hearing on the preliminary injunction for March 1, 2022. See Order, dated February 10, 2022, in The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). The Court also issued a brief

JA-1515

interim order which stated: "The Court declines to grant plaintiffs' request, in its proposed Order to Show Cause (NYSCEF Doc. No. 26), for an order temporarily restraining defendants from terminating certain employees represented by plaintiffs pending the hearing on plaintiffs' complaint.  Plaintiffs have failed to demonstrate a sufficient likelihood of success on the merits, a reasonable risk of irreparable harm, or that the equities balance in their favor to justify such relief."  See Interim Order, dated February 10, 2022, in The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.).  For the Court's convenience, a copy of the Order and Interim Order are annexed hereto.

DOE Defendants thank the Court for its attention to this matter.

Respectfully submitted,
/s/
Andrea O'Connor
Assistant Corporation Counsel

cc: All Counsel (by ECF)

INDEX NO. 151169/2022

NYSCEF DOC. NO. 31    Case 1:21-cv-06387-KAM-LB    Document 86-1    Filed 02/11/22    Page 1 of 4 PageID #: 2710    RECEIVED NYSCEF: 02/10/2022

At ___ Part 5 of the Supreme Court
of the State of New York held in and
for the County of New York at the
Courthouse located at 80 Centre
Street, New York, New York on the
10ᵗʰ day of February, 2022.

Present: Hon. **Judy H. Kim**
_____Justice_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ X

THE NEW YORK CITY MUNICIPAL LABOR
COMMITTEE, by its Chair HARRY NESPOLI;
UNIFORMED SANITATIONMEN'S ASSOCIATION,
LOCAL 831 IBT, by its President HARRY NESPOLI;
POLICE BENEVOLENT ASSOCIATION, by its
President PATRICK LYNCH; UNIFORMED
FIREFIGHTERS ASSOCIATION LOCAL 94 I.A.F.F.
AFL-CIO by its President ANDREW ANSBRO;
UNIFORMED FIRE OFFICERS ASSOCIATION, by its
President JAMES MCCARTHY; UNITED
FEDERATION OF TEACHERS, by its President
MICHAEL MULGREW; COUNCIL OF SCHOOL
SUPERVISORS AND ADMINISTRATORS, by its
President MARK CANNIZZARO; INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, LOCAL 237, IBT,
by its President GREGORY FLOYD; CORRECTION
OFFICER'S BENEVOLENT ASSOCIATION, by its
President BENNY BOSCIO; COMMUNICATION
WORKERS OF AMERICA NYC LOCAL 1180, by its
President GLORIA MIDDLETON; SERVICE
EMPLOYEES INTERNATIONAL UNION, LOCAL
246, by its President JOSEPH COLANGELO;
LIEUTENANTS BENEVOLENT ASSOCIATION, by
its President LOUIS TURCO; SERGEANT'S
BENEVOLENT ASSOCIATION, by its President
VINCENT VALLELONG; DETECTIVES
ENDOWMENT ASSOCIATION, by its President PAUL
DiGIACOMO; CAPTAINS ENDOWMENT
ASSOCIATION, by its President CHRISTOPHER
MONOHAN; SANITATION OFFICERS'
ASSOCIATION, LOCAL 444, by its President JOSEPH
MANNION; UNIFORMED SANITATION CHIEFS
ASSOCIATION, by its President IGNAZIO AZZARA;
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 30, by its Business Manager
WILLIAM LYNN; DISTRICT COUNCIL NO. 9

Index No. 151169/2022

Hon. Judy H. Kim J.S.C.

**ORDER TO SHOW CAUSE
FOR A TEMPORARY
RESTRAINING ORDER
AND PRELIMINARY
INJUNCTION**

1

Case 23-655, Document 76, 06/05/2023, 3525010, Page165 of 302

PAINTERS & ALLIED TRADES by its Business
Manager and Secretary Treasurer JOSEPH
AZZOPARDI; INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL 3 by its
President THOMAS J. CLEARY; INTERNATIONAL
UNION OF OPERATING ENGINEERS, LOCAL 891,
by its President ROBERT TROELLER; SERVICE
EMPLOYEES INTERNATIONAL UNION, LOCAL
300 by its President JAMES GOLDEN;
BOILERMAKERS, BLACKSMITHS & METAL
WORK MECHANICS, LOCAL 5, by its Business
Manager STEVE LUDWIGSON; SERVICE
EMPLOYEES INTERNATIONAL UNION
SUPERVISORS, LOCAL 621, by its President CARL
CHIARAMONTE; ORGANIZATION OF STAFF
ANALYSTS, by its President ROBERT CROGHAN;
N.Y.C. DISTRICT COUNCIL OF CARPENTERS,
UBCJA, by its President PAUL CAPURSO;
CORRECTION CAPTAINS' ASSOCIATION, INC., by
its President PATRICK FERRAIUOLO; UNITED
PROBATION OFFICERS ASSOCIATION, by its
President DALVANIE POWELL; ALLIED BUILDING
INSPECTORS LOCAL 211, by its President NELSON
MAS,

                    Plaintiffs,

     -against-

THE CITY OF NEW YORK; BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT OF
THE CITY OF NEW YORK; and THE NEW YORK
CITY HOUSING AUTHORITY,

                    Defendants.

--------------------------------------------------- X

2

INDEX NO. 151169/2022
NYSCEF DOC. NO. 31                                               RECEIVED NYSCEF: 02/10/2022

Case 1:21-cv-06387-KAM-LB   Document 86-1   Filed 02/11/22   Page 3 of 4 PageID #: 2712

Upon review of the annexed Complaint and the exhibits annexed thereto; the Affirmation of Emergency and in Support of Application for Temporary Restraining Order and Preliminary Injunction, dated February 8, 2022; the Affirmation of Beth Norton, dated February 8, 2022; the Affirmation of David Grandwetter, dated February 8, 2022, and the accompanying Memorandum of Law, dated February 8, 2022, and for ~~good~~ cause ~~shown, it is hereby:~~ *sufficient being alleged*

LET ~~ORDERED that~~ Defendants *by their counsel* show cause before this Court at the Supreme Court Courthouse in the County of New York, ~~60~~ 80 Centre Street, New York, NY, in IAS Part 5 as assigned by the court and per the Court's instructions, on March 1, 2022 at ~~9:30~~ 11:00 a.m. or as soon thereafter as counsel may be heard, why an Order should not be made herein:

1.    Declaring that Defendants violated the due process rights of unvaccinated employees represented by Plaintiffs, pursuant to statute and the individual Plaintiffs' respective collective bargaining agreements;

2.    Enjoining Defendants from summarily terminating these employees due to vaccination status, without due process; and

3.    Granting such other and further relief as the Court may deem appropriate.

~~IT IS FURTHER ORDERED that pending the hearing upon the aforementioned Complaint, Defendants are temporarily restrained from terminating employees represented by Plaintiffs due to vaccination status.~~

*Denied. See interim order. DME*

*JSC*

*DME*

*JSC*

SUFFICENT CAUSE ~~APPEARING~~ *BEING ALLEGED* THEREFORE, IT IS ORDERED that leave is hereby granted to Plaintiffs to submit upon the return day of this Order to Show Cause, and any subsequent day as shall be determined by the Court on said return day, such additional evidence, exhibits, legal memoranda and other proof as may be necessary.

3

**JA-1519**

**IT IS FURTHER ORDERED,** that service of a copy of this Order together with the _along with the Summons and Complaint_ papers upon which it is granted be made upon all Defendants by email or personal service on or before the 17th day of February, 2022; and that such method of service shall be deemed good and sufficient service thereof.

**IT IS FURTHER ORDERED** that papers in response to the relief requested herein, if any, shall be filed on the NYSCEF system and e-mailed to Alan M. Klinger at aklinger@stroock.com and Dina Kolker at dkolker@stroock.com, on or before the 24th day of February, 2022.

~~Signed this ____ day of _____, 2022, at New York, New York.~~

Oral Argument
Directed

JSC    HON. JUDY H. KIM

ENTER:

Judy H. Kim
JSC HON. JUDY H. KIM

Index No. 151169/2022

4

**JA-1520**

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    HON. JUDY H. KIM                          PART _____ 05 _____

                                          *Justice*

-----------------------------------------------X

THE NEW YORK CITY MUNICIPAL LABOR COMMITTEE,          INDEX NO.        151169/2022
UNIFORMED SANITATIONMEN'S ASSOCIATION, LOCAL
831 IBT, POLICE BENEVOLENT ASSOCIATION,
UNIFORMED FIREFIGHTERS ASSOCIATION LOCAL 94
I.A.F.F. AFL-CIO, UNIFORMED FIRE OFFICERS                  **INTERIM ORDER**
ASSOCIATION, UNITED FEDERATION OF TEACHERS,
COUNCIL OF SCHOOL SUPERVISORS AND
ADMINISTRATORS, INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, LOCAL 237, IBT, CORRECTION
OFFICER'S BENEVOLENT ASSOCIATION,
COMMUNICATION WORKERS OF AMERICA NYC LOCAL
1180, SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 246, LIEUTENANTS BENEVOLENT
ASSOCIATION, SERGEANT'S BENEVOLENT
ASSOCIATION, DETECTIVES ENDOWMENT
ASSOCIATION, CAPTAINS ENDOWMENT ASSOCIATION,
SANITATION OFFICERS' ASSOCIATION, LOCAL 444,
UNIFORMED SANITATION CHIEFS ASSOCIATION,
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 30, DISTRICT COUNCIL NO. 9 PAINTERS &
ALLIED TRADES, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 3, INTERNATIONAL
UNION OF OPERATING ENGINEERS, LOCAL 891,
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL
300, BOILERMAKERS, BLACKSMITHS & METAL WORK
MECHANICS, LOCAL 5, SERVICE EMPLOYEES
INTERNATIONAL UNION SUPERVISORS, LOCAL 621,
ORGANIZATION OF STAFF ANALYSTS, N.Y.C. DISTRICT
COUNCIL OF CARPENTERS, UBCJA, CORRECTION
CAPTAINS' ASSOCIATION, INC.,UNITED PROBATION
OFFICERS ASSOCIATION, ALLIED BUILDING
INSPECTORS, LOCAL 211

                          Plaintiffs,

                          - v -

THE CITY OF NEW YORK, BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF THE CITY OF NEW
YORK, THE NEW YORK CITY HOUSING AUTHORITY,

                          Defendants.

-----------------------------------------------X

The Court declines to grant plaintiffs' request, in its proposed Order to Show Cause

(NYSCEF Doc. No. 26), for an order temporarily restraining defendants from terminating certain

INDEX NO. 151169/2022
NYSCEF DOC. NO. 52    RECEIVED NYSCEF: 02/10/2022

Case 1:21-cv-06387-KAM-LB   Document 86-2   Filed 02/11/22   Page 2 of 2 PageID #: 2715

employees represented by plaintiffs pending the hearing of plaintiffs' complaint. Plaintiffs have

failed to demonstrate a sufficient likelihood of success on the merits, a reasonable risk of

irreparable harm, or that the equities balance in their favor to justify such relief (See e.g., Dua v

New York City Dept. of Parks and Recreation, 84 AD3d 596, 597 [1st Dept 2011]).

      This constitutes the decision and order of the Court.


DATE: 2/10/2022

_____
JUDY H. KIM, JSC

**Check One:**  ☐ **Case Disposed**  ☒ **Non-Final Disposition**

**Check if Appropriate:**  ☒ **Other (Specify**   DENIAL OF TRO – RELATED TO NYSCEF DOC NO.26   )

**JA-1522**

## THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L. SCHER**

TEL. 516-746-5040

FAX: 516-746-5043

AUSTIN R. GRAFF*

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

February 11, 2022

ROBERT S. NAYBERG
(1960-2013)

**By ECF**
~~Honorable Kiyo A. Matsumoto~~
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action. This letter responds to the February 11, 2022 letter submitted by the Defendant New York City Department of Education ("NYCDOE").

The Plaintiffs were not parties to the State Court Action. As this Court recognized, there is a concern about the UFT's and CSA's standing in this Action to challenge the NYCDOE's unilateral termination of 43 Plaintiffs in this Action without due process.

Based upon the State Court's Order to Show Cause (**Docket Entry 86-1**) and Interim Order (**Docket Entry No. 86-2**), it is unclear why the Court denied the unions the relief they sought. It could very well be the same concerns this Court had with respect to the unions' standing in this Action. As a result, this Court should give no weight to the State Court's Interim Order or Order to Show Cause.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
Nicole BROECKER, et al,

                    *Plaintiff*,

          v.

New York City Department of Education,
et al,

                    *Defendants*.
-----------------------------------X

**MEMORANDUM & ORDER**

21-CV-6387(KAM)(LRM)

**KIYO A. MATSUMOTO, United States District Judge:**

          The 93 named Plaintiffs in the Amended Complaint
(collectively "Plaintiffs") have not received at least a first
dose of a COVID-19 vaccine and are employed and work at schools
operated by the New York City Department of Education ("NYC
DOE"), and are members of various unions named as Defendants.
Named Defendants are the NYC DOE; the City of New York; Meisha
Porter, the Chancellor of the NYC DOE; the United Federation of
Teachers, Local 2, American Federation of Teachers, AFL-CIO
("UFT"); Michael Mulgrew, President of the UFT; Counsel of
Supervisors and Administrators ("CSA"), Mark Cannizzaro;
District Council 37, AFSCME AFL-CIO, Local 372 ("DC 37 Local
372") Henry Garrido; Shaun D. Francois I; District Council 37,
AFSCME AFL-CIO, Local 1251 ("DC 37 Local 1251") (together with
DC Local 372, "DC 37"); Martin F. Scheinman, Scheinman

JA-1524

Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services LLC (collectively "Defendants").

Defendants NYC DOE and the City of New York are entities responsible for enacting and enforcing a COVID-19 vaccination mandate (the "Vaccination Mandate") issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene ("COH Order") on August 24, 2021, requiring that all NYC DOE employees receive at least a first dose of a COVID-19 vaccination by September 27, 2021, in order to work at NYC DOE schools. Defendants UFT, CSA, and DC 37 are labor organizations through which certain named Plaintiffs are covered by collective bargaining agreements ("CBAs") with the NYC DOE.

For the second time in this action, Plaintiffs seek a preliminary injunction to enjoin and restrain Defendant NYC DOE from "unilaterally terminating the Plaintiffs without due process." (ECF No. 76-13, Pls. Mem., P. 2.) Defendants UFT and CSA support Plaintiffs' motion. (ECF No. 77.)[1] For the reasons

---

[1] The Court has considered Defendants' UFT and CSA's "letter of support," regarding Plaintiffs' most recent request for injunctive relief, and after careful consideration, the Court finds it lacks merit. The arguments raised in Defendants' UFT and CSA's letter of support are resolved *infra* by the Court's instant Memorandum and Order. Importantly, as the Court noted at the February 7, 2022, pre-motion conference it is doubtful whether Defendants UFT and CSA have either organizational or associational standing in this action to seek injunctive relief alongside Plaintiffs. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)) (noting that to show organizational standing, an association must show a distinct and palpable injury in fact to itself as an organization; (b) that is fairly traceable to the challenged action; and (c) that a favorable decision would redress its injuries; *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 713-14 (2d Cir. 2004) (associational standing exists if: "(a) its members would otherwise have standing to sue in their own

**JA-1525**

discussed below, Plaintiffs' motion for preliminary injunction
and temporary restraining order is DENIED.

<u>**BACKGROUND**</u>

The Court incorporates by reference in its entirety
the factual background, procedural background, and evidentiary
record described in and submitted in relation to the Court's
November 24, 2021, Memorandum and Order ("Order").  (ECF No.
33.)  The November 24, 2021, the Order denied the Plaintiffs'
November 17, 2021, motion for preliminary injunction and
temporary restraining order ("First Motion for Preliminary
Injunction") which sought to enjoin the NYC DOE from
implementing procedures to seek termination of employees who
failed to obtain a first dose of the vaccine, apply for a
religious or medical exemption, or extend their leave without

---

right; (b) the interests it seeks to protect are germane to the
organization's purpose; and (c) neither the claim asserted nor the relief
requested requires the participation of individual members in the lawsuit.").
In the Amended Complaint, Plaintiffs sued Defendants UFT and CSA, and
Defendants UFT and CSA are adverse to Plaintiffs.  Defendant UFT not only
opposed Plaintiffs' first preliminary injunction motion, but vigorously
defended the Impact Arbitration Award that Defendants maintain is illegal and
the result of collusion by the UFT, CSA, and others.  (*See* ECF No. 33, Nov.
24, 2021, M&O; ECF No. 47, Am. Compl.)  Most recently, Defendants UFT and CSA
both sought leave to move to dismiss the Amended Complaint in its entirety
against both unions.  (ECFs No. 62; 71.)  Moreover, pursuant to the
undersigned's Individual Chambers Practices and the Federal Rules of Civil
Procedure, letter briefs are not permitted. (III. C.2.); Federal Rule of
Civil Procedure 7 (Pleadings Allowed and Form of Motions and Other Papers).

JA-1526

pay ("LWOP") status while retaining health benefits.  (ECF No.
33, Nov. 24, 2021, M&O.)[2]

     In the Court's November 24, 2021, Order, the Court
noted that the effects and devastating impacts of the novel
coronavirus, COVID-19, particularly on the unvaccinated, were
well known.  Since the date of that Order, the rapid rise of new
highly transmissible variants of COVID-19 once again plunged the
City of New York and the entire country into further periods of
uncertainty and risk of serious illness or death for the
unvaccinated.  From December 2021 to January 2022, the Omicron
variant descended on New York, bringing with it heightened
levels of transmissibility and illness from COVID-19.[3]

     Plaintiffs filed an Amended Complaint on January 10,
2022, naming additional parties.  (ECF No. 47, Am. Compl.)  On
January 31, 2022, the NYC DOE notified employees who had failed
to receive a COVID-19 vaccine and also failed to either (1)
apply for and receive a medical or religious accommodation, or
(2) extend their Leave Without Pay ("LWOP") status and continued
medical benefits until September 2022, that their employment
would terminate on February 11, 2022.  (See ECF No. 76-7, Pls.

---

[2] At the November 23, 2021, show cause hearing, the parties requested, and the
Court granted leave for, supplemental briefing on the issue of vaccination as
an NYC DOE job requirement.  (See Min. Entry, Nov. 23, 2021.)
[3] See Omicron Variant: What You Need to Know, CENTERS FOR DISEASE CONTROL AND
PREVENTION (Updated Feb. 2, 2022), https://www.cdc.gov/coronavirus/2019-
ncov/variants/omicron-variant.html.

Ex. A, Termination Notices.)   These termination notices stated

in relevant part:

> You have previously received notice regarding your
> failure to comply with the New York City Health
> Commissioner's Order requiring vaccination of all New
> York City Department of Education staff. Compliance
> with that Order is a condition of employment. Since
> you have not complied with the Order and have not
> chosen to extend your leave without pay, despite
> notice and an opportunity to do so, your employment
> with the New York City Department of Education is
> terminated, effective February 11, 2022. Please note
> that your health insurance coverage through the City
> will also cease upon termination....Information about
> COBRA will be mailed to you separately at the address
> on file in NYCAPS....If you believe you are receiving
> this notification in error, please email
> LWOPquestions@schools.nyc.gov no later than February
> 2, 2022.

(*See, e.g.,* ECF No. 76-7, Pls. Ex. A, p. 1.)   Of the ninety-

three Plaintiffs, forty-three[4] received termination notices and

---

[4] These forty-three Plaintiffs are Plaintiffs Gellman, Ben-Jacob, Udina,
Romero, Cruz, Narciso, Perez, LoParrino, Rodriguez, Toro, Mendez, Hussein,
Pereyra, Abreu, Backof, Porto, Miraglia, Silvestri-Incantalupo, Mavis,
Costello, Sanchez, Moore, Broecker, Nicchio, Genao, Hoffman, Jacobs,
DiProssimo, Martinez-van Bokkem, Ustares, Baker-Pacius, Moore, Placencio,
Russo, Simo, Charles, Palladino, Pagen, Kukla, Franzese, Schiano, Salamone,
Deidra Statuto.   (*See* ECF No. 76-1, Affidavit of Austin Graff ("Graff Aff."),
¶ 3.)

**JA-1528**

Case 1:21-cv-06387-KAM-LB   Document 89   Filed 02/11/22   Page 6 of 43 PageID #: 2723

face termination from their employment at the NYC DOE, effective on February 11, 2022.  (ECF No. 76-1, Graff Aff., n.1.)[5]

On February 4, 2022, four days after the NYC DOE termination notices were received—and 164 days after the Vaccination Mandate was first issued on August 24, 2021—Plaintiffs filed a pre-motion conference request, seeking leave to file an emergency application for preliminary injunction and temporary restraining Order against the NYC DOE's termination of noncompliant NYC DOE employees.  (ECF No. 72, Pls. Pre-Motion Req.)  On that same date, the Court deferred a ruling on the Plaintiffs' request for a pre-motion conference, and ordered all Defendants to respond to the Plaintiffs' pre-motion conference request on an expedited basis.  (Dkt. Order, Feb. 4, 2022.) Defendants UFT and CSA filed a response in support of Plaintiffs' pre-motion conference request, and stated their own intention to seek injunctive relief against the NYC DOE.  (ECF No. 73.)  Defendants NYC DOE (ECF No. 74) and Defendants Martin

---

[5] Of the ninety-three Plaintiffs, Plaintiffs Martino, Ciacca-Liss, Hagan, Trapani, Masullo, Klapakis, Hartz, Schmitter, Lotito, Mosley, Blasis-Maring, Meagan, Joergens, and Shaya, all signed NYC DOE Release Forms ("Release Forms") which extended their LWOP status to September 2022.  (ECF No. 47, Am. Compl., ¶ 315.) The Release Forms included a waiver of the signing employee's rights to challenge the employee's "resignation, including, but not limited to, through a contractual or statutory disciplinary process," and a general release of the NYC DOE from "any and all claims, liabilities, or causes of actions[,]" related to the events surrounding the Release. (*See* ECF No. 47, Am. Compl. ¶¶ 306-315.) Plaintiff Lotito, who signed the release and, therefore, will *not* be terminated on February 11, 2022, is one of the Declarants for the Plaintiffs' instant Motion.  (ECF No. 76-6, Declaration of Janelle Lotito.)

F. Scheinman and the Scheinman Arbitration and Mediation Services entities (ECF No. 75) filed letters in opposition to Plaintiffs' pre-motion conference request.

The Court granted the Plaintiffs' pre-motion conference request on February 7, 2022, and held a pre-motion conference on that same date. (Dkt. Order, Feb. 7, 2022; Min. Entry Feb. 7, 2022.) At the pre-motion conference, the Court ordered expedited briefing as to Plaintiffs' emergency application for injunctive relief. (Min. Entry Feb. 7, 2022.) Discussions during the pre-motion conference included Defendant UFT's lack of representative or associational standing to seek an injunction together with the Plaintiffs' against whom the UFT is adverse. Defendants UFT and CSA represented to the Court that they would submit only a letter stating support of the Plaintiffs' emergency application for injunctive relief. (*See id.*) Defendants UFT and CSA further represented that they would not separately seek injunctive relief in the instant action. (*Id.*)[6]

---

[6] On February 8, 2022, the union Defendants filed in state court an emergency motion seeking a temporary restraining order and preliminary injunction to enjoin the terminations of employees that had not complied with the Vaccination Mandate. *See The New York City Municipal Labor Committee, et al. v. City of New York,* Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). The requested relief was denied by the Supreme Court of the State of New York, New York County, on February 10, 2022. *See id.,* NYSECF No. 51, Feb. 10, 2022, Order; *see also id.,* NYSECF No. 52, Feb. 10, 2022, Interim Order.

Plaintiffs filed a motion for preliminary injunction and temporary restraining order on February 8, 2022 (ECF No. 76), along with an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 76-1), supporting declarations from five of the forty-three Plaintiffs facing termination on February 11, 2022 (ECF Nos. 76-2—6), supporting exhibits (ECF No. 76-7—12), and an accompanying memorandum of law. (ECF No. 76-13.) The UFT filed a five-page letter in support of Plaintiffs' emergency application. (ECF No. 77.) On February 9, 2022, Defendant NYC DOE filed a memorandum in opposition to Plaintiffs' motion for preliminary injunction and temporary restraining Order (ECF No. 79, Def. NYC DOE Mem.), Appendix A providing copies of two relevant New York State Supreme Court Cases (ECF No. 79-2, Appx. A.), and Appendix B, providing the Affirmation of Dr. Michelle E. Morse, M.D., M.P.H., the Chief Medical Officer of the Department of Health and Mental Hygiene of the City of New York. (ECF No. 79-2, Appx. B.) On February 10, 2022, Plaintiffs filed a reply memorandum of law in further support of their motion for preliminary injunction. [7] (ECF No. 82, Pls. Reply Mem.)

## **LEGAL STANDARD**

The party seeking a preliminary injunction must

---

[7] Plaintiffs and Defendant NYC DOE filed unauthorized letters (ECF No. 86; ECF No. 87) pertaining to the New York State Supreme Court's recent orders in *The New York City Municipal Labor Committee, et al. v. City of New York*, Index

establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted).

Here, Plaintiffs seek both a prohibitory and mandatory injunction. (ECF No. 76-13, Pls. Mem. pp. 2-4.) The traditional preliminary injunction analysis is complicated by three distinctions given the nature of the mandatory injunctive relief Plaintiffs seek. First, because Plaintiffs seek a mandatory injunction against a government action taken in the public interest, they must show both irreparable harm and a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, *33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 573-74 (2d Cir. 2002) ("In order to merit preliminary injunctive relief against 'government action taken in the public interest pursuant

---

No. 151169/2022 (N.Y. Sup., N.Y. Cnty.), declining the motion for temporary restraining order and preliminary injunction brought by union Defendants and other unions which sought to enjoin the termination of employees not in compliance with the Vaccination Mandate. These submissions do not alter the Court's analysis.

to a statutory or regulatory scheme,' a plaintiff must show 'irreparable harm in the absence of an injunction and a likelihood of success on the merits.'") (internal citation omitted) (emphasis added); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Second, Plaintiffs allege constitutional violations, and "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Maniscalco*, 2021 WL 4344267, at *2 (citing *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)). As Plaintiffs allege that their procedural due process rights have been violated, "no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984), and the Court will focus its analysis on the other factors for establishing an entitlement to injunctive relief.

Third and finally, parties seeking mandatory injunctive relief are required to meet the higher standard where, as here, (1) the injunctive relief sought would alter,

JA-1533

rather than maintain, the status quo or (2) the injunction would grant the movant substantially all the relief sought, which relief could not be undone even if defendants prevail on the merits. *Tom Doherty Assocs.*, 60 F.3d at *33-34. Here, Plaintiffs are seeking, among other things, to enjoin the NYC DOE from terminating their employment without due process, and to be restored employment with the NYC DOE, after having been placed on LWOP several months ago on October 4, 2021, with notice of their eventual termination for failure to comply with the Vaccination Mandate. Plaintiffs also seek to enjoin the termination of their medical benefits on February 11, 2022, despite their ability by November 30, 2021, to have continued their LWOP status and medical benefits through September 2022. Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction, and must show a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs.*, 60 F.3d 27; *Doninger v. Niehoff*, 527 F.3d 41, *47 (2d Cir. 2008).

## DISCUSSION

Plaintiffs' renewed motion for injunctive relief demands that the Court revisit many of the same issues already decided in the Court's November 24, 2021, Memorandum and Order, with one notable exception. In its opposition to Plaintiffs' First Motion for Preliminary Injunction, the NYC DOE argued in its papers and at the November 23, 2021, show cause hearing that

11

JA-1534

employees separated under the terms of the Vaccination Mandate, and under the express terms of the Impact Arbitration Award, are not being "disciplined," but are being terminated based on their failure to satisfy a condition of employment.  At the November 23, 2021, show cause hearing, the parties requested, and the Court granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation were being "disciplined" or subject to a legitimate condition of employment, and the Court did not expressly reach that issue in its November 24, 2021, Order.  The Court reaches that specific issue here, as will be discussed *infra*.[8]

## I.   Preliminary Injunction

### A. Likelihood of Success on the Merits

Plaintiffs again have failed to establish a "clear" or "substantial" likelihood of success on the merits as to any of their claims.  In their Amended Complaint, Plaintiffs seek an assortment of relief, including declaratory judgment as to the

---

[8] For the avoidance of doubt as to what the Court's November 24, 2021, Order decided, the Court *did* consider "whether the processes [Plaintiffs] ha[d] been afforded upon LWOP placement and *upon separation* [was] constitutionally adequate[,]" and found that they were. (ECF No. 33, M&O, p. 18) (emphasis added.)  Plaintiffs' alleged deprivation of their property rights to continued pay and employment in the instant case occurred upon their placement on LWOP status.  *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("Under this Circuit's precedents, an employee who is placed on unpaid leave has been deprived of a protected property interest . . ."). As such, the Court already considered and decided the constitutional adequacy of processes provided to Plaintiffs, and found that the pre- and post-deprivation processes afforded to Plaintiffs to be constitutionally adequate. (*Id.* at p. 19.)

NYC DOE's allegedly violative suspension of Plaintiffs without pay and due process; declaratory judgment as to the allegedly illegal Arbitration Awards and agreements between the Defendant unions and the NYC DOE; declaratory judgment as to the allegedly coercive and void NYC DOE Release Forms signed by certain Plaintiffs; Title 42 U.S.C. Section 1983 claims against the NYC DOE, the Defendant unions, and the Scheinman Arbitration and Mediation defendants; and injunctive relief against the NYC DOE for the alleged violation of Plaintiffs' procedural due process rights.  (*See generally*, ECF No. 47, Am. Compl.)  Central to many of Plaintiffs' claims, and critical to their renewed request for injunctive relief sought in the instant motion, is whether and what processes (as required by procedural due process, the applicable collective bargaining agreements ("CBAs"), the Arbitration Awards, and the relevant statutes) are triggered now that the NYC DOE is formally seeking separation.

**1. Procedural Due Process**

        A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process.  *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Having found that Plaintiffs have a protected property

JA-1536

interest in their continued employment, the Court next considers whether the available processes that Plaintiffs may invoke upon deprivation of their property interests and, specifically, upon *termination*, are constitutionally adequate.

The Court must determine not whether state procedural law was correctly followed or applied, but rather, whether the processes provided by state procedures, contract rights, or other available processes satisfy constitutional requirements. To determine whether available processes are adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] *define* the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (emphasis added); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). As before, the Court finds that the processes available to Plaintiffs,

14

including but not limited to state statutes and contractual procedures, are constitutionally sufficient.

As the Court in its November 24, 2021, Order previously determined, the Court reaffirms here for the avoidance of doubt that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate.  (ECF No. 33, Nov. 24, 2021, M&O, pp. 17-22) ("Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate through the procedures established in the CBAs governing the terms of Plaintiffs' employment, including the Impact Arbitration Award[9] procedures, which provide grievance and arbitration procedures,

---

[9] The Impact Arbitration Award is specific to the UFT, but as the relevant CSA and DC 37 agreements are identical in all pertinent respects to the Impact Arbitration Award, all three will be referred to as the "Awards."  Pursuant to the terms of the relevant Awards, NYC DOE employee members of the UFT, CSA, and DC 37, who are not vaccinated and have not received an accommodation may either (a) take extended unpaid leave with health insurance and a right of return; (b) voluntarily separate; (c) be subject to the NYC DOE's negotiated unilateral right to seek the employees' separation; or (d) exercise all retained legal rights. The Awards state that LWOP status is not disciplinary. The Awards further provide that the NYC DOE may "seek to unilaterally separate" employees who have not selected either option after December 1, 2021, and that "except for the express provisions contained, herein, all parties retain all legal rights at all times." (ECF No. 19-1, O'Connor Decl., Ex. A, UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at Ex. B, CSA Arbitration Award at III.C.)

15

and undisturbed, well-established [Article 78] state court procedures.").

The Court, in addition to a review of the record forming the bases of its prior November 24, 2021, Order, reaches this same conclusion, after considering Plaintiffs' proffer of additional evidence in support of their renewed motion for injunctive relief. Plaintiffs have not submitted any new or supplemental evidence in support of their instant motion that compels the Court to conclude that any of the adequate and available processes have been withheld from the Plaintiffs. In support of their second motion for preliminary injunction, Plaintiffs have submitted five declarations from specific Plaintiffs: James Hoffman (ECF No. 76-2), Nathalie Charles (ECF No. 76-3), Serena Mendez (ECF No. 76-4), Tara Palladino (ECF No. 76-5), and Janelle Lotito (ECF No. 76-6). Plaintiff Lotito, as noted previously, signed the NYC DOE Release Form associated with extending her LWOP status until September 2022, and thus will not be terminated on February 11, 2022. (ECF No. 47, Am. Compl., ¶ 315; ECF No. 76-6, Lotito Decl.) None of the other declarant-Plaintiffs state whether they availed themselves of any of the pre- or post- deprivation processes, and none of the declarant-Plaintiffs articulated their individual religious, medical, or other bases for refusing to receive a COVID-19 vaccination. Mr. Graff, counsel to Plaintiffs, did not include

16

Case 23-655, Document 76, 06/05/2023, 3525010, Page187 of 302

in his signed Affidavit any information regarding which of the
ninety-three Plaintiffs, or the subset of forty-three Plaintiff
members who allegedly received termination notices,[10] had availed
themselves of any processes.  (*See* ECF No. 76-1, Graff Aff.)
The five Plaintiffs' declarations—and Mr. Graff's own
affirmation—included conclusory legal assertions, which, without
more, do not establish that the Plaintiffs were not afforded
adequate due process, and cannot support a finding that
Plaintiffs are likely to succeed on the merits.  (*See, e.g.* ECF
No. 76-4, Mendez Declaration, ¶ 5, "I earned my constitutional
right to due process, which the NYCDOE has violated by
terminating my employment without due process."; *see also* ECF
No. 76-1, Graff Aff. ¶ 4, "The Plaintiffs have not received any
due process before being terminated[.]")

    The pre- and post-deprivation processes available to
Plaintiffs, as described in the Court's November 24, 2021,
Order, were made known to Plaintiffs well in advance of any
action by the NYC DOE, and were and are available through their
unions and through established state procedures.  First,
Plaintiffs received advanced notice of the Vaccination Mandate,
their ability to seek religious and medical exemptions and
appeals, their placement on LWOP for noncompliance with the

---

[10] Plaintiffs have submitted four termination notices in connection with the
instant motion.  (ECF No. 76-7, Exhibit A, Termination Notices.)

Vaccination Mandate, their options and opportunities to respond, and of the NYC DOE's intention to seek termination for continued noncompliance.  The widely publicized Vaccination Mandate was implemented on August 24, 2021.  Plaintiff-UFT members had notice of the LWOP and potential separation since September 10, 2021; CSA member employees had notice as of September 15, 2021; and DC 37 member employees had notice as of October 3, 2021. (*See* ECF No. 79, Def. NYC DOE Opp. Mem. pp. 6-7, 28.) Plaintiffs were further notified on October 2, 2021, that noncompliance with the Vaccination Mandate would result in placement on LWOP as of October 4, 2021, and that the NYC DOE would seek to separate them if they did not comply with the Vaccination Mandate or extend their LWOP status.  (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

        Second, the pre- and post-deprivation proceedings articulated in the Awards were incorporated into the Plaintiffs' collective bargaining agreements. (*See, e.g.*, ECF No. 20, Def. UFT Opp. Mem. at p. 4.)  The UFT represented that it advised members inquiring about grievances that procedures regarding unvaccinated employees were governed by the binding Impact Arbitration Award which altered their CBA, and which was circulated to UFT members "along with plain-language guidance of the Award's terms[.]" (ECF No. 20, Def. UFT Opp. Mem. at p. 13.) Pre-deprivation processes "need not be elaborate[,]" and the

Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (citing *Loudermill,* 470 U.S. at 545-546). The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (noting that "CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process.") (internal citations omitted); *see also Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (noting that guaranteed procedural rights could be satisfied by the pre-deprivation notice and hearing rights provided in the collective bargaining agreement grievance procedures) (citing *Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir. 1987) (Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process).

Importantly, the parties do not dispute that the Awards and the CBAs provided for expedited review processes for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging the deprivation of their pay. Though it is not clear to the Court which, if any, Plaintiffs have availed themselves of these processes, the record clearly reflects that these processes exist. *See Ezekwo v. N.Y.C.*

19

*Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991) (An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required.").

Plaintiffs had until November 30, 2021, to invoke the procedures for requesting accommodations and exemptions, and/or to opt to extend their LWOP status and medical benefits through September 5, 2022. Finally, Plaintiffs, having received multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York state court. Indeed, Plaintiffs can *still* seek relief through Article 78 proceedings. The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy."). Beyond challenging their placement on LWOP, Plaintiffs may avail themselves of Article 78 proceedings to challenge their termination. *See Tessler v. Paterson*, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011) (finding that terminated plaintiffs' procedural due process claims must fail because of the availability of adequate post-deprivation

processes, and noting specifically that "[i]t is well-established that the Article 78 proceeding 'constitutes a wholly adequate post-deprivation hearing for due process purposes.'") (citing *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir.2001) (holding that terminated plaintiffs failed to allege a claim for violation of due process, and noting that an Article 78 proceeding constitutes a wholly adequate post-deprivation hearing for due process purposes.)).

Having again determined that the Plaintiffs were afforded constitutionally adequate pre- and post-deprivation due process, the Court next considers whether the vaccine requirement is a condition of employment and examines any corresponding due process requirements.

## 2. Vaccine Requirement as a Condition of Employment

The Court finds that the Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs as affected by the relevant Arbitration Awards or agreements and all relevant state statutes.

Plaintiffs do not challenge the lawfulness or validity of the Vaccination Mandate. In fact, none of the relevant parties dispute that the Vaccination Mandate is lawful and requires all NYC DOE employees to be vaccinated, or to receive an exemption or

accommodation.  Instead, Plaintiffs assert that the *termination* of employees by the NYC DOE pursuant to the Vaccination Mandate is unlawful because: (1) the Commissioner of the New York City Department of Health and Mental Hygiene has no statutory or administrative authority to impose a new condition of employment upon NYC DOE employees; (2) New York Civil Service Law requires that all terms and conditions of employment for a public employer are mandatory subjects of bargaining pursuant to New York's "Taylor Law," N.Y. Civ. Serv. Law § 200; (3) the UFT  has argued that the Vaccination Mandate does not impose a condition of employment, and thus, no condition of employment was created;[11] and (4) even if the Vaccination Mandate creates a condition of employment, this condition of employment does not "abrogate" Plaintiffs' due process rights or permit the NYC DOE to violate the Plaintiffs' protected property interest in their continued employment.  (ECF No. 76-13, Pls. Mem. at pp. 7-8.) These arguments are unavailing.

The Court is not convinced by Plaintiffs' or Defendant unions arguments that the NYC DOE acted without statutory or administrative authority.  Plaintiffs specifically argue that a condition of employment must comply with the N.Y. Education Law

---

[11] Even if Plaintiffs have accurately described the union Defendants' views, the Court need not and will not decide Plaintiffs' disputed motion based on the union Defendants' *ipse dixit* proclamations regarding whether the Vaccination Mandate is a condition of employment.

Section 2573.9, and that the NYC DOE sidestepped this integral requirement because neither the Board of Education nor the Panel for Educational Policy has determined that the vaccine is a qualification.  (ECF No. 76-13, pp. 7-8.)  Section 2573.9 provides:

> No principal, supervisor, director, or teacher shall be appointed to the teaching force of a city who does not possess qualifications required under this chapter and under the regulations prescribed by the commissioner of education for the persons employed in such positions in the schools of the cities of the state, but a board of education may prescribe additional or higher qualifications for the persons employed in any of such positions.

N.Y. Educ. Law § 2573.9.  Notably, Section 2573.9 by its own terms applies only to the "teaching force" of principals, supervisors, directors, and teachers, not all staff that could feasibly work at NYC DOE schools.  Plaintiffs mistakenly rely on Section 2573.9 of New York Education Law which notes that the statutory chapter establishes minimum pedagogical qualifications principals, supervisors, directors, and teachers.  The burden of showing a likelihood of success is on Plaintiff, the moving party seeking injunctive relief.  *See generally*, *Winter*, 555 U.S. 7.  Plaintiffs, however, have not identified any authority that proscribes the NYC DOE from imposing a vaccine requirement during a global pandemic causing risks of severe illness and

death to the unvaccinated, many of whom include school age children.[12]

The Court also finds unavailing Plaintiffs' further argument that Defendant NYC DOE created a condition of employment in contravention of New York Civil Service Law Section 201.4, which requires the NYC DOE employer to negotiate and bargain terms and conditions of employment.  Contrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards.  The Arbitration Awards provide, *inter alia*, that the NYC DOE may "seek to unilaterally separate" employees who have not elected to voluntarily separate or to extend their LWOP status after December 1, 2021, and that "except for the express provisions contained, herein, all parties retain all legal rights at all times."  (*See* ECF No. 19-1, O'Connor Decl., Ex. A, UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at Ex. B, CSA Arbitration Award at III.C.)  Based on the foregoing,

---

[12] *COVID-19 Vaccines for Children and Teens*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Updated Jan. 11, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/children-teens.html (As of October 2021, one of the three available COVID-19 vaccines in the U.S. became available for children ages five and older, and no vaccine is yet approved for children ages four and younger.).

the Court finds that the NYC DOE and the Defendant unions

complied with New York Civil Service Law Section 201.4.

The COH Order establishing the Vaccination Mandate has

established a lawful, enforceable condition of employment (named

differently, a qualification for employment or eligibility for

employment, etc.) which all NYC DOE employees must satisfy in

order to remain employed by the NYC DOE.[13]   As the NYC DOE has

accurately asserted, the NYC DOE has an obligation to maintain a

safe workplace.   *See* N.Y. Labor Law § 27-a.   The world, the

country, and certainly the City of New York, have been

contending with a public health emergency, which includes new

COVID-19 variants accompanied with heightened rates of

transmissibility and surges in COVID-19 infections.   Only

recently as of October 29, 2021, have vaccinations been approved

for children ages five and older.[14]   Given the ongoing pandemic,

---

[13] Defendant unions argue that the COVID-19 vaccine is not a job condition, asserting, "that some unvaccinated employees have been granted accommodations on medical or religious grounds, and others have remained employees on long-term leave, proves that vaccination is not a mandatory qualification: one cannot accommodate for an immutable statutory requirement for employment like licensure or residency." (*See* ECF No. 77, Defs. UFT and CSA Letter, p. 4.) Tellingly, the Union Defendants fail to disclose whether the accommodated employees are working in the classrooms or schools. Moreover, the accommodations and exemptions provided for the Vaccination Mandate are among the constitutional safeguards which the union Defendants negotiated and achieved in the Awards. (*See* ECF No. 20, Def. UFT Mem., p. 3); *see also* New York City Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021) (The UFT, together with other City unions, brought a challenge to the Vaccination Mandate, including the omission of religious and medical exemptions on constitutional and other grounds. After the New York State Supreme Court granted the Unions' application for a temporary restraining order, the City amended the Vaccination Mandate to allow for reasonable medical and religious accommodation.).
[14] *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age*, FDA.GOV (Oct. 29, 2021),

and the specific nature of Plaintiffs' jobs in New York City
public schools where Plaintiffs interact directly with
vulnerable students, and directly or indirectly with those
students' families and communities, the Commissioner of Health
was within his powers to implement safety and health standards
and require COVID-19 vaccinations as a condition of employment
for NYC DOE employees.

          Recent case law from this Circuit and in the State of
New York supports a finding that vaccination is a lawful
condition of employment.  Though not specific to the education
context, the Second Circuit has held that "[v]accination is a
condition of employment in the healthcare field."  *We The
Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 2102566, 2021 WL
5121983, at *18 (2d Cir. 2021).  Relatedly, as this Court
recently found in *Garland*, due to the specific nature of
plaintiff-F.D.N.Y. firefighters' and EMTs' public facing jobs,
vaccination is a lawful qualification for employment for
F.D.N.Y. firefighters.  *See Garland v. New York City Fire Dep't*,
No. 21-cv-6586(KAM)(CLP), 2021 WL 5771687, at *6 (E.D.N.Y. Dec.
6, 2021) (in which the vaccination mandate at issue was created
by Order of the Commissioner of the New York City Department of
Health and Mental Hygiene on October 20, 2021, requiring all

_____
https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-
biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age.

City employees to receive one dose of any COVID-19 vaccine by a date certain).

Additionally, in three recent and separate New York Supreme Court cases, the New York Supreme Court issued instructive decisions regarding Article 78 proceedings filed by tenured NYC DOE teachers who failed to comply with the Vaccination Mandate and challenged their placement on LWOP status.  *See  O'Reilly v. Bd. of Educ. of the City School Dist. of the City of New York,* No. 161040/2021, N.Y. Slip. Op. 30173(U), 2022 WL 180957, at *1 (N.Y. Sup. Ct. Jan. 20, 2022); *Lanzer v. Bd. of Educ., et al.,* Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); *Romero v. Bd. of Educ., et al.,* Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty).  In *O'Reilly,* which involved a tenured teacher-petitioner, the New York Supreme Court held that the COH Order established vaccination against COVID-19 as a lawful "condition of employment" for NYC DOE employees.  *See O'Reilly,* 2022 WL 180957, at *2 (finding that NYC DOE's employment action of placing teachers who did not comply with the Vaccination Mandate on LWOP status was not discipline under New York Education Law and was "merely a response to petitioner's refusal to comply with a condition of employment.").  The New York Supreme Court accordingly held that petitioner was not entitled to the process required by New York Education Law Sections 3020 and 3020-a, and cited to *We The*

27

Case 23-655, Document 76, 06/05/2023, 3525010, Page198 of 302

*Patriots* and *Garland* in support of its decision.  *Id*.  In *Lanzer* and *Romero*, the New York Supreme Court denied petitions brought pursuant to Articles 75 and 78, noting that the tenured teacher-petitioners, who "dispute[d] the requirement that teachers get a Covid-19 vaccine or seek an accommodation," were not entitled to a hearing under Section 3020-a on their placement on LWOP status, as these employment actions were not a disciplinary consequence of the NYC DOE employees' failure to comply with the Vaccination Mandate.  *Romero*, Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); *Lanzer*, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty).

Plaintiffs advance a series of baseless arguments related to the NYC DOE's Vaccination Mandate as a condition of employment that do not support a finding that Plaintiffs are likely to succeed on the merits.  Plaintiffs rely on the Lotito Declaration and an accompanying exhibit in support of their contention that "the NYCDOE's actions are inconsistent" with the NYC DOE's position that the Vaccination Mandate creates a legitimate condition of employment.  Plaintiff-declarant Lotito asserts that because she was allowed to enter her son's school despite being unvaccinated, though she was asked to complete a Health Questionnaire as part of her visits, the NYC DOE's argument that she is unfit for employment must fail. (ECF No. 76-6, Lotito Decl.; ECF No. 76-8, Ex. B, Health Screening

Case 23-655, Document 76, 06/05/2023, 3525010, Page199 of 302

Questionnaire).  This argument is inapplicable to the question of whether the NYC DOE has created a lawful condition of employment.  The conditions on *visitors* within the NYC DOE system do not impact the legitimacy of conditions imposed on NYC DOE *employees*.

Relatedly, Plaintiffs in their memorandum of law argue that they are physically and/or mentally capable of performing their duties, and if "they were to submit to medical examinations, many of the Plaintiffs would be able to show that they have natural immunity from the COVID-19 virus."  (ECF No. 76-13, p. 12.)  In support of their argument, the Plaintiffs offer a series of unexplained pictures and screenshots purportedly showing antibody tests pertaining to some of the Plaintiffs.  (ECF No. 76-9, Ex. C.)  The Court will not speculate how these exhibits may bear on the vaccine as a condition of employment, and will not entertain or attempt to interpret unexplained medical evidence.

The NYC DOE has not asserted that Plaintiffs are unfit for employment.  Rather, Defendant NYC DOE has submitted evidence that convincingly supports the vaccine requirement as a condition of employment, and undercuts Plaintiffs' arguments based on antibody tests, through the Declaration of Dr. Michelle E. Morse, M.D., M.P.H.  (*See* ECF No. 79-2, Appx. B, Morse Aff., ¶¶ 18, 19 (noting that vaccines are the most effective means of

reducing the spread of COVID-19, that the level and duration of
immune protection that results from a prior COVID-19 infection
remains uncertain, and that the CDC still recommends
vaccinations for people who have had prior COVID-19
infections)).

Plaintiffs also argue that because the NYC DOE's
contractors are advertising for jobs that do not include
vaccination as a qualification, the NYC DOE cannot argue that
its employees must be vaccinated.  (ECF No. 76-13, Pls. Mem., p.
10.)  Plaintiffs submit an "Indeed" job posting for a "speech
language pathologist and CFs" position (ECF No. 76-11, Ex. E),
which, according to the posting, is for a position with the
"Perfect Playground," a part of the Stepping Stones Group.
(*Id.*)  The posting provides that the company seeks employees for
"school assignments[.]"  (*Id.*)  This evidence does not establish
that the Stepping Stones Group is a NYC DOE contractor or that
the NYC DOE will not require vaccination as a qualification for
placement at an NYC DOE school.  Even assuming this limited
evidence relates to an NYC DOE position, it does not support a
finding that the NYC DOE's vaccination requirement is not a
valid condition of employment.  Plaintiffs' arguments are not
substantiated by credible or material evidence, nor do they have
any bearing on whether Plaintiffs were provided adequate due
process or whether the NYC DOE has implemented a lawful

30

condition of employment.  Consequently, Plaintiffs have not shown a likelihood of success on the merits.

Pursuant to the Commissioner of Health's Order and NYC DOE's implementation, the Plaintiffs have been provided constitutionally adequate notice and opportunity to challenge the NYC DOE's separation of unvaccinated employees, absent an exemption or accommodation, from their employment in the NYC DOE's schools.  The termination of NYC DOE employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary.  Rather, Plaintiffs' separation is cause of their failure to avail themselves of existing processes or comply with a lawful job condition.

**3. Corresponding Due Process**

Accordingly, the Court need not consider whether N.Y. Education Law Sections 3020, 3020-a, or N.Y. Civil Service Law Section 75 were or will be appropriately followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020, 3020-a, or N.Y. Civil Service Law § 75.  *See, e.g., O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 852 N.Y.S.2d 537, 538 (4th Dep't 2008) (petitioners terminated for failure to comply with the residency policy of their

31

employment agreements were not entitled to a hearing pursuant to

N.Y. Educ. Law §§ 3020, 3020-a because "[t]hose sections of the

Education Law are inapplicable[...] as they address issues relating

to a teacher's competency and the applicable disciplinary

procedures and penalties [...], while the residency policy 'is a

consideration unrelated to job performance, misconduct or

competency . . . a qualification of employment . . . [that

respondent] may impose it if chooses to do so without running afoul

of the Constitution or general laws of the State.") (citation

omitted), *appeal denied*, 892 N.E.2d 396 (2008); *Beck-Nichols v.*

*Bianco*, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency

requirement defines eligibility for employment . . . unrelated to

job performance, misconduct or competency" and thus concluding that

the plaintiffs were not entitled to a hearing pursuant to N.Y.

Educ. Law §§ 2509(2), 3020, and 3020-a); *Felix v. N.Y.C. Dept. of*

*Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004) ("the act of

failing to maintain one's residence within the municipality is

separate and distinct from an act of misconduct by a municipal

employee in the performance of his or her work. Failure to maintain

residence renders an individual ineligible for continued municipal

employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures . . .").

Based on the foregoing, because the Court finds that receiving a vaccination against COVID-19 is a condition of employment for NYC DOE employees, the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a or Civil Service Law Section 75 prior to terminating NYC DOE employees due to their noncompliance with the Vaccination Mandate. *See O'Connor*, 48 A.D.3d at 1255 (4th Dep't 2008); *Adrian v. Bd. of Ed.*, 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558–59 (2013); *Brown v. Bd. of Educ.*, 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009); *Felix v. Dep't of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004).  The NYC DOE was and is required to provide notice and processes that comport with constitutional due process prior to or after termination, which the Court has already determined that the NYC DOE has done. Accordingly Plaintiffs have not established a likelihood of success on the merits.

**B. Irreparable Harm**

Though, as referenced *supra*, Plaintiffs need not make any further showing of irreparable harm once constitutional

deprivations have been alleged, the Court notes that the harms alleged by Plaintiffs directly resulting from their noncompliance with the Vaccination Mandate are not irreparable. At their core, Plaintiffs' articulated harms associated with the instant motion for injunctive relief are: loss of employment and the resulting loss of medical benefits. As discussed in the Court's previous decision, and again below, the Second Circuit has held that these pecuniary harms are neither irreparable nor sufficient to justify the presently requested injunctive relief.

In support of their motion for preliminary injunction, Plaintiffs have submitted five declarations from Plaintiffs, including the Declaration of Janelle Lotito. (ECF No. 76-6). (*See also* ECF No. 76-2, Hoffman Decl., ECF No. 76-3, Charles Decl., ECF No. 76-4, Mendez Decl., and ECF No. 76-5, Palladino Decl.) As previously noted, Plaintiff Lotito signed the NYC DOE Release Form associated with extending her LWOP status and medical benefits, and will not be terminated or lose her medical benefits on February 11, 2022. (ECF No. 76-6, Lotito Decl.) Of the other four declarations, Plaintiffs allege what are fundamentally monetary harms resulting from a loss of their pay, their employment related health benefits, and from having to pay for alternative healthcare via the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

This Court does not dispute that loss of income and/or loss of medical benefits are serious burdens.  The loss of one's wages and medical insurance, particularly for those with financial commitments and dependents, are serious hardships. The standard for equitable relief, however, demands a demonstration of an irreparable harm, harm for which available legal remedies and monetary damages would be inadequate. In the Second Circuit, "[i]rreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap*, *Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510-11 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)).  The Supreme Court has also held that "the temporary loss of income, []does not usually constitute irreparable injury . . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable

harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Here, should Plaintiffs prevail, monetary relief will be available to compensate their associated pecuniary losses.

Plaintiffs cite two cases for the proposition that their loss of medical benefits can constitute irreparable harm: *Communications Workers of Am., Dist. One, AFL-CIO v. NYNEX Corp.*, 898 F.2d 887 (2d Cir. 1990) and *Whelan v. Colgan*, 602 F.2d 1060 (2d Cir. 1979). Both these cases are distinguishable from the instant case: in *Whelan*, a case that pre-dates the enactment of COBRA, the Second Circuit affirmed the granting of a preliminary injunction where plaintiffs, striking workers, were likely to succeed on the merits, and where "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury." *Whelan*, 602 F.2d at 1062. *NYNEX* involved the denial of COBRA benefits as required under federal law. *NYNEX Corp.*, 898 F.2d 887. In *NYNEX*, the defendant-employer initially informed its employees that it intended to terminate medical benefits, which they could replace under COBRA. Defendant-employer then obstructed the employees' ability to secure COBRA benefits, which the district court considered an absolute termination of benefits. The Court of Appeals affirmed the district court's grant of a preliminary injunction ordering the defendant to allow for COBRA benefits. *See NYNEX*, 898 F.2d at

JA-1559

891-92.  Here, in contrast, nothing in the record indicates that Plaintiffs will not retain their Congressionally-mandated ability to secure medical coverage under COBRA.  (*See* ECF No. 76-7, Pls. Ex. A, Termination Notices p. 1 ("Information about COBRA will be mailed to you separately at the address on file in NYCAPS...")  Plaintiffs own declarations support a finding that Plaintiffs' alleged harms are tethered to their ability to pay for COBRA stemming from their loss of salary from the NYC DOE, not to their complete inability to secure alternative medical benefits.  (*See* ECF No. 76-2, Hoffman Decl., ECF No. 76-3, Charles Decl., ECF No. 76-4, Mendez Decl., and ECF No. 76-5, Palladino Decl.)

More recently and relatedly, the Southern District of New York in *Kane v. de Blasio,* No. 21-cv-7863 (VEC), 2021 WL 5909134 (S.D.N.Y. Dec. 14, 2021), denied injunctive relief to NYC DOE teachers and administrators, noting that the teachers alleged that they were faced with either a vaccination or the possibility of "various penalties including the loss of health insurance and other benefits[.]" *Id.* at*4. The Court determined that the only alleged harms were economic and could be remedied by money damages and, therefore Plaintiffs had not demonstrated irreparable harm.  *Id.*[15]  Here too, injunctive relief is not

---

[15] The Court takes judicial notice that the Second Circuit very recently denied the *Kane* plaintiffs' motion for an injunction pending appeal, finding that the appellants had not shown the requisite likelihood that the district

JA-1560

warranted on the basis of Plaintiffs' alleged, compensable harms.

Plaintiffs argue that their harms are beyond monetary, and that the very choice they face between vaccination and termination is in itself an irreparable harm.  Plaintiffs assert that the Second Circuit in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), by citing to the Fifth Circuit case *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) in a footnote, "raises the specter that in this Circuit the choice between a job and a jab is irreparable harm."  (ECF No. 76-13, Pls. Mem., pp. 4-5) (citing *Kane*, 19 F.4th at 170, n. 18 ("*But see BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, ,618 (5th Cir. 2021) (finding irreparable harm where 'reluctant individual recipients [were] put to a choice between their job(s) and their jab(s)')".)  This Court does not consider Plaintiffs' reading to be an accurate interpretation of the Second Circuit's footnote in *Kane*, in which the Court of Appeals first clearly stated that it did "not cast doubt on the well-established principle that 'loss of employment "does not usually constitute irreparable injury."'"  *Kane*, 19 F.4th at 170, n. 18 (internal citations omitted).  In the Second Circuit, the well-established principle remains that adverse employment consequences do not usually

court abused its discretion in denying the motion for preliminary injunction. *See Kane v. de Blasio*, No. 21-3043 (2d. Cir. Feb. 3, 2022.).

38

**JA-1561**

constitute irreparable harm. *See We The Patriots USA, Inc. v. Hochu*l, 17 F.4th 266, 294-95 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("It is well settled [...] that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages.") (citing *Sampson v. Murray*, 415 U.S. 61, 91-92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("[L]oss of income and ... the claim that her reputation would be damaged ... falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction[.]"); *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.").

Finally, the Court notes that Plaintiffs had ample notice and opportunity to invoke pre- and post-deprivation processes, including the option to extend their LWOP status and medical benefits through September 2022. These processes, made available through state procedures and through their unions' collective bargaining and Arbitration Awards, are governed precisely by the State legislature and their unions. It is not for this Court to decide whether the Plaintiffs, if they avail

JA-1562

themselves of those processes, should be granted the corresponding remedies they seek.  Plaintiffs should not be heard to complain that their due process rights were violated when they have not shown that they availed themselves of any of the existing processes to challenge the NYC DOE.  Nor should Plaintiffs be heard in support of their motion for injunctive relief to complain that they will suffer pecuniary harm because of their own choices.

Here, Plaintiffs' economic harms can be remedied with monetary damages and/or reinstatement if Plaintiffs prevail on the merits.  Further, the termination of Plaintiffs' medical benefits, to which they are no longer entitled once they cease to be employees of the NYC DOE, can be continued through COBRA. Accordingly, Plaintiffs have failed to demonstrate that they will suffer irreparable harm absent injunctive relief.

### C. Balance of the Equities and D. The Public Interest

The Court finds that both the balance of the equities and the public interest weigh against injunctive relief. Plaintiffs seek an injunction barring "the NYC DOE from unilaterally terminating the Plaintiffs without due process." (ECF No. 76-13, at p. 2.)  The role of the Court, however, is to "balance the competing claims of injury on each party of either granting or withholding the requested relief, paying particular regard to the public consequences."  *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7 (2008). On balance, the equities at stake and the importance of safeguarding the public health and safety of NYC DOE schools and all who work or learn there, and the public interest, weigh heavily in favor of upholding the implementation by the NYC DOE of the Vaccination Mandate ordered by the Commissioner of Health, and again denying a temporary restraining order and preliminary injunction.

The Vaccination Mandate and all of its consequences are plainly oriented around one goal: to protect the affected population from the adverse impact of COVID-19.  In this instance, the relevant population includes NYC DOE staff and students.  It "cannot be disputed that the State has a public policy in favor of protecting children[.]"  *City Sch. Dist. Of City of New York v. McGraham*, 17 N.Y.3d 917, 919-920, 958 N.E.2d 897 (2011).  Many of the more than one million students who learn within the NYC DOE school system network are still too young to be vaccinated, to say nothing of particularly vulnerable students who are immunocompromised, or have family members who are.

The Court in its November 24, 2021, Order, cited *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021), in which Judge Cogan of this District noted, "[s]ince its emergence, COVID-19 has killed over 4.5 million people

41

JA-1564

worldwide, with over 670,000 of those deaths taking place in the United States," and vaccination is "one of the most highly regarded" tools available to "reduce viral transmission." Now, as of the date of the filing of this Memorandum and Order, COVID-19 has killed more than 5.7 million people worldwide.[16] More than 900,000 of those deaths have taken place in the United States.[17]

As Dr. Michelle E. Morse provided in her affidavit, "from a public safety perspective, vaccination provides a more certain and verifiable record of immunity than that afforded by prior COVID-19 infection," and consequently, "vaccination is a major public health imperative." (ECF No. 79-2, Appx. B, ¶¶ 20-21.) "In particular, vaccination of individuals providing City services and working in City facilities will save lives, protect public health, and promote public safety." (*Id.* at ¶ 21.) Available scientific and medical data supports the use of vaccination as a lifesaving public policy measure, as data from the "Centers for Disease Control and Prevention shows that

---

[16] *Coronavirus World Map: Tracking the Global Outbreak*, N.Y. TIMES (updated Feb. 11, 2022), https://www.nytimes.com/interactive/2021/world/covid-cases.html.
[17] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES (updated Feb. 11, 2022), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

**JA-1565**

people who are unvaccinated are at a much greater risk than those who are fully vaccinated to die from Covid-19."[18]

All available scientific and medical information is for the government and its agencies—and not for this Court—to formulate into the policies the City and State consider to be in the best interest of the public health and safety.  The Court's role is limited to assessing claims of irreparable harm, the likelihood of success on the merits, and balancing the competing claims of injury and the public consequences of granting relief. In this case, for the second time, the Court considers that the equities and the public interest clearly disfavor injunctive relief.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order, accompanied by the Defendant unions' "supporting" letter, is DENIED.

**SO ORDERED.**

Dated:      February 11, 2022
            Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge

_____

[18] *Id.*

43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, et al.,

Defendants.

------------------------------------------------------------------------ x

**DOE DEFENDANTS'
NOTICE OF MOTION
TO DISMISS THE
AMENDED
COMPLAINT**

No. 21 Civ 6387 (KAM)(LB)

      **PLEASE TAKE NOTICE** that upon the accompanying Declaration of Andrea

O'Connor in Support of Defendant New York City Department of Education ("DOE") and

Meisha Porter (collectively "DOE Defendants") Motion to Dismiss the Amended Complaint,

dated April 4, 2022, and DOE Defendants' Memorandum of Law in Support of Their Motion to

Dismiss the Amended Complaint, dated April 4, 2022, and all the papers and proceedings

previously had herein, the undersigned will move this Court, before the Hon. Kiyo A.

Matsumoto, United States District Judge, at the United States Courthouse for the Eastern District

of New York, located at 225 Cadman Plaza, Brooklyn, New York, 11201, on a date and time to

be determined by the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

dismissing the Amended Complaint in its' entirety on the grounds that, as a matter of law, the

Complaint fails to adequately state a claim upon which relief can be granted and for further relief

as the Court may deem just and proper.

**JA-1567**

**PLEASE TAKE FURTHER NOTICE THAT,** pursuant scheduling order issued by the Court on March 7, 2022, answering papers, if any, must be served upon the undersigned by on or before May 10, 2022, reply papers, if any, are to be served upon plaintiffs by on or before May 24, 2022 and on May 24, 2022, the parties shall file their respective motion papers via ECF.

Dated:         New York, New York
               April 4, 2022

                                    **HON. SYLVIA O. HINDS-RADIX**
                                    Corporation Counsel of the
                                     City of New York
                                    Attorney for DOE Defendants
                                    100 Church Street, Room 2-100
                                    New York, New York 10007-2601
                                    (212) 356-4015

                          By:    _____/s/_____
                                    Andrea O'Connor
                                    Assistant Corporation Counsel
                                    aoconnor@law.nyc.gov

TO:    All Counsel (via e-mail and ECF)

-2-

**JA-1568**

Case 1:21-cv-06387-KAM-LB   Document 114   Filed 05/24/22   Page 3 of 3 PageID #: 2801

Docket No. 21 Civ. 6387 (KAM)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

all other similarly situated employees of the New
York City Department of Education,,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, et al.,

Defendants.

**DOE DEFENDANTS' NOTICE OF MOTION TO
DISMISS THE AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for DOE Defendants*
*100 Church Street, Room 2-100*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ............................................................ , 20......*

*.........................................................................................., Esq.*

*Attorney for................................................................................*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,,

**DECLARATION OF
ANDREA O'CONNOR IN
SUPPORT OF DOE
DEFENDANTS'
MOTION TO DISMISS
THE AMENDED
COMPLAINT**

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, et al.,

No. 21 Civ 6387 (KAM)(LB)

Defendants.

-------------------------------------------------------------------- x

        **ANDREA O'CONNOR** declares, pursuant to 28 U.S.C. § 1746 and subject to the

penalties of perjury, that the following is true and correct:

        1.     I am an Assistant Corporation Counsel in the office of Hon. Sylvia O.

Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants New York

City Department of Education and Meisha Porter (collectively DOE Defendants) and as such I am

familiar with the facts as set forth herein.

        2.     I respectfully submit this declaration in support of DOE Defendants'

Motion to Dismiss the Amended Complaint.

        3.     Attached hereto as Exhibit "A" is copy of the unpublished decision in

Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE,

et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No.

JA-1570

160787/2021; Salas v. BOE, et al., Index No. 160821/2021 (collectively "Maniscalco Art. 78

Decision").

Dated:        New York, New York
              April 4, 2022

                                   **HON. SYLVIA O. HINDS-RADIX**
                                   Corporation Counsel of the
                                    City of New York
                                   Attorney for DOE Defendants
                                   100 Church Street, Room 2-100
                                   New York, New York 10007-2601
                                   (212) 356-4015


                          By:      _____/s/_____
                                   Andrea O`Connor
                                   Assistant Corporation Counsel
                                   aoconnor@law.nyc.gov


TO:     All Counsel (via e-mail and ECF)

Docket No. 21 Civ. 6387 (KAM)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

all other similarly situated employees of the New York City Department of Education,,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER, et al.,

Defendants.

**DECLARATION**

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for DOE Defendants*
*100 Church Street, Room 2-100*
*New York, N.Y. 10007*

*Of Counsel: Andrea O'Connor*
*Tel: (212) 356-4015*

*Due and timely service is hereby admitted.*

*New York, N.Y.* ................................................................ *, 20... ...*

.........................................................................................*, Esq.*

*Attorney for*.....................................................................................

Case 23-655, Document 76, 06/05/2023, 3525010, Page219 of 302

INDEX NO. 160787/2021
NYSCEF DOC. NO. 50      Case 1:21-cv-06387-KAM-LB   Document 115-1   Filed 05/24/22   Page 2 of 11 PageID #: 2806
RECEIVED NYSCEF: 03/16/2022

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: <u>HON. LYNN R. KOTLER, J.S.C.</u>                                    PART <u>8</u>

| | |
|---|---|
| Rachel Maniscalco | INDEX NO. 160725/2021 |
| - v - | MOT. DATE |
| The Board of Education of the City School District of the City of New York, et. al. | MOT. SEQ. NO. 001 |
| Joan Giammarino | INDEX NO. 160829/2021 |
| - v - | MOT. DATE |
| The Board of Education of the City School District of the City of New York, et. al. | MOT. SEQ. NO. 001 |
| Athena Clarke | INDEX NO. 160787/2021 |
| - v - | MOT. DATE |
| The Board of Education of the City School District of the City of New York, et. al. | MOT. SEQ. NO. 001 |
| Crystal Salas | INDEX NO. 160821/2021 |
| - v - | MOT. DATE |
| The Board of Education of the City School District of the City of New York, et. al. | MOT. SEQ. NO. 001 |

The following papers were read on this motion to/for ___vacatur___

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | NYSCEF DOC No(s)._____ |
| Notice of Cross-Motion/Answering Affidavits — Exhibits | NYSCEF DOC No(s)._____ |
| Replying Affidavits | NYSCEF DOC No(s)._____ |

These four proceedings are brought by tenured teachers pursuant to CPLR Articles 75 and 78. Petitioners are Rachel Maniscalco ("Maniscalco"), Joan Giammarino ("Giammarino"), Athena Clarke ("Clarke") and Crystal Salas ("Salas" together "the petitioners"). Respondents are petitioners' employer, the Board of Education of the City School District of the City of New York a/k/a the New York City Department of Education ("DOE") and the Community School Districts in which each of the petitioners work, respectively: Community School District 31 of the Board of Education of the City of New York ("District 31"), Community School District 20 of the Board of Education of the City of New York ("District 20"), Community School District 22 of the Board of Education of the City of New York ("District 22") and Community School District 75 of the Board of Education of the City of New York ("District 75").

Petitioners seek orders directing respondents to reinstate them to the positions they previously held, declaring that respondents acted in derogation of Education Law §§ 3020 and 3020-a and denied petitioners due process of law, annulling respondents' determination which placed petitioners on leave

Dated: __3·15·22__                                              _____
                                                              HON. LYNN R. KOTLER, J.S.C.

**1. Check one:**                    ☑ **CASE DISPOSED**      ☐ **NON-FINAL DISPOSITION**

**2. Check as appropriate: Motion is**    ☐ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☑ OTHER

**3. Check if appropriate:**          ☐ SETTLE ORDER  ☐ SUBMIT ORDER  ☐ DO NOT POST

                                      ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

Case 23-655, Document 76, 06/05/2023, 3525010, Page221 of 302

JA-1573

INDEX NO. 160787/2021
NYSCEF DOC. NO. 35   Case 1:21-cv-06387-KAM-LB   Document 115-1   Filed 05/24/22   Page 3 of 11 PageID #: 2807   RECEIVED NYSCEF: 03/16/2022

without pay, awarding petitioners back salary and benefits, and vacating an arbitration decision which denied petitioners' right to grieve. Respondents cross-move pre-answer to dismiss pursuant to CPLR § 3211(a)(7). Each of the petitioners challenge the same mandate and arbitration award, and the parties largely raise the same arguments in these proceedings. Therefore, these four proceedings are hereby consolidated for the court's consideration and disposition in this single decision/order.

The relevant facts are alleged as follows. Maniscalco began teaching for the New York City public school system in 2012. During the 2015-2016 school year, she was granted the status of a tenured teacher under license as a special education teacher. Giammarino started teaching for the New York City public school system in 2007. In 2010, she was also granted the status of a tenured teacher. Clarke began teaching for the New York City public school system in 2015. She was granted status as a tenured teacher in 2019. Salas started teaching for the New York City public school system in 2007. She was granted tenured teacher status in 2016. All four petitioners remained in good standing during their time as tenured teachers.

On August 24, 2021, Mayor Bill de Blasio and NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a "vaccine only" mandate for Department of Education employees ("DOE mandate"). This mandate was subsequently amended and later ratified by the New York City Board of Health. On September 1, 2021, the United Federation of Teachers ("UFT") filed a Declaration of Impasse with the Public Employment Relations Board, challenging the mandate's lack of medical or religious exemptions and expressing concern for the lack of due process rights permitted its members. The Declaration of Impasse led to an arbitration before Martin F. Scheinman ("the arbitrator"). On September 15, 2021, the arbitrator issued an Impact Arbitration Award ("IAA") in which he established a process for exemptions and accommodation requests.

Anyone who did not comply with the DOE mandate could choose two options: (1) opt, no later than October 29, 2021, to separate from service and receive enhanced payment of accrued paid time off and health insurance through September 5, 2022, unless they were eligible for health insurance from another source, or (2) opt, no later than November 30, 2021, to have their leave without pay extended to September 5, 2022, and maintain health coverage. Otherwise, the employees would be subject to unilateral separation from the DOE beginning December 1, 2021.

The petitioners did not take advantage of either option provided for in the IAA. Due to these decisions, petitioners are not authorized to work or permitted in their respective school buildings, cannot reach out to students and families and cannot use their annual leave or sick time. These petitions ensued.

Petitioners ask the court to grant them declaratory judgments or writs of prohibition prohibiting the DOE from placing them on unpaid leave pursuant to CPLR § 7803(2) and (3) for two reasons. First, they argue that the DOE made an error of law when it issued the DOE mandate because state education laws prevent such an order that affects teacher's rights without individual hearings. Second, they argue that the DOE mandate was irrational, arbitrary and capricious because it did not provide due process for the petitioners, and because the mandate was in contravention of state education laws.

Petitioners also challenge the IAA pursuant to CPLR Article 7511(b)(1)(iii), arguing that the arbitrator exceeded his power when he issued the arbitration award because the collective bargaining agreement ("CBA") and state education laws prevent the arbitrator from making decisions that affect teacher's rights and prevent the UFT from bargaining away teacher's rights. Second, they argue that the arbitrator's determination was also irrational, arbitrary and capricious and not supported by the evidence because he failed to provide due process to the petitioners, made a decision that was in contravention of state education laws and the CBA, and he acted against public policy by failing to guarantee the petitioners' due process rights.

INDEX NO. 160787/2021
NYSCEF DOC. NO. 38                                                RECEIVED NYSCEF: 03/16/2022

In support of their motion to dismiss, respondents argue procedurally that the petitioners lack standing to challenge the arbitration award, that the petitions must be dismissed for failure to join the UFT as a necessary party and the petitioners failed to exhaust their administrative remedies. Substantively, respondents assert that the arbitrator did not exceed his authority and that both the IAA and the decision to place petitioners on leave without pay was neither irrational nor arbitrary or capricious.

## DISCUSSION

On a motion to dismiss pursuant to CPLR § 3211, the pleading is to be afforded a liberal construction (*Leon v. Martinez*, 84 NY2d 83, 87-88 [1994]). The court must accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*id.* citing *Morone v. Morone*, 50 NY2d 481 [1980]; *Rovello v. Orofino Realty Co.*, 40 NY2d 633 [1976]). The court will first consider the parties' procedural arguments.

Standing

On the issue of standing, respondents argue that because the petitioners were not parties to the arbitration that resulted in the IAA, they have no standing to challenge that award. The court notes that this standing argument does not bar petitioners' request for relief pursuant to CPLR Article 78. This argument does not bar the Article 78 branch of the petition.

Petitioners contend that they can challenge the IAA pursuant to CPLR §7511(b)(2)(i) which states in relevant part that an "award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that… the rights of that party were prejudiced by one of the grounds specified in paragraph one…" which include "an arbitrator… exceeding his power…". Thus, petitioners assert that they have standing to challenge the arbitration because they were prejudiced by the IAA and the arbitrator exceeded his power.

Courts have routinely held that a union-represented employee cannot challenge an arbitration award rendered in proceedings between the employee's union and his or her employer (*see Matter of Jiggetts v New York City Human Resources Admin.*, 156 AD3d 552 [1st Dept 2017] ["Petitioner is collaterally estopped from arguing that he has standing to raise any challenges to the arbitration award…"]; *see i.e. Donas v. New York City Dept. of Environmental Protection*, 60 Misc3d 1221(a) [Sup Ct, NY Co 2018]). Assuming *arguendo* that petitioners even had standing to challenge the IAA, UFT is a necessary party for the reasons that follow.

Necessary party

A court must always consider whether there has been a failure to join a necessary party (*City of New York v. Long Island Airports Limousine Serv. Corp.*, 48 N.Y.2d 469 [1979]). If the Court finds that a necessary party has not been joined, the Court may dismiss the petition without prejudice (*See* CPLR §1003; CPLR 3211[a][10]). However, dismissal for failing to name a necessary party is not favored (*Swezey v. Lynch*, 87 AD3d 119 [1st Dept 2011]).

Parties ought to be joined if their presence is necessary in order to accord full relief to persons who are already parties, or if they might be inequitably affected by a judgment in the action (CPLR § 1001[a]). The purpose of joinder is "not merely to provide a procedural convenience but to implement a requisite of due process – the opportunity to be heard before one's rights or interests are adversely affected" (*Martin v. Ronan*, 47 N.Y.2d 486, 490 [1979]). It is improper to proceed in an Article 78 proceeding without the joinder of necessary parties (*See, e.g. Mahinda v. Bd. of Collective Bargaining*, 91 AD3d 564 [1st Dep't 2012]; *Centeno v The City of New York*, 115 AD3d 537 [1st Dept 2014]). A similar ruling has been made with regards to Article 75 proceedings (*See, e.g., Matter of Schriebman v. N.Y. City Dep't of Educ.*, 2005 N.Y. Slip. Op. 30594(U) [Sup. Ct., New York County 2005]).

Here, respondents argue that the petitioners failed to add a necessary party in the form of the UFT. The court will consider this argument as to both branches of the petition, because failure to join a necessary party may warrant dismissal of one request for relief without warranting dismissal of the other. The respondents argue that the Article 75 arm of the petitions should be dismissed for failure to add the UFT because the UFT was integral in creating the Impact Arbitration Award. To support this latter assertion, the respondents point to *Centeno*. In that case, the First Department determined that it was proper to dismiss a petition for failure to add a necessary party because the plaintiffs did not include the agency that made the decision being challenged in the petition (*Matter of Centeno v. City of New York*, 115 AD3d 537 [1st Dept 2014]). Respondents argue that similarly, here, the UFT was instrumental in reaching the IAA that is challenged by the petitioners, and thus that the Article 75 petitions should be dismissed for failure to add the UFT as a necessary party. The petitioners respond that the UFT is not a necessary party because it will not be "inequitably affected" no matter how the proceedings end. They argue, in the alternative, that the court has the discretion to determine, on balance, that a somewhat incomplete resolution of a matter would be preferable to depriving the plaintiff of relief (*Red Hook/ Gowanus Chamber of Commerce v New York City Board of Standards*, 5 N.Y. 3d 452 [2005]).

The court agrees with the respondents. Petitioners request vacatur of the IAA, but such vacatur would necessarily discard the mediation and bargaining that the UFT engaged in in order to guarantee its members the opportunity to file for exemptions among other alternatives to vaccination. The Impact Arbitration Award is a direct result of the UFT's mediation and arbitration process. Therefore, the UFT's presence is necessary in order to accord full relief and the UFT might be inequitably affected by a judgment in the action. Since CPLR 7511(a) requires that a party seeking to vacate an arbitration award move to do so within 90 days of the delivery of the award to him or her, petitioners' deadline to add UFT has since passed, as UFT is certainly not united in interest with respondents (*see i.e. Desiderio v. Rubin*, 234 AD2d 581 [2d Dept 1996]). Based on the foregoing, respondents have established that the petitioners failed to name a necessary party to the Article 75 proceeding and that branch of the petitions should be dismissed on procedural grounds.

As for the CPLR Article 78 arm of the petitions, respondents argue that the petition should be dismissed because UFT represents the petitioners and therefore, any decision rendered here would influence how the UFT represents its members in the future. The petitioners reply by pointing to *Phillips*, a federal case wherein an employee brought suit against her former employer for violating the Fair Labor Standards Act (*Phillips v. Carborundum Co.*, 361 FSupp 1016 [WDNY 1973]). In that case, the employer requested joinder of national and local unions on the theory that a judgment in favor of the plaintiff would effectuate similar claims from other union workers. That argument was rejected, and the court determined that the unions were not necessary parties. Petitioners argue that the respondents here rely on a similar theory as the defendants in *Phillips*, and that the argument should similarly be dismissed. The court agrees with petitioners.

The potential for influence on how non-party UFT might represent its members in the future is not the "inequitable effect" contemplated by CPLR § 1001. Indeed, respondents have failed to articulate an adverse practical effect on UFT that this action might have which would warrant dismissal (*see i.e. Hitchcock v. Boyack*, 256 AD2d 842 [3d Dept 1998] quoting Siegel, NY Prac § 132 at 199 [2d ed]). Accordingly, the respondents' argument that the petitioners did not join a necessary party in the Article 78 arm of their petition fails.

Failure to exhaust administrative remedies

Nonetheless, the balance of the petition must be denied on procedural grounds because petitioners failed to exhaust their administrative remedies. It is "well established that a petitioner cannot maintain a CPLR article 78 proceeding unless he or she has exhausted the available administrative remedies" (*Matter of Derosa v. Dyster*, 90 AD3d 1470 [4th Dept 2011]; *see Frumoff v. Wing*, 239 AD2d 216 [1st Dept 1997]). Administrative remedies for UFT members include the grievance procedures available in the CBA. The CBA provides that members who complain that they have been "treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing

Page 4 of 10

INDEX NO. 160787/2021

NYSCEF DOC. NO. 36   Case 1:21-cv-06387-KAM-LB   Document 115-1   Filed 05/24/22   Page 6 of 11 PageID #: 2810
RECEIVED NYSCEF: 03/16/2022

or affecting employees" may access a grievance procedure to address the inequitable treatment (CBA Art. 22 [A][1]). Here, the petitioners complain that they have been treated inequitably because the DOE mandate is contrary to established policy and practice. Yet, none of the petitioners have grieved according to the CBA procedure.

To the extent that the petitioners argue that the Petitions are necessary because the UFT is preventing them from utilizing the CBA grievance procedure, they must argue that the UFT violated its duty of fair representation before they can sue their employer (see Matter of Donas v. New York City Dept of Envtl. Protection, 2018 NY Slip Op 51192[U] [Sup. Ct. New York County 2018]; Bergamine v. Patrolman's Benevolent Ass'n, 202 AD2d 201 [1st Dept 1994]). None of the petitioners have asserted such an allegation. Therefore, the petitioners have not exhausted their administrative remedies and cannot properly maintain these Article 78 proceedings.

Despite the fact that the petitions should be dismissed on procedural grounds, the court will consider the parties' substantive arguments in an exercise of discretion.

<u>Substantive Article 78 arguments</u>

In an Article 78 proceeding, a reviewing court may not weigh evidence, choose between conflicting proof, or substitute its assessment of evidence or witness credibility for that of the administrative fact finder (Edwards v. Safir, 282 AD2d 287 [1st Dept 2001]). Rather, a court's function in an Article 78 proceeding is to determine whether the agency acted in a manner that was arbitrary, capricious, unreasonable, inconsistent with the law, or without rational basis (Fahey v. Toia, 399 NYS2d 568 [Sup. Ct. Albany County 1977]).

In deciding whether there was an error of law in an administrative decision, the construction given to statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld (Howard v. Wyman, 28 NY2d 434 [1971]). In questions that relate to the administration's expertise, the statutory interpretation of that administration will be given great weight and judicial deference, so long as it is not unreasonable, irrational or inconsistent with the statutory language and legislative intent (Matter of Toys "R" Us v. Silva, 89 NY2d 411 [1996]). In contrast, "where the question is one of pure statutory reading and analysis, dependent only upon accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency... In such circumstances, the judiciary need not accord any deference to the agency's determination..." (Matter of Belmonte v. Snashall, 2 NY3d 560 [2004]).

In deciding whether a determination is arbitrary and capricious, a court should decide whether the agency acted "without sound basis in reason and... without regard to the facts" (Lackow v. Dep't of Educ. of City of NY, 237 MYLJ 32 [Sup. Ct. New York County 2007] citing Pell v. board of Education of Union Free School District, 34 NY2d 222 [1974]). Judicial review of administrative determinations is confined to the "facts and record adduced before the agency" (Matter of Featherstone v Franco, 95 NY2d 550 [2000] citing Matter of Yarbough v Franco, 95 NY2d 342 [2000]). If there is a rational basis for the administrative determination, there can be no judicial interference (Ramos v. O'Neill, 2021 NY Slip Op 31269(U) [Sup. Ct. New York County 2021]). The petitioner bears the burden of establishing that an administrative determination was without a rational basis (Kinsella v. Kelly, 231 NYLJ 90 [Sup. Ct. New York County 2004]).

The petitioners first argue that the DQE made an error of law when it issued the DOE mandate because state education laws prevent such an order that affects teacher's rights without individual hearings. Specifically, petitioners argue that by not permitting them to enter the building, by preventing them from performing their jobs, and by withholding pay, the DOE is constructively firing them without following the necessary procedure. Petitioners point to Education Law § 3020, which provides in relevant part as follows:

Case 23-655, Document 76, 06/05/2023, 3525010, Page225 of 302

No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment...

Here, the petitioners were subject to a Collective Bargaining Agreement ("CBA") which states that "Section 3020- a of the Education Law with modifications numbered 1-16 shall be the exclusive mechanism utilized by Respondent(s) for all disciplinary charges filed against tenured teachers..." Absent the delineated modifications, members bound by the CBA and subject to disciplinary action are granted the procedural due process outlined in Educ. Law § 3020-a which includes notice and an adversarial hearing.

The petitioners argue that their constructive terminations were disciplinary actions that were taken without a school district or employing board vote, without a written statement specifying the charges in detail, and without the many of the other procedural requirements of Educ. Law § 3020-a. They argue that the DOE's mandate must therefore be stricken, because it violates the Education Law.

In reply, the respondents argue that the statutes cited by petitioners do not apply because the vaccination status required by the DOE mandate and the consequences of a failure to follow that mandate are not disciplinary in nature. Rather, the respondents argue that the vaccination status is a qualification of employment. Respondents contend that the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency" which are subject to the applicable disciplinary procedures, from a "qualification of employment" which is not subject to such procedures (*Matter of New York State Off. of Children & Family Servs. v. Lanterman*, 14 N.Y.3d 275 [2010]). Additionally, respondents argue that no hearing is necessary in this case because: 1) hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency" (*Matter of O'Connor v. Board of Educ. of City School Dist. Of City of Niagara Falls*, 48 AD3d 1254 [4th Dept 2008]); and 2) due process does not always require a hearing, especially when there are no factual disputes that need to be resolved (*See Moogan v. N.Y. State Dep't of Health*, 8 A.D.3d 68 [1st Dept 2004]). Respondents state that a hearing is not necessary here because the mandate is not related to job performance, misconduct or competency, and because there is no dispute that the petitioners failed to get vaccinated against COVID-19 or provide proof of such vaccination. Thus, there is no factual question warranting a hearing.

In turn, petitioners reply that vaccination cannot be an employment qualification because it was not a requisite when they first applied for the job. They argue that whether an employee must be vaccinated is a term and condition of employment that must be bargained first before implemented, and even within the realm of the public employer's power to bargain collectively, it may do so only in the absence of "plain and clear" prohibitions in statute or controlling decision law, or restrictive public policy (*Syracuse Teachers Assn. v Board of Educ.*, 35 N.Y. 2d 743 [1974]).

The court agrees with the respondents. "The purpose of Education Law § 3020 is to protect tenured educators from arbitrary imposition of formal discipline" (*Holt v. Board of Educ.*, 52 NY2d 625 [1981] *quoting Holt v. Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625 [1981]) Educ. Law § 3020-a does not apply here because the DOE mandate requiring vaccination is not a disciplinary action. "Discipline" is not defined in the Education Law, and therefore the word must be understood using its "usual and commonly understood meaning" (*Yaniveth R. v LTD Realty Co.*, 27 NY3d 186 [2016]). The term "discipline" is uniformly defined, both in the legal and ordinary sense, as "punishment" (*see* Black's Law Dictionary [10th ed 2014], discipline [defining discipline as "(p)unishment intended to correct or instruct"]; Merriam-Webster Online Dictionary, discipline [http://www.merriam-webster.com/dictionary/discipline] [defining discipline as "punishment"]; Cambridge Dictionary, discipline [http://dictionary.cambridge.org/us/dictionary/english/ discipline] [defining discipline as "to punish"]). Applying these definitions to Educ. Law § 3020, discipline refers not merely to an action that has

INDEX NO. 160787/2021
NYSCEF DOC. NO. 36          Case 1:21-cv-06387-KAM-LB   Document 115-1   Filed 05/24/22   Page 8 of 11 PageID #: 2812
RECEIVED NYSCEF: 03/16/2022

an adverse impact on a tenured teacher, but rather, an action that has an adverse impact on a tenured teacher and is motivated by a punitive intent.

Here, the COVID-19 vaccine mandate propagated by the DOE did not have punitive intent, nor were the consequences of failing to abide by that mandate designed to be punitive. The DOE mandate itself expressly states its rationale: "the New York City Department of Education serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated." The mandate is not designed to punish; it is designed to protect the students that the DOE serves from a highly communicable disease. The acts of not permitting petitioners to enter the building, preventing them from performing their jobs, and withholding pay are not disciplinary actions; they are designed to prevent COVID-19 exposure to a particularly vulnerable population. For these reasons, the court agrees with the respondents that employee vaccination status is not a disciplinary action, but rather an employment qualification.

Significantly, this would not be the first time that vaccination for COVID-19 was held to be a qualification of employment. The United States District Court for the Eastern District of New York recently rejected similar arguments from firefighters and EMTs regarding a vaccine mandate on due process grounds (*Garland v. NY City Fire Dep't*, --- F.Supp.3d ----, 2021 US Dist. LEXIS 233142 [EDNY 2021]). In that case, the Hon. Kiyo A. Matsumoto held that due to the high transmissibility of COVID variants, and the fact that plaintiff's jobs required them to interact with the public on a regular basis, making vaccination a qualification of employment was rational (*Id.*). Here, the petitioners work as schoolteachers, and their jobs require them to come into contact with the public and with a uniquely vulnerable population: children. Given the high transmissibility of COVID-19 and the fact that the petitioners' work requires them to interact with vulnerable public populations, making vaccination a qualification of employment is consistent and rational.

Since vaccination is a qualification of employment, it is not necessary to follow the procedures outlined in Educ. Law §§ 3020 & 3020-a, as these procedures are exclusively for disciplinary actions. Therefore, the petitioners have failed to sufficiently allege that the DOE made an error of law when it issued the DOE mandate.

Next, the petitioners argue that the DOE mandate was irrational, arbitrary and capricious because it did not provide due process for the petitioners, and because the mandate was in contravention of Educ. Law §§ 3020 & 3020-a. As discussed *supra*, the mandate was not in contravention of the state education laws cited by the petitioners. The court will now examine the procedural due process claims.

The touchstones of procedural due process are notice and an opportunity to be heard. (*Matter of Prue v. Hunt*, 78 NY2d 364 [1991]; *Matter of Toolasprashad v. Kelly*, 80 AD3d 530 [1st Dept 2011].) Petitioners were provided with ample notice. On August 24, 2021, the NYC Commissioner of Health and Mental Hygiene announced the DOE mandate. The UFT filed its Declaration of Impasse on September 1, 2021, which led to arbitration. The IAA resulting from that arbitration was published on September 15, 2021. The award provided that, if employees failed to apply for exemption, they would be placed on leave without pay beginning September 28, 2021. This means that there was over one month between when the petitioners became aware or should have become aware of the DOE mandate that they challenge in their Article 78 claims, and the time that they were, or could have been, placed on leave without pay. Petitioners knew that they would be placed on leave without pay if they did not pursue the other avenues offered in the IAA and that, as a result of non-compliance with the DOE Order, they would be subject to unilateral separation from the DOE. Petitioners' own allegations demonstrate that they had notice of these potential outcomes. They were aware of the consequences of their decisions to not choose any of the proffered courses of action, and they made that decision regardless. Therefore, the court finds that petitioners had sufficient notice.

Petitioners were also granted an opportunity to be heard regarding the DOE mandate because they were represented by their union in the mediation and arbitration around that mandate. Unions rep-

INDEX NO. 160787/2021
NYSCEF DOC. NO. 36                                                                RECEIVED NYSCEF: 05/16/2022

resent their members, and an opportunity for the union to be heard is also an opportunity for the members of that union to be heard (*See Long Island College Hospital v. Catherwood*, 23 NY2d 20 [1968]; *Scarlino v. Fathi*, 107 AD3d 514 [1st Dept 2013]). Here, the UFT, representing all four petitioners, engaged in a mediation and arbitration with the DOE that resulted in the IAA. If the petitioners were unsatisfied with the UFT's representation, the correct legal recourse would be to file suit against the union, not to attempt to disqualify the DOE mandate. Thus, contrary to the assertions of the petitioners, they were given notice and opportunity to be heard concerning the DOE mandate.

Finally, the court finds that petitioners have failed to sufficiently allege that the vaccine mandate was irrational or arbitrary and capricious. Mere dissatisfaction with an agency's action, is not sufficient to show that the agency's action was arbitrary, capricious, or in bad faith. (*See Mid-State Mgt. Corp. v. New York City Conciliation & Appeals Bd.*, 112 A.D.2d 72 [1st Dept 1985], aff'd, 66 N.Y.2d 1032 [1985]). Instead, the mandate was rationally related to the Commissioner's power to pass orders related to the protection of the public health against the imminent or existing threat of COVID-19 (*see* Health Code § 3.01[d]). Accordingly, petitioners' substantive Article 78 claims should be dismissed on the merits.

Substantive Article 75 arguments

The court now turns to petitioners' arguments for relief pursuant to CPLR Article 75. Pursuant to CPLR § 7511(b)(1)(iii), an arbitration award shall be vacated on the application of a party who participated in the arbitration if the court finds that the rights of that party were prejudiced by an arbitrator making the award who exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made. Generally, judicial review of arbitration awards is extremely limited (*Wien & Malkin LLP v. Helmsley-Spear*, Inc. 6 NY3d 471 [2006]). An arbitration award will only be set aside if it is completely irrational, violative of a strong public policy, or exceeds a limitation on the arbitrator's power (*Obot v. New York State Dep't of Correctional Servs.*, 637 NYS2d 544 [4th Dept 1996] *aff'd* 653 NYS2d 883 [1996]). The deference given to arbitral awards is such that even a misapplication of the law will not be a sufficient basis for vacatur under CPLR § 7511 (*Matter of Douglas v. New York City Dept. of Educ.*, 34 NYS3d 340 [Sup Ct New York County 2016]; *Matter of Associated Teachers of Huntington v. Board of Educ., Union Free School Dist. No. 3, Town of Huntington*, 33 NY2d 119 [1973]).

However, when an arbitration award is the result of a compulsory arbitration, courts will review the award with closer scrutiny (*State Farm Mut. Auto Ins. Co. v. Arabov*, 767 NYS2d 905 [2d Dept 1980]; *see Furstenberg v. Aetna Casualty & Surety Co.*, 49 NY2d 757 [1980]). An award in a compulsory arbitration proceeding must have evidentiary support and cannot be arbitrary and capricious (*Motor Vehicle Accident Indemnification Corp. v. Aetna Cas. & Sur. Co.*, 89 NY2d 214 [1996]). The burden of proof that an arbitration award should be vacated rests on the party moving to vacate (*Matter of New Penn Motor Express, Inc. v. GEICO Gen. Ins. Co.*, 2011 NY Slip Op 32138(U) [Sup Ct Nassau County 2011]). Here, it is undisputed that the arbitration is compulsory and that it must be examined to ensure that the decision is supported by evidence and is not arbitrary and capricious.

The petitioners first argue that the arbitrator exceeded his power when he issued the arbitration award because state education laws and the collective bargaining agreement ("CBA") prevent the arbitrator from making decisions that affect teacher's rights and prevent the UFT from bargaining away teacher's rights. Petitioners argue that the due process procedure guaranteed by Educ. Law §§ 3020 & 3020-a are curtailed by the IAA. They also point to CBA Art. 22 (c) which states:

> [An] arbitrator shall limit his decision strictly to the application and interpretation to the provisions of this Agreement and he shall be without power or authority to make any decision: 1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law…

Petitioners argue that the Impact Arbitration Award varies the CBA by providing new procedure for employees who do not follow the DOE mandate. Therefore, they argue that the arbitrator exceeded his power by making an award that is explicitly forbade by the CBA. Finally, the petitioners argue that the IAA goes against public policy because the state Education Laws demonstrate a desire to protect tenured teachers from being dismissed without a hearing once their competency has been demonstrated (*Abramovich v Board of Ed.*, 1978, 62 AD2d 252 [1978]).

As explored *supra*, Educ. Law § 3020-a does not apply here because the DOE mandate and subsequent IAA create an employment qualification, not a disciplinary action. The public policy argument also fails for this reason. Regarding Article 22 of the CBA, the New York Southern District federal court has held that "§ 3020(4)(a) authorizes the DOE and the UFT to enter into a collective bargaining agreement modifying the procedures set forth in § 3020-a" (*Adams v. N.Y. State Educ. Dept*, No. 08 Civ. 5996 [VM] [AJP], 2010 U.S. Dist. LEXIS 15635 [SDNY 2008]; Educ. Law § 3020 [4][a]). Here, after the UFT filed a Declaration of Impasse, the UFT and the DOE mediated the exemption and due process issues and those issues were resolved via arbitration. The leave without pay and separation procedures that are challenged in these petitions are the result of collective bargaining and impasse arbitration, which are negotiated and statutorily regulated processes that can appropriately modify the procedures set forth in Section 3020-a (*Id.*). Therefore, the arbitrator did not exceed his power by making an award that is "explicitly forbade" by the CBA because the arbitration was a permissible modification of the CBA since it was agreed upon by the DOE and the UFT. Accordingly, the petitioners' argument that the arbitrator exceeded his power when he issued the arbitration award because state education laws and the collective bargaining agreement ("CBA") prevent the arbitrator from making decisions that affect teacher's rights and prevent the UFT from bargaining away teacher's rights is rejected

Finally, petitioners argue that the arbitrator's determination was irrational, arbitrary and capricious and not supported by the evidence when he failed to provide due process for the petitioners, when he made a decision that was in contravention of state education laws, and the CBA, and when he acted against public policy by failing to guarantee the petitioners' due process rights. The arguments concerning state education laws, the CBA and public policy have already been confronted and eschewed in this order. The court turns to the procedural due process arguments. As stated *supra*, the touchstones of procedural due process are notice and an opportunity to be heard. (*Matter of Prue v Hunt*, 78 NY2d 364 [1991]). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" (*Mathews v. Elridge*, 424 U.S. 319 [1976]).

With regard to notice, the IAA was published on September 15, 2021. The award gave employees of the DOE until September 20, 2021 to apply for medical or religious exemption. It provided that, if employees failed to apply for exemption, they may be placed on LWOP between September 28, 2021 and November 30, 2021. During that one-month time period between September 28, 2021 and November 30, 2021, employees had three choices. First, they could choose to voluntarily separate from the DOE and receive continued health insurance coverage through September 5, 2022. Alternatively, they could choose to extend their LWOP through to September 5, 2022 and receive the commensurate benefits, including health insurance, and maintain the possibility of returning to work during that period if the situation changed. Finally, they could choose to do nothing, but any employee that failed to elect any of the options provided for in IAA could be unilaterally separated from the DOE beginning on December 1, 2021. This means that DOE employees had two-weeks' notice before being place on LWOP, and 2.5 months' notice before being unilaterally separated from the DOE. During that time, all employees had the option to return to work upon vaccination. Petitioners knew that they would be placed on LWOP if they did not pursue the other avenues offered in the IAA and that, as a result of non-compliance with the DOE Order, they would be subject to separation from the DOE. The petitioners here had ample notice of the consequences of any decision that they made. All petitioners decided to make no decision at all.

Regarding an opportunity to be heard, the Impact Arbitration Award provided an opportunity for the petitioners to apply for medical and religious exemption for the DOE mandate. It also provided for procedures to appeal any exemption denial. It provided options for employees to separate from the DOE

**JA-1581**

NYSCEF DOC. NO. 36                                                          RECEIVED NYSCEF: 03/16/2022

INDEX NO. 160787/2021

Case 1:21-cv-06387-KAM-LB   Document 115-1   Filed 05/24/22   Page 11 of 11 PageID #: 2815

voluntarily or to extend their leave without pay through the full year. Petitioners had over two months to take any of the avenues provided by the IAA, an award mediated and arbitrated by the union that represented them. They had the option to bring a claim against the union if they felt that the union failed to represent their interests. They had the option to bring this petition forward via order to show cause and to ask for a preliminary injunction prior to the unilateral separation date, December 1, 2021. The petitioners did none of these things. An "opportunity to be heard" does not equate to a "hearing." (*Ezekwo v. New York City Health & Hosps. Corp.*, 940 F2d 775 [2d Cir. 1991]). An opportunity to be heard can also be procedure that permits a party to appeal a decision or to elect a course of action (*See Garland, supra*).

Petitioners here were given an opportunity to choose from multiple courses of action, some of which included appeals processes. Petitioners' decision not to avail themselves of any of the options pursuant to the IAA does not mean petitioners were denied due process. Thus, the petitioners' Article 75 claims must also be dismissed on the merits.

**CONCLUSION**

In accordance herewith, it is hereby

**ORDERED** that the cross-motions to dismiss are granted, the petitions are denied, these proceedings are dismissed, and the Clerk is directed to enter judgment accordingly.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby expressly rejected and this constitutes the decision and order of the court.

Dated:    **3·15·22**                                    So Ordered:
          New York, New York

                                                        Hon. Lynn R. Kotler, J.S.C.

JA-1582

Index No. 21 Civ 6387 (KAM)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICOLE BROECKER, et al., on behalf of themselves and all other similarly situated employees of the New York City Department of Education,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

Defendants.

**MEMORANDUM OF LAW**

**HON. SYLVIA O. HINDS-RADIX**

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-100
New York, New York 10007-2601

*Of Counsel:*  Andrea O'Connor
*Tel:*  (212) 356-4015
*Email:* aoconnor@law.nyc.gov

Matter No. 2021-038953

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT

       POINT I

              PLAINTIFFS' DUE PROCESS CLAIMS ARE
              BARRED BY THE LAW OF THE CASE
              DOCTRINE ......................................................................................... 6

       POINT II

              PLAINTIFFS' DUE PROCESS CLAIMS MUST
              BE DISMISSED ...................................................................... 11

              A.  Applicable Law ....................................................................... 11

              B.  Plaintiffs' Placement on LWOP and/or
                   Terminations Is Not Discipline ........................................... 12

              C.  Plaintiffs' Members Have Been Afforded All
                   Process Owed to Them ...................................................... 15

       POINT III

              PLAINTIFFS' CONSPIRACY CLAIMS MUST BE
              DISMISSED ...................................................................... 23

       POINT IV

              PLAINTIFFS' CLASS CLAIMS MUST BE
              DISMISSED ...................................................................... 24

CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Pages**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...................................................................................24

Beck-Nichols v. Bianco,
   20 N.Y.3d 540 (2013) ..............................................................................14

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)...................................................................................24

Cafeteria Workers v. McElroy,
   367 U.S. 886 (1961)...................................................................................17

Capul v. City of N.Y.,
   No. 19 CV 4313 (KPF),
   2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27, 2020),
   aff'd 832 F. App'x. 766 (2d Cir. 2021)...................................................21

Carr v New York State Dep't of Transportation,
   70 A.D.3d 1110,
   lv to app. den., 14 N.Y.3d 709 (2010) ....................................................14

City School District v. McGraham,
   17 N.Y.3d 917 (2011)................................................................................14

Clarke v. BOE, et al.,
   Index No. 160787/2021 ...............................................................................9

Cleveland Bd. of Educ. v. Loudermill,
   470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)........................16

Cornejo v. Bell,
   592 F.3d 121 (2d Cir. 2010)......................................................................11

Cravatta v New York State Dep't of Transportation,
   77 A.D.3d 1399 (4th Dep't 2010) ............................................................14

Dechberry v. N.Y.C. Fire Dep't,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) .....................................................11

Dwares v. N.Y.C.,
   985 F.2d 94 (2d Cir. 1993)........................................................................23

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
   940 F.2d 775 (2d Cir. 1991)................................................................19, 21

ii

**Cases**                                                                                                      **Pages**

Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) ...................................................................................14, 16

Garland v. N.Y.C. Fire Dep't,
    No. 21 CV 6586 (KAM)(CLP),
    2021 U.S. Dist. LEXIS 233142
    (E.D.N.Y. Dec. 6, 2021) ...........................................9, 12, 14, 16, 20, 21, 22

Giammarino v. BOE, et al.,
    Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty) ...........................................9

Hellenic Am. Neighborhood Action Comm. v. City of New York,
    101 F.3d 877 (2d Cir. 1996)........................................................................22

Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.,
    No. 21 CV 00038 (MKV)
    2021 U.S. Dist. LEXIS 27205 (S.D.N.Y. Feb. 12, 2021) ............................8

Hogan v. Fischer,
    738 F.3d 509 (2d Cir. 2013)........................................................................24

In re Initial Pub. Offering Sec. Litig.,
    214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................24

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)..........................................................................11

Johnson v. Holder,
    564 F.3d 95 (2d Cir. 2009)............................................................................8

Johnston v. Tn. of Orangetown,
    562 F. App'x 39 (2d Cir. 2014) ...................................................................23

Lanzer v. BOE, et al.,
    Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ...................................10, 12

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001)........................................................................23

MacFall v. City of Rochester,
    495 F. App'x 158 (2d Cir. 2012) .................................................................12

Maniscalco v. BOE, et al.,
    Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty) ............................9, 12, 13, 20, 21

iii

**Cases** **Pages**

Marciano v. De Blasio,
    No. 21-cv-10752 (JSR),
    2022 U.S. Dist. LEXIS 41151 (S.D.N.Y. Mar. 8, 2022) .................................9, 13, 19, 21, 22

Martz v. Inc. Vill. of Valley Stream,
    22 F.3d 26 (2d Cir. 1994) ...............................................................................12

Mathews v. Eldridge,
    424 U.S. 319 (1976).................................................................................16, 21

Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,
    631 F.3d 57 (2d Cir. 2011)..............................................................................24

McCray v. Patrolman N.A. Caparco,
    761 F. App'x 27 (2d Cir. 2019) ......................................................................23

McPherson v. New York City Dep't of Educ.,
    457 F.3d 211 (2d Cir. 2006).............................................................................12

Morrissey v. Brewer,
    408 U.S. 471 (1972)........................................................................................17

Musacchio v. United States,
    577 U.S. 237 (2016) .........................................................................................8

Naliboff v. Davis,
    133 A.D.2d 632 (2d Dep't 1987),
    lv to app. den., 71 N.Y.2d 805 (1988) ...........................................................15

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of
    New York, et al.,
    Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.) ............................................5

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010) ....................................................................................14

O'Connor v. Pierson,
    426 F.3d 187 (2d Cir. 2005)......................................................................14, 19

O'Reilly v. Bd. of Educ.,
    Index No. 161040/2021,
    2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan. 20, 2022) ................9-10, 12, 13

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987)............................................................................16

**Cases**                                                                                          **Pages**

Romero v. BOE, et al.,
   Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) ............................................................. 10, 12

Russell v. Coughlin,
   910 F.2d 75 (2d Cir. 1990) ............................................................................................ 16

Salas v. BOE, et al.,
   Index No. 160821/2021 ................................................................................................... 9

Schrimer v. Town of Harrison,
   98 Civ. 2582 (AGS),
   1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) ............................................................ 15

Segal v. City of New York,
   459 F.3d 207 (2d Cir. 2006) .......................................................................................... 23

Sorano v. City of Yonkers,
   37 A.D.3d 839 (2d Dep't 2007) .................................................................................... 16

Tessler v. Paterson,
   768 F. Supp. 2d 661 (S.D.N.Y. 2011) .......................................................................... 23

U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.,
   No. 15 CV 4961 (LTS)(JLC),
   2020 U.S. Dist. LEXIS 87534 (S.D.N.Y. May 19, 2020) ........................................... 10

United States v. Quintieri,
   306 F.3d 1217 (2d Cir. 2002) ......................................................................................... 8

United States v. Tenzer,
   213 F.3d 34 (2d Cir. 2000) .............................................................................................. 8

Webb v. Goord,
   340 F.3d 105 (2d Cir. 2003) .......................................................................................... 23

Zinermon v. Burch,
   494 U.S. 113 (1990) ...................................................................................................... 11

**Statutes**

42 U.S.C. § 1983 ................................................................................................................ 23, 24

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 24

N.Y.C. Admin. Code § 12-120 .............................................................................................. 16

**Statutes**                                                                    **Pages**

N.Y. Civ. Serv. Law § 75.............................................................2, 7, 12, 14, 15, 16, 22

N.Y. Educ. Law § 2509(2)..........................................................................................14

N.Y. Educ. Law § 3020 ..............................................................................................14

N.Y. Educ. Law § 3020-a ...........................................................2, 7, 9, 10, 12, 13, 14

Case 23-655, Document 76, 06/05/2023, 3525010, Page237 of 302

## PRELIMINARY STATEMENT

On August 24, 2021, the former Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dave A. Chokshi, issued a Commissioner's Order ("COH Order" or "Vaccination Mandate") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021. The COH Order is unequivocal. It requires all DOE employees, both current and prospective, to be vaccinated. The COH Order, and the nearly identical order issued by the DOHMH Commissioner applicable to employees of the City of New York ("City Order"), has been repeatedly upheld as lawful by every Court that has considered it. Thus, the COH Order is unassailable and legally sound.

Critical to this case is that the COH Order creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated. The DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent an exemption or accommodation required by law, to perform work for the DOE. On this point, the law of the case is clear. This Court has unequivocally held that "the Vaccination Mandate is a lawful condition of employment." See Dkt. No. 89 at 21.

The law of this case – as well as holdings in similar cases brought in the Southern District of New York and New York Supreme Court – is likewise clear that because vaccination against COVID-19 is a condition of employment, non-compliant employees can be terminated based on their failure to satisfy this condition without invoking applicable disciplinary procedures.

Despite these clear holdings, Plaintiffs, in their Amended Complaint, continue to press legal theories that have been considered and wholly rejected by this Court as well as every other court that has considered the same or similar arguments. Here, plaintiffs are tenured DOE employees who failed to comply with the COH Order and now challenge the consequence of that

non-compliance.  Plaintiffs commenced this action on behalf of themselves and a putative class alleging, among other things, that DOE Defendants: (1) violated their procedural due process rights guaranteed by their collective bargaining agreements, New York Education Law Section 3020-a, New York Civil Service Law Section 75 and the Fourteenth Amendment by "suspending" them without pay and subjecting them to potential separation; and (2) conspired to deprive plaintiffs of these due process rights.  For the reasons set forth below, these claims are without merit and should be dismissed.

## STATEMENT OF FACTS

In an effort to avoid restating the same facts that have been before the Court in connection with Plaintiffs' two applications for injunctive relief in this case, DOE Defendants respectfully refer the Court to the Statements of Facts contained in their: (1) Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated November 19, 2021, see ECF Dkt. No. 18; and (2) Memorandum of Law in Opposition to Plaintiffs' and Union Defendants' Motion for a Preliminary Injunction, dated February 11, 2022, see ECF Dkt. No. 86.

Briefly, however, on August 24, 2021, former Mayor de Blasio and former Commissioner Chokshi announced that DOE employees would be subject to a "vaccine only" mandate, as opposed to a vaccination-or-testing requirement, as described thereafter in the COH Order.  See COH Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf (last accessed on March 20, 2022).  Under this policy, by September 27, 2021, DOE employees were required to submit proof that they were fully vaccinated; or received a single dose vaccine, or the second dose of a two-dose vaccine; or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  Id.

2

**JA-1591**

On September 10, 2021, Defendant UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the COH Order. See O'Connor Decl., dated Nov. 19, 2021, Exh. A, (hereafter "Impact Arbitration Decision"), at 4. PERB then appointed an arbitrator and several days of discussions were held. Id. On September 10, 2021, the arbitrator issued a decision, which established: (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits or extend the leave without pay ("LWOP") available for employees who did not comply with the Vaccination Mandate; and (3) that the DOE may "unilaterally separate employees" who have not complied with the COH Order or do not have an approved exemption or accommodation or have not either opted for separation or extended their LWOP pursuant to the provisions set forth in the Impact Arbitration Decision. Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response. See id. at 6-13. It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on LWOP by the DOE starting September 28, 2021. See id. at 13. While on LWOP, employees continue to be eligible for health insurance. Id. at 15. Employees who submitted proof of vaccination before November 30, 2021, were eligible to return to their school within one week of submitting their documentation to the DOE. Id. at 14.

The Impact Arbitration Decision also set forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of LWOP with health benefits. See id. at 14. DOE employees who did not comply with the COH Order could have opted to either separate from service by October 29, 2021 and receive enhanced payment of

3

accrued paid time off and remain eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from another source. Id. at 16. Alternatively, as a second option, employees could have opted by November 30, 2021 to extend their LWOP through September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who chose to extend their LWOP ultimately do not comply with the COH Order by the end of the leave period, they will be deemed to have voluntarily resigned. Id. In addition, the Impact Arbitration Decision provided that starting on December 1, 2021, DOE can unilaterally separate employees who remain out of compliance with the COH Order and have not applied for either the extended leave or separation. Id.

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the remaining unions representing DOE employees, including Defendant CSA and Defendant District Council 37, City of New York ("DC 37"). Similar to the process that led to the Impact Arbitration Decision – which covers the majority of Plaintiffs herein – the negotiations with CSA reached an impasse and the parties proceeded to arbitration. See O'Connor Decl. dated Nov. 19, 2021 at Ex. B. On September 15, 2021, an arbitration award was issued that exactly mirrors that of the Impact Arbitration Decision. Id.

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave procedures for those DOE employees who did not comply with the COH Order and, again, reached an agreement that mirrors that of the Impact Arbitration Decision. See O'Connor Decl. dated Nov. 19, 2022 at Ex. C, Memorandum of Agreement District Council 37, City of New

4

**JA-1593**

York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021.[1]

Critically, **76 of the 91** Plaintiffs availed themselves of either the above-described reasonable accommodation procedures and/or the extended leave and separation options.  <u>See</u> Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

Plaintiffs contend that on January 31, 2022, 43 Plaintiffs received notices from DOE that, due to their non-compliance with the COH Order, they would be terminated effective February 11, 2022.  <u>See</u> Dkt. No. 76-1, Affirmation of Austin Graff, dated February 8, 2022.  On February 8, 2022, Plaintiffs moved to enjoin these terminations.  <u>See</u> Dkt. No. 76.  Defendants UFT and CSA filed a letter in support of this motion.  <u>See</u> Dkt. No. 77.  The Court denied Plaintiffs' motion to enjoin these terminations on February 11, 2022.  <u>See</u> Dkt. No. 89.

Additionally, on February 8, 2022, Defendants UFT and CSA filed a separate action in New York State Court and sought a temporary restraining order and preliminary injunction seeking to enjoin the City and DOE from "terminating employees represented by Plaintiffs due to vaccination status." <u>The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al.</u>, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.).  The motion for a temporary restraining order seeking to enjoin the February 11, 2022 terminations was denied on February 10, 2022.  <u>See The New York City Municipal Labor Committee, et al. v. The City of New York, et al.</u>, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.), NYSCEF Dkt. No. 52

On February 11, 2022, DOE effectuated the terminations of those employees that had not complied with the COH Order, had not opted to extend their LWOP or elect an enhanced

---

[1] Because the applicable CSA decision and the DC 37 agreement are identical in all relevant respects to the Impact Arbitration Decision, for ease of reference this memorandum will refer to all three as the Impact Arbitration Decision.

**JA-1594**

separation option, and had not received a reasonable accommodation in connection with the COH Order.

## ARGUMENT

### POINT I

### PLAINTIFFS' DUE PROCESS CLAIMS ARE BARRED BY THE LAW OF THE CASE DOCTRINE

On November 17, 2021, Plaintiffs filed an emergency motion for injunctive relief seeking, among other things, to enjoin their terminations during the pendency of this litigation. See Dkt. No. 2.  Plaintiffs' November 17 motion was fully briefed and argued prior to it being denied by the Court via the November 24 Order.  See November 24 Order.  Plaintiffs did not appeal the November 24 Order, and their time to do so has long expired.  In analyzing whether Plaintiffs' November 17 Motion demonstrated a likelihood of success on the merits, this Court held that "both the pre-deprivation and post-deprivation processes currently afforded to Plaintiffs were and are constitutionally adequate."  See November 24 Order at 19.  In so doing, this Court found that "Plaintiffs received ample notice of (1) the Vaccination Mandate, (2) their ability to seek religious and medical exemptions and appeals, (3) their placement on LWOP if they continued to be noncompliant with the terms of the Vaccination Mandate, and (4) their options and opportunity to respond."  Id. at 19.

With respect to post-deprivation processes, this Court held that – in addition to remedies available to them via their respective collective bargaining agreements – "Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York

6

**JA-1595**

State Supreme Court. The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy." Id. at 22.

Plaintiffs then filed a second motion for injunctive relief on February 8, 2022 seeking to, again, enjoin their terminations for failure to comply with the COH Order. See Dkt. No. 76. In their February 8 Motion, Plaintiffs again argued that their anticipated terminations violated their procedural due process rights because DOE did not follow the disciplinary procedures set forth in § 3020-a or § 75 in advance of taking the challenged employment actions. See Dkt. No. 76-13. This is the exact same argument made by Plaintiffs in support of their November 17 motion. See Dkt. No. 2-10.

On February 11, 2022, the Court denied Plaintiffs' February 8 Motion seeking to enjoin the terminations of certain Plaintiffs. As detailed below, in issuing this decision, the Court specifically reached the issue of "whether noncompliant NYC DOE employees facing separation were being 'disciplined' or subject to a legitimate condition of employment." See Dkt. No. 89 at 12.

With respect to Plaintiffs' due process claim, the February 11 Decision and Order made four critical holdings. First, the February 11 Decision and Order held that the COH Order was lawfully issued and enforceable against DOE employees. See id. at 22-23. Second, the February 11 Decision and Order unequivocally held that the "Vaccination Mandate is a lawful condition of employment." Id. at 21. Third, the February 11 Decision and Order held that "[t]he termination of NYC DOE employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary" and therefore "the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a or Civil Service Law Section 75 prior to terminating NYC DOE employees due to their noncompliance with the

Vaccination Mandate." See id. at 31, 33.  Fourth and finally, the February 11 Decision and Order "reaffirmed" its holding in the November 24 Order which found "that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate." See id. at 15.  Plaintiffs did not appeal the February 11 Decision and Order and their time to do so has expired.

       Under the law of the case doctrine, "when a court decides upon **a rule of law**, that decision should continue to govern the same issues in subsequent stages in the same case." Musacchio v. United States, 577 U.S. 237 (2016)(emphasis added); see also United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although not binding, law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons).  A court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting United States v. Quintieri, 306 F.3d 1217, 1230 (2d Cir. 2002)). Further, a written opinion issued in connection with a denial of a preliminary injunction is sufficient to invoke the law of the case doctrine.  See Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P., No. 21 CV 00038 (MKV) 2021 U.S. Dist. LEXIS 27205, at *13-14 (S.D.N.Y. Feb. 12, 2021)

       Here, the Court's four critical holdings identified above wholly foreclose Plaintiffs' due process claims as a matter of law and there is no cogent or compelling reason for the Court to depart from these rulings.

       There has been no intervening case law issued that would preclude this Court from adhering to its prior rulings.  In fact, intervening law **supports** this Court's prior holdings.  Since

the issuance of the February 11 Decision and Order, on March 8, 2022, the Hon. Jed S. Rakoff in the Southern District of New York held that the City Order created a "condition of employment" for City employees and that "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the [applicable] disciplinary procedures." Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022) quoting Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021). This reiterates the prior order of the Eastern District in Garland which reached the same result with respect to the City Order. See Garland, 2021 U.S. Dist. LEXIS 233142 at * 14.

Similarly, on March 16, 2022, the Hon. Lynn R. Kotler in New York Supreme Court issued a decision in connection with four Article 78 proceedings filed by tenured teachers who failed to comply with the DOE Order and were challenging their placement on LWOP as "constructive terminations" without due process. See Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021 (collectively "Maniscalco Art. 78 Decision").[2] In denying the petitions, the Court held that § 3020-a "does not apply here because the DOE mandate and subsequent IAA [i.e. Impact Arbitration Decision] create an employment qualification, not a disciplinary action." See Maniscalco Art. 78 Decision at p. 9. This decision reiterates that of three other New York Supreme Court decisions that held that tenured DOE employees may be terminated for failure to comply

---

[2] For the Court's convenience, a copy of this unpublished decision is annexed to the Affirmation of Andrea O'Connor, dated April 4, 2022, as Exhibit A.

9

**JA-1598**

with the COH Order without resort to statutory disciplinary procedures.  See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty)(denying the petition and holding that petitioner is not entitled to a hearing under § 3020-a in advance of her placement on LWOP and/or termination because those employment actions are not a "disciplinary consequence" of the petitioner's failure to comply with the DOE Order); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty)(same).

        Likewise, there is no new evidence or allegations for the Court to consider in connection with deciding this motion to dismiss.  Plaintiffs' second motion for injunctive relief was made after the filing of the Amended Complaint and after certain Plaintiffs had received notice of their anticipated terminations.  Thus, there are no new allegations or facts that could be considered by the Court in connection with this motion that were not before the Court when it issued the February 11 Decision and Order.  Therefore, the law of the case doctrine applies.  See U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co., No. 15 CV 4961 (LTS)(JLC), 2020 U.S. Dist. LEXIS 87534, at *8 (S.D.N.Y. May 19, 2020)(where a party presents the same allegations or factual record previously deemed deficient by a court, the law of the case doctrine forecloses reconsideration of the court's conclusion).

        Finally, there is no clear error in the Court's prior decisions that requires correcting.  This is a point that Plaintiffs concede as evidenced by their decision not to appeal either of the Court's prior orders.  Nor is a departure from the Court's prior rulings necessary to "prevent manifest injustice."  As the recent case law contained in this memorandum makes clear, this Court's prior holdings in this case are exactly in line with the decisions of the other Courts that have considered the same or similar issues pertaining to the COH Order and/or the City Order.

10

JA-1599

Therefore, because there is no "cogent and compelling reason" for the Court to revisit its prior holdings in this case, DOE Defendants respectfully submit that Plaintiffs' procedural due process claims are barred by the law of the case doctrine and therefore must be dismissed.

## POINT II

## PLAINTIFFS' DUE PROCESS CLAIMS MUST BE DISMISSED

In the event the Court does not dismiss Plaintiffs' due process claims as barred by the law of the case doctrine, City Defendants respectfully submit that these claims are otherwise without merit and must be dismissed as a matter of law.

**A.     Applicable Law**

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of that right, and third show

11

that the deprivation was effected without due process." Id. (internal citation and quotation marks omitted). "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." MacFall v. City of Rochester, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994). In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it. Id. (quoting McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)).

**B.     Plaintiffs' Placement on LWOP and/or Terminations Is Not Discipline**

As noted above, the February 11 Decision and Order conclusively ruled that Plaintiffs' placement on LWOP and their terminations do not constitute discipline. See Dkt. No. 89 at 31-33. Despite that ruling, the Amended Complaint adheres to the faulty notion that Plaintiffs are being subjected to "discipline" without the process owed to them via Education Law § 3020-a or Civil Service Law § 75. Not so. Rather, by virtue of Plaintiffs' unwillingness to comply with the COH Order, their inability or unwillingness to obtain an accommodation in connection with the COH Order and their unwillingness to opt for any of the separation or leave options offered in the Impact Arbitration Decision, they cannot continue their public employment with the DOE.

On this point, every Court that has encountered this question – including this one – has unequivocally held that the COH Order creates a lawful condition of employment and that the termination of a public employee for failure to satisfy that condition is unrelated to job performance, misconduct, or competency and therefore does not implicate applicable disciplinary procedures. See Dkt. No. 89 at 21; see also Maniscalco Art. 78 Decision at p. 9; O'Reilly, 2022 N.Y. Slip. Op. 30173(U), ¶ 3; Lanzer, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero,

Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); Garland, 2021 U.S. Dist. LEXIS 233142 at *25 (City Order created condition of employment); Marciano, 2022 U.S. Dist. LEXIS 41151, at *25-26 (same).

      In O'Reilly, the petitioner, a tenured teacher, argued that her placement on LWOP was an effective "termination" and that her "dismissal" violated her due process rights because she was not afforded "notice and evidentiary hearing required by Education Law § 3020-a." 22 N.Y. Slip. Op. 30173(U) ¶ 2.  The Court, however, found that the petitioner "chose to ignore all of the[] options" available to her in that "she did not show proof of vaccination, did not apply for an accommodation and did not seek to extend her leave without pay in exchange for extended health benefits." Id.

      The Court therefore held that the employment actions taken by DOE as a result of the petitioner's inaction was "not discipline under the Education Law and instead was merely a response to petitioner's refusal to comply with a condition of employment." Id. at ¶ 2.  Notably, the Court further held that "[d]iscipline involves alleged misconduct, not a prerequisite to doing the job in the first instance." Id. at ¶ 3.  In denying the Article 78 petition, the Court noted that the petitioner was "seek[ing] an end run around challenging the legality of the mandate by classifying it [i.e. her placement and LWOP and termination] as discipline – [which is] a completely different situation.  The requirement to follow the mandate at issue is, as stated above, a condition of employment and petitioner admits that she did not satisfy that condition or seek an exemption." Id. at ¶ 5.  Similarly, in denying the four separate petitions, the Court in the Maniscalco Art. 78 Decision, the Court held that § 3020-a "does not apply here because the DOE mandate and subsequent IAA [i.e. Impact Arbitration Decision] create an employment qualification, not a disciplinary action." See Maniscalco Art. 78 Decision at p. 9.

Case 23-655, Document 76, 06/05/2023, 3525010, Page250 of 302

This recent precedent is in line with case law holding that "under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth" in the applicable disciplinary statute. See Garland, 2021 U.S. Dist. LEXIS 233142 at *11-12 citing O'Connor, 852 N.Y.S.2d at 538; Beck-Nichols v. Bianco, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures.").

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary procedures, from a "condition of employment" which is not subject to such procedures. Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011); Cravatta v New York State Dep't of Transportation, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); Carr v New York State Dep't of Transportation, 70 A.D.3d 1110 (3d Dep't), lv to app. den., 14 N.Y.3d 709 (2010) (same; loss of CDL); Moogan, 8 A.D.3d at 69 (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against

14

challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses.  Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); Naliboff v. Davis, 133 A.D.2d 632 (2d Dep't 1987), lv to app. den., 71 N.Y.2d 805 (1988); Schrimer v. Town of Harrison, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

Thus, the termination of City or DOE "employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary.  Rather, Plaintiffs' separation is because of their failure to avail themselves of existing processes or comply with a lawful job condition.  See Dkt No. 89.

**C.     Plaintiffs' Members Have Been Afforded All Process Owed to Them**

As detailed above, the Court has already ruled "that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate," see Dkt. No. 89 at 15, and that there is no basis to disturb this holding.  DOE Defendants respectfully submit that this is an end to Plaintiffs' due process claim.

However, to the extent the Court provides fresh consideration to the process provided to Plaintiffs in advance of their placement on LWOP and/or termination, it is clear that Plaintiffs were provided with all the process owed to them in advance of their placement on LWOP and/or termination.  Indeed, Plaintiffs conflate the process they believe they were owed under the various applicable disciplinary statutes with the constitutional minima required by the New York State and United States Constitutions. As the Court has held, Plaintiffs are incorrect.  See Dkt. No. 89 at 18-19.

15

**JA-1604**

"[T]o determine whether process is adequate, the Court looks to '[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process.'" Garland, 2021 U.S. Dist. LEXIS 233142, at *11 (alternation in original) quoting Robison v. Via, 821 F.2d 913, 923 (2d Cir. 1987); also citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires."). Thus, "at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution." Garland, 2021 U.S. Dist. LEXIS 233142, at *11

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Loudermill, 470 U.S. 532 at 546; Felix, 3 N.Y.3d at 504-06 ("A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement"; here the process provided for in § 12-120, which provides for notice and an opportunity to refute allegations of non-residence, are all the process due); Sorano v. City of Yonkers, 37 A.D.3d 839 (2d Dep't 2007)(in accordance with Felix, a police officer can be terminated for non-residency without a Civil Service Law § 75 process but due process requires that the employee be provided with notice of the non-compliance and an opportunity to respond prior to termination). Moreover, as the Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place

16

**JA-1605**

and circumstances." Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

All Plaintiffs were provided with ample advance notice that, as a result of their non-compliance with the COH Order, they would be terminated from the DOE. In fact, Plaintiffs have had notice of this outcome since September 10, 2021, when the highly publicized Impact Arbitration Decision was issued. Furthermore, on October 2, 2021, nearly immediately after the October 1, 2021 deadline to submit proof of vaccination under the COH Order, Plaintiffs were notified that they were not in compliance with the order and therefore would be placed on LWOP as of October 4, 2021, and that DOE would terminate them if they did not opt to extend their LWOP status and remained out of compliance with the mandate. See Dkt. No. 1-1. Additionally, the October 2, 2021 email set forth the below-described processes that a plaintiff could – and, in some instances, did avail themselves of. Id.

The Impact Arbitration Decision established a robust process by which DOE employees could apply for medical and/or religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response. See O'Connor Decl., Exh. A, Impact Arbitration Decision at 6-13. The Impact Arbitration Decision further provided that employees who sought to challenge the denial of an accommodation could do so via an additional arbitration. Id. Notably, 69 Plaintiffs in this case availed themselves of this reasonable accommodation process. See Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

The Impact Arbitration Decision set forth a process for separation from employment or the extension of LWOP. See O'Connor Decl., dated Nov. 19, 2021, Exh. A, Impact

17

Arbitration Decision at 6-13.  Under this process, DOE employees who had not complied with the COH Order by October 29, 2021, could have opted to separate from employment and continue their health insurance through September 5, 2022.  Id. at 16.  Employees could have also, in the alternative, opted by November 30 to extend their LWOP through September 5, 2022, and maintain health coverage.  Id. at 17. For those that chose to extend their LWOP, if they do not come into compliance with the COH Order by the end of that ultimate period, they will be deemed to have voluntarily resigned.  Id.  DOE employees had through October 29, 2021 to select the separation option provided by the Impact Arbitration Decision, and through November 30, 2021 to select to extend their LWOP with health benefits.  In accordance with the Impact Arbitration Decision, those who did not avail themselves of either of these options were notified that they would be terminated.  Id.  In total, 15 Plaintiffs availed themselves of the extended LWOP or separation options.  See Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

Thus, any DOE employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal, or could have voluntarily separated from the DOE **or** extended their LWOP with health benefits.  After this notice was given, Plaintiffs certainly could have – and in the case of some Plaintiffs did -- sought relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy.  Plaintiffs Maniscalco, Giammarino, Loiacono and Salas availed themselves of this remedy in advance of their terminations.

In addition to the notice provided in October, on January 31, 2022, non-compliant DOE employees received **another** notification that they would be terminated effective February 11, 2022 due to their failure to comply with the COH Order.  See Dkt Nos. 76-7 at Exhibits A-1

18

through A-4.  This January 31, 2022 notice also provided the recipients with the opportunity to advise DOE if they were receiving the notification in error in advance of the termination date.  <u>See id.</u>  Thus, it is undisputed that DOE Defendants have satisfied the notice requirement.

The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required." <u>Ezekwo v. N.Y.C. Health & Hosps. Corp.</u>, 940 F.2d 775, 786 (2d Cir. 1991).

In examining this exact issue, the Court in <u>Marciano</u> held that "[i]n order to satisfy the constitutional minimum, the predeprivation proceedings 'need not be elaborate.'" <u>Marciano</u>, 2022 U.S. Dist. LEXIS 41151, at *27-28 <u>quoting</u> <u>O'Connor v. Pierson</u>, 426 F.3d 187, 198 (2d Cir. 2005).  In <u>Marciano</u>, the plaintiff – an NYPD detective – was provided notice of the requirement to be vaccinated (or to seek an accommodation) and "was given the opportunity to be heard as to the application of the [City] Order against him by seeking an accommodation through the appropriate channels." <u>Id.</u>  The Court held that these "informal procedures" satisfied constitutional due process and therefore dismissed the plaintiff's entire complaint, including his procedural due process claim.  <u>Id.</u> ("Marciano fails to articulate how this process falls below the constitutional floor; and, given the case law making clear that 'informal procedures,' as opposed to a 'formal hearing,' are sufficient prior to an employee's termination, <u>see</u> <u>Ezekwo v. N.Y.C. Health & Hosps. Corp.</u>, 940 F.2d 775, 786 (2d Cir. 1991), it appears that he was afforded constitutionally adequate process.").  This holding, again, reiterates the Court's prior holdings in this case and in <u>Garland</u> which found that the above-described notice and opportunities to be heard provided "was sufficient

19

pre-deprivation notice and opportunity to respond." See Dkt. No. 89 at 15; Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18.

Similarly, in the Maniscalco Art. 78 Decision, regarding the petitioners' due process claims, the Court first found that the petitioners had the option to seek a reasonable accommodation from the vaccination mandate. Id. To the extent they did not seek an accommodation, or an accommodation request was denied, the petitioners then "had three choices:" (1) voluntarily separate and maintain health benefits; (2) extend their LWOP and maintain their health benefits; or (3) "do nothing" but risk that they "could be unilaterally separated from the DOE beginning on December 1, 2021." Id. The Court held that the petitioners "had ample notice of the consequences of any decision they made. All petitioners decided to make no decision at all." Id. The Court held that this was constitutionally sufficient notice. Id.

Regarding an opportunity to be heard, the Court in the Maniscalco Art. 78 Decision, held that the reasonable accommodation procedures, including the appeals process for denials of accommodation requests, along with the leave and separation options sufficed as opportunities to be heard because such opportunities "can also be procedure[s] that permit[] a party to appeal a decision or to elect a course of action." See id. at 10 citing Garland 2021 U.S. Dist. LEXIS 233142, at *17-18.

In sum, Plaintiffs were all afforded an opportunity to be heard via an accommodation request and via the separation or extended LWOP process. Notably, **76 of the 91** Plaintiffs herein availed themselves of either the above-described reasonable accommodation procedures and/or the extended leave and separation options. See Letter from Austin Graff, dated January 3, 2022, Dkt. No. 46.

That Plaintiffs may not like these processes, and – in very limited circumstances - may have chosen not to avail themselves of these processes, does not change the fact that these processes were available to them. See Garland, 2021 U.S. Dist. LEXIS 233142, at *17-18 ("Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766 (2d Cir. 2021); see also Maniscalco Art. 78 Decision at 10 (the petitioners decision not to avail themselves of any of the processes available to them "does not mean petitioners were denied due process.").

To the extent Plaintiffs contend that due process requires an adversarial and/or evidentiary hearing to be held, such contention is unsupported. Ezekwo and, recently, Marciano and the Maniscalco Art. 78 Decision, make clear that an "opportunity to be heard" does not equate to a "hearing." Ezekwo, 940 F.2d at 786; see also Marciano, 2022 U.S. Dist. LEXIS 41151, at *27-28; Maniscalco Art. 78 Decision ("An opportunity to be heard does not equate to a hearing")(internal quotations omitted). This is particularly true when there are no factual disputes that require resolution via a hearing. This is precisely the point of the Supreme Court's teaching that "due process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334 (emphasis added).

For example, in Moogan, it was undisputed that the plaintiff failed to maintain a qualification of employment; namely, his EMT certification. See Moogan, 8 A.D.3d at 69. Because of that, the Court held that there was "no factual issue to be determined at a hearing" and

therefore neither "§ 75 or federal constitutional due process" required a hearing before his termination.  Id.  Here, the same is true.

Plaintiffs further contend that they are entitled to hearings pursuant to their respective collective bargaining agreements.  This argument again conflates the constitutional minimum required by the due process clause with contractual agreements that do not implicate the New York or United States Constitutions.

Further, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." Hellenic Am. Neighborhood Action Comm, 101 F.3d at 880.  Here, the post-deprivation procedures available to Plaintiffs clearly satisfy the constitutional minimum.  As indicated above, for the Plaintiffs who sought exemptions from the vaccination requirement, the Impact Arbitration Decision further provided an additional review layer, allowing employees to challenge the denial of their accommodation to a designated panel of arbitrators, whereby an assigned arbitrator reviewed their appeal and issued a final decision.  Additionally, while an appeal was pending, the employee remained on payroll pending the appeal.  In the event an appeal was denied, the employee would be placed on LWOP.  If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same school within a week of providing proof of vaccination to DOE.  These post-deprivation processes sufficiently satisfy the constitutional minimum for due process.  See Dkt. No. 89 at 15; Garland, 2021 U.S. Dist. LEXIS 233142, at *16; Marciano, 2022 U.S. Dist. LEXIS 41151, at *27-28.

Finally, the availability of an Article 78 review further precludes any due process claims.  Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge

22

**JA-1611**

[the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014)("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).

　　　　Given all the lengthy notice and repeated opportunities to be heard that Plaintiffs have been provided, and the availability of Article 78 proceedings, Plaintiffs have been afforded all constitutional process due to them.  Therefore, Plaintiffs' due process claims must be dismissed.

### POINT III

### PLAINTIFFS' CONSPIRACY CLAIMS MUST BE DISMISSED

　　　　To state a viable § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." McCray v. Patrolman N.A. Caparco, 761 F. App'x 27, 31 (2d Cir. 2019) (quotations omitted).  Plaintiff "must [plead] some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).  "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Dwares v. N.Y.C., 985 F.2d 94, 100 (2d Cir. 1993).

　　　　Here, the Amended Complaint contains one boilerplate allegation that DOE Defendants "in a conspiracy" with each of the other defendants "have engaged in a course of action

**JA-1612**

and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983." Beyond this recitation of the standard applicable to conspiracy claims, no factual allegations are contained in the Amended Complaint regarding the conspiracy claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hogan v. Fischer, 738 F.3d 509, 514 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (internal quotation omitted). Thus, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Here, beyond a recitation of the standard applicable to conspiracy claims, no factual allegations are contained in the Amended Complaint regarding the conspiracy claim. As such, this claim must be dismissed.

## POINT IV

## PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Because all of Plaintiffs' individual claims for damages and declaratory relief must be dismissed, Plaintiffs' class claims must be dismissed as well. See, e.g., In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 122 (S.D.N.Y. 2002)("Courts in this circuit have repeatedly held that,

24

**JA-1613**

'[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim . . . . If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.'") (citation omitted).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion to dismiss the Complaint in its entirety be granted, that judgment in favor of defendants be entered, and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           April 4, 2022

           **HON. SYLVIA O. HINDS-RADIX**
           Corporation Counsel of the
             City of New York
           Attorney for Defendants DOE and Porter
           100 Church Street, Room 2-100
           New York, New York 10007
           212-356-4015


           By: _____/s/_____
               Andrea O`Connor
               Assistant Corporation Counsel

25

**JA-1614**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
NICOLE BROECKER, *et al.*                                     :
                                        *Plaintiffs,*         :
                                                              :
                    -against-                                 :        Case No.
                                                              :        1:21-cv-6387-KAM-LB
NEW YORK CITY DEPARTMENT OF EDUCATION,                        :
*et al.,*                                                     :
                                        *Defendants.*         :
                                                              :
                                                              :
-------------------------------------------------------------------- x

## NOTICE OF MOTION TO DISMISS OF DC 37 DEFENDANTS

    *PLEASE TAKE NOTICE* that Defendants District Council 37, AFSCME, AFL-

CIO; Local 372 of DC 37; Local 1251 of DC 37; DC 37 Executive Director Henry Garrido;

Local 372 President Shaun Francois; and Local 1251 President Francine Francis, upon the

accompanying memorandum of law, move the Court for an order, pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6), dismissing the claims against them in the January 10,

2022 amended complaint [Docket Entry #47] and granting such other relief as is necessary and

proper.  The return date of the motion will be set by the Court.

    Respectfully submitted,

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

1

9793383.1

**JA-1615**

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be served this 4th day of April 2022 by

email on:

Austin R. Graff
The Scher Law Firm, LLP
One Old Country Road, Suite 385
Carle Place, NY 11514
Email: agraff@scherlawfirm.com
*Attorney for Plaintiffs*

Andrea Mary O'Connor
New York City Law Department
100 Church Street, Room 2-104
New York, NY 10007
Email: aoconnor@law.nyc.gov
*Attorneys for Defendants*
*New York City Dept. of Education and Meisha Porter*

Ivan A Mendez , Jr.
New York City Law Department
100 Church St, Rm 2-185
New York, NY 10007
Email: imendez@law.nyc.gov
*Attorney for Defendants*
*New York City Dept. of Education and Meisha Porter*

Alan M. Klinger
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038
Email: aklinger@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and*
*Administrators*

2

Arthur J Herskowitz
Stroock & Stroock & Lavan
180 Maiden Lane, Office 32109
New York, NY 10038
Email: aherskowitz@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and*
*Administrators*

Dina Kolker
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Email: dkolker@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and*
*Administrators*

Gregg D. Weinstock
Vigorito, Barker, Patterson, Nichols & Porter LLP
300 Garden City Plaza, Ste 100
Garden City, NY 11530
Email: g.weinstock@vbpnplaw.com
*Attorney for Defendants*
*Martin F. Scheinman, Scheinman Arbitration and Mediation*
*Services, and Scheinman Arbitration and Mediation Services, LLC*

Angela Rose Bonica
Vigorito, Barker, Porter, Patterson
300 Garden City Plaza, Suite 308
Garden City, NY 11530
Email: a.bonica@vbpnplaw.com
*Attorney for Defendants*
*Martin F. Scheinman, Scheinman Arbitration and Mediation*
*Services and Scheinman Arbitration and Mediation Services, LLC*

Karolina Maria Wiaderna
Vigorito, Barker, Patterson, Nichols & Porter, LLP
300 Garden City Plaza, Ste 100
Garden City, NY 11530
Email: k.wiaderna@vbpnplaw.com
*Attorney for Martin F. Scheinman, Scheinman Arbitration and*
*Mediation Services, and Scheinman Arbitration and Mediation*
*Services, LLC*

3

JA-1617

Peter D. DeChiara

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

NICOLE BROECKER, *et al.*

     *Plaintiffs,*

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION, *et al.,*

     *Defendants.*



-------------------------------------------------------------------- x

Case No.
1:21-cv-6387-KAM-LB


**MEMORANDUM OF LAW OF DC 37 DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS**


Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

9804524.2

## **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 3

    The Parties .......................................................................................................................... 3

    The Vaccine Mandate ........................................................................................................ 3

    The DC 37 Agreement ....................................................................................................... 4

    Plaintiffs' Suit .................................................................................................................... 5

    The Amended Complaint ................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

I.     Standard Governing Motion to Dismiss ............................................................................ 7

II.    The Section 1983 Claims Against the DC 37 Defendants in Counts 9 and 10 Fail
      as a Matter of Law ............................................................................................................. 7

      A.    The Court Has Held that DOE Did Not Violate Plaintiffs' Constitutional
            Rights by Placing Them on Unpaid Leave .......................................................... 8

      B.    The Amended Complaint Alleges No Facts Showing that the DC 37
            Defendants Acted Under Color of State Law ....................................................... 9

      C.    The Amended Complaint Fails to Allege Facts Showing that the DC 37
            Defendants Themselves Violated Plaintiffs' Constitutional Rights ................... 14

III.   The Section 1983 Claims Against Local 1251 and Francis Fail as a Matter of Law
      Since the Amended Complaint Alleges No Facts Showing Any Acts or Omissions
      by Them ............................................................................................................................ 16

IV.   The Request for a Declaratory Judgment in Count 4 Fails Since DC 37 Had
      Statutory Authority To Enter into the DC 37 Agreement ................................................ 16

CONCLUSION ........................................................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................................ 18

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abrahamson v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*,
    No. 01-cv-10859 (CM), 2002 WL 1354711 (S.D.N.Y. June 21, 2002) ..................................10

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
    499 U.S. 65 (1991) ....................................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................7, 15

*Callaghan v. United Fed'n of Teachers*,
    133 A.D.3d 412 (App. Div. 2015) ..............................................................................................9

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002) ...........................................................................................9, 10, 11

*Civil Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters v. City of New York*,
    64 N.Y.2d 188 (1984) ..............................................................................................................12

*Civil Serv. Employees Ass'n v. New York State (Unified Court System)*,
    73 Misc.3d 874 (N.Y. Sup. Ct. 2021) .....................................................................................14

*Darby v. Greeman*,
    14 F.4th 124 (2d Cir. 2021) ........................................................................................................7

*Dolce v. Bayport-Blue Point Union Free School Dist.*,
    286 A.D.2d 316 (App. Div. 2001) ...........................................................................................12

*Eaddy v. Jemiola*,
    No. 3:11-cv-1081 (MPS), 2013 WL 441077 (D. Conn. Feb. 5, 2013)........................9, 10, 11

*Kasper v. City of Middletown*,
    352 F.Supp.2d 216 (D. Conn. 2005).................................................................................10, 11

*McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen &*
    *Helpers of Am.*,
    107 F.Supp.2d 311 (S.D.N.Y. 2000)..........................................................................10, 11, 12

*McIntyre v. Longwood Cent. School Dist.*,
    658 F.Supp.2d 400 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 44 (2d Cir. 2010) ....................10

*New York City Municipal Labor Comm. et al. v. City of New York, et al.*,
    Index No. 158368/2021 (Sup. Ct., New York County) ..............................................................4

*Polk County v. Dodson*,
    454 U.S. 312 (1981)..............................................................................................10, 11, 12

*Rodriguez-Rivera v. City of New York*,
    No. 05-cv-10897 (LAP), 2007 WL 766195 (S.D.N.Y. Mar. 12, 2007)....................................9

*SAM Party of New York v. Kosinski*,
    No. 20-cv-323 (JGK), 2021 WL 6061301 (S.D.N.Y. Dec. 22, 2021)......................................8

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944)........................................................................................................12

*Tangreti v. Bachman*,
    983 F.3d 609 (2d Cir. 2020)...........................................................................................15

*Victory v. Pataki*,
    814 F.3d 47 (2d Cir. 2016).............................................................................................15

**Statutes**

42 U.S.C. §1983.....................................................................................................2, 7, 9, 16

N.Y. Civ. Serv. L. §75.................................................................................................................6

N.Y. Civ. Serv. L. §204(1).......................................................................................................16

N.Y. Civ. Serv. L. §209-a(2)(c)..............................................................................................12

N.Y. Education L. §3020............................................................................................................6

N.Y. C.P.L.R. §217(2)(a)..........................................................................................................12

iii

Defendants District Council 37, AFSCME, AFL-CIO ("DC 37"); Local 372 of DC 37 ("Local 372"); Local 1251 of DC 37 ("Local 1251"); DC 37 Executive Director Henry Garrido ("Garrido"); Local 372 President Shaun Francois ("Francois"); and Local 1251 President Francine Francis ("Francis") (together, the "DC 37 Defendants") submit this memorandum of law in support of their motion to dismiss the claims against them in the January 10, 2022 Amended Complaint ("Am. Compl.") [Docket Entry #47].

## PRELIMINARY STATEMENT

Many DC 37 members strongly believe that the COVID vaccine protects them in the workplace from a highly transmissible virus that has killed hundreds of thousands of Americans and that struck New York City with particular virulence early in the pandemic. Yet, when the city in August 2021 enacted a vaccine mandate for employees of the Department of Education ("DOE"), DC 37 challenged it in court, to protect the interests of those of its members who opposed the mandate. After a New York state court rejected that challenge, DC 37 bargained with DOE, to protect the jobs of those members who refused to comply with the mandate.

In those negotiations, DC 37 and DOE worked out a procedure for employees to seek medical or religious exemptions to the mandate. DOE also agreed to forestall for months the termination of non-compliant employees, agreeing that they would only be placed on unpaid leave. According to the deal that DC 37 and DOE struck, those on leave would continue to enjoy health benefits. The agreement also gave non-compliant employees the right to return to work if they changed their mind and got vaccinated. Moreover, the agreement ensured that the unpaid leave would not be considered discipline, so as not to tarnish a non-compliant employee's record.

In this action, employees whom DOE placed on unpaid leave for refusing to comply with the vaccine mandate claim that DC 37 violated their constitutional rights by

1

entering into the agreement.  They contend that the agreement violated their constitutional rights because it did not require DOE to give them a hearing before placing them on unpaid leave.

Plaintiffs' claims against the DC 37 Defendants fail, and should be dismissed, because this Court has already held, in two prior rulings in this case, that DOE's placing Plaintiffs on unpaid leave without first giving them a hearing does *not* violate their constitutional rights.  Nothing in Plaintiffs' Amended Complaint gives the Court reason to revisit those prior rulings.  Since the Court has already held that DOE did not violate Plaintiffs' constitutional rights by placing them on unpaid leave, it would have no grounds to conclude that DC 37 violated Plaintiffs' rights by entering into an agreement allowing such employer action.

Plaintiffs' claims against the DC 37 Defendants, asserted under 42 U.S.C. §1983 ("Section 1983"), also fail because Plaintiffs fail to plead facts showing that the DC 37 Defendants are state actors or were otherwise acting "under color of" state law, as the statute requires.  Plaintiffs allege only that the DC 37 Defendants entered into a negotiated agreement with DOE.  The law is well established that a negotiated agreement between a union and a governmental employer does not constitute a conspiracy with a state actor for Section 1983 purposes.  Moreover, Plaintiffs' assertion that DC 37 colluded with DOE to sacrifice their rights ignores the significant protections that the agreement provided to non-compliant employees.  In any event, Plaintiffs' unhappiness with the deal does not make it a Section 1983 conspiracy, or otherwise give them a viable Section 1983 cause of action.

Employees aggrieved by their union's conduct do have a legal mechanism for seeking relief:  they can assert a claim for breach of the duty of fair representation ("DFR").  Here, however, Plaintiffs have chosen not to pursue a DFR claim against the DC 37 Defendants, but rest their case entirely on their legally defective Section 1983 claims.

2

Plaintiffs' Section 1983 claims against the DC 37 Defendants also fail for lack of causation. The agreement was not self-executing. It was DOE, not the DC 37 Defendants, who put the Plaintiffs on unpaid leave. Thus, if any party violated their constitutional rights, it was DOE, not the DC 37 Defendants.

Finally, the claims against Local 1251 and Francis should be dismissed since they were not party to the agreement struck by DC 37, and because Plaintiffs allege no facts showing that they had any other involvement in the events giving rise to this case.

For the foregoing reasons, discussed further below, the Court should grant the DC 37 Defendants' motion and dismiss with prejudice the claims against them.

## **BACKGROUND**

For purposes of this motion only, the DC 37 Defendants assume the truth of the non-conclusory allegations in the Amended Complaint.

### The Parties

DOE is a state actor. *See* Am. Compl. ¶121. Plaintiffs are DOE employees. *See id.* ¶¶119-20. DC 37 is a union and Garrido is its Executive Director. *See id.* ¶¶128-29. Two DC 37 locals represent DOE employees: Local 372 and Local 1251. *See id.* ¶¶128, 130, 132. Francois is Local 372's President and Francis is Local 1251's President. *See id.* ¶¶131, 133. The Amended Complaint does not allege that any of the DC 37 Defendants are state actors.

### The Vaccine Mandate

On August 24, 2021, the New York City Commissioner of Health issued an order ("Vaccine Mandate") requiring DOE employees, by September 27, 2021, to provide proof that they had received a COVID-19 vaccine. *See* Am. Compl. ¶142 & Exhibit G [Docket Entry #47-7], at 2. The order explained that "vaccination for individuals working in school settings,

3

including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety." *Id.*, Exhibit G, at 2.

On September 9, 2021, Garrido and others sued in New York State court, seeking a preliminary injunction to block implementation of the Vaccine Mandate. *See New York City Municipal Labor Comm. et al. v. City of New York, et al.*, Index No. 158368/2021 (Sup. Ct., New York County), NY State Court Docket Entry No. 36 (Sept. 22, 2021), attached hereto as Exhibit A, at 2.[1]  They argued that the Vaccine Mandate violated the substantive due process rights of DOE employees, by threatening their personal autonomy and their right to reject medical treatment. *See id.* at 4.  The state court denied the requested injunction, finding, among other things, that a vaccine requirement fell within the scope of the government's police powers. *See id.* at 4-5.

The DC 37 Agreement

After the state court's ruling sustaining the Vaccine Mandate, DC 37 negotiated with DOE over its implementation. *See* Docket Entry #89, at 24.  On or about October 3, 2021, DC 37 and Local 372 entered into a negotiated agreement ("the DC 37 Agreement") with DOE. *See* Am. Compl. ¶¶164-65 & Exhibit M [Docket Entry #47-13].  The DC 37 Agreement provided a procedure by which DOE employees could seek a medical or religious exemption from the Vaccine Mandate. *See id.*, Exhibit M, at 1-4 (§1).  The agreement forestalled until December 1, 2021 any termination of non-compliant employees; before that date, DOE would only place non-compliant employees on unpaid leave. *See* Am. Compl., Exhibit M, at 4 (§II(A)), at 6 (§III(C)).  Moreover, the agreement provided that such leave would be considered non-

---

[1]  The Court may take judicial notice of the order issued by the New York court, and so may consider it on this motion to dismiss.

disciplinary, and that those on leave would continue to enjoy health benefits.  *See id.*, Exhibit M, at 4-5 (§II(A), (C)).  The DC 37 Agreement also gave non-compliant employees the opportunity to return to active duty if they changed their minds and received the vaccine before November 30, 2021.  *See id.*, Exhibit M, at 5 (§II(D)).  In addition, the agreement gave non-compliant employees the option to extend their unpaid leave until September 5, 2022, during which time they would continue to receive health benefits and continue to have the right to return to active duty if they decided to get vaccinated, so long as they agreed to voluntarily resign by September 5, 2022 if they remained non-compliant.  *See id.*, Exhibit M, at 6 (§III(B)).

Garrido signed the agreement for DC 37 and Francois signed it for Local 372. *See id.*, Exhibit M, at 7.  Local 1251 was not a party to the DC 37 Agreement and Francis did not sign it.  *See id.*, Exhibit M.

Plaintiffs' Suit

All but one of the Plaintiffs have refused to take the COVID-19 vaccine, and have been placed by DOE on leave without pay.  Am. Compl. ¶¶117-18.  One of the Plaintiffs was placed on leave without pay but later received the vaccine.  *See id.* ¶117 & n.1.

Plaintiffs filed suit in this Court on November 17, 2021, against DOE and the United Federation of Teachers ("UFT"), the union that represents teachers and certain other categories of DOE employees.  *See* Docket Entry #1.  The same day, Plaintiffs filed a motion for a temporary restraining order, requesting that the Court enjoin DOE from placing them on leave without pay.  *See* Docket Entry #2.  On November 24, 2021, the Court denied their injunction request.  *See* Docket Entry #33.  The Court rejected Plaintiffs' claim that the leave without pay violated their constitutional right to due process, noting that "Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination mandate through the procedures established in the CBA's

governing the terms of Plaintiffs' employment … and undisturbed, well-established state court procedures." *Id.* at 22.

On February 4, 2022, after having filed their Amended Complaint adding the DC 37 Defendants to the case, Plaintiffs filed a request for a preliminary injunction to prevent DOE from terminating those who had not opted to remain on leave without pay through September 2022. *See* Docket Entry #72. By order dated February 11, 2022, the Court denied Plaintiffs' second preliminary injunction request. *See* Docket Entry #89. The Court reaffirmed its earlier determination that the due process protections available to the Plaintiffs were adequate. *See id.* at 15. The Court also found that "the Vaccination Mandate is a lawful condition of employment," *id.* at 21, implemented "during a global pandemic causing risks of severe illness and death to the unvaccinated." *Id.* at 23-24. The Court specifically rejected Plaintiffs' claim that DOE implemented the Vaccine Mandate in contravention of New York Civil Service Law requiring it to bargain over terms of employment, finding that "[c]ontrary to Plaintiffs' argument, after reaching impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the [Vaccine Mandate]." *Id.* at 24. The Court also rejected Plaintiffs' argument that their termination would violate New York laws requiring certain procedures prior to the imposition of discipline on DOE employees. The Court concluded that Plaintiffs' termination would not be disciplinary, but rather would be a separation resulting from "their failure to avail themselves of existing processes or comply with a lawful job condition." *Id.* at 31.

<u>The Amended Complaint</u>

In their January 10, 2022 Amended Complaint, Plaintiffs claim that they were entitled, before being placed on unpaid leave by DOE, to a hearing under either New York Education Law §3020, New York Civil Service Law §75, or their collective bargaining agreement. *See* Am. Compl. ¶¶273-75.

6

Plaintiffs assert three counts relevant to the DC 37 Defendants.  In Count 4, they request an order declaring that the DC 37 Agreement "was entered into without any contractual authority," and therefore that DOE's placing them on leave without pay violated their constitutional rights.  Am. Compl. ¶304.  In Count 9, they claim under Section 1983 that the DC 37 Defendants "conspired with" DOE by entering into the DC 37 Agreement.  *Id.* ¶¶403-12, 414-19.  They assert that, as a result of the DC 37 Agreement, DOE denied their due process rights by placing them on unpaid leave without first providing them a hearing before an impartial hearing officer.  *See id.* ¶430.  In Count 10, Plaintiffs claim, without alleging any supporting facts, that Garrido, Francois and Francis encouraged DOE to violate their constitutional rights, failed to stop DOE from violating their constitutional rights, and participated in or condoned the violation of their constitutional rights.  *See id.* ¶¶438-42.  As we explain below, these claims against the DC 37 Defendants all fail as a matter of law.

## ARGUMENT

**I.      STANDARD GOVERNING MOTION TO DISMISS**

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a plausible claim for relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Darby v. Greeman*, 14 F.4th 124, 127 (2d Cir. 2021).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678; *Darby*, 14 F.4th at 127.

**II.     THE SECTION 1983 CLAIMS AGAINST THE DC 37 DEFENDANTS IN COUNTS 9 AND 10 FAIL AS A MATTER OF LAW**

Plaintiffs' Section 1983 claims against the DC 37 Defendants fail as a matter of law for multiple reasons, as explained below.

7

**JA-1629**

A.      **The Court Has Held that DOE Did Not Violate Plaintiffs' Constitutional Rights by Placing Them on Unpaid Leave**

Plaintiffs claim in Counts 9 and 10 that the DC 37 Agreement violated their constitutional rights by allowing DOE to place them on unpaid leave. *See* Am. Compl. ¶¶403-08; *see also id.* ¶442. The claims fail because the Court has already held, in its orders denying Plaintiffs' preliminary injunction motions, that DOE's placing Plaintiffs on unpaid leave did *not* violate their constitutional rights. *See* Docket Entry #33, at 22; Docket Entry #89, at 15, 23-24, 31.

While the Court's preliminary injunction rulings may not, as a technical matter, establish the law of the case, no reason exists for the Court on this motion to reach a conclusion different from the one it reached in twice denying Plaintiffs' preliminary injunction motions. *See, e.g., SAM Party of New York v. Kosinski*, No. 20-cv-323 (JGK), 2021 WL 6061301, at *7 (S.D.N.Y. Dec. 22, 2021) (court "reaches the same conclusions" because the facts remain "substantially unchanged from the time of the Court's preliminary injunction decisions"). The Amended Complaint alleges no facts that would require the Court to reconsider its conclusion that DOE did not violate Plaintiffs' constitutional rights. For example, the pleading alleges no facts that would require the Court to reconsider its determination that Plaintiffs had access to adequate procedures to challenge DOE's action, either in their collective bargaining agreements or in state law. *See* Docket Entry #33, at 22. Nor does anything in the Amended Complaint give the Court cause to revisit its determination that the Vaccine Mandate was a lawful job qualification and therefore that DOE's removing non-compliant employees from active duty was not a form of discipline. *See* Docket Entry #89, at 21, 31. Accordingly, the Court's two

8

unequivocal rulings that DOE's action did not violate Plaintiffs' rights defeat Plaintiffs' claims

in Counts 9 and 10 that the DC 37 Defendants acted unlawfully by allowing DOE's action.[2]

**B.**     **The Amended Complaint Alleges No Facts Showing that the DC 37 Defendants Acted Under Color of State Law**

Even if the Court reconsidered its prior rulings, the Section 1983 claims against

the DC 37 Defendants in Counts 9 and 10 would still fail as a matter of law, since the Amended

Complaint alleges no facts showing that the DC 37 Defendants acted "under color of" state law,

as the statute requires.  *See* 42 U.S.C. §1983.

Plaintiffs do not contend that the DC 37 Defendants are state actors, nor would

there be any basis for such a contention.  *See Ciambriello v. County of Nassau*, 292 F.3d 307,

323 (2d Cir. 2002) (unions, including those representing public employees, "generally are not

state actors," and plaintiff "does not argue otherwise"); *Callaghan v. United Fed'n of Teachers*,

133 A.D.3d 412, 412 (App. Div. 2015) ("Courts in this State have consistently held that unions,

even those representing public employees … are not state actors").  Rather, to try to establish

that the DC 37 Defendants acted under color of state law, Plaintiffs allege that they conspired

with DOE, by entering into the DC 37 Agreement.  *See* Am. Compl. ¶¶194-99; *Rodriguez-Rivera*

*v. City of New York*, No. 05-cv-10897 (LAP), 2007 WL 766195, at *3 (S.D.N.Y. Mar. 12, 2007)

(union can be liable under Section 1983 if it "conspired with a state official to deprive her of a

constitutional right").

However, it is well-established that a union does not conspire with a public-sector

employer for Section 1983 purposes simply by entering into a negotiated agreement with the

employer.  *See Eaddy v. Jemiola*, No. 3:11-cv-1081 (MPS), 2013 WL 441077, at *3 (D. Conn.

---

[2] The DC 37 Defendants do not necessarily endorse the Court's determinations regarding DOE's actions, but argue simply that those determinations defeat Plaintiffs' claims.

Feb. 5, 2013) (allegation that union defendants negotiated agreement with employer "is not enough to plead that [they] conspired"); *Abrahamson v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 01-cv-10859 (CM), 2002 WL 1354711, at *11 (S.D.N.Y. June 21, 2002) ("The Union did sign a collective bargaining agreement with a public entity, the school district, however, this is not sufficient to establish state action on the part of a labor organization"); *McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*, 107 F.Supp.2d 311, 317 (S.D.N.Y. 2000) ("Mere negotiation in the course of completing a collective bargaining agreement does not rise to the level of an improper conspiracy."); *accord McIntyre v. Longwood Cent. School Dist.*, 658 F.Supp.2d 400, 424 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 44 (2d Cir. 2010). A negotiated union-management agreement is not a Section 1983 conspiracy because the union has an adversarial role in relation to the employer. *See Kasper v. City of Middletown*, 352 F.Supp.2d 216, 236 (D. Conn. 2005); *McGovern*, 107 F.Supp.2d at 317; *McIntyre*, 658 F.Supp.2d at 424.

Plaintiffs argue that they are entitled to discovery to see whether the DC 37 Defendants in fact acted in a manner adversarial to DOE in the negotiations. *See* Docket Entry #92, at 2. That argument fails. A Section 1983 claim fails as a matter of law, and may be dismissed without discovery, where, as here, the pleading alleges nothing more than an agreement between the union and employer. *See, e.g., Eaddy*, 2013 WL 441077, at *3 (dismissing Section 1983 claim against union defendants on motion to dismiss, when plaintiff alleged no more than negotiated agreement with employer); *see also Ciambriello*, 292 F.3d at 324 (affirming dismissal, on a motion to dismiss, of Section 1983 claim against union when plaintiff failed to adequately allege conspiracy); *Polk County v. Dodson*, 454 U.S. 312, 320

10

(1981) (sustaining dismissal, on motion to dismiss, of Section 1983 conspiracy claim against

public defender, based on adversarial role public defender plays in criminal proceedings).

      The particular circumstances of the negotiation, or the particular terms negotiated,

are not relevant to the Section 1983 analysis.  They are not relevant because it is the adversarial

nature of the union's role that defeats the conspiracy claim, and that adversarial role stems from

the union's position as representative of the employees.  *See Kasper*, 352 F.Supp.2d at 236

("When a union represents city employees in contract negotiations … it is considered to be

acting adversely to the city government and not acting under color of state law"); *McGovern*, 107

F.Supp.2d at 317 ("the Union here represents county employees, and *thus must be* considered to

be an adversary of the county government") (emphasis added); *see also Ciambriello*, 292 F.3d at

324 (labor arbitration "placed [the union] and the County in adversarial positions"); *see*

*generally Polk County*, 454 U.S. at 325 (concluding that, for purposes of Section 1983 analysis,

public defender had an adversarial role, not based on particularities of the case, but simply based

on her "functions as counsel to defendant").  There is no question here that DC 37 is the

collective bargaining representative of the DOE employees on whose behalf it made the DC 37

Agreement.  For Section 1983 purposes, it "thus must be considered," *McGovern*, 107 F.Supp.2d

at 317, to have functioned in an adversarial role.

      Plaintiffs argue that DC 37 could not have acted in an adversarial role because,

they contend, the DC 37 Agreement sacrificed their rights by allowing DOE to place them on

leave without pay.  That argument cannot salvage Plaintiffs' Section 1983 claims because, as

explained, the terms negotiated cannot negate the adversarial nature of the union's role.  *See*

*Eaddy*, 2013 WL 441077, at *4 ("The allegation that, as a result of negotiations, an agreement

was reached that did not include the adoption of a policy that, according to Plaintiffs, would have

11

**JA-1633**

operated to prevent the harm they allegedly incurred, is not enough to plead that the Union

Defendants conspired with their adversary"); *see also Polk County*, 454 U.S. at 325 (rejecting

Section 1983 claim that public defender acted under color of state law, despite plaintiff's

allegation that public defender failed to represent him adequately).

      A legal mechanism does exist for employees challenging an agreement that they

believe their union negotiated against their best interests:  the duty of fair representation

("DFR").  *See, e.g., Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 203 (1944); *Air Line Pilots*

*Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *see generally McGovern*, 107 F.Supp.2d at 319

(noting that New York law recognizes that public-sector unions have a duty of fair

representation); *Civil Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters v. City of New York*, 64

N.Y.2d 188 (1984) (considering claim that union violated DFR by allegedly negotiating an

agreement contrary to their interests); N.Y. Civ. Serv. L. §209-a(2)(c).  Plaintiffs, however, have

opted not to assert a DFR claim against the DC 37 Defendants.  Instead, they are trying to use

DFR contentions to make out a Section 1983 claim.  That does not work.  The two legal

doctrines are different.  In particular, Section 1983 requires a showing -- that defendants acted

under color of state law -- that the Amended Complaint does not meet.[3]

      Even though Plaintiffs' Section 1983 claims fail regardless of the terms of the DC

37 Agreement, we note that Plaintiffs are simply wrong in describing the agreement as a

capitulation by their union.  From the start, DC 37 took an adversarial approach to the Vaccine

---

[3] Unfortunately for Plaintiffs, it would be too late for them to assert a DFR claim against the DC 37 Defendants
in this case.  The applicable four-month statute of limitations would bar a DFR challenge to the October 3, 2021 DC
37 Agreement.  *See* N.Y. C.P.L.R. §217(2)(a); *Dolce v. Bayport-Blue Point Union Free School Dist.*, 286 A.D.2d
316, 316 (App. Div. 2001).  The DC 37 Defendants reserve the right to raise any other defenses to a DFR claim,
should Plaintiffs attempt to assert such a claim.

Case 23-655, Document 76, 06/05/2023, 3525010, Page282 of 302

Mandate, challenging it in court. *See* Exhibit A attached hereto. After the state court sustained

the Vaccine Mandate, DC 37 focused on protecting the interests of non-compliant employees,

achieving significant protections in the DC 37 Agreement. That agreement delayed until

December 1, 2021 any effort by DOE to fire employees who refused to comply, stipulating that

before that date DOE would only place them on unpaid leave. *See* Am. Compl., Exhibit M, at 4

(§II(A)), at 6 (§III(C)). Moreover, the agreement provided that such leave would be considered

non-disciplinary, and would come with the critical benefit of continued health insurance. *See id.*,

Exhibit M, at 4-5 (§II(A), (C)). The DC 37 Agreement also gave non-compliant employees the

option to return to active duty if they changed their minds and got vaccinated before November

30, 2021. *See id.*, Exhibit M, at 5 (§II(D)). It also gave them the option of extending their leave

until September 5, 2022, and with it their health benefits and their right to return to duty upon

vaccination, so long as they agreed to resign by September 5, 2022 if they remained non-

compliant. *See id.*, Exhibit M, at 6 (§III(B)). Plaintiffs' glass-half-empty perspective on the DC

37 Agreement ignores these protections achieved by DC 37 in exercising its role as their

bargaining representative.

Plaintiffs argue that DC 37 could have gone further, and simply refused to agree

to the Vaccine Mandate. They claim that such a refusal would have prevented the Vaccine

Mandate from taking effect. *See* Docket Entry #92, at 2-3 ("But-for the DC 37 Defendants'

consent to create a new condition of employment, *i.e.*, a vaccine for COVID-19, the NYCDOE

would not have had the legal authority to create such a condition of employment.") This

criticism of DC 37 for not taking a harder line in negotiations is nothing more than a DFR

argument and, as explained, a DFR argument cannot save Plaintiffs' Section 1983 claims.

In any event, even if considered from a DFR point of view, Plaintiffs' argument would fail.  Their assertion that DC 37 should have refused to agree to any terms regarding the Vaccine Mandate ignores the context in which DC 37 was operating:  much of DC 37's membership *favored* the Vaccine Mandate as a critical measure for protecting their health on the job.  By taking a balanced approach at the bargaining table, DC 37 did not abdicate its adversarial role, but fulfilled it in a manner responsive to the conflicting views of its constituents.  Plaintiffs' argument also rests on the dubious assumption that DC 37 held the power, by refusing to negotiate terms, to effectively veto a city action aimed at combatting an unprecedent public health crisis.  The reality is that, however one interprets the state's bargaining laws, new legislative action could have overridden any attempted union "veto."  Moreover, if DOE had imposed the Vaccine Mandate following a bargaining deadlock, a union would have had a slim chance of obtaining timely injunctive relief to block it.  *See Civil Serv. Employees Ass'n v. New York State (Unified Court System)*, 73 Misc.3d 874, 892-96 (N.Y. Sup. Ct. 2021) (denying unions' request for preliminary injunction to block implementation of vaccine mandate, on ground that non-compliant employees faced no irreparable harm).

Because the DC 37 Defendants are not state actors, and because Plaintiffs fail to allege facts showing that they acted under color of state law, their Section 1983 claims against the DC 37 Defendants fail as a matter of law.

C.    **The Amended Complaint Fails to Allege Facts Showing that the DC 37 Defendants Themselves Violated Plaintiffs' Constitutional Rights**

Plaintiffs' claims in Counts 9 and 10 also fail because the Amended Complaint contains no facts showing that the DC 37 Defendants *themselves* violated Plaintiffs' constitutional rights.  Vicarious liability does not exist under Section 1983; a Section 1983 plaintiff must plead that each defendant through its "own individual actions" violated the

14

Constitution.  *Iqbal*, 556 U.S. at 676; *accord Tangreti v. Bachman*, 983 F.3d 609, 616 (2d Cir. 2020); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'") (citation omitted).  Plaintiffs claim that their constitutional rights were violated when they were placed on unpaid leave without a hearing.  *See* Am. Compl. ¶274.  But it was DOE that placed Plaintiffs on unpaid leave.  *See id.* ¶188.  The DC 37 Defendants did not take that action and thus cannot be liable for it.

Plaintiffs note that personal involvement for purposes of Section 1983 can mean not just direct participation in the constitutional violation, but also "failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates."  Docket Entry #92, at 2 (*quoting Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).  None of these alternative bases for liability applies here.  The Amended Complaint contains no allegations showing that the DC 37 Defendants failed to remedy a wrong after learning of it, created a policy or custom, or committed gross negligence.

Because the Amended Complaint fails to allege facts showing that the DC 37 Defendants themselves engaged in the action that allegedly violated Plaintiffs' constitutional rights, the Section 1983 claims against them fail for that reason as well.

15

**III.   THE SECTION 1983 CLAIMS AGAINST LOCAL 1251 AND FRANCIS FAIL AS A MATTER OF LAW SINCE THE AMENDED COMPLAINT ALLEGES NO FACTS SHOWING ANY ACTS OR OMISSIONS BY THEM**

Plaintiffs' claims against Local 1251 and Francis fail since they were not party to the DC 37 Agreement. *See* Am. Compl., Exhibit M, at 7 (showing union signatories to the agreement, which do not include Local 1251 or Francis). Because Plaintiffs base their claims against Local 1251 and Francis entirely on the DC 37 Agreement, *see* Am. Compl. ¶¶407-08, their claims against them fail. Plaintiffs assert that Francis "actively agreed to violate" their rights and "had personal involvement in the deprivation" of their rights. Docket Entry #92, at 2. However, the Amended Complaint is devoid of any alleged facts showing any such conduct by Local 1251 or Francis. Accordingly, the claims against Local 1251 and Francis should be dismissed.

**IV.   THE REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 4 FAILS SINCE DC 37 HAD STATUTORY AUTHORITY TO ENTER INTO THE DC 37 AGREEMENT**

Finally, the Court should dismiss Count 4, which seeks a declaration that the DC 37 Agreement was entered into "without any contractual authority." Am. Compl. ¶304. This claim makes no sense. The parties to the DC 37 Agreement had *statutory* authority to enter into it. *See* N.Y. Civ. Serv. L. §204(1) (authorizing public employers and union representing their employees "to negotiate and enter into written agreements" determining terms and conditions of employment). Because the parties had statutory authority, any purported lack of contractual authority is irrelevant.

JA-1638

## **CONCLUSION**

For the foregoing reasons, the Court should grant the DC 37 Defendants' motion

and dismiss with prejudice all the claims against them in the Amended Complaint.

April 4, 2022

Respectfully submitted,

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

17

### CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be served this 4th day of April 2022 by

email on:

> Austin R. Graff
> The Scher Law Firm, LLP
> One Old Country Road**,** Suite 385
> Carle Place, NY 11514
> Email: agraff@scherlawfirm.com
> *Attorney for Plaintiffs*
>
> Andrea Mary O'Connor
> New York City Law Department
> 100 Church Street, Room 2-104
> New York, NY 10007
> Email: aoconnor@law.nyc.gov
> *Attorneys for Defendants*
> *New York City Dept. of Education and Meisha Porter*
>
> Ivan A Mendez , Jr.
> New York City Law Department
> 100 Church St, Rm 2-185
> New York, NY 10007
> Email: imendez@law.nyc.gov
> *Attorney for Defendants*
> *New York City Dept. of Education and Meisha Porter*
>
> Alan M. Klinger
> Stroock & Stroock & Lavan
> 180 Maiden Lane
> New York, NY 10038
> Email: aklinger@stroock.com
> *Attorney for Defendants*
> *United Federation of Teachers, Local 2, American Federation of*
> *Teachers, AFL-CIO and Council of Supervisors and*
> *Administrators*

18

Arthur J Herskowitz
Stroock & Stroock & Lavan
180 Maiden Lane, Office 32109
New York, NY 10038
Email: aherskowitz@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and*
*Administrators*

Dina Kolker
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Email: dkolker@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and*
*Administrators*

Gregg D. Weinstock
Vigorito, Barker, Patterson, Nichols & Porter LLP
300 Garden City Plaza, Ste 100
Garden City, NY 11530
Email: g.weinstock@vbpnplaw.com
*Attorney for Defendants*
*Martin F. Scheinman, Scheinman Arbitration and Mediation*
*Services, and Scheinman Arbitration and Mediation Services, LLC*

Angela Rose Bonica
Vigorito, Barker, Porter, Patterson
300 Garden City Plaza, Suite 308
Garden City, NY 11530
Email: a.bonica@vbpnplaw.com
*Attorney for Defendants*
*Martin F. Scheinman, Scheinman Arbitration and Mediation*
*Services and Scheinman Arbitration and Mediation Services, LLC*

Karolina Maria Wiaderna
Vigorito, Barker, Patterson, Nichols & Porter, LLP
300 Garden City Plaza, Ste 100
Garden City, NY 11530
Email: k.wiaderna@vbpnplaw.com
*Attorney for Martin F. Scheinman, Scheinman Arbitration and*
*Mediation Services, and Scheinman Arbitration and Mediation*
*Services, LLC*

19

Peter D. DeChiara

20

**JA-1642**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
NICOLE BROECKER, *et al.*

                   *Plaintiffs,*

             -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
*et al.,*

                   *Defendants.*


------------------------------------------------------------------ x

Case No.
1:21-cv-6387-KAM-LB


## REPLY MEMORANDUM OF LAW OF DC 37 DEFENDANTS
## IN SUPPORT OF THEIR MOTION TO DISMISS

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

9814834.5

JA-1643

## TABLE OF CONTENTS

**Page(s)**

I.    PLAINTIFFS HAVE DISMISSED THEIR CLAIMS AGAINST LOCAL 1251 AND FRANCIS ...................................................................................................... 1

II.    PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 4 FAILS SINCE DC 37 HAD STATUTORY AUTHORITY TO ENTER INTO THE DC 37 AGREEMENT ............................................................................................ 1

III.    THE SECTION 1983 CLAIMS AGAINST THE DC 37 DEFENDANTS IN COUNTS 9 AND 10 FAIL AS A MATTER OF LAW ...................................................... 3

    A.    The Court Has Already Held that DOE Did Not Violate Plaintiffs' Constitutional Rights by Placing Them on Unpaid Leave.................................... 3

    B.    The Amended Complaint Alleges No Facts Showing that the DC 37 Defendants Acted Under Color of State Law ........................................................ 5

    C.    The Amended Complaint Fails to Allege Facts Showing that the DC 37 Defendants Themselves Violated Plaintiffs' Constitutional Rights ...................... 6

CONCLUSION.................................................................................................................... 7

CERTIFICATE OF SERVICE ........................................................................................... 9

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Disabled in Action of Metropolitan New York v. Trump Int'l Hotel & Tower*,
    01-Civ-5518(MBM), 2003 WL 1751785 (S.D.N.Y. April 2, 2003) ........................................2

*Eaddy v. Jemiola*,
    No. 3:11-cv-1081 (MPS), 2013 WL 441077 (D. Conn. Feb. 5, 2013)................................5, 7

*Kamanou v. Exec. Sec'y of the Comm'n of the Econ. Community of Western*
    *African States*,
    10-Civ-7286(GBD)(JLC), 2012 WL 868700 (S.D.N.Y. March 14, 2012) ............................2

*Kasper v. Middletown*,
    352 F.Supp.2d 216 (D. Conn. 2005)..................................................................................6

*McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen &*
    *Helpers of Am.*,
    107 F.Supp.2d 311 (S.D.N.Y. 2000)..................................................................................6

*SAM Party of New York v. Kosinski*,
    No. 20-cv-323 (JGK), 2021 WL 6061301 (S.D.N.Y. Dec. 22, 2021)..................................4, 5

**Statutes**

N.Y. Civ. Serv. L. §204(1)...............................................................................................................1

N.Y. Civil Serv. Law §205(5)(d) .....................................................................................................3

The DC 37 Defendants -- DC 37, Local 372, Local 1251, Henry Garrido, Shaun Francois and Francine Francis -- submit this reply memorandum in further support of their motion to dismiss, and in reply to Plaintiffs' May 9, 2022 *Memorandum of Law in Opposition to the Defendants' Motions to Dismiss* ("Pltfs. Mem.").

## I.   PLAINTIFFS HAVE DISMISSED THEIR CLAIMS AGAINST LOCAL 1251 AND FRANCIS

In their opposition brief, Plaintiffs state that they "dismiss all claims against Local 1251 and Francis." Pltfs. Mem. 41 n.11. Accordingly, the Court should dismiss with prejudice Plaintiffs' claims against those two defendants.

## II.   PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 4 FAILS SINCE DC 37 HAD STATUTORY AUTHORITY TO ENTER INTO THE DC 37 AGREEMENT

In Count 4 of their Amended Complaint, Plaintiffs seek a declaration that the parties to the DC 37 Agreement entered into it "without any contractual authority." Am. Compl. ¶304. As the DC 37 Defendants explained in their opening brief, the parties to the DC 37 Agreement had *statutory* authority to enter into it, *see* N.Y. Civ. Serv. L. §204(1), making any purported lack of contractual authority irrelevant. *See* April 4, 2022 *Memorandum of Law of DC 37 Defendants in Support of Their Motion to Dismiss* ("DC 37 Mem.") at 16.

Plaintiffs do not dispute that the parties to the DC 37 Agreement had statutory authority to enter into it, but now argue that the agreement is "void" because DC 37 did not obtain membership ratification of the agreement. Pltfs. Mem. 20. This argument fails on multiple grounds.

First, Plaintiffs' Amended Complaint nowhere alleges that the DC 37 Agreement was subject to membership ratification, that DC 37 failed to obtain such ratification, or that the agreement is void for lack of ratification. Because Plaintiffs raise this failure-to-ratify theory for

1

the first time in their opposition brief, the Court should not consider it in evaluating the DC 37

Defendants' motion to dismiss.  *See Disabled in Action of Metropolitan New York v. Trump Int'l*

*Hotel & Tower*, 01-Civ-5518(MBM), 2003 WL 1751785, at *13 (S.D.N.Y. April 2, 2003) ("A

claim for relief may not be amended by the briefs in opposition to a motion to dismiss"; the court

is "limited to consideration of the factual allegations in the complaint") (citation and internal

quotations omitted); *accord Kamanou v. Exec. Sec'y of the Comm'n of the Econ. Community of*

*Western African States*, 10-Civ-7286(GBD)(JLC), 2012 WL 868700, at *2 n.2 (S.D.N.Y. March

14, 2012).

            In any event, this new attack on the DC 37 Agreement is meritless.  The PERB

cases that Plaintiffs cite, *see* Pltfs. Mem. 19-20, do not support Plaintiffs' contention that DC 37

had an obligation to obtain membership ratification.  Those decisions hold only that *if* parties to

an agreement have agreed that it will be subject to ratification, a union's duty to bargain in good

faith requires the union to seek such ratification.  *See Civil Serv. Employees Ass'n*, 45 PERB

¶3047, 2012 WL 6106652 (2012) ("*when parties have agreed that a tentative agreement is to be*

*ratified*, each side is affirmatively obligated to present it to their ratifying entity and to support its

approval") (emphasis added); *City of Rochester*, 7 PERB ¶3060, 1974 WL 372786 (1974)

("employee organization negotiators must work for ratification of their agreement *if ratification*

*is required*" and, if it is, failure to seek ratification violates the "duty to negotiate in good faith")

(emphasis added).  Indeed, PERB noted that "[t]he practice of ratification agreements derives

from the authority of the parties and *not from the Law.*"  *Union Springs Cent. School Teachers*

*Ass'n*, 6 PERB ¶3074, 1973 WL 340403 (1973) (emphasis added).  Because the DC 37

Agreement on its face nowhere indicates that it is subject to membership ratification, and

because the Amended Complaint nowhere alleges that the parties made it subject to ratification, the Court has no basis to hold that ratification was required.

Further, even if one assumed the counterfactual, namely, that the DC 37 Agreement said it was subject to ratification, there would no basis for the Court to declare that failure to obtain ratification rendered the agreement "void." If a union violates its duty to bargain in good faith by failing to seek ratification of an agreement that was subject to ratification, determining the remedy for such a violation rests exclusively with PERB. *See* N.Y. Civil Serv. Law §205(5)(d) (giving PERB "exclusive nondelegable jurisdiction" to remedy improper employee organization practices). Thus, this Court has no authority to void the DC 37 Agreement for purported lack of ratification. Moreover, in a circumstance like this one, where the union executed the agreement and the employer implemented the agreement in reliance on the union's execution of it, PERB might decide that voiding the agreement is not a proper remedy. But there is no need to speculate as to how PERB might rule in such a situation, because the issue is beyond the Court's jurisdiction and because the Amended Complaint alleges no facts showing that the DC 37 Agreement was subject to ratification.

Accordingly, Plaintiffs' claim in Count 4 fails as a matter of law.

**III.   THE SECTION 1983 CLAIMS AGAINST THE DC 37 DEFENDANTS IN COUNTS 9 AND 10 FAIL AS A MATTER OF LAW**

**A.   The Court Has Already Held that DOE Did Not Violate Plaintiffs' Constitutional Rights by Placing Them on Unpaid Leave**

Plaintiffs claim in Counts 9 and 10 that the DC 37 Agreement violated their constitutional rights by allowing DOE to place them on unpaid leave. *See* Am. Compl. ¶¶403-10, 438-42. In their opening brief, the DC 37 Defendants explained that these claims fail because the Court has already held -- twice -- that DOE's actions did *not* violate their constitutional rights. *See* DC 37 Mem. 5-6, 8-9.

3

Plaintiffs argue that because the Court's prior rulings were made in preliminary injunction proceedings, they do not constitute the law of the case. *See* Pltfs. Mem. 8-9. That may be so, but the Court should still follow its prior rulings unless Plaintiffs come forward with some reason -- such as a change in the law or the facts -- for the Court not to follow them. *See, e.g., SAM Party of New York v. Kosinski*, No. 20-cv-323 (JGK), 2021 WL 6061301, at *7 (S.D.N.Y. Dec. 22, 2021) (court "reaches the same conclusions" because the factual record "remains substantially unchanged from the time of the Court's preliminary injunction decisions.") Plaintiffs in their opposition brief point to no change in the law or the facts that would warrant the Court's reconsideration of its earlier determination that DOE's placing Plaintiffs on unpaid leave did not violate their constitutional rights.

Plaintiffs argue that the Court would have to revisit its earlier rulings if the DC 37 Agreement were "held to be invalid." Pltfs. Mem. 9. They assert that the DC 37 Agreement should be held invalid because DC 37 did not obtain membership ratification of the agreement. *See id.* 4-5. This argument fails because, as explained above, no basis exists for the Court to hold that a lack of membership ratification invalidates the DC 37 Agreement.

The argument also fails because it mistakenly assumes that the Court's prior rulings were premised on the validity of the DC 37 Agreement. The Court's earlier rulings had nothing to do with the DC 37 Agreement. The Court's prior rulings rested on its determination that the Vaccine Mandate created "a lawful condition of employment," Docket Entry #89, at 21, and therefore that DOE's action towards non-compliant employees did not "implicate the disciplinary procedures" in New York Civil Service Law, *see id.* at 31. In concluding that the Vaccine Mandate was a lawful condition of employment, the Court relied not on the DC 37

4

Agreement, but on New York state statutory authority and Second Circuit and New York state decisional law. *See id.* at 25-28.

Because the Court has already determined that DOE's conduct did not violate Plaintiffs' constitutional rights, there is no plausible basis for Plaintiffs' claims in Counts 9 and 10 that the DC 37 Agreement authorized DOE to violate their constitutional rights.

**B.      The Amended Complaint Alleges No Facts Showing that the DC 37 Defendants Acted Under Color of State Law**

Even if the Court reconsidered its prior rulings, the Section 1983 claims against the DC 37 Defendants would still fail as a matter of law.  As the DC 37 Defendants demonstrated in their opening brief, a solid body of case law holds that a union's negotiated agreement with a public-sector employer does not constitute a Section 1983 conspiracy.  *See* DC 37 Mem. 9-12 (citing cases).  Plaintiffs do not, and could not, challenge that body of case law.

Plaintiffs attempt, *see* Pltfs. Mem. 38-39, to distinguish just one case, *Eaddy v. Jemiola*, No. 3:11-cv-1081 (MPS), 2013 WL 441077 (D. Conn. Feb. 5, 2013), but even that fails. *Eaddy* is fully on point, holding that the defendant union's entering an agreement with the city that allegedly exposed the plaintiffs to the city's constitutional violations "is not enough" to support a conspiracy-based Section 1983 claim.  *Id.* at *3.

Unable to challenge the body of authority holding that a negotiated labor-management agreement is not a Section 1983 conspiracy, Plaintiffs fall back on criticizing DC 37 for its performance at the bargaining table.  They question why DC 37 agreed to the terms to which it agreed, *see* Ptlfs. Mem. 39; they charge that "DC 37 just rolled over and accepted" DOE's terms, *id.*; and they assert that DC 37 could have and should have refused to enter the agreement, *see id.* 39-40.  Such arguments might be appropriate if Plaintiffs had asserted a claim

5

that DC 37 had breached its duty of fair representation ("DFR").  But such DFR contentions are irrelevant to, and cannot save, Plaintiffs' Section 1983 claim.  *See* DC 37 Mem. 12.[1]

For purposes of Section 1983, as long as the union was negotiating as the employees' representative, its role in negotiations is deemed adverse to that of the employer, and -- regardless of how well or poorly the union negotiated -- the resulting agreement does not constitute a Section 1983 conspiracy.  *See Kasper v. Middletown*, 352 F.Supp.2d 216, 236 (D. Conn. 2005) ("*When a union represents city employees in contract negotiations … it is considered to be acting adversely to the city government and not acting under color of state law*"); *McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*, 107 F.Supp.2d 311, 317 (S.D.N.Y. 2000) ("the Union here represents county employees, and *thus must be* considered to be an adversary of the county government") (emphasis added). To hold otherwise would create an unworkable and unprincipled standard, making application of Section 1983 depend on the court's assessment of whether the defendant union acted with sufficient vigor in negotiations with the public employer.

Because Plaintiffs' pleading charges the DC 37 Defendants with nothing other than entering into a negotiated agreement with the employer, their Section 1983 claim fails as a matter of law.

**C.     The Amended Complaint Fails to Allege Facts Showing that the DC 37 Defendants Themselves Violated Plaintiffs' Constitutional Rights**

Finally, as the DC 37 Defendants explained in their opening brief, Plaintiffs' claims in Counts 9 and 10 also fail because the Amended Complaint contains no facts showing

---

[1] As the DC 37 Defendants explained in their opening brief, any DFR claim by Plaintiffs would be time-barred (and face other fatal defenses).  *See* DC 37 Mem. 12 n.3.  In addition, there is no basis to conclude that DC 37 failed to properly represent Plaintiffs' interests.  *See id.* 12-14.

6

JA-1651

that the DC 37 Defendants *themselves* violated Plaintiffs' constitutional rights. *See* DC 37 Mem. 14-15; *see, e.g., Eaddy*, 2013 WL 441077, at *4 (additional reason for rejecting Section 1983 claim is that the agreement's failure to adopt a written performance evaluation system for the police "did not itself violate the Plaintiff's constitutional rights").

Plaintiffs assert in their opposition brief that Garrido and Francois "personally" executed the DC 37 Agreement. Pltfs. Mem. 42. The act of signing the agreement, however, did not violate anyone's constitutional rights. It was DOE's decision as employer to place Plaintiffs on unpaid leave that gave rise to the purported due process infringement.

Because the Amended Complaint fails to allege facts showing that the DC 37 Defendants themselves violated Plaintiffs' constitutional rights, the Section 1983 claims against them fail for that reason as well.

## CONCLUSION

For the foregoing reasons and those set forth in the DC 37 Defendants' opening brief, the Court should grant the DC 37 Defendants' motion and dismiss with prejudice all the claims against them.

7

JA-1652

May 20, 2022

Respectfully submitted,

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

8

**JA-1653**

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be served this 20th day of May 2022 by

email on:

> Austin R. Graff
> The Scher Law Firm, LLP
> One Old Country Road, Suite 385
> Carle Place, NY 11514
> Email: agraff@scherlawfirm.com
> *Attorney for Plaintiffs*
>
> Andrea Mary O'Connor
> New York City Law Department
> 100 Church Street, Room 2-104
> New York, NY 10007
> Email: aoconnor@law.nyc.gov
> *Attorneys for Defendants*
> *New York City Dept. of Education and Meisha Porter*
>
> Ivan A Mendez, Jr.
> New York City Law Department
> 100 Church St, Rm 2-185
> New York, NY 10007
> Email: imendez@law.nyc.gov
> *Attorney for Defendants*
> *New York City Dept. of Education and Meisha Porter*
>
> Alan M. Klinger
> Stroock & Stroock & Lavan
> 180 Maiden Lane
> New York, NY 10038
> Email: aklinger@stroock.com
> *Attorney for Defendants*
> *United Federation of Teachers, Local 2, American Federation of*
> *Teachers, AFL-CIO and Council of Supervisors and*
> *Administrators*

9

Arthur J Herskowitz
Stroock & Stroock & Lavan
180 Maiden Lane, Office 32109
New York, NY 10038
Email: aherskowitz@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and dministrators*

Dina Kolker
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Email: dkolker@stroock.com
*Attorney for Defendants*
*United Federation of Teachers, Local 2, American Federation of*
*Teachers, AFL-CIO and Council of Supervisors and dministrators*

Gregg D. Weinstock
Vigorito, Barker, Patterson, Nichols & Porter LLP
300 Garden City Plaza, Ste 100
Garden City, NY 11530
Email: g.weinstock@vbpnplaw.com
*Attorney for Defendants*
*Martin F. Scheinman, Scheinman Arbitration and Mediation*
*Services, and Scheinman Arbitration and Mediation Services, LLC*

Angela Rose Bonica
Vigorito, Barker, Porter, Patterson
300 Garden City Plaza, Suite 308
Garden City, NY 11530
Email: a.bonica@vbpnplaw.com
*Attorney for Defendants*
*Martin F. Scheinman, Scheinman Arbitration and Mediation*
*Services and Scheinman Arbitration and Mediation Services, LLC*

Karolina Maria Wiaderna
Vigorito, Barker, Patterson, Nichols & Porter, LLP
300 Garden City Plaza, Ste 100
Garden City, NY 11530
Email: k.wiaderna@vbpnplaw.com
*Attorney for Martin F. Scheinman, Scheinman Arbitration and*
*Mediation Services, and Scheinman Arbitration and Mediation*
*Services, LLC*

Peter D. DeChiara

10