# 23-655



In the
# United States Court of Appeals
## For the Second Circuit

NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA BRYAN, RENA GELLMAN, FONTINA LAMBOS, KERRY BEN-JACOB, EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA NARCISO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO,

*Plaintiffs-Appellants,*

*(See inside cover for continuation of caption and appearances)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

## JOINT APPENDIX
### Volume VII of VII (Pages JA-1655 – JA-1919)

STROOCK & STROOCK
& LAVAN LLP
*Attorneys for Defendants-Appellees*
*United Federation of Teachers,*
*Local 2, American Federation of*
*Teachers, AFL-CIO, Michael*
*Mulgrew, Council of Supervisors*
*and Administrators and Mark*
*Cannizzaro*
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aherskowitz@stroock.com
aklinger@stroock.com
dkolker@stroock.com

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040
agraff@scherlawfirm.com

NEW YORK CITY LAW DEPARTMENT
APPEALS DIVISION
*Attorneys for Defendants-Appellees*
*New York City Department of Education*
*and Meisha Porter*
100 Church Street
New York, New York 10007
(212) 356-2067
jtownsen@law.nyc.gov

—————————————————

ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS, CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANE PAGEN, LYNN PEPE, STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ, SORAYA SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY MUSSAFI, JESSICA NICCHIO, DORCA GENAO, RACHEL MANISCALCO, JAMES HOFFMAN, SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES DIPROSSIMO, CAROLA MARTINEZ-VANBOKKEM, AYSE USTARES, ELIZABETH FIGUEROA, DIANNE BAKER-PACIUS, NICOLE MOORE, ELIZABETH PLACENCIO, DEBBIE BERTRAM, KIMBERLI MADDEN, FRAN SCHMITTER, VICTORIA RUSSO, PAUL CIFARELLI, DANIELLE HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI BENEDUCE, ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO, JEANEAN SANCHEZ, MARIE MOSLEY, TARA PALLADINO, DANIELLE MCGUIRE, JULIA HARDING, LEAH KUKLA, STEPHANIE FRANZESE, JULIA BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE, AURA MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO, LORRAINE MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU and HENRIETTA SHAYA,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER, UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, MICHAEL MULGREW, COUNCIL OF SUPERVISORS AND ADMINISTRATORS, MARK CANNIZZARO, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, SHAUN D. FRANCOIS, I, FRANCINE FRANCIS, MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees.*
*(See inside cover for additional appearances)*

—————————————————

————————————————

COHEN, WEISS AND SIMON LLP
*Attorneys for Defendants-Appellees*
  *District Council 37, AFSCME AFL-CIO,*
  *Henry Garrido, Shaun D. Francois, I,*
  *Francine Francis, District Council 37,*
  *AFSCME AFL-CIO, Local 372 and*
  *District Council 37, AFSCME*
  *AFL-CIO, Local 1251*
900 3ʳᵈ Avenue, Suite 2100
New York, New York 10022
(212) 356-0216
pdechiara@cwsny.com

VIGORITO, BARKER, PATTERSON,
  NICHOLS & PORTER, LLP
*Attorneys for Defendants-Appellees*
  *Martin F. Scheinman, Scheinman*
  *Arbitration and Mediation Services,*
  *LLC and Scheinman Arbitration and*
  *Mediation Services*
300 Garden City Plaza, Suite 308
Garden City, New York 11530
(516) 282-3355
g.weinstock@vbpnplaw.com
a.medina@vbpnplaw.com

————————————————

i

# Table of Contents

**Page**

Docket Entries ............................................................. JA-1

Complaint, Dated November 17, 2021 .........................................JA-49

    Exhibit A to Complaint -
    E-Mail from NYC Department of Education to
    Jeannine Lam, Dated October 2, 2021 .....................................JA-78

    Exhibit B to Complaint -
    Secretary Collective Bargaining Agreement (CBA).................JA-80

    Exhibit C to Complaint -
    Paraprofessional Collective Bargaining Agreement (CBA) .....JA-184

    Exhibit D to Complaint -
    Teachers Collective Bargaining Agreement (CBA)..................JA-251

Proposed Order to Show Cause for a Temporary Restraining
    Order and a Preliminary Injunction............................................JA-489

Emergency Affirmation of Austin Graff, for Plaintiffs,
    in Support of Order to Show Cause,
    Dated November 17, 2021 ......................................................JA-497

Affidavit of Nicole Broecker, Plaintiff, in Support of
    Order to Show Cause, Sworn to November 16, 2021 ...............JA-501

Affidavit of Jeannine Lam, Plaintiff, in Support of
    Order to Show Cause, Sworn to November 15, 2021 ...............JA-503

    Exhibit 1 to Lam Affidavit -
    E-Mail from Jeannine Lam to Michael Mulgrew,
    Dated November 13, 2021 ......................................................JA-506

    Exhibit 2 to Lam Affidavit -
    Redacted E-Mail from Jeannine Lam to Austin Graff,
    Dated November 12, 2021 ......................................................JA-508

    Exhibit 3 to Lam Affidavit -
    Teachers Collective Bargaining Agreement (CBA)
    (Reproduced herein at pp. JA-251–JA-488) .............................JA-511

Affidavit of Stella Porto, Plaintiff, in Support of Order
    to Show Cause, Sworn to November 16, 2021 ........................JA-512

Affidavit of Gina Porcello, Plaintiff, in Support of Order
    to Show Cause, Sworn to November 15, 2021 ........................JA-514

ii

**Page**

Exhibit 1 to Porcello Affidavit -
Secretary Collective Bargaining Agreement (CBA)
(Reproduced herein at pp. JA-80–JA-183) ..............................JA-516

Affidavit of Dina Hussien, Plaintiff, in Support of Order
to Show Cause, Sworn to November 15, 2021 ........................JA-517

Exhibit 1 to Hussien Affidavit -
Paraprofessional Collective Bargaining Agreement (CBA)
(Reproduced herein at pp. JA-184–JA-250) .............................JA-520

Exhibit A  -
E-Mail from NYC Department of Education to
Jeannine Lam, Dated October 2, 2021
(Reproduced herein at pp. JA-78–JA-79) ................................JA-520

Plaintiffs' Memorandum of Law in Support of Motion,
Dated November 17, 2021 ......................................................JA-521

Order to Show Cause for a Temporary Restraining Order and
a Preliminary Injunction, Dated November 17, 2021 ...............JA-543

Defendants New York City Department of Education and
Meisha Porter's Memorandum of Law in Opposition
to Motion, Dated November 19, 2021......................................JA-546

Declaration of Andrea O'Connor, for Defendants New York
City Department of Education and Meisha Porter, in
Opposition to Order to Show Cause,
Dated November 19, 2021 ......................................................JA-580

Exhibit A to O'Connor Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and the United Federation of Teachers, Local 2,
AFT, AFL-CIO*, Dated September 10, 2021,
with Cover Letter ...................................................................JA-583

Exhibit B to O'Connor Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and the Council of Supervisors and Administrators,*
Dated September 15, 2021, with Cover Letter.........................JA-602

iii

**Page**

Exhibit C to O'Connor Declaration -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021 ............................................................JA-617

Exhibit D to O'Connor Declaration -
Transcript of Proceedings, in the Matter of *Michael Kane v.*
*Bill De Blasio, et al.*, 21 Civ. 7863 (S.D.N.Y.)(VEC),
Dated October 12, 2021 .........................................................JA-624

Exhibit E to O'Connor Declaration -
Affidavit of Vicki Bernstein, in Opposition to Order to Show
Cause, Sworn to November 19, 2021.......................................JA-699

Exhibit F to O'Connor Declaration -
Various Arbitration Awards ....................................................JA-702

Defendant United Federation of Teachers, Local 2, AFL-CIO's
Memorandum of Law in Opposition to Order to Show Cause,
Dated November 19, 2021 ......................................................JA-709

Declaration of Alan M. Klinger, for Defendants United
Federation of Teachers, Local 2, AFL-CIO, in Opposition
to Order to Show Cause, Dated November 19, 2021 ...............JA-737

Exhibit A to Klinger Declaration -
Declaration of Impasse, Dated September 1, 2021 ..................JA-745

Exhibit A to Declaration of Impasse -
E-Mail from Renee Campion to Harry Nespoli,
Dated July 27, 2021 ............................................................JA-760

Exhibit B to Declaration of Impasse -
Order of Dave A. Chokshi, M.D. Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
or Testing for Staff in Public Healthcare Settings,
Dated July 21, 2021 ............................................................JA-762

Exhibit C to Declaration of Impasse -
COVID-Safe Requirement: Frequently Asked Questions,
Issued August 11, 2021.......................................................JA-765

Exhibit D to Declaration of Impasse -
Letter from Harry Nespoli to Honorable Dean Fuleihan,
Emma Wolfe and Renee Campion, Dated August 12, 2021 .JA-775

iv

**Page**

Exhibit E to Declaration of Impasse -
Letter from Harry Nespoli to Honorable Dean Fuleihan,
Emma Wolfe and Renee Campion, Dated August 17, 2021 .JA-777

Exhibit F to Declaration of Impasse -
Order of Dave A. Chokshi, M.D. Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
for Department of Education Employees, Contractors
and Others, Dated August 24, 2021 ......................................JA-779

Exhibit B to Klinger Declaration -
Letter from William M. Conley to Meisha Porter and
Michael Mulgrew Regarding Appointment of Mediator,
Dated September 3, 2021 ...........................................................JA-783

Exhibit C to Klinger Declaration -
E-Mail from Alan M. Klinger to William M. Conley,
Dated September 6, 2021 ...........................................................JA-784

Exhibit D to Klinger Declaration -
Arbitration Award Decision of Arbitrator Martin F.
Scheinman, *in the Matter of the Arbitration Between
Board of Education of the City School District of the City of
New York and International Brotherhood of Teamsters,
Local 237*, Dated September 15, 2021, with Cover Letter........JA-785

Exhibit E to Klinger Declaration -
Amended Order to Show Cause for a Temporary Restraining
Order and a Preliminary Injunction, in the Matter of *The New
York City Municipal Labor Committee v. The City of New
York, et al.*, Index No. 158368/2021,
Dated September 9, 2021 ...........................................................JA-801

Declaration of Beth A. Norton, for Defendants United
Federation of Teachers, Local 2, AFL-CIO, in Opposition
to Order to Show Cause, Dated November 19, 2021 ................JA-804

Exhibit A to Norton Declaration -
E-Mail from Jeannine Lam to Beth A. Norton,
Dated November 12, 2021 ........................................................JA-809

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated November 24, 2021, with Attachment............................JA-812

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated November 24, 2021 ......................JA-814

v

**Page**

Memorandum and Order of Honorable Kiyo A. Matsumoto,
     Dated November 24, 2021 ......................................................JA-815

Plaintiffs' Memorandum of Law, Dated November 30, 2021 ......JA-843

Defendants United Federation of Teachers, Local 2, AFL-CIO's
     Supplemental Memorandum of Law,
     Dated December 7, 2021 ........................................................JA-856

Declaration of Alan M. Klinger, for Defendant
     United Federation of Teachers, Local 2, AFLO-CIO,
     Dated December 7, 2021 ........................................................JA-880

Defendants New York City Department of Education
     and Meisha Porter's Supplemental Briefing,
     Dated December 7, 2021 ........................................................JA-883

     Appendix A to Klinger Declaration -
     Affirmation of Michelle E. Morse,
     Dated November 15, 2021 ......................................................JA-907

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
     Dated December 9, 2021 ........................................................JA-915

Plaintiff's Response to the Court's Order to Show Cause
     Regarding The Plaintiff's Standing,
     Dated December 13, 2021 ......................................................JA-918

Defendants New York City Department of Education
     and Meisha Porter's Memorandum of Law,
     Dated December 20, 2021 ......................................................JA-935

Defendant United Federation of Teachers, Local 2, AFL-CIO's
     Reply to Plaintiffs' Response to The Courts Order to Show
     Cause Regarding Plaintiffs' Standing,
     Dated December 20, 2021 ......................................................JA-944

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
     Dated December 20, 2021 ......................................................JA-959

Amended Complaint, Dated January 10, 2022 ............................JA-960

     Exhibit A to Amended Complaint -
     UFT's Webpage "About the UFT" ..........................................JA-1021

     Exhibit B to Amended Complaint -
     CSA's Webpage "What is CSA" ..............................................JA-1023

**Page**

Exhibit C to Amended Complaint -
Local 372's Webpage "About Us"............................................JA-1026

Exhibit D to Amended Complaint -
Local 1251's Webpage "About Us"..........................................JA-1029

Exhibit E to Amended Complaint -
UFT Arbitration Award, Dated September 10, 2021,
with Cover Letter ....................................................................JA-1034

Exhibit F to Amended Complaint -
Scheinman's Arbitration Award, Dated September 15, 2021,
with Cover Letter ....................................................................JA-1053

Exhibit G to Amended Complaint -
Order of The Commissioner of Health and Mental Hygiene,
Dated September 15, 2021 .......................................................JA-1068

Exhibit H to Amended Complaint -
New York Post Article Titled "DOE Skips Deadline to
Suspend Employees Who Havent's Show Proof of
Second Vax".............................................................................JA-1072

Exhibit I to Amended Complaint -
UFT's Declaration of Impasse, Dated September 1, 2021,
with Exhibit A to F..................................................................JA-1082

Exhibit J to Amended Complaint -
Letter from William M. Conley to Meisha Porter and
Michael Mulgrew Regarding Appointment of Mediator,
Dated September 3, 2021
(Reproduced herein at p. JA-783) ............................................JA-1126

Exhibit K to Amended Complaint -
E-Mail from Alan M. Klinger to William M. Conley,
Dated September 6, 2021
(Reproduced herein at p. JA-784) ............................................JA-1126

Exhibit L to Amended Complaint -
Joint Intentions and Commitments............................................JA-1127

Exhibit M to Amended Complaint -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021
(Reproduced herein at pp. JA-617–JA-623) .............................JA-1365

vii

**Page**

Exhibit N to Amended Complaint -
Waiver ........................................................................JA-1366

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 4, 2022 ............................................JA-1367

Letter from Alan M. Klinger to Honorable Kiyo A. Matsumoto,
Dated February 4, 2022 ............................................JA-1370

Letter from Andrea O'Connor to Honorable Kiyo A.
Matsumoto, Dated February 7, 20222 ......................JA-1373

Letter from Karolina Wiaderna to Honorable Kiyo A.
Matsumoto, Dated February 7, 2022 ........................JA-1378

Proposed Order to Show Cause ......................................JA-1380

Affirmation of Austin Graff, for Plaintiffs, in Support of
Order to Show Cause, Dated February 8, 2022 .........JA-1382

Declaration of James Hoffman, for Defendant New York City
Department of Education, Dated February 4, 2022 .................JA-1386

Declaration of Nathalie Charles, Dated February 4, 2022 ............JA-1388

Declaration of Serina Mendez, Dated February 4, 2022 ...............JA-1390

Declaration of Tara Palladino, Dated February 7, 2022 ...............JA-1392

Declaration of Janelle Lotito, Dated February 8, 2022 .................JA-1394

Exhibit A to Graff Affirmation -
Termination Notice, Dated January 31, 2022,
with E-Mails ..............................................................JA-1396

Exhibit B to Graff Affirmation -
New York City Department of Education
Health Screening Questionnaire ................................JA-1402

Exhibit C to Graff Affirmation -
Plaintiffs' Antibody Tests for Covid-19 ....................JA-1403

Exhibit D to Graff Affirmation -
I Love You Day Flyer ................................................JA-1408

Exhibit E to Graff Affirmation -
Job Post of Indeed ....................................................JA-1409

viii

**Page**

Exhibit F to Graff Affirmation -
Plaintiffs' Memorandum of Law, in Support of Motion,
Dated February 8, 2022 ...........................................................JA-1412

Letter from Alan M. Klinger to Honorable Kiyo A. Matsumoto,
Dated February 8, 2022...................................................JA-1433

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 8, 2022...................................................JA-1438

Defendants New York City Department of Education and
Meisha Porter's Memorandum of Law in Opposition to
Motion, Dated February 8, 2022 ................................................JA-1445

Appendix A to Memorandum of Law -
Decisions and Orders of Honorable Lyle E. Frank,
Dated January 21, 2022...............................................................JA-1488

Appendix B to Memorandum of Law -
Affirmation of Michelle E. Morse,
Dated November 15, 2021 ......................................................JA-1492

Plaintiffs' Reply Memorandum of Law in Further Support of
Motion, Dated February 10, 2022 .............................................JA-1500

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 11, 2022........................JA-1514

Order to Show Cause for a Temporary Restraining Order and
Preliminary Injunction, Dated February 10, 2022.....................JA-1516

Interim Order of Honorable Judy H. Kim,
Dated February 10, 2022...........................................................JA-1520

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 11, 2022...........................................................JA-1522

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated February 11, 2022...........................................................JA-1523

Notice of Motion to Dismiss Amended Complaint,
Dated April 4, 2022...................................................................JA-1566

Declaration of Andrea O'Connor, for Defendants
New York City Department of Education and Meisha Porter,
in Support of Motion, Dated April 4, 2022 ...............................JA-1569

Exhibit A to O'Connor Declaration -
Order of Honorable Lynn R. Kotler, Dated March 15, 2022 ....JA-1572

**Page**

Memorandum of Law, Dated April 4, 2022 ..................................JA-1582

Notice of Motion to Dismiss, Dated April 4, 2022 ......................JA-1614

Memorandum of Law in Support of Motion,
  Dated April 4, 2022 ...................................................................JA-1618

Reply Memorandum of Law in Further Support of Motion,
  Dated May 20, 2022 ..................................................................JA-1642

Notice of Motion to Dismiss Amended Complaint,
  Dated April 4, 2022 ...................................................................JA-1655

Memorandum of Law in Support of Motion,
  Dated April 4, 2022 ...................................................................JA-1657

Notice of Motion to Dismiss Complaint,
  Dated April 4, 2022 ...................................................................JA-1682

Martin F. Scheinman, Scheinman Arbitration and Mediation
  Services and Scheinman Arbitration and Mediation
  Services, LLC's Memorandum of Law in
  Support of Motion, Dated April 4, 2022 ...................................JA-1686

Declaration of Karolina Wiaderna, for Defendants
  Martin F. Scheinman, Scheinman Arbitration and Mediation
  Services and Scheinman Arbitration and Mediation Services,
  LLC, in Support of Motion, Dated April 4, 2022 .....................JA-1705

Affirmation of Austin Graff, for Plaintiffs,
  in Opposition to Motion, Dated May 9, 2022 ...........................JA-1707

Exhibit A to Graff Affirmation -
  Decisions by Scheinman Arbitration .........................................JA-1709

Exhibit B to Graff Affirmation -
  Decisions by Scheinman Arbitration .........................................JA-1713

Exhibit C to Graff Affirmation -
  Arbitration Award, Dated October 2, 2021 ...............................JA-1720

Exhibit D to Graff Affirmation -
  Arbitration Award, Dated September 25, 2021 .........................JA-1722

Exhibit E to Graff Affirmation -
  Arbitration Award, Dated October 4, 2021 ...............................JA-1728

Exhibit F to Graff Affirmation -
  Arbitration Award, Dated October 4, 2021 ...............................JA-1735

x

**Page**

Exhibit G to Graff Affirmation -
Notifications from New Yor State Department of Labor..........JA-1740

Plaintiffs' Memorandum of Law in Opposition to Motion,
Dated May 9, 2022 ....................................................................JA-1743

Memorandum of Law in Support of Motion,
Dated May 24, 2022 ..................................................................JA-1794

Reply Memorandum of Law in Further Support of Motion,
Dated May 24, 2022 ..................................................................JA-1808

Martin F. Scheinman, Scheinman Arbitration and Mediation
Services and Scheinman Arbitration and Mediation
Services, LLC's Reply Memorandum of Law in Further
Support of Motion, Dated May 24, 2022 ..................................JA-1823

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated July 7, 2022 ....................................................................JA-1834

Exhibit A to Letter -
New York Post Titled "DOE Suit Aims to Keep at Lease 82
Teachers Suspended without Pay Over Fake Vaccine Cards",
Dated July 6, 2022 ....................................................................JA-1837

Exhibit B to Letter -
Opinion and Order of Hon. Martin F. Scheinman,
Dated June 27, 2022 ..................................................................JA-1843

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated July 8, 2022 ....................................................................JA-1857

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated July 11, 2022 ................................JA-1859

Letter from Karolina Wiaderna to Honorable
Kiyo A. Matsumoto, Dated July 11, 2022 ................................JA-1861

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 16, 2023........................JA-1862

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 17, 20232 .........................................................JA-1864

Exhibit 1 to Letter -
Announcement of Mayor BioGraphy News Officials,
Dated February 6, 2023 .............................................................JA-1866

xi

**Page**

Letter from Dina Kolker to Honorable Kiyo A. Matsumoto,
Dated February 17, 2023 ...........................................................JA-1868

Letter from Hanan B. Kolko to Honorable Kiyo A. Matsumoto,
Dated February 17, 2023 ...........................................................JA-1870

Letter from Karolina Wiaderna to Honorable
Kiyo A. Matsumoto, Dated February 20, 2023 ........................JA-1873

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated March 30, 2023 ...............................................................JA-1874

Judgment of The United States District Court Eastern District
of New York, Dated March 31, 2023, Appealed From.............JA-1916

Notice of Appeal, Dated April 20, 2023 .......................................JA-1917

**JA-1655**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                   :

BROECKER *et al.*,                  :       Index No. 21-cv-6387

                Plaintiffs,    :    **NOTICE OF MOTION OF**
                                     :    **DEFENDANTS UNITED**
    -against-                :    **FEDERATION OF**
                                       :    **TEACHERS, MICHAEL**
                                     :    **MULGREW, COUNCIL OF**
NEW YORK CITY DEPARTMENT OF    :    **SCHOOL SUPERVISORS**
EDUCATION, *et al.*,          :    **AND ADMINISTRATORS,**
                                     :    **AND MARK CANNIZZARO**
                Defendants.  :    **TO DISMISS THE**
                                     :    <ins>**AMENDED COMPLAINT**</ins>
                                     :
------------------------------------------------------------- X

      **PLEASE TAKE NOTICE**, that upon Plaintiffs' Amended Complaint, dated January 10,

2022, and the accompanying Memorandum of Law, Defendants United Federation of Teachers,

Local 2, AFT, AFL-CIO (the "UFT"), UFT President Michael Mulgrew ("Mulgrew") (UFT and

Mulgrew, together, the "UFT Defendants"), Council of School Supervisors & Administrators,

Local 1, AFSA, AFL-CIO ("CSA"), and CSA President Mark Cannizzaro ("Cannizzaro") (CSA

and Cannizzaro, together, the "CSA Defendants") shall move this Court before the Honorable

Kiyo A. Matsumoto, United States District Court Judge, United States District Court for the

Eastern District of New York, at 225 Cadman Plaza East, Brooklyn, New York, for an order

pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure dismissing the

Amended Complaint as against UFT and CSA Defendants for lack of standing, failure to state a

claim upon which relief can be granted, and for such other and further relief deemed just and

proper.  Pursuant to the briefing schedule ordered by this Court on March 7, 2022, Plaintiffs shall

serve any opposition by May 10, 2022, and Defendants shall serve any reply by May 24, 2022.

1

**JA-1656**

Dated: April 4, 2022                    Respectfully submitted,


                                        /s/ ALAN M. KLINGER
                                        _____
                                        STROOCK & STROOCK & LAVAN LLP
                                        Alan M. Klinger, Esq.
                                        Dina Kolker, Esq.
                                        Arthur J. Herskowitz, Esq.
                                        180 Maiden Lane
                                        New York, New York 10038
                                        (212) 806-5400
                                        aklinger@stroock.com
                                        dkolker@stroock.com
                                        aherskowitz@stroock.com

                                        - and -

                                        Beth A. Norton, Esq.
                                        UNITED FEDERATION OF TEACHERS,
                                        LOCAL 2, AFT, AFL-CIO
                                        52 Broadway
                                        New York, NY 10004
                                        (212) 701-9420
                                        bnorton@uft.org

                                        *Co-counsel for the UFT Defendants*

                                        - and -

                                        David A. Grandwetter, Esq.
                                        COUNCIL OF SCHOOL SUPERVISORS
                                        AND ADMINISTRATORS
                                        40 Rector Street, 12th Floor
                                        New York, NY 10006
                                        (718) 852-3000
                                        david@csa-nyc.org

                                        *Co-counsel for the CSA Defendants*

2

JA-1657

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BROECKER *et al.*,                                         :
                                                           :
                                                           :
                           Plaintiffs,                     :
                                                           :
     -against-                                             :
                                                           :        Case No. 21-cv-6387
                                                           :
NEW YORK CITY DEPARTMENT OF                                :
EDUCATION, *et al.*,                                       :
                                                           :
                           Defendants.                     :
------------------------------------------------------------ X

**MEMORANDUM OF LAW OF DEFENDANTS UNITED FEDERATION OF
TEACHERS, MICHAEL MULGREW, COUNCIL OF SCHOOL SUPERVISORS AND
ADMINISTRATORS, AND MARK CANNIZZARO IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT FACTS ............................................................................................................ 4

    I.    The DOE Vaccine Mandate and Related Litigation and Negotiations ................... 4

    II.    The UFT and CSA Defendants Challenge Plaintiffs' Summary
    Terminations ......................................................................................................... 7

ARGUMENT ........................................................................................................................ 8

    I.    PLAINTIFFS LACK STANDING TO DIRECTLY CHALLENGE THE
    AWARDS ............................................................................................................... 8

    II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE UFT AND
    CSA DEFENDANTS .............................................................................................. 9

        A.    Standard of Review Under Fed. R. Civ. P. 12(b)(6) .................................. 9

        B.    Plaintiffs Fail to Allege Facts Sufficient to Support Violations of
        42 U.S.C. § 1983 By Defendants UFT, Mulgrew, CSA, or
        Cannizzaro ............................................................................................. 10

        C.    The UFT and CSA Awards Are Valid as a Matter of Law ...................... 16

CONCLUSION ................................................................................................................... 18

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Matter of Alden Cent. Sch. Dist. v. Watson,
    56 A.D.2d 713 (4th Dep't 1977) .......................................................................... 16

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................................. 9

Bd. of Regents of State Colleges v. Roth,
    408 U.S. 564 (1972) ............................................................................................ 18

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................................ 9, 10

Broecker et al. v. New York City Dep't of Educ. et al.,
    __ F.Supp.3d __, 2021 WL 5514656 (E.D.N.Y. Nov. 24, 2021) ......................... 8

Burton v. Wilmington Parking Auth.,
    365 U.S. 715 (1961) ........................................................................................... 12

Callaghan v. United Federation of Teachers,
    133 A.D.3d 412 (1st Dep't 2015) ....................................................................... 11

Ciambriello v. Cnty. Of Nassau,
    292 F.3d 307 (2d Cir. 2002) .................................................................... 10, 11, 13

Commodari v. Long Island Univ.,
    89 F. Supp. 2d 353 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir. 2003) ......... 12

Cooper v. New York State Dep't of Labor,
    819 F.3d 678 (2d Cir. 2016) ............................................................................... 10

Dennis v. Sparks,
    449 U.S. 24 (1980) ............................................................................................. 12

Driskell v. New York City,
    11 Civ. 4915 (BMC), 2011 WL 6812516 (E.D.N.Y. Dec. 27, 2011) ............... 10, 11

Dykes v. Southeastern Pa. Transp. Auth.,
    68 F.3d 1564 (3d Cir. 1995) ............................................................................... 15

Figueroa v. City of Camden,
    580 F. Supp. 2d 390 (D. N.J. 2008) ............................................................... 10, 15

Fiore v. Town of Whitestown,
    125 A.D.3d 1527 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015) ....................9

Fleischer v. Barnard College,
    20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) ............................................................8

Hanna v. Plumer,
    380 U.S. 460 (1965)..........................................................................................................10

Harmon v. Matarazzo,
    162 F.3d 1147 (2d Cir. 1998)...........................................................................................11

Jessamy v. City of New Rochelle, New York,
    292 F. Supp. 2d 498 (S.D.N.Y. 2003)..............................................................................13

Katir v. Columbia Univ.,
    15 F.3d 23 (2d Cir.1994)................................................................................................8, 9

Leahy v. Board of Trustees,
    912 F.2d 917 (7th Cir. 1990) ...........................................................................................13

Leblanc v. Security Servs. Unit Empls. of N.Y. State Law Enforcement Officers
    Union, Council 82, AFSCME, AFL-CIO,
    278 A.D.2d 732 (3d Dep't 2000) .......................................................................................9

Marciano v. De Blasio, et al.,
    __ F. Supp. 3d ___, No. 21-cv-10752 (JSR), 2022 WL 678779 (S.D.N.Y. Mar.
    8, 2022) .............................................................................................................................16

Margiotta v. Kaye,
    283 F. Supp. 2d 857 (E.D.N.Y. 2003) .............................................................................17

McGovern v. Local 456, Int'l Bhd. Of Trustees,
    107 F. Supp. 2d 311 (S.D.N.Y. 2000)..............................................................................11

Mehrhoff v. William Floyd Union Free School District,
    No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) .................................11, 15

MLC et al. v. City of New York et al.,
    158368/2021 (Sup. Ct. N.Y. Cnty.) ...............................................................................5, 14

Matter of Municipal Labor Committee and City of New York,
    BCB 4458-21 (OCB 2021) .................................................................................................2

Municipal Labor Committee v. City of New York,
     151169/2022 (Sup. Ct. N.Y. Cnty. 2022), CPLR 5704 application denied,
     2022-00618 (1st Dep't Mar. 10, 2022) ................................................................2, 7

Municipal Labor Committee v. City of New York,
     2021 WL 4502854 (Sup. Ct. N.Y. Cnty. Sept. 22, 2021), dismissed Municipal
     Labor Committee v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty.
     2021) ................................................................................................................2, 5

National Broadcasting Co. v. Communications Workers of America,
     860 F.2d 1022 (11th Cir. 1988) ..........................................................................12

New York Mun. Labor Comm. v. City of New York,
     73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021) ...................................................5, 15

Newburgh v. Pub. Emp. Rels. Bd.,
     97 A.D.2d 258 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984)..............................17

In re Soto,
     7 N.Y.2d 397 (1960) ............................................................................................9

Sykes v. Bank of America,
     723 F.3d 399 (2d Cir. 2013)................................................................................12

Town of Southampton v. New York State Pub. Empl. Rels. Bd.,
     2 N.Y.3d 513 (2004) ...........................................................................................18

**Statutes**

42 U.S.C. § 1983............................................................................................... *passim*

N.Y. Civ. Serv. L. § 75 ..............................................................................................5

N.Y. Civ. Serv. L. § 209 ..........................................................................................16

N.Y. Civ. Serv. L. § 200 .......................................................................................3, 10

N.Y. Civ. Serv L. § 208(1)(a) .....................................................................................3

N.Y. Education Law § 3020 ........................................................................................5

N.Y. Education Law § 3020-a .....................................................................................5

**Other Authorities**

N.Y. CPLR 5704 ........................................................................................................7

Fed. R. Civ. P. 12(b)(1)............................................................................................4, 9

iv

Fed. R. Civ. P. 12(b)(6) ............................................................................... 4, 9

New York Constitution Amendment, Article 1 § 6 ....................................... 5

<u>Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
   Vaccination For Department of Education Employees, Contractors, Visitors,
   and Others,</u> NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
   (Aug. 24, 2021),
   https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
   requirement-doe.pdf ............................................................................... 2

<u>Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
   Vaccination For Department of Education Employees, Contractors, Visitors,
   and Others,</u> NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
   (Sept. 15, 2021),
   https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
   requirement-doe-2.pdf ............................................................................ 2

<u>Order of the Commissioner of Health and Mental Hygiene to Require COVID-19
   Vaccination For Department of Education Employees, Contractors, Visitors,
   and Others,</u> NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
   (Sept. 28, 2021),
   https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
   requirement-doe-3.pdf ............................................................................ 2

Case 23-655, Document 77, 06/05/2023, 3525011, Page23 of 279

**PRELIMINARY STATEMENT**

Defendants United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), UFT President Michael Mulgrew ("Mulgrew") (UFT and Mulgrew, together, the "UFT Defendants"), Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA"), and CSA President Mark Cannizzaro ("Cannizzaro") (CSA and Cannizzaro, together, the "CSA Defendants") have, for years, fought for and protected the interests of their members – including Plaintiffs – through negotiations, mediations, arbitrations, and (when necessary) litigations opposite Plaintiffs' employer, Defendant New York City Department of Education (the "DOE"). In the face of these efforts, Plaintiffs confoundingly claim that the UFT and CSA Defendants (a) lack statutory authority to arbitrate on behalf of their members, despite clear, longstanding authority to do so; (b) conspired with the City Defendants and Arbitrator Scheinman to impinge on the rights of Plaintiffs, even though the UFT and CSA Defendants have previously lodged many of the same claims Plaintiffs have asserted in this action; and (c) aided and abetted the alleged violations of Plaintiffs' rights.  These claims are meritless.

The UFT and CSA Defendants are not state actors.  Nor have Plaintiffs alleged any facts sufficient to support a claim for conspiracy or aiding and abetting a state actor such that the UFT and CSA Defendants might be brought under color of state law.  Indeed, Plaintiffs' allegations, and indisputable facts in the public record, clearly evidence the opposite conclusion: the relationships between the UFT and CSA Defendants, respectively, and the DOE are inherently adversarial.  This is underscored by the myriad negotiations, arbitrations, and litigations against

1

Case 23-655, Document 77, 06/05/2023, 3525011, Page24 of 279

## JA-1664

the DOE and City not only prior to the pandemic, but during the pandemic *regarding many of the due process claims at issue here.*[1]

Indeed, while Plaintiffs could theoretically contend that these erstwhile foes somehow came together to deprive them of their rights on these issues, the facts prove otherwise.  For, it was due to the UFT and CSA Defendants' respective inability to reach agreement with Defendant DOE on the implementation of personnel and pay policies relating to the Department of Health and Mental Hygiene's ("DOHMH's") August 24, 2021 order requiring vaccination for workers in City educational facilities[2] (the "Mandate") that prompted the UFT and then CSA engagement of Defendant (and widely-respected arbitrator) Martin Scheinman to serve the traditional and lawful role of mediator (for the UFT) and arbitrator (initially for the UFT, and thereafter for CSA).

---

[1] See Municipal Labor Committee v. City of New York, 2021 WL 4502854  (Sup. Ct. N.Y. Cnty. Sept. 22, 2021) (facial challenge to DOHMH DOE Mandate for, *inter alia*, violations of substantive due process and lack of religious and medical exemptions), dismissed Municipal Labor Committee v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021); Matter of Municipal Labor Committee and City of New York, BCB 4458-21 (OCB 2021) (challenge to implementation of DOHMH DOE Vaccination Mandate without bargaining).  Moreover, the UFT and CSA Defendants supported Plaintiffs' application for a temporary restraining order enjoining summary termination in the instant action, and filed suit alongside some thirty other unions to enjoin summary terminations across the City.  See Broecker et al. v. New York City Dep't of Educ. et al., 1:21-cv-06387 (Dkt. # 71, 77); Municipal Labor Committee v. City of New York, 151169/2022 (Sup. Ct. N.Y. Cnty. 2022) (procedural due process challenge to summary terminations), CPLR 5704 application denied, 2022-00618 (1st Dep't Mar. 10, 2022).  Other individuals and entities have brought claims in federal and state court challenging the facial validity of the Mandate and DOE's implementation of same.  These have largely been unsuccessful.

[2] See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.  That Order was amended twice – once to include reasonable medical and religious accommodations, Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf, and again following the dissolution of the Second Circuit's temporary restraining order in a separate matter challenging the Citywide Mandate.  Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf.

Contrary to Plaintiffs' assertions, no special statutory authority is required for a recognized public-sector employee organization to arbitrate a dispute with a public employer. Nevertheless, the Taylor Law clearly provides not only that the parties may agree to arbitrate, but also that public policy encourages public employers and employee organizations to agree on procedures to resolve disputes, favoring "harmonious and cooperative" bargaining relationships. See N.Y. Civ. Serv. L. § 200. Plaintiffs seemingly conflate (a) the power of the New York Public Employment Relations Board ("PERB") to impose interest arbitration on DOE employee unions, with (b) whether those unions may themselves agree to arbitrate a dispute. Likewise, Plaintiffs conflate contractual grievance arbitration, which employee organizations have the right to administer under N.Y. Civ. Serv L. § 208(1)(a), with arbitration intended to resolve an actual or prospective impasse in collective bargaining, which by definition is not limited to the four corners of an existing agreement. Arbitration of bargaining disputes, as here, is specifically designed to address instances where a new or amended agreement is required. To hold this process illegal, as Plaintiffs urge, would preclude all arbitrations in the collective bargaining context and invalidate all bargaining disputes that have been arbitrated by public sector unions to date. Indeed, Plaintiffs' sought relief would actually endanger their rights by weakening the ability of public sector unions to advocate on behalf of their members.

Thus, because the UFT and CSA Defendants are not state actors, and have not acted under color of state law, Plaintiffs' conspiracy and aiding and abetting claims should be dismissed.

Nonetheless, as explained herein, the arbitration awards issued in this matter are legally valid and satisfy the constitutional and statutory process due to Plaintiffs with regard to placement on leave without pay ("LWOP") while maintaining health benefits in certain specific

3

JA-1666

circumstances.  It is undisputed that the contours of public employee property rights in their occupations are defined by state law and contract.  Here, the awards inform the contours of Plaintiffs' rights in accordance with the aforementioned constitutional and statutory obligations, and amend the UFT and CSA Defendants' respective collective bargaining agreements ("CBAs") by law.

Finally, Plaintiffs lack standing to directly challenge the arbitration awards[3] at issue here, as Plaintiffs were not parties to the arbitrations or negotiations that resulted in the Awards.

Accordingly, all claims against the UFT and CSA Defendants should be dismissed for lack of standing under Fed R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## **RELEVANT FACTS**

I.   The DOE Vaccine Mandate and Related Litigation and Negotiations

On August 24, 2021, Respondent Dave A. Chokshi, Commissioner of DOHMH, imposed the initial version of the Mandate, which was superseded by two subsequent orders on September 15, 2021 and September 28, 2021 (allowing for reasonable accommodations and extending the compliance deadline, respectively).  The operative Mandate set forth that DOE employees' failure to provide proof of their first COVID-19 vaccine dose by October 1, 2021 would lead to exclusion from DOE facilities where students are present, beginning on October 4, 2021.[4]

The UFT and CSA Defendants proceeded on two tracks, both challenging the validity of the Mandate in court and seeking negotiation with the DOE over related pay and personnel

---

[3] See Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021) (the "UFT Award"), Amended Complaint Ex. E, and Board of Education of the City School District of the City of New York and Council of Supervisors and Administrators (Impact Bargaining), Arbitration Award (Sept. 15, 2021) (the "CSA Award"), Amended Complaint Ex. F (collectively, the "Awards").

[4] See supra n.2.

4

policies the DOE sought to implement.  In New York Supreme Court, the UFT and CSA

Defendants, together with the MLC and other unions, argued that the Mandate *itself* (a) violates

employees' individual bodily integrity and right to refuse medical treatment by forcing

employees to undergo unwanted medical procedures or be precluded from engaging in their

chosen professions; (b) violates employees' due process rights by involuntarily preventing

permanently-appointed DOE and City employees declining vaccination from engaging in their

employment, resulting in a deprivation of their vested property rights in violation of the

Fourteenth Amendment, Article 1 § 6 of the New York Constitution, N.Y. Education Law §§

3020 and 3020-a, and N.Y. Civil Service Law § 75; and (c) fails to provide required exceptions

for those with medical contraindications or sincerely-held religious objections to inoculation.[5]

The court (Love, J.S.C.) initially granted a temporary restraining order due to the

Mandate's failure to provide for medical and religious objections. When that was cured by an

amended order, the court denied the requested preliminary injunction.  However, the court did

not make any findings with regard to the DOE's then-planned pay and personnel policies – it

only considered the Mandate's requirement that one need be vaccinated to enter a DOE facility

where students are present, provided no medical or religious accommodation applied.[6]

The DOE initially engaged in bargaining with the UFT on the impact and implementation

of the Mandate, and on September 1, 2021, the UFT filed a Declaration of Impasse with PERB.

(Amended Complaint ¶ 148).  PERB found the matter appropriate for impasse assistance, and

appointed Defendant Martin F. Scheinman to mediate the matter.  (Amended Complaint ¶ 134).

---

[5] <u>MLC et al. v. City of New York et al.</u>, 158368/2021 (Sup. Ct. N.Y. Cnty.).

[6] <u>See, generally</u>, <u>New York Mun. Labor Comm. v. City of New York,</u> 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021)

On September 10, 2021, after expedited mediation and then binding arbitration between the UFT, the City, and the DOE, covering a period of 18 days, Arbitrator Scheinman issued the UFT Award (Amended Complaint Ex. E) concerning pay and personnel policies related to the implementation of the Mandate.

Simultaneously, and separately, CSA was also engaged in negotiations with the City and DOE regarding pay and personnel policies applicable to their constituents.  These negotiations also went to binding arbitration and produced its own award from Arbitrator Scheinman on September 15, 2021.  (Amended Complaint Ex. F).

Although the arguments and relief sought in each arbitration was specific to those unions, the Awards generally provide, as relevant here, that:

    a.  Employees had until November 30, 2021 to elect to either (1) separate from service with incentives or (2) remain on an extended unpaid leave through September 5, 2022 with health benefits and an ability to return upon vaccination or lifting of the Mandate.

    b.  If an unvaccinated employee did not select either of these options by the deadline, as of December 1, 2021, the City employers "shall *seek to* unilaterally separate employees who have not opted" to either separate from service or remain on an unpaid leave.  However, all parties reserved their existing rights in this regard, as the Awards explicitly state: "except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein."[7]

The terms of the Awards are incorporated into the UFT Defendants' and CSA Defendants' respective CBAs.

---

[7] See Amended Complaint. Ex. E at 17-18 and Ex. F at 14 (emphasis added).

II.     The UFT and CSA Defendants Challenge Plaintiffs' Summary Terminations

On January 31, 2022, the DOE disseminated summary termination notices to unvaccinated employees who had not obtained an accommodation or elected an extended leave, where applicable, stating that their employment would cease on February 11, 2022.  See Memorandum & Order, Dkt. # 89, at *4-5.  Although the UFT and CSA Defendants disagree with Plaintiffs' contentions that the unions conspired in, or aided and abetted, alleged violations of Plaintiffs' statutory and contractual rights, the UFT and CSA Defendants agreed with Plaintiffs that the DOE terminations noticed on January 31, 2022 were violations of employee due process rights.[8]

The UFT and CSA Defendants and – separately – Plaintiffs filed letters before this Court seeking leave to move to enjoin these terminations.  (Dkt. # 72, 73).  On February 7, 2022, the Court denied the UFT and CSA Defendants' request, questioning whether the UFT and CSA Defendants had standing to make the argument in the instant action; however, the Court allowed Plaintiffs' motion to proceed.  The UFT and CSA then submitted a letter in support of Plaintiffs' application for a temporary restraining order.  (Dkt. #77).

In an attempt to enjoin the summary terminations of employees Citywide, the UFT and CSA Defendants, along with a broader coalition of unions led by the Municipal Labor Committee, brought suit by order to show cause in the Supreme Court, New York County.  See Municipal Labor Committee v. City of New York, 151169/2022 (Sup. Ct. N.Y. Cnty. 2022).  There, Justice Kim denied the unions' application for a temporary restraining order.  A CPLR 5704 motion for emergency reconsideration of the application for a temporary restraining order

---

[8] While Plaintiffs allege that the UFT and CSA Defendants conspired with other Defendants to infringe on their due process rights vis-à-vis, inter alia, LWOP, Plaintiffs do not allege that the unions conspired to deprive Plaintiffs of their right to statutory and contractual procedures regarding termination.

7

**JA-1670**

to enjoin the terminations was also rejected by the First Department.  See 2022-00618 (1st Dep't Mar. 10, 2022).

Subsequently, Plaintiffs' motion for emergency relief in this case was rejected.  See Memorandum & Order, Dkt. # 89.[9]

While the UFT and CSA Defendants do not here rehash those arguments, the unions' adversity to the DOE (and alignment with Plaintiffs) on this issue further belies Plaintiffs' arguments that the UFT and CSA Defendants have conspired with, or aided and abetted, the DOE in violation of Plaintiffs' rights.  Rather, the UFT and CSA have continued to fight for those rights, thereby obviating Plaintiffs' allegations.

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING TO DIRECTLY CHALLENGE THE AWARDS

As this Court has recognized,[10] "an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties."  See also Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir.1994) (employee lacked standing to challenge disciplinary arbitration award); Fleischer v. Barnard College, 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18, 2021) (accord). Likewise, New York state courts have held that current or former union members cannot challenge the validity of CBAs as non-parties to, or third-party beneficiaries of, those

---

[9] The UFT and CSA Defendants believe, as they have previously argued both before this Court and the Supreme Court, New York County, that (a) the Awards do not give the DOE the right to summarily terminate unvaccinated employees who have not selected from the personnel policies available to them by November 30, 2021; and (b) vaccination is not a "condition" or "qualification" for employment that removes employment decisions on that basis from the gamut of statutory or contractual disciplinary processes.  Rather, the Awards state that the City can "seek to" terminate those employees from December 2021 onwards, which they have now done in a manner which Plaintiffs **and** the UFT and CSA Defendants believe impermissible, given the Awards' explicit reservation of rights.

[10] Broecker et al. v. New York City Dep't of Educ. et al., __ F.Supp.3d __, 2021 WL 5514656, at *6 (E.D.N.Y. Nov. 24, 2021)

agreements.  See Fiore v. Town of Whitestown, 125 A.D.3d 1527, 1530 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015); see also Leblanc v. Security Servs. Unit Empls. of N.Y. State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, 278 A.D.2d 732, 733-34 (3d Dep't 2000) (affirming dismissal of employees' breach of contract claims against union, reasoning that the employees were not parties to the CBA and lacked third-party beneficiary standing).  Therefore, Plaintiffs' standing to challenge the propriety of the Awards' issuances is dubious at best, for they were not directly involved in the arbitrations and negotiations that resulted in the Awards.  See, e.g., Katir, 15 F.3d at 24 ; In re Soto, 7 N.Y.2d 397, 399 (1960).

Therefore, Plaintiffs' claims regarding the purported invalidity of the Awards should be dismissed under Fed. R. Civ. P. 12(b)(1).

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE UFT AND CSA DEFENDANTS

### A. Standard of Review Under Fed. R. Civ. P. 12(b)(6)

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible when it has "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  If plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.  Courts must accept as true the allegations in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

9

**JA-1672**

Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Federal courts apply this standard to claims under both state and federal law. See Hanna v. Plumer, 380 U.S. 460, 465 (1965); Cooper v. New York State Dep't of Labor, 819 F.3d 678, 680 (2d Cir. 2016).

Plaintiffs cannot satisfy this standard as against the UFT and CSA Defendants. Rather, they assert barebone (and arguably frivolous) allegations of conspiracy between unions and the DOE – which have an inherently adversarial relationship – and besmirch a neutral arbitrator. They fail to expound on the details of this alleged conspiracy, including how or why it arose, or what benefits anyone (especially the UFT and CSA Defendants) would glean from such a scheme. See, e.g., Ciambriello v. Cnty. Of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (affirming 12(b)(6) dismissal of, inter alia, § 1983 conspiracy claims, and holding that "conclusory allegations are insufficient to state" such a claim). Plaintiffs' aiding and abetting allegations are similarly infirm. See, e.g., Figueroa v. City of Camden, 580 F. Supp. 2d 390, 401-02 (D. N.J. 2008) (citing Ciambriello and dismissing claims that a union aided and abetted a § 1983 violation where "nothing in the pleadings indicate that the Unions were acting 'under color of state law'" and the complaint, on its face contained "no specific factual allegations to support a claim that the Unions conspired with the state actors in violation of § 1983."). These claims should be dismissed.

B.    Plaintiffs Fail to Allege Facts Sufficient to Support Violations of 42 U.S.C. §1983 By Defendants UFT, Mulgrew, CSA, or Cannizzaro

Defendants UFT and CSA are public employee labor organizations pursuant to New York Civ. Serv. L. § 200 et seq., and Defendants Mulgrew and Cannizzaro are private individuals who have been elected presidents of their respective unions. State and federal courts – including this Court – have explicitly recognized that the UFT is not a state actor. See Driskell

10

v. New York City, 11 Civ. 4915 (BMC), 2011 WL 6812516, at *3 (E.D.N.Y. Dec. 27, 2011)

(citing Ciambriello, 292 F.3d 307, 323 (2d Cir. 2003)) ("Plaintiff does not allege that the UFT is

a state actor, nor could she."); see also Callaghan v. United Federation of Teachers, 133 A.D.3d

412 (1st Dep't 2015) (in action against the UFT and its president, holding that the UFT is a

private actor, and that "courts in this State have consistently held that unions, even those

representing public employees, such as the UFT, are not state actors").  Likewise, CSA also

represents public employees, and is not itself a state actor.

Furthermore, as a general rule, labor unions – including public-sector unions – and their

agents are not state actors.  See Ciambriello, 292 F.3d at 323 (stating that New York's Civil

Service Employees Association (CSEA) was not a state actor for the purposes of 42 U.S.C. §

1983).  Nor does the mere fact that a union represents public employees render that union a state

actor.  See Harmon v. Matarazzo, 162 F.3d 1147 (2d Cir. 1998) (Table) (dismissing plaintiff's §

1983 claim against president of the Patrolmen's Benevolent Association, and noting that the

Patrolmen's Benevolent Association is an independent private entity that is in no way

intertwined with the police department, except to the extent that its members are police officers).

Rather, the UFT and CSA Defendants maintain an "inherently advers[ar]ial" relationship

with the state employers who employ their members and others they represent.  See Mehrhoff v.

William Floyd Union Free School District, No. 04-CV-3850, 2005 WL 2077292, at * 4

(E.D.N.Y. Aug. 22, 2005); see also McGovern v. Local 456, Int'l Bhd. Of Trustees, 107 F. Supp.

2d 311, 317-18 (S.D.N.Y. 2000).  This is true even where some union members are dissatisfied

with the result of negotiations.  See McGovern, 107 F. Supp. 2d. at 318 ("The Union's failure to

'win' on every point…and its compromise with the County result[ing] in the agreement, do

not…transform the Union's activity into state action.").

11

Therefore, Plaintiffs' burden is high, and unsatisfied.  To survive a motion to dismiss, Plaintiffs must allege facts showing that UFT and CSA Defendants were acting under the color of state law when engaging in the alleged violation.  See Dennis v. Sparks, 449 U.S. 24, 27 (1980).  In general, there are three main situations where private action is treated as state action under § 1983: "(1) when the private actor performs a traditional state function; (2) when a symbiotic relationship or close nexus exists between the private actor and the state; and (3) when the private actor is a willful participant in joint activity with the State or its agents."  See Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 373 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir. 2003) (internal citations and quotations omitted).  None of these factors are satisfied here.

The UFT and CSA Defendants are not performing a traditional state function, which is limited to actions which are "traditionally the exclusive prerogative of the State." National Broadcasting Co. v. Communications Workers of America, 860 F.2d 1022, 1026 (11th Cir. 1988) (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1988)).  Similarly, the UFT and CSA Defendants have no close nexus with the DOE or any other state institution, which exists when a private actor's conduct "has sufficiently received the imprimatur of the State so as to render it an action of the State." Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013) (internal citations omitted).

There is also no symbiotic relationship between the UFT and CSA Defendants and the City Defendants.  To establish such a relationship, Plaintiffs must show that the UFT and CSA Defendants "ha[ve] so far insinuated [themselves] into a position of interdependence with [the City Defendants] that [they] must be recognized as a joint participant in the challenged activity." See Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961).  Here, the UFT and CSA

12

Defendants have acted as a bulwark *against* the very City mandates Plaintiffs now challenge – a far cry from the symbiotic relationship or "willful participation" required under § 1983.

Nor have Plaintiffs mustered more than "mere[ ] conclusory allegation[s] that [UFT and CSA Defendants,] private entit[ies,] acted in concert with" the DOE, the City, or other Defendants.  See Ciambriello, 292 F.3d at 324 (holding that CSEA was not acting under color of state law, and dismissing § 1983).  Such "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct[,]" which Plaintiffs have not plead.  See Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)).  To the contrary, as evidenced supra, the UFT and CSA Defendants have actively sought to protect the interests of their respective members – including those who choose not to become vaccinated – throughout the announcement and implementation of the Mandate.  These actions constitute significantly more adversity to the interests of the City than courts have found necessary to stave off a § 1983 claim against a private actor.

Leahy v. Board of Trustees, 912 F.2d 917 (7th Cir. 1990), is instructive.  There, a college teacher brought suit against his public employee union under 42 U.S.C. § 1983 on grounds that the union had refused to take his grievance to arbitration.  The court found that he had alleged no facts "supporting the conclusion or inference that the Union has either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in his complaint."  See id. at 921.  Rather, the allegations of conspiracy and refusal to arbitrate grievances were held conclusory.  See id.; see also Ciambriello, 292 F.3d at 324 ("conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial relationship between the County and CSEA").

13

Case 23-655, Document 77, 06/05/2023, 3525011, Page36 of 279

In the instant case, Plaintiffs allege no specific facts or instances of misconduct or conspiracy by the UFT or CSA Defendants.  Instead, they make a series of nonspecific, repetitive claims that the UFT and CSA Defendants conspired with the City Defendants, Arbitrator Scheinman, SAMS, and SAMS LLC (in various combinations) to have Arbitrator Scheinman issue the awards, ¶¶ 135, 170-75, 179-86, 331-35, 341-47, 350, 359, 362, 367-371, 374-75, 377-83, 386, 395, 398, 438-442, purportedly as part of an unspecified "kickback" scheme that confoundingly included the goal of placing Plaintiffs on LWOP, ¶¶ 335, 338-39, 371, 374-75.[11] Furthermore, allegations relating to Defendants Mulgrew and Cannizzaro ring especially hollow. Defendants Mulgrew and Cannizzaro are the presidents of Defendants UFT and CSA, respectively.  The Amended Complaint contains no specific allegations concerning actions either took as individuals, but instead imputes purported union malfeasance to their officers in conclusory fashion.

Contrary to Plaintiffs' allegations, the negotiations and arbitrations which produced the Awards do not constitute evidence of a conspiracy; they are evidence of adversity.  The UFT and CSA Defendants protected the interests of their members – including those who choose not to become vaccinated – throughout the pandemic, challenging the Mandate and its implementation in both adversarial negotiations and in court: in fact, the UFT and CSA were part of the initial suit that compelled the City to consider medical and religious accommodation requests (which the City initially had declined to do).[12]

---

[11] It is particularly perplexing what benefits the UFT or CSA Defendants are alleged to have sought from this fictional scheme, the purported goals of which run contra to the *many* suits brought by the UFT and CSA in defense of Plaintiffs and others similarly situated.  See supra n.1.

[12] MLC et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

**JA-1677**

Plaintiffs also make nothing but conclusory allegations that the UFT and CSA Defendants' actions towards the DOE and Arbitrator Scheinman constitute a conspiracy. The notion that submitting an adversarial dispute to a mediator (who by definition is called to help resolve a dispute) under the auspices of New York's Taylor Law, or an arbitrator, results in an actionable conspiracy under § 1983 would render essentially all public sector labor relations actions evidence of a conspiracy. But that is not the law, and Plaintiffs therefore have no claim.

Likewise, Plaintiffs' "aiding and abetting"[13] theories are conclusory, unsupported by fact, and should be dismissed. As argued <u>supra</u>, the UFT and CSA Defendants have engaged in no conduct with, or in support of, the City Defendants or any other Defendants capable of supporting an "aiding and abetting" claim under § 1983. Rather, the UFT and CSA's litigations against the City, arbitrations, and prior precedent on the topic point to the simple truth that UFT and CSA Defendants' actions are – and have always been – both inherently adversarial to the City Defendants, and in Plaintiffs' interests. <u>See</u>, <u>e.g.</u>, <u>New York City Mun. Labor Comm. v. City of New York</u>, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021); <u>Mehrhoff</u>, 2005 WL 2077292, at * 4.

Even if Plaintiffs could support conspiracy or aiding and abetting theories (which they cannot), their allegations of due process harms stemming from the Awards are legally and logically flawed. Plaintiffs claim that but for the Awards, DOE would not have suspended Plaintiffs without pay in supposed contravention of their Fourteenth Amendment rights. <u>See</u>, <u>e.g.</u>, Amended Complaint ¶¶ 338, 339, 374, 375. This is untrue. Absent the Awards, Plaintiffs

---

[13] While 42 U.S.C. § 1983 does not explicitly account for "aiding and abetting" violations of the statute, several courts have recognized such claims as allegations of conspiracy. <u>See</u>, <u>Dykes v. Southeastern Pa. Transp. Auth.</u>, 68 F.3d 1564, 1570 (3d Cir. 1995); <u>Figueroa v. City of Camden</u>, 580 F. Supp. 2d 390, 401-02 (D.N.J. 2008) ("While it is not entirely clear on the face of their Complaint, Plaintiffs clarify that they intended to allege that the Unions conspired with state and local officials in order to deprive Plaintiffs of their rights.").

would still be subject to exclusion from facilities where students are present if those Plaintiffs

remain unvaccinated or cannot obtain an accommodation – yet they would lack the myriad

procedural and post-LWOP protections/options (severance and extended leave) provided for in

the Awards.  See, e.g., Marciano v. De Blasio, et al., __ F. Supp. 3d ___, No. 21-cv-10752 (JSR),

2022 WL 678779, at *10 (S.D.N.Y. Mar. 8, 2022) (denying public employee's challenge to

LWOP for failure to vaccinate, where relevant union and employer lacked any award or

agreement between the relevant union and public employer, and process for LWOP did not "fall[

] below the constitutional floor").

What Plaintiffs fail to appreciate is that the Awards created a series of rights and

procedures pertaining to the unvaccinated that would not otherwise be unavailable to them.

These include the ability to remain on paid leave while applications for accommodation are

pending, the option to extend LWOP (and therefore health benefits), the ability to appeal to an

outside arbitrator, and the availability of enhanced severance.  See Amended Complaint Exs. E

and F.

Accordingly, claims that the Awards have somehow infringed on Plaintiffs' rights are

simply inaccurate; rather, the Awards safeguarded and elevated Plaintiffs' rights.

C.       The UFT and CSA Awards Are Valid as a Matter of Law

Parties do not need to seek permission before voluntarily arbitrating disputes, and there is

no prohibition on mutually agreeing to move to binding arbitration under the Taylor Law *even

absent a declaration of impasse.*  See generally Civil Service Law § 209.  This is in keeping with

the Taylor Law's policy of "encourag[ing the] voluntary resolution of labor disputes involving

public employees." Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713, 713 (4th Dep't

1977).

16

The Taylor Law is administered by PERB, whose decisions and interpretation of their statute should be accorded deference.  Newburgh v. Pub. Emp. Rels. Bd., 97 A.D.2d 258, 260 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984).  PERB found that the UFT and the DOE were at impasse in negotiations, appointed a mediator, and then permitted the UFT and the DOE to voluntarily move to arbitration.  See Amended Complaint ¶¶ 134, 148.  Separately, CSA and the DOE engaged in arbitration regarding the same issues.  See Amended Complaint ¶ 139.

This Court, too, has recognized that, under the Taylor Law, parties may agree to move to binding impasse arbitration rather than follow PERB's procedure.  See, e.g., Margiotta v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003).

Moreover, there is no contractual prohibition on moving to binding impasse arbitration. Plaintiffs seemingly conflate the limited authority of a grievance arbitrator under Article 22.C of the UFT-DOE CBA with the authority of an arbitrator empowered to make decisions to resolve contentious bargaining, which is not limited by the CBAs.  Tellingly, the Amended Complaint does not appear to cite to any provisions of the CSA CBA, relying instead on conclusory allegations of nonspecific violations.

Nor do the law or applicable CBAs prohibit an arbitrator's retention of jurisdiction where, as here, an award provides for possible future procedure.

In any event, the UFT and CSA, respectively, attempted to and could have negotiated implementation of the Mandate-related policies here – which several other unions did without resorting to mediation and arbitration.  Thus, there is no reason to hold that the parties are prohibited from arbitrating those very same issues.

The Awards and their substance are valid, and Plaintiffs' claims that they have been injured as a result of the Awards' procedures fail as a matter of law.  The contours of Plaintiffs'

17

**JA-1680**

property interests in their employment are defined by applicable statutes and/or contract.  <u>See</u> <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972).  The UFT Defendants' and CSA Defendants' respective CBAs with the DOE were modified by the Awards, the terms of which are incorporated into the CBAs by law, and which supersede provisions to the contrary.  <u>See</u> <u>Town of Southampton v. New York State Pub. Empl. Rels. Bd.</u>, 2 N.Y.3d 513, 523 (2004).  Accordingly, any claims regarding placement on LWOP must be measured against Plaintiffs' rights under the CBAs as amended by the Awards.

## **CONCLUSION**

For the reasons set forth herein and in the accompanying submissions, the UFT and CSA Defendants respectfully request that the Court:

1. Dismiss all claims against the UFT and CSA Defendants, including those (a) seeking a declaratory judgment that the UFT and CSA Awards were promulgated without statutory or contractual authority; and (b) alleging that UFT and CSA engaged in conspiracies regarding, or aided and abetted, violations of 42 U.S.C. § 1983; and

2. award such other and further relief as the Court deems just and proper.

Dated: April 4, 2022                            Respectfully submitted,


<u>/s/ ALAN M. KLINGER</u>
STROOCK & STROOCK & LAVAN LLP
Alan M. Klinger, Esq.
Dina Kolker, Esq.
Arthur J. Herskowitz, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
aklinger@stroock.com
dkolker@stroock.com
aherskowitz@stroock.com

18

- and -

Beth A. Norton, Esq.
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
(212) 701-9420
bnorton@uft.org

*Co-counsel for the UFT Defendants*

- and -

David A. Grandwetter, Esq.
COUNCIL OF SCHOOL SUPERVISORS
AND ADMINISTRATORS
40 Rector Street, 12th Floor
New York, NY 10006
(718) 852-3000
david@csa-nyc.org

*Co-counsel for the CSA Defendants*

19

JA-1682

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

NICOLE BROECKER, et al., on behalf of themselves and        DOCKET NO.
all other similarly situated employees of the New York City  21-CV-06387
Department of Education,

                                   Plaintiffs,        **NOTICE OF MOTION**

       -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

                                   Defendants.

------------------------------------------------------------------X

     PLEASE TAKE NOTICE that upon all prior pleadings and proceedings herein, the

Declaration of KAROLINA WIADERNA Esq., with annexed exhibits, and the accompanying

Memorandum of Law, dated April 4, 2022, the defendants **Martin F. Scheinman, Scheinman**

**Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services,**

**LLC** will move this Court before the Honorable Kiyo A. Matsumoto, at the United States

Courthouse, located at 225 Cadman Plaza East, Brooklyn New York 11201, on a date to be

determined by the Court, for an Order: (i) dismissing the complaint, with prejudice, pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief

can be granted; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       April 4, 2022

Respectfully submitted,
VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP

*Karolina Wiaderna*

KAROLINA WIADERNA, Esq.
*Attorneys for Defendants*
**Martin F. Scheinman, Scheinman Arbitration
and Mediation Services, and Scheinman
Arbitration and Mediation Services, LLC**
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

TO:
THE SCHER LAW FIRM, LLP
Attorneys for Plaintiff(s)
One Old Country Road, Suite 385
Carle Place, NY 11514
516-746-5040
Austin R. Graff
agraff@scherlawfirm.com

Hon. Sylvia O. Hinds-Radix
Corporation Counsel of the City of NY
ANDREA MARY O'CONNOR
NYC Law Department
Attorneys for Defendants
NYC Department of Education and Meisha Porter
100 Church Street, Room 2-104
New York, NY 10007
212-356-4015
aoconnor@law.nyc.gov
Ivan A. Mendez, Jr. – imendez@law.nyc.gov

STROOCK & STROOCK & LAVAN
Attorneys for Defendants
United Federation of Teachers, Local 2,
American Federation of Teachers, AFL-CIO and
Counsel of Supervisors and Administrators
180 Maiden Lane
New York, NY 100038
212-806-5400
Alan M. Klinger – aklinger@stroock.com
Arthur Herskowitz – aherskowitz@stroock.com
Dina Kolker – dkolker@stroock.com

Beth A. Norton, Eq.
United Federation of Teachers, Local 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
212-701-9420
bnorton@uft.org
Co-counsel for the UFT Defendants

David A. Grandwetter, Esq.
Council of School Supervisors and Administrators
40 Rector Street, 12th Fl
New York, NY 10006
(718) 852-3000
david@csa-nyc.org
Co- counsel for CSA Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2022 a copy of the foregoing **NOTICE OF MOTION, DECLARATION, supporting exhibits** and **MEMORANDUM OF LAW** were served upon the following party via email:

THE SCHER LAW FIRM, LLP
Attorneys for Plaintiff(s)
One Old Country Road, Suite 385
Carle Place, NY 11514
516-746-5040
Austin R. Graff
agraff@scherlawfirm.com

Hon. Sylvia O. Hinds-Radix
Corporation Counsel of the City of NY
ANDREA MARY O'CONNOR
NYC Law Department
Attorneys for Defendants
NYC Department of Education and Meisha Porter
100 Church Street, Room 2-104
New York, NY 10007
212-356-4015
aoconnor@law.nyc.gov
Ivan A. Mendez, Jr. – imendez@law.nyc.gov

STROOCK & STROOCK & LAVAN
Attorneys for Defendants
United Federation of Teachers, Local 2,
American Federation of Teachers, AFL-CIO and
Counsel of Supervisors and Administrators
180 Maiden Lane
New York, NY 100038
212-806-5400
Alan M. Klinger – aklinger@stroock.com
Arthur Herskowitz – aherskowitz@stroock.com
Dina Kolker – dkolker@stroock.com

Beth A. Norton, Eq.
United Federation of Teachers, Local 2, AFT, AFL-CIO
52 Broadway
New York, NY 10004
212-701-9420
bnorton@uft.org
Co-counsel for the UFT Defendants

David A. Grandwetter, Esq.
Council of School Supervisors and Administrators
40 Rector Street, 12th Fl
New York, NY 10006
(718) 852-3000
david@csa-nyc.org
Co- counsel for CSA Defendants

VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP

By:   *Karolina Wiaderna*
       KAROLINA WIADERNA
       k.wiaderna@vbpnplaw.com
*Attorneys for Defendants*
**Martin F. Scheinman, Scheinman Arbitration
and Mediation Services, and Scheinman
Arbitration and Mediation Services, LLC**
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

JA-1686

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
NICOLE BROECKER, et al., on behalf of themselves and     DOCKET NO.
all other similarly situated employees of the New York City    21-CV-06387
Department of Education,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

Defendants.

---------------------------------------------------------------X


**DEFENDANTS MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND
MEDIATION SERVICES, and
SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC
MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**


**VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP**
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,
and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………… i-iii

PRELIMINARY STATEMENT ……………………………………… 1

STANDARD FOR REVIEW ……………………………………… 5

LEGAL ARGUMENT ……………………………………… 6

        POINT I.
        NEW YORK CIVIL SERVICE LAW ARTICLE 14, §209
        PERMITS THE PARTIES TO SUBMIT TO ARBITRATION,
        WHICH THE UNION DEFENDANTS AND THE CITY CHOSE
        TO DO, THEREFORE, ARBITRATOR SCHEINMAN ACTED
        WITH STATUTORY AUTHORITY TO ARBITRATE IMPASSE
        AND ISSUE BINDING ARBITRATION AWARDS **.**
        ……………………………………… 6

        POINT II.
        CONSPIRACY CLAIMS AGAINST ARBITRATOR
        SCHEINMAN MUST FAIL (1) AS ALLEGATIONS ARE
        CONCLUSORY AND GENERAL AND MERE FACT THAT
        ARBITRATOR AGREED TO ARBITRATE IMPASSE IS
        INSUFFICENT TO GIVE RISE TO A CONSPIRACY CLAIM,
        (2) SAMS WAS NOT GRANTED POWER TO DECIDE
        APPEALS AND PLAINTIFFS DID NOT AVAIL
        THEMSELVES OF THE APPEALS PROCESS AND THUS
        FAILED TO SHOW INJURY.
        ……………………………………… 10

        POINT III.
        ACTING WITHIN HIS AUTHORITY AND SCOPE,
        ARBITRATOR SCHEINMAN IS AFFORDED ABSOLUTE
        IMMUNITY ……………………………………… 14

CONCLUSION ……………………………………… 14

## TABLE OF AUTHORITIES

**Cases**

Arena v. Department of Social Services of Nassau County,
216 F.Supp.2d 146 (E.D.N.Y. 2002) ……………………………………..   11

Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009)   ……………………………………..   5

ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,
493 F.3d 87, 98 (2d Cir 2007)   …………………………………   5

Austern v. Chicago Bd. Options Exch., Inc.
898 F.2d 882, 886 (2d Cir.1990) ……………………………………   14

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 [2007]) ……………………   5

Bd. of Educ. of City Sch. Dist. of City of New York v. New York State Pub. Rels. Bd.
75 N.Y.2d 660, 669, 554 N.E.2d 1247, 1252 (1990) …………………………   9

Ciambriello v. County of Nassau,
292 F.3d 307, 324 (2d Cir. 2002)   …………………………………   11

DeMarco v. City of New York,
No. 08–CV–3055 (RRM)(LB), 2011 WL 1104178 (E.D.N.Y. March 23, 2011)..   14

Dwares v. N.Y.C.,
985 F.2d 94, 100 (2d Cir. 1993)   …………………………………   11

Hayden v. Paterson,
594 F.3d 150, 161 (2d Cir. 2010)   …………………………………..   5

Jacobs v. Mostow
271 F. App'x 85, 88 (2d Cir. March 27, 2008) ………………………………   14

Margiotta v. Kaye
283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) …………………………………   6, 9, 10

Matter of Alden Cent. Sch. Dist. v. Watson
56 A.D.2d 713,713 (4th Dep't 1977) …………………………………   7

McCray v. Patrolman N.A. Caparco,
761 F. App'x 27,31 (2d Cir. 2019)   …………………………………   11

Rodriguez v. Weprin
116 F.3d 62, 65-66 (2d Cir. 1997)   …………………………………   11

JA-1689

Webb v. Goord
340 F.3d 105, 110-11 (2d Cir. 2003) …………………………………   11

**Statutes**

Fed. Rules of Civ. Pro. 12(B) (6)   …………………………………   5, 11

Title 42 U.S.C. Section 1983   …………………………………   1, 14

NY Civil Service Law Article 14, ("The Taylor Law"), §209

Case 23-655, Document 77, 06/05/2023, 3525011, Page50 of 279

## PRELIMINARY STATEMENT

This Brief is submitted by the Defendants Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services, LLC (hereinafter "Scheinman") to dismiss Plaintiffs' Amended Complaint for a failure to state a cause of action pursuant to Fed. Rules of Civ. Pro. 12(b)(6).

Plaintiffs allege that Defendant Arbitrator Scheinman (1) lacked authority to arbitrate impasse between the City and each of the labor union Defendants[1]—UFT, CSA, and District 37; (2) conspired with UFT, CSA, and District 37 to violate Plaintiffs constitutional rights under 42 U.S.C. §1983.

At issue here is the Vaccine Mandate issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene on August 24, 2021. The order required DOE employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021. Representing its members in bargaining negotiations, the various municipal unions, including Defendants UFT, CSA, District 37, viewed the policy as draconian and opposed the mandate. While the unions and the City worked closely together and attempted to negotiate in good faith, their efforts were unsuccessful. As the policy was scheduled to become effective on September 13, 2021, a Declaration of Impasse was filed with the Public Employment Relations Board ("PERB"). Thereafter, a PERB-appointed mediator, Defendant Scheinman, held multiple mediation sessions with the parties. While progress was made, with the start of the school year imminent, the parties agreed to move to an expedited arbitration. Following the arbitration sessions, Arbitrator Scheinman issued binding arbitration awards.

---

[1] The United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"); Counsel of Supervisors and Administrators ("CSA"), District Council 37, ("DC 37 Local 372").

1

The 93 named Plaintiffs are tenured DOE employees who failed to comply with the COH Order and have failed to avail themselves with the options provided to them in the arbitration awards. There is no allegation that any of the Plaintiffs filed for an exemption, was denied same, submitted himself/herself to an appeal process, and that the appeal was ultimately denied.

Plaintiffs now challenge the consequence of that non-compliance by alleging that the mandate is unconstitutional, and the arbitrations awards are invalid.

As set forth below, Scheinman Defendants are entitled to dismissal of the claims as (1) as the plain language of NY Civil Service Law Article 14, §209 empowers the labor unions and the City to voluntarily chose to arbitrate issues, which is what the parties did in this case thereby authorizing Arbitrator Scheinman to issue binding arbitration awards; (2) (a) mere conclusory assertions and conjectures—Arbitrator's agreement to arbitrate the impasse--fail to give rise to a cognizable §1983 conspiracy claim and (2) (b) SAMS neither determined the appeals nor there is an allegation that any of the Plaintiffs availed themselves of the process and were injured by it; and 2 (c) the claims are barred by the arbitrator's well-established absolute quasi-judicial immunity.

## FACTUAL BACKGROUND

On August 24, 2021, The Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") issued an order requiring all NYC DOE employees to show proof of compliance with the Vaccine Mandate, which required a receipt of at least one dose of vaccination against COVID-19 by September 27, 2021. (See **Exhibit A**, ECF No. 47, Amended Complaint; ECF No. 89, Order dated February 12, 2022). Plaintiffs are employed by the New York City Department of Education ("NYC DOE") and are represented in bargaining negotiations by the various labor unions, including Defendants the United Federation of Teachers, Local 2,

2

American Federation of Teachers, AFL-CIO ("UFT"); Counsel of Supervisors and Administrators ("CSA"), District Council 37, ("DC 37 Local 372"). Id. Each of the union Defendants, representing its member, viewed the policy as draconian and opposed the mandate. Id at 110. The implementation of the policy was deemed necessary to be negotiated. Id. at 111. Consequently, the union Defendants attempted engaged in intense bargaining negotiations with the City.   Id. While the parties worked closely together and attempted to negotiate in good faith, their efforts were unsuccessful. Id. As the policy was scheduled to become effective on September 13, 2021 and given the reported "stalemate between the parties and the fleeting time before the upcoming school year, a Declaration of Impasse" was filed with the Public Employment Relations Board ("PERB") on September 1, 2021. Id. at 116. On September 2, 2021, PERB appointed Martin Scheinman to be a mediator, in the attempt to bridge the divide within the expedited timeframe. Id. at 153. The PERB-appointed mediator, Defendant Scheinman, held mediation sessions with the parties on each of September 2, 3, 4 and 5, with some days having multiple sessions.   Id. at 155. While progress was made, with the start of the school year imminent along with the mandates scheduled to commence on September 13 and September 27, respectively, the parties agreed to move to an expedited arbitration due to the exigencies of these circumstances. Multiple arbitration sessions were held. Id. at 78. Following the arbitration sessions, on September 10, 2021, the arbitrator issued a binding arbitration decision between the City and UFT ("UFT Impact Arbitration Award") , which established in relevant part (1) a processes for religious and medical exemptions and accommodation requests, namely, processes for staff to apply for, and appeal from adverse determinations for medical and religious accommodations to an independent arbitration panel (and the ability to remain on the DOE payroll and continued medical benefits coverage while such applications and appeals are pending); (2) options to voluntarily separate from DOE service

3

with certain compensation benefits, or to elect for an extended non-disciplinary leave without pay ("LWOP"), all while maintaining health benefits until September 5, 2022; and (3) that as of December 1, 2021, the DOE may seek to unilaterally separate employees who have not complied with the Vaccination Mandate, or who have not obtained an approved exemption or accommodation and have not opted for either separation option. (See, ECF No. 19-1, Impact Arbitration Award at pp. 6-18).

Finally, the Impact Arbitration Award delineated an appeal's process for the NYC DOE employees challenging the denial of a request for an exemption. The award provided, in relevant parts:

> F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination ( . . . ). Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty-eight (48) hours after the appeal.

> G. A panel of arbitrators identified by SAMS shall hear these appeals ( . . . ).

> L. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution

(Id.).

The arbitration awards for CSA and District 37 were issued on September 15, 2021 and October 3, 2021, respectively, and mirrored the Impact Arbitration Award. (See ECF. No. 33 at 7, Order Denying TRO). All parties were subject to similar terms regarding the Vaccine Mandate procedures. (Id. at 8).

Lastly, Plaintiffs do not allege that any of them submitted himself/herself to the appeal process. (See, **Exhibit A**, ECF. No. 47; **Exhibit B** at 17, ECF No.89, Order Denying the TRO).

4

JA-1694

## STANDARD FOR REVIEW

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim is well-settled.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 [2007]).  In evaluating the sufficiency of a complaint "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Id., 594 F.3d at 161. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

## LEGAL ARGUMENT

**POINT I. NEW YORK CIVIL SERVICE LAW ARTICLE 14, §209 PERMITS THE PARTIES TO SUBMIT TO ARBITRATION, WHICH THE UNION DEFENDANTS AND THE CITY CHOSE TO DO, THEREFORE, ARBITRATOR SCHEINMAN ACTED WITH**

**STATUTORY AUTHORITY TO ARBITRATE IMPASSE AND ISSUE BINDING ARBITRATION AWARDS.**

The allegations against Scheinman Defendants should be dismissed as UFT, CSA and District 37 and the NYC DOE submitted to voluntary arbitration pursuant to Civil Service Law Article 14, §209, therefore, Defendant Scheinman acted within his authority and scope when he issued the arbitrations awards.

The Public Employees Fair Employment Act of 1967 under NY Civil Service Law Article 14, ("The Taylor Law"), §209 provides, in parts, that:

2. Public employers are hereby empowered to enter into written agreements with recognized or certified employee organizations setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations. *Such agreements may include the undertaking by each party to submit unresolved issues to impartial arbitration.*

3. *On request of either party* or upon its own motion, as provided in subdivision two of this section, and in the event the board determines that an impasse exists in collective negotiations between such employee organization and a public employer as to the conditions of employment of public employees, *the board shall render assistance* as follows:
(a) to assist the parties to effect a voluntary resolution of the dispute, the board shall appoint a mediator or mediators' representative of the public from a list of qualified persons maintained by the board;
(. . .)
(d) . . . *[if] the impasse continues, the public employment relations board shall have the power to take whatever steps it deems appropriate to resolve the dispute, including* (i) the making of recommendations after giving due consideration to the findings of fact and recommendations of such fact-finding board, but no further fact-finding board shall be appointed and (ii) *upon the request of the parties, assistance in providing for voluntary arbitration.*

As the foregoing demonstrates, the parties have a statutory right, pursuant to the Taylor Law, to choose to mutually agree to a binding arbitration. See also, e.g., Margiotta v. Kave, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003). In fact, this Court, in Margiotta v. Kave, discussed the impasse procedure:

The first step of the impasse procedure for all covered employees is mediation. Id. §§ 209.3(a), 209.4(a). PERB appoints a mediator to assist the parties in reaching a voluntary resolution of their dispute. Id. With the exception of employees who are eligible for compulsory interest arbitration, if the dispute is still not settled,

JA-1696

impasses involving all public employees proceed next to a fact-finding board which is appointed by PERB to make findings and recommendations for resolution of the dispute. Id. § 209.3(b)-(d). In the alternative, the parties together may voluntarily submit to arbitration. Id. § 209.3(d)(ii).

The Public Employment Relations Board's (PERB) authority to administer the impasse resolution procedures, including interest arbitration, and the parties right to choose to submit to same is similarly noted on the official New York State governmental website [2].

Of note, the public policy behind the Taylor Law is to "encourage [the] voluntary resolution of labor disputes involving public employees." Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713, 713 (4th Dep't 1977).

In the present case, PERB found that the parties were at impasse in negotiations, appointed a mediator, and, then, after the mediation was ultimately unsuccessful, permitted each of the union Defendants and the DOE to voluntarily move to arbitration. This is evidenced by a letter informing PERB of the union Defendants' and the City's decision to submit the impasse to a binding arbitration. (ECF No. 47 **Exhibit A** at 155, Amended Complaint).

> We write to advise you that PERE-appointed mediator Martin Scheinman held (virtual) mediation sessions with the parties on each of September 2, 3, 4 and 5, with some days having multiple sessions. While progress was made, with the start of the school year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13th and Sept. 27th, respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce. Arbitration sessions are being held on Sept. 6th. We will keep PERB apprised as to status.

These arbitrations were not imposed by the statute. These arbitrations were not mandated by PERB. They were not compulsory. They were the result of a voluntary agreement between the parties, which the statue specifically permits. Accordingly, Arbitrator acted within his authority

---

[2] https://perb.ny.gov/taylor
law/#:~:text=209%20Resolution%20of%20Disputes%20in,year%20of%20the%20public%20employer.

7

and scope arbitrate over the UFT, CSA and District 37 impasse and issue the binding arbitration awards.

Plaintiffs make two arguments to support their mistaken claim that Arbitrator Scheinman did not have authority to arbitrate the impasse. First, Plaintiffs cite and rely on § 209.3 (f). Plaintiffs' reliance on the section is misplaced; § 209.3 (f) is inapplicable here and therefore inconsequential. In that context, § 209(3) (f), provides:

> where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply, and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present;  (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement.   The board may provide such assistance as may be appropriate.

Further, § 209(3) (e ) provides that the following provisions do not apply to the school districts:

> (iii) the legislative body or a duly authorized committee thereof shall forthwith conduct a public hearing at which the parties shall be required to explain their positions with respect to the report of the fact-finding board; and (iv) thereafter, the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved.

As the foregoing section's plain language merely provides that, school districts, unlike other public employers, are not obligated to conduct a public hearing and that there is no imposition on a legislative body to take any actions regarding the fact-finding report.

It is evident that  § 209(3)(f) has no application to the case at bar.

Second, Plaintiffs argued that Arbitrator Scheinman did not have contractual authority to arbitrate the impasse because the UFT's collective bargaining agreement limits an arbitrator's "decision strictly to the application and interpretation of the provisions of this Agreement and he/she shall be without power or authority to make any decision: 1. Contrary to, or inconsistent

8

with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law." (ECF No. 47 Amended Complaint, ¶157). Plaintiffs, therefore, argued that Arbitrator Scheinman exceeded his authority since the award modified and was inconsistent with the applicable law.

Again, plaintiff's reliance on the CBA is misplaced as the plain language of Article 22 of the CBA demonstrates that the article pertained strictly to grievance arbitration. A grievance arbitration is a process for union and employer to resolve disagreements concerning interpretations or application of an existing CBA. There is no ambiguity that the arbitrations at issue in this case were not grievance arbitrations. Accordingly, the CBA provision is inconsequential.

Lastly, and importantly, one crucial distinction must be noted. It is worth noting that within the meaning of the Taylor's Law, the purpose and interpretation of compulsory arbitrations is that it is an entitlement and not a punitive measure. Taylor's Law provides for an impasse mechanism for certain classes of public employees and differentiates between a compulsory and voluntary arbitration. Specifically, the statute provides that limited classes of public employees, such as police officers, firefighters and other miscellaneous public safety employees, are *entitled* to a compulsory arbitration. See, e.g. Margiotta, supra. At 860. In cases where public safety employees declare impasse, the Legislature imposed a mechanism where the parties must arbitrate in order to resolve the conflict. Id. In cases of impasse as to all other public employees, including school boards, the Legislature did not impose a mechanism for a final procedure. See, e.g. Bd. of Educ. of City Sch. Dist. of City of New York v. New York State Pub. Emp. Rels. Bd., 75 N.Y.2d 660, 669, 554 N.E.2d 1247, 1252 (1990). Rather, "the Legislature has manifested an intention to commit these decisions to the discretion of the public employer." Id. In other words, "The Taylor law neither creates nor confers any right or benefit in favor of employees" except for those

9

specifically delineated in the statue, such as public safety employees. <u>Margiotta</u>, <u>supra</u> at 865. As the Court in <u>Margiotta</u> noted, "[b]ecause the plaintiffs, [like Plaintiffs here] are not included in the list of employees *entitled* to compulsory arbitration, they have no due process entitlement to such a procedure in the event of impasse." <u>Id</u>. (*emphasis added*). However, while the parties have no duty to arbitrate, they have a right do same.  <u>Id.</u>; see also, Civil Service Law 209. There is no statute or decisional law prohibiting public employees and public employers to choose to submit to a voluntary binding arbitration to resolve their conflict.

This is precisely what took place in this case. The unions and the City were not statutorily mandated to arbitrate, rather, they voluntarily chose to submit the impasse to the arbitration.  <u>Id</u>. To reiterate, in this case, while the union Defendants were not statutorily entitled to an arbitration, they were statutorily permitted to choose to voluntarily submit their impasse to binding arbitrations, which is what they did.

**POINT II. CONSPIRACY CLAIMS AGAINST ARBITRATOR SCHEINMAN MUST FAIL (1) AS ALLEGATIONS ARE CONCLUSORY AND GENERAL AND MERE FACT THAT ARBITRATOR AGREED TO ARBITRATE IMPASSE IS INSUFFICENT TO GIVE RISE TO A CONSPIRACY CLAIM, (2) SAMS WAS NOT GRANTED POWER TO DECIDE APPEALS AND PLAINTIFFS DID NOT AVAIL THEMSELVES OF THE APPEALS PROCESS AND THUS FAILED TO SHOW INJURY.**

Plaintiffs' conspiracy claim must fail as the allegation that arbitrating the impasse is evidence of conspiracy, in and of itself, is speculative, conclusory and insufficient to state a cognizable claim under Section 1985, and, as to the claims  regarding the appeal's procedure, Plaintiffs failed to allege injury.

On 12(b)(6) motions, a litigant's pleading obligations are not "toothless"; "the pleader must allege facts, either directly or inferentially, that satisfy each element required for recovery under some actionable legal theory." <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65-66 (2d Cir. 1997).  To state a claim under § 1983, a plaintiff must allege that the challenged conduct was attributable, at least in

10

part, to a person acting under color of state law. <u>Arena v. Department of Social Services of Nassau County,</u> 216 F.Supp.2d 146 (E.D.N.Y. 2002). When, like here, the § 1983 allegations involve a private actor, a plaintiff must plead a conspiracy claim and therefore allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>McCray v. Patrolman N.A. Caparco,</u> 761 F. App'x 27,31 (2d Cir. 2019) (quotations omitted). Such private actors must be a "willful participant in joint activity with the State or its agents." <u>See Ciambriello v. County of Nassau,</u> 292 F.3d 307, 324 (2d Cir. 2002) (internal citations omitted). Importantly, "a merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." <u>Id</u>. Therefore, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" should be "dismissed." <u>Dwares v. N.Y.C.,</u> 985 F.2d 94, 100 (2d Cir. 1993). As such, Plaintiff "must [plead] some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." <u>Webb v. Goord,</u> 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).

To support their conspiracy claim, Plaintiffs make two points: (A) Plaintiffs believe that arbitrating the impasse and issuing the awards in and of itself constitutes evidence of conspiracy since Arbitrator Scheinman did not have either statutory or contractual to do so; (B) Plaintiffs also allege that Defendant Scheinman conspired with the parties because it granted "SAMS, LLC authority to determine appeals from determinations regarding exemptions for religious and/or disability."(Exhibit A ¶370).

11

Plaintiffs conspiracy argument has no basis in law and factually incorrect. As to point (A), this argument is circular as it's based on logical fallacy of assuming of what is intended to be proven. To state a cognizable conspiracy claim, the law requires that private actors, such as Arbitrator Scheinman, must be a "willfulparticipant in joint activity with the State or its agents." Here, Plaintiffs merely allege that the arbitrator conspired with the parties because he agreed to arbitrate the impasse. Plaintiffs alleged in a conclusory fashion, that Arbitrator Scheinman "failed to stop the NYCDOE from suspending the plaintiffs without pay due process" (Id. ¶439); "directly participated in and/or tacitly condoned the violations of the plaintiffs' constitutional rights." (Id. ¶442); "foster[ed] and encourage[ed] the NY DOE" (Id., ¶438), and "have engaged in a course of section and behavior rising to the level of a policy, and condoned practice" which has deprived Plaintiffs of their rights" (Id. ¶395).

This claim falls short of the requirement of being a willful participant. Plaintiff allege nothing mora than conclusory, vague, or general allegations. The conspiracy claim pleading is toothless and therefore is insufficient to survive the scrutiny of a 12(b) motion.

Additionally, the foregoing demonstrated that Arbitrator Scheinman acted pursuant to a statutory authority to arbitrate the impasse.

Plaintiffs remaining argument regarding the appeals process, as stated in point (B), must fail for two reasons. First, the allegation is factually incorrect. The award did not grant SAMS authority to *determine* appeal. Rather, SAMS was tasked with overseeing and streamlining the appeals procedure. Specifically, the decision to grant or deny a request for an exemption was submitted to an independent panel unrelated to SAMS. If the employee wishes to appeal a determination, the award further provided that "[a] panel of arbitrators *identified* by SAMS shall

hear these appeals." (See ECF No. 19-1, Impact Arbitration Award at pp. 6-18; ECF. No. 47

**Exhibit A** - Amended Complaint at pp. 76-90, Impact Arbitration Award)

With regard to appealing the denial, the award did not provide that Arbitrator Scheinman would decide any of these appeals. The award did not provide that any of SAMS' arbitrators would decide any of these appeals. Rather, SAMS was merely tasked with identifying an independent arbitrator, not SAMS's arbitrator, an independent panel of arbitrators.  Scheinman Defendants were tasked to facilitate and oversee the process and were not active participants in the decision-making process.

Second, and more important, Plaintiffs failed to allege that they have availed themselves of the appeal process and have therefore failed to allege that they were injured by it.  The Amended Complaint is entirely devoid of any allegations that any of the Plaintiffs opted to appeal a denial of a request for an exemption.  Furthermore, Plaintiffs' Motion for Temporary Restraining Order (hereinafter "TRO") and Preliminary Injunction was similarly devoid of any allegations that the Plaintiffs were injured by the appeals process. In fact, Your Honor highlighted this deficiency in the Order denying the TRO, stating that:

> None of the other declarant-Plaintiffs state whether they availed themselves of any of the pre- or post- deprivation processes, and none of the declarant-Plaintiffs articulated their individual religious, medical, or other bases for refusing to receive a COVID-19 vaccination.   Mr. Graff, counsel to Plaintiffs, did not include in his signed Affidavit any information regarding which of the ninety-three Plaintiffs, or the subset of forty-three Plaintiff members who allegedly received termination notices,[10] had availed themselves of any processes.(See ECF No. 76-1, Graff Aff.).

**(Exhibit B** at 17, ECF No.89).

Therefore, Plaintiffs have failed to show that they sustained any constitutional violation/or depravation of rights  by the appeal's process.

13

**POINT III. <u>ACTING WITHIN HIS AUTHORITY AND SCOPE, ARBITRATOR SCHEINMAN IS AFFORDED AN ABSOLUTE IMMUNITY</u>.**

Finally, the claims against defendant Scheinman—all of which relate to his actions as the arbitrator—are barred by the doctrine of absolute immunity.

It is well settled that "any claims for damages against the arbitrator are barred by that individual's absolute immunity 'for all acts within the scope of the arbitral process.' " <u>Jacobs v. Mostow</u>, 271 F. App'x 85, 88 (2d Cir. March 27, 2008) (summary order) (quoting <u>Austern v. Chicago Bd. Options Exch., Inc.</u>, 898 F.2d 882, 886 (2d Cir.1990)); see also <u>DeMarco v. City of New York</u>, No. 08–CV–3055 (RRM)(LB), 2011 WL 1104178 (E.D.N.Y. March 23, 2011) ("Accordingly, as the arbitrator in Plaintiff DeMarco's § 3020–a proceeding, [the arbitrator] is entitled to absolute immunity from liability for acts committed in that capacity.").

As the foregoing demonstrates that the arbitrator acted within the scope of the arbitrator and, thus, are barred by the doctrine of absolute immunity. Moreover, with respect to any request for prospective relief, there is no allegation of a violation of a prior declaratory decree and, thus, no such relief is available under Section 1983. Accordingly, the claims against defendant Scheinman must be dismissed as a matter of law.

**CONCLUSION**

The plain language of the Civil Service Law section 209 is unequivocal and specifically permits the parties to agree to a voluntary binding arbitration. Defendants UFT, CSA and District 37 and the City chose to submit the impasse to the arbitration pursuant to Taylor's Law thereby invoking Arbitrator Scheinman's authority to issue the binding arbitration awards.

Furthermore, Plaintiffs' claim that accepting assignment to arbitrate impasse is proof of conspiracy must fail as it is clearly insufficient to plead a cognizable claim of constitutional violations under 42 U.S.C. §1983. Additionally, and the appeal procedure is legal and valid and

14

did not empowered Arbitrator Scheinman or SAMS to decide the appeals. Rather, it simply

facilitated the process for efficiency and expediency. Lastly, Plaintiffs' claims against Arbitrator

Scheinman and SAMS are barred by the doctrine of absolute immunity.

Dated: Garden City, New York
       April 4, 2022

                              Respectfully submitted,

                              VIGORITO, BARKER, PATTERSON,
                              NICHOLAS & PORTER, LLP
                              *Karolina Wiaderna*
                              Karolina Wiaderna
                              Attorneys for Defendants
                              *Martin F. Scheinman, Scheinman Arbitration and*
                              *Mediation Services,*
                              *and Scheinman Arbitration and Mediation Services,*
                              *LLC*
                              300 Garden City Plaza, Suite 100
                              Garden City, New York 11530
                              (516) 282-3355

15

JA-1705

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NICOLE BROECKER, et al., on behalf of themselves and     DOCKET NO.
all other similarly situated employees of the New York City     21-CV-06387
Department of Education,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

Defendants.

------------------------------------------------------------------X

### DECLARATION OF KAROLINA WIADERNA IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

I, KAROLINA WIADERNA, pursuant to 28 U.S.C. § 1746, declare under penalties of perjury the following:

1.      I am of Counsel with the law firm of VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP, attorneys for Defendants Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services, LLC (hereinafter "Scheinman")

2.      I am an attorney admitted to practice before the United States District Court for the Eastern District of New York.

3.      I submit this Declaration, and the exhibits annexed hereto, in support of Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and

**JA-1706**

Mediation Services, LLC's Motion to Dismiss plaintiff's Amended Complaint, with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

4.      I certify that the attached exhibits, listed below, are true copies:

Exhibit A:   Plaintiffs' Amended Complaint with attachments – ECF Doc 47

Exhibit B:   Order denying Plaintiff's Second request for Temporary Restraining Order dated February 12, 2022—ECF No. 89.

5.      I declare under penalty of perjury that the foregoing is true and correct.

Dated: Garden City, New York
       April 4, 2022

Respectfully submitted,

VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP

*Karolina Wiaderna*
KAROLINA WIADERNA, Esq.
*Attorneys for Defendants*
Martin F. Scheinman, Scheinman Arbitration and
Mediation Services, and Scheinman Arbitration and
Mediation Services, LLC (hereinafter "Scheinman")
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

**JA-1707**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
NICOLE BROECKER, *et al.*, on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                                Plaintiffs,

                -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                               Defendants.
--------------------------------------------------------------------X

**INDEX NO. 21-cv-6387**

**AFFIRMATION OF AUSTIN
GRAFF IN OPPOSITION TO
THE DEFENDANTS'
MOTIONS TO DISMISS**

     AUSTIN GRAFF, an attorney admitted to practice law before this Court, who is not a party to this Action, affirmed to be true under penalties of perjury says:

     1.     I am associated with The Scher Law Firm, LLP, the attorneys for the Plaintiffs, in the above-entitled Action, and am familiar with the relevant facts and circumstances surrounding the allegations that comprise this litigation based upon the records maintained by my office regarding this matter. I submit this Affirmation in opposition to the Defendants' Motions to Dismiss.

     2.     The Plaintiffs rely upon the following exhibits in opposition to the Defendants' Motions:

          (a)     **Exhibit A** is a copy of appeal decisions by Scheinman;

          (b)     **Exhibit B** is a copy of information about and appeal decisions by Barry Peek;

          (c)     **Exhibit C** is a copy of information about and appeal decisions by Daniel McCray;

          (d)     **Exhibit D** is a copy of information about and appeal decisions by Robert A. Grey; and

          (e)     **Exhibit E** is a copy of information about and appeal decisions by David J. Reilly;

JA-1708

(f)     **Exhibit F** is a copy of information about and appeal decisions by Julie A. Torrey; and

(g)     **Exhibit G** are copies of notifications from the New York State Department of Labor determining that several DOE employees were terminated for misconduct.

3.     For the reasons argued in the accompanying Memorandum of Law, the Defendants' Motions should be denied.

**WHEREFORE,** the Plaintiffs respectfully request that the Court deny the Defendants' Motions, as well as such other and further relief as may be just and proper.

Dated:     Carle Place, New York
           May 9, 2022

                                        _____
                                        Austin Graff

2

**JA-1709**

SCHEINMAN ARBITRATION AND MEDIATION SERVICES

------------------------------------------------ X

In the Matter of the Arbitration
                                                X

              between
                                                X

NEW YORK CITY DEPARTMENT OF EDUCATION        Re: UFT.025

                                                    X

             and
                                                X

       TAMI BENEDUCE
                                                X

------------------------------------------------ X

Issue: _____

Date of Hearing: _____

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]    DENIED [X]    OTHER [ ]

_____

_____

_____

_____

_____

_____

_____         _____
**Arbitrator**                                 Date

Martin F. Scheinman, Esq.

**JA-1710**

SCHEINMAN ARBITRATION AND MEDIATION SERVICES
--------------------------------------------- X
In the Matter of the Arbitration

            between                                    X

NEW YORK CITY DEPARTMENT OF EDUCATION          Re: UFT.025

            and                                       X

        TAMI BENEDUCE                                X

--------------------------------------------- X


Issue: _____


Date of Hearing: _____

**Award**

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]


_____

_____

_____

_____

_____

_____


_____      9/24/2024
Arbitrator                           Date

Marton F. Scheinman, Esq.

SCHEINMAN ARBITRATION AND MEDIATION SERVICES
------------------------------------------------- x
In the Matter of the Arbitration
                                                  x
                between
                                                  x
NEW YORK CITY DEPARTMENT OF EDUCATION                  Re: UFT.207
                                                  x
                 and
                                                  x
        MARGHERITA DE BONIS
                                                  x

------------------------------------------------- x

Issue: _Religious Exemption_____

Date of Hearing: __N/A_____

                        <u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]

_____

_____

_____

_____

_____

_____

_____          _____9/24/2022_____
Arbitrator                          Date

Martin F. Scheinman, Esq

**JA-1712**

SCHEINMAN ARBITRATION AND MEDIATION SERVICES

---------------------------------------------- X

In the Matter of the Arbitration

                 X

          between

                 X

NEW YORK CITY DEPARTMENT OF EDUCATION        Re: UFT.207

                 X

          and

                 X

       MARGHERITA DE BONIS

                 X

---------------------------------------------- X

Issue: _Religious Exemption_

Date of Hearing: _N/A_

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]

_____

_____

_____

_____

_____

_____

_____          _9/24/2020_
Arbitrator                                Date

_Martin F. Scheinman, Esq_

**JA-1713**

```
SCHEINMAN ARBITRATION AND MEDIATION SERVICES
-------------------------------------------- X
In the Matter of the Arbitration
                                             X
          between
                                             X
NEW YORK CITY DEPARTMENT OF EDUCATION             Re: UFT. 962
                                             X
            and
                                             X
     ANASTASIA CHRISTOPOULOS
                                             X

-------------------------------------------- X
```

Issue:      _Religious Exemption_____

Date of Hearing: _____

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]

_____

_____

_____

_____

_____

_____

_____        _____
Arbitrator                           Date    9/4/21

Barry J. Peek, Esq

**JA-1714**

```
SCHEINMAN ARBITRATION AND MEDIATION SERVICES
------------------------------------------- X
In the Matter of the Arbitration
                                            X
            between
                                            X
NEW YORK CITY DEPARTMENT OF EDUCATION              Re: UFT.1483
                                            X
            and
                                            X
        SALLY MUSSAFI
                                            X

------------------------------------------- X
```

Issue:   Religious Exemption


Date of Hearing: _____

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]    OTHER [ ]


_____

_____

_____

_____

_____

_____


_____          09/28/2021
                                         _____
**Arbitrator**                           **Date**
Barry Peek

JA-1715

SCHEINMAN ARBITRATION AND MEDIATION SERVICES
------------------------------------------------ x
In the Matter of the Arbitration                    x
              between                               x
NEW YORK CITY DEPARTMENT OF EDUCATION               x        Re: UFT. 1058
                and                                 x
    JESSICA NARCISO                                 x
                                                    x
------------------------------------------------ x

Issue:      _____*Medical Exemption*_____

Date of Hearing: _____

                        <u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]

_____

_____

_____

_____

_____

_____

_____     ___9/25/21_____
Arbitrator                                     Date

*Barry J. Peek, Esq.*

Barry Peek | Scheinman Arbitration & Mediation Services

516-944-1700      info@scheinmanneutrals.com

 SCHEINMAN
ARBITRATION & MEDIATION SERVICES

a



Barry J. Peek, Esq.

Arbitrator and Mediator

**JA-1717**

Barry Peck | Scheinman Arbitration & Mediation Services



Case 23-655, Document 77, 06/05/2023, 3525011, Page78 of 279

Barry Peek | Scheinman Arbitration & Mediation Services

**BARRY J. PEEK, Esq.,** Arbitrator and Mediator, has over 40 years of experience in the field of labor and employment law, most recently serving as Co-Chair of the Labor Group of the distinguished law firm, Meyer, Suozzi, English & Klein, P.C. He represented clients in all aspects of labor and employment law, including the negotiation and enforcement of collective bargaining agreements and the handling of over one thousand discipline and contract arbitrations, as well as improper practice proceedings, mediations, fact-finding and interest arbitration proceedings.

Mr. Peek, B.A., Brooklyn College of the City University of New York; J.D. Hofstra University School of Law, Adjunct Professor at the Cornell School of Industrial Relations, is a member of the Long Island and New York City Labor and Employment Relations Associations ("LERA"), as well as the New York State, New York City and Nassau County Bar Associations.

Since joining SAMS, Peek has been chosen to serve as arbitrator on the following panels: Nassau County and CSEA, Local 830; AAA Employment and Labor Arbitration Panels; PERB Mediation and Fact Finding Panel; New York City Housing Authority & Local 237, IBT Local Discipline Panel and New York City Department of Education, the United Federation of Teachers Section 3020-a Hearing Panel and the New York City Office of Collective Bargaining.

Mr. Peek has comprehensive knowledge of the National Labor Relations Act, the Taylor Law, the New York State Labor Law, the Fair Labor Standards Act, the New York State Wage and Hour Laws, Title VII of the Civil Rights Act, the New York Human Rights Law, the New York City Human Rights Law, the Age Discrimination in Employment Act, the Americans With Disabilities Act and the Family Medical Leave Act. In his prior position, he regularly appeared before state and federal courts, the NLRB, PERB, the New York State Division of Human Rights, the EEOC, the New York State Labor Board and OSHA.

Peek has extensive experience in labor and employment issues in the restaurant and hospitality industry, fashion, publishing, retail, broadcasting (national television and national cable), telecommunications, medical, healthcare, financial and public sector (education, corrections, police, civil servants and social services).

Peek is a contributor to the New York Law Journal, the Long Island Business News and the Labor Press.

Mr. Peek has been the President of the National Cancer Center since 2010.

JA-1719

Barry Peek | Scheinman Arbitration & Mediation Services

Barry J. Peek, barry.peek@scheinmanneutrals.com, 516.944.1700

Executive Assistant, Elva Prohens, elva.prohens@scheinmanneutrals.com 516.595.3278

© 2022 | All Rights Reserved | Scheinman Arbitration & Mediation Services.

**JA-1720**

```
SCHEINMAN ARBITRATION AND MEDIATION SERVICES
-------------------------------------------- X
In the Matter of the Arbitration
                                             X
        between
                                             X
NEW YORK CITY DEPARTMENT OF EDUCATION                 Re: Religious
                                             X        Exemption
                                                      (UFT.1623)
                                             X
        and
                                             X
Elizabeth Loiacono
                                             X

-------------------------------------------- X
```

Issue:   Religious Exemption to Vaccine Mandate

Date of Hearing: October 1, 2021

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]


_____          _____
Daniel McCray, Arbitrator                Date

Case 23-655, Document 77, 06/05/2023, 3525011, Page81 of 279

**JA-1721**

Dan McCray | The ILR School

.cls-1 { fill: #fff; } .cls-2 { fill: none; stroke: #222;
stroke-width: 0.5px; } .cls-3 { fill: #222; } .cls-4 { fill:
#a02629; } .cls-5 { mask:
url(https://www.ilr.cornell.edu/#mask); } .cls-6 {
mask:
url(https://www.ilr.cornell.edu/https://www.ilr.cornell.edu/#mask-
2-); } Logo for Cornell University and the ILR
School The Cornell University logo seal and the ILR
School logo placed side-by-side.

# Dan McCray

Director, LR Prog, Scheinman Inst.
Dan McCray is the Director of Labor Relations Programs where he manages and teaches Cornell ILR School's
professional programs in collective bargaining, contract administration, arbitration advocacy and complex
negotiations.  Dan has worked with hundreds of students across dozens of organizations in the private and public
sector in the United States, Latin America and Europe to develop labor, bargaining and negotiation strategies, engage
in collective bargaining, advocate at hearings, handle complex multi-party negotiations and successfully manage
workplace conflict.  Prior to becoming Director in 2011, Dan was a management side Labor Relations Director and
Chief Strategist for several multi-billion dollar organizations in the US and practiced law.  He is a graduate of
Macalester College and New York University School of Law.



News
Events
About ILR
ILRie Alumni Magazine
Contact Us
Diversity, Equity and Inclusion
Privacy Policy
ILR Brand
Coronavirus Resources
Directory
Centers & Institutes
Catherwood Library
Conference Centers
College Map
For faculty and staff
Web Accessibility
Dean's Statements

LinkedIn
Facebook
Twitter
Instagram
Youtube

© 2022 Cornell University | ILR School

SCHEINMAN ARBITRATION AND MEDIATION SERVICES
-------------------------------------------- X
In the Matter of the Arbitration
                                              X
              between
                                              X
NEW YORK CITY DEPARTMENT OF EDUCATION                 Re: UFT.388
                                              X
              and
                                              X
AMOURA BRYAN
                                              X
-------------------------------------------- X


Issue:    Religious Exemption


Date of Hearing: September 24, 2021

                           <u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]    DENIED [X]    OTHER [ ]




_____              <u>September 25, 2021</u>
Arbitrator Robert A. Grey, Esq.      Date

Case 23-655, Document 77, 06/05/2023, 3525011, Page83 of 279

**JA-1723**

Robert A. Grey, Esq. | The ILR School | Cornell University



# The Scheinman Institute
# on Conflict Resolution

# Robert A. Grey, Esq.

Scheinman Institute / Roster of Neutrals / Robert A. Grey, Esq.

Labor and Employment * Arbitrator and Mediator * Full Time
Grey Area Dispute Services, Inc.
38 Stiles Drive
Melville, NY 11747-1016
Phone: 631-549-5853
Fax: 631-918-5853
Email: GreyAreaADR@gmail.com
Website address: http://www.ilr.cornell.edu/scheinman-institute/roster-neutrals/robert-grey-esq

Professional Work History:

Dedicated to providing impartial, fair and efficient arbitration and mediation services exclusively in Labor and Employment, throughout the United States, in both the public and private sectors, since 2007.

Member, National Academy of Arbitrators

Full range of discipline, discharge and contract interpretation issues.

Virtual/video proceedings ready, willing, able, and experienced.

SAM-Registered; CAGE Code 5BS95

LABOR ARBITRATION EXPERIENCE/PANELS
Permanent Panels:
Bituminous Coal Operators' Association / United Mine Workers of America

Robert A. Grey, Esq. | The ILR School | Cornell University

Fairview Fire District / Greenburgh Uniformed Firefighters Assoc., Local 1586, IAFF
Governor's Office of Employee Relations / Police Benevolent Association of NY State
Greenport, Village of / Civil Service Employees Association, Local 1000, AFSCME
Irvington, Village of / Irvington Police Benevolent Association
Mackenzie Automatic Doors, Inc. / United Brotherhood of Carpenters and Joiners
MTA NYC Transit Authority / Transport Workers Union, Local 100
NY City Department of Education / United Federation of Teachers, Local 2, AFT
NY City Mandatory COVID Vaccine Exemption/Accommodation Appeals (all Unions)
Philadelphia, City of / Fraternal Order of Police, Police Termination Arbitration Board
NY State Education Department / NY State United Teachers
SEPTA / Fraternal Order of Transit Police
US Postal Service / American Postal Workers Union
White Plains, City of / White Plains Professional Fire Fighters Assoc., Local 274, IAFF

Arbitration Rosters:
American Arbitration Association
Cornell ILR National Roster of Neutrals
Federal Mediation and Conciliation Service
Illinois State Board of Education Tenured Teacher Hearing Officer
Illinois State Universities Civil Service System Hearing Officer
National Mediation Board; National Railroad Adjustment Board
NJ Public Employment Relations Commission; NJ State Board of Mediation
NJ Tenured Teacher Arbitrator "NJ TEACH"
NY City Office of Collective Bargaining Register of Neutrals
NY State Education Department Tenured Teacher Hearing Officer
NY State Public Employment Relations Board
Pennsylvania Department of Labor & Industry, Bureau of Mediation
Port Authority of NY/NJ Employment Relations Panel
Washington State Public Employment Relations Commission Law Enforcement Arbitrator

LABOR and EMPLOYMENT MEDIATION EXPERIENCE/PANELS
Collective bargaining mediator and fact-finder

Mediator, US Postal Service Redress Mediation Program: As impartial permanent mediator for more than 10 years, mediated hundreds of disputes involving labor and employment issues. Often resolved related CBA interpretation and/or disciplinary grievances and/or workplace disputes, in addition to the statutory rights claims.

Mediator, US Equal Employment Opportunity Commission
Mediator, US Nuclear Regulatory Commission

LABOR and EMPLOYMENT PUBLICATIONS and SPEAKING ENGAGEMENTS

Case 23-655, Document 77, 06/05/2023, 3525011, Page85 of 279

JA-1725

Case 1:21-cv-06387-KAM-LB   Document 125-4   Filed 05/24/22   Page 5 of 7 PageID #: 3412
Robert A. Grey, Esq. | The ILR School | Cornell University

Senior Editor, The Railway Labor Act, Fourth Ed., 2017-2021 Annual Cumulative Supps.
Senior Editor, The Railway Labor Act, Fourth Ed., 2016, Bloomberg BNA
Senior Editor, The Railway Labor Act, Third Ed., 2014 and 2015 Cumulative Supps.
Chapter Author, The Family Medical Leave Act, 2015 Cumulative Supp., Bloomberg BNA

Adjunct Instructor, Cornell University ILR, Scheinman Institute on Conflict Resolution
Mentor, Cornell University ILR, Scheinman Institute on Conflict Resolution
Mentor, Rutgers University School of Management and Labor Relations
Mentor, New York State Bar Assn. Labor and Employment Section Labor Arbitrator Mentor Program
Mentor, American Arbitration Association Higginbotham Fellows Program

Panelist/Speaker at various AAA, FMCS, NAA, NARR and Bar Association L&E meetings/events.

OTHER RELEVANT LABOR and EMPLOYMENT EXPERIENCE
Law enforcement officer, detective, supervisor and manager (retired)
Certified Instructor, Div. of Criminal Justice Services, Municipal Police Training Council
Certified Firefighter, Interior and Exterior
Certified in Environmental Noise and Sound Measurement

Collective bargaining mediator and fact-finder; election arbitrator; card-check arbitrator
Complex Public Education Issues – specialized training by FMCS and NAA

Cornell University Dispute Resolution Training (Course titles and dates taken)

Certificates in Labor and Employment Arbitration and Mediation; Advanced Certificate in Workplace ADR and Conflict Management. Member of inaugural graduating class of Labor Arbitrator Development Program (certificate awarded).

Professional Associations

National Academy of Arbitrators
National Association of Railroad Referees
Labor and Employment Relations Association
Labor and Employment Sections of various Bar Associations
Society of Federal Labor and Employee Relations Professionals

Robert A. Grey, Esq.   The ILR School | Cornell University

Education

Cornell University School of Industrial and Labor Relations, Scheinman Institute on
Conflict Resolution: Certificates in Labor and Employment Arbitration and Mediation;
Advanced Certificate in Workplace ADR and Conflict Management. Labor Arbitrator
Development Program, Certificate.

Rutgers University School of Management and Labor Relations and New Jersey
Public Employment Relations Commission (NJ PERC): Certificate in Public Sector
Labor Relations.

Federal Mediation and Conciliation Service: Labor Arbitrator Institute, Certificate.

New York Law School: Juris Doctor. John Ben Snow Scholar.

Binghamton University: Bachelor of Arts in Economics; Adjunct in Business
Management. International Economics Honor Society.

References

Available Upon Request

Fee Policy

Available Upon Request



News
Events
About ILR
ILRie Alumni Magazine
ILR Brand
Coronavirus Resources and Updates
Diversity, Equity and Inclusion
Privacy policy

Case 23-655, Document 77, 06/05/2023, 3525011, Page87 of 279

JA-1727

Robert A. Grey, Esq. | The ILR School | Cornell University

Directory
Centers and Institutes
Catherwood Library
Conference Centers
College map
For faculty and staff
Contact Us at ILR
Web Accessibility

☐  ☐  ☐  ☐  ☐

© 2022 Cornell University | ILR School

SCHEINMAN ARBITRATION AND MEDIATION SERVICES
------------------------------------------- X
In the Matter of the Arbitration
                                            X
            between
                                            X
NEW YORK CITY DEPARTMENT OF EDUCATION                Re: Religious
                                                     Exemption
                                            X
            -and-
                                            X
UNITED FEDERATION OF TEACHERS,
LOCAL 2 AFT, AFL-CIO                         X

            -and-                           X

ZABDIEL VALERA, UFT 1763                     X

------------------------------------------- X


Issue:    Appeal of Denial of Religious Exemption to
COVID-19 Vaccine Mandate


Date of Hearing: September 30, 2021

                        <u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]    OTHER [ ]

_____

_____

_____

_____

_____

_____


_____          Date: October 4, 2021
David J. Reilly, Esq.
Arbitrator

```
SCHEINMAN ARBITRATION AND MEDIATION SERVICES
-------------------------------------------- X
In the Matter of the Arbitration
                                             X
           between
                                             X
NEW YORK CITY DEPARTMENT OF EDUCATION                  Re: Religious
                                                       Exemption
                                             X
           -and-
                                             X
UNITED FEDERATION OF TEACHERS,
LOCAL 2 AFT, AFL-CIO                          X

           -and-                             X

ZABDIEL VALERA, UFT 1763                      X

-------------------------------------------- X
```

Issue:    Appeal of Denial of Religious Exemption to
COVID-19 Vaccine Mandate

Date of Hearing: September 30, 2021

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]    DENIED [X]    OTHER [ ]

_____

_____

_____

_____

_____

_____


David J. Reilly, Esq.                     Date: October 4, 2021
Arbitrator

Mr. David John Reilly, Esq. · The ILR School | Cornell University



## The Scheinman Institute
## on Conflict Resolution

# Mr. David John Reilly, Esq.

Scheinman Institute / Roster of Neutrals / Mr. David John Reilly, Esq.

Arbitrator - Mediator
David J. Reilly, Esq.
64 East 94th Street
Suite 1G
New York, NY 10128
Phone:  212 996-3233
Fax: 212 410-6232
Email:  djreilly@adr-practice.com
Website address:  http://www.adr-practice.com

### Professional Work History:

David J. Reilly, Esq., Arbitrator & Mediator 07/06 - Present Medco Health Solutions, Inc. Senior Vice President - Labor Relations 07/95 - 06/06 Vice President - Employee Relations Counsel 06/91 - 07/95 Labor & Associate Counsel 05/87 - 06/91 Gibson, Dunn & Crutcher, Associate 04/85 - 05/87 Cahill, Gordon & Reindel, Associate 09/82 - 04/85

### Dispute Resolution Experience

An attorney for more than thirty-five years with extensive experience, first as an advocate and later as a full-time neutral, in labor and employment law and commercial disputes. As an arbitrator and mediator since 2006, have heard and/or mediated over a thousand cases involving a wide range of issues. In labor and employment law matters, issues addressed have included, among others: absenteeism; arbitrability; breach of contract; demotions; disability; discipline/discharge; discrimination/harassment/retaliation; employee benefit

**JA-1731**

buyouts/contribution rates/eligibility; ERISA; FLSA; health/safety; incentive compensation; independent contractor status; job classifications; job performance; leaves of absence; management rights; MPPAA; non-compete/restrictive covenants; overtime pay/distribution; past practice; pay rates; production standards; reductions-in-force; retirement benefit payouts; seniority; severance; sexual harassment; subcontracting; transfers/reassignments; reorganization; vacation; whistleblower; work assignments; work stoppages; and wrongful termination. In commercial matters, issues addressed have included, among others: breach of contract; breach of fiduciary duty; consumer fraud; derivative actions; corporate dissolution; foreclosure, professional malpractice; quantum meruit; subrogation of insurance claims; tortious interference with contract/economic advantage; trade secrets; and warranties.

Listed on the following rosters of arbitrators/mediators:
American Arbitration Association (Arbitration - Labor, Employment and Employee Benefits/Pension; Mediation);
Cornell University, Scheinman Institute on Conflict Resolution (Arbitration, Mediation & Fact-Finding);
Equal Employment Opportunity Commission (Mediation);
Federal Executive Board Shared Neutrals Program;
Federal Mediation & Conciliation Service (Labor Arbitration);
FINRA (Arbitration & Mediation);
National Mediation Board (Arbitration);
NJ Department of Education (Tenure Arbitration)
NJ Public Employee Relations Commission (Labor Arbitration & Police/Fire Special Disciplinary Arbitration);
NJ State Board of Mediation (Labor Arbitration)
NJ Superior Court (Mediation);
NYC Office of Collective Bargaining (Labor Arbitration);
NY Public Employment Relations Board (Public & Private Arbitration and Mediation & Fact-Finding);
NY Supreme Court, Commercial Division, Queens and Suffolk Counties (Mediation); and
Nuclear Regulatory Commission (Mediation)
United States District Court, E.D.N.Y. (Mediation)

Named as a panel arbitrator under a number of collective bargaining agreements, including:
NYC Department of Education/United Federation of Teachers, Local (3020-a Arbitration Panel-2009-2010, 2013-2017, 2018-2019);
SEIU Local 32BJ/Realty Advisory Board on Labor Relations, Inc.;
SEIU Local 32BJ/Allied Universal Security/ Securitas Security Services USA, Inc./Harvard Protection Services; and
SEIU Local 32BJ/Ramac Corp.;

Mr. David John Reilly, Esq. | The ILR School | Cornell University

Cornell University Dispute Resolution Training (Course titles and dates taken)

Cornell University, Scheinman Institute of Conflict Resolution - Advanced Certificate in Workplace Conflict Resolution

Other Dispute Resolution Training

American Arbitration Association - Various Arbitrator Training Programs;
Federal Executive Board Mediation Training;
FINRA - Basic Arbitrator Training;
FINRA - Basic Arbitrator & Chairperson Training
Hofstra University School of Law - 24-Hour Basic Mediation Skills Training (Transformative Model) and Advanced Transformative Mediation Training Sessions);
Labor Arbitration Salon of Richard Adelman and Carol Wittenberg
NYC Bar Association - Advanced Commercial Mediation Training (20 Hours);
NY State Bar Association, Labor & Employment Law Section, Arbitrator Mentoring Program;
NY Supreme Court Commercial Division, Queens County - 24-Hour Basic Mediation Skills Training and 8-Hour Advanced Skills Training; and
U.S. Nuclear Regulatory Commission Mediator Training

Professional Associations

American Bar Association (ADR and Labor & Employment Law Sections, Committees: EEO, Employee Benefits, NLRA);
New York State Bar Association (Dispute Resolution and Labor & Employment Law Sections);
New Jersey Bar Association (Dispute Resolution and Labor & Employment Law Sections);
National Academy of Arbitrators (Member)
New Jersey Association of Professional Mediators;
New York City Bar Association (Labor & Employment Law Section);
Labor & Employment Relations Association (New York Chapter)
Association for Conflict Resolution (Workplace, Ombuds, Commercial and Court Sections);
New York State Dispute Resolution Association; and
New York University School of Law Center for Labor & Employment Law (Advisory Board Member)

Education

Case 23-655, Document 77, 06/05/2023, 3525011, Page93 of 279

JA-1733

Mr. David John Reilly, Esq. | The ILR School | Cornell University

New York University School of Law, J.D., Cum Laude, 1982

Siena College, B.A., Summa Cum Laude, 1979

References

Furnished upon request.

Fee Policy

FEE POLICY:

Labor Arbitration: $1,800 per day for each day of hearing and study time.

Employment Arbitration & Mediation: $400 per hour for all hearing and study time with 4-hour daily minimum for hearings.

Cancellation/Postponement Fee: $1,800 per day, unless notice is received 21 days in advance of each scheduled day.

Travel expenses: Billed if applicable.



News
Events
About ILR
ILRie Alumni Magazine
ILR Brand
Coronavirus Resources and Updates
Diversity, Equity and Inclusion
Privacy policy

Directory
Centers and Institutes
Catherwood Library
Conference Centers

Case 23-655, Document 77, 06/05/2023, 3525011, Page94 of 279

JA-1734

Mr. David John Reilly, Esq. | The ILR School | Cornell University

**College map**
**For faculty and staff**
**Contact Us at ILR**
**Web Accessibility**

☐ ☐ ☐ ☐ ☐

© 2022 Cornell University | ILR School

```
SCHEINMAN ARBITRATION AND MEDIATION SERVICES
-------------------------------------------- X
In the Matter of the Arbitration
                                             X
         between
                                             X
NEW YORK CITY DEPARTMENT OF EDUCATION             Re:UFT.1174
                                             X
         and
                                             X

LORRAINE MASCIARELLI                         X

-------------------------------------------- X
```

Issue:     Religious Exemption


Date of Hearing: October 4, 2021

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED []     DENIED [X]     OTHER [ ]




On the record before me, Appellant failed to establish
entitlement to a religious exemption.




_____               _____
Arbitrator Julie A. Torrey                      Date

Case 23-655, Document 77, 06/05/2023, 3525011, Page96 of 279

JA-1736



## Reasonable Accommodation Appeal Determination

N

noreply@salesforce.com on behalf of NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Tue 2/15/2022 2:48 PM

To: Mascierelli Lorraine

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning.

For all employees other than DOE employees: Pursuant to the City of New York's policy concerning the vaccine mandate, you now have three business days from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

For Department of Education (DOE) employees: Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

Reply        Forward

Case 23-655, Document 77, 06/05/2023, 3525011, Page97 of 279

JA-1737

Julie Torrey | Scheinman Arbitration & Mediation Services

516-944-1700    info@scheinmanneutrals.com

 SCHEINMAN

a



JULIE A. TORREY, ESQ.

ARBITRATOR, MEDIATOR AND FACT FINDER

Julie Torrey | Scheinman Arbitration & Mediation Services



Julie Torrey | Scheinman Arbitration & Mediation Services

**JULIE A. TORREY, Esq.**, is an Arbitrator, Mediator and Fact-Finder focused on resolution of workplace disputes in the private and public sectors, including labor and employment cases involving diverse disciplinary, contract and statutory issues in a range of industries and agencies. Since becoming a full-time neutral, Ms. Torrey has been selected to serve on the following arbitration panels: AAA Roster of Labor Arbitrators; FMCS Roster of Arbitrators; U.S. District Court, E.D.N.Y.'s Arbitration Roster; Realty Advisory Board & Local 32BJ, SEIU; NYC Department of Education/United Federation of Teachers Section 3020-a Panel; New York State Section 3020-a Disciplinary Panel; Cornell ILR Roster of Neutrals; and the Volunteer Lawyers for the Arts Mediate Art Panel.

Prior to her work as a neutral, Julie was an attorney for over twenty years in the field of labor and employment, most recently as Counsel at Ingerman Smith, LLP, where she represented clients in federal and state court litigation, arbitration, Civil Service Section 75 proceedings, and administrative proceedings before PERB and the Commissioner of Education. She previously represented the Suffolk County Board of Ethics and conducted county-wide ethics training.

Torrey has conducted hundreds of workplace investigations, including investigation of harassment, discrimination and retaliation complaints, as well as whistleblower claims.

Julie is a Dean's list graduate of Georgetown University (1992) and Georgetown University Law Center (1995) and a graduate of the Cornell University ILR School, Scheinman Institute on Conflict Resolution's Labor Arbitrator Development Program. She is admitted to practice in state and federal courts in New York and is a member of the New York State Bar Association's Labor & Employment and Dispute Resolution Section Committees, in addition to the New York and New York City Bar Associations, and the Long Island Chapter of the Labor and Employment Relations Association ("LERA").

Julie A. Torrey, julie.torrey@scheinmanneutrals.com 516.944.1700
Executive Assistant, Sonia Kaparakos, sonia.kaparakos@scheinmanneutrals.com
516.595.3274

© 2022 | All Rights Reserved | Scheinman Arbitration & Mediation Services

JA-1740

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

**NEW YORK STATE DEPARTMENT OF LABOR**
**NOTICE OF DETERMINATION TO CLAIMANT**

DATE MAILED: 2/24/2022

EMP: THE CITY SCHOOL DIST

CHRISTINE A OREILLY 

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [X] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT.  YOUR WEEKLY BENEFIT RATE
IS $504.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER.  BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
REASON    INSURANCE BENEFITS IN THE FUTURE.

YOU WERE DISCHARGED ON 10/18/21  BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER PER THE DECEMBER 2021 NYC VACCINE
MANDATE. YOUR EMPLOYER INFORMED YOU ON 9/23/21 THAT RECEIVING THIS
VACCINATION WAS REQUIRED TO CONTINUE YOUR EMPLOYMENT, AND MANDATORY
VACCINATIONS ARE PERMISSIBLE UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN
THAT YOUR ACTIONS WOULD JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM    By: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

LO 412 (4-99)

CS Scanned with CamScanner
CS Scanned with CamScanner

**JA-1741**

NYS DEPARTMENT OF LABOR
PO BOX 15151
ALBANY NY 12212-5131

**NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT**

DATE MAILED  4/29/2022

EMP: THE CITY SCHOOL DIST

HERENDYRA PEREYRA

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [X] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE.  EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT.  YOUR WEEKLY BENEFIT RATE
IS $504.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER.  BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

REASON

YOU WERE DISCHARGED ON 10/1/21 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER.  YOUR EMPLOYER INFORMED YOU
BEFORE YOUR DISCHARGE THAT RECEIVING THE COVID 19 VACCINATION WAS REQUIRED TO
CONTINUE YOUR EMPLOYMENT, AND MANDATORY COVID 19 VACCINATIONS ARE PERMISSIBLE
UNDER NYS LAW.  YOU KNEW OR SHOULD HAVE KNOWN THAT YOUR ACTIONS WOULD
JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL M SREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

THE BACK OF THIS FORM    By   LABOR SERVICES REPRESENTATIVE
                              FOR THE COMMISSIONER OF LABOR

**JA-1742**

NYS DEPARTMENT OF LABOR
PO BOX 15151
ALBANY NY 12212-5131

NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT
ALTERNATE DETERMINATION

DATE MAILED: 4/21/2022

EMP: THE CITY SCHOOL DIST

TONIANN MIRAGLIA

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [X] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGINNING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE.  EMPLOYMENT AND EARNINGS FROM NON COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT.  YOUR WEEKLY BENEFIT RATE IS $415.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH THE ABOVE EMPLOYER.  BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT INSURANCE BENEFITS IN THE FUTURE.

REASON

YOU WERE DISCHARGED BECAUSE ON 10/01/21 YOU REFUSED TO GET THE COVID 19 VACCINATION AS REQUIRED BY YOUR EMPLOYER.  YOUR EMPLOYER INFORMED YOU IN SEPTEMBER 2021 THAT RECEIVING THE COVID 19 VACCINATION WAS REQUIRED TO CONTINUE YOUR EMPLOYMENT, AND MANDATORY COVID 19 VACCINATIONS ARE PERMISSIBLE UNDER NYS LAW.  YOU KNEW OR SHOULD HAVE KNOWN THAT YOUR ACTIONS WOULD JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILLFUL MISREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been cancelled.

TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM          By: LABOR SERVICES REPRESENTATIVE
                                                                FOR THE COMMISSIONER OF LABOR

LO 412 (4-90)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NICOLE BROECKER, *et al.,* on behalf of
themselves and all other similarly situated
employees of the New York City Department of
Education,

                              Plaintiffs,

              -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.,*

                              Defendants.
------------------------------------------------------------------------X

                                   **INDEX NO. 21-cv-6387**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'
MOTIONS TO DISMISS**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iv

PRELIMINARY STATEMENT .................................................................................................. 1

    A.       DOE and UFT Collusion With Scheinman ............................................................. 1

    B.       DOE and CSA Conspiracy With Scheinman ........................................................... 3

    C.       DC37 And DOE Collusion ..................................................................................... 4

POINT I.     STANDARD OF REVIEW FOR A MOTION TO DISMISS
                ................................................................................................................. 5

    A.       FRCP 12(b)(1) ......................................................................................................... 5

    B.       FRCP 12(b)(6) ......................................................................................................... 6

POINT II.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE
                CLAIM FOR DECLARATORY JUDGMENT ON THE
                PLAINTIFFS' FIRST CAUSE OF ACTION SEEKING AN
                ORDER DECLARING THAT THE DOE'S SUSPENSION
                WITHOUT PAY AND WITHOUT DUE PROCESS
                VIOLATED THE PLAINTIFFS' CONSTITUTIONAL
                RIGHTS ................................................................................................................. 7

POINT III.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE
                CLAIM FOR DECLARATORY JUDGMENT ON THE
                PLAINTIFFS' SECOND CAUSE OF ACTION SEEKING
                A DECLARATION THAT THE UFT ARBITRATION
                AWARD WAS PROMULGATED WITHOUT ANY
                STATUTORY OR CONTRACTUAL AUTHORITY ....................................... 10

    A.       Underlying Facts That Led To The UFT Arbitration Award .............................. 11

    B.       No Statutory Authority For Binding Arbitration To Resolve
          Impasse Negotiations In School Districts ............................................................. 11

    C.       No Contractual Authority For Binding Arbitration To
          Resolve Impasse Negotiations In School Districts .............................................. 16

POINT IV.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE
CLAIM FOR DECLARATORY JUDGMENT ON THE
PLAINTIFFS' THIRD CAUSE OF ACTION SEEKING A
DECLARATION THAT THE CSA ARBITRATION
AWARD WAS PROMULGATED WITHOUT ANY
STATUTORY OR CONTRACTUAL AUTHORITY ........................................ 17

POINT V.     THE PLAINTIFFS HAVE STATED A PLAUSIBLE
CLAIM FOR DECLARATORY JUDGMENT ON THE
PLAINTIFFS' FOURTH CAUSE OF ACTION SEEKING
A DECLARATION THAT THE DC37 AGREEMENT
WAS       PROMULGATED       WITHOUT       ANY
CONTRACTUAL AUTHORITY ................................................................ 19

POINT VI.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE
CLAIM FOR DECLARATORY JUDGMENT ON THE
PLAINTIFFS' FIFTH CAUSE OF ACTION SEEKING A
DECLARATION THAT THE RELEASE EXECUTED BY
PLAINTIFFS TO EXTEND THEIR LEAVE WITHOUT
PAY IS VOID AND UNENFORCEABLE ........................................................ 20

POINT VII.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE
CLAIM FOR A PERMANENT INJUNCTION ON THE
PLAINTIFFS' SIXTH CAUSE OF ACTION .................................................. 23

POINT VIII.  THE PLAINITFFS HAVE STATED A PLAUSIBLE
CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983
AGAINST THE DOE DEFENDANTS, THE UFT
DEFENDANTS,     AND     THE     SCHEINMAN
DEFENDANTS ON THE PLAINTIFFS' SEVENTH
CAUSE OF ACTION ................................................................................ 24

    A.       Factual Predicate For Cause Of Action .............................................. 24

    B.       Plaintiffs Have Stated A Plausible Claim Against The DOE
             Defendants ........................................................................................ 25

    C.       Plaintiffs Have Stated A Plausible Claim Against The UFT
             Defendants ........................................................................................ 26

    D.       Plaintiffs Have Stated A Plausible Claim Against The
             Scheinman Defendants ...................................................................... 29

POINT IX.    THE PLAINITFFS HAVE STATED A PLAUSIBLE
CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983
AGAINST THE DOE DEFENDANTS, THE CSA

DEFENDANTS, AND THE SCHEINMAN
DEFENDANTS ON THE PLAINTIFFS' EIGHTH CAUSE
OF ACTION ................................................................................ 31

A.      Factual Predicate For Cause Of Action ................................................ 31

B.      Plaintiffs Have Stated A Plausible Claim Against The DOE
        Defendants ................................................................................ 32

C.      Plaintiffs Have Stated A Plausible Claim Against The CSA
        Defendants ................................................................................ 33

D.      Plaintiffs Have Stated A Plausible Claim Against The
        Scheinman Defendants ................................................................ 35

POINT X.    THE PLAINITFFS HAVE STATED A PLAUSIBLE
            CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983
            AGAINST THE DOE DEFENDANTS, AND THE DC37
            DEFENDANTS ON THE PLAINTIFFS' NINTH CAUSE
            OF ACTION .............................................................. 36

A.      Factual Predicate For Cause Of Action ................................................ 36

B.      Plaintiffs Have Stated A Plausible Claim Against The DOE
        Defendants ................................................................................ 37

C.      Plaintiffs Have Stated A Plausible Claim Against The DC37
        Defendants ................................................................................ 38

POINT XI.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE
            CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983
            AGAINST PORTER, MULGREW, CANNIZZARO,
            GARRIDO, FRANCOIS, FRANCIS, AND SCHEINMAN
            ON THE PLAINTIFFS' TENTH CAUSE OF ACTION .................................. 41

POINT XII.  THE PLAINTIFFS HAVE STATED A PLAUSIBLE
            CLAIM FOR CLASS ACTION STATUS ......................................... 43

POINT XIII. THE COURT SHOULD GRANT LEAVE FOR THE
            PLAINTIFFS TO FILE A SECOND AMENDED
            COMPLAINT TO CORRECT ANY DEFICIENCIES IN
            THE AMENDED COMPLAINT ......................................................... 44

CONCLUSION ................................................................................ 45

iii

## TABLE OF AUTHORITIES

**Cases**

*Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir 1998) ................................ 25, 32, 37

*Board of Education of City School Dist. v. New York State Public Employment Relations Bd.*, 75 N.Y.2d 660, 671 (1990) ................................................... 1, 2, 3, 15

*City of Rochester*, 7 PERB P3060 (1974)........................................................................ 17, 18, 20

*Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012) ....................................................................................................... 17, 18, 20

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ............................ 28, 35, 36, 40

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ........................................................................ 27, 34

*Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293 (D. Conn. 2013) .............................................. 38

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) .................................................. 23

*Garcia v Coll. of Staten Is.*, 2012 US Dist LEXIS 128485, at *7-10 (E.D.N.Y. 2012) (Matsumoto, J.) ...................................................................................... 6

*Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 274 (2d Cir 1992).................................................................................................................................. 8

*Grullon v. Delta Air Lines, Inc.*, 2021 U.S. App. LEXIS 38168, at *4-7 (2d Cir. 2021).................................................................................................................................. 21

*Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir 1994) .......................................................... 6

*Leahy v. Bd. of Trustees*, 912 F.2d 917, 921 (7th Cir. 1990)........................................................ 3

*Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019)........................................................................................................................... passim

*Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 US Dist LEXIS 2221, at *3 (S.D.N.Y. 1996)................................................................................................ 8

*Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016)........................................................................................... passim

iv

*Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11
Union Free School District*, 32 PERB P3024 (1999)............................................................ 14, 39

*McKenzie v. Grand Cent. Partnership*, 2016 US Dist LEXIS 39361, at *5-
7 (E.D.N.Y. 2016) (Matsumoto, J.) ......................................................................................... 7

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977) ........................................................ 41

*Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7
(S.D.N.Y. 2007)............................................................................................................ 28, 35, 40

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019) .............................................. 28, 35, 36, 40

*Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973) .................... 17, 18, 19

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d
Cir. 2019)........................................................................................................................ passim

*Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir 1986) ......................................................... 41

**Statutes**

29 U.S.C. § 626(f)(1)(F)(i). ..................................................................................................... 21

N.Y. Civil Service Law § 209 .................................................................................................. 11

N.Y. Civil Service Law § 209.2. .............................................................................................. 12

N.Y. Civil Service Law § 209.3(a) ........................................................................................... 11

N.Y. Civil Service Law § 209.3.(f) ..................................................................................... passim

**Other Authorities**

https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-
embrace-idea-of-mayor-de-blasio (visited April 18, 2022)................................................. passim

**Rules**

FRCP Rule 23(a)....................................................................................................................... 43

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted by the Plaintiffs in opposition to the Motions to Dismiss filed by the Defendants New York City Department of Education ("DOE") and Meisha Porter ("Porter") (collectively referred to as "DOE Defendants"), the Defendants United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") and Michael Mulgrew ("Mulgrew") (collectively referred to as "UFT Defendants"), the Defendants Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA") and Mark Cannizzaro ("Cannizzaro") (collectively referred to as "CSA Defendants"), the Defendants District Council 37, AFSCMA, AFL-CIO ("DC37"), Local 372 of DC37 ("Local 372"), Local 1251 of DC37 ("Local 1251"), Henry Garrido ("Garrido"), Shaun Francois ("Francois"), and Francine Francis ("Francis") (collectively referred to as "DC37 Defendants") and the Defendants MARTIN F. SCHEINMAN ("Scheinman"), SCHEINMAN ARBTRATION AND MEDIATION SERVICES ("SAMS"), and SCHEINMAN ARBTRATION AND MEDIATION SERVCIES LLC ("SAMS LLC") (collectively referred to as "Scheinman Defendants").

**A.    DOE and UFT Collusion With Scheinman**

The DOE Defendants and the UFT Defendants rely upon the Impact Arbitration Award ("UFT Arbitration Award") issued by Scheinman (**Docket Entry No. 47-5**) as the basis for the implementation of the vaccine mandate issued by the Commissioner of the New York City Department of Health ("Vaccine Mandate"), but the DOE Defendants and the UFT Defendants ignore the clear and unambiguous statutory language in N.Y. Civil Service Law § 209.3.(f) and the holding in the New York State Court of Appeals case *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d 660, 671 (1990) that makes it clear that binding arbitration to resolve an impasse in collective bargaining in a school district context is illegal.

Yet, the DOE Defendants and the UFT Defendants ignore the statute, the binding case law, and do not identify any source of authority Scheinman had to issue the UFT Arbitration Award. Both the DOE Defendants and the UFT Defendants recognize that Scheinman was not appointed

by the New York State Public Employment Relations Board ("PERB") as an arbitrator, but as a mediator. *See also,* **UFT Defendants' Memorandum of Law,** at page 5.[1]

It was the UFT Defendants and the DOE Defendants who agreed to violate N.Y. Civil Service Law § 209.3.(f) and the holding in *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671 to convert the mediation into an illegal binding arbitration. *See,* **Docket Entry No. 47-11.** Without this agreement to convert the mediation into binding arbitration, the DOE Defendants would not have had the authority to implement the vaccine mandate as a condition of employment against UFT members-Plaintiffs. *See,* **Docket Entry No. 89,** at page 24-25.

In fact, when the Plaintiffs argued that to create a condition of employment, the DOE had to negotiate with its unions because the Vaccine Mandate was a mandatory subject of negotiation pursuant to N.Y. Civil Service Law § 201.4., this Court held that because "the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards.... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89,** at page 24-25.[2]

The UFT Defendants conspired with the DOE and the UFT Defendants willfully participated in joint activity with a State actor (the DOE) that resulted in the Plaintiffs' constitutional rights being violated.

---

[1] The City Defendants state that PERB appointed an arbitrator. *See,* **City Defendants' Memorandum of Law,** at page 3. Factually, this is wrong and misleading. Scheinman was appointed as a mediator, not as an arbitrator. *See,* **Docket Entry No. 47-10.**

[2] Interestingly, while the DOE argues that the vaccine mandate is a condition of employment and the DOE's actions towards the Plaintiffs were not disciplinary in nature, several Plaintiffs when applying for unemployment insurance has had their applications for unemployment insurance denied based upon a finding of "misconduct." *See,* **Exhibit G,** copies from New York State Department of Labor ("NYSDOL") findings of "misconduct" for not taking the vaccine. The inconsistencies in the DOE's words and the actions of the NYSDOL with respect to unemployment insurance creates a serious question because to make a finding of "misconduct" the DOE must report such "misconduct" to the NYSDOL in response to the Plaintiffs' application for unemployment insurance. Is the DOE telling this Court one thing and the NYSDOL something different? This Court should permit discovery on this issue, denying the DOE Defendants' Motion.

**JA-1751**

The UFT Defendants cite to *Leahy v. Bd. of Trustees*, 912 F.2d 917, 921 (7th Cir. 1990) in which the Court held:

> Leahy has clearly failed to allege any willful participation by the Union in any "joint" action. His complaint contains no allegations of fact supporting the conclusion or inference that the Union has either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in his complaint.

In this Action, the Plaintiffs have pled a plausible claim that the UFT were encouraged by the DOE to agree to arbitrate the impasse in negotiations, that ultimately led to the Plaintiffs' constitutional rights being violated. *See,* **Docket Entry No. 47,** at ¶¶ 146 through 159.

**B.     DOE and CSA Conspiracy With Scheinman**

While the UFT Defendants sought PERB's assistance in mediating the impasse in impact bargaining regarding the Vaccine Mandate, the CSA did not even seek PERB's intervention. Instead, the CSA went directly into binding impasse arbitration. *See,* **UFT's Memorandum of Law, at page 4**. Scheinman, without any legal authority issued an arbitration award binding the CSA and the DOE on the impact of the Vaccine Mandate ("CSA Arbitration Award"). **Docket Entry No. 47-6**.

Neither the CSA Defendants nor the DOE Defendants even articulate any legal authority for binding arbitration to resolve an impasse in negotiations in a school district context.

As the *Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671 held there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare*, Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f])." Yet the CSA Defendants and the DOE Defendants agreed to violate the New York State Civil Service Law by crafting their own final impasse resolution

3

mechanism of binding arbitration to resolve the impasse in negotiations over the impact of the Vaccine Mandate without any statutory authority to do so.

Based upon the CSA Arbitration Award, the DOE was able to successfully argue to this Court that "the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at page 25. Without the CSA Defendants' agreement to violate the N.Y. Civil Service Law, the DOE would not have had the ability to argue that it successfully negotiated the impact of the Vaccine Mandate, and therefore had the legal authority to impose as a term and condition of employment, the vaccine.

The CSA Defendants conspired with the DOE and the CSA Defendants willfully participated in joint activity with a State actor (the DOE) that resulted in the Plaintiffs' constitutional rights to be violated.

### C.    DC37 And DOE Collusion

The Plaintiffs' claims against the DC37 Defendants are based upon the Memorandum of Agreement between the DOE and DC37 ("DC37 Agreement"). *See,* **Docket Entry No. 47-13**. While the D37 Agreement does not have the same infirmities as the CSA Arbitration Award or the UFT Arbitration Award, the DC37 Defendants conspired with the DOE and the DC37 Defendants willfully participated in joint activity with a State actor (the DOE) that resulted in the Plaintiffs' constitutional rights being violated.

The DC37 Agreement was the only negotiated agreement between the DOE and any of the DOE's unions. The fact that there was a negotiated settlement regarding the impact of the Vaccine Mandate, the DC37 Agreement provided this Court with the factual underpinning to hold that the Vaccine Mandate was a condition of employment and that the DOE complied with N.Y. Civil Service Law § 201.4. *See,* **Docket Entry No. 89**, at page 24-25.

The DC37 Defendants purport that the DC37 Agreement was adopted with statutory authority, the DC37 Defendants do not address the fact that the members of DC37 did not ratify

JA-1753

the DC37 Agreement, making it procedurally defective and not a finalized agreement between the DOE and DC37.   DC37 failed to take the steps necessary, in violation of its duty of fair representation to seek and obtain ratification from the members.   Instead, in collusion with the DOE, the DC37 Defendants skipped the approval process of its members and kowtowed to the DOE and permitted the DOE to suspend DC37's members and terminate those members without due process.

The DC37 Defendants colluded and conspired with the DOE to violate the Plaintiffs' due process rights and rights in their salary.   The DC37 Defendants' Motion should be denied.

*************

While all of the Defendants suggest they individually or collectively did nothing to impede, impact, or violate the Plaintiffs' constitutional rights this is simply not true. Each of the Defendants conspired and colluded with the DOE to grant the DOE the perceived legal authority to have the Vaccine Mandate become a condition of employment that enabled the DOE to: (a) place the Plaintiffs on suspension without pay and without due process; and (b) terminate 49 Plaintiffs without due process for not complying with the Vaccine Mandate.

The Plaintiffs have stated plausible claims against the Defendants.   The Defendants' Motions to Dismiss should be denied.

## POINT I.   STANDARD OF REVIEW FOR A MOTION TO DISMISS

### A.   FRCP 12(b)(1)

The UFT Defendants and the CSA Defendants argue that the Plaintiffs lack standing to directly challenge the UFT Arbitration Award and the CSA Arbitration Award.   *See*, **UFT Defendants' Memorandum of Law**, at pages 8-9.

The UFT Defendants and CSA Defendants cite to *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir 1994) in which the Court held: "[i]f there is no claim that the union breached its duty of fair representation, an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties."

In this Action, the Plaintiffs argue that the UFT Defendants and the CSA Defendants breached their duty of fair representation by: (1) entering into an illegal arbitration agreement that violated N.Y. Civil Service Law § 209 (**Docket Entry No. 47**, at ¶¶ 155, 284); and (2) failed to bring the agreement between the DOE and the UFT/CSA to the members of the union for ratification.

Accordingly with these allegations of the UFT's and CSA's breach of their duty of fair representation, the Plaintiffs have standing to challenge the UFT Arbitration Award and the CSA Arbitration Award.

Finally, this Court has already determined that the Plaintiffs have standing to prosecute this Action. *See*, **Docket Entry December 22, 2021, Scheduling Order**.

**B.      FRCP 12(b)(6)**

In *Garcia v Coll. of Staten Is.*, 2012 US Dist LEXIS 128485, at *7-10 (E.D.N.Y. 2012) (Matsumoto, J.) this Court opined:

> On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

**JA-1755**

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Iqbal*, 556 U.S. at 679.

In *McKenzie v. Grand Cent. Partnership*, 2016 US Dist LEXIS 39361, at *5-7 (E.D.N.Y. 2016) (Matsumoto, J.), this Court held:

> Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations omitted); Fed. R. Civ. P. 12(b)(6). This plausibility standard is guided by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Plaintiffs have alleged sufficient facts that on the face of the Amended Complaint, the Plaintiffs have set forth plausible claims against all of the Defendants. Accordingly, the Defendants' Motions to Dismiss should be denied.

**POINT II.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIRST CAUSE OF ACTION SEEKING AN ORDER DECLARING THAT THE DOE'S SUSPENSION WITHOUT PAY AND WITHOUT DUE PROCESS VIOLATED THE PLAINTIFFS' CONSTITUTIONAL RIGHTS**

The Defendants suggest that the Court not revisit its prior determinations that: (1) the Plaintiffs' constitutional rights were not violated by the DOE suspending without pay (**Docket Entry No. 33**, at page 17); and (2) the DOE can terminate the Plaintiffs' employment without due process the Vaccine Mandate is a condition of employment to work at the DOE. *See,* **Docket Entry No. 89**, at page 25.

7

The DOE relies upon the UFT Arbitration Award that the DOE argues "established a robust process" to apply for exemptions to the Vaccine Mandate and "set forth a process for separation from employment or the extension of LWOP." **DOE Defendants' Memorandum of Law**, at page 17.

But what happens if this Court holds that the UFT Arbitration Award or the CSA Arbitration Award, or the DC37 Agreement are invalid, illegal, and unenforceable? The answer is that the DOE had no contractual or legal authority to create the scheme and process to suspend the Plaintiffs without due process and no contractual or legal authority to terminate the Plaintiffs' employment. If the UFT Arbitration Award and/or the CSA Arbitration Award and/or DC37 Agreement are illegal and unenforceable, then the DOE has violated the Plaintiffs' constitutional rights.

The DOE Defendants argue that the Court should not disturb its prior rulings in this Action. The Plaintiffs suggest that the Court is not bound by its prior determinations because the determinations were made on a record for a preliminary injunction.

In *Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 US Dist LEXIS 2221, at *3 (S.D.N.Y. 1996), the Court held: "the court's findings on a preliminary injunction motion are not law of the case."

In *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 274 (2d Cir 1992), the Court opined:

> the question posed is whether the same court that issued a preliminary injunction should revisit the issue of the Goodmans' good faith at a subsequent stage in the same litigation. Accordingly, to the extent that any form of preclusion might be considered applicable here, it would not be a rule of res judicata or collateral estoppel, but rather the somewhat more flexible law-of-the-case doctrine, under which courts "generally adhere to [their] own earlier decision on a given issue in the same litigation." *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir.), *cert. denied,* 493 U.S. 956, 110 S. Ct. 370, 107 L. Ed. 2d 356 (1989).

> In any event, no rule of preclusion may appropriately be applied in this case. A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment. *See A.J. Canfield Co. v. Vess Beverages, Inc.,* 859 F.2d 36, 38-39 (7th Cir. 1988). As we stated in *Sierra Club v. United States Army Corps of Eng'rs,* 732 F.2d 253, 256 (2d Cir. 1984): "A preliminary injunction is issued to maintain the *status quo* until there can be a hearing on the merits." *See also Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985); *Arthur Guinness & Sons, PLC v. Sterling Publishing Co.,* 732 F.2d 1095, 1099 (2d Cir. 1984); *Diversified Mortgage Investors v. U.S. Life Title Ins. Co.,* 544 F.2d 571, 576 (2d Cir. 1976). It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions.

As discussed at length in this Memorandum of Law, the UFT Arbitration Award (**Docket Entry No. 47-5**), the CSA Arbitration Award (**Docket Entry No. 47-6**), and the DC37 Agreement (**Docket Entry No. 47-13**) were implemented by the DOE and the Defendants without legal and/or contractual authority.

If the Court determines that the UFT Arbitration Award, the CSA Arbitration Award, and/or the DC37 Agreement were not proper whether pursuant to statute (N.Y. Civil Service Law § 209.3.(f)) or properly ratified by the members, then, the basis for the DOE's suspensions without pay and terminations without due process fail.

In addition, the DOE argues that the Court previously held that the Plaintiffs were afforded all pre- and post-deprivation process afforded them under the constitution, (**Docket Entry No. 89**, at page 15), based upon the UFT Arbitration Award, CSA Arbitration Award, and the DC37 Agreement. But if the UFT Arbitration Award, the CSA Arbitration Award and/or the DC37 Agreement are held to be invalid, then the pre- and post-deprivation process were also invalid and therefore, the Court's prior rulings must be revisited.

As this Court held: "[c]ontrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which

9

ultimately resulted in the Arbitration Awards .... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89,** at pages 24-25.

If the DOE and the Defendant unions' compliance with N.Y. Civil Service Law § 201.4. failed because of infirmities in the UFT Arbitration Award, the CSA Arbitration Award, and/or the DC37 Agreement, then the Court's holding that the Vaccine Mandate was a condition of employment, must be revisited.

Upon revisiting the issue, then the Court should hold that the Plaintiffs have plausibly pled a cause of action for a declaration that the DOE's suspensions without pay and without due process violated the Plaintiffs' constitutional rights. The DOE's Motion to Dismiss must therefore be denied.

**POINT III.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' SECOND CAUSE OF ACTION SEEKING A DECLARATION THAT THE UFT ARBITRATION AWARD WAS PROMULGATED WITHOUT ANY STATUTORY OR CONTRACTUAL AUTHORITY**

The DOE Defendants' and the UFT Defendants' defenses to the Plaintiffs' claims is the UFT Arbitration Award. If the UFT Arbitration Award was rendered without any statutory or contractual authority, then the DOE Defendants' and the UFT Defendants' defenses fail and everything that has happened to the Plaintiffs since the UFT Arbitration Award was issued violated their constitutional rights. As a result, the Plaintiffs have stated plausible claims against the DOE Defendants and the UFT Defendants.

Unfortunately for the DOE Defendants, the UFT Defendants, and the Scheinman Defendants, the UFT Arbitration Award was rendered without any statutory or contractual authority and this Court should deny the Motion to Dismiss the Plaintiffs' Second Cause of Action because the UFT Arbitration Award violated N.Y. Civil Service Law § 209.3(f).

### A.    Underlying Facts That Led To The UFT Arbitration Award

Pursuant to the New York Taylor Law (N.Y. Civil Service Law § 209.3(a)), the UFT and the DOE entered into negotiations over the impact of the Vaccine Mandate. *See,* **Docket Entry No. 47,** at ¶ 116.

The UFT and the DOE held bargaining sessions on August 25, 2021 and August 30, 2021. *See,* **Docket Entry No. 47-9,** at Schedule A. On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board over the impact of the Vaccine Mandate. *See,* **Docket Entry No. 47-9.**

Pursuant to N.Y. Civil Service Law § 209, PERB appointed Scheinman as a mediator to mediate the impact of the Vaccine Mandate. *See,* **Docket Entry No. 47-10.**

Virtual mediation sessions between the NYCDOE and the UFT with Scheinman on September 2, 3, 4, and 5, 2021. *See,* **Docket Entry No. 47-11.**

On September 6, 2021, the UFT informed PERB that "with the start of the school year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13th and Sept. 27th, respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce. Arbitration sessions are being held on Sept. 6th." **Docket Entry No. 47-11.**

As a consequence of this "agreement" to move to "an expedited arbitration", on September 10, 2021, Scheinman issued the UFT Arbitration Award. **Docket Entry No. 47,** at ¶ 152.

### B.    No Statutory Authority For Binding Arbitration To Resolve Impasse Negotiations In School Districts

N.Y. Civil Service Law § 209 governs the methods by which public employers and public employee unions may resolve impasses in negotiations. The DOE and the UFT resolved their impasse in negotiations by agreeing to binding arbitration, resulting in the UFT Arbitration Award.

The agreement by the UFT and the DOE to resolve the impasse in negotiations by binding arbitration violated the N.Y. Civil Service Law and therefore was illegal.

Scheinman disagrees that the arbitration proceeding he presided over was illegal and argues that "the parties have a statutory right, pursuant to the Taylor Law, to choose to mutually agree to a binding arbitration." **Scheinman Memorandum of Law,** at page 6.

To support this argument, Scheinman cites to N.Y. Civil Service Law § 209.2., which empowers public employers

> to enter into written agreements with recognized or certified employee organizations setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations. Such agreements may include the undertaking by each party to submit unresolved issues to impartial arbitration. In the absence or upon the failure of such procedures, public employers and employee organizations may request the board to render assistance as provided in this section....

N.Y. Civil Service Law § 209.2.

Contrary to Scheinman's argument, prior to the impasse over the impact of the Vaccine Mandate, the UFT and the DOE did not have any written agreement setting forth procedures to be invoked in the event of disputes which reach an impasse, which could have included impartial arbitration.[3] The reason the Plaintiffs know this is because when there are no procedures, the

---

[3] Scheinman was not an impartial arbitrator. The Vaccine Mandate was promulgated by Mayor Bill DeBlasio. Scheinman held a fundraiser for Mayor DeBlasio in his home. *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de blasio (visited April 18, 2022). Scheinman adopted his favored politician's positions in the UFT Arbitration Award, giving Mayor DeBlasio much, if not all that he wanted from negotiations with the UFT. A comparison between the UFT Arbitration Award (**Docket Entry No. 47-5**) with the UFT's Impasse Statement to PERB reveals that many of the proposals made by the DOE at the bargaining table were adopted by Scheinman including "the City's extreme plan to place educators on involuntary leave violat[ing] statutory and related contractual disciplinary provisions, and strips teachers of their core due process rights as public employees." *Compare,* **Docket Entry No. 47-9,** at page 7 *with* **Docket Entry No. 47-5,** at pages 6-17. Scheinman was far from neutral, but in reality was a biased "arbitrator" who did Mayor DeBlasio's political bidding in return for a financial windfall since "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-5,** at page 12, at § J. The UFT Arbitration Award was a kickback scheme rewarding the Scheinman Defendants for granting the DOE all it could have wanted in an effort to force UFT members to kowtow to the Vaccine Mandate. The agreement by the UFT to have Scheinman as the "arbitrator"

**JA-1761**

statute permits the DOE and/or the UFT to ask PERB to intervene and render assistance to overcome the impasse in negotiations. This is the precise procedure that the UFT followed on September 1, 2021, recognizing that there was no written agreement setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of their collective bargaining negotiations. *See,* **Docket Entry No. 47-9.**

On September 1, 2021, the UFT declared that the UFT and the DOE were at an impasse in negotiations over the impact of the Vaccine Mandate, triggering N.Y. Civil Service Law § 209 procedures. *See,* **Docket Entry No. 47-9.** The UFT wrote to PERB that "[t]he parties cannot bridge this divide without PERB's assistance." **Docket Entry No. 47-9,** at pages 2-3. If there was a prior written agreement between the DOE and the UFT regarding procedures to be invoked in the event of an impasse in negotiations, then the UFT would not have needed PERB to intervene and provide assistance. The impasse would have triggered those procedures.

Since there were no prior written agreements between the UFT and the DOE, Scheinman's argument regarding the legal authority he had to render the UFT Arbitration Award must be rejected by the Court.

Instead, the Court should examine the language of the statute, New York State Court of Appeals decision, and PERB's decisions regarding impasse negotiations that specifically apply to school districts. All of which make it clear and unambiguous that what the DOE and the UFT "agreed" to (**Docket Entry No. 47-11**) was illegal, violated N.Y. Civil Service Law § 209, and the UFT yielded and abdicated its power and authority to negotiate a resolution (which was a breach of the duty of fair representation), as required by the statute, to an arbitrator who had no authority to render such a decision.

N.Y. Civil Service Law § 209.3(f) states:

> 3.    On request of either party or upon its own motion, as
>       provided in subdivision two of this section, and in the event

---

determining the outcome of the impasse in negotiations was an abdication of its duty of fair representation to the Plaintiffs whose constitutional rights were violated as a consequence of the UFT Arbitration Award.

the board determines that an impasse exists in collective negotiations between such employee organization and a public employer as to the conditions of employment of public employees, the board shall render assistance as follows: ...

(f)    where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply, and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present; (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement. The board may provide such assistance as may be appropriate.

There are several cases that interpret this section of the statute. None of the cases support the UFT's, the DOE's or Scheinman's agreement to arbitrate a resolution to the impasse in negotiations in the school district context. The UFT and the DOE abdicated their power and authority to reach a negotiated settlement to Scheinman who imposed an outcome, which violated N.Y. Civil Service Law § 209.3(f).

In *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999) (footnotes omitted), PERB held:

The parties to negotiations involving school district personnel and those to negotiations involving police and fire officers have identical collective bargaining rights and obligations in all relevant respects except as to the statutory system which becomes applicable if they reach an impasse in their negotiations. Although all public employers and public employees have mediation available to them, impasses involving police and fire personnel are subject to resolution by compulsory binding interest arbitration. School district negotiations are not subject to resolution by compulsory interest arbitration. If post-mediation fact-finding does not result in a settlement of the impasse, the parties themselves must resolve the impasse by reaching a new collective bargaining agreement. PERB

14

may continue to render third-party assistance to help the parties reach an agreement, but an impasse in school district negotiations continues for however long it takes the parties to reach a collective bargaining agreement.

In *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016), PERB held:

> Generally, where the parties have been unable to resolve the dispute after fact-finding, PERB has considered the appropriateness of the appointment of a conciliator to mediate a settlement based on the fact finder's report and recommendations. This is particularly so in regard to school districts, where there is no option available to the parties other than continuing to negotiate until an "agreement" is reached.

Additionally in *Matter of Buffalo Teachers Federation*, 49 PERB P4560, PERB stated in footnote 93: "[s]chool districts and other educational institutions do not have the ability under the Act to unilaterally resolve the dispute after fact-finding through a process of public hearing and action by its legislative body, as do other public employers."

In *Bd. of Educ. of City Sch. Dist. v. NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 671, the New York State Court of Appeals stated that there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations."

Despite the clear and unambiguous language of the statute, the New York Court of Appeals holding and the PERB determinations, the DOE and the UFT illegally agreed to have Scheinman resolve the impasse in negotiations through binding arbitration.

The Scheinman Defendants state that "the parties agreed to move to an expedited arbitration due to the exigencies of these circumstances." **Scheinman Defendants Memorandum of Law**, at page 3. Yet, there is no exception in the statute for exigent circumstances. The parties just had to negotiate. There are no shortcuts in the statute because of the time frame imposed by the DOE to implement the Vaccine Mandate.

15

In support of their Motions to Dismiss, neither the DOE Defendants, the UFT Defendants, nor the Scheinman Defendants cite a single statute, case, PERB decision, or even a law review article that supports what they did --- the UFT and the DOE conspired to abdicate their authority to negotiate a settlement to resolve the impasse in negotiations to Mayor DeBlasio's fundraiser. *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).

The Scheinman Defendants argue that "[t]hese arbitrations were not mandated by PERB. They were not compulsory. They were the result of a voluntary agreement between the parties, which the statute [sic] specifically permits." **Scheinman Defendants' Memorandum of Law,** at page 7.

The Scheinman Defendants further argue "[t]here is no statute or decisional law prohibiting public employees and public employers to choose to submit to a voluntary binding arbitration to resolve their conflict." **Scheinman Defendants' Memorandum of Law,** at page 10.

The Scheinman Defendants ignore PERB's ruling that "in regard to school districts, … there is no option available to the parties other than continuing to negotiate until an "agreement" is reached." *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560.

Despite the Defendants' arguments, there was no statutory authority for Scheinman to issue the UFT Arbitration Award. Accordingly, the Court should deny the DOE Defendants', the UFT Defendants', and the Scheinman Defendants' Motions to Dismiss the Plaintiffs' Second Cause of Action.

**C.     No Contractual Authority For Binding Arbitration To Resolve Impasse Negotiations In School Districts**

The Scheinman Defendants state "[t]here is no ambiguity that the arbitrations at issue in this case were not grievance arbitrations." **Scheinman Defendants' Memorandum Of Law,** at page 9.

The Plaintiffs agree.[4]

The DOE Defendants and the UFT Defendants do not cite to any contract between the DOE and the UFT that authorized binding arbitration to resolve an impasse in negotiations. As a result, Scheinman had no contractual authority to issue a binding arbitration award that directly resulted in the violation of the Plaintiffs' constitutional rights.

**********************

Since Scheinman had no statutory or contractual authority to issue the UFT Arbitration Award, the Plaintiffs have stated a plausible claim for a declaration that the UFT Arbitration Award was promulgated without any statutory or contractual authority. Accordingly, the Defendants' Motions to Dismiss the Second Cause of Action must be denied.

**POINT IV.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' THIRD CAUSE OF ACTION SEEKING A DECLARATION THAT THE CSA ARBITRATION AWARD WAS PROMULGATED WITHOUT ANY STATUTORY OR CONTRACTUAL AUTHORITY**

The CSA Arbitration Award suffers from similar infirmities as the UFT Arbitration Award, but neither the CSA nor the DOE declared impasse nor sought PERB's assistance in mediating the impasse. *See,* **UFT Defendants' Memorandum of Law,** at page 6.

Instead, the DOE and the CSA could not come to a final resolution and just agreed to arbitrate the dispute. *See,* **UFT Defendants' Memorandum of Law,** at page 6. Neither the CSA nor the DOE argue or cite to any provision in the CSA's collective bargaining agreement or any

---

[4] While the UFT Defendants argue that the UFT Arbitration Award is "incorporated into the UFT' Defendants' … CBA[ ]" (**UFT Defendants' Memorandum of Law,** at page 6), the UFT did not seek a ratification from its members before the UFT Arbitration Award was implemented. This is another infirmity in the UFT Arbitration Award. *See, Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973); *City of Rochester,* 7 PERB P3060 (1974); *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau,* 45 PERB P3047 (2012).

17

other agreement that set forth "procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations." N.Y. Civil Service Law § 209.2.

Accordingly, when the CSA Defendants and the DOE Defendants agreed to resolve their impasse in negotiations by submitting to binding arbitration before Scheinman, they violated N.Y. Civil Service Law § 209.3(f).

The CSA Defendants and the DOE Defendants did not reach a negotiated settlement as required by the statute. As PERB stated in *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560, "in regard to school districts, where there is no option available to the parties other than continuing to negotiate until an 'agreement' is reached."

The CSA Defendants and the DOE Defendants did not negotiate until an agreement was reached, but yielded and abdicated their statutory authority and duties to negotiate to Scheinman who is a political fundraiser for Mayor De Blasio (*see,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022)) and who gave, in the CSA Arbitration Award, all that the DOE Defendants could have hoped for in implementing the Vaccine Mandate at the Plaintiffs' cost of the constitutional rights.[5]

Since Scheinman had no statutory or contractual authority to issue the CSA Arbitration Award. As a result, the Plaintiffs have stated a plausible claim for a declaration that the CSA Arbitration Award was promulgated without any statutory or contractual authority. Accordingly, the Defendants' Motions to Dismiss the Third Cause of Action must be denied.

---

[5] While the CSA Defendants argue that the CSA Arbitration Award amended the CSA's collective bargaining agreement with the DOE, the CSA did not seek a ratification from its members before the CSA Arbitration Award was implemented. This is another infirmity in the CSA Arbitration Award. *See, Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973); *City of Rochester,* 7 PERB P3060 (1974); *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau,* 45 PERB P3047 (2012).

**JA-1767**

**POINT V.   THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FOURTH CAUSE OF ACTION SEEKING A DECLARATION THAT THE DC37 AGREEMENT WAS PROMULGATED WITHOUT ANY CONTRACTUAL AUTHORITY**

The Plaintiffs allege that the DC37 Agreement with the DOE regarding the impact of the Vaccine Mandate (**Docket Entry No. 47-7**) "was entered into without any contractual authority." **Docket Entry No. 47**, at ¶ 303.[6]

Neither the DC37 Defendants nor the DOE Defendants cite to any contractual authority for the DC37 Agreement.

Instead, the DC37 Defendants argue that they had "*statutory* authority to enter into" the DC37 Agreement, citing to N.Y. Civil Service Law § 204(1).   *See*, **DC37 Defendants' Memorandum of Law**, at page 16.

However, the DC37 Defendants do not explain how they were able to enter into a significant modification and amendment to its current collective bargaining agreement with the DOE without a vote of the union's membership approving such a modification.

While DC37 may have had statutory authority to enter into the DC37 Agreement, the DC37 Agreement was never ratified by the union members and therefore could not amend the current collective bargaining agreement to strip away the Plaintiffs'-union members' rights.

In *Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973), PERB held that "having negotiated and approved of [a new collective bargaining agreement], they had an affirmative duty to seek its ratification."

---

[6] The Scheinman Defendants state that "[t]he arbitration awards for CSA and District 37 were issued on September 15, 2021 and October 3, 2021, respectively, and mirrored the Impact Arbitration Award." **Scheinman Defendants**, at page 4.  The Plaintiffs do not have any evidence that Scheinman issued any arbitration award to resolve the DC37 Agreement.  This representation by the Scheinman Defendants is strange because the Scheinman Defendants would know what awards Scheinman issued.

In *City of Rochester*, 7 PERB P3060 (1974), PERB held that "it is a violation of their duty to negotiate in good faith for negotiators who reach a tentative agreement not to seek approval of their agreement."

Further in *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012), PERB held that "when parties have agreed that a tentative agreement is to be ratified, each side is affirmatively obligated to present it to their ratifying entity and to support its approval."

DC37's failure to follow proper procedure to obtain the necessary approval from the DC37's membership for the DC37 Agreement, making the DC37 Agreement void.

Accordingly, the Plaintiffs have stated a plausible claim that the DC37 Agreement has serious procedural and contractual infirmities such that the Defendants' Motion to Dismiss the Fourth Cause of Action must be denied.

**POINT VI.    THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIFTH CAUSE OF ACTION SEEKING A DECLARATION THAT THE RELEASE EXECUTED BY PLAINTIFFS TO EXTEND THEIR LEAVE WITHOUT PAY IS VOID AND UNENFORCEABLE**

One of the most prominent arguments made by the DOE Defendants, the UFT Defendants, the CSA Defendants, and the DC37 Defendants is that through their arbitration awards/agreement, Plaintiffs were permitted to extend their leaves of absence for a year in return for continued health insurance coverage before they had to succumb to the Vaccine Mandate.

What the Defendants do not tell this Court is that in order to extend their leaves of absence, the Plaintiffs were required to sign a general release of all claims against the DOE. *See,* **Docket Entry No. 47-14**. *See also,* **Docket Entry No. 47**, at ¶ 309.

The release was beyond the release language authorized in both the CSA Arbitration Award (**Docket Entry No. 47-6**, at page 12) and the UFT Arbitration Award (**Docket Entry No. 47-5**, at

page 16) and the Plaintiffs who signed the release to extend their leave of absence did so under duress and to the extent it applied to them, without the twenty-one (21) days to review the release as required by the Older Workers Benefit Protection Act ("OWBPA").  *See,* 29 U.S.C. § 626(f)(1)(F)(i).

There was no general release language authorized by the UFT Arbitration Award or the CSA Award.  The DOE overstepped and sought to obtain a release from Plaintiffs who were vulnerable and desperate not to lose their jobs and their health insurance.  The DOE took advantage of their weakened bargaining position and sought an unreasonable and improper general release.

The Plaintiffs who executed the improper release did so under duress and have repudiated the release.  *See,* **Docket Entry No. 47,** at ¶ 317.

In *Grullon v. Delta Air Lines, Inc.*, 2021 U.S. App. LEXIS 38168, at *4-7 (2d Cir. 2021), the Court examined the issues and the law regarding releases executed under duress and the repudiation of those releases.  The Court opined:

> "Under New York law, a contract or release, the execution of which is induced by duress, is voidable." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (internal quotation marks and alterations omitted). Construing the facts in favor of Grullon, as we must, we conclude that the release was executed under duress. Being escorted by airport security officials to their offices in the Punta Cana International Airport and told that Rodriguez intended to press charges against her might have created the "effect of precluding the exercise of free will" required to establish duress. *In re Guttenplan*, 222 A.D.2d 255, 257, 634 N.Y.S.2d 702 (1st Dep't 1995); *see also id.* (explaining that "a threat of criminal prosecution" can cause duress). The Release was therefore voidable.
>
> That said, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp.*, 244 F.3d at 122 (internal quotation marks omitted). A repudiation must be "clear and unequivocal." *Walton Mgmt., LLC v. Walton Apartments, LLC*, 298 A.D.2d 277, 278, 748 N.Y.S.2d 737 (1st Dep't 2002).

The District Court concluded that Grullon repudiated the Release ten months after she signed it by filing her complaint, and that her repudiation was therefore untimely. Special App'x 3; *see VKK Corp.*, 244 F.3d at 122 ("Delays as short as six months have been held to constitute forfeiture of the claim."); *see also Oquendo v. CCC Terek*, 111 F.Supp.3d 389, 410 (S.D.N.Y. 2015) (construing New York law and holding that a duress claim was forfeited by a delay of eight months).

On appeal, Grullon advances two arguments. First, she argues, as she did below, that her duress was ongoing, and that she therefore did not need to repudiate the Release. *See In re Guttenplan*, 222 A.D.2d at 257; *Sosnoff v. Carter*, 165 A.D.2d 486, 492, 568 N.Y.S.2d 43 (1st Dep't 1991) ("[W]here during the period of acquiescence . . . the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased."). We reject this argument. Once Grullon returned to the United States, her duress effectively ended. We need not rely, as the District Court did, on Grullon's voluntary return trip to the Dominican Republic, which she argues based on the record may have occurred after she filed her complaint repudiating the Release. At a minimum, the record shows that within three months of the incident, Grullon had retained counsel and was contemplating litigation, which belies the notion that a fear of prosecution still "preclud[ed] the exercise of [her] free will." *In re Guttenplan*, 222 A.D.2d at 257.

Those Plaintiffs who executed the release did so in November 2021 and December 2021. On January 10, 2022, the Amended Complaint was filed, which states clearly and unequivocally that those Plaintiffs who signed the release "repudiate the Release." **Docket Entry No. 47**, at ¶ 317.

While none of the Defendants have moved to dismiss the Plaintiffs' Fifth Cause of Action seeking a declaratory judgment declaring the release void and unenforceable, the Plaintiffs address this cause of action because it has caused serious trepidation, fear, and concerns about whether or not signing the release affects the Plaintiffs' rights *vis-a-vie* this Action and other pending litigation throughout the State.

Since none of the Defendants have sought to dismiss the Plaintiffs' Fifth Cause of Action, the Court should not dismiss the Plaintiffs' Fifth Cause of Action.

22

JA-1771

**POINT VII.  THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A PERMANENT INJUNCTION ON THE PLAINTIFFS' SIXTH CAUSE OF ACTION**

No Defendants have moved to dismiss the Plaintiffs' Sixth Cause of Action seeking a permanent injunction.  However, the Plaintiffs address the Sixth Cause of Action because the Plaintiffs can state a plausible claim for a permanent injunction.

In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), the Court held:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

While at the earlier stages of this Action, the Court denied applications for preliminary injunctions (**Docket Entry No. 33** and **Docket Entry No. 89**), a permanent injunction is only issued once the parties have had an opportunity to conduct discovery and the full breadth of the Defendants' conduct has been examined through the adversarial process.

At this early stage of the litigation, without discovery, but with allegations concerning the illegality of the UFT Arbitration Award (Point III above) and the CSA Arbitration Award (Point IV above) and the DC37 Agreement's infirmities (Point V above), the Plaintiffs, may, at the conclusion of discovery, have sufficient evidence to establish the elements of a permanent injunction.

At this point in the litigation, the Plaintiffs only have to plead a plausible claim for a permanent injunction and the Plaintiffs have done so.  Accordingly, the Plaintiffs' Sixth Cause of Action should not be dismissed.

23

**POINT VIII. THE PLAINTFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, THE UFT DEFENDANTS, AND THE SCHEINMAN DEFENDANTS ON THE PLAINTIFFS' SEVENTH CAUSE OF ACTION**

**A.     Factual Predicate For Cause Of Action**

The UFT Arbitration Award was issued in violation of N.Y. Civil Service Law. *See,* N.Y. Civil Service Law § 209.3(f).  Scheinman had no legal or contractual authority to issue the UFT Arbitration Award.  *See,* Point III above.

The DOE, relying upon the UFT Arbitration Award, argued to this Court that the Vaccine Mandate was a condition of employment for DOE employees.  *See,* **Docket Entry No. 79**, at page 24.

In response, this Court held: "[c]ontrary to Plaintiffs' argument, after reach an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards …. Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

However, the UFT Arbitration Award did not comply with the N.Y. Civil Service Law and should be declared void by this Court as a matter of law.  Without the UFT Arbitration Award, the DOE's reliance upon it to impose the Vaccine Mandate as a condition of employment crumbles.

Without the UFT Defendants conspiring with the DOE to resolve the impasse in negotiations in violation of N.Y. Civil Service Law (**Docket Entry No. 47-11**), the UFT Arbitration Award would not have been issued.  Without the UFT Defendants' consent, the impasse in negotiations would have been resolved (or not resolved), not through binding arbitration, but through negotiations "until an 'agreement' is reached." *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560.

24

The DOE Defendants conspired with the UFT Defendants to retain Scheinman as the "arbitrator" to impose an arbitration award to resolve the impasse in negotiations in violation of law. With this as a factual predicate to the Plaintiffs' Seventh Cause of Action, the Plaintiffs have stated a plausible claim against the DOE Defendants, the UFT Defendants, and the Scheinman Defendants for a violation of 42 U.S.C. § 1983.

### B.    Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir 1998).

The DOE is a State actor who, at all times, was acting under the color of state law. *See,* **Docket Entry No. 47**, at ¶ 121. Porter was, at the time of the matters at issue in this Action, Chancellor of the DOE. *See,* **Docket Entry No. 47**, at ¶ 122.

The DOE implemented the Vaccine Mandate. As a result of the DOE's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and ultimately, some were terminated from their employment without due process.

The DOE, relying upon the UFT Arbitration Award (**Docket Entry No. 47-5**) argued that the Vaccine Mandate was a condition of employment since the DOE's bargaining units agreed to and therefore consented to the DOE's conduct.

If the UFT Arbitration Agreement was illegal, improper, and violated N.Y. Civil Service Law, as argued by the Plaintiffs (Point III above), then as a result of the DOE's actions, the Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges.

**JA-1774**

As a result, the Plaintiffs have stated a plausible claim against the DOE for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the DOE's Motion to Dismiss must be denied.

**C.**     **Plaintiffs Have Stated A Plausible Claim Against The UFT Defendants**

The UFT Defendants argue that they are not State actors and therefore any of the Plaintiffs' claims pursuant to 42 U.S.C. § 1983, must be dismissed.

In *Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019), the Court opined:

> Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances including, for example, (i) when the private entity performs a traditional, exclusive public function, see, *e.g., Jackson*, 419 U. S., at 352-354, 95 S. Ct. 449, 42 L. Ed. 2d 477; (ii) when the government compels the private entity to take a particular action, see, *e.g., Blum* v. *Yaretsky*, 457 U. S. 991, 1004-1005, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982); or (iii) when the government acts jointly with the private entity, see, *e.g., Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922, 941-942, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

The Plaintiffs allege that the UFT is a state actor in these circumstances because it acted jointly with the DOE with respect to the UFT Arbitration Award.

The UFT Defendants argue "the negotiations and arbitrations which produced the Awards do not constitute evidence of a conspiracy; they are evidence of adversity." **UFT Defendants' Memorandum of Law,** at page 14.

What the UFT Defendants ignore is that they were willful participants in the "arbitration" that resulted in the UFT Arbitration Award that was agreed to when there was no statutory or contractual authority to do so.[7]  It is the UFT Arbitration Award that resulted in a deprivation of

---

[7] The UFT Defendants argue that "[t]he notion that submitting an adversarial dispute to a mediator (who by definition is called to help resolve a dispute) under the auspices of the New York's Taylor Law, or an arbitrator, results in an

the Plaintiffs' constitutional rights because but-for the UFT Arbitration Award, the DOE could not have created a condition of employment out of the Vaccine Mandate. *See,* **Docket Entry No. 89**, at pages 24-25.

In *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), the Court opined:

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

The UFT Defendants agreed with the DOE to violate N.Y. Civil Service Law to resolve the impasse in negotiations over the Vaccine Mandate through binding arbitration. *See,* **Docket Entry No. 47-11**.

This collusion and conspiracy resulted in an award by Scheinman (a political fundraiser for Mayor DeBlasio (https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022))) that granted to the DOE every possible benefit that it sought in negotiations. *Compare,* **Docket Entry No. 47-9**, at page 7 *with* **Docket Entry No. 47-5**.

Despite purportedly strongly opposing those same proposals during negotiations (**Docket Entry No. 47-9**, at page 7), the UFT Defendants failed to challenge the UFT Arbitration Award in State Court pursuant to CPLR Article 75 once Scheinman adopted what seemingly appears to be all of the DOE's positions. The UFT Defendants argue that "the UFT and CSA Defendants have actively sought to protect the interests of their respective members...." **UFT Defendants'**

---

actional conspiracy under § 1983 would render essentially all public sector labor relations actions evidence of a conspiracy." **UFT Defendants' Memorandum of Law**, at page 15. The Plaintiffs are not arguing nor should the Court hold that submitting a matter to a mediator or arbitrator is a conspiracy under § 1983. The Plaintiffs are arguing and the Court should hold that when the UFT and the DOE entered into arbitration to resolve their impasse in negotiations in violation of N.Y. Civil Service Law § 209, the collusion to violate the statute was an actual conspiracy under § 1983.

**Memorandum of Law,** at page 13. Despite their words, the UFT Defendants' actions do not match its words.

The UFT Defendants just conceded and abdicated their authority, role, and responsibility to represent their members, the Plaintiffs by forcing the DOE to come to a negotiated resolution at the bargaining table to implement the Vaccine Mandate. *See, Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560.

The UFT Defendants argue that they and the DOE "are inherently adversarial." **UFT Defendants' Memorandum of Law,** at page 1. While they are adversarial at times, the UFT Defendants and the DOE conspired in this instance and agreed to violate the N.Y. Civil Service Law to permit Scheinman to issue the UFT Arbitration Award without any authority. *See,* **Docket Entry No. 47-11.**

But-for the UFT Arbitration Award, the Plaintiffs-UFT members could not have been suspended without pay for not taking the vaccine and the Plaintiffs-UFT members could not have been fired from their employment.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007) held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The UFT Arbitration Award deprived the Plaintiffs-UFT members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019); *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As a result, the Plaintiffs has stated a plausible claim against the UFT Defendants for violation of 42 U.S.C. § 1983.

**D.      Plaintiffs Have Stated A Plausible Claim Against The Scheinman Defendants**

The UFT Defendants state the Scheinman is a "widely-respected arbitrator" (**UFT Defendants' Memorandum of Law**, at page 2), but the UFT Defendants do not disclose to this Court that he is a political fundraiser for Mayor DeBlasio, the same person who imposed the only vaccine mandate in the State upon school district employees and the same person who was promoting the vaccine mandate.

Scheinman not only donated to Mayor DeBlasio, which would not, in the Plaintiffs' opinion, be a disqualifying issue, but Scheinman held a political fundraising event for Mayor DeBlasio in his home.   *See,* https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).   Scheinman was not a neutral arbitrator, but a political player who participated in the collusion between the DOE and the UFT to abdicate their statutory authority and responsibility to negotiate a resolution as required by the N.Y. Civil Service Law.

Scheinman also used his authority "to arrive at a fair resolution of the matters at hand" (**Docket Entry No. 47-5**, at page 7) to create a financial windfall for himself and the Scheinman Defendants by requiring any appeals of requests for religious or medical exemptions to the Vaccine Mandate must brought "directly to SAMS for expedited resolution." **Docket Entry No. 47-5**, at page 14.[8]

Scheinman also wrote in the UFT Arbitration Award that "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-5**, at page 13.

---

[8] The Scheinman Defendants make a misleading argument that "SAMS was merely tasked with identifying an independent arbitrator, not SAM's arbitrator, an independent panel of arbitrators." **Scheinman Defendants' Memorandum of Law,** at page 13. If the Scheinman Defendants were only "oversee[ing] the process and were not active participants in the decision-making process" then why did Scheinman include the language that "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-5**, at page 13. **Scheinman Defendants' Memorandum of Law,** at page 13. The arbitrators who denied the Plaintiffs' appeals of the denial of their accommodations were arbitrators who were Scheinman himself (**Exhibit A**), arbitrators who worked for SAMS (**Exhibit B**) or arbitrators who work for Scheinman Institute on Conflict Resolution at Cornell University (**Exhibit C, Exhibit D, Exhibit E, Exhibit F**). For the Scheinman Defendants to argue to this Court that essentially, they did not inject themselves in the appellate process and did not make a financial windfall, is materially false and misleading.

JA-1778

Scheinman not only made a ruling but inserted him and the Scheinman Defendants in the appellate process for any aggrieved Plaintiff-UFT member who was not granted a religious or medical exemption, earning Scheinman a significant financial windfall.

Scheinman argues that he is immune from the Plaintiffs' claims based upon arbitrator immunity. *See,* **Scheinman Defendants' Memorandum of Law**, at page 14.[9]

The Plaintiffs would agree that Scheinman had arbitrator immunity if two conditions were present that are not present in this matter: (1) Scheinman had statutory or contractual authority "to arrive at a fair resolution of the matters at hand" **(Docket Entry No. 47-5**, at page 7), which he did not (*see,* Point III above); and (2) Scheinman did not insert the Scheinman Defendants in the appellate process for DOE's denials of exemptions to the Vaccine Mandate at the cost to the DOE of a financial windfall for the Scheinman Defendants. *See,* **Exhibits A** through **F.**

Scheinman unilaterally imposed the Scheinman Defendants upon the UFT and the DOE as the appellate process since, as Scheinman wrote "[w]hile some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone." **Docket Entry No. 47-5**, at page 7.

As "arbitrator", Scheinman did not have any legal or contractual authority to issue the UFT Arbitration Award. Scheinman was appointed by PERB as mediator **(Docket Entry No. 47-10**), not as arbitrator. As a result, Scheinman acted outside the scope of his appointment by PERB, without any authority and therefore any entitlement to immunity is defeated by the improper and illegal nature of the UFT Arbitration Award.

Accordingly, the Plaintiffs have stated a plausible claim against the Scheinman Defendants. The Scheinman Defendants' Motion to Dismiss should be denied.

---

[9] The Scheinman Defendants do not argue that they were not state actors. However, to resolve that issue, the Plaintiffs allege that the Scheinman Defendants are state actors in these circumstances because they acted jointly with the DOE, and the UFT with respect to the UFT Arbitration Award. *See, Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. at 1928.

*************

The DOE Defendants', the UFT Defendants', and the Scheinman Defendants' Motions to Dismiss should be denied.

**POINT IX.   THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, THE CSA DEFENDANTS, AND THE SCHEINMAN DEFENDANTS ON THE PLAINTIFFS' EIGHTH CAUSE OF ACTION**

**A.   Factual Predicate For Cause Of Action**

The CSA Arbitration Award was issued in violation of N.Y. Civil Service Law. *See,* N.Y. Civil Service Law § 209.3.(f).   Scheinman had no legal or contractual authority to issue the CSA Arbitration Award.  *See,* Point IV above.

The DOE, relying upon the CSA Arbitration Award, argued to this Court that the Vaccine Mandate was a condition of employment for DOE employees.  *See,* **Docket Entry No. 79**, at page 24.

In response, this Court held: "[c]ontrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards .... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

However, the CSA Arbitration Award did not comply with the N.Y. Civil Service Law and the Court should declare it void as a matter of law.  Without the CSA Arbitration Award, the DOE's reliance upon it to impose the Vaccine Mandate as a condition of employment crumbles.

Without the CSA Defendants conspiring with the DOE to resolve the impasse in negotiations in violation of N.Y. Civil Service Law, the CSA Arbitration Award would not have

31

been issued. Without the CSA Defendants' consent, the impasse in negotiations would have been resolved (or not resolved) through negotiations at the bargaining table. *See, Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560.

The DOE Defendants conspired with the CSA Defendants to retain Scheinman as the "arbitrator" to impose an arbitration award to resolve the impasse in negotiations in violation of law. With this as a factual predicate to the Plaintiffs' cause of action, the Plaintiffs have stated a plausible claim against the DOE Defendants, the CSA Defendants, and the Scheinman Defendants.

**B.      Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants**

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester,* 136 F.3d at 245.

The DOE is a State actor who, at all times was acting under the color of state law. *See,* **Docket Entry No. 47**, at ¶ 121. Porter was, at the time of the matters at issue in this Action, Chancellor of the DOE. *See,* **Docket Entry No. 47**, at ¶ 122.

The DOE implemented the Vaccine Mandate. As a result of the DOE's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and ultimately terminated from their employment without due process.

The DOE, relying upon the CSA Arbitration Award (**Docket Entry No. 47-6**) argued that the Vaccine Mandate was a condition of employment that the DOE's bargaining units agreed to and therefore consented to the DOE's conduct.

If the CSA Arbitration Agreement was illegal, improper, and violated N.Y. Civil Service Law, as argued by the Plaintiffs (Point IV above), then as a result of the DOE's actions, the

**JA-1781**

Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the DOE for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the DOE's Motion to Dismiss must be denied.

### C.   Plaintiffs Have Stated A Plausible Claim Against The CSA Defendants

The CSA Defendants argue that they are not State actors and therefore any claims pursuant to 42 U.S.C. § 1983 must be dismissed.

In *Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. at 1928, the Court opined that "a private entity can qualify as a state actor in a few limited circumstances—including, for example … when the government acts jointly with the private entity." The Plaintiffs allege that the CSA Defendants are state actors in these circumstances because they acted jointly with the DOE with respect to the CSA Arbitration Award.

The CSA Defendants were willful participants in the "arbitration" that resulted in the CSA Arbitration Award. It is the CSA Arbitration Award that caused a deprivation of the Plaintiffs' constitutional rights because but-for the CSA Arbitration Award, the DOE could not have created a condition of employment out of the Vaccine Mandate. *See,* **Docket Entry No. 89**, at pages 24-25.

As Scheinman stated

> In the aftermath of the Arbitration Award issued by the undersigned to resolve the Impasse regarding the implementation of the City's Vaccine Only mandate between the United Federation of Teachers ("UFT"), on the one hand, and the City of New York and NYC Department of Education ("DOE"), dated September 10, 2021, on the other, the Council of Supervisors & Administrators ("CSA") and the City of New York ("City") reached out to me to similarly address

33

their concerns. Given the exigencies of the opening of school and
the imminent effective date of the City's mandate, it was agreed the
parties would promptly move to arbitration.   Accordingly, an
arbitration session was held on September 14, 2021, in which
representatives of all parties participated.

**Docket Entry No. 47-6**, at page 2.

As Scheinman admits, the CSA Defendants agreed with the DOE and were willful
participants with the DOE to violate N.Y. Civil Service Law to resolve the impasse in negotiations
over the Vaccine Mandate through binding arbitration. *See,* **Docket Entry No. 47-6**. *See, Dennis
v. Sparks*, 449 U.S. at 27-28.

This collusion and conspiracy resulted in an award by Scheinman (a political fundraiser
for Mayor DeBlasio (https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-
embrace-idea-of-mayor-de-blasio (visited April 18, 2022))) that granted to the DOE every possible
benefit that it sought in negotiations. *Compare,* **Docket Entry No. 47-9**, at page 7 *with* **Docket
Entry No. 47-6**.

The CSA Defendants did not even seek PERB intervention to resolve the impasse in
negotiations, instead once the UFT Arbitration Award was issued, the CSA just rolled over and
agreed that Scheinman could unilaterally impose a resolution regarding the impasse in negotiations
in violation of N.Y. Civil Service Law. *See, Matter of Buffalo Teachers Federation v. City School
District of the City of Buffalo,* 49 PERB P4560. *See also,* **Docket Entry No. 47-6**, at page 3
(stating "At the September 14, 2021, session, it became apparent much of the UFT/DOE Award
would govern, here.").

But-for the CSA Arbitration Award, the Plaintiffs-CSA members could not have been
suspended without pay for not taking the vaccine and the Plaintiffs-CSA members could not have
been fired from their employment for not taking the vaccine.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The CSA Arbitration Award deprived the Plaintiffs-CSA members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

As a result, the Plaintiffs has stated a plausible claim against the CSA Defendants for violation of 42 U.S.C. § 1983.

### D.     Plaintiffs Have Stated A Plausible Claim Against The Scheinman Defendants

Scheinman was not a neutral "arbitrator" but a political hack that profited from his own "arbitration" award at the cost of the Plaintiffs' constitutional rights.

Scheinman not only donated to Mayor DeBlasio, which would not, in the Plaintiffs' opinion be a disqualifying issue, but Scheinman held a political fundraising event for Mayor DeBlasio in his home.   *See*, https://ny.chalkbeat.org/2013/10/4/21091257/charter-backers-reluctantly-embrace-idea-of-mayor-de-blasio (visited April 18, 2022).   Scheinman is political player who colluded with the DOE and the CSA to abdicate their statutory authority and responsibility to negotiate a resolution as required by the N.Y. Civil Service Law.

Scheinman wrote in the CSA Arbitration Award that "[t]he DOE shall cover all arbitration costs from SAMS under this process." **Docket Entry No. 47-6, at page 9.**

Scheinman not only made a ruling but inserted himself and the Scheinman Defendants in the appellate process for any aggrieved Plaintiff-CSA member who was not granted a religious or medical exemption, earning Scheinman a significant financial windfall. *See*, **Exhibit A** through **F**.

35

Scheinman argues that he is immune from the Plaintiffs' claims based upon arbitrator immunity. The Plaintiffs would agree if two conditions were present that are not present in this matter: (1) Scheinman had statutory or contractual authority to resolve the impasse in negotiations between the CSA and the DOE, which he did not (*see,* Point IV above); and (2) Scheinman did not insert the Scheinman Defendants in the appellate process for DOE's denials of exemptions to the Vaccine Mandate at the cost to the DOE of a financial windfall for the Scheinman Defendants.

As "arbitrator", Scheinman acted without authority and therefore any entitlement to immunity is defeated by the improper and illegal nature of the CSA Arbitration Award.[10]

Accordingly, the Plaintiffs have stated a plausible claim against the Scheinman Defendants. The Scheinman Defendants' Motion to Dismiss should be denied.

**************

The DOE Defendants', the CSA Defendants', and the Scheinman Defendants' Motions to Dismiss should be denied.

**POINT X.    THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE DOE DEFENDANTS, AND THE DC37 DEFENDANTS ON THE PLAINTIFFS' NINTH CAUSE OF ACTION**

**A.    Factual Predicate For Cause Of Action**

The terms of the DC37 Agreement violated the Plaintiffs constitutional rights in their pay and due process. *See, Tooly v. Schwaller,* 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.,* 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 546. DC37

---

[10] The Scheinman Defendants do not argue that they were not state actors. However, to resolve that issue, the Plaintiffs allege that the Scheinman Defendants are state actors in these circumstances because they acted jointly with the DOE, and the CSA with respect to the CSA Arbitration Award. *See, Manhattan Community Access Corp. v. Halleck,* 139 S.Ct. at 1928.

agreed to allow the DOE to suspend the Plaintiffs without pay and ultimately terminate their employment for not complying with the Vaccine Mandate.

The DOE, relying upon the DC37 Agreement, argued to this Court that the Vaccine Mandate was a condition of employment for DOE employees.

In response, this Court held: "[c]ontrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards …. Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4." **Docket Entry No. 89**, at pages 24-25.

Without DC37 conspiring and colluding with the DOE to resolve the impasse by entering into an agreement that permitted the DOE to suspend the Plaintiffs without pay and ultimately terminate their employment, the DOE would not have had the legal authority to take the actions it did against the Plaintiffs.

**B.     Plaintiffs Have Stated A Plausible Claim Against The DOE Defendants**

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d at 245.

The DOE is a State actor who, at all times, was acting under the color of state law. *See,* **Docket Entry No. 47**, at ¶ 121.  Porter was, at the time of the matters at issue in this Action, Chancellor of the DOE. *See,* **Docket Entry No. 47**, at ¶ 122.

The DOE implemented the Vaccine Mandate.  As a result of the DOE's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and ultimately terminated from their employment without due process.

The DOE, relying upon the DC37 Agreement (**Docket Entry No. 47-13**) argued that the Vaccine Mandate was a condition of employment that the DOE's bargaining units agreed to and therefore consented to the DOE's conduct.

If the DC37 Agreement was illegal, improper, and violated N.Y. Civil Service Law, as argued by the Plaintiffs (Point V above), then as a result of the DOE's actions, then the Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the DOE for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983.  Accordingly, the DOE's Motion to Dismiss must be denied.

### C.       Plaintiffs Have Stated A Plausible Claim Against The DC37 Defendants

The DC37 Defendants argue that they are not State actors and therefore any claims pursuant to 42 U.S.C. § 1983 must be dismissed.

The DC37 Defendants are state actors in these circumstances because they acted jointly with the DOE with respect to the DC37 Agreement. *See, Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. at 1928.

The DC37 Defendants cite to *Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293 (D. Conn. 2013) for the proposition that just by negotiating a collective bargaining agreement it is not enough for a conspiracy claim against the union.

The DC37 Defendants overlook the Court's holding in *Eaddy* in which the Court criticized the plaintiff's pleading stating that "there is no allegation that the Union Defendants conspired with the City to engage in conduct *that itself* violated Plaintiffs' constitutional rights." *Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293, at *11.

**JA-1787**

Unlike the plaintiff in *Eaddy*, the Plaintiffs allege that as a result of the DC37 Agreement, the Plaintiffs' constitutional rights were violated. *See,* **Docket Entry No. 47**, at ¶¶ 188-220.

Despite the DC37 Defendants' argument that they were adversarial to the DOE (**DC37 Defendants' Memorandum of Law**, at page 11), the DC37 Defendants do not explain why they agreed and were willful participants in entering into the DC37 Agreement that permitted the DOE to suspend the Plaintiffs without pay and ultimately terminate their employment because the Vaccine Mandate became a condition of employment to remain employed by the DOE. *See,* **Docket Entry No. 89**, at pages 24-25.

This collusion and conspiracy between DC37 and the DOE resulted in the DC37 Agreement granting the DOE every possible benefit that it sought in negotiations. *See,* **Docket Entry No. 47-13**.

The DC37 Defendants argue that it was the DOE and not the DC37 Defendants that violated the Plaintiffs' constitutional rights when the Plaintiffs were placed on unpaid leave without a hearing.  **DC37 Defendants' Memorandum of Law**, at page 15.

But the DC37 Defendants ignore the fact that DC37 just rolled over and accepted that the Vaccine Mandate was going to be imposed on the DOE's terms without challenging the fact that the Plaintiffs'-DC 37 members' constitutional rights would be violated, impaired, or impacted by DC37's agreement to allow the DOE to implement the Vaccine Mandate on the DOE's terms as opposed to the DC37 fighting and challenging the implementation.

DC37 was under no obligation to agree to the DC37 Agreement.  "[A]n impasse in school district negotiations continues for however long it takes the parties to reach a collective bargaining agreement." *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999).

But-for the DC37 Agreement, the Plaintiffs-DC37 members could not have been suspended without pay for not taking the vaccine and the Plaintiffs-DC37 members could not have been fired from their employment for not taking the vaccine.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The DC37 Defendants argue that the Plaintiffs are asserting a claim for duty of fair representation and not a § 1983 claim against the DC37 Defendants. *See,* **DC37 Defendants' Memorandum of Law**, at page 12.

However, the Plaintiffs are arguing that the DC37 Defendants conspired with the DOE to come to an agreement (the DC37 Agreement) that deprived the Plaintiffs-DC37 members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546. While the DC37 Defendants may have breached their duty of fair representation, the Plaintiffs' complaint about the DC37 Defendants' conduct is that through the DC37 Defendants' collusion with the DOE and the willful participation of the DC37 Defendants in entering into an agreement that provided the DOE with the contractual authority to suspend Plaintiffs-DC37 members without pay and without due process, the Plaintiffs' constitutional rights have been violated. *See,* **Docket Entry No. 47**, at ¶¶ 188-220.

As a result, the Plaintiffs has stated a plausible claim against the DC37 Defendants for violation of 42 U.S.C. § 1983.

*************

The DOE Defendants' and the DC37 Defendants' Motions to Dismiss should be denied.

40

**POINT XI.   THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST PORTER, MULGREW, CANNIZZARO, GARRIDO, FRANCOIS, FRANCIS,[11] AND SCHEINMAN ON THE PLAINTIFFS' TENTH CAUSE OF ACTION**

The Plaintiffs allege that the individual defendants – Porter (then-Chancellor of the DOE (**Docket Entry No. 47**, at ¶ 122)), Mulgrew (President of the UFT ((**Docket Entry No. 47**, at ¶ 125)), Cannizzaro (President of the CSA (**Docket Entry No. 47**, at ¶ 127)), Garrido (Executive Director of DC37 (**Docket Entry No. 47**, at ¶ 129)), Francois (President of Local 372 (**Docket Entry No. 47**, at ¶ 131)), and Scheinman ("arbitrator" who imposed the UFT Arbitration Award and the CSA Arbitration Award ((**Docket Entry No. 47-5**) (**Docket Entry No. 47-6**)) (collectively referred to as "Individual Defendants") – were personally involved in the deprivation of the Plaintiffs' constitutional rights.

In *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977), the Court held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

In *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir 1986), the Court opined:

> A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction, *see, e.g., Johnson v. Glick*, 481 F.2d 1028, 1033-34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973) (prison guard liable for beating inmate); *Sostre v. McGinnis*, 442 F.2d 178, 205 (2d Cir. 1971) (en banc), *cert. denied*, 404 U.S. 1049, 92 S. Ct. 719, 30 L. Ed. 2d 740 (1972) (Prison warden liable for ordering that inmate be placed in solitary confinement). A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong, *see, e.g., United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, *see, e.g., McCann, supra*, 698 F.2d at 125; *Turpin v. Mailet*, 619 F.2d 196, 201 (2d

---

[11] Based upon the representation made in the DC37's Memorandum of Law at page 16 that Francis and Local 1251 did not agree or approve the DC37 Agreement, the Plaintiffs dismiss all claims against Local 1251 and Francis.

Cir.), *cert. denied*, 449 U.S. 1016, 66 L. Ed. 2d 475, 101 S. Ct. 577 (1980); *Duchesne v. Sugarman*, 566 F.2d 817, 830-31 (2d Cir. 1977). Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event, *see, e.g., Wright v. McMann*, 460 F.2d 126, 135 (2d Cir. 1972) (warden responsible for condition of disciplinary units at prison). *Cf. Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S. Ct. 483, 62 L. Ed. 2d 407 (1979)(municipality liable for gross negligence in training its prison guards).

Each of the Individual Defendants had their own individual roles to play in the various organizations that ultimately led to the deprivation of the Plaintiffs' constitutional rights.

Porter, as Chancellor of the DOE had to be involved in the decision-making process or she created a policy that led to the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement. While at this stage of the litigation, without conducting discovery including an examination of emails and other documentary evidence, the Plaintiffs plausibly plead that Porter had a personal involvement in the deprivation of the Plaintiffs' constitutional rights since the DC37 Agreement violated the Plaintiffs' constitutional rights.

Mulgrew and Cannizzaro, as Presidents of their unions, it is unthinkable that they did not personally sign-off on the decision to end negotiations with the DOE and agree to an illegal "arbitration" to resolve the impasse in negotiations. Without conducting discovery, including obtaining the identity of those individuals who were on the bargaining teams during the impasse negotiations or in attendance on any hearing dates for the "arbitration", the Plaintiffs can plausibly plead that Mulgrew and Cannizzaro had a personal involvement in the deprivation of the Plaintiffs' constitutional rights.

With respect to Garrido and Francois, they personally executed the DC37 Agreement on behalf of DC37 and Local 372. *See,* **Docket Entry No. 47-13**, at page 8. As a result, the Plaintiffs can plausibly plead that Garrido and Francois had a personal involvement in the deprivation of the Plaintiffs' constitutional rights.

42

**JA-1791**

Finally, as to Scheinman, the author the UFT Arbitration Award and the CSA Arbitration Award (*see*, **Docket Entry No. 47-5** and **Docket Entry No. 47-6**), the Plaintiffs can plausibly plead that Scheinman had a personal involvement in the deprivation of the Plaintiffs' constitutional rights. It was Scheinman's decisions that started the snowball/domino effect resulting in the deprivation of the Plaintiffs' constitutional and statutory rights.

The Plaintiffs do not have to prove individual liability in their Amended Complaint, only that they have a plausible claim against the Individual Defendants. The Individual Defendants' Motion to Dismiss must be denied.

## POINT XII.   THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR CLASS ACTION STATUS

The Plaintiffs are 92 of the hundreds, if not thousands, of DOE employees who were adversely affected by the UFT Arbitration Award, the CSA Arbitration Award, or the DC37 Agreement. The Plaintiffs are 92 of the hundreds, if not thousands, of DOE employees who refused to take the vaccine and either extend their leave of absence or were fired by the DOE.

The Plaintiffs have plausibly stated claims against the Defendants. Since the Plaintiffs claims are representative of all DOE employees impacted by the UFT Arbitration Award, the CSA Arbitration Award, or the DC37 Agreement, the Plaintiffs can set forth valid claims for class action status.

FRCP Rule 23(a) states:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

43

**JA-1792**

While the Plaintiffs do not cross-move for class action status, the Defendants have moved to dismiss the Plaintiffs' allegations of class status.

The Plaintiffs can plausibly plead that the class is so numerous since, the estimation is that hundreds of DOE employees have already been fired for not taking the COVID vaccine.

It is also clear that the questions of law and fact are common to the class.

Also clear is that the claims of the representative parties are typical of the claims of the class since all of the DOE employees who refused to take the COVID vaccine are similarly situated with respect to the impact the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement had on their careers.

Finally, there are no arguments made by the Defendants that the representative parties cannot or will not fairly and adequately protect the interests of the class.

Accordingly, the Plaintiffs have plausibly pled class action claims. The Court should deny the Defendants' Motions to Dismiss.

**POINT XIII.  THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT TO CORRECT ANY DEFICIENCIES IN THE AMENDED COMPLAINT**

The Plaintiffs request that, if the Court is inclined to dismiss any of the Plaintiffs' causes of action, the Court grant the Plaintiffs an opportunity to amend the Amended Complaint to cure any defects in the pleading that the Court believes that the Plaintiff can make such that a Second Amended Complaint would survive dismissal. *See, Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 796.

## CONCLUSION

For the reasons argued in this Memorandum of Law, the Defendants' Motions to Dismiss should be denied.

Dated:      Carle Place, New York
            May 9, 2022

                                     Austin Graff
                                     THE SCHER LAW FIRM, LLP
                                     *Attorneys for Plaintiffs*
                                     One Old Country Road, Suite 385
                                     Carle Place, New York 11514
                                     (516) 746-5040

45

Index No. 21 Civ 6387 (KAM)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICOLE BROECKER, et al., on behalf of themselves and
all other similarly situated employees of the New
York City Department of Education,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DOE
DEFENDANTS' MOTION TO DISMISS**

### HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for DOE Defendants
100 Church Street, Room 2-100
New York, New York 10007

*Of Counsel:*   Andrea O'Connor
*Tel:*  (212) 356-4015
*Email:* aoconnor@law.nyc.gov

Matter No. 2021-038953

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ...................................................**Error! Bookmark not defined.**

ARGUMENT

       POINT I

           THE COURT SHOULD REJECT PLAINTIFFS'
           ATTEMPT TO AMEND THEIR COMPLAINT
           VIA THEIR OPPOSITION PAPERS........**Error! Bookmark not defined.**

       POINT II

           PLAINTIFFS' CLAIMS ARE BARRED BY THE
           LAW OF THE CASE DOCTRINE ...........**Error! Bookmark not defined.**

       POINT III

           PLAINTIFFS' DUE PROCESS CLAIMS MUST
           BE DISMISSED .......................................**Error! Bookmark not defined.**

       POINT IV

           PLAINTIFFS' CONSPIRACY CLAIMS MUST BE
           DISMISSED ............................................**Error! Bookmark not defined.**

       POINT V

           PLAINTIFFS' CLASS CLAIMS MUST BE
           DISMISSED ............................................**Error! Bookmark not defined.**

CONCLUSION..........................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

Brandon v. City of New York,
   705 F. Supp. 2d 261 (S.D.N.Y. 2010)....................................................................6

Ciambriello v. Cty. of Nassau,
   292 F.3d 307 (2d Cir. 2002)..............................................................................8

City of N.Y. v. Gordon,
   155 F. Supp. 3d 411 (S.D.N.Y. 2015)................................................................3

Clarke v. BOE, et al.,
   Index No. 160787/2021 ...................................................................................4

Garland v. N.Y.C. Fire Dep't,
   No. 21 CV 6586 (KAM)(CLP),
   2021 U.S. Dist. LEXIS 233142 (E.D.N.Y. Dec. 6, 2021) ..........................3

Giammarino v. BOE, et al.,
   Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty) ...........................................4

Goodheart Clothing Co. v. Laura Goodman Enters.,
   962 F.2d 268 (2d Cir. 1992)..............................................................................3

In re Initial Pub. Offering Sec. Litig.,
   214 F.R.D. 117 (S.D.N.Y. 2002) .....................................................................9

K.D. v. White Plains Sch. Dist.,
   921 F. Supp. 2d 197 (S.D.N.Y. 2013)..............................................................2

Lanzer v. BOE, et al.,
   Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ...........................................4

Maniscalco v. BOE, et al.,
   Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty) ........................................3, 4

Marciano v. De Blasio,
   No. 21-cv-10752 (JSR),
   2022 U.S. Dist. LEXIS 41151 (S.D.N.Y. Mar. 8, 2022) ...........................3

Martinez v. City of New York,
   No. 11 Civ. 7461,
   2012 U.S. Dist. LEXIS 173500 (S.D.N.Y. Dec. 6, 2012) ..........................6

| **Cases** | **Pages** |
|---|---|

Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.,
   93 Civ. 3243 (KTD),
   1996 U.S. Dist. LEXIS 2221 (S.D.N.Y. Feb. 28, 1996)..........................................................3

O'Reilly v. Bd. of Educ.,
   Index No. 161040/2021,
   2022 N.Y. Slip. Op. 30173(U) (N.Y. Sup. Ct. Jan. 20, 2022) ...........................................4

Peacock v. Suffolk Bus Corp.,
   100 F. Supp. 3d 225 (E.D.N.Y. 2015) ..................................................................................2

Romero v. BOE, et al.,
   Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) ..................................................................4

Salas v. BOE, et al.,
   Index No. 160821/2021 ..........................................................................................................4

Sanchez v. City of NY,
   No. 15 Civ. 9940, 2017 U.S. Dist. LEXIS 123557
   (S.D.N.Y. Aug. 4, 2017)........................................................................................................6

Singer v. Fulton Cty. Sheriff,
   63 F.3d 110 (2d Cir. 1995)......................................................................................................6

Tooly v. Schwaller,
   919 F.3d 165 (2d Cir. 2019)................................................................................................5, 7

United States v. Tenzer,
   213 F.3d 34 (2d Cir. 2000)......................................................................................................3

Universal Trading & Inv. Co. v. Tymoshenko,
   No. 11 CIV. 7877, 2012 U.S. Dist. LEXIS 176214
   (S.D.N.Y. 2012)......................................................................................................................2

Wright v. Ernst & Young LLP,
   152 F.3d 169 (2d Cir. 1998)....................................................................................................2

**Statutes**

42 U.S.C. § 1983......................................................................................................................6

N.Y. Civ. Serv. Law § 209......................................................................................................7

N.Y. Civ. Serv. Law § 209.3(f)...............................................................................................1

### PRELIMINARY STATEMENT

The arguments made in Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motions to Dismiss, dated May 9, 2022, (hereinafter "Plaintiffs' Opposition"), are insufficient to avoid dismissal of the Amended Complaint.  As held by this Court in connection with the denial of Plaintiffs' two preliminary injunction motions, the COH Order creates a lawful condition of employment for all DOE employees, including plaintiffs, such that non-compliant employees can be terminated based on their failure to satisfy this condition without invoking applicable disciplinary procedures.  Further this Court has already held that the applicable processes available to Plaintiffs with respect to the COH Order were negotiated in accordance with all applicable statutes and provide Plaintiffs with all constitutional due process they are owed.  This is an end to Plaintiffs' due process claims.

Nevertheless, in a misguided attempt to grasp at any remaining straw, Plaintiffs continue to argue that DOE Defendants and Defendants UFT and CSA conspired to violate New York Civil Service Law Section 209(3)(f) and that the Impact Arbitration Awards are the poisonous fruit of that conspiracy.  Plaintiffs also argue that since the DC 37 Agreement is modeled after the Impact Arbitration Awards, it too is violative of § 209(3)(f).  This argument has already been specifically rejected by the Court.  And even if the Court is to give this meritless argument fresh consideration, it would still fail.

Plaintiffs' Opposition goes on to argue that because the Impact Arbitration Awards and DC 37 Agreement purportedly violate § 209(3)(f), the DOE Defendants' actions taken vis a vis the Plaintiffs with respect to their non-compliance with the COH Order violates Plaintiffs' due process rights.  This circular and nonsensical argument must be rejected and the Amended Complaint dismissed.

**JA-1799**

Finally, Plaintiffs argue that the releases signed by certain Plaintiffs (namely Plaintiffs Martino, Ciacca-Liss, Hagan, Trapani, Masullo, Klapakis, Hartz, Schmitter, Lotito, Mosely, Blasis-Maring, Meagan, Joergens, and Shaya) should be declared null and void because they were executed under duress.  Considering that DOE Defendants did not move to dismiss these Plaintiffs based on their execution of the releases, this argument is inapplicable to the instant motion and should be disregarded by the Court.

## ARGUMENT

### POINT I

### THE COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO AMEND THEIR COMPLAINT VIA THEIR OPPOSITION PAPERS

"It is well-settled that a plaintiff 'cannot amend [their] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" Peacock v. Suffolk Bus Corp., 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (quoting K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)); see also Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting argument raised for the first time in opposition to a motion to dismiss the complaint); Universal Trading & Inv. Co. v. Tymoshenko, No. 11 CIV. 7877, 2012 U.S. Dist. LEXIS 176214, at *1 (S.D.N.Y. 2012) ("New facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss.").

Here, Plaintiffs seek to put before the Court seven exhibits that were not referenced in the Amended Complaint or annexed to it.  Given that these exhibits, and the arguments made in connection with them, were not referenced in the Amended Complaint, they should not be considered by the Court in connection with this motion.

**JA-1800**

## POINT II

## PLAINTIFFS' CLAIMS ARE BARRED BY THE LAW OF THE CASE DOCTRINE

Plaintiffs' Opposition argues that the Court "is not bound by its prior determinations because the determinations were made on a record for a preliminary injunction." See Plaintiffs' Opposition at 8 citing Goodheart Clothing Co. v. Laura Goodman Enters., 962 F.2d 268 (2d Cir. 1992) and Matsushita Elec. Corp. of Am. v. 212 Copiers Corp., 93 Civ. 3243 (KTD), 1996 U.S. Dist. LEXIS 2221 (S.D.N.Y. Feb. 28, 1996).   As recognized by DOE Defendants in their moving papers, the law of the case doctrine – while not binding – counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons.  United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000).   And while the doctrine is "particularly flexible" where the prior decisions were made on a preliminary injunction motion, a Court can "give deference to legal conclusions" reached in connection with such motions.  City of N.Y. v. Gordon, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015).  Further, "[w]hile preliminary factual determinations must be revisited against a more complete record, good sense dictates that a court interpret the same statute in the same way throughout a litigation, unless there is an intervening change in the law . . . or unless an earlier interpretation was clearly an error." Id. (internal citations and parentheticals omitted).

Here, there has been no intervening case law issued that would preclude this Court from adhering to its prior (and correct) rulings.  In fact, as detailed in DOE Defendants' moving papers, the intervening case law **supports** this Court's prior holdings. See, e.g., Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022) quoting Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021); Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y.

3

Sup., N.Y. Cnty); <u>Giammarino v. BOE, et al.</u>, Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty);

<u>Clarke v. BOE, et al.</u>, Index No. 160787/2021; <u>Salas v. BOE, et al.</u>, Index No. 160821/2021

(collectively "<u>Maniscalco</u> Art. 78 Decision"); <u>O'Reilly v. Bd. of Educ.</u>, Index No. 161040/2021,

2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); <u>Lanzer v. BOE, et al.</u>, Index No.

160017/2021 (N.Y. Sup., N.Y. Cnty); <u>Romero v. BOE, et al.</u>, Index No. 160353/2021 (N.Y. Sup.,

N.Y. Cnty).  Likewise, there is no clear error in the Court's prior decisions that requires correcting.

This is a point that Plaintiffs concede as evidenced by their failure to appeal either of the Court's

prior orders.

    Finally, to the extent Plaintiffs argue that their Exhibit G – which purports to be

Notices of Determination issued by the New York State Department of Labor ("NYSDOL") in

connection with three plaintiffs' applications for unemployment insurance – could somehow be

viewed as a "new intervening fact," that argument fails.  To start, the Court should not consider

Exhibit G as the Amended Complaint contains no reference to unemployment insurance claims

made by any plaintiff nor does it contain any allegations pertaining to how these NYSDOL

determinations impact Plaintiffs' claims in this federal action.  Setting that aside, even if the Court

does consider Exhibit G, these determinations have no bearing on Plaintiffs' federal due process

or conspiracy claims, which fail as a matter of law.

    Indeed, the NYSDOL's publicly available guidance issued in connection with

unemployment insurance claims brought by employees who were terminated due to a failure to

comply with a lawful vaccination mandate provides that: "Workers in a healthcare facility, nursing

home, or school who voluntarily quit or are terminated for refusing an employer-mandated

vaccination will be ineligible for UI absent a valid request for accommodation because these are

workplaces where an employer has a compelling interest in such a mandate, especially if they

**JA-1802**

already require other immunizations." See "Unemployment Insurance Benefits: Filing for, receiving, and claiming" at https://dol.ny.gov/unemployment-insurance-top-frequently-asked-questions (last accessed May 16, 2022). Contrary to Plaintiffs' counsel's unsupported musings in footnote 2 of Plaintiffs' Opposition, this guidance is in no way inconsistent with Defendant DOE's position that vaccination against COVID-19 is a condition of employment that Plaintiffs were required to meet.

Therefore, because there is no "cogent and compelling reason" for the Court to depart from its prior holdings in this case, DOE Defendants respectfully submit that Plaintiffs' procedural due process claims are barred by the law of the case doctrine and therefore must be dismissed.

## POINT III

### PLAINTIFFS' DUE PROCESS CLAIMS MUST BE DISMISSED

Plaintiffs' Opposition does not, in any meaningful way, oppose DOE Defendants' arguments with respect to Plaintiffs' due process claims. Rather, Plaintiffs argue that because the Impact Arbitration Awards and DC 37 Agreement purportedly violate the New York State Civil Service Law, it necessarily follows that DOE's actions taken with respect to Plaintiffs denied them "of their federal statutory rights, State statutory rights and constitutional rights and privileges." See Plaintiffs' Opposition at 25, 33, 38. Thus, Plaintiffs premise their entire constitutional due process claim on the notion that a purported violation of New York Civil Service Law § 209(3)(f) automatically equates to a procedural due process violation. Plaintiffs cite to no authority in support of this dubious argument. Perhaps Plaintiffs fail to provide support for this position because the Second Circuit has held the exact opposite. See Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) ("violation of state law does not per se result in a violation of the Due Process

5

Clause"). Thus, to the extent Plaintiffs hinge their procedural due process claim on an alleged violation of the New York State Civil Service Law, such an attempt fails.

Finally, Plaintiffs' Opposition fails to address any of DOE Defendants' substantive arguments made in connection with Plaintiffs' due process claims. As such, DOE Defendants respectfully refer the Court to their moving papers for a discussion of why this claim fails as a matter of law, and deem those claims abandoned. See, e.g., Sanchez v. City of New York, No. 15 Civ. 9940, 2017 U.S. Dist. LEXIS 123557, at *4-5 (S.D.N.Y. Aug. 4, 2017) ("At the outset, the Court notes that these plaintiffs, who are represented by counsel, filed an opposition to the motions to dismiss that makes no attempt to respond to any of defendants' legal arguments. Therefore, plaintiffs have abandoned their claims."); Martinez v. City of New York, No. 11 Civ. 7461, 2012 U.S. Dist. LEXIS 173500, at *1 (S.D.N.Y. Dec. 6, 2012) (dismissing claims as abandoned where plaintiff failed to respond to defendant's arguments for dismissal in her opposition); Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases).

## POINT IV

### PLAINTIFFS' CONSPIRACY CLAIMS MUST BE DISMISSED

In order to set forth a § 1983 claim for conspiracy, Plaintiffs must first prove "an actual violation of constitutional rights," and therefore a conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). As detailed above, and in DOE Defendants' moving papers, Plaintiffs' procedural due process claims fail as a matter of law. Therefore, so does Plaintiffs' conspiracy claim.

Nevertheless, Plaintiffs premise their § 1983 conspiracy claim on an allegation that all Defendants conspired to deprive Plaintiffs of their constitutional due process rights by

**JA-1804**

"agreeing" to "resolve the impasse in negotiations by binding arbitration" and that this "agreement" violates the New York State Civil Service Law.  See Plaintiffs' Opposition at 10. Even accepting this unsupported allegation as true, it is fundamentally flawed because a violation of a state statute does not equate to a constitutional violation.  See Tooly, 919 F.3d at 172.

In any event, Plaintiffs' Opposition argues that the Impact Arbitration Awards must be nullified because there was no statutory or contractual authority for Defendants DOE and UFT to "agree" to binding arbitration.  Specifically, Plaintiffs contend that Civil Service Law Section 209, which is part of an article of the Civil Service Law known as the Taylor Law, does not authorize binding arbitration in the circumstances here.  Indeed, Plaintiffs argue that the DOE and UFT willfully violated the Taylor Law by proceeding to binding arbitration, which resulted in the Impact Arbitration Award, in furtherance of a "conspiracy" between the DOE Defendants and the UFT to deprive Plaintiffs of their constitutional rights.

The Impact Arbitration Award was the result of negotiations between the City/DOE and UFT.  See Statement of Impasse at Dkt. No. 21-1.  Once the negotiations reached an impasse, Defendant UFT filed a Declaration of Impasse with the New York State Public Employment Relations Board ("PERB").  Id.  PERB accepted this Declaration of Impasse and appointed an arbitrator to attempt to resolve the impasse.  See Impact Arbitration Award at 4.  Thus, contrary to Plaintiffs' unsupported allegations – there was no "agreement" to resort to binding arbitration. Rather, Defendant UFT filed a Declaration of Impasse with PERB, PERB accepted that declaration and appointed an arbitrator.

PERB was created by the Public Employees' Fair Employment Act of 1967, commonly referred to as the Taylor Law.  PERB's mission includes: the impartial application and enforcement of the Act; the prevention of strikes, protecting the delivery of services to

7

**JA-1805**

constituents; the protection of the rights of public employees to organize without interference or detriment; the determination of appropriate bargaining units and the direction of the process of representative selection; and issuance of determinations on charges of improper employment practices.  See "Who We Are" at https://perb.ny.gov/ last accessed on May 16, 2022.   The agency also has the statutory responsibility to provide impasse resolution services.  Id.

Thus, in order to accept Plaintiffs' argument that DOE and UFT proceeded to binding arbitration in violation of the Taylor Law, the Court would have to accept that PERB – the state agency specifically charged with enforcement of the Taylor Law – knowingly and willfully violated that law by accepting the Declaration of Impasse and appointing an arbitrator.  There is simply no evidence in the record to support such a fanciful allegation.

Despite this, Plaintiffs hinge their entire conspiracy claim – and, in turn their entire due process claim – on the unsupported notion that Defendants DOE, UFT, Scheinman and, necessarily, PERB all had a meeting of the minds to conspire to deprive Plaintiffs of their constitutional due process rights.  The Amended Complaint fails to plausibly allege **any** facts to support this claim other than the repeated use of the word "conspiracy."

Further, while courts have recognized that conspiracies "are by their very nature secretive operations" and therefore may have to be established via circumstantial, rather than direct, evidence, "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Here, Plaintiffs' phantastic claim that the DOE and Union Defendants – and with the tacit blessing of PERB – conspired to violate Plaintiffs' constitutional rights by agreeing to binding arbitration when they had no authority to do so is exactly the type of "diffuse and expansive allegation" that

**JA-1806**

is insufficient to withstand a motion to dismiss.   Thus, Plaintiffs' conspiracy claims must be dismissed.

## POINT V

## PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Because all of Plaintiffs' individual claims for damages and declaratory relief must be dismissed, Plaintiffs' class claims must be dismissed as well. See, e.g., In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 122 (S.D.N.Y. 2002)("Courts in this circuit have repeatedly held that, '[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim . . . . If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.'") (citation omitted).

JA-1807

### CONCLUSION

For the foregoing reasons, and for those set forth in DOE Defendants' moving papers, DOE Defendants respectfully request that their motion to dismiss the Amended Complaint be granted in its entirety, with prejudice, that judgment in favor of DOE Defendants be entered, and that DOE Defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 24, 2022

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
Attorney for DOE Defendants
100 Church Street, Room 2-100
New York, New York 10007
212-356-4015

By: _____/s/_____
        Andrea O'Connor
        Assistant Corporation Counsel

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
BROECKER *et al.*,                                             :
                                                              :
                              Plaintiffs,                      :
                                                              :
            -against-                                          :
                                                              :            Case No. 21-cv-6387
                                                              :
NEW YORK CITY DEPARTMENT OF                                    :
EDUCATION, *et al.*,                                          :
                                                              :
                              Defendants.                      :
--------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
UNITED FEDERATION OF TEACHERS, MICHAEL MULGREW, COUNCIL OF
SCHOOL SUPERVISORS AND ADMINISTRATORS, AND MARK CANNIZZARO IN
<u>SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ....................................................................................... 2

    I.     THE AWARDS ARE LEGALLY VALID.................................. 2

          A.    Unions and School Districts May Agree to Engage in Binding
              Arbitration.................................................................. 2

          B.    The Awards Do Not Require Ratification .................................. 3

    II.    PLAINTIFFS FAIL TO PLEAD STATE ACTION OR CONSPIRACY ............. 4

    III.   PLAINTIFFS LACK STANDING TO CHALLENGE THE AWARDS.............. 7

CONCLUSION .................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re 50 Pine Co., LLC,
    317 B.R. 276 (Bankr. S.D.N.Y. 2004)................................................................8

Matter of Alden Cent. Sch. Dist. v. Watson,
    56 A.D.2d 713 (4th Dep't 1977)..................................................................2

Bd. of Educ. of City Sch. Dist. v. New York State Pub. Empl. Relations Bd.,
    75 N.Y.2d 660 (1990) ...............................................................................3

Broecker et al. v. New York City Dep't of Educ. et al.,
    __ F.Supp.3d __, 2021 WL 5514656 (E.D.N.Y. Nov. 24, 2021) ...............7

Matter of Buffalo Teachers Federation v. City School District of the City of
    Buffalo,
    49 PERB 4560 (2016) ...............................................................................3

Callaghan v. United Federation of Teachers,
    133 A.D.3d 412 (1st Dep't 2015) ..............................................................5

Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC,
    16-CV-3181, 2020 WL 7042642 (E.D.N.Y. Nov. 30, 2020) ....................8

Ciambriello v. Cnty. Of Nassau,
    292 F.3d 307 (2d Cir. 2002)..............................................................4, 5, 6

Matter of City of Rochester,
    7 PERB 3060 (1974)..................................................................................4

Matter of Civil Service Employees Ass'n, Inc., Local 1000, AFSCME, AFL-CJO
    v. Cnty. of Nassau,
    45 PERB 3047 (2012)................................................................................4

Driskell v. New York City,
    11 Civ. 4915 (BMC), 2011 WL 6812516 (E.D.N.Y. Dec. 27, 2011)........5

Figueroa v. City of Camden,
    580 F. Supp. 2d 390 (D. N.J. 2008) ..........................................................5

Fiore v. Town of Whitestown,
    125 A.D.3d 1527 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d 910 (2015) ....................8

Fleischer v. Barnard College,
    20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) ...............................8

Matter of Greenburgh No. 11 Federation of Teachers,
    32 PERB 3024 (1999)...................................................................................3

Harmon v. Matarazzo,
    162 F.3d 1147 (2d Cir. 1998)......................................................................5

Hoffman v. Bd. of Educ. of City Sch. Dist. of City of New York,
    84 A.D.2d 840 (2d Dep't 1981)...................................................................9

Ifill v. New York State Court Officers Ass'n,
    655 F. Supp. 2d 382 (S.D.N.Y. 2009).........................................................8

Katir v. Columbia Univ.,
    15 F.3d 23 (2d Cir.1994)..............................................................................8

Leahy v. Board of Trustees,
    912 F.2d 917 (7th Cir. 1990) .......................................................................6

Leblanc v. Security Servs. Unit Empls. of New York State Law Enforcement
    Officers Union, Council 82, AFSCME, AFL-CIO,
    278 A.D.2d 732 (3d Dep't 2000) .................................................................8

Margiotta v. Kaye,
    283 F. Supp. 2d 857 (E.D.N.Y. 2003) .........................................................2

McGovern v. Local 456, Int'l Bhd. Of Trustees,
    107 F. Supp. 2d 311 (S.D.N.Y. 2000)..........................................................5

McKinnon v. Patterson,
    568 F.2d 930 (2d Cir. 1977).........................................................................6

Mehrhoff v. William Floyd Union Free Sch. Dist.,
    No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) ............5

MLC et al. v. City of New York et al.,
    158368/2021 (Sup. Ct. N.Y. Cnty.) .............................................................7

Rodriguez-Rivera v. City of New York,
    No. 05 Civ. 10897 LAP, 2007 WL 766195 (S.D.N.Y., Mar. 12, 2007)....................6

Tooly v. Schwaller,
    919 F.3d 165 (2d Cir 2019)..........................................................................5

Matter of Union Springs Cent. Sch. Teachers' Assn,
    6 PERB 3074 (1973)....................................................................................4

Vaughn v. Air Line Pilots Ass`n, Int`l,
    395 B.R. 520 (E.D.N.Y. 2008), <u>aff`d,</u> 604 F.3d 703 (2d Cir. 2010), <u>aff'd sub</u>
    <u>nom. Vaughn v. Air Line Pilots Ass'n,</u> 377 F. App'x 88 (2d Cir. 2010)...............................8, 9

Waronker v. Hempstead Union Free Sch. Dist.,
    788 F. App`x 788 (2d Cir. 2019) ...........................................................................5

Williams v. Smith,
    781 F.2d 319 (2d Cir. 1986)....................................................................................6

**Statutes**

42 U.S.C. § 1983...........................................................................................................1, 10

N.Y. Civ. Serv. Law § 209............................................................................................1, 2

**Other Authorities**

CPLR 217....................................................................................................................8

Fed. R. Civ. P. 12(b)(1)..............................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

**JA-1813**

## PRELIMINARY STATEMENT

The fundamental issue in this action is simple: do the UFT and CSA Defendants[1] have the right to agree to enter into binding arbitration with their employers to resolve collective bargaining disputes?  The answer – as explained at length in the UFT and CSA Defendants' motion to dismiss and initial supporting papers – is also simple: they do.

Despite clarity on the issue, Plaintiffs erroneously continue to argue that N.Y. Civ. Serv. § 209 precludes this fundamental aspect of state collective bargaining law notwithstanding the lack of any prohibition.  In so doing, Plaintiffs misrepresent the holdings of myriad federal and state courts, and PERB. The law precludes PERB or a school district from unilaterally imposing an agreement or binding arbitration.  It does not preclude bilateral agreement to arbitrate.

Even if the UFT and CSA Defendants lacked the right to engage in binding arbitration, the Amended Complaint contains – at best – vague and conclusory allegations in support of Plaintiffs' § 1983 and conspiracy claims, which are insufficient to support Plaintiffs' action against the UFT, CSA, and their respective presidents.  Moreover, the UFT and CSA Defendants are not state actors, but are collective bargaining organizations (and their leaders) that have an inherently adversarial relationship with their government employers.

The infirmity of their arguments laid bare and their standing to challenge the validity of the arbitration awards spurious, Plaintiffs now improperly plead additional flawed claims in their opposition brief, and seek leave to file *another* amended complaint.  This Court should deny the request to amend as futile, and should dismiss this action in its entirety under Fed. R. Civ. P. 12(b)(1) and (6) as to the UFT and CSA Defendants.

---

[1] Capitalized terms have the same meanings ascribed to them in the UFT and CSA Defendants' prior submissions.

1

## ARGUMENT

### I.   THE AWARDS ARE LEGALLY VALID

A.   <u>Unions and School Districts May Agree to Engage in Binding Arbitration</u>

Plaintiffs fundamentally misconstrue N.Y. Civ. Serv. § 209 ("§ 209") and related

precedent, and erroneously argue that the Taylor Law prohibits a union and school district from

agreeing to enter into binding arbitration.

The statutory language and cases Plaintiffs rely on (1) prohibit school districts from

*unilaterally* imposing contract terms through a legislative process (something permitted to other

public employers), <u>see</u> § 209.3(f); and (2) prohibit PERB from imposing binding arbitration on

parties in the case of an impasse (again, something PERB is empowered to do for certain other

workforces), <u>see</u> § 209.2.  As set forth below and in our moving papers, *none of these*

*prohibitions is aimed at the union*.

Plaintiffs begin with the incorrect premise that arbitration may only occur with explicit

statutory authority.  None is needed.  Contracting parties, including public sector unions and

employers, may agree to resolve negotiation disputes by arbitration.  <u>See</u>, <u>e.g.</u>, <u>Margiotta v.</u>

<u>Kaye</u>, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) (recognizing that, under the Taylor Law,

parties may agree to move to binding impasse arbitration rather than follow PERB's procedure).

Nonetheless, the policy preference for such bilateral dispute resolution is clear from both the

Taylor Law and cases interpreting it.  <u>See generally</u> Civ. Serv. Law § 209 (no prohibition on

mutually agreeing to binding arbitration *even absent a declaration of impasse*); <u>see also</u> <u>Matter</u>

<u>of Alden Cent. Sch. Dist. v. Watson</u>, 56 A.D.2d 713, 713 (4th Dep't 1977)

Plaintiffs' caselaw is in accord.  Contrary to Plaintiffs' contention, nowhere does the

Court of Appeals declare binding arbitration in the school district context illegal.  Rather, the

court recognizes that school districts and the legislature may not force "any final impasse

2

resolution mechanism" upon a union – leaving it to the parties to work out their differences.  See
Bd. of Educ. of City Sch. Dist. v. New York State Pub. Empl. Relations Bd., 75 N.Y.2d 660, 671
(1990) (noting Taylor Law's policy of "encourag[ing] voluntary resolution of labor disputes
involving public employees").

Matter of Greenburgh No. 11 Federation of Teachers, 32 PERB 3024 (1999), is
inapposite, and concerns the application of the Cohoes doctrine.[2]  As Plaintiffs note, PERB
stated there that "[i]f post-mediation fact-finding does not result in a settlement of the impasse,
the parties themselves must resolve the impasse by reaching a new [CBA.]"  While not
negotiating a successor agreement, this is precisely what the UFT and CSA Defendants did in
agreeing to arbitrate the acute impact of the Mandate.

Plaintiffs' reliance on Matter of Buffalo Teachers Federation v. City School District of
the City of Buffalo, 49 PERB 4560 (2016), is equally perplexing.  There, PERB stated that
"**[s]chool districts and other educational institutions** do not have the ability under the Act to
**unilaterally** resolve the dispute after fact-finding through a process of public hearing and action
by its legislative body, as do other public employers."  See id. n.93 (emphasis added).  This is a
restatement of § 209.3(f), and has no bearing on whether a union and employer may *bilaterally*
agree to binding arbitration to resolve a dispute, as they have done here.  See Amended
Complaint Ex. K (Dkt. No. 47-11).

B.      The Awards Do Not Require Ratification

Plaintiffs raise ratification for the first time in their opposition papers, and therefore that
claim should be disregarded.  See infra at 8.  Regardless, there is no legal requirement that the
parties ratify the Awards.  Setting aside the puzzling suggestion that an Award issued by an

---

[2] *I.e.*, that existing terms of a CBA are mandatory subjects of bargaining, even if originally permissive topics.

arbitrator need be (or even can be) ratified by union membership, even if the Awards were agreements on this discrete issue, ratification would not be required.  All precedent cited by Plaintiffs for that contention either *support* the validity of the Awards sans-ratification, or are inapplicable.  For instance, in Matter of Union Springs Cent. Sch. Teachers' Assn, 6 PERB 3074 (1973), PERB stated that "[t]he practice of ratification agreements derives from the authority of the parties and *not from the Law*." (emphasis added).  There, the union engineered the downvote of an agreed-upon bargaining term, which PERB held *enforceable despite non-ratification*.  The remainder of Plaintiffs' "support" is equally misplaced.  See Matter of City of Rochester, 7 PERB 3060 (1974) (parties who agree to terms *on condition of ratification* obliged to work towards ratification in good-faith); Matter of Civil Service Employees Ass'n, Inc., Local 1000, AFSCME, AFL-CJO v. Cnty. of Nassau, 45 PERB 3047 (2012) (same).

Accordingly, the Awards and their substance are valid, and Plaintiffs' claims that they have been injured as a result of the Awards' procedures fail as a matter of law.

## II.    PLAINTIFFS FAIL TO PLEAD STATE ACTION OR CONSPIRACY

The central assertion on which all of Plaintiffs' claims against the UFT and CSA Defendants hinge is that the Awards are contrary to law.  As argued *supra*, this is incorrect, and all of Plaintiffs' claims fail.  Even if the UFT and CSA were wrong about their ability to agree to binding arbitration (which they were not), that honest mistake of law does not transform an adversarial process into a conspiracy to deny anyone any rights.

Indeed, the Amended Complaint contains only barebone allegations of state action by the unions, or conspiracy between the unions and the DOE, which have an inherently adversarial relationship.  Plaintiffs have not, and cannot, expound on the details of this alleged conspiracy, including how or why it arose, or any benefit gleaned therefrom.  See, e.g., Ciambriello v. Cnty. Of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (holding that "conclusory allegations are

4

insufficient to state" such a § 1983 conspiracy claim). Plaintiffs' aiding and abetting allegations are equally infirm. See, e.g., Figueroa v. City of Camden, 580 F. Supp. 2d 390, 402 (D. N.J. 2008) ("nothing in the pleadings indicate that the Unions were acting 'under color of state law'" and the complaint contained "no specific factual allegations to support a claim that the Unions conspired with the state actors in violation of § 1983").

The UFT and CSA Defendants are not state actors. See Driskell v. New York City, 11 Civ. 4915 (BMC), 2011 WL 6812516, at *3 (E.D.N.Y. Dec. 27, 2011) (citing Ciambriello, 292 F.3d 307, 323 (2d Cir. 2003)) ("Plaintiff does not allege that the UFT is a state actor, nor could she."); see also Callaghan v. United Federation of Teachers, 133 A.D.3d 412, 412 (1st Dep't 2015) ("courts in this State have consistently held that unions, even those representing public employees, such as the UFT, are not state actors"); see also See Ciambriello, 292 F.3d at 323; Harmon v. Matarazzo, 162 F.3d 1147 (2d Cir. 1998) (PBA not a state actor).

Nor does their "inherently advers[ar]ial" relationship with state employers generally and in this instance specifically lend itself to state action. See Mehrhoff v. William Floyd Union Free Sch. Dist., No. 04-CV-3850, 2005 WL 2077292, at * 4 (E.D.N.Y. Aug. 22, 2005); see also McGovern v. Local 456, Int'l Bhd. Of Trustees, 107 F. Supp. 2d 311, 317-18 (S.D.N.Y. 2000) ("The Union's failure to 'win' on every point…and its compromise with the County result[ing] in the agreement, do not…transform the Union's activity into state action.").

Although Plaintiffs cite myriad cases in support of their contention that the unions are state actors, these are inapposite or belie their argument. See Tooly v. Schwaller, 919 F.3d 165 (2d Cir 2019) (does not concern unions; holding that university president was entitled to qualified immunity, and did not violate employee's due process rights by placing employee on paid leave); Waronker v. Hempstead Union Free Sch. Dist., 788 F. App'x 788, 793 (2d Cir.

5

**JA-1818**

2019) (does not concern unions; affirming (a) finding that placement on administrative leave did not violate superintendent's due process rights; (b) denial of leave to amend complaint to include additional allegations of "stigmatizing statements"); Rodriguez-Rivera v. City of New York, No. 05 Civ. 10897 LAP, 2007 WL 766195 (S.D.N.Y., Mar. 12, 2007) (conclusory allegations insufficient to allege that UFT engaged in conspiracy with DOE).

Likewise, Plaintiffs' caselaw in support of conspiracy charges for UFT's and CSA's presidents are unavailing, especially in light of Plaintiffs' flimsy pleading.  See McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977) (holding that there was inadequate personal involvement by certain named defendants to support § 1983 liability); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986) (prison superintendent who himself oversaw hearing where prisoner was disallowed witnesses had sufficient involvement to support possible claim).

Although Plaintiffs attempt to distinguish Leahy v. Board of Trustees, 912 F.2d 917 (7th Cir. 1990), they fail to point to any specific allegations in the Amended Complaint that the UFT or CSA Defendants were acting "as a state instrumentality, perform[ing] traditionally exclusive sovereign functions, or [being] compelled or even encouraged by the state to make the decisions challenged."  See id. at 921.  As here, the allegations of conspiracy in Leahy were conclusory. See id.; see also Ciambriello, 292 F.3d at 324 ("conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial relationship between the County and CSEA").

Plaintiffs allege no specific facts or instances of misconduct or conspiracy by the UFT or CSA Defendants.  The only specific fact alleged is that the unions agreed to arbitrate the bargaining impasse.  Instead, Plaintiffs make a series of nonspecific, repetitive claims that the UFT and CSA Defendants conspired with the City Defendants, Arbitrator Scheinman, SAMS, and SAMS LLC (in various combinations) to have Arbitrator Scheinman issue the awards, ¶¶

6

135, 170-75, 179-86, 331-35, 341-47, 350, 359, 362, 367-371, 374-75, 377-83, 386, 395, 398, 438-442, purportedly as part of an unspecified "kickback" scheme that confoundingly included the goal of placing Plaintiffs on LWOP, ¶¶ 335, 338-39, 371, 374-75.[3]

The obvious truth is that the UFT and CSA Defendants protected the interests of their members – including those who chose not to become vaccinated – throughout the pandemic, challenging the Mandate and its implementation in both adversarial negotiations and in court.  In fact, the UFT and CSA were part of the initial suit that compelled the City to consider medical and religious accommodation requests (which the City initially had declined to do).[4]

The Awards created a series of rights and procedures pertaining to the unvaccinated that did not exist prior.  These include the ability to remain on paid leave while applications for accommodation are pending, the option to extend LWOP (and therefore health benefits), the ability to appeal to an outside arbitrator, and the availability of enhanced severance.  See Amended Complaint Exs. E and F.

Accordingly, claims that the Awards have somehow infringed on Plaintiffs' rights are simply inaccurate; rather, the Awards safeguarded and elevated Plaintiffs' rights.

## III.   PLAINTIFFS LACK STANDING TO CHALLENGE THE AWARDS

As explained herein and in the UFT and CSA Defendants' prior submissions, the Awards are valid and Plaintiffs lack standing to attack them directly or collaterally.[5]  Plaintiffs were not parties to the instant arbitration proceedings and therefore lack standing to challenge same.  See Broecker et al. v. New York City Dep't of Educ. et al., __ F.Supp.3d __, 2021 WL 5514656, at

---

[3] It is particularly perplexing what benefits the UFT or CSA Defendants are alleged to have sought from this fictional scheme, the purported goals of which run contra to the *many* suits brought by the UFT and CSA in defense of Plaintiffs and others similarly situated.

[4] MLC et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

[5] Challenging the validity of the Awards is quite different from alleging that their provisions violate other rights.

7

*6 (E.D.N.Y. Nov. 24, 2021); see also Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir.1994)

(employee lacked standing to challenge disciplinary arbitration award); Fleischer v. Barnard

College, 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18, 2021) (accord).  Likewise,

New York state courts have held that current or former union members cannot challenge the

validity of CBAs as non-parties to, or third-party beneficiaries of, those agreements.  See Fiore v.

Town of Whitestown, 125 A.D.3d 1527, 1530 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d

910 (2015); see also Leblanc v. Security Servs. Unit Empls. of New York State Law

Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, 278 A.D.2d 732, 733-34 (3d

Dep't 2000).

        Nor can Plaintiffs cure this infirmity by alleging new facts and inventing new claims in

opposition briefing.  See, e.g., Ifill v. New York State Court Officers Ass'n, 655 F. Supp. 2d 382,

393 (S.D.N.Y. 2009) (denying summary judgment where "the amended complaint does not state

a claim for breach of the duty of fair representation . . . . [Plaintiff] may not amend his complaint

to add new claims by raising them for the first time in his motion papers."); In re 50 Pine Co.,

LLC, 317 B.R. 276, 284 (Bankr. S.D.N.Y. 2004) ("A plaintiff may not bootstrap a claim into a

complaint merely by discussing it in its opposition brief."); Chartwell Therapeutics Licensing,

LLC v. Citron Pharma LLC, 16-CV-3181, 2020 WL 7042642, at *10 (E.D.N.Y. Nov. 30, 2020)

(refusing to consider new facts introduced in a declaration in opposition to a motion to dismiss);.

In any event, an attempt to further amend their complaint to include a new claim for breach of

the duty of fair representation would be futile as Plaintiffs would be unable to establish the

needed elements and the claim would be untimely under the four-month limitations period in

CPLR 217.  See Vaughn v. Air Line Pilots Ass'n, Int'l, 395 B.R. 520, 536 (E.D.N.Y. 2008)

(granting 12(b)(6) dismissal where plaintiff failed to plead "arbitrary, discriminatory" or "bad

8

faith" action by union, or that the challenged action had a causal connection to plaintiff's injuries), aff'd, 604 F.3d 703 (2d Cir. 2010), and aff'd sub nom. Vaughn v. Air Line Pilots Ass'n, 377 F. App'x 88 (2d Cir. 2010); Hoffman v. Bd. of Educ. of City Sch. Dist. of City of New York, 84 A.D.2d 840, 841 (2d Dep't 1981) (dismissing duty of fair representation claim where plaintiff failed to show bad faith, arbitrariness, or discriminatory conduct by union).

Furthermore, the duty of fair representation permits a union great leeway in representing its members. A plaintiff must plead discrimination or bad faith – not merely harm or error on the part of a union. See Vaughn, 395 B.R. at 536; Hoffman, 84 A.D.2d at 841.[6]

Plaintiffs' also misrepresent this Court's December 22, 2021 Scheduling Order, which concerned standing in response to the initial iteration of Plaintiffs' pleading. Since that ruling, Plaintiffs have amended their initial pleadings and have made numerous collateral attacks to the terms of the Awards themselves, despite their lack of standing to do so. The UFT and CSA Defendants challenge Plaintiffs' standing in light of these subsequent allegations and filings.

Therefore, Plaintiffs' claims regarding the purported invalidity of the Awards should be dismissed under Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

For the reasons set forth herein and in the accompanying submissions, the UFT and CSA Defendants respectfully request that the Court:

1. dismiss all claims against the UFT and CSA Defendants, including those (a) seeking a declaratory judgment that the UFT and CSA Awards were promulgated without statutory or contractual authority; and (b) alleging that UFT and CSA

---

[6] Regardless, failure to ratify the Awards cannot form the basis for a duty of fair representation claim. As set forth above, the law does not require ratification.

engaged in conspiracies regarding, or aided and abetted, violations of 42 U.S.C. §

1983;

2.   deny Plaintiffs' request to file a second amended complaint; and

3.   award such other and further relief as the Court deems just and proper.

Dated: May 24, 2022                        Respectfully submitted,

                                           /s/ DINA KOLKER
                                           STROOCK & STROOCK & LAVAN LLP
                                           Alan M. Klinger, Esq.
                                           Dina Kolker, Esq.
                                           Arthur J. Herskowitz, Esq.
                                           180 Maiden Lane
                                           New York, New York 10038
                                           (212) 806-5400
                                           aklinger@stroock.com
                                           dkolker@stroock.com
                                           aherskowitz@stroock.com

                                           - and -

                                           Beth A. Norton, Esq.
                                           UNITED FEDERATION OF TEACHERS,
                                           LOCAL 2, AFT, AFL-CIO
                                           52 Broadway
                                           New York, New York 10004
                                           (212) 701-9420
                                           bnorton@uft.org

                                           *Co-counsel for the UFT Defendants*

                                           - and -

                                           David A. Grandwetter, Esq.
                                           COUNCIL OF SCHOOL SUPERVISORS
                                           AND ADMINISTRATORS
                                           40 Rector Street, 12th Floor
                                           New York, New York 10006
                                           (718) 852-3000
                                           david@csa-nyc.org

                                           *Co-counsel for the CSA Defendants*

**JA-1823**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

| | |
|---|---|
| NICOLE BROECKER, et al., on behalf of themselves and all other similarly situated employees of the New York City Department of Education, | DOCKET NO. 21-CV-06387 |

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MEISHA PORTER, in her official and individual
capacities, UNITED FEDERATION OF TEACHERS,
LOCAL 2, AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, MICHAEL MULGREW, in his official and
individual capacities, JOHN DOE #1-10, in their official
and individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

Defendants.

--------------------------------------------------------------------X

**DEFENDANTS MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND
MEDIATION SERVICES, and
SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC
REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

**VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP**
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,
and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

JA-1824

## TABLE OF CONTENTS

TABLE OF AUTHORITIES   ……………………………………………   i-iii

PRELIMINARY STATEMENT   ……………………………………   1

CONCLUSION   ……………………………………   7

i

# TABLE OF AUTHORITIES

**Cases**

Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir.1990).19 ..2

Berlyavsky v. New York City Dep't of Env't Prot., No. 14-CV-03217
KAM RER, 2015 WL 5772266, at *18 (E.D.N.Y. Aug. 28, 2015) …………….    1, 2

Blum v. Yaretsky, 457 U.S. 991, 1004–05, 1982,
102 S.Ct. 2777, 73 L.Ed.2d 534))    ………………………………………...    2

Board of Education of City School District v. New York State
*PERB* 75 N.Y.2d 660 (1990) …………………………………………………    3, 5

Buffalo Teachers Federation v. City School District of the City of Buffalo
49 PERB 4560 (2016) ……………………………………………………………    6, 7

Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11
Union Free School District 32 PERB 3024 (1999) …………………………    5

Jacobs v. Mostow, 271 Fed. App'x 85, 88 (2d Cir.2008) ………………………    2

Margiotta v. Kaye
283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003) …………………………………..    3, 4

Weinraub v. Glen Rauch Sec., Inc., 399 F. Supp. 2d 454 (S.D.N.Y. 2005)
aff'd, 180 F. App'x 233 (2d Cir. 2006).    …………………………………    1

Williams v. Smith, 781 F.2d 319 (1986)    …………………………………    1

**Statutes**

Title 42 U.S.C. Section 1983    …………………………………    1, 7
N.Y. Civil Service Law § 209.2    …………………………………    3
N.Y. Civil Service Law § 209(2)(d)(ii) ………………………………………    4, 5
N.Y. Civil Service Law § 209.3(a)    …………………………………    3
N.Y. Civil Service Law § 209.3(b)-(d) ………………………………………    3
N.Y. Civil Service Law § 209.3(d)(ii) ………………………………………    3
N.Y. Civil Service Law § 209(3)(e)    …………………………………    4
N.Y. Civil Service Law 209.4(a)    .......................................................    4
N.Y. Civil Service Law § 209.3(f)    …………………………………    4

## PRELIMINARY STATEMENT

Plaintiffs argued that Arbitrator Scheinman engaged in conspiracy and was therefore subject to liability under 42 U.S.C Section 1983 of constitutional violations.

It is well settled that arbitrators are not state actors. Weinraub v. Glen Rauch Sec., Inc., 399 F. Supp. 2d 454 (S.D.N.Y. 2005), aff'd, 180 F. App'x 233 (2d Cir. 2006). The arbitrators are private actors, and their directives are not subject to the Due Process Clauses of the Constitution. Berlyavsky v. New York City Dep't of Env't Prot., No. 14-CV-03217 KAM RER, 2015 WL 5772266, at *18 (E.D.N.Y. Aug. 28, 2015), report and recommendation adopted as modified, No. 14-CV-3217 KAM RER, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015). When, like here, the § 1983 allegations involve a private actor, a plaintiff must plead conspiracy insomuch that the private actor must be shown to be a "willful participant in joint activity with the State or its agents."

To support their claim of conspiracy, Plaintiffs cited Williams v. Smith wherein the Court held that a defendant might be personally involved in a constitutional deprivation within the meaning 42 U.S.C Section 1983 by directly participating in an infraction. Williams v. Smith, 781 F.2d 319 (1986). Plaintiffs argued that Arbitrator Scheinman directly participated in the infraction because his awards/'decision started the snowball/domino effect resulting in the deprivation. (Plaintiffs Opposition at ¶43). The case is distinguishable and inapplicable here for 3 reasons. First, in Williams, the defendants--Superintendent of a correctional facility and a Correctional Office-- were state actors within the meaning of the statute. There was no dispute there that the defendants were subject to 42 U.S.C Section 1983. Second, Plaintiffs conflate the issue of a private actor with the issue of personal involvement. Personal involvement does not convert a private actor into a state actor and it does not demonstrate conspiracy. Third, Plaintiffs argument regarding the personal involvement would lead to absurd results. Adopting Plaintiffs reasoning would render

1

every arbitration award subject to constitutional challenge where a disfavored party disagrees with its outcome. Additionally, it would necessitate a finding that presiding over an arbitration in and of itself constituted an infraction. This, of course, has no support in law and would be entirely against public policy.

Plaintiffs argued that Arbitrator Scheinman orchestrated a kickback scheme and was biased. To support their utterly absurd claim, the plaintiffs pointed out that 9 years ago, Arbitrator Scheinman hosted a fundraising event for the then-mayoral candidate, Bill de Blasio. These claims are preposterous, offensive and are entirely without any basis. Arbitrator Scheinman has arbitrated over 20,000 cases since 1978. Arbitrator Scheinman has been regarded as an eminent arbitrator. Mr. Scheinman has been a long -standing member of PERB's Arbitration Panel and has enjoyed an excellent reputation among the public employers and public employees. PERB can and do remove arbitrators from its panel when warranted. If there was ever an indicium of bias, the parties could have chosen a different arbitrator. They did not. Plaintiffs' claim of conspiracy deserves no further consideration.

Clearly,  Plaintiffs  plead no facts to plausibly support "a nexus between the state and the specific [complained-of] conduct" to establish Arbitrator Scheinman as a state actor. Blum v. Yaretsky, 457 U.S. 991, 1004–05, 1982, 102 S.Ct. 2777, 73 L.Ed.2d 534)).

Additionally, Arbitrator Scheinman enjoys immunity from claims concerning her role in the arbitral process. Jacobs v. Mostow, 271 Fed. App'x 85, 88 (2d Cir.2008) (recognizing absolute immunity " 'for all acts within the scope of the arbitral process' " (quoting Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir.1990)).19; see also Berlyavsky, supra. Most importantly, the immunity enjoyed by these individuals " 'is not overcome by allegations of bad

2

**JA-1828**

faith or malice,' nor can a judicial officer be deprived of immunity 'because the action he took was in error or was in excess of his authority.' " Id.

Next, Plaintiffs argue that the arbitration awards were invalid and illegal.

What is conspicuously missing from Plaintiffs' opposition is any discussion of this Court's case directly on point, Margiotta v. Kaye, where this Court specifically discussed the impasse procedure as follows:

> The first step of the impasse procedure for all covered employees is mediation. Id. §§ 209.3(a), 209.4(a). PERB appoints a mediator to assist the parties in reaching a voluntary resolution of their dispute. Id. With the exception of employees who are eligible for compulsory interest arbitration, if the dispute is still not settled, impasses involving all public employees proceed next to a fact-finding board which is appointed by PERB to make findings and recommendations for resolution of the dispute. Id. § 209.3(b)-(d). In the alternative, the parties together may voluntarily submit to arbitration. Id. § 209.3(d)(ii).

Margiotta v. v. Kaye, 283 F. Supp. 2d 857, 860 (E.D.N.Y. 2003).

Despite the plain language of the statute permitting the public employers, like the school districts, and the public employees, like the unions,  to submit their impasse to an interest arbitration, Plaintiffs insist on turning the statute on its head. The lack of statutory obligation to arbitrate is not tantamount to a statutory prohibition to arbitrate if the parties voluntarily choose to do so.

While ignoring the holding in Margiotta, Plaintiffs argued that the arbitration awards were invalid and illegal and supported its argument by relying on (1) § 209.3(f) ; (2) § 209.2 ; (3) Board of Education of City School District v. New York State PERB 75 N.Y.2d 660 (1990); and (4) two PERB decisions: Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District and Buffalo Teachers Federation v. City School District of the City of Buffalo.

For the reasons set forth below, the foregoing statutory provisions and decisional law are either inapplicable and in fact, directly support the movant's position.

3

First, § 209(3)(f) has no application to the case at bar. Specifically, the subsection provides:

where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply *[ § 209(3) (e ) (iii) the legislative body or a duly authorized committee thereof shall forthwith conduct a public hearing at which the parties shall be required to explain their positions with respect to the report of the fact-finding board; and (iv) thereafter, the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved]* and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present; (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement.   The board may provide such assistance as may be appropriate.

N.Y. Civil Service Law § 209(3)(e) and (f) *(emphasis added)*

The plain language merely provides that, school districts, unlike other public employers, are not obligated to conduct a public hearing and that there is no imposition on a legislative body to take any actions regarding the fact-finding report.

Second, §209 (2) provides, in parts, that: "[p]ublic employers are hereby empowered to enter into written agreements (. . .) setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations."  N.Y. Civil Service Law §209 (2).  The operative word is "empowers." The statute does not impose an obligation to enter into such agreement, and, here, no such agreement existed.

Notably, however, §209 (2) further provides that "[*o]n request of either party* ( . . .) and in the event the board determines that an impasse exists (. . . ) the board shall render assistance as follows: (d) *the public employment relations board shall have the power to take whatever steps it deems appropriate to resolve the dispute, including* (ii) *upon the request of the parties, assistance in providing for voluntary arbitration.* N.Y. Civil Service Law 209(2)(d)(ii).

4

As this Court in <u>Margiotta</u> emphasized, §209(2)(d)(ii) is directly illustrative on the impasse procedure such as the procedure applicable to the case at bar.

Third, <u>The Board of Education of City School District v. New York State</u> *PERB* is not relevant to the issues here and is not determinative. The movant respectfully urges the Court to review the Court of Appeals decision in its entirety. Nothing in the holding or even dicta supports Plaintiffs position.  In that case, the Court of Appeals simply noted that in cases involving the school districts, the parties cannot be compelled to arbitrate the impasse.  The Court pointed out that the Legislature imposed a duty to arbitrate in cases of public safety employees insomuch that the public employer, City, may not choose to forgo it. <u>Bd. of Educ. of City Sch. Dist. of City of New York v. New York State Pub. Emp. Rels. Bd.</u>, 75 N.Y.2d 660, 669, 554 N.E.2d 1247, 1252 (1990).  Therefore, the language of the Court of Appeals, in dicta, that the Legislature's failure "to provide any final impasse resolution mechanism in the cases of school district" means nothing more than that a decision to arbitrate is voluntary. As the <u>Board of Education</u> Court noted, "the Legislature has manifested an intention to commit these decisions to the discretion of the public employer." <u>Id</u>. Like, here, the decision to arbitrate was voluntarily made by the public employer, Defendant DOE, and the public employees, the Union Defendants.

Neither the statute nor the decisional law precludes the parties to choose to arbitrate their impasse.

Next, Plaintiffs also relied on two PERB decisions, neither of which supports Plaintiffs' position.  Specifically, In the Matter of <u>Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District</u>, at issue was a deletion, modification or continuation of any of the legal terms pertaining to the successor collective bargaining agreement. In the Matter of <u>Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District</u> 32

5

PERB 3024 (1999). Nowhere in Greenburgh did PERB hold or discuss that in cases involving school districts, the parties could not choose to arbitrate. By contrast, it held that "it bears emphasis that the impasse procedures applicable in school districts do not lack "finality." Id. It is true that finality to negotiations in school districts is obtained only by the parties themselves (. . .) and not, as with police or fire negotiations," compulsory arbitration award. "Finality exists in either circumstance, only the agents of that finality and the means by which that finality is achieved differ." "The parties themselves [who] are the agents of finality for purposes of school district negotiations."

As the foregoing demonstrates, contrary to the Plaintiffs' misrepresentation, the Greenburgh matter supports the movant's position.

Similarly, the Plaintiffs' reliance on the matter Buffalo Teachers Federation v. City School District of the City of Buffalo is misplaced. There, PERB held that:

> Generally, where the parties have been unable to resolve the dispute after fact-finding, PERB has considered the appropriateness of the appointment of a conciliator to mediate a settlement based on the fact finder's report and recommendations. This is particularly so in regard to school districts, where there **is no option available to the parties other than continuing to negotiate until an "agreement" is reached. (emphasis added).**

In the Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo 49 PERB 4560 (2016)

The Buffalo decision is distinguishable on the facts and supports the movant's position on the law. At issue there was the parties' unwillingness of negotiate in good faith after rejecting a fact-finding report. Here, unlike in Buffalo, the parties continued to bargain in good faith. Had either the Defendant DOE (public employer) or the Defendant Unions (public employees) refused to submit to the arbitration, there would be **no option available to the parties other than continuing to negotiate until an "agreement" is reached.** However, the parties chose to

6

continue to bargain in good faith and submit their impasse to the arbitration, which they have a statutory right to do.

Citing Buffalo, Plaintiffs also cited that "[s]chool districts and other educational institutions do not have the ability under the Act to *unilaterally* resolve the dispute after fact-finding through a process of public hearing and action by its legislative body, as do other public employers." In the Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo, 49 PERB ¶ 4560 (*emphasis added*).

The movant agrees with Plaintiffs that school districts do not have the ability to resolve the impasse unilaterally. Here, however, the DOE did not resolve the dispute unilaterally. By contrast, both parties decided to proceed to arbitration, reached out to PERB advising of same, and chose Arbitrator Scheinman from PERB's Arbitrators Panel.

**CONCLUSION**

Arbitrator Scheinman is not a state actor. Plaintiffs' claim that accepting assignment to arbitrate impasse is proof of conspiracy must fail as it is clearly insufficient to plead a cognizable claim of constitutional violations under 42 U.S.C. §1983. Plaintiffs' claims against Arbitrator Scheinman and SAMS are barred by the doctrine of absolute immunity.

7

JA-1833

Finally, the plain language of the Civil Service Law section 209 is unequivocal and specifically permits the parties to agree to a voluntary binding arbitration. The Union Defendants and the City are permitted to choose to submit the impasse to the arbitration pursuant to Taylor's Law thereby invoking Arbitrator Scheinman's authority to issue the binding arbitration awards.

Dated: Garden City, New York
       May 24, 2022

Respectfully submitted,

VIGORITO, BARKER, PATTERSON,
NICHOLAS & PORTER, LLP

*Karolina Wiaderna*

Karolina Wiaderna
Attorneys for Defendants
*Martin F. Scheinman, Scheinman Arbitration and Mediation Services,
and Scheinman Arbitration and Mediation Services, LLC*
300 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 282-3355

8

JA-1834

THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H SCHER*

JONATHAN L SCHER*'

AUSTIN R GRAFF*

TEL  516-746-5040

FAX  516-746-5043

W  SCOTT  KERSHAW
COUNSEL

MICHAEL  SCHILLINGER
COUNSEL

ROLAND  P  BRINT
COUNSEL

ADAM  GANG
COUNSEL

ROBERT  S  NAYBERG

* Also Admitted in District of Columbia
' Also Admitted in New Jersey

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO.  777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See,* **Exhibit A**, a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3
_____

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> … While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

# The Scher Law Firm, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*******************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\Teacher Litigation\Motions\Motion # 002 - Motions to Dismiss\Opposition to the Motions\July 2022 Supplemental Letter\7-7-2022 letter to Court re Scheinman award.doc

JA-1837



LOG IN

**Eric Adams supports 'hardworking'…**

**Man found badly battered on NYC street dies fro…**

**Putin's propaganda minister Maria…**

**Zelensky hails 'friend to Ukraine' Boris…**

**Father killed himself in act of 'devotion and…**

**Wild video shows NYC bodega worke…**

GET 30 DAYS FREE

*METRO*

8

# DOE suit aims to keep at least 82 teachers suspended without pay over fake vaccine cards

By Priscilla DeGregory and Cayla Bamberger

July 6, 2022    1:54pm    Updated

**NEW YORK POST**

LOG IN

| Eric Adams supports 'hardworking'... | Man found badly battered on NYC street dies fro... | Putin's propaganda minister Maria... | Zelensky hails 'friend to Ukraine' Boris... | Father killed himself in act of 'devotion and... | Wild video shows NYC bodega worke... |



The Department of Education claimed more than 80 school workers submitted phony COVID-19 vaccination cards.

AP Photo/Wilfredo Lee, File

**MORE ON:**
*DEPARTMENT OF EDUCATION*

**NYC DOE accused of 'poor planning' of 'Summer Rising' program's first day**

**Parents still scrambling for 'Summer Rising' seats as NYC program begins**

**Team Biden's plan to restore Obama-era Title IX kangaroo courts nixes fairness**

**NYC teachers booted amid budget cuts scramble for vacant positions**

The Department of Education has filed suit to keep at least 82 New York City teachers suspended without pay for allegedly submitting fake proof of COVID-19 vaccination.

The staffers were notified on April 19 that they would be placed on unpaid leave April 25 "based on information that the DOE had received from an independent law-enforcement

**NEW YORK POST**

LOG IN

| Eric Adams supports 'hardworking'… | Man found badly battered on NYC street dies fro… | Putin's propaganda minister Maria… | Zelensky hails 'friend to Ukraine' Boris… | Father killed himself in act of 'devotion and… | Wild video shows NYC bodega worke… |

The United Federation of Teachers has said some of its members reached out to the DOE to say they received the notice as a mistake.

Dozens have claimed they got the jab at a Long Island pediatric center known for offering holistic and natural remedies — where two nurses were charged for allegedly doling out fake vax cards to hundreds of customers, The Post has previously reported.



Municipal employees protest against then-Mayor Bill de Blasio's vaccine mandate on October 25, 2021.
Lev Radin/Sipa USA

Teachers who spoke to The Post admitted to paying Wild Child Pediatric Healthcare in Amityville — but for "detox" treatment to offset reactions to the vaccine, not for the cards.

# NEW YORK POST

LOG IN

| Eric Adams supports 'hardworking'… | Man found badly battered on NYC street dies fro… | Putin's propaganda minister Maria… | Zelensky hails 'friend to Ukraine' Boris… | Father killed himself in act of 'devotion and… | Wild video shows NYC bodega worke… |



A public school teacher holds a sign demanding increased COVID-19 safety measures during a rally on January 10, 2022.

Scott Heins/Getty Images

**NEW YORK POST**

LOG IN

| Eric Adams supports 'hardworking'… | Man found badly battered on NYC street dies fro… | Putin's propaganda minister Maria… | Zelensky hails 'friend to Ukraine' Boris… | Father killed himself in act of 'devotion and… | Wild video shows NYC bodega worke… |



Schools Chancellor David Banks has not commented on the dilemma.

Scott Heins/Getty Images

**NEW YORK POST**

LOG IN



The United Federation of Teachers said the Department of Education misidentified its members for not being vaccinated.

Scott Heins/Getty Images

If the arbitrator's decision isn't overturned, it "will undermine the DOE's ability to ensure compliance with the DOE vaccine mandate and thereby jeopardize the health and safety of students and their families, DOE staff, and the broader community," the suit alleges.

The DOE is asking for an emergency and permanent injunction from the court.

"These employees were afforded due process," a spokesman for the city Law Department said in a statement. "There is no lawful basis for this arbitrator's decision, which undermines DOE's authority to enforce an important public health initiative protecting students, school staff and the broader community."

The spokesman added that DOE was notified that the teachers they suspended are being investigated by law enforcement.

"Unhappy with the arbitrator's decision, the DOE has now tried to appeal the arbitrator's ruling," a UFT spokeswoman said. "We are confident that on reviewing the record the courts

**JA-1843**



SCHEINMAN
ARBITRATION & MEDIATION SERVICES

June 27, 2022

<u>Via E-Mail Only</u>
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

**Re:  Board of Education of the City School District of the City of New York
and
United Federation of Teachers, Local 2, AFT, AFL-CIO
(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

*Martin F. Scheinman*

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

**JA-1844**

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 3 of 15 PageID #: 3540

```
----------------------------------- X
In the Matter of the Arbitration
                                    X
        between
                                    X    Re: Proof of
BOARD OF EDUCATION OF THE CITY                Vaccination
SCHOOL DISTRICT OF THE CITY OF      X
NEW YORK
                                    X
        "Department"
                                    X
        -and-
                                    X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO               X

        "Union"                     X

----------------------------------- X
```

**APPEARANCES**

**For the Department**
Liz Vladeck, General Counsel

**For the Union**
STROOCK & STROOCK & LAVAN, L.L.P.
Alan M. Klinger, Esq.

Beth Norton, Esq., UFT General Counsel
Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**JA-1845**

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM    INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 07/05/2022

### BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

**JA-1846**

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM     INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 07/05/2022

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 5 of 15 PageID #: 3542

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation.  Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.

Arbitration sessions were then held.  On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

**JA-1847**

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM        INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                       RECEIVED NYSCEF: 07/05/2022

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 6 of 15 PageID #: 3543

     In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation. An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision. Approximately five hundred (500) appeals were determined by the arbitration process. Pending the arbitrator's decision, the employee could not be removed from the payroll.

     On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent. The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong. On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

     By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

**JA-1848**

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM                INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                               RECEIVED NYSCEF: 07/05/2022

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 7 of 15 PageID #: 3544

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

### DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

JA-1849

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 8 of 15 PageID #: 3545

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

**JA-1850**

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 9 of 15 PageID #: 3546

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

7

**JA-1851**

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 10 of 15 PageID #: 3547

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award.  It insists this matter is subject to my continued jurisdiction.  The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced.  According to the Union, approval of certification is issued by the State.  In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined.  The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated.  The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

8

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM          INDEX NO. 451995/2022
NYSCEF DOC. NO. 2      Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 11 of 15 PageID #: 3548   RECEIVED NYSCEF: 07/05/2022

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated. The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

**Opinion**

Certain preliminary comments are appropriate. As an arbitrator my role is a limited one. In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM          INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 07/05/2022

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 12 of 15 PageID #: 3549

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

10

JA-1854

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM          INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/05/2022

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 13 of 15 PageID #: 3550

Based upon the above, I find the Department failed to properly implement the due process protections of my Award.  The Union has the right to assert the Department's process "is not implemented in good faith."  To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing.  Those court decisions confronted an entirely different factual scenario.  Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination.  Here, of course, the employees assert they are in fact vaccinated.  This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 14 of 15 PageID #: 3551

employee's claim they have submitted proof of vaccination.  If the

parties are unable to agree on such a procedure, I shall

immediately schedule a hearing and issue an expedited Award

establishing the proper protocol to provide the employees the

appropriate due process procedure.

12

**JA-1856**

FILED: NEW YORK COUNTY CLERK 07/05/2022 10:47 PM INDEX NO. 451995/2022
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/05/2022

Case 1:21-cv-06387-KAM-LB   Document 133-2   Filed 07/07/22   Page 15 of 15 PageID #: 3552

## AWARD

1. Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.NAKASHIAN.AWD

13

# STROOCK

July 8, 2022                                              Dina Kolker
                                              Direct Dial:  212.806.5606
                                                dkolker@stroock.com

**VIA ECF**
Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     Broecker et al. v. New York City Department of Education, et al., 21-cv-6387

We submit this letter on behalf of defendants United Federation of Teachers ("UFT") and Council
of School Supervisors and Administrators ("CSA") (collectively "UFT/CSA Defendants") in
relation to Plaintiffs' letter seeking permission to supplement their opposition to UFT/CSA
Defendants' motion to dismiss based on a new arbitration award issued on June 27, 2022 by
Arbitrator Martin F. Scheinman concerning New York City Department of Education ("DOE")
employees who have submitted vaccine documentation which DOE alleges is falsified.[1]

Unlike the DOE employees at issue in the June 2022 UFT Award, Plaintiffs here are undisputedly
unvaccinated and noncompliant with DOE's vaccination Mandate and are, as set forth in our
motion papers, subject to the Mandate implementation Award issued September 10, 2021.[2]
Conversely, the DOE employees at issue in the recent June 2022 UFT Award complied with the
terms of the Mandate, but are now alleged to have engaged in misconduct consisting of submitting
fraudulent vaccine documentation.  As such, the June 2022 UFT Award holds that the form of
leave without pay ("LWOP") implemented for undisputedly unvaccinated employees by the prior
September 2021 Award is not available for employees whose vaccination status is in dispute.

The investigation regarding the allegedly fraudulent documents is not yet complete.  Accordingly,
both UFT and CSA have separately challenged DOE's actions with regard to the accused
employees in both arbitration and state court.[3]  These pending proceedings are distinct in subject
and substance from the instant proceeding, and do not speak to the legitimacy of the prior

---

[1] See Board of Education of the City School District of the City of New York and United Federation of Teacher (Re:
Proof of Vaccination), Arbitration Award (June 27, 2022), attached to Plaintiffs Motion for Leave to File Document
(dkt# 133) as Exhibit B (hereinafter, the "June 2022 UFT Award").  As indicated in Plaintiffs' submission, DOE is
challenging the award in state court.
[2] See Board of Education of the City School District of the City of New York and United Federation of Teachers,
Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021), Klinger Declaration in Opposition
to Emergency Motion, Ex. D. (dkt# 21) (hereinafter, the "September 2021 Award").
[3] See Council of School Supervisors and Administrators, et. al., v. Board of Education of the City School District of
the City of New York, et. al., Index No. 155220/2022 (Sup. Ct. N.Y. Cnty.); Board of Education of the City School
District of the City of New York, et al. v. United Federation of Teachers, et al., Index No. 451995/2022 (Sup. Ct. N.Y.
Cnty.).  DOE has moved to vacate the June 2022 UFT Award in this latter action.

**STROOCK & STROOCK & LAVAN LLP**  New York · Los Angeles · Miami · Washington, DC
180 Maiden Lane, New York, NY 10038-4982 · T. 212.806.5400 · F. 212.806.6006 · www.stroock.com

July 8, 2022


September 2021 Award and its LWOP provision as applied to Plaintiffs here, who are undisputedly unvaccinated and noncompliant with the Mandate.  The two groups of employees are in fundamentally dissimilar circumstances.

Moreover, the June 2022 UFT Award simply has no bearing on the validity of the September 2021 Award.  UFT/CSA Defendants did not dispute that Plaintiffs in this case were subject to the implementation procedures contained in the prior September 2021 Award.  Similarly, UFT/CSA Defendants do not now and have never disputed that Arbitrator Scheinman was involved in the creation of the LWOP policy as part of the broader process of negotiation and arbitration which produced the September 2021 Award, as this is the normal role of an arbitrator when parties mutually agree to resolve outstanding bargaining issues through binding arbitration.  As such, the prior September 2021 Award was properly reached, and the recent June 2022 UFT Award is irrelevant to Plaintiffs' claims on this point.


Respectfully submitted,


 /s/ DINA KOLKER
STROOCK & STROOCK & LAVAN LLP
Dina Kolker, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
dkolker@stroock.com

*Co-counsel for Defendants UFT and CSA*

CC: all counsel of record

**JA-1859**



**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**Andrea O'Connor**
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

July 11, 2022

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re:   Broecker, et al. v. NYC Department of Education, et al.
Docket No. 21 CV 6387 (KAM)(LB)

Dear Judge Matsumoto:

I am an Assistant Corporation Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for defendants New York City Department of Education and Meisha Porter (collectively, "DOE Defendants") in the above-captioned matter. I write in opposition to Plaintiffs' July 7, 2022 request to supplement their opposition in connection with DOE Defendants' pending motion to dismiss the Amended Complaint. For the reasons set forth below, Plaintiffs' request should be denied.

For background, on April 19, 2022, 82 DOE employees were provided with notice that they would be placed on leave without pay, with benefits, effective April 25, 2022, based on information that the DOE had received from an independent law enforcement agency that their proof of COVID-19 vaccination was fraudulent. DOE offered these employees an opportunity to respond by contacting the DOE if they believed that the allegation that they had submitted fraudulent proof of vaccination was incorrect. By letter dated May 3, 2022, the UFT objected to this on their members' behalf and requested that Defendant Scheinman take jurisdiction over the dispute. Defendant Scheinman found that he had jurisdiction over the issue and issued an Opinion and Award on June 27, 2022. The June 27 Opinion and Award opined that the DOE's decision to place these 82 employees on LWOP was "inconsistent" with the September 10, 2021 Impact Arbitration Award. On July 5, 2022, DOE commenced an Article 75 proceeding against UFT seeking an order vacating the June 27 Opinion and Award on the grounds that Defendant Scheinman exceeding his power and jurisdiction in issuing the Award and that it violates public policy and is irrational. That proceeding is pending.

1

Case 23-655, Document 77, 06/05/2023, 3525011, Page220 of 279

**JA-1860**

Plaintiffs now seek to put before the Court two entirely irrelevant documents: first, a New York Post article relating to 82 DOE employees that were placed on LWOP by the DOE, and second, the June 27 Opinion and Award. As detailed above, the June 27 Opinion and Award does not pertain to Plaintiffs because it involves only those 82 DOE employees placed on LWOP on April 25, 2022 based on information that the DOE had received that their proof of COVID-19 vaccination was fraudulent. As such, the June 27 Opinion and Award has absolutely no bearing on Plaintiffs' due process claims because it is not applicable to them. Further, Plaintiffs' contention that the June 27 Opinion and Award bears on their claim under New York Civil Service Law § 209(3)(f) is also without merit. As argued in DOE Defendants' motion, Plaintiffs premise their entire constitutional due process claim on the faulty notion that a purported violation of § 209(3)(f) automatically equates to a procedural due process violation. Plaintiffs are incorrect. See Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) ("violation of state law does not per se result in a violation of the Due Process Clause"). Thus, Plaintiffs' argument that their procedural due process claim can be established based on an alleged violation of the New York State Civil Service Law, does not suffice.

For these reasons, DOE Defendants respectfully request that the Court deny Plaintiffs' request to supplement their opposition to DOE Defendants' motion to dismiss the Amended Complaint.

Respectfully submitted,

Andrea O'Connor
Assistant Corporation Counsel

cc:     All Counsel

JA-1861

Alfred P. Vigorito
John W. Barker
Gary W. Patterson, Jr.*
Jeffrey R. Nichols*
Mamie Stathatos Fulgieri
Scott A. Singer
Gregg D. Weinstock*** ◆ □
Kiki Chrismalladores*
Kevin D. Porter
Susan Vari

Margaret Antonino* ●
Edward J. Arevalo
Graig R. Avino*
Michael J. Battiste
Robert Boccio
Dylan Braverman
Thomas Brennan ●
Dawn Bristol
Kenneth J. Burford
Gilbert H. Choi
Joshua R. Cohen
Adam S. Covitt

Charles K. Faillace ◇
Danielle M. Hansen
Anna Hock
Thomas Jaffa
Gemma Kenney ***
Ruth Bogatyrow Kraft
Douglas Langholz
Megan A. Lawlesss
Guy A. Lawrence
Timothy P. Lewis
Neil Marcolo, Jr.
Adonaid Medina*
Ralph Vincent Morales
Carolyn Rankin
Miles S. Reiner
Bhalinder L. Rikhye
Tammy A. Trees
Nicole M. Varisco
Christopher Whitton
Julia F. Wilcox ◇
Nicole R. Wittman
Arthur I. Yankowitz**

Theresa A. Bohm
Angela R. Bonica *
Michael P. Diven * ** ●
Tyler M. Fiorillo
Lauren P. Ingvoldstad†
Nicole E. Martone
Daniel O'Connell * ●
Andrea J. Sanchez
Kathleen M. Thompson
Paul Toscano
Claudine Travers
Alexandrea Zerillo * ** □

Of Counsel
Patricia M. Comblo ◇ ●
Josie M. Condley
Brian DiPentima*
Tricia Crisito
Roseann V. Driscoll
Mary M. Holupka
Rani B. Kulkarni
Joseph P. Mascarella
Seema Patterson
Nicole C. Salerno *
Valerie L. Singusa
Diana V. Solla
Paul Varriale
Karolina Wiaderna

* Also Admitted to Practice in NJ
** Also Admitted to Practice in CT
*** Also Admitted to Practice in NJ, CT, DC
  □ Adjusted to Practice in Florida
  ● Also Admitted to Practice in FL
  † Also Admitted to Practice in NJ and PA
  ◆ Also Admitted to Practice in MA
  □ Also Admitted to Practice in AZ, CA and NJ
  ◇ Admitted to Practice in CO
  † Admission Pending

**VBPNP**

## VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP

July 11, 2022

VIA ECF
Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Broecker et al., v. Scheinman Arbitration et al
      Docket No.: 21-cv-6387
      VBPNP File No.: 72-066

Dear Judge Matsumoto:

The undersigned represents Defendants Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services, LLC (hereinafter "Scheinman Defendants"). Plaintiffs' request to supplement their opposition to Defendants' motions to dismiss should be denied as the recently issued award is immaterial and irrelevant to the Plaintiffs allegations against Arbitrator Scheinman in this case, namely, whether the arbitrator had authority to arbitrate and issue binding awards. As delineated in the codefendants letter to court (ECF No.134, ECF No.135), the two sets of Plaintiffs are dissimilar, and the June 27 Opinion and Award is inapplicable to the case at bar.

Furthermore, under the guise of the purportedly newly discovered documents, Plaintiffs attempt to argue, once again, that Arbitrator Scheinman conspired with the state actors. Plaintiffs allege that by issuing the awards, Arbitrator Scheinman "actively participated in the violation of the Plaintiff's due process rights." To put it simply, Plaintiffs claim that "the language written by Scheinman in the Opinion and Award" and his words therein arise to the level of direct participation in constitutional depravation. This argument is nonsensical and must fail. Adopting Plaintiffs reasoning would lead to absurd results; it would render judicial immunity entirely null and void and is therefore entirely against public policy.

For the reasons stated above, Scheinman Defendants respectfully requests that the Court denies Plaintiffs' application.

Respectfully submitted,

*Karolina Wiaderna*

Karolina Wiaderna

cc:   all counsel of record



**THE CITY OF NEW YORK**

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

Andrea O'Connor
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

February 16, 2023

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re:   Broecker, et al. v. NYC Department of Education, et al.
      Docket No. 21 CV 6387 (KAM)(LB)

Dear Judge Matsumoto:

       I am an Assistant Corporation Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for defendants New York City Department of Education and Meisha Porter (collectively, "DOE Defendants") in the above-captioned matter. I write today in response to the Court's order directing the parties to address which issues, if any, have been mooted in light of the City of New York making vaccination optional, rather than required, for current and prospective employees of the DOE.

       While this change will not eliminate all live issues, it does mean that Plaintiffs who are former DOE employees are eligible to apply to new positions within the DOE. Former DOE employees, however, who were terminated for failure to show proof of vaccination will not be automatically reinstated to their prior positions with back pay. In that regard, Plaintiffs' claims relating to their placement on leave without pay and any subsequent termination remain live.

       However, because vaccination is now optional for current and new DOE employees, to the extent Plaintiffs' Amended Complaint seeks injunctive relief to enjoin the enforcement of the DOE's vaccination requirement, such relief is moot. Similarly, any request for declaratory or injunctive relief in connection with a facial challenge to the DOE's vaccination mandate is moot as well. *See Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (when "there is no longer any state order for the court to declare unconstitutional or to enjoin," then "[i]t could not be clearer that this case is moot"); *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021) ("with the offending [rule] wiped away, there is nothing harming" the plaintiff).

Nor can Plaintiffs credibly invoke the voluntary cessation exception. They have repeatedly sought relief from this Court, and DOE Defendants have consistently responded by litigating the issues. It is hard to imagine better proof that the change in course is "unrelated to the litigation." 15 Moore's Federal Practice Civil § 101.99(2)(a) (2022) (collecting cases). The facts bear out that the discontinuance of the employee vaccination requirement is due to changed circumstances, not this litigation. For example, 99% of DOE's workforce, 96% of the City workforce and more than 80% of all New Yorkers have been vaccinated, and more tools are available to counter the virus than ever before. The Second Circuit has recognized that changes in pandemic-related measures like this are not subject to the voluntary cessation exception. *See, e.g., Geller v. Hochul*, No. 21-2514, 2023 U.S. App. LEXIS 1077, at *2-3 (2d Cir. Jan. 18, 2023) (summary order) (holding challenge to pandemic-related restrictions on public gatherings moot as restrictions had been lifted); *Weisshaus v. Hochul*, No. 21-64, 2022 U.S. App. LEXIS 32794, at *2-4 (2d Cir. Nov. 29, 2022) (same, as to pandemic-related traveling requirements). Further, the mere possibility that the City could someday adopt other hypothetical vaccination requirements in the face of different threats does not create a live controversy. *See Boston Bit Labs*, 11 F.4th at 10 (noting that the government's continued power to regulate "cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot").

DOE Defendants thank the Court for its attention to this matter.

Respectfully submitted,

Andrea O'Connor
Assistant Corporation Counsel

cc:     All Counsel via ECF

THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H SCHER*

JONATHAN L SCHER**

AUSTIN R. GRAFF*

TEL: 516-746-5040

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

February 17, 2023

ROBERT S. NAYBERG
(1969-2011)

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
      Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action. This letter shall serve as the Plaintiffs' response to the Court's Order seeking the parties' views relating to which issues in this Action have been mooted and which issues subsist in light of the City's discontinuance of its vaccine mandate for municipal workers.

First, it is important for the Court to know that even though the COVID-19 vaccine is no longer mandated for municipal employees, the City has made clear that those former employees who lost their jobs because the former employees refused to be vaccinated must re-apply for their positions with the New York City Department of Education ("NYCDOE"). *See,* **Exhibit 1,** a copy of the Mayor's announcement regarding the end of the vaccine mandate.

Second, all of the Plaintiffs' causes of action remain viable after the City's announcement. The Plaintiffs argue that their due process rights and their right to their pay were violated when the NYCDOE suspended them without pay and without any due process and ultimately terminated many of the Plaintiffs from their employment. As a result, the Plaintiffs lost wages, lost health insurance benefits, lost pension benefits, lost seniority (those that were fired), and other emoluments they were entitled to as an employee of the NYCDOE. The Plaintiffs have claims for back pay and damages as a result of the violations of their Fourteenth Amendment rights. The City's decision to end the vaccine mandate does not compensate the Plaintiffs for their losses.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
February 17, 2023
Page 2 of 2

Third, the Plaintiffs' causes of action against the unions and the Arbitrators are not mooted by the City's announcement to end the vaccine mandate. In fact, but-for the unions' and the Arbitrators' collusion with the NYCDOE, the NYCDOE would not have had an argument that its conduct was legal. As argued in the Plaintiffs' Motion papers in opposition to the Defendants' Motions to Dismiss, the Scheinman Impasse Arbitration Awards violated N.Y. Civil Service Law and therefore the basis for the NYCDOE to suspend the Plaintiffs without pay and later terminate many of the Plaintiffs was without any legal authority, thereby violating the Plaintiffs' due process rights and right to their pay. The City's decision to end the vaccine mandate did not compensate the Plaintiffs for their financial losses and their damage caused by the unions' and the Arbitrators' collusion with the NYCDOE to violate the Plaintiffs' constitutional rights.

It is the Plaintiffs' view that the City's decision to end the vaccine mandate has no effect on the Plaintiffs' claims asserted in this Action because the City is not: (a) paying the Plaintiffs their back pay, (b) restoring their pension benefits; (c) re-instating their health insurance benefits; (d) restoring their seniority; (e) re-instating their tenure; or (f) restoring the Plaintiffs to their former positions.

Thank you for your courtesies in this matter.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc:     Counsel of Record (by ECF)

JA-1866

Skip Main Navigation

Menu

The Official Website of the City of New York

Text Size

Select Language ⌄

Powered by Google Translate

Search Search       Search

## Secondary Navigation

MayorBiographyNewsOfficials

# With Over 96 Percent of City Workers Fully Vaccinated, Mayor Adams Announces COVID-19 Vaccination Will Become Optional for City Workers

February 6, 2023

*Over 331,000 City Workers Now Fully Vaccinated, Keeping New Yorkers Safe, City Operations Running Throughout Pandemic*

*City Will No Longer Require Vaccination for DOE Visitors*

**NEW YORK –** New York City Mayor Eric Adams today announced that — with more than 96 percent of city workers fully vaccinated against COVID-19 — the city will make vaccination optional for current and prospective city workers effective February 10, 2023, following the expected ratification at the next Board of Health meeting. The COVID-19 vaccine mandate for city workers has helped keep New Yorkers safe and New York City operations running throughout the pandemic. With the vast majority of city workers and New Yorkers vaccinated, and more tools readily available to protect people from serious illness, the vaccine requirement for the primary series of shots has served its purpose, driving rates of vaccination up among the city's workforce during a critical period in the pandemic.

"City workers stepped up tremendously throughout the pandemic," said **Mayor Adams**. "From our health care frontline workers and first responders who saved lives, to the city employees who kept our streets clean, our schools open, and our streets safe, we owe city workers a debt of gratitude for their service during New York City's darkest days. With more than 96 percent of city workers and more than 80 percent of New Yorkers having received their primary COVID-19 series and more tools readily available to keep us healthy, this is the right moment for this decision. I continue to urge every New Yorker to get vaccinated, get boosted, and take the necessary steps to protect themselves and those around them from COVID-19."

JA-1867

"As we near our third year with COVID-19, we continue to evaluate existing measures and adjust them as needed," said **Deputy Mayor for Health and Human Services Anne Williams-Isom**. "The city's vaccine requirement is one such measure and has yielded significant results with 96 percent of city workers vaccinated with the primary series. More broadly, across the city, over 80 percent of New Yorkers have had their initial two shots. In this context, we can adjust our guidance but continue to strongly encourage every New Yorker to take the steps that we know help keep us and our loved ones safe and healthy — getting vaccinated, getting boosted, wearing a mask when appropriate, getting tested when appropriate, staying home if sick, and maintaining good hand hygiene."

"It's clear these mandates saved lives and were absolutely necessary to meet the moment. We're grateful that we can now, as we leave the emergency phase of the pandemic, modify more of the rules that have gotten us to this point," said **New York City Department of Health and Mental Hygiene Commissioner Dr. Ashwin Vasan**. "We cannot overstate our appreciation for the millions of New Yorkers who made the necessary sacrifices to keep our city safe and save lives."

Beginning February 10, 2023, the city will make the COVID-19 vaccination requirement optional for city employees, in addition to New York City Department of Education (DOE) employees. At this point, the city has fully processed and issued decisions for all pending reasonable accommodation appeals. While the approximately 1,780 former employees terminated for failing to submit proof of vaccination will not be able to automatically return to their previous positions, they will be able to apply for positions with their former agencies through existing city rules and regulations and hiring processes. The city will also end the vaccination requirements for nonpublic school, early child care, and daycare staff.

As part of this change, beginning February 10, 2023, visitors to Department of Education (DOE) school buildings will no longer be required to provide proof of at least one dose of the COVID-19 vaccine. This will allow students' families and loved ones to attend school activities, celebrations, and events.

The necessary amendments to the city's vaccination policy for current city employees and DOE visitors are expected to be made at the next Board of Health meeting on February 9, 2023.

## Media Contact

pressoffice@cityhall.nyc.gov
(212) 788-2958

**JA-1868**

# STROOCK

February 17, 2023

Dina Kolker
Direct Dial:  212.806.5606
dkolker@stroock.com

**VIA ECF**
Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     Broecker et al. v. New York City Department of Education, et al., 21-cv-6387

We submit this letter on behalf of defendants United Federation of Teachers ("UFT") and Council of School Supervisors and Administrators ("CSA") (collectively, "UFT/CSA Defendants") in relation to the Court's Order that all parties advise the Court of their respective views as to which issues, if any, have been mooted, and which issues remain in the aftermath of the New York City Department of Health and Mental Hygiene's ("DOHMH's") decision to end the City's vaccination mandates for public employees (the "Mandates") as of February 10, 2023.

In their Amended Complaint (dkt #47), Plaintiffs alleged ten causes of action against various defendants, including UFT/CSA Defendants.  Of Plaintiffs' causes of action,  their sixth cause of action—seeking a permanent injunction to prospectively prevent "[the New York City Department of Education ("DOE")] from violating the Plaintiffs' constitutional rights"—is moot to the extent it sought the lifting of the mandate going forward.

For the remaining claims, whether or not said claims are moot, UFT/CSA Defendants reiterate that these claims are entirely baseless as to them, on the grounds set forth in their motion to dismiss. As such, even if they proceed past the end of the Mandate, these claims fail.

Moreover, with the end of the Mandates, the City and DOE have offered the opportunity for potential reapplication or reinstatement to employees who resigned, retired or were terminated because of the Mandates.  To UFT/CSA Defendants' understanding, different personnel policies are being applied by the City and DOE to different groups of employees based upon which title they served under and the context of their departure from their prior employment.  It appears DOE has not yet established procedures regarding pedagogical and administrative titles.  As such, to the extent that Plaintiffs allege damages against UFT/CSA Defendants, the continued accrual of such damages may be limited after February 10, 2023 for any plaintiff who receives an offer to apply for reinstatement without burdensome conditions.

**JA-1869**

February 17, 2023

Respectfully submitted,

/s/ DINA KOLKER
STROOCK & STROOCK & LAVAN LLP
Dina Kolker, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
dkolker@stroock.com

*Co-Counsel for Defendants UFT and CSA*

CC: all counsel of record

COHEN
WEISS
AND
SIMON
LLP

**Hanan B. Kolko**
**Partner**
o  212-356-0214
c  516-241-6674
f  646-473-8214
HKolko@cwsny.com
www.cwsny.com

900 Third Avenue, Suite 2100 • New York, NY 10022-4869

February 17, 2023

**Via ECF**
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Rm. S905
Brooklyn, NY 11201

> Re:   Broecker, et al. v. NYC Department of Education, et al.
>       Docket No. 21 CV 6387 (KAM)(LB)

Dear Judge Matsumoto:

We represent defendants AFSCME District Council 37 ("DC37"), Henry Garrido, AFSCME Local 372, AFSCME Local 1251, Shaun Francois and Francine Francis (the "DC37 Defendants"). On behalf of the DC37 Defendants, we write in response to the Court's order directing the parties to address which issues in this case, if any, have been rendered moot by the City of New York's decision to no longer require its current and future employees to have been vaccinated for COVID. We address here whether the claims against DC37 Defendants are moot.

In counts nine and ten, plaintiffs seek money damages against some or all of the DC37 defendants. Amended Complaint, ¶ 435, Prayer for Relief, ¶¶ 9, 10. Because plaintiffs seek money damages against some or all DC37 defendants in counts nine and ten, the claims asserted in those counts are not moot as to DC37 defendants.

In count four, plaintiffs seek only "a declaratory judgment … that the agreement between DC37 and the NYCDOE was entered into without any contractual authority …and, therefore, the NYCDOE's suspension of Plaintiffs … violated [their] fourteenth Amendment rights to due process and their pay." Amended Complaint, ¶ 304, Prayer for Relief, ¶4.

The agreement, Exhibit M to the Amended Complaint, provided a process applicable to DC37-represented DOE employees who sought a religious and/or medical exemption from the DOE's "mandatory vaccination policy," and addressed the status of employees who did not comply with the policy. Amended Complaint, ¶164. By its terms, the agreement required employees seeking an exemption from the policy to apply by October 5, 2021. It set an October 8, 2021 deadline for initial rulings on exemption requests, required appeals of those initial decisions to be made within 48 hours of receipt of the decision, required the submission of

9903856.1



COHEN
WEISS
AND
SIMON
LLP

February 17, 2023
Page 2

supplemental documents regarding the appeal to the arbitration panel within 48 hours, and provided for an expedited arbitration process.  Exhibit M, at ¶¶ 1, 1(e), 1(f), 1(g).  Under the agreement, employees who received an exemption had certain rights, and employees who were denied an exemption and/or who did not seek an exemption had certain more limited rights.  However, the agreement is tied entirely to the now rescinded vaccination requirement – it set up a process that applied only to adjudicating employee and DOE rights and obligations vis-à-vis the DOE's now rescinded mandatory vaccination policy.  See, generally, Exhibit M.

"A case is moot when the issues presented are no longer live."  *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015).  Where a challenged government policy has expired, or is no longer in effect, a claim seeking non-monetary relief as to that policy is moot.  *Hawaii v. Trump*, 138 S. Ct. 377 (Mem.) (2017).

A defendant who argues that a claim against it is moot because it stopped doing what plaintiffs challenge "bears a heavy burden" of showing that the "allegedly wrongful behavior could not reasonably be expected to recur."  *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).  Claims arising out of rescinded COVID-related policies are moot where a court cannot grant any relief on the claim, and a claim for attorneys' fees does not rescue such a claim from dismissal as moot.  *Clark v. Governor of New Jersey*, 53 F. 4th 769, 776-777 (3d Cir. 2022).  Such a claim will be found moot unless plaintiffs establish that "the same precise situation – the pandemic such as it presented itself in 2020 and 2021 – [is likely to] … occur again."  Id.  In *Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021), the Second Circuit rejected as "speculative" the likelihood that the state would reimpose restrictions on fingerprinting needed to obtain a gun permit "in view of the mitigation measures that have become available to combat the spread of COVID, and the providential infrequency of pandemics."  Id.  Thus, mere speculation that the rescinded policy will be reimposed will not, absent more, rescue a claim challenging the rescinded policy from being dismissed as moot.

Here, the fourth claim attacks the validity of an agreement that addresses only how employees seek exemptions to the now-rescinded vaccine mandate policy and the rights of employees who did not comply with that policy.  As the policy giving rise to count four has been "wiped away," count four's claim for declaratory relief is moot.  *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021).  And, plaintiffs cannot show that the policy is likely to be reimposed, in light of the availability of additional measures to deal with COVID and the fact that almost 100% of the DOE's workforce is vaccinated.  Finally, the mere fact that the City may retain authority to reimpose a vaccine mandate does not change the result.  *Boston Bit Labs,* 11 F.4th at 10 ("That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot.  And we know some are.").

JA-1872



COHEN
WEISS
AND
SIMON
LLP

February 17, 2023
Page 3


     In sum:  counts nine and ten are not moot, as they seek money damages, while count four is moot, as it seeks only a declaration as to an agreement that dealt only with a rescinded policy.

Respectfully submitted,

*/s/ Hanan B. Kolko*

Hanan B. Kolko

cc: All Counsel, via ECF

Case 1:21-cv-06387-KAM-LB   Document 142   Filed 02/20/23   Page 1 of 1 PageID #: 3633

Alfred P. Vigorito
John W. Barker
Gary W. Patterson, Jr.*
Jeffrey R. Nichols*
Marsie   Stathatos Fulejeri
Scott A. Singer
Gregg D. Weinstock*** ▲
Kiki Chrismalliden*
Dylan Braverman
Adam S. Covitt

Kevin D. Porter
Susan Vari

Brian Andrews
Margaret Antonino* ▲
Edward J. Arevalo
Robert Boccio
Bruce Brady *
Thomas Brennan ▲
Dawn Bristol
Kenneth J. Burford
Gilbert H. Choi
Joshua R. Cohen

Charles K. Faillace ◊
Danielle M. Hanson
Anna Rock
Thomas Jaffa
Gemma Kenney ***
Douglas Langholz
Jason Lavery *
Megan A. Lawlessi
Guy A. Lawrence
Jennifer M. Lobaito *
Neil Mascolo, Jr.
Adonaid Medina*
Ralph Vincent Morales
Vincent Nagler **
Carolyn Rankin
Miles S. Reiner
Bhalinder L. Rikhye
Leilani Rodriguez *
Lori Shapiro
Tammy A. Trees
Nicole M. Yarinco*
Julia F. Wilcox ◊
Arthur I. Yankowitz**

Danielle Bennett ▵
Theresa A. Bohn
Angela R. Bonica *
Julia Combs †
Christine Crane *
Michael P. Diven * ** ▵
Tyler M. Fiorilli
Jamie Gewurz †
Lauren F. Ingvoldstad†
Jillian Kuper †
Christian McCarthy
John O'Brien
Daniel O'Connell * ▲
Kara Ogubene †
Emily Phillips
Alesha Powdl
Kathleen M. Thompson
Paul Toscano
Claudine Travers
Tyler Weingarten †
Samuel Youssof
Alexandra Zerillo * ** ◊

Of Counsel
Patricia M. Conshlo ▵ ▴
Josie M. Condley
Brian DiPentima*
Tricia M. Orsatto
Roseann V. Driscoll
William Gigas ▴
Rani B. Kulkarni
Nicole E. Martone
Joseph F. Muscarella
Seema Palmeeron
Nicole C. Salerno *
Valerie L. Simpina
Diana V. Solla
Karolina Wiaderna

* Also Admitted to Practice in NJ
** Also Admitted to Practice in CT
*** Also Admitted to Practice in NJ, CT, DC
◊ Also Admitted to Practice in FL
▲ Also Admitted to Practice in NJ and PA
▵ Also Admitted to Practice in MA
▴ Also Admitted to Practice in Ohio
△ Admitted to Practice in CO
† Admission Pending



# VBPNP

## VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP

February 20, 2023

VIA ECF
Hon. Kiyo A. Matsumoto
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  Broecker et al., v. Scheinman Arbitration et al
       Docket No.: 21-cv-6387
       VBPNP File No.: 72-066

Dear Judge Matsumoto:

  This firm represents Defendants Arbitrator Scheinman and SAMS (hereinafter "Scheinman Defendants") in the above-referenced matter. This letter is in response to this Court's Order directing the parties to advise the Court of their respective views as to whether the City of New York's announcement ending the vaccination mandate mooted any issues in the instant matter.

  While Defendants maintain that Plaintiff's claims against Scheinman Defendants are unsupported by applicable law and entirely without merit, we believe that the mandate did not moot any issues as to the Scheinman Defendants.

  Thank you for your attention to this matter.

         Respectfully submitted,

         *Karolina Wiaderna*

         Karolina Wiaderna

cc:  all counsel of record  via ECF

**300 Garden City Plaza • Suite 100 • Garden City, New York 11530 • Phone: (516) 282-3355 • Fax: (516) 908-4960**

*Office Locations in*   WESTCHESTER  MANHATTAN  NEW JERSEY  CONNECTICUT  FLORIDA  COLORADO

JA-1874

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
Nicole BROECKER, et al,

        *Plaintiff*,

     v.

New York City Department of Education,
et al,

        *Defendants*.
-----------------------------------X

<u>**MEMORANDUM & ORDER**</u>

21-CV-6387(KAM)(LRM)

**Kiyo A. MATSUMOTO, United States District Judge:**

      The 93 named Plaintiffs in the Amended Complaint (collectively "Plaintiffs"), filed on January 10, 2022 (ECF No. 47, Am. Compl.), are employees of the New York City Department of Education ("NYC DOE") and are members of various unions named as Union Defendants.[1]  Named Defendants are the NYC DOE, the City of New York, Meisha Porter, the Chancellor of the NYC DOE; the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (collectively "UFT"); Michael Mulgrew, President of the UFT; Counsel of Supervisors and Administrators ("CSA"), Mark Cannizzaro; District Council 37, AFSCME AFL-CIO, Local 372 ("DC 37 Local 372"); Henry Garrido; Shaun D. Francois

_____

[1] In two extensive decisions (ECF Nos. 33; 89), this Court denied both of Plaintiffs' motions for a preliminary injunction after considering the parties' submissions and conducting hearings.  Factual findings set forth in the Court's decisions were based on the Parties' evidentiary submissions and are noted where relevant.  The Court notes that the Plaintiffs submitted their original complaint as an exhibit in their first motion for preliminary injunction (ECF No. 2-8, Ex. B, Complaint), and submitted the operative Amended Complaint as an exhibit in their second motion for preliminary injunction (ECF No. 76-12, Ex. F, Amended Complaint).

I; District Council 37, AFSCME AFL-CIO, Local 1251 ("DC 37 Local 1251") (together with DC 37 Local 372, "DC 37"); Francine Francis; Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services LLC (collectively, "Scheinman Defendants") (collectively, "Defendants").  Defendants UFT, CSA, and DC 37 (collectively, "Union Defendants") are labor organizations through which certain named Plaintiffs are covered by collective bargaining agreements ("CBAs") with the NYC DOE.

Defendants NYC DOE and the City of New York are entities responsible for implementing and enforcing a COVID-19 vaccination mandate (the "Vaccination Mandate") issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene ("COH Order") on August 24, 2021, requiring that all NYC DOE employees receive at least a first dose of a COVID-19 vaccination by September 27, 2021, in order to work at NYC DOE schools.  The Vaccination Mandate was revoked by the City of New York on February 10, 2023 and is no longer in effect.[2]

An arbitrator, Defendant Scheinman, was appointed by the New York State Public Employment Relations Board ("PERB") to

---

[2] *See* N.Y.C. Board of Health, Order Rescinding Orders Requiring COVID-19 Vaccination in Child Care and Early Intervention Programs, for Nonpublic School Staff, and for Individuals Working in Certain Child Care Programs (2023); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).")

2

mediate the impasse in the negotiations between the Union
Defendants and the NYC DOE regarding the New York Commissioner
of Health's COVID Vaccination Mandate and issued a binding
arbitration award ("Impact Arbitration Award") that resolved the
impasse and prescribed procedures for the NYC DOE to implement
the Vaccination Mandate.[3]

At the time the Amended Complaint had been filed on
January 10, 2022, Plaintiffs had not received at least one dose
of the COVID-19 vaccine, and had been suspended without pay, at
least temporarily, by the DOE. (ECF No. 47, Am. Compl. ¶ 118.)
Plaintiffs allege that the implementation of the Vaccination
Mandate and subsequent consequences violated (a) their
procedural Due Process rights, under the Due Process Clause of
the Fourteenth Amendment, (b) their statutory rights to their
due process protections under N.Y. Education Law §§ 3020-1 and
3020-a (for tenured employees) or N.Y. Civil Service Law § 75
(for permanent employees) and (c) their contractual rights to

---

[3] As noted by the Court in its November 24, 2021 Order, the Court found that
"the [initial] Impact Arbitration Award reached between the UFT and the Board
of Education of the City School District for the City of New York 'mirrors'
the agreements reached between the Board of Education of the City School
District for the City of New York and the CSA and DC 37" and would be
consolidating and incorporating its findings regarding the three identical
agreements ("Impact Arbitration Awards" or "Awards") in its November 24, 2021
Order. (ECF No. 33, Nov. 24, 2021 Order at 7, 8 n.2.)(quoting ECF No. 18,
O'Connor Decl. at C, Memorandum of Agreement DC 37, City of New York, and the
Board of Education of the City School District for the City of New York.)
The DOE's Motion to Dismiss memorandum also states that all three agreements
are identical in all relevant aspects for purposes of this case, and the
Court agrees. (ECF No. 116, DOE Mot. to Dismiss at 5 n.1.)

**JA-1877**

their due process protections through the applicable collective bargaining agreements ("CBA").  (ECF No. 47, Compl. ¶¶ 112, 119.)  Plaintiffs also allege collusion and aiding and abetting by the Defendants under 42. U.S.C. § 1983.  (*Id.* ¶ 113.)

In this case, Plaintiffs have twice moved unsuccessfully for a preliminary injunction and temporary restraining order: Plaintiffs filed their First Motion for Preliminary Injunction on November 17, 2021, and they filed their Second Motion for Preliminary Injunction on February 8, 2022.  (ECF Nos. 2, First Motion for Preliminary Injunction[4]; 76, Second Motion for Preliminary Injunction[5].)  Central to both of Plaintiffs' motions for preliminary injunctions and their Amended Complaint, is the Plaintiffs' claim that Defendant NYC DOE did not provide adequate procedural due process required by the Constitution and thus, should be enjoined and restrained by this Court from withholding pay or terminating the employment of DOE employees who failed to comply with the Vaccination Mandate. (ECF Nos. 2-10, First Motion for Preliminary Injunction Mem. at

---

[4] The First Motion for Preliminary Injunction included an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 2-1), supporting declarations from five Plaintiffs (ECF Nos. 2-2—6), and supporting exhibits (ECF No. 2-7—10, Ex. A, Plaintiff Email; Ex. B, Complaint, Ex. C, Graff Letter.)
[5] The Second Motion for Preliminary Injunction included an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 76-1), supporting declarations from five of the forty-three Plaintiffs facing termination on February 11, 2022 (ECF Nos. 76-2—6), and supporting exhibits (ECF No. 76-7—12, Ex. A, Termination Notices; Ex. B, Health Screening Questionnaire; Ex. C, Antibody Tests; Ex. D, PS I Love You Flyer; Ex. E, Indeed Post; Ex. F, the Amended Complaint.)

JA-1878

1; 76-13, Second Motion for Preliminary Injunction Mem. at 2;
*see generally* Am. Compl. ¶ 442.)  After providing the parties
with an opportunity to present evidence and submissions before,
during, and after two show cause injunction hearings,
Plaintiffs' First Motion for Preliminary Injunction was denied
by this Court on November 24, 2021 (ECF No. 33), and Plaintiffs'
Second Motion for Preliminary Injunction was denied on February
11, 2022 (ECF No. 89).  Before the Court are the Defendants'
motions to dismiss the Plaintiffs' Amended Complaint.

For the reasons discussed below, Defendants' motions
to dismiss are GRANTED.

## BACKGROUND

The Court first reviews the factual and procedural
background of the Court's November 24, 2021 Memorandum and Order
("Nov. 24, 2021 Order") and the Court's February 11, 2022
Memorandum and Order ("Feb. 11, 2022 Order").  (ECF Nos. 33,
Nov. 24, 2021 Order; 89, Feb 11, 2022 Order.)  The Court also
reviews the operative Amended Complaint, accepting as true, for
purposes of the Defendants' 12(b)(6) motions, the factual
allegations in the Amended Complaint and drawing all reasonable
inferences in Plaintiffs' favor.  *Melendez v. City of New York*,
16 F.4th 992, 1010 (2d Cir. 2021).  The Court, however, is "not
bound to accept as true a legal conclusion couched as a factual
allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015)

5

(internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in [an amended] complaint is inapplicable to legal conclusions.").

Moreover, Plaintiffs attached the operative Amended Complaint as an exhibit in their Second Motion for Preliminary Injunction.  (*See* ECF No. 76-12, Second Motion for Preliminary Injunction, Ex. F, Am. Compl.)  In any case, because "[i]n deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence," as well as the operative complaint and attached exhibits, the Court notes that in ruling on the Plaintiff's Second Motion for Preliminary Injunction, the Court has previously reviewed and considered the Amended Complaint and its exhibits in making its findings.  *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 282 (E.D.N.Y. 2021) (quotation and citation omitted), *appeal withdrawn*, No. 21-2759, 2022 WL 1316221 (2d Cir. Mar. 17, 2022).  The Court summarizes the relevant facts below.

JA-1880

### 1. First Motion for Preliminary Injunction

The Court's November 24, 2021 Order denied the Plaintiffs' November 17, 2021 First Motion for Preliminary Injunction which sought to enjoin the NYC DOE from withholding pay from or terminating tenured principals, assistant principals, and teachers who failed to obtain a first dose of the vaccine, apply for a religious or medical exemption, or extend their leave without pay ("LWOP") status while retaining health benefits. (*See* ECF No. 33, Nov. 24, 2021 Order at 2-3.)

In the Court's November 24, 2021 Order, the Court found that the processes provided in the Impact Arbitration Award, which was negotiated and established by the NYC DOE and Union Defendants through the arbitration conducted by the Scheinman Defendants, provided Plaintiffs with "constitutionally adequate" pre- and post- deprivation processes. (*Id.* at 19.) In their First Motion for Preliminary Injunction, Plaintiffs failed to address the existence and effect of the Impact Arbitration Award reached between the NYC DOE and Union Defendants, which provided critical context for evaluating the Plaintiffs' first request for preliminary injunction and what

determining pre- and post- deprivation procedures were
negotiated and available to Plaintiffs.  (*Id.* at 14.)

 The Court's November 24, 2021 Order also noted that
Plaintiffs did not have standing to challenge the terms of the
Impact Arbitration Awards, and similar awards and agreements,
finding that employees represented by a union generally do not
have standing to challenge an arbitration proceeding to which
the union and the employer were the only parties.  (*Id.* at 15.)[6]
Nonetheless, the Court considered and concluded, on the record
before it, that the Impact Arbitration Award provided adequate
processes for pre- and post-deprivation notice and hearing.
(*Id.* at 17.)  Specifically, the Court stated in its November 24,
2021 Order:

> The NYC DOE, in compliance with the
> Vaccination Mandate and for compelling public
> health reasons, cannot permit noncompliant,
> unvaccinated employees, absent exemption or
> accommodation, to work at NYC DOE schools, and
> the NYC DOE has acted pursuant to the terms of
> the Impact Arbitration Award for placing
> noncompliant, nonexempt employees on LWOP.
> The Impact Arbitration Award clearly explains

---

[6] "First, it is dubious whether Plaintiffs have standing to challenge the
terms of the [Impact Arbitration Decision], because their respective union
representatives engaged on their behalf with the NYC DOE, which process
resulted in the arbitration awards and agreement. *See Fleischer v. Barnard
Coll.*, No. 20-4213, 2021 WL 5365581, at *4, n. 1 (2d Cir. Nov. 18, 2021)
(because a union represented the adjunct professor plaintiff in the
arbitration against the defendant, her employer college, plaintiff did not
have standing to challenge the arbitration proceeding directly under the
Federal Arbitration Act; she could only challenge the arbitration through her
claim against the union for breach of its duty of fair representation.)
(citing *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) ('[A]n
individual employee represented by a union generally does not have standing
to challenge an arbitration proceeding to which the union and the employer
were the only parties.'))."

JA-1882

the "exclusive" processes established for exemptions and accommodation requests and the appeals process. (ECF No. 19-1, Impact Arbitration Award, at pp. 6-13.)  The Impact Arbitration Award also clearly provides the procedures for leave, including procedures for extending LWOP, returning from LWOP, and a section on pregnancy and parental leave. (*Id.* at pp. 13-16.)  Finally, the Impact Arbitration Award describes the options for separation, including on the part of the employee as well as on the part of the NYC DOE. (*Id.* at pp. 16-18.)  Thus, the Impact Arbitration Award provides adequate processes for pre-deprivation notice and hearing.

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). . . . The procedures outlined in CBAs are generally found to constitute adequate post deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005)[(collecting cases)] . . . . Further, the Impact Arbitration Award provides for an expedited review process for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging their placement on LWOP . . . . Finally, Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York State Supreme Court. The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)

**JA-1883**

> ("an Article 78 proceeding is a perfectly
> adequate post-deprivation remedy.").

(*Id.* at 17-22)

### 2. The Operative Amended Complaint

On January 10, 2022, Plaintiffs filed the operative Amended Complaint, naming additional parties and attaching new exhibits.[7] (ECF No. 47, Am. Compl.)  The Amended Complaint that the Court considers in deciding the Defendants' instant motions to dismiss does not allege new causes of action.

In their Amended Complaint, as discussed, *infra*, Plaintiffs mischaracterize their requests for declaratory judgment and injunctive relief as the First through Sixth "causes of action."  Plaintiffs also assert a claim under 42 U.S.C. § 1983 against all Defendants for violating Plaintiffs' procedural due process rights and conspiracy claims against the individual Defendants for their roles in negotiating and agreeing to the Impact Arbitration Awards.  (*Id.* at ¶¶ 112-19, 135, 331-35, 33852, 367-88, 403-25.)  Plaintiffs seek the following relief, including declaratory judgment as to the NYC DOE's allegedly violative suspension of Plaintiffs without pay and due process; declaratory judgment as to the allegedly

---

[7] The Amended Complaint (ECF No. 47) includes the following exhibits: (ECF No. 47-1-47-14, Ex. A, About the UFT; Ex. B, What is CSA; Ex. C, Local 371 Webpage; Ex. D, Local 1251 Webpage; Ex. E, UFT Arbitration Award; Ex. F, CSA Arbitration Award; Ex. G, Vaccination Mandate Order; Ex. H, NY Post Article; Ex. I, Declaration of Impasse; Ex. J, PERB Appointment, Ex. K, Klinger Email; Ex. L, Teachers CBA, Ex. M, DC 37 MOA, Ex. N, NYE DOE Release Form.)

illegal Arbitration Awards and agreements between the Defendant
unions and the NYC DOE; declaratory judgment as to the allegedly
coercive and void NYC DOE Release Forms signed by certain
Plaintiffs;[8] collusion and aiding and abetting conspiracy claims
under Title 42 U.S.C. § 1983 against the NYC DOE, the Union
Defendants, and the Scheinman Arbitration and Mediation
defendants; and injunctive relief against the NYC DOE for the
alleged violation of Plaintiffs' procedural due process rights.
(*See generally*, ECF No. 47, Am. Compl. ¶ 442.)

Accordingly, fundamental to the Court's consideration
of Defendants' motions to dismiss are the available processes
leading up to the termination of Plaintiffs' employment by the
NYC DOE and whether those procedures satisfied Due Process.  On
January 31, 2022, the NYC DOE notified employees who had failed
to receive a COVID-19 vaccine and also failed to either (1)
apply for and receive a medical or religious accommodation, or
(2) extend their LWOP status and continued medical benefits
until September 2022, that their employment would terminate on

---

[8] The Court notes that in Plaintiffs' opposition memorandum, they assert that
"none of the Defendants have sought to dismiss the Plaintiffs' Fifth Cause of
Action" and that the Court should therefore not dismiss it.  (ECF No. 126,
Pls. Opp'n Mem. at 22.)  Defendant NYC DOE moved to dismiss Plaintiffs'
Amended Complaint in its entirety (ECF No. 116, DOE Mot. to Dismiss Mem. at
25) for the reasons discussed *supra*, the Court dismisses the Fifth Cause of
Action for a failure to state a claim.

February 11, 2022.  (*See* ECF No. 76-7, Pls. Ex. A, Termination Notices.)[9]

### 3. Second Motion for Preliminary Injunction

On February 8, 2022, Plaintiffs filed their Second Motion for Preliminary Injunction, prompted by the DOE's notices of termination.  (ECF No. 76, Second Motion for Preliminary Injunction.)  The parties fully briefed the preliminary injunction by February 10, 2022. (ECF Nos. 79, NYC DOE Mem.; 79-2, App. B.; 82, Pls. Reply Mem.)[10]  Plaintiffs sought to enjoin, among other things, the NYC DOE from terminating their employment without due process, and to be restored to employment status with the NYC DOE, after having been placed on LWOP several months before on October 4, 2021 and having received notice of their impending termination on February 11, 2022 for failure to comply with the Vaccination Mandate.  (*See* ECF Nos. 76-13, Second Motion for Preliminary Injunction Mem.; 1-1, Am. Compl. Ex. A, Oct. 2, 2021, Email from NYC DOE; 76-7, Pls. Ex. A, Termination Notices.)  Plaintiffs also sought to enjoin the termination of their medical benefits on February 11, 2022,

---

[9] Of the ninety-three Plaintiffs, forty-three received termination notices and faced termination from their employment at the NYC DOE, effective on February 11, 2022.  (ECF No. 76-1, Graff Aff., n.1.)  Other Plaintiffs had already signed NYC DOE Release Forms which extended their LWOP status to September 2022.  (ECF No. 47, Am. Compl. ¶ 315.)

[10] The Defendants memorandum also included Appendix A providing copies of two relevant New York State Supreme Court Cases (ECF No. 79-2, App. A.), and Appendix B, providing the Affirmation of Dr. Michelle E. Morse, M.D., M.P.H., the Chief Medical Officer of the Department of Health and Mental Hygiene of the City of New York.  (ECF No. 79-2, App. B.; ECF No. 82, Pls. Reply Mem.)

despite having been notified of their ability by November 30, 2021, to extend their LWOP status and medical benefits through September 2022.  (*See* ECF Nos. 76-13, Second Motion for Preliminary Injunction Mem.; 33, Nov. 24, 2021 Order at 21-22.)

The Court denied Plaintiffs' Second Motion for a Preliminary Injunction in its February 11, 2022 Order (ECF No. 89), because the Court found, as it did in the November 24, 2021 Order, that pre- and post-deprivation processes Plaintiffs were afforded regarding the Vaccination Mandate and its impact on Plaintiffs' continued employment and pay were constitutionally adequate.  (ECF No. 89, Feb. 11, 2022 Order  at 14-15, 33.)  The Court noted that, "Importantly, the parties do not dispute that the [Impact Arbitration] Awards and the CBAs provided for expedited review processes for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging the deprivation of their pay."  (*Id.* at 19.)  The Court also noted that "none of the relevant parties, [including Plaintiffs], dispute that the Vaccination Mandate is lawful and requires all NYC DOE employees to be vaccinated, or to receive an exemption or accommodation," and that instead Plaintiffs alleged that the termination of employees pursuant to the

Vaccination Mandate was unlawful due to a lack of procedural due
process.  (*Id*. at 21-22.)

Citing to Second Circuit authority, the Court noted,
"A procedural due process claim requires the plaintiff to
establish (1) possession by the plaintiff of a protected liberty
or property interest, and (2) deprivation of that interest
without constitutionally adequate process. *See O'Connor v.
Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005)."  (*Id*. at 19.)
The Court found that the NYC DOE had provided constitutionally
sufficient pre- and post- deprivation procedures, to the
Plaintiffs who were notified of being terminated or having pay
withheld due to their failure to get the vaccine, and were
provided procedures to seek relief.  (*Id*. at 19.)

In its February 11, 2022 Order, the Court also
reiterated its findings in the November 24, 2021 Order, and
confirmed that, "Plaintiffs have not submitted any new or
supplemental evidence in support of their instant motion that
compels the Court to conclude that any of the adequate and
available processes have been withheld from the Plaintiffs."
(*Id*. at 16.)  The Court specifically found that the Plaintiffs
had a property interest in their continued employment and that:

> [First,] [t]he pre- and post-deprivation
> processes available to Plaintiffs, as
> described in the Court's November 24,
> 2021, Order, were made known to Plaintiffs well in
> advance of any action by the NYC DOE, and were

14

**JA-1888**

and are available through their unions and
through established state procedures.

Second, the pre- and post-deprivation
proceedings articulated in the Awards were
incorporated into the Plaintiffs' collective
bargaining agreements . . . The procedures
outlined in CBAs are generally found to
constitute adequate post-deprivation process
. . . [and] Plaintiffs can still seek relief
through Article 78 proceedings . . . . The
Second Circuit has advised that the Article 78
proceeding can provide a sufficient post
deprivation remedy.

(*Id*. at 17-20.)

Accordingly, in its February 11, 2022 Order, the Court

held that the, "Vaccination Mandate is a lawful condition of

employment and, thus, upon termination, Plaintiffs have been

provided constitutionally adequate process under their

applicable CBAs as affected by the relevant Arbitration Awards

or agreements and all relevant state statutes." (*Id*. at 21.)

### 4. Defendants' Motions to Dismiss

On the same day that the Court denied Plaintiffs'

Second Motion for Preliminary Injunction, the Court set a pre-

motion conference for February 25, 2022 to schedule the

Defendants' anticipated motions to dismiss under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim. (Feb.

11, 2022 Pre-Motion Conf. Order.) On May 24, 2022, the parties

fully briefed the Defendants' motions to dismiss, including the

JA-1889

Plaintiffs' consolidated opposition memorandum and each of the Defendants' respective replies.[11]

On July 7, 2022, the Plaintiffs filed for leave to provide supplemental briefing or amend their opposition brief to Defendants' motions to dismiss. (ECF No. 133, Pl. Letter.) The Defendants (except for DC 37) each responded by letter. (ECF Nos. 134 UFT/CSA Supp. Letter; 135, Scheinman Supp. Letter; 135, DOE Supp. Letter.) On July 12, 2022, the Court denied Plaintiff's motion for leave to file or amend their opposition memorandum, explaining that further briefing would not be necessary, though the Court would consider the letters already filed. (July 12, 2022 Order.) On February 13, 2023, in light of the City of New York's announcement that it had discontinued the Vaccination Mandate for municipal workers on February 10, 2023, the parties were ordered to advise the Court of their respective views as to which issues, if any, in this action have been mooted, and which issues remain. (Feb. 13, 2023 Order.) The parties responded by letter. (ECF Nos. 138, DOE 2d. Supp. Letter; 140, UFT/CSA 2d. Supp. Letter; 141, DC 37 2d. Supp. Letter; 142, Scheinman 2d. Supp. Letter.) The parties

---

[11] ECF Nos. 114, DOE Mot. to Dismiss; 115, DOE Decl.; 116, DOE Mot. to Dismiss Mem.; 117, DC 37 Mot. to Dismiss; 118, DC 37 Mot. to Dismiss Mem.; 119, DC 37 Reply; 121, CSA-UFT Mot. to Dismiss; 122, CSA-UFT Mot. to Dismiss Mem.; 124-124-4, Scheinman Mot. to Dismiss Mem. and exhibits attached thereto; 125, Pls. Decls.; 126, Pls. Opp'n Mem.; 127, DOE Reply; 128, CSA-UFT Reply; Scheinman Reply.

**JA-1890**

responded, all acknowledging that there remained at least some live issues, given that employees who had been terminated for failure to show proof of vaccination would not automatically be reinstated to their prior positions with back pay.  (ECF Nos. 138; 140; 141; 142.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Pollok v. Chen,* 806 F. App'x 40, 44 (2d Cir. 2020) (citation omitted) (summary order).  In considering a 12(b)(6) motion, the Court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon [by the plaintiff], and facts of which judicial notice may

17

**JA-1891**

properly be taken . . ." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "a plaintiff's *reliance* on the terms and effect of document in drafting the complaint is a necessary prerequisite to the court's consideration of a document on a dismissal motion; mere notice of possession is not enough.") (emphasis in original).

"[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  In taking judicial notice of such public records, the Court does so only to establish "the fact of such litigation," not for the truth of the matters asserted in that proceeding.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

## DISCUSSION

### I.   Declaratory Judgment and Injunctive Relief

In Plaintiffs' Amended Complaint, the first through fifth causes of action request a declaratory judgment, presumably under the Declaratory Judgment Act ("DJA"), and the sixth cause of action requests injunctive relief.  (ECF No. 47, Am. Compl. ¶¶ 272-327.)  The DJA "provides a remedy, not a cause of action." *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) (summary order).  "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action." *Id.* at *20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") (collecting cases).  Because Plaintiffs' first through sixth causes of action request remedies, rather than plead facts to support separate causes of action, the first through sixth causes of action are dismissed for failure to state a claim.[12]

The Court will now discuss its prior findings and final conclusions in its Orders dated November 24, 2021 and February 11, 2022 about the Plaintiffs' underlying procedural due process claims and § 1983 conspiracy claims.

JA-1893

## II.   The Court's Prior Legal Findings

Plaintiffs allege in their Amended Complaint that, "[t]his is a civil action seeking injunctive relief, declaratory judgment relief to protect the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment). . . . [and] a monetary damages award on behalf of the Plaintiffs and against the Defendants pursuant to 42 U.S.C. § 1983 for a conspiracy to violate the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment)."  (ECF No. 47, Am. Compl. ¶¶ 112-13.)  Thus, the primary question the Court must again answer in deciding Defendants' motions to dismiss is whether the Amended Complaint sufficiently pleads that Defendant NYC DOE provided inadequate pre- and post- deprivation procedural due process required by the Constitution and, should be enjoined and restrained by this Court from withholding pay or terminating pay for employees who failed to comply with the Vaccination Mandate. (*See* Am. Compl. ¶¶ 272-442.)

A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process.  *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Pre-deprivation

processes "need not be elaborate," and "the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond." *See O'Connor*, 426 F.3d at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

For the reasons below, the Court dismisses the Plaintiffs' allegations that they were not provided constitutionally sufficient procedural due process by NYC DOE.

### a. Law of the Case Doctrine

Defendants argue that the law of the case doctrine precludes re-litigation of Plaintiffs' procedural due process claims, in light of the Court's multiple orders denying Plaintiffs' motions for preliminary injunction.  (ECF No. 116, DOE Mot. to Dismiss Mem. at 6-11).  The law of the case doctrine holds that a court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)).

With respect to applying the law as determined in this Court's preliminary injunction decisions prior to the current motions to dismiss, the Court notes that the "preliminary determination of likelihood of success on the merits in a ruling

on a motion for preliminary injunction is ordinarily tentative[.]" *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). The Court acknowledges that "[a] party . . . is not required to prove [their] case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted).

Thus, the Court need not decide here whether the law of the case doctrine applies to *prevent or compel* this Court's reconsideration of the factual and legal issues discussed in its November 24, 2021 and February 12, 2022 Orders denying Plaintiffs' motions for a preliminary injunction on the same claims. *Cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (the law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decision prior to final judgment" (quoting V*irgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))).

For the reasons set forth below, however, the Court determines that the factual findings and legal analysis in the Court's November 21, 2021 and February 11, 2022 Orders may be

**JA-1896**

useful in considering the Defendants' instant motions to dismiss.

      **b. Plaintiffs' Procedural Due Process Claim**

      Plaintiffs filed the Amended Complaint after their First Motion for Preliminary Injunction and the Court's November 24, 2021 Order denying the Plaintiffs' First Motion, and before Plaintiff's Second Motion for Preliminary Injunction and February 11, 2022 Order denying the Plaintiffs' Second Motion. Plaintiffs' allegations in their Amended Complaint and in their opposition to the Defendants' motions to dismiss are duplicative of the identical issues before the Court in their two motions for a preliminary injunction. *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) ("The law of the case doctrine, although not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons, including, *inter alia*, the need to correct a clear error or prevent manifest injustice.") (internal quotation marks omitted).

      Furthermore, because Plaintiffs sought both a prohibitory and mandatory injunction in their First and Second Motions for a Preliminary Injunction, the Court previously reviewed the merits of Plaintiffs' legal arguments under the higher pleading standard and found twice that Plaintiffs had failed to demonstrate a "clear" or "substantial" likelihood of

**JA-1897**

success on the merits of their procedural due process claims, rather than merely a likelihood of success.  (*See* ECF Nos. 33, Nov. 24, 2021 Order at 14; 89, Feb. 11, 2022 Order at 12.)  *See also Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.")

Accordingly, having reviewed at length the Plaintiffs' procedural due process allegations in the Amended Complaint and as articulated in the Plaintiffs' submissions, the Court determines that the legal analysis in the November 24, 2021 and February 12, 2022 Orders denying a preliminary injunction addresses most of the issues presented by Defendants' motions to dismiss, specifically the sufficiency of Plaintiffs' allegations.  Barring "an intervening change in law" or "availability of new evidence," discussed further below, the Court will incorporate its analysis to find *on the merits* that Plaintiffs' Amended Complaint fails to state viable claims

because: (1) the COH Order was a lawful condition of employment, and (2) the Plaintiffs were adequately notified of the pre- and post-deprivation processes to challenge the pending deprivation of Plaintiffs' continued employment and pay.  The facts alleged in the Amended Complaint establish that the pre- and post-deprivation procedures were constitutionally adequate to satisfy Due Process.  *Johnson*, 564 F.3d at 99-100.

### c. No New Evidence

The Court notes that it considered the Amended Complaint and its exhibits when making its ruling on the Plaintiffs' Second Motion for Preliminary Injunction on the same issues.  (ECF No. 76-12, Second Motion for Preliminary Injunction, Ex. F, Amended Complaint.)  *See Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 725 n. 2 (S.D.N.Y. 2019) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence.").  As briefly discussed *supra*, any evidence presented and incorporated in Plaintiffs' Amended Complaint did not, and still does not, alter the Court's considerations when analyzing the procedural due process claims in the Plaintiffs' Second Motion for Preliminary Injunction and the issues in the sufficiency of Plaintiffs' allegations in considering Defendants' motions to dismiss.  The Amended Complaint's exhibits included the full

CBAs of Union Defendants, the Impact Arbitration Award, the Declaration of Impasse, and the PERB appointment. (*See* ECF No. 47-1-47-14, Am. Compl., Exs. A to N.)

With their Second Motion for Preliminary Injunction, the Plaintiffs submitted more declarations from Plaintiffs and termination notices along with the Amended Complaint, and the Court found that, "Plaintiffs have not submitted any new or supplemental evidence in support of their instant motion that compels the Court to conclude that any of the adequate and available processes have been withheld from the Plaintiffs." (ECF No. 89, Feb. 11, 2022 Order at 16.)   The Court again found that the Plaintiffs did not, because they could not, demonstrate a "clear" or "substantial" likelihood of success on the merits for their procedural due process claims. (*Id.* at 12.)

Here, the Plaintiffs added new exhibits in their opposition motion to Defendants' motions to dismiss, which were not attached or referred to in the Plaintiffs' Amended Complaint.[13] (*See* ECF No. 125-125-7, Graff Aff. and Exs. A to G.)   Courts in this Circuit have made clear that a plaintiff may not bolster a deficient complaint through extrinsic

---

[13] Plaintiffs' opposition memorandum included an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 125) and six copies of various appeal decisions and copies of notifications from the NYC DOE terminating employees. (ECF No. 125-1-125-7, Ex. A, Arbitrator Scheinman Decision; Ex. B, Arbitrator Peak Decision; Ex. C, Arbitrator McCray Decision; Ex. D, Arbitrator Grey Decision; Ex. E, Arbitrator Reilly Decision; Ex. F, Arbitrator Torrey Decision; Ex. G, Notice of Determinations.)

**JA-1900**

documents submitted in opposition to a defendant's motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); *S B ICE, LLC v. MGN, LLC*, No. 08-CV-3164, 2008 WL 4682152, at *1 n.1 (S.D.N.Y. Oct. 20, 2008) (considering only the complaint, exhibits attached to the complaint, and documents integral to the complaint). If, however, the extrinsic evidence is attached to, incorporated in, or integral to the complaint, it may be considered on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding that pleadings are not limited to the four corners of a complaint but can include "'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'")

The Court finds that Plaintiffs' new exhibits are either not integral to the Amended Complaint's allegations or have previously been considered by the Court when denying the Plaintiffs' motions for preliminary injunction. *Cf. Chambers*, 282 F.3d at 153 ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.")(citation omitted). The factual record, therefore, remains unchanged in

any relevant manner from the time of the filing of the Amended
Complaint and the Court's February 11, 2022 Order denying the
Plaintiffs' Second Motion for Preliminary Injunction.
Considering the sufficiency of the Amended Complaint's factual
allegations, the Court finds that Plaintiffs fail to state a
claim because they allege facts showing that they were afforded
due process prior to the suspension and termination of their
employment by DOE.  Thus, Plaintiffs' Amended Complaint fails to
state claims for violations of Plaintiffs' Due Process Rights.

### d. Intervening Law

Third, there has been no change in intervening law
since the Court's November 24, 2021 and February 11, 2022 Orders
finding that Plaintiffs' procedural due process rights were not
violated, despite a substantial amount of litigation concerning
the New York City's Vaccination Mandate.[14]   *See, e.g., Marciano*

---

[14] The Court's procedural due process findings are not based on the process
required by state or municipal statutes.  Moreover, there has not been a
substantial change in intervening law concerning this Court's finding that
the Vaccination Mandate was a condition of employment.  *See Andre-Rodney v.
Hochul*, No. 21-cv-1053 (BKS) (CFH), 2022 WL 3027094 (N.D.N.Y. Aug. 1, 2022)
(vaccine was condition of employment for healthcare workers); *D'Cunha v.
Northwell Health Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520 (E.D.N.Y. Feb.
28, 2023) (same); *Conmey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548
(S.D.N.Y. Aug. 11, 2022) (finding vaccination to be condition of employment
for porter); *Kane v. de Blasio,* No. 21-CV-7863 (NRB), 2022 WL 3701183
(S.D.N.Y. Aug. 26, 2022) (vaccine was condition of employment); *Marciano*, 589
F. Supp. 3d at 436 (same).  Nearly all other New York state courts to address
the issue have found that the Vaccination Mandate was a condition of
employment.  *Compare Garvey v. City of New York*, 77 Misc. 3d 585 (N.Y. Sup.
Ct., Richmond Cnty., Oct. 24, 2022) (finding mandate was not a condition of
employment), *with Clarke v. Bd. of Educ. of City Sch.*, Index No. 160787/21,
2023 WL 2124546 (N.Y. App. Div. 1st Dep't, Feb. 21, 2023) (finding mandate
was a condition of employment); *Ansbro v. Nigro*, No. 531749/2021 (N.Y. Sup.
Ct. Kings Cnty. Sep. 21, 2022) (same); *N.Y.C. Mun. Labor Comm. v. City of
N.Y.*, 2022 NY Slip Op. 22121 (N. Y. Sup. Ct. N.Y. Cnty. Apr. 21, 2022)

*v. de Blasio*, 589 F. Supp. 3d 423, 436 (E.D.N.Y. 2022)
(plaintiff received constitutionally sufficient minimum process
for New York City Police Department (NYPD) vaccine policy);
*Kane v. de Blasio*, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *12
(S.D.N.Y. Aug. 26, 2022) (constitutionally sufficient minimum
process was provided for DOE workers); *cf. Donohue v. Hochul*,
No. 21-CV-8463 (JPO), 2022 WL 673636, at *7-9 (S.D.N.Y. Mar. 7,
2022) (public-school mask mandate did not implicate procedural
due process concerns); *Commey v. Adams*, No. 22-CV-0018 (RA),
2022 WL 3286548, at *6 (S.D.N.Y. Aug. 11, 2022) (no procedural
due process concerns because mandate was legislative in nature);
*Collins v. City Univ. of New York*, No. 21-CV-9544 (NRB), 2023 WL
1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (same); *Mongielo v.
Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *17-18 (W.D.N.Y.
Mar. 1, 2023) (same).

Accordingly, the Court reaches the same conclusions
about Plaintiffs' procedural due process claims as alleged in
their Amended Complaint, and finds that Defendants provided

_____

(same); *O'Reilly v. Bd. of Educ. of City Sch. Dist. of City of New York*, No.
16104/21, 2023 WL 2124731, at *1 (N.Y. 1st Dep't, Feb. 21, 2023) (same).
Plaintiffs also argued in a supplemental letter that the Court should
consider an Opinion and Award issued by the Scheinman Defendants in June
2021, filed as an exhibit in a state court case.  (ECF 133, Pls. Supp.
Letter.)  To the extent the Plaintiffs try to assert that the June 2021
Arbitration Opinion and Award or the ongoing state court case are
"intervening law," as discussed extensively below, the Court bases its
procedural due process finding on constitutional standards, not on state or
municipal standards.  Furthermore, given that the June 2021 Arbitration
Opinion and Award does not apply in any way to the Plaintiffs in this case,
the Court finds it unpersuasive.  (ECF No. 135, DOE Supp. Letter at 1-2.)

**JA-1903**

sufficient notice and opportunity to Plaintiffs to satisfy
procedural due process regarding the condition of their
employment that they receive the COVID-19 vaccination.

III.  **Plaintiffs' Opposition to the Motions to Dismiss**

In opposition to the Defendants' motions to dismiss
all of their claims, the Plaintiffs no longer contend that the
Arbitration Awards and CBAs provided inadequate pre- and post-
deprivation procedures, as Plaintiffs had already conceded this
issue in their Second Motion for Preliminary Injunction.  (*See
generally* ECF Nos. 126, Pl. Opp'n Mem.; 89, Feb. 11, 2022 Order
at 19.)  Nor do Plaintiffs dispute that the Vaccination Mandate
itself was a lawful condition of employment, as they had also
conceded this issue in their Second Motion for Preliminary
Injunction.  (*See generally* ECF Nos. 126, Pl. Opp'n Mem.; 89,
Feb. 11, 2022 Order at 21-22. )

Rather than defend the sufficiency of their
allegations, Plaintiffs' opposition memorandum asserts that "if"
the UFT, CSA, and DC-37 Impact Arbitration Awards and Agreements
are invalid under state statutory and case law because
Defendants lacked authority to arbitrate and agree to the Impact
Arbitration Awards, "the pre- and post- deprivation process[es]
were also invalid and therefore, the Court's prior rulings must
be revisited."  (ECF No. 126, Pl. Opp'n Mem. at 9-10.)  The
Plaintiffs specifically assert in their opposition memorandum

Case 23-655, Document 77, 06/05/2023, 3525011, Page264 of 279

that the Union Defendants and DOE lacked authority to enter into arbitration with the Plaintiffs' unions to resolve their impasse, and that the arbitration awards violated New York Civil Service Law § 209 and was contrary to the New York State Court of Appeals case, *Board of Education of City of School Dist. v. New York State Public Employment Relations Bd.*, 75 N.Y.2d 660, 671 (1990).

In addition, despite Plaintiffs' concession that the Vaccination Mandate was a condition of employment, Plaintiffs also contend in their opposition memorandum that the NYC DOE violated New York Civil Service Law § 201.4 and argue again that the Court must also revisit its prior finding that the Vaccination Mandate was a condition of employment.  (ECF No. 126, Pl. Opp'n Mem. at 9-10.)  Thus, Plaintiffs contend that due to the "illegal, improper" Impact Arbitration Awards and condition of employment, "the Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges."  (ECF No. 126, Pls. Opp'n Mem. at 25.)  The Court, however, has already twice found, and finds again, that the Plaintiffs' constitutional rights to be notified of, and challenge the implementation of the Vaccination Mandate under the Due Process Clause were satisfied

**JA-1905**

by the Defendants' Arbitration Awards and other pre- and post-deprivation processes.

Moreover, although the Court previously has expressed doubt that the Plaintiffs had standing to challenge the terms of the Impact Arbitration Awards negotiated by their unions (ECF No. 33, Nov. 24, 2021 Order at 15)(*citing Katir v. Columbia Univ.* 15 F.3d 23, 24-25 (2d Cir. 1994)), the Court need not resolve the Plaintiffs' Due Process claim based on Plaintiffs' challenge to the legality of the Impact Arbitration Awards, because the correct inquiry is whether available state procedures, state laws and contract rights, satisfy federal constitutional requirements. Specifically, the Court defined the applicable federal constitutional analysis in its February 11, 2022 Order as follows:

> The Court must determine not whether state procedural law was correctly followed or applied, but rather, whether the processes provided by state procedures, contract rights, or other available processes satisfy constitutional requirements. To determine whether available processes are adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (emphasis added); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d

JA-1906

> 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that
> the State may have specified its own
> procedures that it may deem adequate for
> determining the preconditions to adverse
> official action . . . does not settle what
> protection the federal due process clause
> requires.") (internal quotation marks and
> citation omitted). As before, the Court finds
> that the processes available to Plaintiffs,
> including but not limited to statutes and
> contractual procedures, are constitutionally
> sufficient.

(*Id.* at 14.)

The Court's prior legal conclusion quoted above remains valid. Having found that the Impact Arbitration Awards and other procedures and remedies were constitutionally sufficient, the Court need not and will not determine whether the Impact Arbitration Awards are valid under state statutory and state case law. Indeed, the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant's conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant's failure to comply with state law. *See Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019) ("violation of state law does not *per se* result in a violation of the Due Process Clause").

Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See*

33

*McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations."); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987) ("State procedural requirements do not establish federal constitutional rights.  At most, any violation of state procedural requirements would create liability under state law[.]" (citations omitted)).

        In their Amended Complaint, the Plaintiffs do not allege any facts plausibly supporting their allegations of "infirmities in the [Awards]," or violation of their Due Process Rights.  (ECF No. 126, Pls. Opp'n Mem. at 8, 17, 23.)  *See also Bell Atl. Corp.*, 550 U.S. 544, 557 (2007).  When considering a Rule 12(b)(6) motion, courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  Here, the allegations in the Amended Complaint establish that the Awards and the CBAs provided for expedited review and appeal processes for exemptions and accommodations, providing an opportunity to Plaintiffs to be heard in challenging the deprivation of their pay.  *See Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991) (finding that an  employee's right to be

34

provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required."). Having determined that the Plaintiffs were afforded constitutionally adequate pre- and post- deprivation due process, the Court grants Defendants' motions to dismiss Plaintiffs' due process claims.

## IV.   Other Causes of Action

### a. § 1983 Conspiracy

Having dismissed the Plaintiffs' claim that Defendants violated their due process rights, the Court also finds that Plaintiffs' allegations are insufficient to state a plausible conspiracy claim under § 1983 against all Defendants. "To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'" *Barnes v. Abdullah*, No. 11-CV-8168 (RA), 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)); *Sibiski v. Cuomo*, No. 08-CV-3376 (SJF)(ARL), 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed."

*Poole v. New York*, No. 11-CV-921 (JFB)(AKT), 2012 WL 727206, at
\*6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F.
App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only
conclusory, vague, or general allegations that the defendants
have engaged in a conspiracy to deprive the plaintiff of his
constitutional rights are properly dismissed; diffuse and
expansive allegations are insufficient, unless amplified by
specific instances of misconduct." (alteration in original)
(internal quotation marks omitted)).  Plaintiff "must allege . .
. overt acts which defendants engaged in which were reasonably
related to the promotion of the alleged conspiracy." *Elmasri v.
England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal
quotation marks omitted).

Plaintiffs allegations fail to state a § 1983
conspiracy claim for several reasons.  First, as previously
determined, Plaintiffs have not sufficiently alleged an
underlying constitutional violation in their Amended Complaint.
Therefore, Plaintiffs' § 1983 conspiracy claim fails as a matter
of law.  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d
Cir. 1995) (a § 1983 conspiracy claim "will stand only insofar
as the plaintiff can prove the *sine qua non* of a § 1983 action:
the violation of a federal right"); *AK Tournament Play, Inc. v.
Town of Wallkill*, No. 09-CV-10579 (LAP), 2011 WL 197216, at \*4
(S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims

36

Case 23-655, Document 77, 06/05/2023, 3525011, Page270 of 279

against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Second, the Union Defendants and Scheinman Defendants are not state actors.  To state a § 1983 conspiracy claim against a private entity, "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).  The Supreme Court considers a private actor acting under the color of state law, when the private actor "is a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The Court finds that the allegations fail to plausibly allege that the Union Defendants and the DOE were acting in concert with a state actor to deny Plaintiffs' constitutional rights.  Instead, they were in inherently adversarial positions because "the Union . . . represent[ed] [city] employees, and thus must be considered to be an adversary of the [city] government." *McGovern v. Loc. 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen &*

**JA-1911**

*Helpers of Am., AFL--CIO*, 107 F. Supp. 2d 311, 317 (S.D.N.Y. 2000).

That the Plaintiffs were disappointed with the Union Defendants' representation does not establish a viable claim of § 1983 conspiracy, especially where the Amended Complaint lacks any factual allegations that the Defendants reached a "meeting of the minds" to violate Plaintiffs' constitutional rights. *Ciambriello*, 292 F.3d at 324 (dismissing claims against union premised on conduct fairly attributable to the state and § 1983 conspiracy because "the very proceeding in which [plaintiff] alleges that [the union] conspired with the County — the arbitration — placed [the union] and the County in adversarial positions"). Instead, because the Union Defendants and DOE were at an impasse, they engaged in the very arbitration that resulted in the challenged Impact Arbitration Awards. The Court also finds that Plaintiff has not alleged sufficient facts to establish that the Scheinman Defendants are state actors, who agreed with DOE and the Unions to deprive Plaintiffs of their Due Process rights, and therefore, Plaintiffs' § 1983 conspiracy claims fail.

Third, Plaintiffs do not proffer any nonconclusory facts regarding the nature of the conspiracy or the overt steps taken by any of the Defendants in furtherance of that conspiracy. Apart from "diffuse and expansive allegations" that

38

are not "amplified by specific instances of misconduct," *Krug*,

368 F. App'x at 270 (internal quotation marks omitted), the

Amended Complaint is bereft of any facts sufficient to give rise

to a plausible § 1983 conspiracy claim.  In fact, the repeated

references in the Amended Complaint merely refer to a conspiracy

based on Plaintiffs' vague and conclusory assertions that "[a]s

a result of the conspiracy between [all Defendants], the

[individual Plaintiff's] constitutional rights have been

violated."  (ECF No. 47, Am. Compl. ¶¶ 113, 172-75, 183-86, 206-

17.)  Plaintiffs' bald allegations, however, do not give rise to

a plausible inference that Defendants acted in concert to

violate Plaintiffs' constitutional rights when, to the contrary,

the DOE and Union Defendants entered into arbitrations that

resulted in agreements to provide constitutionally required pre-

and post- deprivation procedures for the termination of

employees who failed to comply with the Vaccination Mandate.

The speculative allegations in Plaintiffs' Amended Complaint

"constitute the type of vague, conclusory, and general

allegations that, standing alone, are routinely found lacking

under Rule 12(b)(6)."  *Orr ex rel. Orr v. Miller Place Union

Free Sch. Dist.*, No. 07-CV-787 (DRH)(AKT), 2008 WL 2716787, at

*5 (E.D.N.Y. July 9, 2008) (internal quotation marks omitted);

*Rodriguez v. City of New York*, No. 08-CV-4173 (RRM)(RLM), 2012

WL 1059415, at *13 (E.D.N.Y. Mar. 28, 2012) (dismissing

**JA-1913**

plaintiff's § 1983 conspiracy claim on ground that claim was based on "vague and broad references" and "sheer speculation").

Accordingly, the Plaintiffs' § 1983 conspiracy claims against the Defendants are dismissed for failure to state a claim.

### b. Class Claim

Because Plaintiffs' claims fail to state a claim, their class allegations also fail. *Cf. Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (noting that where court dismissed a claim under Rule 12(c), motion to strike class allegations could be granted as to that claim.)

### V. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss claims without leave to amend where the proposed amendments would be futile. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (*citing Foman v. Davis*, 381 U.S. 178, 182 (1962)). An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule

12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).  Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies.  *Ruotolo*, 514 F.3d at 191 (citing *Foman*, 381 U.S. at 182); *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

Here, after extensive briefing, evidentiary submissions, and a show cause hearing, the Court allowed Plaintiffs an opportunity to amend their complaint.  (ECF No. 33, Nov. 24, 2021 Order; ECF No. 47, Am. Compl.)   Despite the Court's detailed analysis of Plaintiffs' claims in its November 24, 2021 Order, Plaintiffs have again failed to allege facts supporting their claims.  Under these circumstances, and because further amendments to the complaint would not cure the deficiencies discussed in this opinion, any amendment would be futile.  Plaintiffs' complaint is, therefore, dismissed with prejudice.  *See, e.g., Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (holding that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the

41

JA-1915

complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile.").

**CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss are GRANTED in their entirety and leave to amend is DENIED. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated:    March 30, 2023
          Brooklyn, New York

_____
Hon. Kiyo A. Matsumoto

United States District Judge

JA-1916

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Nicole BROECKER, et al,

                          Plaintiffs,                    JUDGMENT

          v.                                  21-CV-6387(KAM)(LRM)

New York City Department of Education, et al,

                          Defendants.
------------------------------------------------------------X
      A Memorandum and Order of Honorable Kiyo A. Matsumoto, United States District

Judge, having been filed on March 30, 2023, granting Defendants' Motions to Dismiss in their

entirety; and denying leave to amend; it is

      ORDERED and ADJUDGED that Defendants' Motions to Dismiss are granted in their

entirety; that Defendants' claims are dismissed with prejudice; and that leave to amend is denied.

Dated: Brooklyn, New York                    Brenna B. Mahoney
       March 31, 2023                      Clerk of Court

                                      By:    */s/Jalitza Poveda*
                                           Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NICOLE BROECKER, MICHELLE MARTINO,
GINA PORCELLO, AMOURA BRYAN, RENA
GELLMAN, FOTINA LAMBOS, KERRY BEN-
JACOB, EKATERINA UDINA, ANDREA
TICHIO, MARIANNA CIACCA-LISS, ANITA
QUASH, KELLY DIXON, FELICIA HAGAN,
MARITZA ROMERO, MARIA RUSCELLI,
BETZIADA CRUZ, FRANCINE TRAPANI,
JEANNINE LAM, JESSICA NARCISO,
BRIANNA PEREZ, NICOLETTA MASULLO,
ANASTASIA CHRISTOPOULOS, FAYE
KOTZER, BENEDICT LOPARRINO, YADITZA
RODRIGUEZ, RAFAEL ADRIAN TORO,
SERINA MENDEZ, DINA HUSSIEN,
HERENDYRA PEREYRA, ROSA ABREU, JOAN
GIAMMARINO, ANDREA JACKSON, MARIA
KLAPAKIS, STELLA PORTO, TONIANN
MIRAGLIA, ROSEANNA SILVESTRI-
INCANTALUPO, JULIA A. MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF,
DIANE PAGEN, LYNN PEPE, STEPHANIE
EDMONDS, YVONNE COSTELLO, DEBBY
HARTZ, SORAYA SANCHEZ, MONIQUE
MOORE, ANGELA VELEZ, SALLY MUSSAFI,
JESSICA NICCHIO, DORCA GENAO, RACHEL
MANISCALCO, JAMES HOFFMAN,
SHARLAYNE JACOBS, CRYSTAL SALAS,
FRANCES DIPROSSIMO, CAROLA
MARTINEZ-VAN BOKKEM, AYSE USTARES,
ELIZABETH FIGUEROA, DIANNE BAKER-
PACIUS, NICOLE MOORE, ELIZABETH
PLACENCIO, DEBBIE BERTRAM, KIMBERLI
MADDEN, FRAN SCHMITTER, VICTORIA
RUSSO, PAUL CIFARELLI, DANIELLE HEAL,
SARA COOMBS-MORENO, LISA SIMO, TAMI
BENEDUCE, ZABDIEL VALERA, NATHALIE
CHARLES, JANELLE LOTITO, JEANEAN
SANCHEZ, MARIE MOSLEY, TARA
PALLADINO, DANIELLE MCGUIRE, JULIA
HARDING, LEAH KUKLA, STEPHANIE
FRANZESE, JULIA BALASIS-MARING, BETH
SCHIANO, MEAGAN VELEZ, JENNIFER
ZACCARIELLO, ELENI GERASIMOU, LAURA

INDEX NO. 21-cv-06387

NOTICE OF APPEAL

SALAMONE, AUBREY JOERGENS, DEIDRA
STATUTO, LORRAINE MASCIARELLI,
HENRIETTA SHAYA, AURA MOODY,
ELIZABETH LOIACONO, RICHARD JOSEPH,
on behalf of themselves and all other similarly
situated employees of the New York City
Department of Education,

                                             Plaintiffs,


                     -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, MEISHA PORTER, in her official
and individual capacities, UNITED FEDERATION
OF TEACHERS, LOCAL 2, AMERICAN
FEDERATION OF TEACHERS, AFL-CIO,
MICHAEL MULGREW, in his official and
individual capacities, COUNCIL OF
SUPERVISORS AND ADMINISTRATORS,
MARK CANNIZZARO, in his official and
individual capacities, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, HENRY GARRIDO, in his
official and individual capacities, DISTRICT
COUNCIL 37, AFSCME AFL-CIO, LOCAL 372,
SHAUN D. FRANCOIS I, in his official and
individual capacities, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 1251, FRANCINE
FRANCIS, in her official and individual capacities,
MARTIN F. SCHEINMAN, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES,
SCHEINMAN ARBITRATION AND
MEDIATION SERVICES, LLC, JOHN DOE #1-10,
in their official and individual capacities; and JANE
DOE #1-10 in their official and individual capacities,
                                             Defendants.
-------------------------------------------------------------------X

      **PLEASE TAKE NOTICE** that all of the Plaintiffs hereby appeal to the United States

Court of Appeals for the Second Circuit from the *Judgment* entered in this action on March 31,

2023, following the *Memorandum & Order* of the Honorable Kiyo A. Matsumoto, dated March

30, 2023 and entered March 30, 2023, granting the Defendants' Motions to Dismiss in their entirety

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and from each and every part

of said judgment.

JA-1919

**PLEASE TAKE FURTHER NOTICE** that all of the Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the *Memorandum And Order* of the Honorable Kiyo A. Matsumoto, dated November 24, 2021 and entered November 24, 2021, denying the Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction and from each and every part of said Memorandum and Order.

**PLEASE TAKE FINAL NOTICE** that all of the Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the *Memorandum & Order* of the Honorable Kiyo A. Matsumoto, dated February 11, 2022 and entered February 11, 2022, denying the Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction and from each and every part of said Memorandum and Order.

Dated:      Garden City, New York
             April 20, 2023

                       THE SCHER LAW FIRM, LLP

By:     *Austin Graff*
              AUSTIN GRAFF
              *Attorneys for the Plaintiffs*
              600 Old Country Road, Suite 440
              Garden City, New York 11530
              (516) 746-5040