# 23-655



In the

# United States Court of Appeals

## For the Second Circuit

NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA BRYAN, RENA GELLMAN, FONTINA LAMBOS, KERRY BEN-JACOB, EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA NARCISO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO,

*Plaintiffs-Appellants,*

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040
agraff@scherlawfirm.com

APPELLATE INNOVATIONS
(914) 948-2240

19415

_____

ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS, CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANE PAGEN, LYNN PEPE, STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ, SORAYA SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY MUSSAFI, JESSICA NICCHIO, DORCA GENAO, RACHEL MANISCALCO, JAMES HOFFMAN, SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES DIPROSSIMO, CAROLA MARTINEZ-VANBOKKEM, AYSE USTARES, ELIZABETH FIGUEROA, DIANNE BAKER-PACIUS, NICOLE MOORE, ELIZABETH PLACENCIO, DEBBIE BERTRAM, KIMBERLI MADDEN, FRAN SCHMITTER, VICTORIA RUSSO, PAUL CIFARELLI, DANIELLE HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI BENEDUCE, ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO, JEANEAN SANCHEZ, MARIE MOSLEY, TARA PALLADINO, DANIELLE MCGUIRE, JULIA HARDING, LEAH KUKLA, STEPHANIE FRANZESE, JULIA BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE, AURA MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO, LORRAINE MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU and HENRIETTA SHAYA,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER, UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, MICHAEL MULGREW, COUNCIL OF SUPERVISORS AND ADMINISTRATORS, MARK CANNIZZARO, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, SHAUN D. FRANCOIS, I, FRANCINE FRANCIS, MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees.*

_____

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................i

TABLE OF AUTHORITIES ........................................................iv

JURISDICTIONAL STATEMENT ...........................................1

ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE.................................................3

STATEMENT OF THE FACTS ...............................................9

    A.     NYCDOE's Public Employee Unions And The
          Implementation Of The Vaccine Mandate Order ...............10

     1.    The UFT Arbitration Award ................................................10

     2.    The CSA Arbitration Award ................................................12

     3.    DC37's Agreement With NYCDOE....................................14

    B.     NYCDOE Suspended The Appellants Without Pay
          For Not Taking The COVID-19 Vaccine...............................15

    C.     NYCDOE Terminated Appellants' Employment For
          Not Taking The COVID-19 Vaccine ....................................16

SUMMARY OF ARGUMENT ...............................................18

ARGUMENT .........................................................................23

POINT I.     STANDARD OF REVIEW OF A MOTION TO DISMISS ............23

POINT II.    THE NYCDOE CANNOT RESOLVE AN IMPASSE IN
               NEGOTIATIONS WITH ITS PUBLIC EMPLOYEES'
               UNIONS THROUGH ARBITRATION ............................................23

POINT III.    THE VACCINE MANDATE WAS NOT A CONDITION OF EMPLOYMENT BECAUSE THE UFT AND THE CSA DID NOT AGREE TO THE CONDITION IN ACCORDANCE WITH THE N.Y. CIVIL SERVICE LAW ..........................................30

A.    N.Y. Education Law § 2572.9. Requires A Vote Of The Board Of Education To Impose A New Job Qualification ........................................................................33

B.    N.Y. Civil Service Law § 201.4. Defines Terms And Conditions Of Employment And Makes Changes To Terms And Conditions Of Employment A Mandatory Subject Of Negotiation ....................................35

POINT IV.    THE APPELLANTS STATED A CLAIM FOR DECLATORY JUDGMENT IN THEIR FIRST THROUGH FIFTH CAUSES OF ACTION ........................................................................39

A.    Justiciable Controversy Exists ............................................40

B.    The Appellants Do Not Rely Upon The Declaratory Judgment Act For Subject Matter Jurisdiction....................43

POINT V.    THE NYCDOE DID NOT PROVIDE THE APPELLANTS WITH CONSTITUTIONALLY SUFFICENT DUE PROCESS BEFORE IT PLACED THE APPELLANTS ON LEAVE WITHOUT PAY AND/OR TERMINATED THEM FROM EMPLOYMENT .................................................................47

A.    Appellants' Constitutionally Protected Property Interest In Their Pay Was Violated By The NYCDOE ........................................................................51

B.    Appellants' Constitutionally Protected Due Process Rights Was Violated By The NYCDOE.............................54

POINT VI.    THE APPELLANTS HAVE STATED A CAUSE OF ACTION FOR 42 U.S.C. § 1983 CONSPIRACY ..............................57

A.    Legal Basis For 42 U.S.C. § 1983 Conspiracy ...................58

1. Personal Involvement ........................................................59

2. State Actor ...................................................................60

B. Scheinman Respondents' Conflict Of Interest And Profit Motive To Violate The Appellants' Constitutional Rights ..........................................61

C. UFT Respondents Conspiracy To Violate The Appellants' Constitutional Rights ........................64

D. The CSA Respondents Conspiracy To Violate The Appellants' Constitutional Rights ........................67

E. The DC37 Respondents Conspiracy To Violate The Appellants' Constitutional Rights ........................68

POINT VII. THE APPELLANTS' CLASS CLAIMS SHOULD BE REINSTATED ....................................................71

POINT VIII.  IF THE AMENDED COMPLAINT WAS INSUFFICENT TO SURVIVE THE MOTIONS TO DISMISS, THE DISTRICT COURT SHOULD HAVE GRANTED LEAVE TO AMEND .........73

POINT IX. IF THIS COURT REVERSES THE DISTRICT COURT, REINSTATES THE ACTION, AND REMANDS THE MATTER TO THE DISTRICT COURT, THIS COURT SHOULD DIRECT THAT A DIFFERENT JUDGE BE ASSIGNED .....................................................74

CONCLUSION ....................................................................78

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS.................................................79

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) ...................... 46, 47

*Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d 964, 966-967 (Sup. Ct. 1976) ............................................................................... passim

*Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d 660, 671 (1990) ............................... passim

*Broecker v NY City Dept. of Educ.*, 2023 US Dist LEXIS 55541 (E.D.N.Y. Mar. 30, 2023) ...................................................................... 1, 4

*Broecker v. NY City Dept. of Educ.*, 573 F.Supp.3d 878 (E.D.N.Y. 2021) ................................................................................... 4

*Broecker v. NY City Dept. of Educ.*, 585 F.Supp.3d 299 (E.D.N.Y. 2022) ................................................................................... 4

*Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244-245 (2d Cir 2012) ...................................................................................... 50

*City of Rochester*, 7 PERB P3060 (1974) ............................................................. 79

*Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012) ........................................ 80

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ........................................................ 71

*Evans v Newman*, 71 A.D.2d 240, 243 (3d Dept 1979) ........................................ 41

*In the Matter of Suffolk County Court Employees Association Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513 (2023) .................................................................................... 42, 61

*In the Matter of Teamsters Local 445 v. Town of Monroe*, __ N.Y.__, 2023 NY Slip Op 02754 (May 23, 2023) .......................................... 32, 34

*Jackson v. Roslyn Bd. of Educ.*, 652 F.Supp.2d 332, 343 (E.D.N.Y. 2009) ........................................................ 63

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir 2021) ........................................................ 27

*Magtoles v. United Staffing Registry, Inc.*, 2021 US Dist LEXIS 248070 (E.D.N.Y. Dec. 30, 2021) .................................. 86, 87

*Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019) ........................................................ 70

*Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016) ...................... passim

*Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999) ........................................................ passim

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977) .................................... 68

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) ........................................................ 52

*Norton v. Town of Islip*, 678 F.App'x 17, 22 (2d Cir 2017) .................................... 51

*Palermo v. Eisenberg*, 81 Misc.2d 1014, 1015 (Sup. Ct., 1975) .......................... 63

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir 1999) ...................................... 67

*Pescatore v. PAN AM*, 97 F.3d 1, 21 (2d Cir 1996) .................................................. 85

*S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988) ........................................................ 64

*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 44 (2d Cir 2001) ........................................................ passim

*Shaul v. Cherry Val.-Springfield Cent. Sch. Dist.*, 218 F.Supp.2d 266, 271 (N.D.N.Y. 2002) .................................................. 63

*Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902
F.2d 208, 211 (2d Cir 1990) ................................................................... 63

*The New York City Municipal Labor Committee v. The City of
New York*, 15 OCB2d 34 (2022) ..................................................... 42, 62

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019).................................. passim

*Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074
(1973) ...................................................................................................... 79

*Union Springs Cent. School Sch. Teachers' Assn.*, 6 PERB P3074
(1973) ...................................................................................................... 17

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788,
793 (2d Cir. 2019) *cert. denied*, *Waronker v Hempstead Union
Free Sch. Dist.*, 140 S.Ct 2669 (2020) ................................................... 59

**Statutes**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 2201(a) ............................................................................... 20

N.Y. Civil Service Law § 201.4. ............................................. 32, 35, 53

N.Y. Civil Service Law § 209.3(a)........................................................ 10

N.Y. Civil Service Law § 209.3(f) ................................................. passim

N.Y. Education Law § 2568 ................................................................... 30

N.Y. Education Law § 2572.9 ......................................................... 32, 34

N.Y. Education Law § 3001 ................................................................... 34

N.Y. Education Law § 913 ..................................................................... 30

## Other Authorities

https://advocatz.com/2022/03/10/martin-scheinman-and-the-covid-vaccine-mandate/ (visited May 9, 2023) .................................................. 8, 62

https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws (visited May 8, 2023) ............................................ 34

https://www.youtube.com/live/5xC1YlsQIpE?feature=share (visited May 31, 2023) ........................................................................... 65

## Rules

FRCP Rule 23(a) ..................................................................................... 72

## Regulations

8 N.Y.C.R.R § 80-2.4. ........................................................................... 34

N.Y.C. Administrative Code 12-306(a)(4) ............................................. 37

## JURISDICTIONAL STATEMENT

This is an appeal of the final judgment entered in the Eastern District of New York dismissing the Appellants' civil action that sought declaratory judgment relief, damages, and injunctive relief for violation of the Appellants' constitutional rights, including their due process rights and property rights to their pay. The Appellants asserted their claims pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act (28 U.S.C. § 2201(a)). The District Court had subject matter jurisdiction pursuant to 17 U.S.C. § 101 and 28 U.S.C. § 1331 (federal question).

The Clerk of the Eastern District of New York entered the District Court's Order on March 30, 2023 (Matsumoto, J.) (*Broecker v NY City Dept. of Educ.*, 2023 US Dist LEXIS 55541 (E.D.N.Y. Mar. 30, 2023)) (JA-1874-JA-1915) and entered the Clerk's Judgment on March 31, 2023 (*see,* JA-1916). The Appellants filed their Notice of Appeal on April 20, 2023 (*see,* JA-1917-JA-1919).

This Court has jurisdiction to hear the appeal since the appeal is from a final order granting the Respondents' Federal Rule of Civil Procedure ("FRCP") 12(b)(6) Motions to Dismiss to dismiss the Appellants' Amended Complaint. *See,* 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

ISSUE #1:  Can the New York City Department of Education ("NYCDOE") resolve an impasse in collective bargaining negotiations with its public employees' unions through binding arbitration?

ISSUE #2:  Did the NYCDOE create a condition of employment when Martin Scheinman ("Scheinman") issued his arbitration awards resolving the impasse in negotiations between the NYCDOE and the Unified Federation of Teachers ("UFT") and the NYCDOE and the Council of Supervisors and Administrators ("CSA")?

ISSUE #3:  Did the Appellants state a claim for declaratory judgment with respect to their First through Fifth Causes of Action in the Amended Complaint seeking declarations regarding violations of the Appellants' constitutional and statutory rights?

ISSUE #4:  Did the NYCDOE provide the Appellants with the constitutionally sufficient minimum procedural due process, when the process provided

to the Appellants was the result of illegal arbitration awards issued by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f)?

ISSUE #5:   Did the Appellants state a cause of action for Section 1983 conspiracy?

ISSUE #6:   Should the Appellants' class claims be reinstated?

ISSUE #7:   Should the District Court have granted the Appellants leave to amend the Complaint to cure any deficiencies?

ISSUE #8:   If this Court reverses the District Court's decision to dismiss the Appellants' Action, and remands the case to the District Court, should this Court direct that the case be reassigned to a different judge on remand?

## STATEMENT OF THE CASE

The Appellants are appealing the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. dismissing this Action pursuant to FRCP Rule 12(b)(6). JA-1874-JA-1915.  (*Broecker v NY City Dept. of Educ.*, 2023 US Dist LEXIS 55541

(E.D.N.Y. 2023)).  In addition, the Appellants are appealing the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. denying the Appellants a preliminary injunction that sought to enjoin the NYCDOE from suspending the Appellants, from their employment without pay and without due process for not taking the COVID-19 vaccine. JA-815-JA-842 (*Broecker v. NY City Dept. of Educ.*, 573 F.Supp.3d 878 (E.D.N.Y. 2021)).  Finally, the Appellants are appealing the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. denying the Appellants a preliminary injunction that sought to enjoin the NYCDOE from terminating the Appellants from their employment with the NYCDOE without due process for not taking the COVID-19 vaccine. JA-1523-JA-1565 (*Broecker v. NY City Dept. of Educ.*, 585 F.Supp.3d 299 (E.D.N.Y. 2022)).

********

The Appellants are current and former employees of the NYCDOE who refused to take the COVID-19 vaccine after the promulgation by the New York City Commissioner of Health of the COVID-19 Vaccine Mandate Order ("Vaccine Mandate Order").  The Appellants are challenging the implementation of the Vaccine Mandate Order, arguing that the implementation of the Vaccine Mandate Order by the NYCDOE violated the Appellants' constitutional rights to due process (*Shaffer*

*v. Schenectady City Sch. Dist.*, 245 F.3d 41, 44 (2d Cir 2001)) and their property rights in their pay (*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019)).  In addition, the Appellants allege that there was a conspiracy by the Respondents to violate their constitutional rights.

The NYCDOE implemented the Vaccine Mandate Order only after the Respondent Martin Scheinman ("Scheinman") issued an "arbitration award" to resolve the impasse in negotiations over the impact of the Vaccine Mandate Order between the NYCDOE and the Unified Federation of Teachers ("UFT") ("UFT Arbitration Award").  JA-583-JA-601. Scheinman, the UFT, and the NYCDOE conspired to violate N.Y. Civil Service Law § 209.3(f), which requires impasses in negotiations between school districts and its public employees' unions to be resolved only through negotiations at the bargaining table.  As the New York Court of Appeals recognized, the New York State Legislature did not provide for any mechanism to resolve impasses in negotiations between school districts and its labor unions other than through further negotiations and agreement.  The UFT Arbitration Award provided the NYCDOE with cover to suspend without pay without due process and ultimately terminate members of the UFT without due process who did not comply with the Vaccine Mandate Order, in violation of the members' constitutional rights.

Once the UFT Arbitration Award was issued, one of the NYCDOE's other public employees union, the Council of Supervisors and Administrators ("CSA") conspired with the NYCDOE and Scheinman to resolve its impasse in negotiations over the implementation of the Vaccine Mandate Order. Scheinman issued the CSA Arbitration Award (JA-602-JA-616), in violation of N.Y. Civil Service Law § 209.3(f). The CSA Arbitration Award provided the NYCDOE with cover to suspend without pay and ultimately terminate members of the CSA who did not comply with the Vaccine Mandate Order without providing the non-complying members due process, in violation of the members' constitutional rights.

The UFT Arbitration Award and the CSA Arbitration Award not only created a process and procedure that purposefully and intentionally violated the Appellants' constitutional rights to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and violated their property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173), but Scheinman granted to himself and his companies the Respondents Scheinman Arbitration Mediation Service ("SAMS") and Scheinman Arbitration Mediation Service, LLC ("SAMS LLC") (collectively "Scheinman Respondents") the authority to be the sole appellate review for all denials of requests for medical or religious accommodations. Scheinman created a profit center for his own businesses in return for imposing the procedure by which the NYCDOE could suspend without

pay without due process and terminate non-complying employees without due process.

The NYCDOE's third public employee union, the Respondent District Council 37 ("DC37") entered into an agreement for the implementation of the Vaccine Mandate Order ("DC37 Agreement") (JA-617-JA-623), but it was never ratified by its members and it too provided the same procedures as the UFT Arbitration Award and the CSA Arbitration Award, granting to the NYCDOE the ability to suspend without pay without due process and terminate Appellants without due process who refused to comply with the Vaccine Mandate Order. The DC37 Agreement also granted the Scheinman Respondents the sole authority to hear appeals from denials of accommodation requests. The DC37 Agreement was executed by the Respondents Henry Garrido ("Garrido") and Shaun D. Francois I ("Francois"). JA-623. DC37 and the NYCDOE conspired to implement the Vaccine Mandate Order without obtaining approval from the DC37's members in a vote authorizing the amendment to the collective bargaining agreement.

Finally, it is important for the Court to know that Scheinman was not an independent neutral. Instead, Scheinman was a political and financial supporter of Mayor Bill DeBlasio ("DeBlasio"), the New York City Mayor who was a strong

proponent of the Vaccine Mandate Order. Scheinman raised money for DeBlasio in a fundraiser held in Scheinman's home. https://advocatz.com/2022/03/10/martin-scheinman-and-the-covid-vaccine-mandate/ (visited May 9, 2023). Scheinman directed that the procedures supported by DeBlasio and rejected by the UFT (JA-745-JA-759) be the process to penalize non-compliant NYCDOE employees, and in return profited off of the paradigm he created that resulted in the suspension without pay and termination of the Appellants without due process in violation of their constitutional rights. *See, Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44; *Tooly v. Schwaller*, 919 F.3d at 173.

This case is about how the NYCDOE and its unions ignored State law (N.Y. Civil Service Law § 209.3.(f)) and procedure (DC37 Agreement was not approved by DC37's membership) in an effort to force, impose, and break the will of the Appellants who did not comply with the Vaccine Mandate Order. The conspiracies between: (i) the NYCDOE, UFT, and Scheinman; (ii) the NYCDOE, the CSA, and Scheinman; and (iii) the NYCDOE and DC37, violated the Appellants' constitutional rights and the Appellants have been damaged as a result.

## STATEMENT OF THE FACTS

On August 24, 2021, the New York City Commissioner of Health issued the Vaccine Mandate Order requiring NYCDOE employees, contractors and others to obtain a COVID-19 vaccine. JA-779-JA-782.  The Vaccine Mandate Order required all NYCDOE staff to provide proof of vaccination no later than September 27, 2021. JA-780.

The Appellants are current or former employees of the NYCDOE who refused to comply with the Vaccine Mandate Order, and as a result, were suspended without pay without due process and many were ultimately terminated from their employment without due process with the NYCDOE.

The NYCDOE in collusion with the NYCDOE's public employee unions violated the Appellants' due process rights (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and property interests in their pay (*Tooly v. Schwaller*, 919 F.3d at 173) by suspending them and then ultimately terminating many of them without charges and specifications of misconduct and without a hearing pursuant to N.Y. Education Law § 3020-a, as required by law to terminate the employment of tenured teaching staff.

This appeal does not challenge the Vaccine Mandate Order. This appeal is a challenge to the process the NYCDOE used to implement the Vaccine Mandate Order and the way the UFT, CSA, the Scheinman Respondents, and DC37 colluded and conspired to violate the Appellants' constitutional rights.

## A. NYCDOE's Public Employee Unions And The Implementation Of The Vaccine Mandate Order

### 1. The UFT Arbitration Award

Pursuant to the N.Y. Civil Service Law § 209.3(a), the UFT and the NYCDOE entered into negotiations over the impact of the Vaccine Mandate Order.

The UFT and the NYCDOE held bargaining sessions on August 25, 2021 and August 30, 2021. JA-746. On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the Vaccine Mandate Order. JA-745.

Pursuant to N.Y. Civil Service Law § 209, PERB appointed Scheinman as a mediator to mediate the impact of the Vaccine Mandate Order. JA-783.

Virtual mediation sessions between the NYCDOE and the UFT with Scheinman were held on September 2, 3, 4, and 5, 2021.  JA-784.

On September 6, 2021, the UFT informed PERB that "with the start of the school year imminent along with the vaccine-related mandates scheduled to commence on Sept. 13th and Sept. 27th, respectively, the parties have agreed to move to an expedited arbitration due to the exigencies of these circumstances and fairness to the affected workforce.  Arbitration sessions are being held on Sept. 6th." JA-784.

As a result of this "agreement" to move to "an expedited arbitration", on September 10, 2021, Scheinman issued the UFT Arbitration Award.  JA-583-JA-601.

Scheinman wrote in the UFT Arbitration Award: "in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand."  JA-585.

There was no statutory authority for Scheinman to "arbitrate" the impasse in negotiations over the impact of the Vaccine Mandate Order.  *See,* N.Y. Civil Service Law § 209.3(f).  *See also, Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d 660, 671 (1990); *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560

(2016); *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999); *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d 964, 966-967 (Sup. Ct. 1976).

There was no contractual authority for Scheinman to arbitrate the impasse in negotiations over the impact of the Vaccine Mandate Order. JA-424-JA-433.

The UFT and the NYCDOE did not negotiate a resolution to the impact of the Vaccine Mandate Order, but improperly, illegally, and without any statutory or contractual authority, surrendered their negotiation authority to Scheinman to impose a resolution. *See,* N.Y. Civil Service Law § 209.3.(f).

The NYCDOE, the UFT, and Scheinman conspired to violate the Appellants' rights.

2.     The CSA Arbitration Award

Following Scheinman's issuance of the illegal UFT Arbitration Award, the CSA and the NYCDOE "reached out to [Scheinman] to similarly address their concerns" regarding the Vaccine Mandate Order. JA-604.

Scheinman wrote in the CSA Arbitration Award, "[g]iven the exigencies of the opening of school and the imminent effective date of the City's mandate, it was agreed the [CSA and the NYCDOE] would promptly move to arbitration." JA-604.

There was no statutory authority for Scheinman to issue the CSA Arbitration Award. *See,* N.Y. Civil Service Law § 209.3(f); *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671; *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016); *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999); *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d at 966-967.

There was no contractual authority for Scheinman to issue the CSA Arbitration Award.

Despite this, the CSA capitulated and conspired with the NYCDOE and Scheinman to violate the Appellants' constitutional right to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and the Appellants' property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173).

### 3.     DC37's Agreement With NYCDOE

On or about October 3, 2021, DC37 entered into the DC37 Agreement which was a negotiated "agreement regarding a process for requests for exemptions to [the Vaccine Mandate Order] and the leave status of those who do not comply with the mandate." JA-617.

Similar to the UFT Arbitration Award and the CSA Arbitration Award, the DC37 Agreement created a procedure and process by which it allowed the NYCDOE to suspend the Appellants without pay and to terminate them without due process for not complying with the Vaccine Mandate Order.

While the DC37 Agreement was a settled agreement (as opposed to an imposed arbitration agreement), DC37 did not seek nor obtain its membership's consent nor ratification to the Agreement, in violation of DC37's duty of fair representation. *See, Union Springs Cent. School Sch. Teachers' Assn.*, 6 PERB P3074 (1973).

**B.** **NYCDOE Suspended The Appellants Without Pay For Not Taking The COVID-19 Vaccine**

Relying upon the UFT Arbitration Award, the CSA Arbitration Award, and DC37 Agreement, on or about October 2, 2021, the NYCDOE informed its employees that its employees had until October 4, 2021 to either upload to the NYCDOE portal proof of vaccination for the COVID-19 vaccine or the employee would be placed on "Leave Without Pay". JA-78-JA-79. The Appellants were given a choice: (a) take the vaccine; (b) separate with benefits; (c) take a leave without pay from October 4, 2021 through September 5, 2022, with health benefits for the duration of the leave, but if the employee did not have proof of vaccine by September 5, 2022, the employee would be terminated; or (d) do nothing. JA-79.

On November 17, 2021, the Appellants moved, by Order to Show Cause seeking a Temporary Restraining Order and a Preliminary Injunction before the District Court seeking to prevent the NYCDOE from: (1) withholding pay from the Appellants for failing to take a COVID-19 vaccine; and (2) disciplining the Appellants, including but not limited to terminating the Appellants without due process under N.Y. Education Law, N.Y. Civil Service Law, and the NYCDOE's collective bargaining agreements with its public employee unions. JA-489-JA-496.

15

The NYCDOE argued that the NYCDOE employees who did not comply with the Vaccine Mandate Order were unfit and/or were not "qualified to continue their public employment with the DOE." JA-567. The NYCDOE argued that, as a result, the Appellants were not entitled to due process. The NYCDOE argued that the Appellants were not being disciplined for not taking the vaccine, but were in non-compliance with a condition of employment. JA-568-JA-572.

The District Court denied the Appellants' Motion, holding that the procedures set forth in the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement provided sufficient due process protections and "multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate." JA-836.

As a result, the Appellants continued to be suspended without pay without due process for not taking the vaccine.

**C.    NYCDOE Terminated Appellants' Employment For Not Taking The COVID-19 Vaccine**

On or about January 31, 2022, the NYCDOE informed the employees who did not get vaccinated or agree to be on leave without pay with continued health

16

insurance through September 5, 2022, that on February 11, 2022, the employees' health insurance would be terminated and the employee's employment with the NYCDOE would be terminated.  JA-1397.

On February 8, 2022, the Appellants filed a Motion, by Order to Show Cause, to the District Court seeking a Temporary Restraining Order and Preliminary Injunction enjoining and restraining the NYCDOE from terminating the Appellants' employment without providing them due process pursuant to N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or pursuant to collective bargaining agreements.  JA-1380-JA-1381.

The NYCDOE argued that the Vaccine Mandate order "creates a condition of employment for DOE employees, including Plaintiffs, to be vaccinated.  The DOE, in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent an exemption or accommodation required by law, to perform work for the DOE."  JA-1453.

The District Court denied the Appellants' Motion, holding that "the Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under

their applicable CBAs as affected by the relevant Arbitration Awards of agreement and all relevant state statutes." JA-1543.

As a result, many of the Appellants were terminated from their employment with the NYCDOE without due process.

## SUMMARY OF ARGUMENT

1.  The UFT Arbitration Award and the CSA Arbitration Award, both issued by Scheinman, which purportedly resolved the impasse in negotiations between the NYCDOE and the UFT and the NYCDOE and the CSA, violated N.Y. Civil Service Law § 209.3(f). *See, Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671; *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016); *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999); *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d at 966-967. An impasse in negotiations between a school district and a public employees' union cannot be resolved by arbitration, but only through negotiations by the

parties. As a result, the Appellants have stated a plausible cause of action seeking a declaration that the UFT Arbitration Award and the CSA Arbitration Award violated the Appellants' rights to due process and to their pay.

2.   Under N.Y. Civil Service Law, the only way a public employer can create a new condition of employment is through negotiations with its public employees' union. *See,* N.Y. Civil Service Law § 209.3(f). Because the UFT Arbitration Award and the CSA Arbitration Award did not comply with N.Y. Civil Service Law § 209.3(f), the "arbitration" awards did not create a new condition of employment that permitted the NYCDOE the authority to violate the Appellants' constitutional rights to due process and violate the Appellants' property rights in their pay and their jobs. The Appellants have stated a plausible claim for a declaratory judgment that the Appellants' rights to due process and the Appellants' property rights in their pay without due process have been violated.

3.   The Declaratory Judgment Act authorizes and permits parties to seek declaratory judgment relief from the federal court as a cause of action.

19

28 U.S.C. § 2201(a).  The Appellants have stated plausible claims for declaratory judgment relief in their First through Fifth Causes of Action in the Amended Complaint.

4.    Since the UFT Arbitration Award and the CSA Arbitration Award were illegal and should be voided, the NYCDOE did not provide the Appellants with the constitutionally sufficient minimum procedural due process before the Appellants were suspended without pay and/or terminated from their employment with the NYCDOE.  The Appellants have stated a plausible claim that the NYCDOE violated the Appellants constitutional rights in violation of 42 U.S.C. § 1983.

5.    The Appellants stated a cause of action for 42 U.S.C. § 1983 conspiracy.  The NYCDOE, its then-Chancellor Meisha Porter ("Porter") (collectively referred to as NYCDOE Respondents") conspired with the UFT, its President, Michael Mulgrew ("Mulgrew") (collectively referred to as "UFT Respondents") and the Scheinman Respondents for Scheinman to issue the UFT Arbitration Award in violation of N.Y. Civil Service Law § 209.3(f).  In return for granting the NYCDOE the result it wanted from the arbitration (*compare,* JA-

745-JA-759 *with* JA-583-JA-601), Scheinman appointed the Scheinman Respondents to be the hearing officers determining the appeals of the NYCDOE's denials of religious and medical accommodation requests, thereby creating a stream of income to be paid for by the NYCDOE. JA-593. This conspiracy infringed upon the Appellants' constitutional rights because the UFT Arbitration Award permitted the NYCDOE to suspend the Appellants without pay without due process and ultimately terminate their employment without due process, in violation of their due process rights and their property rights in their pay. Similarly, the NYCDOE Respondents conspired with the CSA and its President Mark Cannizzaro ("Cannizzaro") (collectively referred to as "CSA Respondents") and the Scheinman Respondents for Scheinman to issue the CSA Arbitration Award with Scheinman appointing the Scheinman Respondents to become the appeal panel for the NYCDOE's denial of religious and medical accommodation requests. This conspiracy infringed upon the Appellants' constitutional rights to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and violated their property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173). Finally, the NYCDOE Respondents conspired with DC37, Garrido, DC37, Local 372 ("Local 372") and Francois

21

(collectively referred to as "DC37 Respondents") by entering into the DC37 Agreement that violated the Appellants' constitutional rights.

6.   The Appellants' class claims should be reinstated because the claims sufficiently establish that a class action is an appropriate method of litigating the Appellants' claims.

7.   To the extent the Appellants' Amended Complaint was insufficient to overcome the Respondents' Motion to Dismiss, the Appellants should have been granted leave to amend the Amended Complaint.

8.   If this Court reverses the District Court's decision to dismiss this Action and remands the matter to the District Court, this Court should direct that the case be re-assigned to a different judge.

# ARGUMENT

## POINT I.        STANDARD OF REVIEW OF A MOTION TO DISMISS

In *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir 2021) (internal quotation marks omitted), this Court opined: "[i]n order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

The District Court erred. The Appellants have pled sufficient factual matter, which as required, must be accepted as true, to state a claim for relief that is plausible on its face.

This Court should reverse the District Court's decision to dismiss this Action.

## POINT II.        THE NYCDOE CANNOT RESOLVE AN IMPASSE IN NEGOTIATIONS WITH ITS PUBLIC EMPLOYEES' UNIONS THROUGH ARBITRATION

The UFT Arbitration Award and the CSA Arbitration Award violated N.Y. Civil Service Law § 209.3.(f).

On September 1, 2021, the UFT declared an impasse in negotiations over the impact of the Vaccine Mandate.  JA-745.  As a result, PERB appointed Scheinman as the *mediator* to mediate the impasse in negotiations.  JA-783.  When Scheinman was unable to successfully mediate the impasse in negotiations, the NYCDOE and the UFT agreed to appoint Scheinman as the arbitrator to resolve the impasse in negotiations.  JA-784.

N.Y. Civil Service Law § 209.3(f) states:

> 3.    On request of either party or upon its own motion, as provided in subdivision two of this section, and in the event the board determines that an impasse exists in collective negotiations between such employee organization and a public employer as to the conditions of employment of public employees, the board shall render assistance as follows: …
>
> (f)    where the public employer is a school district, a board of cooperative educational services, a community college, the state university of New York, or the city university of New York, the provisions of subparagraphs (iii) and (iv) of paragraph (e) of this subdivision shall not apply, and (i) the board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body, or a duly authorized committee thereof, may be present; (ii) thereafter, the legislative body may take such action as is necessary and

24

> appropriate to reach an agreement. The board
> may provide such assistance as may be
> appropriate.

The New York State Court of Appeals in *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671, held that there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare*, Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f])."

PERB has repeatedly held that school districts and their public employees' unions can only resolve impasses in negotiations through reaching an agreement at the bargaining table and there is no other mechanism to overcome the impasse.

In *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016), PERB held: that in "school districts, where there is no option available to the parties [to overcome an impasse in negotiations] other than continuing to negotiate until an "agreement" is reached."

Additionally in *Matter of Buffalo Teachers Federation*, 49 PERB P4560, PERB stated in footnote 93: "[s]chool districts and other educational institutions do not have the ability under the Act to unilaterally resolve the dispute after fact-finding

through a process of public hearing and action by its legislative body, as do other public employers."

In *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999), PERB held that "an impasse in school district negotiations continues for however long it takes the parties to reach a collective bargaining agreement."

Further PERB in *Matter of Greenburgh No. 11 Federation of Teachers* stated: "it bears emphasis that the impasse procedures applicable in school districts do not lack "finality". It is true that finality to negotiations in school districts is obtained only by the parties themselves by their reaching a collective bargaining agreement and not, as with police or fire negotiations, by an award issued by a third-party panel." *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024.

In *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d at 966-967, the Court, in interpreting N.Y. Civil Service Law § 209.3.(f), held that

> the school board upon reaching an impasse in negotiations
> may no longer conduct a public hearing and thereafter

impose its decision upon the union. Now, pursuant to section 209 (subd 3, par [f]) of the Civil Service Law, upon reaching an impasse: "(i) the [Public Employment Relations] board may afford the parties an opportunity to explain their positions with respect to the report of the fact-finding board at a meeting at which the legislative body * * * may be present; (ii) thereafter, the legislative body may take such action as is necessary and appropriate to reach an agreement. The [Public Employment Relations] board may provide such assistance as may be appropriate." Thus, by eliminating the final hearing with the school board acting as a legislative body, a new collective bargaining agreement will only be entered into if both parties accept its terms.

The impasse in negotiations over the impact of the Vaccine Mandate Order between the UFT and the NYCDOE was resolved by Scheinman in the UFT Arbitration Award. The impasse in negotiations over the impact of the Vaccine Mandate Order between the CSA and the NYCDOE was resolved by Scheinman in the CSA Arbitration Award.

Both resolutions, arbitration awards issued by Scheinman, violated N.Y. Civil Service Law § 209.3.(f) since the NYCDOE and the public employees' unions did not resolve the impasse through negotiations. In other words, the parties did not a mutual agreement. Instead, an unlawful resolution was imposed.

In *In the Matter of Teamsters Local 445 v. Town of Monroe*, __ N.Y.__, 2023 NY Slip Op 02754 (May 23, 2023), the New York Court of Appeals opined:

> "As a general rule, public policy in this State favors arbitral resolution of public sector labor disputes" (Matter of City of Long Beach v Civ. Serv. Empls. Assn., Inc.— Long Beach Unit, 8 NY3d 465, 470 [2007] [internal quotation marks omitted]). A policy favoring arbitration does not mean that every dispute is arbitrable. With respect to disputes between public employers and employees, we have established a two-step framework for determining arbitrability (see Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.) 42 NY2d 509, 513 [1977]). "[T]he test centers on two distinct inquiries as to the public parties' purported entry into the arbitral forum: may they do so and, if yes, did they do so" (Matter of Board of Educ. of Watertown City School Dist. (Watertown Educ. Assn), 93 NY2d 132, 138 [1999]). "The first ('may-they-do-so') step calls for an examination, by the court, of the subject matter of the dispute" (id.). We have repeatedly held that a dispute is not arbitrable if granting the relief sought would violate a statute, decisional law, or public policy (see Long Beach, 8 NY3d at 470).

In this matter, the UFT Arbitration Award and the CSA Arbitration Award violated numerous statutes, decisional law, and public policy.

The UFT Arbitration Award and the CSA Arbitration Award violated N.Y. Civil Service Law § 209.3(f).

Scheinman granted the NYCDOE the relief it sought (JA-753 (stating: "City's extreme plan to place educators on involuntary leave violates statutory and related contractual disciplinary provisions and strips teachers of their core due process rights as public employees")) in the UFT Arbitration Award and the CSA Arbitration Award, which violated N.Y. Education Law § 3020-a and N.Y. Civil Service Law § 75 by permitting the NYCDOE to suspend without pay and without the due process granted to the Appellants under the statutes and ultimately terminate the Appellants without due process granted to them in the same statutes.

The relief granted in the UFT Arbitration Award and the CSA Arbitration Award violated decisional law and public policy that entitles the Appellants to due process and preserving their property right in their pay. *See, Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44; *Tooly v. Schwaller*, 919 F.3d at 173.

The resolution of the impasse in negotiations was not arbitrable under New York law. *See, In the Matter of Teamsters Local 445 v. Town of Monroe*, 2023 NY Slip Op 02754.

Accordingly, the Appellants have stated a plausible claim for declaratory judgment relief that the UFT Arbitration Award (JA-995-JA-996, at ¶¶ 280-290) and

the CSA Arbitration Award (JA-997, at ¶¶ 291-299) violated the Appellants' constitutional rights because both allowed the NYCDOE to suspend the Appellants without pay without due process (JA-996, at ¶ 285; JA-997, at ¶ 294) and ultimately terminate the Appellants' employment without due process.

This Court should reverse the District Court and remand the matter to a different judge for further proceedings in this Action.

**POINT III.** **THE VACCINE MANDATE WAS NOT A CONDITION OF EMPLOYMENT BECAUSE THE UFT AND THE CSA DID NOT AGREE TO THE CONDITION IN ACCORDANCE WITH THE N.Y. CIVIL SERVICE LAW**

The NYCDOE argued that the Vaccine Mandate Order: (a) was a qualification for employment (JA-570); (b) was being "imposed by DOE" (JA-1476); (c) established that unvaccinated employees lack[ed] fitness [to perform their job functions] under the COH Order" (JA-568); [1] and (d) was a condition of employment (JA-1589).

---

[1] N.Y. Education Law §§ 913 and 2568 governs the process by which school district may seek to determine if an employee is unfit to perform the employee's duties. *See,* N.Y. Education Law § 913; N.Y. Education Law § 2568. The process provides the employee with due process rights before an employee is determined to be unfit, including a medical examination. No medical examinations were ever performed on Appellants who did not comply with the Vaccine Mandate Order. The Appellants were never determined to be unfit for employment with the NYCDOE before they were suspended without pay or terminated.

In the District Court, the NYCDOE shifted its nomenclature to fit the Vaccine Mandate Order into a legal theory that permitted the NYCDOE to have *carte blanche* suspension and termination authority over employees who did not comply with the Vaccine Mandate Order.

Whether it was a qualification, being imposed by the NYCDOE, which created an unfitness for duty issue, or whether it was a condition of employment, the NYCDOE could not unilaterally impose the procedures by which the NYCDOE implemented the Vaccine Mandate Order against non-compliant employees, like the Appellants.

"The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a strong and sweeping policy of the State." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 667 (internal quotation marks omitted).

The NYCDOE failed to create a new condition of employment.

Under New York labor law, there are only two statutory methods for the NYCDOE to create a new condition of employment upon its employees.

First, pursuant to N.Y. Education Law § 2572.9, the NYCDOE could have determined that the vaccine was a new job qualification for employees working in the NYCDOE.

Second, pursuant to N.Y. Civil Service Law § 201.4., the NYCDOE could have negotiated with its public employee unions, in compliance with N.Y. Civil Service Law, and reached an agreement at the bargaining table with those unions to create a new condition of employment. *See,* N.Y. Civil Service Law § 209.3(f); *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671; *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016); *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999); *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d at 966-967.

The NYCDOE did not enter into an agreement with the UFT or the CSA in accordance with N.Y. Civil Service Law § 209.3(f).  JA-583-JA-601; JA-602-JA-616.

As a result, the Vaccine Mandate Order never became a condition of employment upon UFT and CSA members and therefore, the NYCDOE's decisions

to suspend the Appellants without pay and terminate their employment for non-compliance with the Vaccine Mandate Order, violated the Appellants' constitutional rights. *See, Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44; *Tooly v. Schwaller*, 919 F.3d at 173.

The Appellants have sufficiently stated a plausible claim for declaratory relief that the NYCDOE violated the Appellants' constitutional rights because the NTCDOE never created a condition of employment. JA-995, at ¶¶ 272-279. This Court should reverse the District Court's decision to dismiss this Action.

**A.     N.Y. Education Law § 2572.9. Requires A Vote Of The Board Of Education To Impose A New Job Qualification**

In opposition to the Appellants' Motion seeking a Temporary Restraining Order and a Preliminary Injunction in November 2021, the NYCDOE argued:

> [T]he DOE is enforcing the lawful COH Order by removing unvaccinated employees from the workplace because they are no longer fit to perform their duties. While this is a new job requirement put in place to combat a novel virus, the analysis remains unchanged. The DOE is able to separate employees that are not in compliance with lawful job requirements.

JA-570.

The NYCDOE called the Vaccine Mandate Order a "job qualification". However, the NYCDOE did not follow the statutory process for a COVID-19 vaccine to become a qualification for employment with the NYCDOE.

N.Y. Education Law and its implementing regulations set the qualifications for administrators, teachers and other employees of the NYCDOE. *See, e.g.,* N.Y. Education Law § 3001; 8 N.Y.C.R.R § 80-2.4.

However, the NYCDOE may set additional qualifications for those employed by the NYCDOE.

N.Y. Education Law § 2572.9. states "a board of education may prescribe additional or higher qualifications for the persons employed in" the positions of principal, supervisor, director or teacher appointed to the teaching force of a city.

While the NYCDOE is not governed by a Board of Education, but by a Panel for Educational Policy (*see,* https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws (visited May 8, 2023)), there is no evidence, and the NYCDOE did not argue in the District Court below, that the

Panel for Educational Policy has adopted a resolution establishing that a COVID-19 vaccine is a qualification of employment for the NYCDOE.

Accordingly, without a resolution adopted by the NYCDOE's Panel for Educational Policy, a COVID-19 vaccine never became a qualification for employment with the NYCDOE.

As a result, the NYCDOE's argument before the District Court that the Vaccine Mandate Order became a qualification of employment to work for the NYCDOE (JA-569) fails.

**B.    N.Y. Civil Service Law § 201.4. Defines Terms And Conditions Of Employment And Makes Changes To Terms And Conditions Of Employment A Mandatory Subject Of Negotiation**

N.Y. Civil Service Law §201.4. defines "terms and conditions of employment" to include "salaries, wages, hours, and other terms and conditions of employment." *See,* N.Y. Civil Service Law § 201.4.

"Pursuant to article 14 [of the Civil Service Law (Taylor Law)], an employer is required to negotiate terms and conditions of employment." *Evans v Newman*, 71 A.D.2d 240, 243 (3d Dept 1979).

When examining whether the COVID-19 vaccine mandate issued by the New York State Unified Court System ("UCS") was a mandatory subject of negotiations between the UCS and its public employees' unions, PERB held:

> However, while I find that UCS was not required to bargain over its decisions to require employees in the bargaining units to vaccinate or test for COVID-19, the Policies were implemented using procedures which were the result of many other decisions, decisions which are not themselves a necessary consequence of UCS' decisions to require vaccination or testing. In adopting the Policies, UCS unilaterally implemented extensive procedures that implicate various terms and conditions of employment, including leave time, compensation, discipline, job security, and medical privacy, all of which must be bargained …. Therefore, I find that UCS had a duty to negotiate with the charging parties over the chosen procedures used to implement the Policies, to the extent that they implicate terms and conditions of employment.

*In the Matter of Suffolk County Court Employees Association Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513 (2023).

PERB ordered UCS to bargain with its public employees' unions, reinstate the employees who were on leave or terminated as a result of non-compliance with the vaccine mandate, and expunge all records of disciplinary action taken against the non-compliant employees.  *See, In the Matter of Suffolk County Court Employees Association Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513.

In *The New York City Municipal Labor Committee v. The City of New York*, 15 OCB2d 34 (2022), the New York City Office of Collective Bargaining held that the City committed an improper practice charge because it did not bargain over the policies the City unilaterally implemented to enforce the Vaccine Mandate Order.

Since the NYCDOE did not reach an agreement with the UFT and the CSA on the implementation procedures for the Vaccine Mandate Order in accordance with N.Y. Civil Service Law § 209.3.(f), the procedures used by the NYCDOE to implement the Vaccine Mandate Order, including suspending without pay without due process those Appellants who did not comply with the Vaccine Mandate Order and terminating without due process those that did not comply, violated N.Y. Civil Service Law and N.Y.C. Administrative Code 12-306(a)(4).

The NYCDOE had a legal obligation to comply with N.Y. Civil Service Law and N.Y.C. Administrative Code 12-306(a)(4) and obtain an agreement with the UFT and the CSA regarding the process and procedures the NYCDOE used to implement the Vaccine Mandate Order.

The UFT Arbitration Award and the CSA Arbitration Award were not negotiated settlements with NYCDOE's public employees' unions. *See,* N.Y. Civil

Service Law § 209.3(f); *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671; *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016); *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999); *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d at 966-967**.**

Accordingly, the Vaccine Mandate Order did not become a new condition of employment for NYCDOE employees because the NYCDOE did not reach a legally-compliant agreement with the UFT and the CSA. *See,* N.Y. Civil Service Law § 209.3(f).

*******************

Despite the District Court's ruling (JA-1888) the NYCDOE did not create a condition of employment and therefore, the NYCDOE violated the Appellants' constitutional right to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and their property right to their pay (*Tooly v. Schwaller*, 919 F.3d at 173) when the Appellants were suspended without pay and without due process and then terminated without due process.

The Appellants have plausibly stated a cause of action against the NYCDOE for violation of the Appellants' constitutional rights in violation of 42 U.S.C. § 1983.

This Court should reverse the District Court's decision to dismiss the Appellants' Amended Complaint.

**POINT IV.        THE APPELLANTS STATED A CLAIM FOR DECLATORY JUDGMENT IN THEIR FIRST THROUGH FIFTH CAUSES OF ACTION**

The first five causes of action in the Appellants' Amended Complaint seek declaratory judgment relief.  JA-995-JA-1000, at ¶¶ 272 through 320.

The District Court held:

> The [Declaratory Judgment Act] "provides a remedy, not a cause of action." KM Enters., Inc. v. McDonald, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), aff'd, 518 F. App'x 12 (2d Cir. 2013) (summary order). "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action." Id. at *20 (alteration and internal quotation marks omitted); see also Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") (collecting cases).  Because Plaintiffs' first through sixth causes of action request remedies, rather than plead facts

> to support separate causes of action, the first through sixth causes of action are dismissed for failure to state a claim

JA-1892.

The District Court erred and this Court must reverse and re-instate the Appellants' first five causes of action.

## A.    Justiciable Controversy Exists

In *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) (internal citations omitted) the Court held that the Declaratory Judgment Act grants subject matter jurisdiction to federal courts to determine an actual controversy between the parties.

In fact, in *Aetna Life Ins. Co.*, the United States Supreme Court stated: "the complaint presented a controversy to which the judicial power extends and that authority to hear and determine it has been conferred upon the District Court by the Declaratory Judgment Act." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. at 244.

The District Court erred because it just summarily dismissed the causes of action without determining whether the Amended Complaint "presented a controversy to which the judicial power extends", whether there was a real and substantial controversy, or whether there is a concrete case of an admitted and definitive determination of the legal rights of the parties.

In this case, the Appellants allege that their Fourteenth Amendment rights to due process and their property right in their pay were violated. JA-980-JA-990, at ¶¶ 146-235

The NYCDOE opposes that argument and argues that it did not violate the Appellants' Fourteenth Amendment rights to due process or violate the Appellants' property right in their pay without due process. JA-995, at ¶¶ 272 through 279. JA-566-JA-577.

In addition, the NYCDOE, the UFT, and the CSA argued that the UFT Arbitration Award and the CSA Arbitration Award were statutorily proper (JA-718-JA-719; JA-722-724; JA-1678-1680) and that the Appellants' suspensions without pay without due process did not violate the Appellants' constitutional rights. JA-995-JA-996, at ¶¶ 280-290; JA-997, at ¶¶ 291-299; JA-866-871.

Further, the NYCDOE and DC37 argued that the DC37 Agreement was a valid contract between the parties regarding the procedures relating to implementation of the Vaccine Mandate Order. JA-998, at ¶¶ 300-305; JA-1625-JA-1626.

Finally, the Appellants argued that the release the NYCDOE required the Appellants to execute to take leave without pay and to continue health insurance until September 5, 2022 violated the UFT Arbitration Award and should be voided. JA-998-JA-1000, at ¶¶ 306-320. The NYCDOE did not argue that the release was valid in support of its Motion to Dismiss. JA-1582-JA1613.

Since the Appellants filed the Amended Complaint there has been a justiciable controversy between the Appellants and the Respondents relating to the issues addressed in the Appellants' first five causes of action.

As a result, the District Court erred and this Court should now reverse. The Appellants' first five causes of action should be reinstated.

**B.    The Appellants Do Not Rely Upon The Declaratory Judgment Act For Subject Matter Jurisdiction**

The Appellants do not rest subject matter jurisdiction in the federal court on the Declaratory Judgment Act, but upon 42 U.S.C. § 1983.  *See,* JA-975, at ¶¶ 112 and 113.  The Appellants are not seeking to extend federal court jurisdiction by seeking declaratory judgment relief in the Amended Complaint.  The Appellants are requesting Orders resolving the legal rights of the parties in the Appellants' first five causes action.

In *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244-245 (2d Cir 2012), (internal quotation marks and citations omitted) this Court opined: "The DJA gives a district court the discretion to declare the legal rights and other legal relations of any interested party seeking such declaration.  But that discretion does not extend to the declaration of rights that do not exist under law. Like a preliminary injunction, a declaratory judgment relies on a valid legal predicate."

In this case, the Appellants' arguments relating to the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement serve as legal predicate for the Court to determine the rights of the Appellants vis-a-vis the Respondents as alleged in the first five causes of action.

The Appellants are not seeking to extend the federal court's jurisdiction over any issues or matters that are not integral to the Appellants' allegations asserted pursuant to 42 U.S.C. § 1983. The District Court erred for summarily dismissing the causes of action.

In *Norton v. Town of Islip*, 678 F.App'x 17, 22 (2d Cir 2017), this Court opined that "because no other federal claims survived the pleading stage, the District Court did not have subject matter jurisdiction to hear Norton's argument for declaratory relief and it properly dismissed those claims."

In this Action, the District Court did not dismiss the first five causes of action because there were no federal claims that survived. Instead, the District Court summarily dismissed the Appellants' first five causes of action without considering that the Appellants were seeking judicial determinations that were inter-related and intertwined with the Appellants' causes of action based upon 42 U.S.C. § 1983 and the violations of the Appellants' constitutional rights.

In *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (internal citations and quotation marks omitted), the Court opined that: "federal courts, when determining declaratory judgment jurisdiction, often look to

the character of the threatened action. That is to say, they ask whether a coercive action brought by the declaratory judgment defendant … would necessarily present a federal question."

In this Action, the NYCDOE's actions with respect to its implementation of the Vaccine Mandate Order necessarily present a federal question relating to how the NYCDOE implemented the Vaccine Mandate Order against the non-compliant Appellants, since the NYCDOE's implementation of the Vaccine Mandate Order violated the Appellants' constitutional rights to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and their property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173).

For example, the First Cause of Action seeks an Order declaring that the Appellants' Fourteenth Amendment rights were violated when the NYCDOE did not provide the Appellants due process rights (N.Y. Education Law § 3020-a, N.Y. Civil Service Law § 75, or collectively bargained for rights) before suspending the Appellants without pay or terminating their employment, violating the Appellants' property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173). Federal question jurisdiction is intertwined with the declaration of rights sought by the Appellants.

Additionally, the Second and Third Causes of Action declaring the UFT Arbitration Award and the CSA Arbitration Award were promulgated without any statutory or contractual authority, and therefore, the NYCDOE's suspensions and terminations of the Appellants violated the Appellants' due process rights (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173). Federal question jurisdiction is intertwined with the declarations of rights sought by the Appellants.

In the Fourth Cause of Action, the Appellants seek an Order declaring that the DC37 Agreement was not entered into with contractual authority and therefore the NYCDOE's suspension and termination of DC37 members violated those members' due process rights and property rights in their pay. Federal question jurisdiction is intertwined with the declarations of rights sought by the Appellants.

Finally, the Respondents did not argue that the Court lacked jurisdiction to hear and determine the Appellants' first five causes of action. Instead, the District Court, *sua sponte* and erroneously dismissed the Appellants' first five causes of action without considering the issues addressed in the causes of action.

Accordingly, this Court should reverse the District Court's determination and reinstate the Appellants' first five causes of action.

**POINT V.**       **THE NYCDOE DID NOT PROVIDE THE APPELLANTS WITH CONSTITUTIONALLY SUFFICENT DUE PROCESS BEFORE IT PLACED THE APPELLANTS ON LEAVE WITHOUT PAY AND/OR TERMINATED THEM FROM EMPLOYMENT**

The District Court examined whether the procedures set forth in the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement set forth the minimum due process to be constitutionally sufficient.  JA-1897-JA-1898.

However, the District Court admittedly and intentionally ignored the fact that the UFT Arbitration Award, the CSA Arbitration Award and the DC37 Agreement were all procedurally illegal and could not have served as the procedures for the implementation of the Vaccine Mandate Order, since they were arrived at in violation of New York State law. JA-1906-JA-1908

The District Court, citing to *Tooly v. Schwaller*, 919 F.3d at 172-173 stated: "the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant's conduct violated the procedural guarantees of the Due Process

Clause where the court examined the due process claim exclusively by assessing a defendant's failure to comply with state law."  JA-1906.

But in the portion of the *Tooly* decision where the District Court cited to, it does not bar a District Court from examining State law due process guaranties to determine whether the government entity infringed upon the individual's due process rights.

In fact, in the cited section in *Tooly*, the Court was addressing whether qualified immunity should apply, not whether a government agency provided the plaintiff with due process.  In the section of the *Tooly* decision, the Court stated "a state statute does not serve as "clearly established law" for purposes of qualified immunity. Since a violation of state law does not *per se* result in a violation of the Due Process Clause, it cannot *per se* defeat qualified immunity." *Tooly v. Schwaller*, 919 F.3d at 172.

The District Court intentionally ignored State law protections provided to the Appellants as tenured employees, whether as tenured teachers or administrators, civil service employees, or other employees of the NYCDOE who possessed due process rights pursuant to collective bargaining agreements.

Instead, the District Court stated that

> In their Amended Complaint, the Plaintiffs do not allege any facts plausibly supporting their allegations of "infirmities in the [Awards]," or violation of their Due Process Rights. (ECF No. 126, Pls. Opp'n Mem. at 8, 17, 23.) See also Bell Atl. Corp., 550 U.S. 544, 557 (2007). When considering a Rule 12(b)(6) motion, courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). Here, the allegations in the Amended Complaint establish that the Awards and the CBAs provided for expedited review and appeal processes for exemptions and accommodations, providing an opportunity to Plaintiffs to be heard in challenging the deprivation of their pay. See Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991) (finding that an employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required."). Having determined that the Plaintiffs were afforded constitutionally adequate pre- and post- deprivation due process, the Court grants Defendants' motions to dismiss Plaintiffs' due process claims.

JA-1907-JA-1908.

The District Court ignored the Appellants' allegations in the Amended Complaint, at ¶¶ 155, 156, 157, 162 and 163. In the Appellants' Amended Complaint, the Appellants identified statutes and contract language that allege

49

plausible infirmities in the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement that are more than conclusory, but are specific and are plausibly sufficient to state a cause of action.  JA-981-JA-982.

The District Court, by ignoring the illegal process through which the NYCDOE and the UFT "agreed" to binding arbitration (JA-784) and the NYCDOE and CSA "agreed" to binding arbitration (JA-604) in violation of N.Y. Civil Service Law § 209.3.(f), the District Court erred.

As the New York Court of Appeals has opined, there is an "apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (*compare*, Civil Service Law § 209 [3] [e], *with* Civil Service Law § 209 [3] [f])" yet the District Court created a new method, binding arbitration, without citing any statutory basis.  *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671.

The District Court should not have ignored the procedural defects by which the NYCDOE created the procedures to implement the Vaccine Mandate Order.

The District Court should have held that the Appellants had stated plausible claims that the UFT Arbitration Award and the CSA Arbitration Award violated the Appellants' constitutional rights. The District Court should not have determined that the NYCDOE provided the Appellants with the minimum due process.

**A.     Appellants' Constitutionally Protected Property Interest In Their Pay Was Violated By The NYCDOE**

When the NYCDOE suspended the Appellants without pay, without due process, for failing to comply with the Vaccine Mandate Order, the Appellants were deprived of a constitutionally protected property interest.

> [A]n employee who is placed on *unpaid* leave has been deprived of a protected property interest, but "an employee who is on leave and receiving his normal salary" has not. *O'Connor*, 426 F.3d at 199. And this remains so even though the employee is required to draw upon leave accruals, such as sick leave, to maintain that salary." As long as the employee is receiving a paycheck equivalent to his normal salary, that the employee is drawing down his sick leave is a bookkeeping entry with no pecuniary effect." *Id.* at 200. Such an employee has only been deprived of a property interest triggering due process when "he suffers a financial loss because of that leave's unavailability," *e.g.*, when the employee runs out of leave accruals while still on leave. *Id* at 199.

51

*Tooly v. Schwaller*, 919 F.3d at 173. *See also, Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) *cert. denied*, *Waronker v Hempstead Union Free Sch. Dist.*, 140 S.Ct 2669 (2020).

The Appellants were suspended without pay and were not provided any due process before their pay was taken away from them. Accordingly, the Appellants were deprived of their protected property interest in their pay.

The only argument the NYCDOE made that relieves it from violating the Appellants' constitutionally protected property rights in their pay is that the Vaccine Mandate Order was a condition of employment. The NYCDOE argued that the Vaccine Mandate Order was a condition of employment and the NYCDOE did not discipline the Appellants for failing to comply with the Vaccine Mandate Order, but suspended and terminated the Appellants because the Appellants failed to comply with a condition of employment. As a result, the NYCDOE argued, it had the legal authority to suspend without pay and ultimately terminate the Appellants. JA-566-JA-572.

The District Court determined that the Vaccine Mandate Order was a condition of employment even though a condition of employment can only be

created in public employment in New York through negotiations with public employee unions. JA-1906-JA-1907. *See,* N.Y. Civil Service Law § 201.4.

The only way for the NYCDOE to have created a condition of employment for UFT's members and for CSA's members was through an agreement with the UFT and the CSA at the bargaining table, which did not happen. JA-583-JA-601; JA-602-JA-616. *See,* N.Y. Civil Service Law § 209.3(f); *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d at 671; *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016); *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District,* 32 PERB P3024 (1999); *Betts v Hoosic Val. Teachers' Asso.,* 86 Misc 2d at 966-967; *In the Matter of Suffolk County Court Employees Association Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513 (2023); *The New York City Municipal Labor Committee v. The City of New York*, 15 OCB2d 34 (2022).

The Appellants have stated a plausible claim that the NYCDOE violated the Appellants' constitutional rights in violation of 42 U.S.C. § 1983.

This Court should reverse the District Court's determination dismissing this Action.

**B.** **Appellants' Constitutionally Protected Due Process Rights Was Violated By The NYCDOE**

"Under New York law a tenured teacher has a protected property interest in her position and a right to retain it subject to being discharged for cause in accordance with the provisions of the Education Law." *Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44 (internal brackets, citations and quotation marks omitted).

"Under New York law a tenured teacher may be removed only pursuant to certain substantive and procedural safeguards, including notice and a full-blown adversarial hearing." *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir 1990).

"It is well established that tenured public teachers are employees who have a constitutionally protected property interest in their employment." *Shaul v. Cherry Val.-Springfield Cent. Sch. Dist.*, 218 F.Supp.2d 266, 271 (N.D.N.Y. 2002).

"[C]ivil service employment is a property right which cannot be taken from her without satisfying the dictates of due process of law." *Palermo v. Eisenberg*, 81 Misc.2d 1014, 1015 (Sup. Ct., 1975).

"Due process ordinarily requires that persons receive 'some kind of hearing' prior to the deprivation of a property interest." *Jackson v. Roslyn Bd. of Educ.*, 652 F.Supp.2d 332, 343 (E.D.N.Y. 2009).

"In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause.*" *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988).

Whether the individual Appellant is a teacher, administrator, civil servant, or an employee with a contract-based due process right, the Appellants possessed a constitutional right to due process before they could be suspended without pay or be terminated.

The NYCDOE, by suspending the NYCDOE employees without pay and ultimately terminating their employment without due process, violated the Appellants' constitutional rights.

**************

The NYCDOE relied upon the UFT Arbitration Award, the CSA Arbitration Award and the DC37 Agreement to suspend the Appellants without pay and ultimately terminate the Appellants without due process.  JA-78-JA-79.

The District Court erred because it ignored the severe and pervasive legal infirmities that led to and resulted in the UFT Arbitration Award and the CSA Arbitration Award.  *See,* N.Y. Civil Service Law § 209.3(f).

The Appellants have stated a plausible claim that the NYCDOE violated the Appellants' constitutional rights in violation of 42 U.S.C. § 1983.  This Court should reverse the District Court's decision and reinstate the Amended Complaint.

**POINT VI.  THE APPELLANTS HAVE STATED A CAUSE OF ACTION FOR 42 U.S.C. § 1983 CONSPIRACY**

The UFT Arbitration Award was a conspiracy between the NYCDOE Respondents, the UFT Respondents, and the Scheinman Respondents.

The CSA Arbitration Award was a conspiracy between the NYCDOE Respondents, the CSA Respondents, and the Scheinman Respondents.

The DC37 Agreement was a conspiracy between the NYCDOE Respondents and the DC37 Respondents.

The Appellants have sufficiently pled a plausible cause of action that the Respondents conspired to violate the Appellants' constitutional rights in violation of 42 U.S.C. § 1983.  The District Court's decision to dismiss the Appellants' 42 U.S.C. § 1983 conspiracy cause of action was in error and this Court should now reverse and remand the case.

### A.    Legal Basis For 42 U.S.C. § 1983 Conspiracy

In *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir 1999), this Court stated: "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

The agreement to resolve the impasses in negotiations between the NYCDOE and the UFT and the NYCDOE and the CSA through arbitration with Scheinman as arbitrator were agreements between a state actor and a private entity to act in concert to inflict an unconstitutional injury upon the Appellants, and was an overt act done in furtherance of that goal causing damages to the Appellants (loss of pay and termination).

The DC37 Agreement was an agreement between a state actor and a private entity to act in concert to inflict an unconstitutional injury upon the Appellants, and an overt act done in furtherance of that goal causing damages to the Appellants (loss of pay and termination).

The Appellants have stated a plausible claim for 42 U.S.C. § 1983 conspiracy. The District Court erroneously dismissed the Appellants' conspiracy cause of action. This Court should now reverse.

### 1.    Personal Involvement

In *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977), this Court held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

Each of the Respondents had their own individual roles to play, that but-for a conspiracy between them, whether it was the Scheinman Respondents, the NYCDOE Respondents and the UFT Respondents or the NYCDOE Respondents, the Scheinman Respondents, and the CSA Respondents, or the NYCDOE Respondents and the DC37 Respondents, the Appellants' constitutional rights would not have been infringed and the Appellants would not have suffered deprivations of their rights.

2.    <u>State Actor</u>

In *Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019), the Court opined: "a private entity can qualify as a state actor … when the government acts jointly with the private entity"

The Appellants allege that the UFT Respondents, CSA Respondents, and the Scheinman Respondents were state actors because they acted jointly with the NYCDOE to agree to violate N.Y. Civil Service Law § 209.3(f) appointing Scheinman to arbitrate the impasse in negotiations and ultimately allowed Scheinman to issue the UFT Arbitration Award and/or the CSA Arbitration Award, which, when implemented, violated the Appellants' constitutional rights to due process and violated the Appellants' property rights in their pay.

The UFT Respondents, CSA Respondents, and the Scheinman Respondents were willful participants in the "arbitration" that resulted in the UFT Arbitration Award (JA-583-JA-601) and the CSA Arbitration Award (JA-602-JA-616) that was agreed to when there was no statutory nor contractual authority to do so.  *See,* N.Y. Civil Service Law § 209.3(f).

In *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), the Court opined:

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

The UFT Respondents, CSA Respondents, and the Scheinman Respondents agreed with the NYCDOE to violate N.Y. Civil Service Law to resolve the impasse in negotiations over the Vaccine Mandate Order through binding arbitration. JA-784; JA-604.

Accordingly, the Appellants have stated a plausible cause of action for violation for 42 U.S.C. § 1983 conspiracy against the Scheinman Respondents, the NYCDOE Respondents, and the UFT Respondents and the CSA Respondents.

**B.    Scheinman Respondents' Conflict Of Interest And Profit Motive To Violate The Appellants' Constitutional Rights**

Scheinman was not an impartial arbitrator who acted as a neutral.

The Vaccine Mandate Order was strongly supported by DeBlasio. JA-754.

Scheinman held a fundraiser for DeBlasio in his home during DeBlasio's run for Mayor. *See,* https://advocatz.com/2022/03/10/martin-scheinman-and-the-covid-vaccine-mandate/ (visited May 9, 2023).

Scheinman, not acting as a neutral, but as a political supporter of the Mayor, gave his favored politician, DeBlasio, everything he wanted in the UFT Arbitration Award. JA-753 (UFT arguing to PERB "the City's extreme plan to place educators on involuntary leave violates statutory and related contractual disciplinary provisions, and strips teachers of their core due process rights as public employees.").

In return, the Scheinman Respondents were rewarded with a financial windfall. In essence, the UFT Arbitration Award and the CSA Arbitration Award was a kickback scheme.

In the UFT Arbitration Award and the CSA Arbitration Award, Scheinman directed that "[t]he DOE shall cover all arbitration costs from SAMS under this process." JA-595. JA-610.

Scheinman created a profit center for his companies. Scheinman required any appeals of requests for religious or medical accommodations to the Vaccine Mandate Order be brought "directly to SAMS for expedited resolution." JA-593-595; JA-612.

In fact, the Appellants' appeals of the denial of their accommodations were arbitrators who were either Scheinman himself (JA-1709-JA-1712), arbitrators who worked for SAMS (JA-1713-JA-1719), or arbitrators who work for S*cheinman* Institute on Conflict Resolution at *Cornell University* (JA-1720-JA-1739).

Scheinman and his companies injected themselves in the appellate process and gained a financial windfall in return for granting the NYCDOE and DeBlasio everything they could have wished for in the UFT Arbitration Award and the CSA Arbitration Award. JA-753.

But-for Scheinman conspiring with the NYCDOE Respondents, UFT Respondents, and CSA Respondents to violate N.Y. Civil Service Law § 209.3(f), the NYCDOE would not have had any argument that it had any authority to suspend without pay without due process and/or terminate the Appellants without due process for not complying with the Vaccine Mandate.

Scheinman used his own UFT Arbitration Award and his own CSA Arbitration Award to enrich himself and his companies while granting the NYCDOE all it could have wanted in an effort to force UFT members and CSA members to kowtow to the Vaccine Mandate Order. *Compare*, JA-583-JA-616 *with* JA-745-759.

Accordingly, the Appellants stated a plausible claim against the Scheinman Respondents for conspiracy in violation of 42 U.S.C. § 1983. The Scheinman Respondents' Motion to Dismiss should have been denied. This Court should now reverse.

## C. UFT Respondents' Conspiracy To Violate The Appellants' Constitutional Rights

The decision by the UFT to have Scheinman act as the "arbitrator" determining the outcome of the impasse in negotiations was an abdication of the UFT's duty to reach a compromised settlement of the impasse by permitting Scheinman to impose a scheme that violated the Appellants' constitutional rights.

The implementation of the Vaccine Mandate Order was not the first time the NYCDOE and the UFT reached impasse. In fact, Scheinman was thanked by DeBlasio for helping to overcome an impasse in negotiations with the UFT by acting

as a factfinder, not as an arbitrator. https://www.youtube.com/live/5xC1YlsQIpE?feature=share (visited May 31, 2023).

When the NYCDOE Respondents "agreed" with the UFT Respondents to appoint Scheinman as arbitrator and "agreed" to arbitrate the impasse in negotiations (JA-784), they conspired to violate N.Y. Civil Service Law § 209.3(f), which consequently led to the UFT Arbitration Award, which was an imposed process that permitted the NYCDOE to violate the Appellants' constitutional rights to due process and violate the Appellants' property right interest to pay.

There is documentary evidence in the Joint Appendix that is proof of the conspiracy between the UFT Respondents and the NYCDOE Respondents to violate the Appellants' constitutional rights.

When the UFT submitted its Declaration of Impasse to PERB, the UFT objected to the NYCDOE's plan to implement the Vaccine Mandate Order (JA-745-759). The UFT called the NYCDOE's proposal an

> extreme plan to place educators on involuntary leave
> violat[ing] statutory and related contractual disciplinary

65

provisions and strips teachers of their core due process
rights as public employees. All unvaccinated teachers
who are place on unpaid leave will be effectively
suspended without pay without any due process
protections codified in the State Education Law as well as
the parties' collective bargaining agreement…..

The Taylor Law does not permit such consequential policy
decisions and potential disciplinary action to be
implemented by mayoral edict.

JA-753.

Yet, the UFT Arbitration Award issued by Scheinman "awarded" the
NYCDOE "the City's extreme plan to place educators on involuntary leave
violat[ing] statutory and related contractual disciplinary provisions, and strip[ping]
teachers of their core due process rights as public employees." JA-753.

After the UFT called the NYCDOE's plan "extreme", the UFT Arbitration
Award was issued but instead of challenging in Court the UFT Arbitration Award
through a N.Y. CPLR Article 75 proceeding, the UFT just accepted the outcome.
This is direct evidence of the UFT Respondents' conscious decision to collude and
conspire with the NYCDOE to violate the Appellants' constitutional rights.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007) held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

Accordingly, the Appellants stated a plausible claim against the UFT Respondents. The UFT Respondents' Motion to Dismiss should have been denied. This Court should now reverse.

**D.    The CSA Respondents' Conspiracy To Violate The Appellants' Constitutional Rights**

When the NYCDOE Respondents "agreed" with the CSA Respondents to appoint Scheinman as arbitrator and "agreed" to arbitrate the impasse in negotiations (JA-784), they conspired to violate N.Y. Civil Service Law § 209.3(f), which ultimately led to the CSA Arbitration Award. JA-604; JA-784.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

Accordingly, the Appellants have stated a plausible claim against the CSA Respondents. The CSA Respondents' Motion to Dismiss should have been denied. This Court should now reverse.

**E.      The DC37 Respondents' Conspiracy To Violate The Appellants' Constitutional Rights**

The NYCDOE and DC37 entered into the DC37 Agreement. JA-617-JA-623.

The DC37 Agreement was the only negotiated agreement between the NYCDOE and any of the NYCDOE's unions. However, the members of DC37 did not vote or ratify the DC37 Agreement. The failure of DC37 to have its members ratify the agreement makes the DC37 Agreement procedurally defective and a violation of its duty of fair representation to seek and obtain ratification from the members for the amendments to the collective bargaining agreement.

In *Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973), PERB held that "having negotiated and approved of [a new collective bargaining agreement], they had an affirmative duty to seek its ratification."

In *City of Rochester*, 7 PERB P3060 (1974), PERB held that "it is a violation of their duty to negotiate in good faith for negotiators who reach a tentative agreement not to seek approval of their agreement."

In *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012), PERB held that "when parties have agreed that a tentative agreement is to be ratified, each side is affirmatively obligated to present it to their ratifying entity and to support its approval."

DC37's failure to obtain its members' approval to the amendments to the collective bargaining agreement is evidence of the conspiracy between the NYCDOE Respondents and the DC37 Respondents.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

In fact, it was the individual Respondents Garrido and Francois who personally executed the DC37 Agreement on behalf of DC37 and Local 372 (JA-623) and it was the act of executing the DC37 Agreement that makes them personally liable to the Appellants for conspiring with the NYCDOE to violate the Appellants' constitutional rights in violation of 42 U.S.C. § 1983. JA-623.

The DC37 Respondents were willful participants in entering into the DC37 Agreement that permitted the NYCDOE to suspend the Plaintiffs without pay without due process and ultimately terminate their employment without due process.

DC37 was under no obligation to agree to the DC37 Agreement. "[A]n impasse in school district negotiations continues for however long it takes the parties to reach a collective bargaining agreement." *Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999).

Accordingly, the Appellants have stated a plausible claim against the DC37 Respondents for conspiracy to violate the Appellants' constitutional rights. This

Court should reverse the District Court's decision to dismiss the Appellants' claims against the DC37 Respondents.[2]

## POINT VII.    THE APPELLANTS' CLASS CLAIMS SHOULD BE REINSTATED

The Appellants are ninety-two[3] of the thousands of NYCDOE employees who were adversely affected by the UFT Arbitration Award, the CSA Arbitration Award, or the DC37 Agreement. The Appellants are ninety-eight of the hundreds, if not thousands, of NYCDOE employees who refused to take the vaccine and either extended their leave of absence or were fired by the NYCDOE.

The Appellants have plausibly stated claims against the Respondents. Since the Appellants' claims are representative of all NYCDOE employees impacted by the UFT Arbitration Award, the CSA Arbitration Award, or the DC37 Agreement, the Appellants have set forth valid claims for class action status.

---

[2] In the District Court, the Appellants withdrew their claims and causes of action against Francis and Local 1251 based upon the representation made by DC37 that Francis and Local 1251 did not agree or approve the DC37 Agreement. JA-1789.

[3] Since the dismissal of this Action, the Appellants' counsel has been retained by six additional Appellants: Natalya Hogan, Remo Dello Ioio, Deborah Rothschild, Senta Fromer, Rosann Perry, -and Margherita Debonis.

FRCP Rule 23(a) states:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

The Appellants can plausibly plead that the class is so numerous since, the estimation is that thousands were suspended without pay and hundreds of NYCDOE employees were fired for not taking the COVID vaccine.

It is also clear that the questions of law and fact are common to the class.

Also clear is that the claims of the representative parties are typical of the claims of the class, since all of the NYCDOE employees who refused to take the COVID vaccine are similarly situated with respect to the impact the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement had on their employment with the NYCDOE.

Finally, there were no arguments made by the Respondents to the District Court that the representative parties cannot or will not fairly and adequately protect the interests of the class.

Accordingly, the Appellants plausibly pled class action claims. The District Court erred when it dismissed the Appellants' class action claims. This Court should now reverse.

**POINT VIII.**  **IF THE AMENDED COMPLAINT WAS INSUFFICENT TO SURVIVE THE MOTIONS TO DISMISS, THE DISTRICT COURT SHOULD HAVE GRANTED LEAVE TO AMEND**

In response to the Respondents' Motion to Dismiss, the Appellants sought leave to amend the Amended Complaint to cure any defects in the Amended Complaint before the Court dismissed the Action. JA-1972.

The District Court denied the Appellants' request stating that it would be futile. JA-1913-JA-1915.

As shown throughout this Brief, the Appellants state plausible claims against the Respondents. However, if this Court determines that there are deficiencies in the

Amended Complaint, the Appellants request leave to amend the Amended Complaint.

**POINT IX.** **IF THIS COURT REVERSES THE DISTRICT COURT, REINSTATES THE ACTION, AND REMANDS THE MATTER TO THE DISTRICT COURT, THIS COURT SHOULD DIRECT THAT A DIFFERENT JUDGE BE ASSIGNED**

The Appellants believe the District Court Judge was not impartial, had a bias against them; and therefore requests that if and when this Court remands the case, it remand it to a different Judge.

In *Pescatore v. PAN AM*, 97 F.3d 1, 21 (2d Cir 1996) (internal quotation marks, citations, ellipses and brackets omitted), this Court held:

> This Court has the power to remand the case to a different judge: Federal appellate courts' ability to assign a case to a different judge on remand rests on the appellate courts' statutory power to require such further proceedings to be had as may be just under the circumstances. To reassign a case on remand, we need not find actual bias or prejudice, but only that the facts might reasonably cause an objective observer to question the judge's impartiality.

In its decision to grant the Respondents' Motions to Dismiss, the District Court's decision deviated from its own precedent in a different case.

74

One example of the District Court Judge's lack of impartiality comes from the District Court's dismissal of the Appellants' five causes of action seeking declaratory judgment relief.  JA-1892.

The basis for the District Court's decision to dismiss the five causes of action was that the Declaratory Judgment Act provides a remedy, but not a cause of action. JA-1892.  However, the District Court did not analyze whether the requested relief of declaratory judgment stated a plausible claim, but, instead, the District Court summarily dismissed the claims without any analysis.  JA-1892.

Yet in *Magtoles v. United Staffing Registry, Inc.*, 2021 US Dist LEXIS 248070 (E.D.N.Y. Dec. 30, 2021), the same Judge of the District Court denied a Motion to Dismiss filed by defendant seeking to dismiss a cause of action for declaratory judgment.

In *Magtoles,* the District Court Judge, in denying the defendant's Motion to Dismiss, stated "the court concludes that a sufficient controversy exists between the parties to warrant issuance of a declaratory judgment."  *Magtoles v. United Staffing Registry, Inc.*, 2021 US Dist LEXIS 248070, at *30.

In this Action, the District Court Judge did not undertake a similar analysis, but instead, summarily dismissed the causes of action. The District Court Judge did not reconcile the *Magtoles* determination with the District Court Judge's determination in this Action.

A second example of the District Court's Judge's lack of impartiality is the District Court's utter failure to consider the statutory and procedural infirmities in the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement and how those irregularities violated the Appellants' due process rights and property right in their pay.

The Appellants' Memorandum of Law in opposition to the Respondents' Motions to Dismiss addressed, at length (JA-1758-JA-1766), the legal infirmities underpinning the NYCDOE's whole legal basis for the Vaccine Mandate Order being a condition of employment. In addition, the Appellants' Amended Complaint at ¶¶ 155, 156, 162, 163, laid out the factual basis for the Appellants' argument relating to the legal infirmities in the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement. JA-981-983.

Yet, the District Court stated: "[i]n their Amended Complaint, the Plaintiffs do not allege any facts plausibly supporting their allegations of "infirmities in the [Awards]," or violation of their Due Process Rights." JA-1907. This simply is not true.

The District Court Judge overlooked and ignored the Appellants' arguments and allegations and reached a conclusion that was not supported by the Joint Appendix.

Since the decision on the Motions to Dismiss took more than eleven months between the date the Motions were fully submitted and the District Court issuing its decision, the fact that the District Court Judge dismissed the Appellants' declaratory judgment causes of action based upon an error of law and without analyzing the causes of action, while at the same time ignoring lengthy arguments in the Appellants' opposition brief and clear and precise allegations in the Amended Complaint, can only leave an objective observer to believe that the District Court Judge was not impartial in reviewing and determining the Respondents' Motions to Dismiss.

Accordingly, the Appellants seek, on remand, that the Court assign this matter to a different Judge of the Eastern District of New York.

## CONCLUSION

For the reasons argued in this brief, the Appellants respectfully request that the Court vacate the District Court's Decision and Order, remanding this matter to the District Court and to a different District Court Judge than the one previously assigned.

Dated:      Garden City, New York
             June 5, 2023

Respectfully submitted,

/s/Austin Graff
Austin Graff
The Scher Law Firm, LLP
Attorneys for the Appellants
600 Old Country Road, Suite 440
Garden City, NY 11530
Tel. # (516) 746-5040

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.  I certify that this brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) and Local Rule 28.1.1 because:

    This brief contains 13,828 words.

2.  This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word, in Times New Roman, 14pt Font.

Dated:      June 5, 2023

# SPECIAL APPENDIX

i

# Table of Contents

**Page**

Memorandum and Order of Honorable Kiyo A. Matsumoto,
    Dated March 30, 2023..............................................................SPA-1

Judgment of The United States District Court Southern District
    of New York, Dated March 31, 2023........................................SPA-43

Memorandum and Order of Honorable Kiyo A. Matsumoto,
    Dated November 24, 2021, Appealed From .............................SPA-44

Memorandum and Order of Honorable Kiyo A. Matsumoto,
    Dated February 11, 2022, Appealed From................................SPA-72

SPA-1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
Nicole BROECKER, et al,

                Plaintiff,

        v.

New York City Department of Education,
et al,

                Defendants.
-----------------------------------X
```
                                        **MEMORANDUM & ORDER**

                                        21-CV-6387(KAM)(LRM)

**Kiyo A. MATSUMOTO, United States District Judge:**

The 93 named Plaintiffs in the Amended Complaint ("collectively "Plaintiffs"), filed on January 10, 2022 (ECF No. 47, Am. Compl.), are employees of the New York City Department of Education ("NYC DOE") and are members of various unions named as Union Defendants.[1]  Named Defendants are the NYC DOE, the City of New York, Meisha Porter, the Chancellor of the NYC DOE; the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (collectively "UFT"); Michael Mulgrew, President of the UFT; Counsel of Supervisors and Administrators ("CSA"), Mark Cannizzaro; District Council 37, AFSCME AFL-CIO, Local 372 ("DC 37 Local 372"); Henry Garrido; Shaun D. Francois

---

[1] In two extensive decisions (ECF Nos. 33; 89), this Court denied both of Plaintiffs' motions for a preliminary injunction after considering the parties' submissions and conducting hearings.  Factual findings set forth in the Court's decisions were based on the Parties' evidentiary submissions and are noted where relevant.  The Court notes that the Plaintiffs submitted their original complaint as an exhibit in their first motion for preliminary injunction (ECF No. 2-8, Ex. B, Complaint), and submitted the operative Amended Complaint as an exhibit in their second motion for preliminary injunction (ECF No. 76-12, Ex. F, Amended Complaint).

SPA-2

I; District Council 37, AFSCME AFL-CIO, Local 1251 ("DC 37 Local 1251") (together with DC 37 Local 372, "DC 37"); Francine Francis; Martin F. Scheinman, Scheinman Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services LLC (collectively, "Scheinman Defendants") (collectively, "Defendants").  Defendants UFT, CSA, and DC 37 (collectively, "Union Defendants") are labor organizations through which certain named Plaintiffs are covered by collective bargaining agreements ("CBAs") with the NYC DOE.

Defendants NYC DOE and the City of New York are entities responsible for implementing and enforcing a COVID-19 vaccination mandate (the "Vaccination Mandate") issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene ("COH Order") on August 24, 2021, requiring that all NYC DOE employees receive at least a first dose of a COVID-19 vaccination by September 27, 2021, in order to work at NYC DOE schools.  The Vaccination Mandate was revoked by the City of New York on February 10, 2023 and is no longer in effect.[2]

An arbitrator, Defendant Scheinman, was appointed by the New York State Public Employment Relations Board ("PERB") to

_____

[2] *See* N.Y.C. Board of Health, Order Rescinding Orders Requiring COVID-19 Vaccination in Child Care and Early Intervention Programs, for Nonpublic School Staff, and for Individuals Working in Certain Child Care Programs (2023); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).")

SPA-3

mediate the impasse in the negotiations between the Union Defendants and the NYC DOE regarding the New York Commissioner of Health's COVID Vaccination Mandate and issued a binding arbitration award ("Impact Arbitration Award") that resolved the impasse and prescribed procedures for the NYC DOE to implement the Vaccination Mandate.[3]

At the time the Amended Complaint had been filed on January 10, 2022, Plaintiffs had not received at least one dose of the COVID-19 vaccine, and had been suspended without pay, at least temporarily, by the DOE.  (ECF No. 47, Am. Compl. ¶ 118.) Plaintiffs allege that the implementation of the Vaccination Mandate and subsequent consequences violated (a) their procedural Due Process rights, under the Due Process Clause of the Fourteenth Amendment, (b) their statutory rights to their due process protections under N.Y. Education Law §§ 3020-1 and 3020-a (for tenured employees) or N.Y. Civil Service Law § 75 (for permanent employees) and (c) their contractual rights to

---

[3] As noted by the Court in its November 24, 2021 Order, the Court found that "the [initial] Impact Arbitration Award reached between the UFT and the Board of Education of the City School District for the City of New York 'mirrors' the agreements reached between the Board of Education of the City School District for the City of New York and the CSA and DC 37" and would be consolidating and incorporating its findings regarding the three identical agreements ("Impact Arbitration Awards" or "Awards") in its November 24, 2021 Order.  (ECF No. 33, Nov. 24, 2021 Order at 7, 8 n.2.)(quoting ECF No. 18, O'Connor Decl. at C, Memorandum of Agreement DC 37, City of New York, and the Board of Education of the City School District for the City of New York.) The DOE's Motion to Dismiss memorandum also states that all three agreements are identical in all relevant aspects for purposes of this case, and the Court agrees.  (ECF No. 116, DOE Mot. to Dismiss at 5 n.1.)

SPA-4

their due process protections through the applicable collective bargaining agreements ("CBA").  (ECF No. 47, Compl. ¶¶ 112, 119.)  Plaintiffs also allege collusion and aiding and abetting by the Defendants under 42. U.S.C. § 1983.  (*Id*. ¶ 113.)

In this case, Plaintiffs have twice moved unsuccessfully for a preliminary injunction and temporary restraining order: Plaintiffs filed their First Motion for Preliminary Injunction on November 17, 2021, and they filed their Second Motion for Preliminary Injunction on February 8, 2022.  (ECF Nos. 2, First Motion for Preliminary Injunction[4]; 76, Second Motion for Preliminary Injunction[5].)  Central to both of Plaintiffs' motions for preliminary injunctions and their Amended Complaint, is the Plaintiffs' claim that Defendant NYC DOE did not provide adequate procedural due process required by the Constitution and thus, should be enjoined and restrained by this Court from withholding pay or terminating the employment of DOE employees who failed to comply with the Vaccination Mandate. (ECF Nos. 2-10, First Motion for Preliminary Injunction Mem. at

---

[4] The First Motion for Preliminary Injunction included an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 2-1), supporting declarations from five Plaintiffs (ECF Nos. 2-2—6), and supporting exhibits (ECF No. 2-7—10, Ex. A, Plaintiff Email; Ex. B, Complaint, Ex. C, Graff Letter.)
[5] The Second Motion for Preliminary Injunction included an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 76-1), supporting declarations from five of the forty-three Plaintiffs facing termination on February 11, 2022 (ECF Nos. 76-2—6), and supporting exhibits (ECF No. 76-7—12, Ex. A, Termination Notices; Ex. B, Health Screening Questionnaire; Ex. C, Antibody Tests; Ex. D, PS I Love You Flyer; Ex. E, Indeed Post; Ex. F, the Amended Complaint.)

1; 76-13, Second Motion for Preliminary Injunction Mem. at 2; *see generally* Am. Compl. ¶ 442.)  After providing the parties with an opportunity to present evidence and submissions before, during, and after two show cause injunction hearings, Plaintiffs' First Motion for Preliminary Injunction was denied by this Court on November 24, 2021 (ECF No. 33), and Plaintiffs' Second Motion for Preliminary Injunction was denied on February 11, 2022 (ECF No. 89).  Before the Court are the Defendants' motions to dismiss the Plaintiffs' Amended Complaint.

For the reasons discussed below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

The Court first reviews the factual and procedural background of the Court's November 24, 2021 Memorandum and Order ("Nov. 24, 2021 Order") and the Court's February 11, 2022 Memorandum and Order ("Feb. 11, 2022 Order").  (ECF Nos. 33, Nov. 24, 2021 Order; 89, Feb 11, 2022 Order.)  The Court also reviews the operative Amended Complaint, accepting as true, for purposes of the Defendants' 12(b)(6) motions, the factual allegations in the Amended Complaint and drawing all reasonable inferences in Plaintiffs' favor.  *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).  The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015)

5

SPA-6

(internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in [an amended] complaint is inapplicable to legal conclusions.").

Moreover, Plaintiffs attached the operative Amended Complaint as an exhibit in their Second Motion for Preliminary Injunction. (*See* ECF No. 76-12, Second Motion for Preliminary Injunction, Ex. F, Am. Compl.)  In any case, because "[i]n deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence," as well as the operative complaint and attached exhibits, the Court notes that in ruling on the Plaintiff's Second Motion for Preliminary Injunction, the Court has previously reviewed and considered the Amended Complaint and its exhibits in making its findings. *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 282 (E.D.N.Y. 2021) (quotation and citation omitted), *appeal withdrawn*, No. 21-2759, 2022 WL 1316221 (2d Cir. Mar. 17, 2022).  The Court summarizes the relevant facts below.

SPA-7

## 1. First Motion for Preliminary Injunction

The Court's November 24, 2021 Order denied the Plaintiffs' November 17, 2021 First Motion for Preliminary Injunction which sought to enjoin the NYC DOE from withholding pay from or terminating tenured principals, assistant principals, and teachers who failed to obtain a first dose of the vaccine, apply for a religious or medical exemption, or extend their leave without pay ("LWOP") status while retaining health benefits. (*See* ECF No. 33, Nov. 24, 2021 Order at 2-3.)

In the Court's November 24, 2021 Order, the Court found that the processes provided in the Impact Arbitration Award, which was negotiated and established by the NYC DOE and Union Defendants through the arbitration conducted by the Scheinman Defendants, provided Plaintiffs with "constitutionally adequate" pre- and post- deprivation processes. (*Id.* at 19.) In their First Motion for Preliminary Injunction, Plaintiffs failed to address the existence and effect of the Impact Arbitration Award reached between the NYC DOE and Union Defendants, which provided critical context for evaluating the Plaintiffs' first request for preliminary injunction and what

determining pre- and post- deprivation procedures were negotiated and available to Plaintiffs.  (*Id.* at 14.)

The Court's November 24, 2021 Order also noted that Plaintiffs did not have standing to challenge the terms of the Impact Arbitration Awards, and similar awards and agreements, finding that employees represented by a union generally do not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.  (*Id.* at 15.)[6] Nonetheless, the Court considered and concluded, on the record before it, that the Impact Arbitration Award provided adequate processes for pre- and post-deprivation notice and hearing. (*Id.* at 17.)  Specifically, the Court stated in its November 24, 2021 Order:

> The NYC DOE, in compliance with the Vaccination Mandate and for compelling public health reasons, cannot permit noncompliant, unvaccinated employees, absent exemption or accommodation, to work at NYC DOE schools, and the NYC DOE has acted pursuant to the terms of the Impact Arbitration Award for placing noncompliant, nonexempt employees on LWOP. The Impact Arbitration Award clearly explains

_____

[6] "First, it is dubious whether Plaintiffs have standing to challenge the terms of the [Impact Arbitration Decision], because their respective union representatives engaged on their behalf with the NYC DOE, which process resulted in the arbitration awards and agreement.  *See Fleischer v. Barnard Coll.*, No. 20-4213, 2021 WL 5365581, at *4, n. 1 (2d Cir. Nov. 18, 2021) (because a union represented the adjunct professor plaintiff in the arbitration against the defendant, her employer college, plaintiff did not have standing to challenge the arbitration proceeding directly under the Federal Arbitration Act; she could only challenge the arbitration through her claim against the union for breach of its duty of fair representation.) (citing *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) ('[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.'))."

SPA-9

the "exclusive" processes established for
exemptions and accommodation requests and the
appeals process. (ECF No. 19-1, Impact
Arbitration Award, at pp. 6-13.) The Impact
Arbitration Award also clearly provides the
procedures for leave, including procedures for
extending LWOP, returning from LWOP, and a
section on pregnancy and parental leave. (*Id.*
at pp. 13-16.) Finally, the Impact
Arbitration Award describes the options for
separation, including on the part of the
employee as well as on the part of the NYC
DOE. (*Id.* at pp. 16-18.) Thus, the Impact
Arbitration Award provides adequate processes
for pre-deprivation notice and hearing.

An employee's right to be provided with an
opportunity to address concerns before a final
decision is made can be "accomplished through
informal procedures; no formal hearing [is]
required." *Ezekwo v. N.Y.C. Health & Hosps.
Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). . .
. The procedures outlined in CBAs are
generally found to constitute adequate post
deprivation process. *See O'Connor v. Pierson*,
426 F.3d 187, 198 (2d Cir. 2005)[(collecting
cases)] . . . . Further, the Impact
Arbitration Award provides for an expedited
review process for exemptions and
accommodations, providing an opportunity to be
heard for Plaintiffs challenging their
placement on LWOP . . . . Finally, Plaintiffs,
after receiving multiple notices regarding the
Vaccination Mandate and after being notified
of the applicable dates, procedures, and
consequences regarding continued
noncompliance with the Vaccination Mandate,
could still have sought relief through an
Article 78 proceeding in New York State
Supreme Court. The Second Circuit has advised
that the Article 78 proceeding can provide a
sufficient post-deprivation remedy. *See
Hellenic Am. Neighborhood Action Comm. v. City
of New York*, 101 F.3d 877, 881 (2d Cir. 1996)

> ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").

(*Id.* at 17-22)

## 2. The Operative Amended Complaint

On January 10, 2022, Plaintiffs filed the operative Amended Complaint, naming additional parties and attaching new exhibits.[7] (ECF No. 47, Am. Compl.)  The Amended Complaint that the Court considers in deciding the Defendants' instant motions to dismiss does not allege new causes of action.

In their Amended Complaint, as discussed, *infra*, Plaintiffs mischaracterize their requests for declaratory judgment and injunctive relief as the First through Sixth "causes of action."  Plaintiffs also assert a claim under 42 U.S.C. § 1983 against all Defendants for violating Plaintiffs' procedural due process rights and conspiracy claims against the individual Defendants for their roles in negotiating and agreeing to the Impact Arbitration Awards.  (*Id.* at ¶¶ 112-19, 135, 331-35, 33852, 367-88, 403-25.)  Plaintiffs seek the following relief, including declaratory judgment as to the NYC DOE's allegedly violative suspension of Plaintiffs without pay and due process; declaratory judgment as to the allegedly

---

[7] The Amended Complaint (ECF No. 47) includes the following exhibits: (ECF No. 47-1-47-14, Ex. A, About the UFT; Ex. B, What is CSA; Ex. C, Local 371 Webpage; Ex. D, Local 1251 Webpage; Ex. E, UFT Arbitration Award; Ex. F, CSA Arbitration Award; Ex. G, Vaccination Mandate Order; Ex. H, NY Post Article; Ex. I, Declaration of Impasse; Ex. J, PERB Appointment, Ex. K, Klinger Email; Ex. L, Teachers CBA, Ex. M, DC 37 MOA, Ex. N, NYE DOE Release Form.)

illegal Arbitration Awards and agreements between the Defendant unions and the NYC DOE; declaratory judgment as to the allegedly coercive and void NYC DOE Release Forms signed by certain Plaintiffs;[8] collusion and aiding and abetting conspiracy claims under Title 42 U.S.C. § 1983 against the NYC DOE, the Union Defendants, and the Scheinman Arbitration and Mediation defendants; and injunctive relief against the NYC DOE for the alleged violation of Plaintiffs' procedural due process rights. (*See generally*, ECF No. 47, Am. Compl. ¶ 442.)

Accordingly, fundamental to the Court's consideration of Defendants' motions to dismiss are the available processes leading up to the termination of Plaintiffs' employment by the NYC DOE and whether those procedures satisfied Due Process.  On January 31, 2022, the NYC DOE notified employees who had failed to receive a COVID-19 vaccine and also failed to either (1) apply for and receive a medical or religious accommodation, or (2) extend their LWOP status and continued medical benefits until September 2022, that their employment would terminate on

---

[8] The Court notes that in Plaintiffs' opposition memorandum, they assert that "none of the Defendants have sought to dismiss the Plaintiffs' Fifth Cause of Action" and that the Court should therefore not dismiss it.  (ECF No. 126, Pls. Opp'n Mem. at 22.)  Defendant NYC DOE moved to dismiss Plaintiffs' Amended Complaint in its entirety (ECF No. 116, DOE Mot. to Dismiss Mem. at 25) for the reasons discussed *supra*, the Court dismisses the Fifth Cause of Action for a failure to state a claim.

February 11, 2022.  (*See* ECF No. 76-7, Pls. Ex. A, Termination
Notices.)[9]

### 3. Second Motion for Preliminary Injunction

On February 8, 2022, Plaintiffs filed their Second
Motion for Preliminary Injunction, prompted by the DOE's notices
of termination.  (ECF No. 76, Second Motion for Preliminary
Injunction.)  The parties fully briefed the preliminary
injunction by February 10, 2022. (ECF Nos. 79, NYC DOE Mem.; 79-
2, App. B.; 82, Pls. Reply Mem.)[10]  Plaintiffs sought to enjoin,
among other things, the NYC DOE from terminating their
employment without due process, and to be restored to employment
status with the NYC DOE, after having been placed on LWOP
several months before on October 4, 2021 and having received
notice of their impending termination on February 11, 2022 for
failure to comply with the Vaccination Mandate.  (*See* ECF Nos.
76-13, Second Motion for Preliminary Injunction Mem.; 1-1, Am.
Compl. Ex. A, Oct. 2, 2021, Email from NYC DOE; 76-7, Pls. Ex.
A, Termination Notices.)  Plaintiffs also sought to enjoin the
termination of their medical benefits on February 11, 2022,

---

[9] Of the ninety-three Plaintiffs, forty-three received termination notices and
faced termination from their employment at the NYC DOE, effective on February
11, 2022.  (ECF No. 76-1, Graff Aff., n.1.)  Other Plaintiffs had already
signed NYC DOE Release Forms which extended their LWOP status to September
2022.  (ECF No. 47, Am. Compl. ¶ 315.)
[10] The Defendants memorandum also included Appendix A providing copies of two
relevant New York State Supreme Court Cases (ECF No. 79-2, App. A.), and
Appendix B, providing the Affirmation of Dr. Michelle E. Morse, M.D., M.P.H.,
the Chief Medical Officer of the Department of Health and Mental Hygiene of
the City of New York.  (ECF No. 79-2, App. B.; ECF No. 82, Pls. Reply Mem.)

despite having been notified of their ability by November 30, 2021, to extend their LWOP status and medical benefits through September 2022. (*See* ECF Nos. 76-13, Second Motion for Preliminary Injunction Mem.; 33, Nov. 24, 2021 Order at 21-22.)

The Court denied Plaintiffs' Second Motion for a Preliminary Injunction in its February 11, 2022 Order (ECF No. 89), because the Court found, as it did in the November 24, 2021 Order, that pre- and post-deprivation processes Plaintiffs were afforded regarding the Vaccination Mandate and its impact on Plaintiffs' continued employment and pay were constitutionally adequate. (ECF No. 89, Feb. 11, 2022 Order at 14-15, 33.) The Court noted that, "Importantly, the parties do not dispute that the [Impact Arbitration] Awards and the CBAs provided for expedited review processes for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging the deprivation of their pay." (*Id.* at 19.) The Court also noted that "none of the relevant parties, [including Plaintiffs], dispute that the Vaccination Mandate is lawful and requires all NYC DOE employees to be vaccinated, or to receive an exemption or accommodation," and that instead Plaintiffs alleged that the termination of employees pursuant to the

SPA-14

Vaccination Mandate was unlawful due to a lack of procedural due process. (*Id.* at 21-22.)

Citing to Second Circuit authority, the Court noted, "A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005)." (*Id.* at 19.) The Court found that the NYC DOE had provided constitutionally sufficient pre- and post- deprivation procedures, to the Plaintiffs who were notified of being terminated or having pay withheld due to their failure to get the vaccine, and were provided procedures to seek relief. (*Id.* at 19.)

In its February 11, 2022 Order, the Court also reiterated its findings in the November 24, 2021 Order, and confirmed that, "Plaintiffs have not submitted any new or supplemental evidence in support of their instant motion that compels the Court to conclude that any of the adequate and available processes have been withheld from the Plaintiffs." (*Id.* at 16.) The Court specifically found that the Plaintiffs had a property interest in their continued employment and that:

> [First,] [t]he pre- and post-deprivation processes available to Plaintiffs, as described in the Court's November 24, 2021, Order, were made known to Plaintiffs well in advance of any action by the NYC DOE, and were

14

SPA-15

> and are available through their unions and through established state procedures.
>
> Second, the pre- and post-deprivation proceedings articulated in the Awards were incorporated into the Plaintiffs' collective bargaining agreements . . . The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process . . . [and] Plaintiffs can still seek relief through Article 78 proceedings . . . . The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post deprivation remedy.

(*Id.* at 17-20.)

Accordingly, in its February 11, 2022 Order, the Court held that the, "Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs as affected by the relevant Arbitration Awards or agreements and all relevant state statutes." (*Id.* at 21.)

### 4. Defendants' Motions to Dismiss

On the same day that the Court denied Plaintiffs' Second Motion for Preliminary Injunction, the Court set a pre-motion conference for February 25, 2022 to schedule the Defendants' anticipated motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Feb. 11, 2022 Pre-Motion Conf. Order.) On May 24, 2022, the parties fully briefed the Defendants' motions to dismiss, including the

SPA-16

Plaintiffs' consolidated opposition memorandum and each of the Defendants' respective replies.[11]

On July 7, 2022, the Plaintiffs filed for leave to provide supplemental briefing or amend their opposition brief to Defendants' motions to dismiss.  (ECF No. 133, Pl. Letter.)  The Defendants (except for DC 37) each responded by letter.  (ECF Nos. 134 UFT/CSA Supp. Letter; 135, Scheinman Supp. Letter; 135, DOE Supp. Letter.)  On July 12, 2022, the Court denied Plaintiff's motion for leave to file or amend their opposition memorandum, explaining that further briefing would not be necessary, though the Court would consider the letters already filed.  (July 12, 2022 Order.)  On February 13, 2023, in light of the City of New York's announcement that it had discontinued the Vaccination Mandate for municipal workers on February 10, 2023, the parties were ordered to advise the Court of their respective views as to which issues, if any, in this action have been mooted, and which issues remain.  (Feb. 13, 2023 Order.) The parties responded by letter.  (ECF Nos. 138, DOE 2d. Supp. Letter; 140, UFT/CSA 2d. Supp. Letter; 141, DC 37 2d. Supp. Letter; 142, Scheinman 2d. Supp. Letter.)  The parties

---

[11] ECF Nos. 114, DOE Mot. to Dismiss; 115, DOE Decl.; 116, DOE Mot. to Dismiss Mem.; 117, DC 37 Mot. to Dismiss; 118, DC 37 Mot. to Dismiss Mem.; 119, DC 37 Reply; 121, CSA-UFT Mot. to Dismiss; 122, CSA-UFT Mot. to Dismiss Mem.; 124-124-4, Scheinman Mot. to Dismiss Mem. and exhibits attached thereto; 125, Pls. Decls.; 126, Pls. Opp'n Mem.; 127, DOE Reply; 128, CSA-UFT Reply; Scheinman Reply.

**SPA-17**

responded, all acknowledging that there remained at least some
live issues, given that employees who had been terminated for
failure to show proof of vaccination would not automatically be
reinstated to their prior positions with back pay.  (ECF Nos.
138; 140; 141; 142.)

### LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule
12(b)(6), a complaint must contain sufficient factual matter,
accepted as true, to "'state a claim to relief that is plausible
on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,
(2007)).  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
conduct alleged."  *Id.*

When considering a motion to dismiss under Rule
12(b)(6), a district court must "accept as true all factual
allegations in the complaint and draw all reasonable
inferences in favor of the non-moving party."  *Pollok v. Chen*,
806 F. App'x 40, 44 (2d Cir. 2020) (citation omitted) (summary
order).  In considering a 12(b)(6) motion, the Court may refer
to "documents attached to [the complaint] or incorporated in it
by reference, documents 'integral' to the complaint and relied
upon [by the plaintiff], and facts of which judicial notice may

17

SPA-18

properly be taken . . ." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "a plaintiff's *reliance* on the terms and effect of document in drafting the complaint is a necessary prerequisite to the court's consideration of a document on a dismissal motion; mere notice of possession is not enough.") (emphasis in original).

"[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). In taking judicial notice of such public records, the Court does so only to establish "the fact of such litigation," not for the truth of the matters asserted in that proceeding. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

18

**SPA-19**

## DISCUSSION

### I.  Declaratory Judgment and Injunctive Relief

In Plaintiffs' Amended Complaint, the first through fifth causes of action request a declaratory judgment, presumably under the Declaratory Judgment Act ("DJA"), and the sixth cause of action requests injunctive relief.  (ECF No. 47, Am. Compl. ¶¶ 272-327.)  The DJA "provides a remedy, not a cause of action."  *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) (summary order).  "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action."  *Id.* at *20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") (collecting cases).  Because Plaintiffs' first through sixth causes of action request remedies, rather than plead facts to support separate causes of action, the first through sixth causes of action are dismissed for failure to state a claim.[12]

The Court will now discuss its prior findings and final conclusions in its Orders dated November 24, 2021 and February 11, 2022 about the Plaintiffs' underlying procedural due process claims and § 1983 conspiracy claims.

19

## II.   The Court's Prior Legal Findings

Plaintiffs allege in their Amended Complaint that, "[t]his is a civil action seeking injunctive relief, declarative judgment relief to protect the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment). . . . [and] a monetary damages award on behalf of the Plaintiffs and against the Defendants pursuant to 42 U.S.C. § 1983 for a conspiracy to violate the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment)." (ECF No. 47, Am. Compl. ¶¶ 112-13.) Thus, the primary question the Court must again answer in deciding Defendants' motions to dismiss is whether the Amended Complaint sufficiently pleads that Defendant NYC DOE provided inadequate pre- and post- deprivation procedural due process required by the Constitution and, should be enjoined and restrained by this Court from withholding pay or terminating pay for employees who failed to comply with the Vaccination Mandate. (*See* Am. Compl. ¶¶ 272-442.)

A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process.  *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Pre-deprivation

SPA-21

processes "need not be elaborate," and "the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond." *See O'Connor*, 426 F.3d at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

For the reasons below, the Court dismisses the Plaintiffs' allegations that they were not provided constitutionally sufficient procedural due process by NYC DOE.

### a. Law of the Case Doctrine

Defendants argue that the law of the case doctrine precludes re-litigation of Plaintiffs' procedural due process claims,in light of the Court's multiple orders denying Plaintiffs' motions for preliminary injunction. (ECF No. 116, DOE Mot. to Dismiss Mem. at 6-11). The law of the case doctrine holds that a court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)).

With respect to applying the law as determined in this Court's preliminary injunction decisions prior to the current motions to dismiss, the Court notes that the "preliminary determination of likelihood of success on the merits in a ruling

21

on a motion for preliminary injunction is ordinarily

tentative[.]"  *Goodheart Clothing Co., Inc. v. Laura Goodman*

*Enters., Inc*., 962 F.2d 268, 274 (2d Cir. 1992).  The Court

acknowledges that "[a] party . . . is not required to prove

[their] case in full at a preliminary-injunction hearing, and

the findings of fact and conclusions of law made by a court

granting a preliminary injunction are not binding at trial on

the merits."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395

(1981) (citations omitted).

    Thus, the Court need not decide here whether the law

of the case doctrine applies to *prevent or compel* this Court's

reconsideration of the factual and legal issues discussed in its

November 24, 2021 and February 12, 2022 Orders denying

Plaintiffs' motions for a preliminary injunction on the same

claims.  *Cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d

Cir. 2021) (the law of the case doctrine is "discretionary and

does not limit a court's power to reconsider its own decision

prior to final judgment" (quoting V*irgin Atl. Airways, Ltd. v.*

*Nat'l Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992))).

    For the reasons set forth below, however, the Court

determines that the factual findings and legal analysis in the

Court's November 21, 2021 and February 11, 2022 Orders may be

useful in considering the Defendants' instant motions to dismiss.

### b. Plaintiffs' Procedural Due Process Claim

Plaintiffs filed the Amended Complaint after their First Motion for Preliminary Injunction and the Court's November 24, 2021 Order denying the Plaintiffs' First Motion, and before Plaintiff's Second Motion for Preliminary Injunction and February 11, 2022 Order denying the Plaintiffs' Second Motion. Plaintiffs' allegations in their Amended Complaint and in their opposition to the Defendants' motions to dismiss are duplicative of the identical issues before the Court in their two motions for a preliminary injunction. *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) ("The law of the case doctrine, although not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons, including, *inter alia*, the need to correct a clear error or prevent manifest injustice.") (internal quotation marks omitted).

Furthermore, because Plaintiffs sought both a prohibitory and mandatory injunction in their First and Second Motions for a Preliminary Injunction, the Court previously reviewed the merits of Plaintiffs' legal arguments under the higher pleading standard and found twice that Plaintiffs had failed to demonstrate a "clear" or "substantial" likelihood of

success on the merits of their procedural due process claims, rather than merely a likelihood of success.  (*See* ECF Nos. 33, Nov. 24, 2021 Order at 14; 89, Feb. 11, 2022 Order at 12.)  *See also Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.")

Accordingly, having reviewed at length the Plaintiffs' procedural due process allegations in the Amended Complaint and as articulated in the Plaintiffs' submissions, the Court determines that the legal analysis in the November 24, 2021 and February 12, 2022 Orders denying a preliminary injunction addresses most of the issues presented by Defendants' motions to dismiss, specifically the sufficiency of Plaintiffs' allegations.  Barring "an intervening change in law" or "availability of new evidence," discussed further below, the Court will incorporate its analysis to find *on the merits* that Plaintiffs' Amended Complaint fails to state viable claims

24

SPA-25

because: (1) the COH Order was a lawful condition of employment, and (2) the Plaintiffs were adequately notified of the pre- and post-deprivation processes to challenge the pending deprivation of Plaintiffs' continued employment and pay.  The facts alleged in the Amended Complaint establish that the pre- and post-deprivation procedures were constitutionally adequate to satisfy Due Process.  *Johnson*, 564 F.3d at 99-100.

### c. No New Evidence

The Court notes that it considered the Amended Complaint and its exhibits when making its ruling on the Plaintiffs' Second Motion for Preliminary Injunction on the same issues.  (ECF No. 76-12, Second Motion for Preliminary Injunction, Ex. F, Amended Complaint.)  *See Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 725 n. 2 (S.D.N.Y. 2019) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence.").  As briefly discussed *supra*, any evidence presented and incorporated in Plaintiffs' Amended Complaint did not, and still does not, alter the Court's considerations when analyzing the procedural due process claims in the Plaintiffs' Second Motion for Preliminary Injunction and the issues in the sufficiency of Plaintiffs' allegations in considering Defendants' motions to dismiss.  The Amended Complaint's exhibits included the full

SPA-26

CBAs of Union Defendants, the Impact Arbitration Award, the
Declaration of Impasse, and the PERB appointment. (*See* ECF No.
47-1-47-14, Am. Compl., Exs. A to N.)

　　　　With their Second Motion for Preliminary Injunction,
the Plaintiffs submitted more declarations from Plaintiffs and
termination notices along with the Amended Complaint, and the
Court found that, "Plaintiffs have not submitted any new or
supplemental evidence in support of their instant motion that
compels the Court to conclude that any of the adequate and
available processes have been withheld from the Plaintiffs."
(ECF No. 89, Feb. 11, 2022 Order at 16.)   The Court again found
that the Plaintiffs did not, because they could not, demonstrate
a "clear" or "substantial" likelihood of success on the merits
for their procedural due process claims.  (*Id.* at 12.)

　　　　Here, the Plaintiffs added new exhibits in their
opposition motion to Defendants' motions to dismiss, which were
not attached or referred to in the Plaintiffs' Amended
Complaint.[13]  (*See* ECF No. 125-125-7, Graff Aff. and Exs. A to
G.)   Courts in this Circuit have made clear that a plaintiff
may not bolster a deficient complaint through extrinsic

---

[13] Plaintiffs' opposition memorandum included an affirmation from Plaintiffs'
counsel Austin Graff, Esq. (ECF No. 125) and six copies of various appeal
decisions and copies of notifications from the NYC DOE terminating employees.
(ECF No. 125-1-125-7, Ex. A, Arbitrator Scheinman Decision; Ex. B, Arbitrator
Peak Decision; Ex. C, Arbitrator McCray Decision; Ex. D, Arbitrator Grey
Decision; Ex. E, Arbitrator Reilly Decision; Ex. F, Arbitrator Torrey
Decision; Ex. G, Notice of Determinations.)

SPA-27

documents submitted in opposition to a defendant's motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); *S B ICE, LLC v. MGN, LLC*, No. 08-CV-3164, 2008 WL 4682152, at *1 n.1 (S.D.N.Y. Oct. 20, 2008) (considering only the complaint, exhibits attached to the complaint, and documents integral to the complaint). If, however, the extrinsic evidence is attached to, incorporated in, or integral to the complaint, it may be considered on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding that pleadings are not limited to the four corners of a complaint but can include "'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'")

The Court finds that Plaintiffs' new exhibits are either not integral to the Amended Complaint's allegations or have previously been considered by the Court when denying the Plaintiffs' motions for preliminary injunction. *Cf. Chambers*, 282 F.3d at 153 ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.")(citation omitted). The factual record, therefore, remains unchanged in

27

any relevant manner from the time of the filing of the Amended Complaint and the Court's February 11, 2022 Order denying the Plaintiffs' Second Motion for Preliminary Injunction. Considering the sufficiency of the Amended Complaint's factual allegations, the Court finds that Plaintiffs fail to state a claim because they allege facts showing that they were afforded due process prior to the suspension and termination of their employment by DOE.  Thus, Plaintiffs' Amended Complaint fails to state claims for violations of Plaintiffs' Due Process Rights.

### d. Intervening Law

Third, there has been no change in intervening law since the Court's November 24, 2021 and February 11, 2022 Orders finding that Plaintiffs' procedural due process rights were not violated, despite a substantial amount of litigation concerning the New York City's Vaccination Mandate.[14]   *See, e.g., Marciano*

---

[14] The Court's procedural due process findings are not based on the process required by state or municipal statutes.  Moreover, there has not been a substantial change in intervening law concerning this Court's finding that the Vaccination Mandate was a condition of employment.  *See Andre-Rodney v. Hochul*, No. 21-cv-1053 (BKS) (CFH), 2022 WL 3027094 (N.D.N.Y. Aug. 1, 2022) (vaccine was condition of employment for healthcare workers); *D'Cunha v. Northwell Health Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520 (E.D.N.Y. Feb. 28, 2023) (same); *Conmey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548 (S.D.N.Y. Aug. 11, 2022) (finding vaccination to be condition of employment for porter); *Kane v. de Blasio,* No. 21-CV-7863 (NRB), 2022 WL 3701183 (S.D.N.Y. Aug. 26, 2022) (vaccine was condition of employment); *Marciano*, 589 F. Supp. 3d at 436 (same).  Nearly all other New York state courts to address the issue have found that the Vaccination Mandate was a condition of employment.  *Compare Garvey v. City of New York*, 77 Misc. 3d 585 (N.Y. Sup. Ct., Richmond Cnty., Oct. 24, 2022) (finding mandate was not a condition of employment), *with Clarke v. Bd. of Educ. of City Sch.*, Index No. 160787/21, 2023 WL 2124546 (N.Y. App. Div. 1st Dep't, Feb. 21, 2023) (finding mandate was a condition of employment); *Ansbro v. Nigro*, No. 531749/2021 (N.Y. Sup. Ct. Kings Cnty. Sep. 21, 2022) (same); *N.Y.C. Mun. Labor Comm. v. City of N.Y.*, 2022 NY Slip Op. 22121 (N. Y. Sup. Ct. N.Y. Cnty. Apr. 21, 2022)

*v. de Blasio*, 589 F. Supp. 3d 423, 436 (E.D.N.Y. 2022)

(plaintiff received constitutionally sufficient minimum process

for New York City Police Department (NYPD) vaccine policy);

*Kane v. de Blasio*, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *12

(S.D.N.Y. Aug. 26, 2022) (constitutionally sufficient minimum

process was provided for DOE workers); *cf. Donohue v. Hochul*,

No. 21-CV-8463 (JPO), 2022 WL 673636, at *7-9 (S.D.N.Y. Mar. 7,

2022) (public-school mask mandate did not implicate procedural

due process concerns); *Commey v. Adams*, No. 22-CV-0018 (RA),

2022 WL 3286548, at *6 (S.D.N.Y. Aug. 11, 2022) (no procedural

due process concerns because mandate was legislative in nature);

*Collins v. City Univ. of New York*, No. 21-CV-9544 (NRB), 2023 WL

1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (same); *Mongielo v.

Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *17-18 (W.D.N.Y.

Mar. 1, 2023) (same).

     Accordingly, the Court reaches the same conclusions

about Plaintiffs' procedural due process claims as alleged in

their Amended Complaint, and finds that Defendants provided

---

(same); *O'Reilly v. Bd. of Educ. of City Sch. Dist. of City of New York*, No.
16104/21, 2023 WL 2124731, at *1 (N.Y. 1st Dep't, Feb. 21, 2023) (same).
Plaintiffs also argued in a supplemental letter that the Court should
consider an Opinion and Award issued by the Scheinman Defendants in June
2021, filed as an exhibit in a state court case.  (ECF 133, Pls. Supp.
Letter.)  To the extent the Plaintiffs try to assert that the June 2021
Arbitration Opinion and Award or the ongoing state court case are
"intervening law," as discussed extensively below, the Court bases its
procedural due process finding on constitutional standards, not on state or
municipal standards.  Furthermore, given that the June 2021 Arbitration
Opinion and Award does not apply in any way to the Plaintiffs in this case,
the Court finds it unpersuasive.  (ECF No. 135, DOE Supp. Letter at 1-2.)

sufficient notice and opportunity to Plaintiffs to satisfy procedural due process regarding the condition of their employment that they receive the COVID-19 vaccination.

### III.   Plaintiffs' Opposition to the Motions to Dismiss

In opposition to the Defendants' motions to dismiss all of their claims, the Plaintiffs no longer contend that the Arbitration Awards and CBAs provided inadequate pre- and post-deprivation procedures, as Plaintiffs had already conceded this issue in their Second Motion for Preliminary Injunction. (*See generally* ECF Nos. 126, Pl. Opp'n Mem.; 89, Feb. 11, 2022 Order at 19.)  Nor do Plaintiffs dispute that the Vaccination Mandate itself was a lawful condition of employment, as they had also conceded this issue in their Second Motion for Preliminary Injunction. (*See generally* ECF Nos. 126, Pl. Opp'n Mem.; 89, Feb. 11, 2022 Order at 21-22. )

Rather than defend the sufficiency of their allegations, Plaintiffs' opposition memorandum asserts that "if" the UFT, CSA, and DC-37 Impact Arbitration Awards and Agreements are invalid under state statutory and case law because Defendants lacked authority to arbitrate and agree to the Impact Arbitration Awards, "the pre- and post- deprivation process[es] were also invalid and therefore, the Court's prior rulings must be revisited." (ECF No. 126, Pl. Opp'n Mem. at 9-10.)  The Plaintiffs specifically assert in their opposition memorandum

**SPA-31**

that the Union Defendants and DOE lacked authority to enter into arbitration with the Plaintiffs' unions to resolve their impasse, and that the arbitration awards violated New York Civil Service Law § 209 and was contrary to the New York State Court of Appeals case, *Board of Education of City of School Dist. v. New York State Public Employment Relations Bd.*, 75 N.Y.2d 660, 671 (1990).

In addition, despite Plaintiffs' concession that the Vaccination Mandate was a condition of employment, Plaintiffs also contend in their opposition memorandum that the NYC DOE violated New York Civil Service Law § 201.4 and argue again that the Court must also revisit its prior finding that the Vaccination Mandate was a condition of employment.  (ECF No. 126, Pl. Opp'n Mem. at 9-10.)  Thus, Plaintiffs contend that due to the "illegal, improper" Impact Arbitration Awards and condition of employment, "the Plaintiffs suffered a denial of their federal statutory rights, State statutory rights, and constitutional rights and privileges."  (ECF No. 126, Pls. Opp'n Mem. at 25.)  The Court, however, has already twice found, and finds again, that the Plaintiffs' constitutional rights to be notified of, and challenge the implementation of the Vaccination Mandate under the Due Process Clause were satisfied

by the Defendants' Arbitration Awards and other pre- and post-deprivation processes.

Moreover, although the Court previously has expressed doubt that the Plaintiffs had standing to challenge the terms of the Impact Arbitration Awards negotiated by their unions (ECF No. 33, Nov. 24, 2021 Order at 15)(citing *Katir v. Columbia Univ.* 15 F.3d 23, 24-25 (2d Cir. 1994)), the Court need not resolve the Plaintiffs' Due Process claim based on Plaintiffs' challenge to the legality of the Impact Arbitration Awards, because the correct inquiry is whether available state procedures, state laws and contract rights, satisfy federal constitutional requirements. Specifically, the Court defined the applicable federal constitutional analysis in its February 11, 2022 Order as follows:

> The Court must determine not whether state procedural law was correctly followed or applied, but rather, whether the processes provided by state procedures, contract rights, or other available processes satisfy constitutional requirements. To determine whether available processes are adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (emphasis added); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d

> 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that
> the State may have specified its own
> procedures that it may deem adequate for
> determining the preconditions to adverse
> official action . . . does not settle what
> protection the federal due process clause
> requires.") (internal quotation marks and
> citation omitted). As before, the Court finds
> that the processes available to Plaintiffs,
> including but not limited to statutes and
> contractual procedures, are constitutionally
> sufficient.

(*Id.* at 14.)

The Court's prior legal conclusion quoted above remains valid. Having found that the Impact Arbitration Awards and other procedures and remedies were constitutionally sufficient, the Court need not and will not determine whether the Impact Arbitration Awards are valid under state statutory and state case law. Indeed, the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant's conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant's failure to comply with state law. *See Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019) ("violation of state law does not *per se* result in a violation of the Due Process Clause").

Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See*

*McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations."); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987) ("State procedural requirements do not establish federal constitutional rights.  At most, any violation of state procedural requirements would create liability under state law[.]" (citations omitted)).

In their Amended Complaint, the Plaintiffs do not allege any facts plausibly supporting their allegations of "infirmities in the [Awards]," or violation of their Due Process Rights.  (ECF No. 126, Pls. Opp'n Mem. at 8, 17, 23.)  *See also Bell Atl. Corp.*, 550 U.S. 544, 557 (2007).  When considering a Rule 12(b)(6) motion, courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  Here, the allegations in the Amended Complaint establish that the Awards and the CBAs provided for expedited review and appeal processes for exemptions and accommodations, providing an opportunity to Plaintiffs to be heard in challenging the deprivation of their pay.  *See Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991) (finding that an  employee's right to be

34

provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required."). Having determined that the Plaintiffs were afforded constitutionally adequate pre- and post- deprivation due process, the Court grants Defendants' motions to dismiss Plaintiffs' due process claims.

## IV.   Other Causes of Action

### a. § 1983 Conspiracy

Having dismissed the Plaintiffs' claim that Defendants violated their due process rights, the Court also finds that Plaintiffs' allegations are insufficient to state a plausible conspiracy claim under § 1983 against all Defendants. "To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'" *Barnes v. Abdullah*, No. 11-CV-8168 (RA), 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)); *Sibiski v. Cuomo*, No. 08-CV-3376 (SJF)(ARL), 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed."

SPA-36

*Poole v. New York*, No. 11-CV-921 (JFB)(AKT), 2012 WL 727206, at
*6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F.
App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only
conclusory, vague, or general allegations that the defendants
have engaged in a conspiracy to deprive the plaintiff of his
constitutional rights are properly dismissed; diffuse and
expansive allegations are insufficient, unless amplified by
specific instances of misconduct." (alteration in original)
(internal quotation marks omitted)).  Plaintiff "must allege . .
. overt acts which defendants engaged in which were reasonably
related to the promotion of the alleged conspiracy."  *Elmasri v.
England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal
quotation marks omitted).

　　　Plaintiffs allegations fail to state a § 1983
conspiracy claim for several reasons.  First, as previously
determined, Plaintiffs have not sufficiently alleged an
underlying constitutional violation in their Amended Complaint.
Therefore, Plaintiffs' § 1983 conspiracy claim fails as a matter
of law.  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d
Cir. 1995) (a § 1983 conspiracy claim "will stand only insofar
as the plaintiff can prove the *sine qua non* of a § 1983 action:
the violation of a federal right"); *AK Tournament Play, Inc. v.
Town of Wallkill*, No. 09-CV-10579 (LAP), 2011 WL 197216, at *4
(S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims

36

SPA-37

against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Second, the Union Defendants and Scheinman Defendants are not state actors. To state a § 1983 conspiracy claim against a private entity, "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). The Supreme Court considers a private actor acting under the color of state law, when the private actor "is a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The Court finds that the allegations fail to plausibly allege that the Union Defendants and the DOE were acting in concert with a state actor to deny Plaintiffs' constitutional rights. Instead, they were in inherently adversarial positions because "the Union . . . represent[ed] [city] employees, and thus must be considered to be an adversary of the [city] government." *McGovern v. Loc. 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen &*

SPA-38

*Helpers of Am., AFL--CIO*, 107 F. Supp. 2d 311, 317 (S.D.N.Y. 2000).

That the Plaintiffs were disappointed with the Union Defendants' representation does not establish a viable claim of § 1983 conspiracy, especially where the Amended Complaint lacks any factual allegations that the Defendants reached a "meeting of the minds" to violate Plaintiffs' constitutional rights. *Ciambriello*, 292 F.3d at 324 (dismissing claims against union premised on conduct fairly attributable to the state and § 1983 conspiracy because "the very proceeding in which [plaintiff] alleges that [the union] conspired with the County — the arbitration — placed [the union] and the County in adversarial positions"). Instead, because the Union Defendants and DOE were at an impasse, they engaged in the very arbitration that resulted in the challenged Impact Arbitration Awards. The Court also finds that Plaintiff has not alleged sufficient facts to establish that the Scheinman Defendants are state actors, who agreed with DOE and the Unions to deprive Plaintiffs of their Due Process rights, and therefore, Plaintiffs' § 1983 conspiracy claims fail.

Third, Plaintiffs do not proffer any nonconclusory facts regarding the nature of the conspiracy or the overt steps taken by any of the Defendants in furtherance of that conspiracy. Apart from "diffuse and expansive allegations" that

**SPA-39**

are not "amplified by specific instances of misconduct," *Krug*, 368 F. App'x at 270 (internal quotation marks omitted), the Amended Complaint is bereft of any facts sufficient to give rise to a plausible § 1983 conspiracy claim.  In fact, the repeated references in the Amended Complaint merely refer to a conspiracy based on Plaintiffs' vague and conclusory assertions that "[a]s a result of the conspiracy between [all Defendants], the [individual Plaintiff's] constitutional rights have been violated."  (ECF No. 47, Am. Compl. ¶¶ 113, 172-75, 183-86, 206-17.)  Plaintiffs' bald allegations, however, do not give rise to a plausible inference that Defendants acted in concert to violate Plaintiffs' constitutional rights when, to the contrary, the DOE and Union Defendants entered into arbitrations that resulted in agreements to provide constitutionally required pre- and post- deprivation procedures for the termination of employees who failed to comply with the Vaccination Mandate. The speculative allegations in Plaintiffs' Amended Complaint "constitute the type of vague, conclusory, and general allegations that, standing alone, are routinely found lacking under Rule 12(b)(6)."  *Orr ex rel. Orr v. Miller Place Union Free Sch. Dist.*, No. 07-CV-787 (DRH)(AKT), 2008 WL 2716787, at *5 (E.D.N.Y. July 9, 2008) (internal quotation marks omitted); *Rodriguez v. City of New York*, No. 08-CV-4173 (RRM)(RLM), 2012 WL 1059415, at *13 (E.D.N.Y. Mar. 28, 2012) (dismissing

plaintiff's § 1983 conspiracy claim on ground that claim was based on "vague and broad references" and "sheer speculation").

Accordingly, the Plaintiffs' § 1983 conspiracy claims against the Defendants are dismissed for failure to state a claim.

### b. Class Claim

Because Plaintiffs' claims fail to state a claim, their class allegations also fail. *Cf. Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (noting that where court dismissed a claim under Rule 12(c), motion to strike class allegations could be granted as to that claim.)

### V.   Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss claims without leave to amend where the proposed amendments would be futile. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (*citing Foman v. Davis*, 381 U.S. 178, 182 (1962)). An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule

12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).  Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies.  *Ruotolo*, 514 F.3d at 191 (citing *Foman*, 381 U.S. at 182); *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

Here, after extensive briefing, evidentiary submissions, and a show cause hearing, the Court allowed Plaintiffs an opportunity to amend their complaint.  (ECF No. 33, Nov. 24, 2021 Order; ECF No. 47, Am. Compl.)  Despite the Court's detailed analysis of Plaintiffs' claims in its November 24, 2021 Order, Plaintiffs have again failed to allege facts supporting their claims.  Under these circumstances, and because further amendments to the complaint would not cure the deficiencies discussed in this opinion, any amendment would be futile.  Plaintiffs' complaint is, therefore, dismissed with prejudice.  *See, e.g., Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (holding that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the

SPA-42

complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile.").

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED in their entirety and leave to amend is DENIED.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated:     March 30, 2023
           Brooklyn, New York


                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

42

SPA-43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Nicole BROECKER, et al,

                    Plaintiffs,               JUDGMENT
      v.                                  21-CV-6387(KAM)(LRM)

New York City Department of Education, et al,

                    Defendants.
---------------------------------------------------------------X
     A Memorandum and Order of Honorable Kiyo A. Matsumoto, United States District

Judge, having been filed on March 30, 2023, granting Defendants' Motions to Dismiss in their

entirety; and denying leave to amend; it is

     ORDERED and ADJUDGED that Defendants' Motions to Dismiss are granted in their

entirety; that Defendants' claims are dismissed with prejudice; and that leave to amend is denied.

Dated: Brooklyn, New York              Brenna B. Mahoney
      March 31, 2023             Clerk of Court

                              By:    /s/Jalitza Poveda
                                      Deputy Clerk

SPA-44

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
Nicole BROECKER,
et al,

              Plaintiffs,

       - against -

New York City Department of Education,
City of New York, Meisha Porter, in her
official and individual capacities, United
Federation of Teachers, Local 2, American
Federation of Teachers, AFL-CIO, Michael
Mulgrew, in his official and individual
capacities, John Doe #1-10, in their
official and individual capacities, and
Jane Doe #1-10 in their official and
individual capacities,

             Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

21-CV-6387 (KAM)(RLM)

**MATSUMOTO, United States District Judge:**

      The 83 named Plaintiffs are individuals (collectively

"Plaintiffs") who have not received at least a first dose of a

COVID-19 vaccine and are employees at schools operated by the New

York City Department of Education ("NYC DOE").[1] Named Defendants

are the NYC DOE, the City of New York, Meisha Porter, the

Chancellor of the NYC DOE, the United Federation of Teachers,

Local 2, American Federation of Teachers, AFL-CIO ("UFT"), and

Michael Mulgrew, President of the UFT (collectively

---

[1] Named Plaintiffs include a tenured principal, an assistant principal, tenured
teachers, paraprofessionals, an education administrator, a speech language
pathologist, a social worker, a parent coordinator, a guidance counselor, a
school counselor, and a secretary. (ECF No. 1, Compl., at pp. 14-15.)

1

SPA-45

"Defendants").  Defendants NYC DOE and the City of New York are
entities responsible for enacting and enforcing a COVID-19
vaccination mandate (the "Vaccination Mandate") issued on August
24, 2021, requiring that all NYC DOE employees receive at least a
first dose of a COVID-19 vaccination by September 27, 2021, in
order to work at NYC DOE schools.  Defendant UFT is a labor
organization through which certain named Plaintiffs are covered
by a collective bargaining agreement ("CBA") with the NYC DOE.

Plaintiffs allege three categories of claims in their
Complaint. First, they allege that the Order violates their right
to procedural due process under the Due Process Clause of the
Fourteenth Amendment because Plaintiffs have a property interest
in their pay.  (ECF No. 2-10, Pl. Mem., at p. 1.)  Second,
Plaintiffs allege that the Vaccine Mandate violates their
statutory and contractual rights, as Plaintiffs have a right to
have charges proffered against them and have a hearing before
"discipline" is imposed pursuant to N.Y. Education Law § 3020-1,
or N.Y. Civil Service Law § 75, or the applicable CBA.  (ECF No.
2-10, Pl. Mem., at pp. 1-2.)  Third, Plaintiffs allege collusion
and aiding and abetting under 42 U.S.C. § 1983 against the UFT,
Mulgrew, Porter, and unnamed Jane and John Doe Defendants.  (ECF
No. 1, Compl. pp. 23-28.)

Plaintiffs seek a preliminary injunction to enjoin and
restrain (1) the Defendants from withholding pay from any and all

Case 23-655, Document 78, 06/05/2023, 3525012, Page136 of 204

SPA-46

tenured principals, assistant principals, and teachers who have failed to take a COVID-19 vaccine; (2) the Defendants from withholding pay from any and all civil service employees entitled to N.Y. Civil Service Law § 75 rights who have failed to take a COVID-19 vaccine; (3) the Defendants from withholding pay from any and all employees of the NYC DOE who have failed to take a COVID-19 vaccine and who, as a term of their union's collective bargaining agreement with the NYC DOE, allegedly cannot be terminated or disciplined without a hearing; (4) the NYC DOE from disciplining, including but not limited to terminating, tenured principals, assistant principals, and teachers who have failed to take a COVID-19 vaccine without proffering charges and specifications and granting the tenured employees a hearing on the charges; (5) the NYC DOE from disciplining, including but not limited to terminating, any and all civil service employees entitled to N.Y. Civil Service Law § 75 rights who have failed to take a COVID-19 vaccine, without proffering charges and specifications; and, (6) the NYC DOE from disciplining, including but not limited to terminating any and all employees of the NYC DOE who have failed to take a COVID-19 vaccine and who, as a term of their union's collective bargaining agreement with the NYC DOE, allegedly cannot be terminated or disciplined without proffering charges and specifications and a hearing. (ECF No. 2, Pl. Proposed Order to Show Cause, at pp. 2-4.)

3

SPA-47

For the reasons stated below, Plaintiffs' motion for injunctive relief is DENIED.

**BACKGROUND**

## I.   Factual Background

The COVID-19 pandemic and its devastating, lasting effects on society are well known.  The City of New York has enacted a series of COVID-19 related safety mandates and protocols as part of the City's effort to slow and contain the spread of the novel coronavirus.  On August 24, 2021, prior to the commencement of the New York City school year, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), issued an order requiring all NYC DOE employees to show proof of compliance with the Vaccine Mandate, meaning receipt of at least one dose of vaccination against COVID-19 by September 27, 2021.  (*See* ECF No. 18, Def. NYC DOE Mem. in Opp. at p. 1.)

On September 10, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the Vaccination Mandate.  (*See* ECF No. 19-1, O'Connor Decl., Ex. A (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the UFT (hereafter "Impact Arbitration Award"), at 4).)

SPA-48

Following expedited mediation and discussions between the NYC DOE, the City of New York, and the UFT, the appointed arbitrator, on September 10, 2021, the arbitrator issued a binding arbitration decision ("Impact Arbitration Award"), which established in relevant part (1) a processes for religious and medical exemptions and accommodation requests, namely, processes for staff to apply for, and appeal from adverse determinations for medical and religious accommodations to an independent arbitration panel (and the ability to remain on the DOE payroll and continued medical benefits coverage while such applications and appeals are pending); (2) options to voluntarily separate from DOE service with certain compensation benefits, or to elect for an extended non-disciplinary leave without pay ("LWOP"), all while maintaining health benefits until September 5, 2022; and (3) that as of December 1, 2021, the DOE may seek to unilaterally separate employees who have not complied with the Vaccination Mandate, or who have not obtained an approved exemption or accommodation and have not opted for either separation option. (*See* ECF No. 19-1, Impact Arbitration Award at pp. 6-18; ECF No. 18, Def. NYC DOE Opp. Mem. at p. 5; ECF No. 20, Def. UFT Opp. Mem., at p. 3.)  The Impact Arbitration Award further provides that employees extending their LWOP period to September 5, 2022, may return immediately to their positions at NYC DOE schools upon demonstrating compliance with the Vaccination Mandate.  (*Id.*)  As

SPA-49

to separation of service, the Impact Arbitration Award restricted

the NYC DOE from seeking to separate DOE employees on LWOP due to

non-compliance with the Vaccination Mandate, prior to December 1,

2021.  (*See* ECF No. 19-1, Impact Arbitration Award at pp. 16-18.)

Under the terms of the Impact Arbitration Award, on December 1,

2021, the separation restriction on the NYC DOE will be lifted,

and the NYC DOE is authorized as of that date to seek the

termination of noncompliant employees through existing

procedures.  (ECF No. 19-1, Impact Arbitration Award at pp. 17-

18; ECF No. 18, Def. NYC DOE Opp. Mem. at p. 5; ECF No. 20, Def.

UFT Opp. Mem., at p. 3.)  Finally, and importantly, the Impact

Arbitration Award states that the processes contained in the text

of the Impact Arbitration Award for NYC DOE employees challenging

the Vaccination Mandate or seeking exemptions,

> [S]hall constitute the exclusive and complete
> administrative processes for the review and
> determination of requests for religious and
> medical exemptions to the mandatory
> vaccination policy and accommodation requests
> where the requested accommodation is the
> employee not appear at school. The process
> shall be deemed complete and final upon the
> issuance of an appeal decision. Should either
> party have reason to believe the process set
> forth, herein, is not being implemented in
> good faith, it may bring a claim directly to
> SAMS for expedited resolution.

(ECF No. 19-1, Impact Arbitration Award at p. 13.)  The UFT-

specific Impact Arbitration Award covers the majority, but not

all, of named Plaintiffs.  (ECF No. 18, Def. NYC DOE Opp. Mem. at
p. 6.)  The UFT notified its members of the Impact Arbitration
Award on September 10, 2021, by circulating the Award and a
"plain-language" explanation to UFT members.  (ECF No. 20, Def.
UFT Opp. Mem. at p. 13.)

        Following the issuance of the September 10, 2021,
Impact Arbitration Award, the City's Office of Labor Relations
engaged in impact bargaining with the remaining unions
representing NYC DOE employees, including the Council of
Supervisors and Administrators ("CSA"), which represents NYC DOE
principals and assistant principals, and District Council 37 ("DC
37"), which represents many school-based employees such as school
aides, school food workers and Parent Coordinators.  (*Id.*;
O'Connor Decl. at Ex. B, September 15, 2021, Arbitration Award
Decision in Board of Education of the City School District of the
City of New York and the CSA.)  On September 15, 2021, an
arbitration decision in the matter of the City and the CSA was
issued that mirrored the Impact Arbitration Award, and on October
3, 2021, the City and the DC 37 reached an agreement that also
mirrors the Impact Arbitration Award.  (O'Connor Decl. at C,
Memorandum of Agreement DC 37, City of New York, and the Board of
Education of the City School District for the City of New York,

SPA-51

dated October 3, 2021.)[2]  This, all parties were subject to similar terms regarding the Vaccine Mandate procedures.

Plaintiffs were notified on October 2, 2021, that lack of compliance with the Vaccination Mandate would result in placement on LWOP as of October 4, 2021, and that NYC DOE would seek to separate noncompliant employees as of December 1, 2021 if they did not opt to extend their LWOP status and remained out of compliance with the Vaccination Mandate.  (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

Plaintiffs filed the Complaint in this action on November 17, 2021, 51 days after the September 27, 2021, deadline for demonstrating compliance with the Vaccine Mandate, and 44 days after the October 4, 2021.  (ECF No. 1, Compl.)  As of the date of Defendants' responses on November 19, 2021, seven of the named Plaintiffs had availed themselves of the accommodation request process, and decisions under the Impact Arbitration Award have been issued in connection with accommodation requests (unless withdrawn), made by Plaintiffs Porcello (who withdrew her request), Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos. (ECF No. 19-6, Ex. F.)  Plaintiffs' counsel represented to the

---

[2] Though not all named Plaintiffs are members of the UFT, Plaintiffs have only named the UFT as a Defendant. The Court will restrict its analysis to the specific claims brought against the UFT, though the Court will incorporate into its discussion *infra* that the Impact Arbitration Award reached between the UFT and the Board of Education of the City School District for the City of New York "mirrors" the agreements reached between the Board of Education of the City School District for the City of New York and the CSA and DC 37.

**SPA-52**

Court during the November 23, 2021, show cause hearing that to date, no other Plaintiffs have availed themselves of the processes for seeking accommodations, and no Plaintiffs have received a COVID-19 vaccination.

## II.   Procedural Background

Though unrelated to the proceedings currently before the Court, the instant action is part of a larger body of litigation related to COVID-19 vaccine mandates in New York. Specifically, the NYC DOE's Vaccination Mandate has been the subject of several legal challenges, unsuccessful thus far, brought in state and federal courts by plaintiffs seeking to enjoin the enforcement of the Vaccination Mandate. *See, e.g.,* *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021) (injunction denied) *aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021); *Kane v. de Blasio*, No. 21-CV-7863 (VEC) (injunction denied), 2021 WL 5037401 (S.D.N.Y. Oct. 12, 2021); *Keil v. The City of New York, et al.*, 21-cv-8773 (S.D.N.Y.)(VEC) (injunction denied); *New York City Municipal Labor Comm. ("MLC"), et al. v. City of New York, et al.*, Index No. 158368/2021 (Sup. Ct. N.Y. Cnty. Sep. 2021) (injunction denied).  The courts in *Maniscalco*, *Kane*, *Keil*, and *MLC*, denied the plaintiffs' motions for temporary restraining orders and/or preliminary injunctions finding, in relevant part, a lack of likelihood of success on the merits.  *See id*.  The

Second Circuit also recently upheld a New York State vaccine
mandate in the context of healthcare employees.  *See We The
Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983 (2d
Cir. Nov. 4, 2021), *opinion clarified*, No. 21-2179, 2021 WL
5276624 (2d Cir. Nov. 12, 2021).  It is against this backdrop of
recent caselaw that Plaintiffs have chosen to file their
Complaint, forty-four days after Plaintiffs' placement on LWOP
status.  (ECF No. 2, Pl. Emergency Mot.).

      Plaintiffs filed their class action Complaint, on their
own behalf and on behalf of all persons similarly situated, on
November 17, 2021.  (ECF No. 1, Compl., at ¶¶ 100-102.)  On the
same date, Plaintiffs filed an Emergency Motion for Preliminary
Injunction and Temporary Restraining Order. (ECF No. 2, Pl.
Motion for Preliminary Injunction and Temporary Restraining Order
("PI/TRO").)  The Court, also on November 17, 2021, issued an
Order to Show Cause, ordering: (1) personal service on all named
Defendants to be made on or before 9:30 am, Thursday, November
18, 2021; (2) Defendants to respond to the Order to Show Cause
via ECF by Friday, November 19, 2021, at 3:00 pm; and, (3)
counsel for the named Plaintiffs and Defendants to appear for a
hearing before the Court, with their clients with the opportunity
to present testimony, on Tuesday, November 23, 2021, at 12:00 pm.
(ECF No. 11, Nov. 17, 2021, Order to Show Cause ("OSC").)

All named Defendants filed papers in opposition to Plaintiffs' motion for injunctive relief on November 19, 2021. Defendants NYC DOE and Ms. Porter filed a memorandum of law in opposition, the Declaration of Andrea O'Connor ("O'Connor Decl."), and attached exhibits.  (ECF No. 18, Def. NYC DOE Opp. Mem.; ECF No. 19, O'Connor Decl.)  Defendant UFT filed a memorandum of law in opposition, the Declaration of Alan M. Klinger ("Klinger Decl."), the Declaration of Beth Norton ("Norton Decl."), and attached exhibits.  (ECF No. 20, Def. UFT Opp. Mem.; ECF No. 21, Klinger Decl.; ECF No. 22, Norton Decl.)

The parties appeared before the Court on November 23, 2021, for a show cause hearing. During the show cause hearing, all parties requested supplemental briefing as to the specific issue of due process surrounding the forthcoming separation of nonexempt, unvaccinated Plaintiffs by the NYC DOE on and after December 1, 2021.  Specifically, the parties requested further briefing to address whether a vaccination requirement constitutes a legitimate condition of employment, and what, if any, due process requirements are implicated.  Given the parties' request, the Court will limit its analysis and decision as to the processes and procedures currently in the record governing the

11

SPA-55

Plaintiffs' current LWOP period *prior* to separation, from October 4, 2021, up to and including November 30, 2021.[3]

## LEGAL STANDARD

The party seeking the preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted).

Here, the traditional preliminary injunction analysis is complicated by three distinctions given the nature of the relief Plaintiffs seek. First, Plaintiffs seek a mandatory injunction against a government action taken in the public interest, and so must show both irreparable harm and a likelihood of success on the merits. *See Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 573–74 (2d Cir. 2002) ("In order to merit preliminary injunctive relief against 'government action taken in the public interest pursuant to a statutory or

---

[3] Plaintiffs sought expedited relief, and submitted matters for the Court's expedited consideration. (ECF No. 2, Pl. Emergency Mot.) Accordingly, the Court allowed Defendants to respond on an expedited basis. During the November 23, 2021, show cause hearing, the Court advised the parties it would decide the instant application for injunctive relief based on the parties' filings as of the date of the hearing, November 23, 2021. Consequently, Plaintiffs' belated submission (ECF No. 28) and Defendants' response (ECF No. 29) will not be entertained by this Court as part of this decision. In any event, even if the Court were to consider the belated submissions, the contents of the submissions would not impact the decision of the Court.

**SPA-56**

regulatory scheme,' a plaintiff must show 'irreparable harm in the absence of an injunction *and* a likelihood of success on the merits.'") (internal citation omitted) (emphasis added).

Second, Plaintiffs allege constitutional violations, and "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Maniscalco*, 2021 WL 4344267, at *2 (citing *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)). As Plaintiffs allege that their procedural due process rights have been violated, "no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984), and the Court will focus its analysis on the other factors for establishing an entitlement to injunctive relief.

Third and finally, parties seeking injunctive relief are required to meet the higher standard of a mandatory injunction where, as here, (1) the injunctive relief sought would alter, rather than maintain the status quo or (2) the injunction would grant the movant substantially all the relief sought, which relief could not be undone even if defendants would prevail on the merits. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, *33–34 (2d Cir. 1995). Here, Plaintiffs are seeking, in relevant part, to be restored to NYC DOE payroll, after having been placed on LWOP well over a month ago, for their failure to

13

SPA-57

comply with the Vaccination Mandate.  Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction, and must show a "clear" or "substantial" likelihood of success on the merits.  *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995); *Doninger v. Niehoff*, 527 F.3d 41, *47 (2d Cir. 2008).

### DISCUSSION[4]

As a threshold matter, the Court notes that Plaintiffs failed completely in their papers to address the existence and effect of the Impact Arbitration Award reached between the UFT, the Council of Supervisors and Administrators, and District Counsel 37, which provides critical context for evaluating the Plaintiffs' request for preliminary injunction.  The Court will consider and incorporate the September 10, 2021, Impact Arbitration Award, raised by Defendants, into its analysis.

### I.   Preliminary Injunction

#### A. Likelihood of Success on the Merits

Plaintiffs failed, in their motion papers and at oral argument during the November 23, 2021 show cause hearing, to establish a "clear" or "substantial" likelihood of success on the

---

[4] Plaintiffs' only potential reference to their Section 1983 claims regarding collusion and aiding and abetting in their memorandum of law is as follows: "the Plaintiffs have a high likelihood of success on the merits of their 42 U.S.C. 1983 causes of action [] and therefore should be granted the relief they request." (ECF No. 2-10, Pl. Mem., pp. 13, 18.) Plaintiffs do not cite to any case law in support of this argument, and the Court will not address these allegations as part of its preliminary injunction analysis.

merits on any of their claims. *See Tom Doherty Assocs.*, 60 F.3d 27 (2d Cir. 1995); *Doninger*, 527 F.3d at *47 (2d Cir. 2008).

First, it is dubious whether Plaintiffs have standing to challenge the terms of the Impact Arbitration Award, and similar awards and agreements, because their respective union representatives engaged on their behalf with the NYC DOE, which process resulted in the arbitration awards and agreement. *See Fleischer v. Barnard Coll.*, No. 20-4213, 2021 WL 5365581, at *4, n. 1 (2d Cir. Nov. 18, 2021) (because a union represented the adjunct professor plaintiff in the arbitration against the defendant, her employer college, plaintiff did not have standing to challenge the arbitration proceeding directly under the Federal Arbitration Act; she could only challenge the arbitration through her claim against the union for breach of its duty of fair representation.) (citing *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) ("[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.")). Plaintiffs have brought this action principally challenging their placement on LWOP, and the possibility of their separation from employment by the NYC DOE on or after December 1, 2021, both of which were the result of legitimate arbitrations between the City and the various unions representing the various categories of Plaintiffs. As Defendant

**SPA-59**

UFT correctly argues, and as counsel for Defendant UFT and Defendant NYC DOE represented during the November 23, 2021, show cause hearing, Plaintiffs' claims fail to account for the fact that the binding arbitration award has become part of the collective bargaining agreement.  (ECF No. 20, Def. UFT Opp. Mem., at p. 4.)  Defendants' counsel confirmed to the Court during the November 23, 2021, show cause hearing that the arbitration between the UFT and the Board of Education of the City School District for the City of New York was a binding arbitration process, and that the resulting Impact Arbitration Award altered the contractual terms of the CBA.  Accordingly, Plaintiffs who are members of the UFT (and presumably the CSA and DC 37) have been placed on LWOP consistent with their CBAs and the incorporated arbitration awards.  (ECF No. 20, Def. UFT Opp. Mem., at p. 4.)

It is undisputed that Plaintiffs were not a party to the arbitration and negotiations that resulted in the Impact Arbitration Award and accordingly, their standing to challenge the Award is in doubt.  Even assuming that Plaintiffs do have standing and can appropriately challenge the terms of the Impact Arbitration Award which enables the NYC DOE to seek their separation from employment as of December 1, 2021, Plaintiffs still have not established a clear or substantial likelihood of success on the merits on their claims.

16

The NYC DOE, in compliance with the Vaccination Mandate and for compelling public health reasons, cannot permit noncompliant, unvaccinated employees, absent exemption or accommodation, to work at NYC DOE schools, and the NYC DOE has acted pursuant to the terms of the Impact Arbitration Award for placing noncompliant, nonexempt employees on LWOP.[5]  The Impact Arbitration Award clearly explains the "exclusive" processes established for exemptions and accommodation requests and the appeals process. (ECF No. 19-1, Impact Arbitration Award, at pp. 6-13.)  The Impact Arbitration Award also clearly provides the procedures for leave, including procedures for extending LWOP, returning from LWOP, and a section on pregnancy and parental leave.  (*Id.* at pp. 13-16.)  Finally, the Impact Arbitration Award describes the options for separation, including on the part of the employee as well as on the part of the NYC DOE.  (*Id.* at pp. 16-18.)  Thus, the Impact Arbitration Award provides adequate processes for pre-deprivation notice and hearing.

---

[5] The NYC DOE argued in its papers and at the November 23, 2021, show cause hearing that employees separated under the terms of the Vaccination Mandate, and under the express terms of the Impact Arbitration Award, are not being "disciplined," but are being terminated based on their ineligibility for employment.  *See e.g. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing *O'Connor v. Board of Education*, 48 A.D.3d 1254 (4th Dept. 2008) *lv. denied* 10 N.Y.3d 928 (2008) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).  As noted *supra*, the parties have requested, and the Court has granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation are being "disciplined" or subject to a legitimate condition of employment, and thus the Court will not reach that issue here.

**SPA-61**

Plaintiffs will be afforded the processes required by the applicable CBA and the Impact Arbitration Award when and if the NYC DOE seeks separation, undermining Plaintiffs' arguments that they will be terminated in violation of their constitutional right to due process without a post-deprivation hearing.  The Court does not disagree that Plaintiffs, as public employees under the NYC DOE, have a protected property interest in their continued employment, and it appears neither do Defendants.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) (property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (internal citations omitted).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Having found that Plaintiffs have a protected property interest in their continued employment, the Court next looks to whether the process they have been afforded upon LWOP placement and upon separation is constitutionally adequate. To determine whether process is adequate, the Court looks to "[f]ederal constitutional

standards rather than state statutes [to] define the requirements
of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d
Cir. 1987).

Based on the record before the Court, the Court
considers that both the pre-deprivation and post-deprivation
processes currently afforded to Plaintiffs were and are
constitutionally adequate. *See Cleveland Bd. of Educ. v.
Loudermill*, 470 U.S. at 547 n. 12, 105 S.Ct. 1487 (1985) ("[T]he
existence of post-termination procedures is relevant to the
necessary scope of pretermination procedures."). The pre-
deprivation and post-deprivation proceedings articulated in the
Impact Arbitration Award have been incorporated into the
Plaintiffs' collective bargaining agreements. (*See* ECF No. 20,
Def. UFT Opp. Mem. at p. 4.) Pre-deprivation processes "need not
be elaborate[,]" and the Constitution mandates only that such
process include, at a minimum, notice and the opportunity to
respond. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir.
2005) (citing *Loudermill*, 470 U.S. at 545-546, 105 S.Ct. 1487).
Plaintiffs received ample notice of (1) the Vaccination Mandate,
(2) their ability to seek religious and medical exemptions and
appeals, (3) their placement on LWOP if they continued to be
noncompliant with the terms of the Vaccination Mandate, and (4)
their options and opportunity to respond. The widely publicized
Vaccination Mandate was implemented on August 24, 2021. In the

SPA-63

case of the Plaintiffs with UFT membership, these Plaintiffs have had notice of the LWOP and potential separation processes and procedures since September 10, 2021, the date of the issuance of the Impact Arbitration Award.  (ECF No. 20, Def. UFT Opp. Mem. at p. 13.)  Similarly, the CSA member employees had notice as of September 15, 2021, and DC 37 member employees had notice as of October 3, 2021.  (ECF No. 18, Def. NYC DOE Opp. Mem. at p. 7.) Plaintiffs were then also notified on October 2, 2021, that if they were not in compliance with the Vaccination Mandate, they would be placed on LWOP as of October 4, 2021, and that NYC DOE would seek to separate them as of December 1, 2021, if they did not comply with the vaccine mandate or extend their LWOP status. (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991).  Though Plaintiffs note that the UFT was not accepting grievances related to the Vaccination Mandate, the UFT advised members inquiring about grievances that procedures regarding unvaccinated employees were governed by the binding Impact Arbitration Award which altered their CBA, which was circulated to UFT members "along with plain-language guidance of the Award's terms[.]"  (ECF No. 20, Def. UFT Opp. Mem. at p. 13).

20

The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process.  *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (noting that "CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process." (internal citations omitted); *see also Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (noting that guaranteed procedural rights could be satisfied by the pre-deprivation notice and hearing rights provided in the collective bargaining agreement grievance procedures) (citing *Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir.1987) (Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process).

Further, the Impact Arbitration Award provides for an expedited review process for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging their placement on LWOP.  As of November 23, 2021, only seven named Plaintiffs have availed themselves of the processes available to them for seeking accommodations or exemptions.  (*See* ECF No. 18, Def. NYC DOE Opp. Mem. at p. 24 ("Notably, Plaintiffs Porcello, Amoura, Quash, Dixno, Ruscelli, Lam and Christopoulos each availed themselves of the process available to them to seek an accommodation with respect to the DOE Vaccination Mandate.").) As counsel for Defendant NYC DOE confirmed to the Court during

21

SPA-65

the November 23, 2021, show cause hearing, the remaining seventy-six named Plaintiffs have until November 30, 2021, to avail themselves of the procedures for requesting accommodations and exemptions, and opting to extend their LWOP status through September 5, 2022.  Finally, Plaintiffs, after receiving multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York State Supreme Court.  The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy.  *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").

　　　　Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate through the procedures established in the CBAs governing the terms of Plaintiffs' employment, including the Impact Arbitration Award procedures, which provide grievance and arbitration procedures, and undisturbed, well-established state court procedures.

**B. Irreparable Harm**

Though, as referenced *supra*, Plaintiffs need not make any further showing of irreparable harm once constitutional deprivations have been alleged, the Court is compelled to note that the harms resulting from noncompliance with the NYC DOE Vaccination Mandate identified by Plaintiff are by no means *irreparable*. Plaintiffs' articulated harms are: loss of income while on LWOP, and their possible separation from NYC DOE, which they allege will occur without adequate processes. These pecuniary harms are neither irreparable nor sufficient to justify the presently requested injunctive relief.

To be sure, the Court does not dispute that a loss of income is a hardship. The loss of one's wages, particularly for those with financial commitments and dependents, is a real, tangible harm. In order to demonstrate an entitlement to injunctive relief, Plaintiffs may not simply identify a general loss. Instead, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. In particular, in the Second Circuit, "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510-11 (2d Cir. 2005)

23

("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)).

Similarly, the Supreme Court has also held that "the temporary loss of income, []does not usually constitute irreparable injury . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Here, should Plaintiffs prevail, monetary relief will be available to compensate their loss of income. Consequently, injunctive relief is not warranted.

Further, Plaintiffs' lengthy delay in seeking to enjoin the NYC DOE's intent to seek separation of noncompliant and nonexempt employees on December 1, 2021—an occurrence that was entirely known to Plaintiffs at least by October 2, 2021, if not earlier—greatly undermines the strength of Plaintiffs' "emergency" motion for preliminary injunction.  There was a delay of forty-four days between the date of Plaintiffs' actual placement on LWOP status and the filing of Plaintiffs' instant

request for preliminary injunction.  (ECF No. 2, Pl. Emergency
Mot.)  Plaintiffs' inaction does not convey a looming,
irreparable harm, and does not invoke the "urgent need for speedy
action to protect the plaintiffs' rights[,]" as is typical when
injunctions are sought on an expedited basis.  *Citibank, N.A. v.
Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).

    **C.   Balance of the Equities and D. The Public Interest**

       The Court finds that both the balance of equities and
the public interest disfavor the injunctive relief requested by
Plaintiffs.  As the Court has noted *supra*, the loss of income
while on LWOP status undoubtedly presents a hardship to the
Plaintiffs.  Plaintiffs face this continued hardship if they
continue to refuse to comply with the Vaccination Mandate.  The
role of the Court, however, is to "balance the competing claims
of injury on each party of either granting or withholding the
requested relief, paying particular regard to the public
consequences."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.
7 (2008).  On balance, the equities at stake and the importance
of safeguarding the public health and safety, and the public
interest weigh in favor of denying the preliminary injunction.

       It "cannot be disputed that the State has a public
policy in favor of protecting children[.]"  *City Sch. Dist. of
City of New York v. McGraham*, 17 N.Y.3d 917, 919-920, 958 N.E.2d
897 (2011).  There is an interest in providing in-person

SPA-69

schooling for students, as remote schooling can have negative impacts on education.[6]  There is also an obvious, significant governmental interest in preventing transmission of the COVID-19 virus and protecting students, thousands of whom remain ineligible for a COVID-19 vaccine, as well as NYC DOE teaching professionals and staff, and all related communities.  As Judge Cogan of this District recently noted in *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021) "[s]ince its emergence, COVID-19 has killed over 4.5 million people worldwide, with over 670,000 of those deaths taking place in the United States," and vaccination is "one of the most highly regarded" tools available to "reduce viral transmission."  Available scientific and medical data supports the use of vaccination as a lifesaving public policy measure, as data from the "Centers for Disease Control and Prevention shows that people who are unvaccinated are at a much greater risk than those who are fully vaccinated to test positive or die from COVID-19."[7]  Even despite the widespread implementation of vaccinations and booster shots, the United States has lost more lives in the year 2021 than in 2020, which

---

[6] Remote schooling during the 2020-21 academic year contributed to "highly significant" learning loss, according to a new study published by the National Bureau of Economic Research. *See* Clare Halloran, Rebecca Jack, James C. Okun, Emily Oster, *Pandemic Schooling Mode and Student Test Scores: Evidence from US States,* (National Bureau of Economic Research Working Paper, Paper No. 29497, Nov. 2021), https://www.nber.org/papers/w29497.

[7] Coronavirus in the U.S.: Latest Map and Case Count, N.Y. TIMES (updated Nov. 23, 2021), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

SPA-70

experts attribute at least in part to "lower-than-needed vaccination rates," and "the relaxation of everyday precautions, like masks and social distancing, and the rise of the highly contagious Delta variant."[8]  Based on the evidence available, there remains an urgent, compelling justification for the enforcement of the state- and city-mandated restrictions and policies enacted and designed to protect the most vulnerable among us from the COVID-19 pandemic.

Ultimately, "it is up to local government, 'not the courts, to balance the competing public health and business interests[,]'" and here, the New York City government and NYC DOE have done so in issuing and enforcing the COVID-19 Vaccination Mandate for employees of the Department of Education. *Maniscalco*, 2021 WL 4344267, at *4.

## **CONCLUSION**

Accordingly, Plaintiffs' motion for a preliminary injunction and temporary restraining order is DENIED.

Further, the Court finds that Plaintiffs' have not demonstrated that they have standing to challenge the terms of the Impact Arbitration Award between the NYC DOE and the UFT in federal court.  Therefore, the Plaintiffs are ORDERED TO SHOW CAUSE by December 15, 2021, why this action should not be

---

[8] Covid Live Updates: U.S. Records More Deaths This Year Than in 2020, N.Y. TIMES (updated Nov. 23, 2021), https://www.nytimes.com/live/2021/11/23/world/covid-vaccine-boosters-mandates.

SPA-71

dismissed for lack of standing.

**SO ORDERED.**

_____/s/_____
Kiyo A. Matsumoto
United States District Judge

Dated:  Brooklyn, New York
        November 24, 2021

SPA-72

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
Nicole BROECKER, et al,

        *Plaintiff*,

      v.

New York City Department of Education,
et al,

        *Defendants*.
------------------------------------X

**MEMORANDUM & ORDER**

21-CV-6387(KAM)(LRM)

**KIYO A. MATSUMOTO, United States District Judge:**

      The 93 named Plaintiffs in the Amended Complaint
(collectively "Plaintiffs") have not received at least a first
dose of a COVID-19 vaccine and are employed and work at schools
operated by the New York City Department of Education ("NYC
DOE"), and are members of various unions named as Defendants.
Named Defendants are the NYC DOE; the City of New York; Meisha
Porter, the Chancellor of the NYC DOE; the United Federation of
Teachers, Local 2, American Federation of Teachers, AFL-CIO
("UFT"); Michael Mulgrew, President of the UFT; Counsel of
Supervisors and Administrators ("CSA"), Mark Cannizzaro;
District Council 37, AFSCME AFL-CIO, Local 372 ("DC 37 Local
372") Henry Garrido; Shaun D. Francois I; District Council 37,
AFSCME AFL-CIO, Local 1251 ("DC 37 Local 1251") (together with
DC Local 372, "DC 37"); Martin F. Scheinman, Scheinman

Arbitration and Mediation Services, and Scheinman Arbitration and Mediation Services LLC (collectively "Defendants").

Defendants NYC DOE and the City of New York are entities responsible for enacting and enforcing a COVID-19 vaccination mandate (the "Vaccination Mandate") issued pursuant to an Order from the New York City Commissioner of Health and Mental Hygiene ("COH Order") on August 24, 2021, requiring that all NYC DOE employees receive at least a first dose of a COVID-19 vaccination by September 27, 2021, in order to work at NYC DOE schools. Defendants UFT, CSA, and DC 37 are labor organizations through which certain named Plaintiffs are covered by collective bargaining agreements ("CBAs") with the NYC DOE.

For the second time in this action, Plaintiffs seek a preliminary injunction to enjoin and restrain Defendant NYC DOE from "unilaterally terminating the Plaintiffs without due process." (ECF No. 76-13, Pls. Mem., P. 2.) Defendants UFT and CSA support Plaintiffs' motion. (ECF No. 77.)[1] For the reasons

---

[1] The Court has considered Defendants' UFT and CSA's "letter of support," regarding Plaintiffs' most recent request for injunctive relief, and after careful consideration, the Court finds it lacks merit. The arguments raised in Defendants' UFT and CSA's letter of support are resolved *infra* by the Court's instant Memorandum and Order. Importantly, as the Court noted at the February 7, 2022, pre-motion conference it is doubtful whether Defendants UFT and CSA have either organizational or associational standing in this action to seek injunctive relief alongside Plaintiffs. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)) (noting that to show organizational standing, an association must show (a) a distinct and palpable injury in fact to itself as an organization; (b) that is fairly traceable to the challenged action; and (c) that a favorable decision would redress its injuries); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 713-14 (2d Cir. 2004) (associational standing exists if: "(a) its members would otherwise have standing to sue in their own

**SPA-74**

discussed below, Plaintiffs' motion for preliminary injunction and temporary restraining order is DENIED.

<u>**BACKGROUND**</u>

The Court incorporates by reference in its entirety the factual background, procedural background, and evidentiary record described in and submitted in relation to the Court's November 24, 2021, Memorandum and Order ("Order"). (ECF No. 33.) The November 24, 2021, the Order denied the Plaintiffs' November 17, 2021, motion for preliminary injunction and temporary restraining order ("First Motion for Preliminary Injunction") which sought to enjoin the NYC DOE from implementing procedures to seek termination of employees who failed to obtain a first dose of the vaccine, apply for a religious or medical exemption, or extend their leave without

---

right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). In the Amended Complaint, Plaintiffs sued Defendants UFT and CSA, and Defendants UFT and CSA are adverse to Plaintiffs. Defendant UFT not only opposed Plaintiffs' first preliminary injunction motion, but vigorously defended the Impact Arbitration Award that Defendants maintain is illegal and the result of collusion by the UFT, CSA, and others. (*See* ECF No. 33, Nov. 24, 2021, M&O; ECF No. 47, Am. Compl.) Most recently, Defendants UFT and CSA both sought leave to move to dismiss the Amended Complaint in its entirety against both unions. (ECFs No. 62; 71.) Moreover, pursuant to the undersigned's Individual Chambers Practices and the Federal Rules of Civil Procedure, letter briefs are not permitted. (III. C.2.); Federal Rule of Civil Procedure 7 (Pleadings Allowed and Form of Motions and Other Papers).

SPA-75

pay ("LWOP") status while retaining health benefits.  (ECF No. 33, Nov. 24, 2021, M&O.)[2]

In the Court's November 24, 2021, Order, the Court noted that the effects and devastating impacts of the novel coronavirus, COVID-19, particularly on the unvaccinated, were well known.  Since the date of that Order, the rapid rise of new highly transmissible variants of COVID-19 once again plunged the City of New York and the entire country into further periods of uncertainty and risk of serious illness or death for the unvaccinated.  From December 2021 to January 2022, the Omicron variant descended on New York, bringing with it heightened levels of transmissibility and illness from COVID-19.[3]

Plaintiffs filed an Amended Complaint on January 10, 2022, naming additional parties.  (ECF No. 47, Am. Compl.)  On January 31, 2022, the NYC DOE notified employees who had failed to receive a COVID-19 vaccine and also failed to either (1) apply for and receive a medical or religious accommodation, or (2) extend their Leave Without Pay ("LWOP") status and continued medical benefits until September 2022, that their employment would terminate on February 11, 2022.  (*See* ECF No. 76-7, Pls.

---

[2] At the November 23, 2021, show cause hearing, the parties requested, and the Court granted leave for, supplemental briefing on the issue of vaccination as an NYC DOE job requirement.  (*See* Min. Entry, Nov. 23, 2021.)

[3] *See Omicron Variant: What You Need to Know*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Updated Feb. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

SPA-76

Ex. A, Termination Notices.)   These termination notices stated

in relevant part:

> You have previously received notice regarding your
> failure to comply with the New York City Health
> Commissioner's Order requiring vaccination of all New
> York City Department of Education staff. Compliance
> with that Order is a condition of employment. Since
> you have not complied with the Order and have not
> chosen to extend your leave without pay, despite
> notice and an opportunity to do so, your employment
> with the New York City Department of Education is
> terminated, effective February 11, 2022. Please note
> that your health insurance coverage through the City
> will also cease upon termination....Information about
> COBRA will be mailed to you separately at the address
> on file in NYCAPS....If you believe you are receiving
> this notification in error, please email
> LWOPquestions@schools.nyc.gov no later than February
> 2, 2022.

(*See, e.g.*, ECF No. 76-7, Pls. Ex. A, p. 1.)   Of the ninety-

three Plaintiffs, forty-three[4] received termination notices and

---

[4] These forty-three Plaintiffs are Plaintiffs Gellman, Ben-Jacob, Udina, Romero, Cruz, Narciso, Perez, LoParrino, Rodriguez, Toro, Mendez, Hussein, Pereyra, Abreu, Backof, Porto, Miraglia, Silvestri-Incantalupo, Mavis, Costello, Sanchez, Moore, Broecker, Nicchio, Genao, Hoffman, Jacobs, DiProssimo, Martinez-van Bokkem, Ustares, Baker-Pacius, Moore, Placencio, Russo, Simo, Charles, Palladino, Pagen, Kukla, Franzese, Schiano, Salamone, Deidra Statuto.  (*See* ECF No. 76-1, Affidavit of Austin Graff ("Graff Aff."), ¶ 3.)

face termination from their employment at the NYC DOE, effective on February 11, 2022.  (ECF No. 76-1, Graff Aff., n.1.)[5]

On February 4, 2022, four days after the NYC DOE termination notices were received—and 164 days after the Vaccination Mandate was first issued on August 24, 2021— Plaintiffs filed a pre-motion conference request, seeking leave to file an emergency application for preliminary injunction and temporary restraining Order against the NYC DOE's termination of noncompliant NYC DOE employees.  (ECF No. 72, Pls. Pre-Motion Req.)  On that same date, the Court deferred a ruling on the Plaintiffs' request for a pre-motion conference, and ordered all Defendants to respond to the Plaintiffs' pre-motion conference request on an expedited basis.  (Dkt. Order, Feb. 4, 2022.) Defendants UFT and CSA filed a response in support of Plaintiffs' pre-motion conference request, and stated their own intention to seek injunctive relief against the NYC DOE.  (ECF No. 73.)  Defendants NYC DOE (ECF No. 74) and Defendants Martin

---

[5] Of the ninety-three Plaintiffs, Plaintiffs Martino, Ciacca-Liss, Hagan, Trapani, Masullo, Klapakis, Hartz, Schmitter, Lotito, Mosley, Blasis-Maring, Meagan, Joergens, and Shaya, all signed NYC DOE Release Forms ("Release Forms") which extended their LWOP status to September 2022.  (ECF No. 47, Am. Compl., ¶ 315.)  The Release Forms included a waiver of the signing employee's rights to challenge the employee's "resignation, including, but not limited to, through a contractual or statutory disciplinary process," and a general release of the NYC DOE from "any and all claims, liabilities, or causes of actions[,]" related to the events surrounding the Release.  (*See* ECF No. 47, Am. Compl. ¶¶ 306-315.)  Plaintiff Lotito, who signed the release and, therefore, will *not* be terminated on February 11, 2022, is one of the Declarants for the Plaintiffs' instant Motion.  (ECF No. 76-6, Declaration of Janelle Lotito.)

Case 23-655, Document 78, 06/05/2023, 3525012, Page168 of 204

F. Scheinman and the Scheinman Arbitration and Mediation Services entities (ECF No. 75) filed letters in opposition to Plaintiffs' pre-motion conference request.

The Court granted the Plaintiffs' pre-motion conference request on February 7, 2022, and held a pre-motion conference on that same date. (Dkt. Order, Feb. 7, 2022; Min. Entry Feb. 7, 2022.) At the pre-motion conference, the Court ordered expedited briefing as to Plaintiffs' emergency application for injunctive relief. (Min. Entry Feb. 7, 2022.) Discussions during the pre-motion conference included Defendant UFT's lack of representative or associational standing to seek an injunction together with the Plaintiffs' against whom the UFT is adverse. Defendants UFT and CSA represented to the Court that they would submit only a letter stating support of the Plaintiffs' emergency application for injunctive relief. (*See id.*) Defendants UFT and CSA further represented that they would not separately seek injunctive relief in the instant action. (*Id.*)[6]

---

[6] On February 8, 2022, the union Defendants filed in state court an emergency motion seeking a temporary restraining order and preliminary injunction to enjoin the terminations of employees that had not complied with the Vaccination Mandate. *See The New York City Municipal Labor Committee, et al. v. City of New York*, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). The requested relief was denied by the Supreme Court of the State of New York, New York County, on February 10, 2022. *See id.*, NYSECF No. 51, Feb. 10, 2022, Order; *see also id.*, NYSECF No. 52, Feb. 10, 2022, Interim Order.

SPA-79

Plaintiffs filed a motion for preliminary injunction and temporary restraining order on February 8, 2022 (ECF No. 76), along with an affirmation from Plaintiffs' counsel Austin Graff, Esq. (ECF No. 76-1), supporting declarations from five of the forty-three Plaintiffs facing termination on February 11, 2022 (ECF Nos. 76-2—6), supporting exhibits (ECF No. 76-7—12), and an accompanying memorandum of law. (ECF No. 76-13.) The UFT filed a five-page letter in support of Plaintiffs' emergency application. (ECF No. 77.) On February 9, 2022, Defendant NYC DOE filed a memorandum in opposition to Plaintiffs' motion for preliminary injunction and temporary restraining Order (ECF No. 79, Def. NYC DOE Mem.), Appendix A providing copies of two relevant New York State Supreme Court Cases (ECF No. 79-2, Appx. A.), and Appendix B, providing the Affirmation of Dr. Michelle E. Morse, M.D., M.P.H., the Chief Medical Officer of the Department of Health and Mental Hygiene of the City of New York. (ECF No. 79-2, Appx. B.) On February 10, 2022, Plaintiffs filed a reply memorandum of law in further support of their motion for preliminary injunction.[7] (ECF No. 82, Pls. Reply Mem.)

## LEGAL STANDARD

The party seeking a preliminary injunction must

---

[7] Plaintiffs and Defendant NYC DOE filed unauthorized letters (ECF No. 86; ECF No. 87) pertaining to the New York State Supreme Court's recent orders in *The New York City Municipal Labor Committee, et al. v. City of New York*, Index

establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted).

Here, Plaintiffs seek both a prohibitory and mandatory injunction. (ECF No. 76-13, Pls. Mem. pp. 2-4.) The traditional preliminary injunction analysis is complicated by three distinctions given the nature of the mandatory injunctive relief Plaintiffs seek. First, because Plaintiffs seek a mandatory injunction against a government action taken in the public interest, they must show both irreparable harm and a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, *33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 573-74 (2d Cir. 2002) ("In order to merit preliminary injunctive relief against 'government action taken in the public interest pursuant

No. 151169/2022 (N.Y. Sup., N.Y. Cnty.), declining the motion for temporary restraining order and preliminary injunction brought by union Defendants and other unions which sought to enjoin the termination of employees not in compliance with the Vaccination Mandate. These submissions do not alter the Court's analysis.

SPA-81

to a statutory or regulatory scheme,' a plaintiff must show 'irreparable harm in the absence of an injunction and a likelihood of success on the merits.'") (internal citation omitted) (emphasis added); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Second, Plaintiffs allege constitutional violations, and "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Maniscalco*, 2021 WL 4344267, at *2 (citing *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)). As Plaintiffs allege that their procedural due process rights have been violated, "no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984), and the Court will focus its analysis on the other factors for establishing an entitlement to injunctive relief.

Third and finally, parties seeking mandatory injunctive relief are required to meet the higher standard where, as here, (1) the injunctive relief sought would alter,

10

rather than maintain, the status quo or (2) the injunction would grant the movant substantially all the relief sought, which relief could not be undone even if defendants prevail on the merits. *Tom Doherty Assocs.*, 60 F.3d at *33-34. Here, Plaintiffs are seeking, among other things, to enjoin the NYC DOE from terminating their employment without due process, and to be restored employment with the NYC DOE, after having been placed on LWOP several months ago on October 4, 2021, with notice of their eventual termination for failure to comply with the Vaccination Mandate. Plaintiffs also seek to enjoin the termination of their medical benefits on February 11, 2022, despite their ability by November 30, 2021, to have continued their LWOP status and medical benefits through September 2022. Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction, and must show a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs.*, 60 F.3d 27; *Doninger v. Niehoff*, 527 F.3d 41, *47 (2d Cir. 2008).

## DISCUSSION

Plaintiffs' renewed motion for injunctive relief demands that the Court revisit many of the same issues already decided in the Court's November 24, 2021, Memorandum and Order, with one notable exception. In its opposition to Plaintiffs' First Motion for Preliminary Injunction, the NYC DOE argued in its papers and at the November 23, 2021, show cause hearing that

employees separated under the terms of the Vaccination Mandate, and under the express terms of the Impact Arbitration Award, are not being "disciplined," but are being terminated based on their failure to satisfy a condition of employment.  At the November 23, 2021, show cause hearing, the parties requested, and the Court granted leave for, supplemental briefing as to whether noncompliant NYC DOE employees facing separation were being "disciplined" or subject to a legitimate condition of employment, and the Court did not expressly reach that issue in its November 24, 2021, Order.  The Court reaches that specific issue here, as will be discussed *infra*.[8]

## I.   Preliminary Injunction

### A. Likelihood of Success on the Merits

Plaintiffs again have failed to establish a "clear" or "substantial" likelihood of success on the merits as to any of their claims.  In their Amended Complaint, Plaintiffs seek an assortment of relief, including declaratory judgment as to the

---

[8] For the avoidance of doubt as to what the Court's November 24, 2021, Order decided, the Court *did* consider "whether the processes [Plaintiffs] ha[d] been afforded upon LWOP placement and *upon separation* [was] constitutionally adequate[,]" and found that they were. (ECF No. 33, M&O, p. 18) (emphasis added.)  Plaintiffs' alleged deprivation of their property rights to continued pay and employment in the instant case occurred upon their placement on LWOP status. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("Under this Circuit's precedents, an employee who is placed on unpaid leave has been deprived of a protected property interest . . .").  As such, the Court already considered and decided the constitutional adequacy of processes provided to Plaintiffs, and found that the pre- and post-deprivation processes afforded to Plaintiffs to be constitutionally adequate. (*Id.* at p. 19.)

NYC DOE's allegedly violative suspension of Plaintiffs without pay and due process; declaratory judgment as to the allegedly illegal Arbitration Awards and agreements between the Defendant unions and the NYC DOE; declaratory judgment as to the allegedly coercive and void NYC DOE Release Forms signed by certain Plaintiffs; Title 42 U.S.C. Section 1983 claims against the NYC DOE, the Defendant unions, and the Scheinman Arbitration and Mediation defendants; and injunctive relief against the NYC DOE for the alleged violation of Plaintiffs' procedural due process rights.  (*See generally*, ECF No. 47, Am. Compl.)  Central to many of Plaintiffs' claims, and critical to their renewed request for injunctive relief sought in the instant motion, is whether and what processes (as required by procedural due process, the applicable collective bargaining agreements ("CBAs"), the Arbitration Awards, and the relevant statutes) are triggered now that the NYC DOE is formally seeking separation.

**1. Procedural Due Process**

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process.  *See O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Having found that Plaintiffs have a protected property

13

SPA-85

interest in their continued employment, the Court next considers whether the available processes that Plaintiffs may invoke upon deprivation of their property interests and, specifically, upon *termination*, are constitutionally adequate.

The Court must determine not whether state procedural law was correctly followed or applied, but rather, whether the processes provided by state procedures, contract rights, or other available processes satisfy constitutional requirements. To determine whether available processes are adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] *define* the requirements of procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (emphasis added); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). As before, the Court finds that the processes available to Plaintiffs,

14

SPA-86

including but not limited to state statutes and contractual procedures, are constitutionally sufficient.

As the Court in its November 24, 2021, Order previously determined, the Court reaffirms here for the avoidance of doubt that the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate. (ECF No. 33, Nov. 24, 2021, M&O, pp. 17-22) ("Plaintiffs had, and continue to have, multiple avenues available to them to challenge and address the actions taken against them as a result of the Vaccination Mandate through the procedures established in the CBAs governing the terms of Plaintiffs' employment, including the Impact Arbitration Award[9] procedures, which provide grievance and arbitration procedures,

_____

[9] The Impact Arbitration Award is specific to the UFT, but as the relevant CSA and DC 37 agreements are identical in all pertinent respects to the Impact Arbitration Award, all three will be referred to as the "Awards." Pursuant to the terms of the relevant Awards, NYC DOE employee members of the UFT, CSA, and DC 37, who are not vaccinated and have not received an accommodation may either (a) take extended unpaid leave with health insurance and a right of return; (b) voluntarily separate; (c) be subject to the NYC DOE's negotiated unilateral right to seek the employees' separation; or (d) exercise all retained legal rights. The Awards state that LWOP status is not disciplinary. The Awards further provide that the NYC DOE may "seek to unilaterally separate" employees who have not selected either option after December 1, 2021, and that "except for the express provisions contained, herein, all parties retain all legal rights at all times." (ECF No. 19-1, O'Connor Decl., Ex. A, UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at Ex. B, CSA Arbitration Award at III.C.)

15

**SPA-87**

and undisturbed, well-established [Article 78] state court procedures.").

The Court, in addition to a review of the record forming the bases of its prior November 24, 2021, Order, reaches this same conclusion, after considering Plaintiffs' proffer of additional evidence in support of their renewed motion for injunctive relief. Plaintiffs have not submitted any new or supplemental evidence in support of their instant motion that compels the Court to conclude that any of the adequate and available processes have been withheld from the Plaintiffs. In support of their second motion for preliminary injunction, Plaintiffs have submitted five declarations from specific Plaintiffs: James Hoffman (ECF No. 76-2), Nathalie Charles (ECF No. 76-3), Serena Mendez (ECF No. 76-4), Tara Palladino (ECF No. 76-5), and Janelle Lotito (ECF No. 76-6). Plaintiff Lotito, as noted previously, signed the NYC DOE Release Form associated with extending her LWOP status until September 2022, and thus will not be terminated on February 11, 2022. (ECF No. 47, Am. Compl., ¶ 315; ECF No. 76-6, Lotito Decl.) None of the other declarant-Plaintiffs state whether they availed themselves of any of the pre- or post- deprivation processes, and none of the declarant-Plaintiffs articulated their individual religious, medical, or other bases for refusing to receive a COVID-19 vaccination. Mr. Graff, counsel to Plaintiffs, did not include

16

in his signed Affidavit any information regarding which of the ninety-three Plaintiffs, or the subset of forty-three Plaintiff members who allegedly received termination notices,[10] had availed themselves of any processes.  (*See* ECF No. 76-1, Graff Aff.) The five Plaintiffs' declarations—and Mr. Graff's own affirmation—included conclusory legal assertions, which, without more, do not establish that the Plaintiffs were not afforded adequate due process, and cannot support a finding that Plaintiffs are likely to succeed on the merits.  (*See, e.g.* ECF No. 76-4, Mendez Declaration, ¶ 5, "I earned my constitutional right to due process, which the NYCDOE has violated by terminating my employment without due process."; *see also* ECF No. 76-1, Graff Aff. ¶ 4, "The Plaintiffs have not received any due process before being terminated[.]")

The pre- and post-deprivation processes available to Plaintiffs, as described in the Court's November 24, 2021, Order, were made known to Plaintiffs well in advance of any action by the NYC DOE, and were and are available through their unions and through established state procedures.  First, Plaintiffs received advanced notice of the Vaccination Mandate, their ability to seek religious and medical exemptions and appeals, their placement on LWOP for noncompliance with the

---

[10] Plaintiffs have submitted four termination notices in connection with the instant motion.  (ECF No. 76-7, Exhibit A, Termination Notices.)

Vaccination Mandate, their options and opportunities to respond, and of the NYC DOE's intention to seek termination for continued noncompliance.  The widely publicized Vaccination Mandate was implemented on August 24, 2021.  Plaintiff-UFT members had notice of the LWOP and potential separation since September 10, 2021; CSA member employees had notice as of September 15, 2021; and DC 37 member employees had notice as of October 3, 2021. (*See* ECF No. 79, Def. NYC DOE Opp. Mem. pp. 6-7, 28.) Plaintiffs were further notified on October 2, 2021, that noncompliance with the Vaccination Mandate would result in placement on LWOP as of October 4, 2021, and that the NYC DOE would seek to separate them if they did not comply with the Vaccination Mandate or extend their LWOP status.  (*See* ECF No. 1-1, Ex. A, Oct. 2, 2021, Email from NYC DOE.)

Second, the pre- and post-deprivation proceedings articulated in the Awards were incorporated into the Plaintiffs' collective bargaining agreements. (*See, e.g.*, ECF No. 20, Def. UFT Opp. Mem. at p. 4.)  The UFT represented that it advised members inquiring about grievances that procedures regarding unvaccinated employees were governed by the binding Impact Arbitration Award which altered their CBA, and which was circulated to UFT members "along with plain-language guidance of the Award's terms[.]" (ECF No. 20, Def. UFT Opp. Mem. at p. 13.) Pre-deprivation processes "need not be elaborate[,]" and the

18

**SPA-90**

Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (citing *Loudermill,* 470 U.S. at 545-546).  The procedures outlined in CBAs are generally found to constitute adequate post-deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (noting that "CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process.") (internal citations omitted); *see also Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (noting that guaranteed procedural rights could be satisfied by the pre-deprivation notice and hearing rights provided in the collective bargaining agreement grievance procedures) (citing *Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir. 1987) (Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process).

Importantly, the parties do not dispute that the Awards and the CBAs provided for expedited review processes for exemptions and accommodations, providing an opportunity to be heard for Plaintiffs challenging the deprivation of their pay. Though it is not clear to the Court which, if any, Plaintiffs have availed themselves of these processes, the record clearly reflects that these processes exist.  *See Ezekwo v. N.Y.C.*

SPA-91

*Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991) (An
employee's right to be provided with an opportunity to address
concerns before a final decision is made can be "accomplished
through informal procedures; no formal hearing [is] required.").

Plaintiffs had until November 30, 2021, to invoke the
procedures for requesting accommodations and exemptions, and/or
to opt to extend their LWOP status and medical benefits through
September 5, 2022. Finally, Plaintiffs, having received
multiple notices regarding the Vaccination Mandate and after
being notified of the applicable dates, procedures, and
consequences regarding continued noncompliance with the
Vaccination Mandate, could still have sought relief through an
Article 78 proceeding in New York state court. Indeed,
Plaintiffs can *still* seek relief through Article 78 proceedings.
The Second Circuit has advised that the Article 78 proceeding
can provide a sufficient post-deprivation remedy. *See Hellenic
Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877,
881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly
adequate post-deprivation remedy."). Beyond challenging their
placement on LWOP, Plaintiffs may avail themselves of Article 78
proceedings to challenge their termination. *See Tessler v.
Paterson*, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011) (finding that
terminated plaintiffs' procedural due process claims must fail
because of the availability of adequate post-deprivation

20

processes, and noting specifically that "[i]t is well-established that the Article 78 proceeding 'constitutes a wholly adequate post-deprivation hearing for due process purposes.'") (citing *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir.2001) (holding that terminated plaintiffs failed to allege a claim for violation of due process, and noting that an Article 78 proceeding constitutes a wholly adequate post-deprivation hearing for due process purposes.)).

Having again determined that the Plaintiffs were afforded constitutionally adequate pre- and post-deprivation due process, the Court next considers whether the vaccine requirement is a condition of employment and examines any corresponding due process requirements.

**2. Vaccine Requirement as a Condition of Employment**

The Court finds that the Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs as affected by the relevant Arbitration Awards or agreements and all relevant state statutes.

Plaintiffs do not challenge the lawfulness or validity of the Vaccination Mandate. In fact, none of the relevant parties dispute that the Vaccination Mandate is lawful and requires all NYC DOE employees to be vaccinated, or to receive an exemption or

accommodation.  Instead, Plaintiffs assert that the *termination* of employees by the NYC DOE pursuant to the Vaccination Mandate is unlawful because: (1) the Commissioner of the New York City Department of Health and Mental Hygiene has no statutory or administrative authority to impose a new condition of employment upon NYC DOE employees; (2) New York Civil Service Law requires that all terms and conditions of employment for a public employer are mandatory subjects of bargaining pursuant to New York's "Taylor Law," N.Y. Civ. Serv. Law § 200; (3) the UFT has argued that the Vaccination Mandate does not impose a condition of employment, and thus, no condition of employment was created;[11] and (4) even if the Vaccination Mandate creates a condition of employment, this condition of employment does not "abrogate" Plaintiffs' due process rights or permit the NYC DOE to violate the Plaintiffs' protected property interest in their continued employment.  (ECF No. 76-13, Pls. Mem. at pp. 7-8.) These arguments are unavailing.

The Court is not convinced by Plaintiffs' or Defendant unions arguments that the NYC DOE acted without statutory or administrative authority.  Plaintiffs specifically argue that a condition of employment must comply with the N.Y. Education Law

---

[11] Even if Plaintiffs have accurately described the union Defendants' views, the Court need not and will not decide Plaintiffs' disputed motion based on the union Defendants' *ipse dixit* proclamations regarding whether the Vaccination Mandate is a condition of employment.

**SPA-94**

Section 2573.9, and that the NYC DOE sidestepped this integral

requirement because neither the Board of Education nor the Panel

for Educational Policy has determined that the vaccine is a

qualification.  (ECF No. 76-13, pp. 7-8.)  Section 2573.9

provides:

> No principal, supervisor, director, or teacher shall
> be appointed to the teaching force of a city who does
> not possess qualifications required under this chapter
> and under the regulations prescribed by the
> commissioner of education for the persons employed in
> such positions in the schools of the cities of the
> state, but a board of education may prescribe
> additional or higher qualifications for the persons
> employed in any of such positions.

N.Y. Educ. Law § 2573.9.  Notably, Section 2573.9 by its own

terms applies only to the "teaching force" of principals,

supervisors, directors, and teachers, not all staff that could

feasibly work at NYC DOE schools.  Plaintiffs mistakenly rely on

Section 2573.9 of New York Education Law which notes that the

statutory chapter establishes minimum pedagogical qualifications

principals, supervisors, directors, and teachers.  The burden of

showing a likelihood of success is on Plaintiff, the moving

party seeking injunctive relief.  *See generally*, *Winter*, 555

U.S. 7.  Plaintiffs, however, have not identified any authority

that proscribes the NYC DOE from imposing a vaccine requirement

during a global pandemic causing risks of severe illness and

23

**SPA-95**

death to the unvaccinated, many of whom include school age children.[12]

The Court also finds unavailing Plaintiffs' further argument that Defendant NYC DOE created a condition of employment in contravention of New York Civil Service Law Section 201.4, which requires the NYC DOE employer to negotiate and bargain terms and conditions of employment.  Contrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards.  The Arbitration Awards provide, *inter alia*, that the NYC DOE may "seek to unilaterally separate" employees who have not elected to voluntarily separate or to extend their LWOP status after December 1, 2021, and that "except for the express provisions contained, herein, all parties retain all legal rights at all times."  (*See* ECF No. 19-1, O'Connor Decl., Ex. A, UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at Ex. B, CSA Arbitration Award at III.C.)  Based on the foregoing,

---

[12] *COVID-19 Vaccines for Children and Teens*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Updated Jan. 11, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/children-teens.html (As of October 2021, one of the three available COVID-19 vaccines in the U.S. became available for children ages five and older, and no vaccine is yet approved for children ages four and younger.).

SPA-96

the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4.

The COH Order establishing the Vaccination Mandate has established a lawful, enforceable condition of employment (named differently, a qualification for employment or eligibility for employment, etc.) which all NYC DOE employees must satisfy in order to remain employed by the NYC DOE.[13]  As the NYC DOE has accurately asserted, the NYC DOE has an obligation to maintain a safe workplace.  *See* N.Y. Labor Law § 27-a.  The world, the country, and certainly the City of New York, have been contending with a public health emergency, which includes new COVID-19 variants accompanied with heightened rates of transmissibility and surges in COVID-19 infections.  Only recently as of October 29, 2021, have vaccinations been approved for children ages five and older.[14]  Given the ongoing pandemic,

---

[13] Defendant unions argue that the COVID-19 vaccine is not a job condition, asserting, "that some unvaccinated employees have been granted accommodations on medical or religious grounds, and others have remained employees on long-term leave, proves that vaccination is not a mandatory qualification: one cannot accommodate for an immutable statutory requirement for employment like licensure or residency." (*See* ECF No. 77, Defs. UFT and CSA Letter, p. 4.) Tellingly, the Union Defendants fail to disclose whether the accommodated employees are working in the classrooms or schools. Moreover, the accommodations and exemptions provided for the Vaccination Mandate are among the constitutional safeguards which the union Defendants negotiated and achieved in the Awards. (*See* ECF No. 20, Def. UFT Mem., p. 3); *see also* New York City Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021) (The UFT, together with other City unions, brought a challenge to the Vaccination Mandate, including the omission of religious and medical exemptions on constitutional and other grounds. After the New York State Supreme Court granted the Unions' application for a temporary restraining order, the City amended the Vaccination Mandate to allow for reasonable medical and religious accommodation.)

[14] *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age*, FDA.gov (Oct. 29, 2021),

SPA-97

and the specific nature of Plaintiffs' jobs in New York City
public schools where Plaintiffs interact directly with
vulnerable students, and directly or indirectly with those
students' families and communities, the Commissioner of Health
was within his powers to implement safety and health standards
and require COVID-19 vaccinations as a condition of employment
for NYC DOE employees.

Recent case law from this Circuit and in the State of
New York supports a finding that vaccination is a lawful
condition of employment.  Though not specific to the education
context, the Second Circuit has held that "[v]accination is a
condition of employment in the healthcare field." *We The
Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 2102566, 2021 WL
5121983, at *18 (2d Cir. 2021).  Relatedly, as this Court
recently found in *Garland*, due to the specific nature of
plaintiff-F.D.N.Y. firefighters' and EMTs' public facing jobs,
vaccination is a lawful qualification for employment for
F.D.N.Y. firefighters.  *See Garland v. New York City Fire Dep't*,
No. 21-cv-6586(KAM)(CLP), 2021 WL 5771687, at *6 (E.D.N.Y. Dec.
6, 2021) (in which the vaccination mandate at issue was created
by Order of the Commissioner of the New York City Department of
Health and Mental Hygiene on October 20, 2021, requiring all

---

https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-
biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age.

City employees to receive one dose of any COVID-19 vaccine by a date certain).

Additionally, in three recent and separate New York Supreme Court cases, the New York Supreme Court issued instructive decisions regarding Article 78 proceedings filed by tenured NYC DOE teachers who failed to comply with the Vaccination Mandate and challenged their placement on LWOP status. *See O'Reilly v. Bd. of Educ. of the City School Dist. of the City of New York,* No. 161040/2021, N.Y. Slip. Op. 30173(U), 2022 WL 180957, at *1 (N.Y. Sup. Ct. Jan. 20, 2022); *Lanzer v. Bd. of Educ., et al.*, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); *Romero v. Bd. of Educ., et al.*, Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty).  In *O'Reilly*, which involved a tenured teacher-petitioner, the New York Supreme Court held that the COH Order established vaccination against COVID-19 as a lawful "condition of employment" for NYC DOE employees. *See O'Reilly*, 2022 WL 180957, at *2 (finding that NYC DOE's employment action of placing teachers who did not comply with the Vaccination Mandate on LWOP status was not discipline under New York Education Law and was "merely a response to petitioner's refusal to comply with a condition of employment.").  The New York Supreme Court accordingly held that petitioner was not entitled to the process required by New York Education Law Sections 3020 and 3020-a, and cited to *We The*

**SPA-99**

*Patriots* and *Garland* in support of its decision.  *Id*.  In *Lanzer* and *Romero*, the New York Supreme Court denied petitions brought pursuant to Articles 75 and 78, noting that the tenured teacher-petitioners, who "dispute[d] the requirement that teachers get a Covid-19 vaccine or seek an accommodation," were not entitled to a hearing under Section 3020-a on their placement on LWOP status, as these employment actions were not a disciplinary consequence of the NYC DOE employees' failure to comply with the Vaccination Mandate.  *Romero*, Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); *Lanzer*, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty).

Plaintiffs advance a series of baseless arguments related to the NYC DOE's Vaccination Mandate as a condition of employment that do not support a finding that Plaintiffs are likely to succeed on the merits.  Plaintiffs rely on the Lotito Declaration and an accompanying exhibit in support of their contention that "the NYCDOE's actions are inconsistent" with the NYC DOE's position that the Vaccination Mandate creates a legitimate condition of employment.  Plaintiff-declarant Lotito asserts that because she was allowed to enter her son's school despite being unvaccinated, though she was asked to complete a Health Questionnaire as part of her visits, the NYC DOE's argument that she is unfit for employment must fail. (ECF No. 76-6, Lotito Decl.; ECF No. 76-8, Ex. B, Health Screening

SPA-100

Questionnaire).  This argument is inapplicable to the question of whether the NYC DOE has created a lawful condition of employment.  The conditions on *visitors* within the NYC DOE system do not impact the legitimacy of conditions imposed on NYC DOE *employees*.

Relatedly, Plaintiffs in their memorandum of law argue that they are physically and/or mentally capable of performing their duties, and if "they were to submit to medical examinations, many of the Plaintiffs would be able to show that they have natural immunity from the COVID-19 virus."  (ECF No. 76-13, p. 12.)  In support of their argument, the Plaintiffs offer a series of unexplained pictures and screenshots purportedly showing antibody tests pertaining to some of the Plaintiffs.  (ECF No. 76-9, Ex. C.)  The Court will not speculate how these exhibits may bear on the vaccine as a condition of employment, and will not entertain or attempt to interpret unexplained medical evidence.

The NYC DOE has not asserted that Plaintiffs are unfit for employment.  Rather, Defendant NYC DOE has submitted evidence that convincingly supports the vaccine requirement as a condition of employment, and undercuts Plaintiffs' arguments based on antibody tests, through the Declaration of Dr. Michelle E. Morse, M.D., M.P.H.  (*See* ECF No. 79-2, Appx. B, Morse Aff., ¶¶ 18, 19 (noting that vaccines are the most effective means of

29

reducing the spread of COVID-19, that the level and duration of immune protection that results from a prior COVID-19 infection remains uncertain, and that the CDC still recommends vaccinations for people who have had prior COVID-19 infections)).

Plaintiffs also argue that because the NYC DOE's contractors are advertising for jobs that do not include vaccination as a qualification, the NYC DOE cannot argue that its employees must be vaccinated. (ECF No. 76-13, Pls. Mem., p. 10.) Plaintiffs submit an "Indeed" job posting for a "speech language pathologist and CFs" position (ECF No. 76-11, Ex. E), which, according to the posting, is for a position with the "Perfect Playground," a part of the Stepping Stones Group. (*Id.*) The posting provides that the company seeks employees for "school assignments[.]" (*Id.*) This evidence does not establish that the Stepping Stones Group is a NYC DOE contractor or that the NYC DOE will not require vaccination as a qualification for placement at an NYC DOE school. Even assuming this limited evidence relates to an NYC DOE position, it does not support a finding that the NYC DOE's vaccination requirement is not a valid condition of employment. Plaintiffs' arguments are not substantiated by credible or material evidence, nor do they have any bearing on whether Plaintiffs were provided adequate due process or whether the NYC DOE has implemented a lawful

**SPA-102**

condition of employment.  Consequently, Plaintiffs have not
shown a likelihood of success on the merits.

Pursuant to the Commissioner of Health's Order and NYC
DOE's implementation, the Plaintiffs have been provided
constitutionally adequate notice and opportunity to challenge
the NYC DOE's separation of unvaccinated employees, absent an
exemption or accommodation, from their employment in the NYC
DOE's schools.  The termination of NYC DOE employees who failed
to comply with the COVID-19 vaccination condition of employment
is not disciplinary.  Rather, Plaintiffs' separation is cause of
their failure to avail themselves of existing processes or
comply with a lawful job condition.

### 3. Corresponding Due Process

Accordingly, the Court need not consider whether N.Y.
Education Law Sections 3020, 3020-a, or N.Y. Civil Service Law
Section 75 were or will be appropriately followed because under New
York law, the termination of a public employee based on the
employee's failure to satisfy a qualification of employment
unrelated to job performance, misconduct, or competency does not
implicate the disciplinary procedures set forth in N.Y. Educ. Law
§§ 3020, 3020-a, or N.Y. Civil Service Law § 75.  *See, e.g.,
O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara
Falls*, 852 N.Y.S.2d 537, 538 (4th Dep't 2008) (petitioners
terminated for failure to comply with the residency policy of their

31

SPA-103

employment agreements were not entitled to a hearing pursuant to
N.Y. Educ. Law §§ 3020, 3020-a because "[t]hose sections of the
Education Law are inapplicable[...] as they address issues relating
to a teacher's competency and the applicable disciplinary
procedures and penalties [...], while the residency policy 'is a
consideration unrelated to job performance, misconduct or
competency . . . a qualification of employment . . . [that
respondent] may impose it if chooses to do so without running afoul
of the Constitution or general laws of the State.") (citation
omitted), *appeal denied*, 892 N.E.2d 396 (2008); *Beck-Nichols v.
Bianco*, 20 N.Y.3d 540, 558—59 (2013) (noting that "a residency
requirement defines eligibility for employment . . . unrelated to
job performance, misconduct or competency" and thus concluding that
the plaintiffs were not entitled to a hearing pursuant to N.Y.
Educ. Law §§ 2509(2), 3020, and 3020-a); *Felix v. N.Y.C. Dept. of
Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004) ("the act of
failing to maintain one's residence within the municipality is
separate and distinct from an act of misconduct by a municipal
employee in the performance of his or her work. Failure to maintain
residence renders an individual ineligible for continued municipal

**SPA-104**

employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures . . .").

Based on the foregoing, because the Court finds that receiving a vaccination against COVID-19 is a condition of employment for NYC DOE employees, the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a or Civil Service Law Section 75 prior to terminating NYC DOE employees due to their noncompliance with the Vaccination Mandate. *See O'Connor*, 48 A.D.3d at 1255 (4th Dep't 2008); *Adrian v. Bd. of Ed.*, 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558–59 (2013); *Brown v. Bd. of Educ.*, 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009); *Felix v. Dep't of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004). The NYC DOE was and is required to provide notice and processes that comport with constitutional due process prior to or after termination, which the Court has already determined that the NYC DOE has done. Accordingly Plaintiffs have not established a likelihood of success on the merits.

### B. Irreparable Harm

Though, as referenced *supra*, Plaintiffs need not make any further showing of irreparable harm once constitutional

deprivations have been alleged, the Court notes that the harms alleged by Plaintiffs directly resulting from their noncompliance with the Vaccination Mandate are not irreparable. At their core, Plaintiffs' articulated harms associated with the instant motion for injunctive relief are: loss of employment and the resulting loss of medical benefits. As discussed in the Court's previous decision, and again below, the Second Circuit has held that these pecuniary harms are neither irreparable nor sufficient to justify the presently requested injunctive relief.

In support of their motion for preliminary injunction, Plaintiffs have submitted five declarations from Plaintiffs, including the Declaration of Janelle Lotito. (ECF No. 76-6). (*See also* ECF No. 76-2, Hoffman Decl., ECF No. 76-3, Charles Decl., ECF No. 76-4, Mendez Decl., and ECF No. 76-5, Palladino Decl.) As previously noted, Plaintiff Lotito signed the NYC DOE Release Form associated with extending her LWOP status and medical benefits, and will not be terminated or lose her medical benefits on February 11, 2022. (ECF No. 76-6, Lotito Decl.) Of the other four declarations, Plaintiffs allege what are fundamentally monetary harms resulting from a loss of their pay, their employment related health benefits, and from having to pay for alternative healthcare via the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

This Court does not dispute that loss of income and/or loss of medical benefits are serious burdens.  The loss of one's wages and medical insurance, particularly for those with financial commitments and dependents, are serious hardships. The standard for equitable relief, however, demands a demonstration of an irreparable harm, harm for which available legal remedies and monetary damages would be inadequate. In the Second Circuit, "[i]rreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap*, *Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510–11 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)).  The Supreme Court has also held that "the temporary loss of income, []does not usually constitute irreparable injury . . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable

35

**SPA-107**

harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Here, should Plaintiffs prevail, monetary relief will be available to compensate their associated pecuniary losses.

Plaintiffs cite two cases for the proposition that their loss of medical benefits can constitute irreparable harm: *Communications Workers of Am., Dist. One, AFL–CIO v. NYNEX Corp.*, 898 F.2d 887 (2d Cir. 1990) and *Whelan v. Colgan*, 602 F.2d 1060 (2d Cir. 1979). Both these cases are distinguishable from the instant case: in *Whelan*, a case that pre-dates the enactment of COBRA, the Second Circuit affirmed the granting of a preliminary injunction where plaintiffs, striking workers, were likely to succeed on the merits, and where "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury." *Whelan*, 602 F.2d at 1062. *NYNEX* involved the denial of COBRA benefits as required under federal law. *NYNEX Corp.*, 898 F.2d 887. In *NYNEX*, the defendant-employer initially informed its employees that it intended to terminate medical benefits, which they could replace under COBRA. Defendant-employer then obstructed the employees' ability to secure COBRA benefits, which the district court considered an absolute termination of benefits. The Court of Appeals affirmed the district court's grant of a preliminary injunction ordering the defendant to allow for COBRA benefits. *See NYNEX*, 898 F.2d at

891-92.  Here, in contrast, nothing in the record indicates that Plaintiffs will not retain their Congressionally-mandated ability to secure medical coverage under COBRA.  (*See* ECF No. 76-7, Pls. Ex. A, Termination Notices p. 1 ("Information about COBRA will be mailed to you separately at the address on file in NYCAPS...")  Plaintiffs own declarations support a finding that Plaintiffs' alleged harms are tethered to their ability to pay for COBRA stemming from their loss of salary from the NYC DOE, not to their complete inability to secure alternative medical benefits.  (*See* ECF No. 76-2, Hoffman Decl., ECF No. 76-3, Charles Decl., ECF No. 76-4, Mendez Decl., and ECF No. 76-5, Palladino Decl.)

More recently and relatedly, the Southern District of New York in *Kane v. de Blasio,* No. 21-cv-7863 (VEC), 2021 WL 5909134 (S.D.N.Y. Dec. 14, 2021), denied injunctive relief to NYC DOE teachers and administrators, noting that the teachers alleged that they were faced with either a vaccination or the possibility of "various penalties including the loss of health insurance and other benefits[.]" *Id*. at*4. The Court determined that the only alleged harms were economic and could be remedied by money damages and, therefore Plaintiffs had not demonstrated irreparable harm.  *Id*.[15]  Here too, injunctive relief is not

---

[15] The Court takes judicial notice that the Second Circuit very recently denied the *Kane* plaintiffs' motion for an injunction pending appeal, finding that the appellants had not shown the requisite likelihood that the district

**SPA-109**

warranted on the basis of Plaintiffs' alleged, compensable harms.

Plaintiffs argue that their harms are beyond monetary, and that the very choice they face between vaccination and termination is in itself an irreparable harm. Plaintiffs assert that the Second Circuit in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), by citing to the Fifth Circuit case *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) in a footnote, "raises the specter that in this Circuit the choice between a job and a jab is irreparable harm." (ECF No. 76-13, Pls. Mem., pp. 4-5) (citing *Kane*, 19 F.4th at 170, n. 18 ("*But see BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, ,618 (5th Cir. 2021) (finding irreparable harm where 'reluctant individual recipients [were] put to a choice between their job(s) and their jab(s)')".) This Court does not consider Plaintiffs' reading to be an accurate interpretation of the Second Circuit's footnote in *Kane*, in which the Court of Appeals first clearly stated that it did "not cast doubt on the well-established principle that 'loss of employment "does not usually constitute irreparable injury."'" *Kane*, 19 F.4th at 170, n. 18 (internal citations omitted). In the Second Circuit, the well-established principle remains that adverse employment consequences do not usually

---

court abused its discretion in denying the motion for preliminary injunction. *See Kane v. de Blasio*, No. 21-3043 (2d. Cir. Feb. 3, 2022.).

constitute irreparable harm. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294-95 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("It is well settled [...] that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages.") (citing *Sampson v. Murray*, 415 U.S. 61, 91-92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("[L]oss of income and ... the claim that her reputation would be damaged ... falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction[.]"); *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.").

Finally, the Court notes that Plaintiffs had ample notice and opportunity to invoke pre- and post-deprivation processes, including the option to extend their LWOP status and medical benefits through September 2022. These processes, made available through state procedures and through their unions' collective bargaining and Arbitration Awards, are governed precisely by the State legislature and their unions. It is not for this Court to decide whether the Plaintiffs, if they avail

themselves of those processes, should be granted the corresponding remedies they seek.  Plaintiffs should not be heard to complain that their due process rights were violated when they have not shown that they availed themselves of any of the existing processes to challenge the NYC DOE.  Nor should Plaintiffs be heard in support of their motion for injunctive relief to complain that they will suffer pecuniary harm because of their own choices.

Here, Plaintiffs' economic harms can be remedied with monetary damages and/or reinstatement if Plaintiffs prevail on the merits.  Further, the termination of Plaintiffs' medical benefits, to which they are no longer entitled once they cease to be employees of the NYC DOE, can be continued through COBRA. Accordingly, Plaintiffs have failed to demonstrate that they will suffer irreparable harm absent injunctive relief.

### C. **Balance of the Equities and D. The Public Interest**

The Court finds that both the balance of the equities and the public interest weigh against injunctive relief. Plaintiffs seek an injunction barring "the NYC DOE from unilaterally terminating the Plaintiffs without due process." (ECF No. 76-13, at p. 2.)  The role of the Court, however, is to "balance the competing claims of injury on each party of either granting or withholding the requested relief, paying particular regard to the public consequences." *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7 (2008). On balance, the equities at stake and the importance of safeguarding the public health and safety of NYC DOE schools and all who work or learn there, and the public interest, weigh heavily in favor of upholding the implementation by the NYC DOE of the Vaccination Mandate ordered by the Commissioner of Health, and again denying a temporary restraining order and preliminary injunction.

The Vaccination Mandate and all of its consequences are plainly oriented around one goal: to protect the affected population from the adverse impact of COVID-19. In this instance, the relevant population includes NYC DOE staff and students. It "cannot be disputed that the State has a public policy in favor of protecting children[.]" *City Sch. Dist. Of City of New York v. McGraham*, 17 N.Y.3d 917, 919-920, 958 N.E.2d 897 (2011). Many of the more than one million students who learn within the NYC DOE school system network are still too young to be vaccinated, to say nothing of particularly vulnerable students who are immunocompromised, or have family members who are.

The Court in its November 24, 2021, Order, cited *Maniscalco v. New York City Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021), in which Judge Cogan of this District noted, "[s]ince its emergence, COVID-19 has killed over 4.5 million people

SPA-113

worldwide, with over 670,000 of those deaths taking place in the United States," and vaccination is "one of the most highly regarded" tools available to "reduce viral transmission."  Now, as of the date of the filing of this Memorandum and Order, COVID-19 has killed more than 5.7 million people worldwide.[16] More than 900,000 of those deaths have taken place in the United States.[17]

As Dr. Michelle E. Morse provided in her affidavit, "from a public safety perspective, vaccination provides a more certain and verifiable record of immunity than that afforded by prior COVID-19 infection," and consequently, "vaccination is a major public health imperative."  (ECF No. 79-2, Appx. B, ¶¶ 20-21.)  "In particular, vaccination of individuals providing City services and working in City facilities will save lives, protect public health, and promote public safety."  (*Id.* at ¶ 21.) Available scientific and medical data supports the use of vaccination as a lifesaving public policy measure, as data from the "Centers for Disease Control and Prevention shows that

---

[16] *Coronavirus World Map: Tracking the Global Outbreak*, N.Y. TIMES (updated Feb. 11, 2022), https://www.nytimes.com/interactive/2021/world/covid-cases.html.
[17] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES (updated Feb. 11, 2022), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

SPA-114

people who are unvaccinated are at a much greater risk than those who are fully vaccinated to die from Covid-19."[18]

All available scientific and medical information is for the government and its agencies—and not for this Court—to formulate into the policies the City and State consider to be in the best interest of the public health and safety.  The Court's role is limited to assessing claims of irreparable harm, the likelihood of success on the merits, and balancing the competing claims of injury and the public consequences of granting relief. In this case, for the second time, the Court considers that the equities and the public interest clearly disfavor injunctive relief.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order, accompanied by the Defendant unions' "supporting" letter, is DENIED.

**SO ORDERED.**

Dated:     February 11, 2022
           Brooklyn, New York


                              /s/
                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge


_____

[18] *Id.*