# 23-655

## In the
## United States Court of Appeals
### For the Second Circuit

NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA BRYAN, RENA GELLMAN, FONTINA LAMBOS, KERRY BEN-JACOB, EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA NARCISCO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO,

*Plaintiffs-Appellants,*
*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

**BRIEF FOR DEFENDANTS-APPELLEES UNITED FEDERATION OF TEACHERS, MICHAEL MULGREW, COUNCIL OF SUPERVISORS AND ADMINISTRATORS, and MARK CANNIZZARO**

STROOCK & STROOCK & LAVAN LLP
*Attorneys for Defendants-Appellees*
Dina Kolker, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
dkolker@stroock.com

_____

ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN
MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANE PAGEN, LYNN
PEPE, STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ,
SORAYA SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY
MUSSAFI, JESSICA NICCHIO, DORCA GENAO, RACHEL MANISCALCO,
JAMES HOFFMAN, SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES
DIPROSSIMO, CAROLA MARTINEZ-VANBOKKEM, AYSE USTARES,
ELIZABETH FIGUEROA, DIANNE BAKER-PACIUS, NICOLE MOORE,
ELIZABETH PLACENCIO, DEBBIE BERTRAM, KIMBERLI MADDEN,
FRAN SCHMITTER, VICTORIA RUSSO, PAUL CIFARELLI, DANIELLE
HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI BENEDUCE,
ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO, JEANEAN
SANCHEZ, MARIE MOSLEY, TARA PALLADINO, DANIELLE MCGUIRE,
JULIA HARDING, LEAH KUKLA, STEPHANIE FRANZESE, JULIA
BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE, AURA
MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER
ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO,
LORRAINE MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU and
HENRIETTA SHAYA,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER,
UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN
FEDERATION OF TEACHERS, AFL-CIO, MICHAEL MULGREW,
COUNCIL OF SUPERVISORS AND ADMINISTRATORS, MARK
CANNIZZARO, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY
GARRIDO, SHAUN D. FRANCOIS, I, FRANCINE FRANCIS, MARTIN F.
SCHEINMAN, SCHEINMAN ARBITRATION AND MEDIATION
SERVICES, LLC, SCHEINMAN ARBITRATION AND MEDIATION
SERVICES, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 372,
DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees.*
*(See inside cover for additional appearances)*

_____

_____

COHEN, WEISS AND SIMON LLP
*Attorneys for Defendants-Appellees*
  *District Council 37, AFSCME AFL-CIO,*
  *Henry Garrido, Shaun D. Francois, I,*
  *Francine Francis, District Council 37,*
  *AFSCME AFL-CIO, Local 372 and*
  *District Council 37, AFSCME AFL-CIO,*
  *Local 1251*
900 3rd Avenue, Suite 2100
New York, New York 10022
(212) 356-0216
pdechiara@cwsny.com

VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP
*Attorneys for Defendants-Appellees*
  *Martin F. Scheinman, Scheinman*
  *Arbitration and Mediation Services,*
  *LLC and Scheinman Arbitration and*
  *Mediation Services*
300 Garden City Plaza, Suite 308
Garden City, New York 11530
(516) 282-3355
g.weinstock@vbpnplaw.com
a.medina@vbpnplaw.com

_____

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellees United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT") and Council of School Supervisors & Administrators, Local 1, AFSA, AFL-CIO ("CSA") have no parent corporations. UFT and CSA are, as indicated, affiliates of national unions.

**<u>TABLE OF CONTENTS</u>**

**Page(s)**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT......................................... i

COUNTERSTATEMENT OF ISSUES PRESENTED.............................................1

COUNTERSTATEMENT OF THE CASE...............................................................3

FACTUAL BACKGROUND ...................................................................................8

    Relationships Among the Parties.....................................................................8

    The City Issues Summary Termination Letters in Violation of Due
    Process Rights ..............................................................................................13

SUMMARY OF ARGUMENT .............................................................................15

ARGUMENT ........................................................................................................17

    I. STANDARD OF REVIEW ........................................................................17

    II. THE UFT AND CSA AWARDS ARE UNASSAILABLE
    AND VALID AS A MATTER OF LAW ......................................................18

    A. As a Threshold Matter, Plaintiffs Lack Standing to
    Challenge the Awards ...................................................................................18

    B. The Taylor Law and All Precedent Allow UFT and CSA
    Appellees to Arbitrate Disputes ...................................................................19

    C. PERB and OCB Decisions Explicitly Concerning COVID-
    19 Vaccination Mandates Support the Validity of the
    Awards .........................................................................................................24

    III. THE AWARDS PROVIDED APPELLANTS WITH
    CONSTITUTIONALLY SUFFICENT DUE PROCESS
    BEFORE PLACEMENT ON LWOP ...........................................................25

    IV. THE DISTRICT COURT CORRECTLY DISMISSED
    APPELLANTS' § 1983 CONSPIRACY CLAIMS.......................28

    V. APPELLANTS' "CLAIMS" FOR DECLARATORY
    JUDGMENT AND PUTATIVE CLASS CLAIMS WERE
    PROPERLY DISMISSED ............................................................37

    A. The District Court Properly Dismissed Appellants'
    Declaratory Judgement "Claims"..................................................................37

B. Likewise, Appellants' Class Claims Were Based on
Deficient Causes of Action and Were Properly Dismissed ..........40

VI. LEAVE TO AMEND THE AMENDED COMPLAINT
WAS PROPERLY DENIED .........................................................41

CONCLUSION....................................................................................43

CERTIFICATE OF COMPLIANCE....................................................44

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Aetna Life Ins. Co. v. Haworth of Hartford, Conn.,
   300 U.S. 227 (1937)..................................................................................38, 39

Matter of Alden Cent. Sch. Dist. v. Watson,
   56 A.D.2d 713 (4th Dep't 1977).........................................................19

Bd. of Educ. of City Sch. Dist. v. New York State Pub. Emp. Rels.
   Bd.,
   75 N.Y.2d 660 (1990) ........................................................................22

Bd. of Regents of State Colleges v. Roth,
   408 U.S. 564 (1972)...........................................................................21

Betts v. Hoosic Valley Teachers' Ass'n,
   86 Misc. 2d 964 (Sup. Ct. Rensselaer Cnty. 1976) ...........................23

Broecker v. New York City Dep't of Educ.,
   21-CV-6387(KAM)(LRM), 2023 WL 2710245 (E.D.N.Y. Mar. 30,
   2023) (Broecker III).............................................................................3

Broecker v. New York City Dep't of Educ.,
   573 F. Supp. 3d 878 (E.D.N.Y. 2021) (Broecker I) ............................3

Broecker v. New York City Dep't of Educ.,
   585 F. Supp. 3d 299 (E.D.N.Y. 2022) ................................................3

Matter of Buffalo Teachers Fed'n v. City Sch. Dist. of the City of
   Buffalo,
   49 PERB ¶ 4560 (2016) .....................................................................23

Burton v. Wilmington Parking Auth.,
   365 U.S. 715 (1961)...........................................................................31

Calcano v. Swarovski N. Am. Ltd.,
   36 F.4th 68 (2d Cir. 2022) .................................................................17

iv

Callaghan v. United Fed'n of Teachers,
    133 A.D.3d 412 (1st Dep't 2015) .......................................................29

Chevron Corp. v. Naranjo,
    667 F.3d 232 (2d Cir 2012) ........................................................39, 40

Ciambriello v. Cnty. of Nassau,
    292 F.3d 307 (2d Cir. 2002) ..................................................29, 32, 33

City of Newburgh v. Pub. Emp. Rels. Bd.,
    97 A.D.2d 258 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984) ...........19

Commodari v. Long Island Univ.,
    89 F. Supp. 2d 353 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir.
    2003) .................................................................................................31

Dennis v. Sparks,
    449 U.S. 24 (1980).............................................................................30

Driskell v. New York City,
    No. 11 Civ. 4915 (BMC), 2011 WL 6812516 (E.D.N.Y. Dec. 27,
    2011) .................................................................................................29

Dykes v. Southeastern Pa. Transp. Auth.,
    68 F.3d 1564 (3d Cir. 1995) ..............................................................35

Figueroa v. City of Camden,
    580 F. Supp. 2d 390 (D.N.J. 2008).....................................................35

Fiore v. Town of Whitestown,
    125 A.D.3d 1527 (4th Dep't 2015), lv. to appeal denied 25 N.Y.3d
    910 (2015)..........................................................................................18

Fleischer v. Barnard College,
    No. 20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) .................18

Matter of Greenburgh No. 11 Fed'n of Teachers,
    32 PERB ¶ 3024 (1999).....................................................................23

Harmon v. Matarazzo,
    162 F.3d 1147 (2d Cir. 1998) ............................................................29

v

Jackson v. Roslyn Bd. of Educ.,
   652 F. Supp. 2d 332 (E.D.N.Y. 2009) .................................................27

Jessamy v. City of New Rochelle, New York,
   292 F. Supp. 2d 498 (S.D.N.Y. 2003) .................................................32

Katir v. Columbia Univ.,
   15 F.3d 23 (2d Cir.1994) ....................................................................18

KM Enters., Inc. v. McDonald,
   No. 11–cv–5098 (ADS)(ETB), 2012 WL 4472010 (E.D.N.Y. Sept.
   25, 2012), aff'd 518 F. App'x 12 (2d Cir. 2013)................................37

Leahy v. Board of Trustees of Cmty. College Dist. No. 508, Cnty. of
   Cook, State of Ill.,
   912 F.2d 917 (7th Cir. 1990) .......................................................32, 33

Leblanc v. Security Servs. Unit Emps. of New York State Law
   Enforcement Officers Union, Council 82, AFSCME, AFL-CIO,
   278 A.D.2d 732 (3d Dep't 2000).........................................................18

Matter of N.Y.C. Mun. Labor Comm. and City of New York,
   15 OCB2d 34 (BCB 2022)....................................................................5

Marciano v. de Blasio,
   589 F. Supp. 3d 423 (S.D.N.Y. 2022) ................................................36

Margiotta v. Kaye,
   283 F. Supp. 2d 857 (E.D.N.Y. 2003) ................................................20

McCabe v. Lifetime Entertainment, Servs., LLC,
   761 F. App'x 38 (2d Cir. 2019)...........................................................41

McGovern v. Local 456, Int'l Brotherhood of Teamsters, Chauffeurs
   & Warehousemen & Helpers of Am., AFL-CIO,
   107 F. Supp. 2d 311 (S.D.N.Y. 2000) ................................................30

Medtronic, Inc. v. Mirowski Family Ventures, LLC,
   571 U.S. 191 (2014)............................................................................39

Mehrhoff v. William Floyd Union Free Sch. Dist.,
    No. 04-CV-3850(JS)(MLO), 2005 WL 2077292 (E.D.N.Y. Aug.
    22, 2005) ...................................................................................30, 35

MSP Recovery Claims, Series LLC v. Hereford Ins. Co.,
    66 F.4th 77 (2d Cir. 2023) .........................................................41, 42

N.Y.C. Mun. Labor Comm. et al. v. City of New York et al.,
    158368/2021 (Sup. Ct. N.Y. Cnty.) ..................................................9, 34

N.Y.C. Mun. Labor Comm. v. City of New York,
    151169/2022 (Sup. Ct. N.Y. Cnty. 2022), CPLR 5704 application
    denied, 2022-00618 (1st Dep't Mar. 10, 2022) ...............................5, 14

N.Y.C. Mun. Labor Comm. v. City of New York,
    2021 WL 4502854 (Sup. Ct. N.Y. Cnty. Sept. 22, 2021), dismissed
    N.Y.C. Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621
    (Sup. Ct. N.Y. Cnty. 2021) ...................................................................5

N.Y.C. Mun. Labor Comm. v. City of New York,
    73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021).................................10, 35

N.Y.C. Mun. Labor Comm. v. City of New York,
    15 OCB2d 34 (2022)...........................................................................25

Nat'l Broadcasting Co. v. Commc'ns Workers of Am., AFL-CIO,
    860 F.2d 1022 (11th Cir. 1988) ..........................................................31

Norton v. Town of Islip,
    678 F. App'x 17 (2d Cir. 2017) ..........................................................40

Palermo v. Eisenberg,
    81 Misc. 2d 1014 (Sup. Ct. Nassau Cnty. 1975) ...............................27

Rogers v. Capital One Servs., LLC,
    447 F. App'x 246 (2d Cir. 2011) .................................................41, 42

Ruotolo v. City of New York,
    514 F.3d 184 (2d Cir. 2008) ...............................................................42

Shaffer v. Schenectady City Sch. Dist.,
    245 F.3d 41 (2d Cir. 2001) .................................................................27

vii

Shara v. Maine-Endwell Cent. Sch. Dist.,
  46 F.4th 77 (2d Cir. 2022) ................................................................17

Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.,
  902 F.2d 208 (2d Cir. 1990) .............................................................27

Matter of Suffolk County Court Employees Association Inc. v. New
  York State Unified Court System,
  56 PERB ¶ 4513 (2023) ...............................................................24, 25

Sykes v. Bank of America,
  723 F.3d 399 (2d Cir. 2013) .............................................................31

Matter of Teamsters Local 445 v. Town of Monroe,
  __ N.E.3d __, No. 40, 2023 WL 3587526 (N.Y. May 23, 2023).....................23

Tooly v. Schwaller,
  919 F.3d 165 (2d Cir. 2019) .............................................................27

Town of Southampton v. New York State Pub. Emp. Rels. Bd.,
  2 N.Y.3d 513 (2004) .......................................................................22

Wholean v. CSEA SEIU Local 2001,
  955 F.3d 332 (2d Cir. 2020) .............................................................17

**Statutes**

42 U.S.C. § 1983 ...........................................................................*passim*

N.Y. Civ. Serv. Law § 75...........................................................3, 9, 13, 27

N.Y. Civ. Serv. Law §200 *et seq.* .............................................6, 19, 29

N.Y. Civ. Serv Law § 208(1)(a) ....................................................7, 20

N.Y. Civ. Serv. Law § 209...........................................................19, 22

N.Y. Civ. Serv. Law § 209.2.............................................................22

N.Y. Civ. Serv. Law § 209.3(f)..........................................................22

N.Y. Educ. Law 3020............................................................................9

N.Y. Educ. Law 3020-a ..........................................................3, 9, 12, 27

N.Y. Educ. Law § 3020-1 .......................................................................3

**Other Authorities**

Order of the Commissioner of Health and Mental Hygiene to Require
    COVID-19 Vaccination For Department of Education Employees,
    Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT
    OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021),
    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
    requirement-doe-3.pdf ............................................................................2

**COUNTERSTATEMENT OF ISSUES PRESENTED**

1.      As a threshold matter, whether the District Court correctly held that Appellants—who were not parties to the arbitrations between Appellee New York City Department of Education ("DOE") on the one hand and Appellees United Federation of Teachers ("UFT") and Council of School Supervisors ("CSA"), respectively, on the other—lack standing to challenge the Awards.[1]

2.      Whether DOE and public-sector labor unions—such as Appellees UFT and CSA—may agree to enter into arbitration to resolve impasse on mandatory subjects of bargaining, as is common practice.

3.      Whether the process provided by the Awards regarding individuals who remain unvaccinated in contravention of the New York City Department of Health and Mental Hygiene order requiring vaccination for all DOE employees (the "Mandate")[2] was constitutionally sufficient.

---

[1] The "Awards" are, collectively, Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFT-CIO (Impact Bargaining), Arbitration Award (Sept. 10, 2021) (the "UFT Award"), JA-1034-JA-1052, and Board of Education of the City School District of the City of New York and Council of Supervisors and Administrators (Impact Bargaining), Arbitration Award (Sept. 15, 2021) (the "CSA Award"), JA-1053-JA-1067. References to "JA" are to the Joint Appendix filed by Appellants on June 5, 2023. References to "SPA" are to the Supplemental Appendix accompanying Appellants' Brief filed with this Court on June 5, 2023 ("App.Br.").

[2] See Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), JA-779-JA-782. That Order was amended twice – once to include reasonable medical and religious

1

4.     Whether the court properly rejected Appellants' §1983 conspiracy claim, alleging that DOE and UFT and CSA, respectively, conspired with Arbitrator Scheinman to deprive Appellants of their due process rights, despite the fact that the City and these public-sector unions are inherently adversarial, and those unions lodged multiple challenges to DOE's implementation of the Mandate.

5.     Whether Appellants' "claims" for declaratory relief were properly dismissed given that the substantive legal causes of action upon which they were based were all found to be deficient.

6.     Whether Appellants' putative class claims were properly dismissed given that the substantive legal causes of action upon which they were based were all found to be deficient.

7.     Whether the District Court properly denied Appellants leave to amend the Amended Complaint.

---

accommodations, Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 15, 2021), JA-1068-JA-1071, and again following the dissolution of the Second Circuit's temporary restraining order in a separate matter challenging the Citywide Mandate. Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, Visitors, and Others, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Sept. 28, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf ("September 28 Order").

2

## COUNTERSTATEMENT OF THE CASE

Appellants continue their baseless crusade against UFT, CSA, and other Appellees, despite the District Court's findings—time and again[3]—that the claims lodged in the Amended Complaint are deficient as a matter of law. On January 10, 2022, Appellants—employees of DOE and members of various public-sector labor unions, including Appellees UFT and CSA—filed an Amended Complaint against Appellees alleging that the implementation of the Mandate violated (a) their procedural due process rights under the Fourteenth Amendment; (b) their statutory rights to due process protections under N.Y. Educ. Law §§ 3020-1 and 3020-a or N.Y. Civ. Serv. Law § 75; and (c) their contractual rights to due process protections through their applicable collective bargaining agreements ("CBAs"). Additionally, Appellants alleged conspiracy and aiding and abetting between DOE, the public-sector union Appellees, including UFT and CSA Appellees,[4] and

---

[3] Appellants appeal from (1) the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J., dismissing the Amended Complaint (JA-1874-JA-1915), Broecker v. New York City Dep't of Educ., 21-CV-6387(KAM)(LRM), 2023 WL 2710245 (E.D.N.Y. Mar. 30, 2023) (Broecker III); (2) the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. denying Appellants' application for a preliminary injunction to enjoin DOE from placing the Appellants on leave without pay for failure to take the COVID-19 vaccine (JA-815-JA-842), Broecker v. New York City Dep't of Educ., 573 F. Supp. 3d 878 (E.D.N.Y. 2021) (Broecker I); and (3) the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. denying Appellants' application for a preliminary injunction to enjoin DOE from terminating Appellants for failure to take the COVID-19 vaccine (JA-1523-JA-1565), Broecker v. New York City Dep't of Educ., 585 F. Supp. 3d 299 (E.D.N.Y. 2022) (Broecker II).

[4] "UFT and CSA Appellees" are Appellees UFT, UFT President Michael Mulgrew ("Mulgrew") (UFT and Mulgrew, together, the "UFT Appellees"), CSA, and CSA former President Mark

3

Appellee Arbitrator Martin Scheinman, who presided over the arbitrations resulting in the Awards.[5]  UFT and CSA Appellees filed a motion to dismiss the Amended Complaint under Fed. R. Civ. Pro. Rules 12(b)(1) and 12(b)(6).[6]  The Honorable Kiyao A. Matsumoto, United States District Court Judge, Eastern District of New York, granted the Unions' motion—as well as the motions of the other Appellees—and dismissed the Amended Complaint.  See Broecker III (JA-1874-JA-1915).

This Court should affirm.  UFT and CSA Appellees have, for years, fought for and protected the interests of their members—including Appellants—through negotiations, mediations, arbitrations, and (when necessary) litigations opposite Appellants' employer, Appellee DOE.  In the face of these efforts, Appellants confoundingly claim that UFT and CSA Appellees (a) lack statutory authority to arbitrate on behalf of their members, despite clear, longstanding authority to so act; (b) conspired with the City Appellees and Arbitrator Scheinman to impinge on the rights of Appellants, even though UFT and CSA Appellees have previously lodged

---

Cannizzaro ("Cannizzaro") (CSA and Cannizzaro, together, the "CSA Appellees").  Cannizzaro has recently retired as the President of CSA.

[5] See JA-960-JA-1020.

[6] Separately, all other Appellees filed motions to dismiss the Amended Complaint.

many of the same claims Appellants have asserted in this action; and (c) aided and abetted the alleged violations of Appellants' rights. These claims are meritless.

UFT and CSA Appellees are not state actors. Nor—as the District Court properly found—have Appellants alleged any facts sufficient to support a claim for conspiracy or aiding and abetting a state actor such that UFT and CSA Appellees might be brought under color of state law. Indeed, Appellants' allegations, and indisputable facts in the public record, clearly evidence the opposite conclusion: the relationships between UFT and CSA Appellees, respectively, and DOE are naturally adversarial. This is underscored by the myriad negotiations, arbitrations, and litigations against DOE and City not only prior to the pandemic, but during the pandemic *regarding many of the due process claims at issue here*.[7]

Indeed, while Appellants could theoretically contend that these erstwhile foes somehow came together to deprive them of their rights on these issues, the

_____

[7] See N.Y.C. Mun. Labor Comm. v. City of New York, 2021 WL 4502854 (Sup. Ct. N.Y. Cnty. Sept. 22, 2021) (facial challenge to DOHMH DOE Mandate for, *inter alia*, violations of substantive due process and lack of religious and medical exemptions), dismissed N.Y.C. Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021); Matter of N.Y.C. Mun. Labor Comm. and City of New York, 15 OCB2d 34 (BCB 2022) (challenge to implementation of DOHMH DOE Vaccination Mandate without bargaining). Moreover, UFT and CSA Appellees supported Appellants' application for a temporary restraining order enjoining summary termination in the instant action, and filed suit in state court alongside some thirty other unions to enjoin summary terminations across the City. See Broecker et al. v. New York City Dep't of Educ. et al., 1:21-cv-06387 (Dkt. # 71, 77 (JA-1433-JA-1437)); N.Y.C. Mun. Labor Comm. v. City of New York, 151169/2022 (Sup. Ct. N.Y. Cnty. 2022) (procedural due process challenge to summary terminations), CPLR 5704 application denied, 2022-00618 (1st Dep't Mar. 10, 2022). Other individuals and entities have brought claims in federal and state court challenging the facial validity of the Mandate and DOE's implementation of same.

5

facts prove otherwise. Thus, because UFT and CSA Appellees are not state actors, and have not acted under color of state law, the dismissal of Appellants' conspiracy and aiding and abetting claims should be affirmed.

It was due to UFT and CSA Appellees' respective inability to reach agreement with Appellee DOE on the implementation of personnel and pay policies for unvaccinated individuals that prompted (1) the New York Public Employment Relations Board ("PERB")[8] to appoint Appellee (and widely-respected arbitrator) Martin Scheinman to serve as mediator for UFT; and (2) UFT and CSA Appellees to appoint Scheinman as arbitrator (initially for UFT, and thereafter for CSA).

Contrary to Appellants' assertions, no special statutory authority is required for a recognized public-sector employee organization to arbitrate a dispute with a public employer. Nevertheless, the Taylor Law clearly provides not only that the parties may agree to arbitrate, but also that public policy encourages public employers and employee organizations to agree on procedures to resolve disputes, favoring "harmonious and cooperative" bargaining relationships. See N.Y. Civ.

---

[8] PERB is the New York State agency tasked with the impartial application and enforcement of the Taylor Law (N.Y. Civ. Serv. Law §200 *et seq.*). As part of that role, PERB is charged with, *inter alia*, "the protection of the rights of public employees to organize without interference or detriment; the determination of appropriate bargaining units and the direction of the process of representative selection; and issuance of determinations on charges of improper employment practices. The agency also has the statutory responsibility to provide impasse resolution services." See Public Employment Relations Board, available at perb.ny.gov.

Serv. Law § 200. Appellants seemingly conflate (a) the power of PERB to impose

binding interest arbitration on DOE employee unions, with (b) whether those

unions may themselves agree to arbitrate a dispute. Likewise, Appellants conflate

contractual grievance arbitration, which employee organizations have the right to

administer under N.Y. Civ. Serv Law § 208(1)(a), with arbitration intended to

resolve an actual or prospective impasse in collective bargaining—which by

definition is not limited to the four corners of an existing agreement. Arbitration of

bargaining disputes, as here, is specifically designed to address instances where a

new or amended agreement is required. To hold this process illegal, as Appellants

urge, would preclude all impasse arbitrations in the collective bargaining context

and invalidate all bargaining disputes that have been arbitrated by public sector

unions to date. Indeed, Appellants' sought relief would actually endanger their

rights by weakening the ability of public sector unions to advocate on behalf of

their members.

Nonetheless, as explained herein, the arbitration awards issued in this matter

are legally valid and satisfy the constitutional and statutory process due to

Appellants with regard to placement on LWOP while maintaining health benefits

in certain specific circumstances. It is undisputed that the contours of public

employee property rights in their occupations are defined by state law and contract.

Here, the awards inform the contours of Appellants' rights in accordance with the

relevant constitutional and statutory obligations, and amend UFT and CSA

Appellees' respective CBAs by law.  In fact, the protections allotted to Appellants

by virtue of the Awards (i.e., the exemption process with appeal, LWOP, and

extended leave with benefits) strengthens their protections.

Finally, Appellants lacked standing to directly challenge the Awards, for

Appellants were not parties to the arbitrations or negotiations that resulted in the

Awards.

Accordingly, the District Court's dismissal of all claims against UFT and

CSA Appellees should be affirmed.

## FACTUAL BACKGROUND

**Relationships Among the Parties**

On August 24, 2021, the Commissioner of the New York City Department

of Health and Mental Hygiene ("DOHMH") imposed the initial version of the

DOE Mandate, which was superseded by two subsequent orders on September 15,

2021 and September 28, 2021 (allowing for reasonable accommodations and

extending the compliance deadline, respectively).  The operative DOE Mandate set

forth that DOE employees' failure to provide proof of their first COVID-19

vaccine dose by October 1, 2021 would lead to exclusion from DOE facilities where students are present, beginning on October 4, 2021.[9]

UFT and CSA Appellees proceeded on two tracks, both challenging the validity of the mandate in state court and seeking negotiation with DOE over related pay and personnel policies DOE sought to implement.  In New York Supreme Court, the unions argued that the Mandate *itself* (a) violates employees' individual bodily integrity and right to refuse medical treatment by forcing employees to undergo unwanted medical procedures or be precluded from engaging in their chosen professions; (b) violates employees' due process rights by involuntarily preventing permanently-appointed DOE and City employees declining vaccination from engaging in their employment, resulting in a deprivation of their vested property rights in violation of the Fourteenth Amendment, Article 1 § 6 of the New York Constitution, N.Y. Education Law §§ 3020 and 3020-a, and N.Y. Civil Service Law § 75; and (c) fails to provide required exceptions for those with medical contraindications or sincerely-held religious objections to inoculation.[10]

---

[9] See  September 28 Order, *supra*.  The September 28, 2021 Mandate superseded an earlier DOE employee vaccination mandate that did not provide for reasonable accommodations.

[10] N.Y.C. Mun. Labor Comm. et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

The court (Love, J.S.C.) initially granted a temporary restraining order due to the Mandate's failure to provide for medical and religious objections. When that was cured by an amended order, the court denied the requested preliminary injunction. However, the court did not make any findings with regard to DOE's then-planned pay and personnel policies—it only considered the Mandate's requirement that one need be vaccinated to enter a DOE facility where students are present, provided no medical or religious accommodation applied.[11]

DOE initially engaged in bargaining with UFT on the impact and implementation of the Mandate, and on September 1, 2021, UFT filed a Declaration of Impasse with PERB. (JA-981 ¶ 148). PERB found the matter appropriate for impasse assistance, and appointed Appellee Martin F. Scheinman to mediate the matter. (JA-979 ¶ 134).

Despite expedited mediation, DOE's and UFT's efforts failed to yield sufficient progress in the short time prior to the first day of school. Therefore, on September 10, 2021, the UFT and DOE opted to enter into binding arbitration before Arbitrator Scheinman concerning implementation of those policies. (JA-1034-JA-1052).

---

[11] See generally N.Y.C. Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty. 2021)

10

Simultaneously, and separately, CSA was also engaged in negotiations with the City and DOE regarding pay and personnel policies applicable to their constituents. These negotiations also went to binding arbitration and produced its own award from Arbitrator Scheinman on September 15, 2021. (JA-1053-JA-1067).

Although the arguments and relief sought in each arbitration were specific to those unions, the Awards generally provide, as relevant here, that:

    a. Employees could apply for medical and/or religious accommodations, which—if denied—could be appealed to Appellee SAMS-affiliated independent arbitrators.

    b. Absent an accommodation, employees had until November 30, 2021 to elect to either (1) separate from service with incentives or (2) remain on an extended unpaid leave through September 5 of the following year, with health benefits and an ability to return upon vaccination or lifting of the Mandate.

    c. As of December 1, 2021, City employers could "***seek to*** unilaterally separate employees who have not opted" to either separate from service or remain on an unpaid leave. However, all parties reserved their existing rights in this regard, as the Awards explicitly state:

11

"[e]xcept for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein."[12]

While the terms of the Awards are incorporated into UFT and CSA Appellees' respective collective bargaining agreements by law, critically, neither of the Awards provide for any policy related to termination, because those procedures remain unchanged. Moreover, the Awards **did not** determine that DOE has a right to summarily terminate unvaccinated employees who have not selected from the personnel policies available to them. Rather, the Awards state that City employers can "seek to" terminate those employees, which they have now done in an impermissible manner, given the Awards' explicit reservation of rights.

This interpretation is corroborated by communications from DOE itself. From August 23, 2021 through November 22, 2021, numerous emails were sent to UFT-represented staff regarding the consequences of an employee's failure to comply with the Mandate. Yet, *none* of the email communications indicated that unvaccinated employees would be subject to summary termination without regard to due process.

As such, the constitutional, statutory, and contractual rights and procedures in existence prior to the Awards—*i.e.*, N.Y. Education Law § 3020-a, N.Y. Civil

---

[12] See JA-1051-JA-1052 and JA-1067.

12

Service Law § 75, and the Movant unions' respective collective bargaining agreements ("CBAs")—govern, and both UFT and CSA maintained (and maintain) that DOE may not abridge employees' due process rights through summary termination.

**The City Issues Summary Termination Letters in Violation of Due Process Rights**

On January 31, 2022, DOE disseminated summary termination notices to unvaccinated employees who had not obtained an accommodation or elected an extended leave, where applicable, stating that their employment would cease on February 11, 2022.  See JA-1526-JA-1527.  Although UFT and CSA Appellees disagree with Appellants' contentions that the unions conspired in, or aided and abetted, alleged violations of Appellants' statutory and contractual rights, UFT and CSA Appellees agreed with Appellants that DOE terminations noticed on January 31, 2022 were violations of employee due process rights.[13]

UFT and CSA Appellees and—separately—Appellants filed letters before the District Court seeking leave to move to enjoin these terminations.  (JA-1367-JA-1369, JA-1370-JA-1372).  On February 7, 2022, the District Court denied UFT

---

[13] While Appellants allege that UFT and CSA Appellees conspired with other Appellees to infringe on their due process rights vis-à-vis, *inter alia*, LWOP, Appellants did not allege that the unions conspired to deprive Appellants of their right to statutory and contractual procedures regarding termination.

13

and CSA Appellees' request, questioning whether UFT and CSA Appellees had

standing to make the argument in the instant action; however, the District Court

allowed Appellants' motion to proceed.  The UFT and CSA then submitted a letter

in support of Appellants' application for a temporary restraining order.  (JA-1433-

JA-1437).

In an attempt to enjoin the summary terminations of employees Citywide,

UFT and CSA Appellees, along with a broader coalition of unions led by the

Municipal Labor Committee (an umbrella organization of City unions), brought

suit by order to show cause in the Supreme Court, New York County.  See N.Y.C.

Mun. Labor Comm. v. City of New York, 151169/2022 (Sup. Ct. N.Y. Cnty.

2022).  There, Justice Kim denied the unions' application for a temporary

restraining order.  A CPLR 5704 motion for emergency reconsideration of the

application for a temporary restraining order to enjoin the terminations was also

rejected by the First Department.  See 2022-00618 (1st Dep't Mar. 10, 2022).

Subsequently, Appellants' motion for emergency relief in this case was

rejected.  See JA-1523-JA-1565.[14]

_____

[14] UFT and CSA Appellees believe, as they have previously argued both before this Court and
the Supreme Court, New York County, that (a) the Awards do not give the DOE the right to
summarily terminate unvaccinated employees who have not selected from the personnel policies
available to them by November 30, 2021; and (b) vaccination is not a "condition" or
"qualification" for employment that removes employment decisions on that basis from the gamut
of statutory or contractual disciplinary processes.  Rather, the Awards state that the City can

14

While UFT and CSA Appellees do not here rehash those arguments, the unions' adversity to DOE (and alignment with Appellants) on this issue further belies Appellants' arguments that UFT and CSA Appellees have conspired with, or aided and abetted, DOE in violation of Appellants' rights. Rather, the UFT and CSA have continued to fight for those rights, thereby obviating Appellants' allegations.

### SUMMARY OF ARGUMENT

1. Appellants lack standing to challenge the Awards, as they were not parties to the underlying arbitrations.

2. The UFT and CSA Awards are valid. A union and a public employer may opt to resolve an impasse in collective bargaining through arbitration.

3. The UFT and CSA Awards, which are valid, provided sufficient procedural due process for Appellants' placement on LWOP both constitutionally and under state law. However, UFT and CSA Appellees agree that the Awards did not provide for summary termination of Appellants.

---

"seek to" terminate those employees from December 2021 onwards, which they have now done in a manner which Appellants *and* UFT and CSA Appellees believe impermissible, given the Awards' explicit reservation of rights.

15

4. Appellants' claim for 42 U.S.C. § 1983 conspiracy is deficient and was properly dismissed. The Awards are valid as a matter of law, and a conspiracy claim cannot lie where Appellants allege only that Appellees attempted to take actions that are legal. Regardless, UFT and CSA Appellees are not state actors, and have an inherently adversarial relationship with DOE.

5. Appellants' "claims" for declaratory judgment were properly dismissed since all substantive claims upon which they were based were deficient and properly dismissed.

6. Appellants' class claims should not be reinstated because all claims upon which they were based were deficient and properly dismissed.

7. Leave to amend Appellants' pleading a second time should be denied since Appellants had significant opportunity to do so—as well as notice from the District Court regarding myriad infirmities in Appellants' allegations—yet failed to timely make an application for amendment. Moreover, amendment would be futile, as Appellants' claims are inherently deficient.

16

# ARGUMENT

## I.   STANDARD OF REVIEW

The district court's dismissal of Appellants' claims under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) is generally subject to *de novo* review "using the same standard employed by the district court."  Wholean v. CSEA SEIU Local 2001, 955 F.3d 332, 334 (2d Cir. 2020) (citations omitted).  Under both 12(b)(1) and 12(b)(6), a reviewing court construes the complaint in a plaintiff's favor, and accepts as true all material factual allegations contained therein.  See, e.g., Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74 (2d Cir. 2022) (affirming dismissal for lack of standing); Shara v. Maine-Endwell Cent. Sch. Dist., 46 F.4th 77, 82 (2d Cir. 2022) (affirming dismissal for failure to state a claim).  The Court "need not, however, accept bare legal conclusions included in a plaintiff's complaint[,]" and a plaintiff must "provide more than a 'formulaic recitation of the elements of a cause of action' or 'naked assertions devoid of further factual enhancement[.]'"  See id. (citations omitted).

For the reasons stated herein, the District Court's rulings should be affirmed.

17

## II.   THE UFT AND CSA AWARDS ARE UNASSAILABLE AND VALID AS A MATTER OF LAW

### A.   As a Threshold Matter, Plaintiffs Lack Standing to Challenge the Awards

Although Appellants purport to challenge, *inter alia*, <u>Broecker I</u> and

<u>Broecker III</u>, they fail to address the District Court's holdings therein that

Appellants lack standing to challenge the Awards directly or collaterally.[15]

Appellants were not parties to the at-issue arbitration proceedings and

therefore lack standing to challenge same.  See <u>Katir v. Columbia Univ.</u>, 15 F.3d

23, 24-25 (2d Cir.1994) (employee, who was not a party to the disciplinary

arbitration between her union and employer, lacked standing to challenge award

providing that university had "just cause" for her termination); <u>see also</u> <u>Fleischer v.</u>

<u>Barnard College</u>, No. 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18,

2021) (accord).  Likewise, New York state courts have held that current or former

union members cannot challenge the validity of CBAs as non-parties to, or third-

party beneficiaries of, those agreements.  See <u>Fiore v. Town of Whitestown</u>, 125

A.D.3d 1527, 1530 (4th Dep't 2015), <u>lv. to appeal denied</u> 25 N.Y.3d 910 (2015);

<u>see also</u> <u>Leblanc v. Security Servs. Unit Emps. of New York State Law</u>

---

[15] Challenging the validity of the Awards is quite different from alleging that their provisions violate other rights.

18

Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, 278 A.D.2d 732, 733-34 (3d Dep't 2000).

Therefore, Appellants' claims regarding the invalidity of the Awards were properly dismissed.

**B.      The Taylor Law and All Precedent Allow UFT and CSA Appellees to Arbitrate Disputes**

Parties do not need to seek permission before voluntarily arbitrating disputes, and there is no prohibition on mutually agreeing to move to binding arbitration under the Taylor Law[16] even absent a declaration of impasse.  See generally N.Y. Civ. Serv. Law § 209.  This is in keeping with the Taylor Law's policy of "encourag[ing the] voluntary resolution of labor disputes involving public employees." Matter of Alden Cent. Sch. Dist. v. Watson, 56 A.D.2d 713, 713 (4th Dep't 1977).

The Taylor Law is administered by PERB, whose decisions and interpretation of their statute should be accorded deference.  City of Newburgh v. Pub. Emp. Rels. Bd., 97 A.D.2d 258, 260 (3d Dep't 1983), aff'd 63 N.Y.2d 793 (1984).  PERB found that the UFT and DOE were at impasse in negotiations and appointed a mediator.  Thereafter, UFT and DOE voluntarily moved to arbitration.

---

[16] N.Y. Civ. Serv. Law §200 *et seq.*

19

<u>See</u> JA-979 ¶ 134, JA-981 ¶ 148.  Separately, CSA and DOE engaged in arbitration

regarding the same issues.  <u>See</u> JA-979 ¶ 139.

Indeed, it has regularly been recognized that, under the Taylor Law, parties

may agree to move to binding impasse arbitration in lieu of the detailed fact-

finding process.  <u>See</u>, <u>e.g.</u>, <u>Margiotta v. Kaye</u>, 283 F. Supp. 2d 857, 860 (E.D.N.Y.

2003) (recognizing that, under the Taylor Law, parties may agree to move to

binding impasse arbitration rather than follow stated procedure).

As noted *supra*, Appellants conflate (a) the power of PERB to impose

binding interest arbitration on DOE employee unions, with (b) whether those

unions may themselves agree to arbitrate a dispute.  Likewise, Appellants conflate

contractual grievance arbitration, which employee organizations have the right to

administer under N.Y. Civ. Serv Law § 208(1)(a), with arbitration intended to

resolve an actual or prospective impasse in collective bargaining—which by

definition is not limited to the four corners of an existing agreement.  Arbitration of

bargaining disputes, as here, is specifically designed to address instances where a

new or amended agreement is required.  To hold this process illegal, as Appellants

urge, would preclude all arbitrations in the collective bargaining context and

invalidate all bargaining disputes that have been arbitrated by public sector unions

to date.

20

There is no contractual prohibition on moving to binding impasse arbitration. Tellingly, the Amended Complaint does not appear to cite to any provisions of the CSA CBA, relying instead on conclusory allegations of nonspecific violations. Nor do the law or applicable CBAs prohibit an arbitrator's retention of jurisdiction where, as here, an award provides for possible future procedure.

In any event, UFT and CSA, respectively, attempted to and could have negotiated implementation of the Mandate-related policies here—which several other unions did without resorting to mediation and arbitration.[17] Thus, there is no reason to hold that the parties are prohibited from arbitrating those very same issues.

The Awards and their substance are valid, and Appellants' claims that they have been injured as a result of the Awards' procedures fail as a matter of law. The contours of Appellants' property interests in their employment are defined by applicable statutes and/or contract. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). The UFT Appellees' and CSA Appellees' respective CBAs with DOE were modified by the Awards, the terms of which are

---

[17] As noted above, with the first day of school fast approaching, UFT and CSA were under significant time pressure to resolve pay and personnel policy implementation vis-à-vis the Mandate. Other unions, whose members were not necessarily stationed at DOE locations, were not subject to the same time pressures.

incorporated into the CBAs by law, and which supersede provisions to the contrary.  See Town of Southampton v. New York State Pub. Emp. Rels. Bd., 2 N.Y.3d 513, 523 (2004).  Accordingly, any claims regarding placement on LWOP must be measured against Appellants' rights under the CBAs as amended by the Awards.

In arguing to the contrary, Appellants fundamentally misconstrue N.Y. Civ. Serv. Law §209 ("§209") and related precedent, and erroneously contend that the Taylor Law prohibits a union and school district from agreeing to enter into binding arbitration.

The statutory language and cases Appellants rely on (1) prohibit school districts from *unilaterally* imposing contract terms through a legislative process (something permitted to other public employers), see §209.3(f); and (2) prohibit PERB from imposing binding arbitration on parties in the case of an impasse (again, something PERB is empowered to do for certain other workforces), see §209.2.  *None of these prohibitions is aimed at the union.*

Instead, Appellants' cited precedent supports that public-sector unions and an employer may bilaterally alter mandatory subjects of bargaining—such as the pay and personnel policies here—through negotiation *or* arbitration.  See, e.g., Bd. of Educ. of City Sch. Dist. v. New York State Pub. Emp. Rels. Bd., 75 N.Y.2d 660, 671 (1990) ("we accord no significance to the apparent failure of the Legislature to

22

provide any final impasse resolution mechanism in the case of school district negotiations"); Betts v. Hoosic Valley Teachers' Ass'n, 86 Misc. 2d 964, 966-67 (Sup. Ct. Rensselaer Cnty. 1976) (concerning (1) §209.3(f)'s prohibition on a school board's unilateral imposition of its will on a union by legislative fiat; and (2) PERB's power, upon impasse, to afford a school district and union an opportunity to explain their positions and provide resolution assistance); Matter of Buffalo Teachers Fed'n v. City Sch. Dist. of the City of Buffalo, 49 PERB ¶ 4560, n.93 (2016) ("School districts and other educational institutions do not have the ability under the Act to *unilaterally* resolve the dispute after fact-finding through a process of public hearing and action by its legislative body, as do other public employers." (emphasis added)); Matter of Greenburgh No. 11 Fed'n of Teachers, 32 PERB ¶ 3024 (1999) ("If post-mediation fact-finding does not result in a settlement of the impasse, the parties themselves must resolve the impasse by reaching a new [CBA.]"); see also Matter of Teamsters Local 445 v. Town of Monroe, __ N.E.3d __, No. 40, 2023 WL 3587526, at *1 (N.Y. May 23, 2023) ("affording for-cause termination protection on an exempt class employee" would "violate a statute, decisional law, or public policy" and was therefore not

23

arbitrable).[18]  Hence, while *unilateral* implementation of pay and personnel

policies run afoul of the law, *bilateral* alteration to such policies through

negotiation and agreement, or agreement to arbitrate, are lawful.

Accordingly, the Awards and their substance are valid, and Appellants'

claims that they have been injured as a result of the Awards' procedures fail as a

matter of law.

### C.    PERB and OCB Decisions Explicitly Concerning COVID-19 Vaccination Mandates Support the Validity of the Awards

Administrative decisions cited by Appellants concerning New York State

and City COVID-19 vaccination mandates likewise support the validity of the

Awards.  In Matter of Suffolk County Court Employees Association Inc. v. New

York State Unified Court System, 56 PERB ¶ 4513 (2023), PERB differentiated

between (1) the decision of the United Court System ("UCS") to require

employees to vaccinate or test for COVID-19, which was not a mandatory subject

of bargaining; and (2) policies and decisions related to vaccination status "that

implicate various terms and conditions of employment, including leave time,

compensation, discipline, job security, and medical privacy, all of which must be

---

[18] On appeal, Appellants appear to abandon the argument that the Awards required ratification by union membership.  To avoid any doubt, UFT and CSA Appellees reiterate that there is no legal requirement that the parties ratify the Awards.  All precedent cited by Appellants below either *support* the validity of the Awards sans-ratification, or are inapplicable.

24

bargained." Accordingly, PERB ordered UCS to bargain with its unions over the employment policies related to non-compliance with the Mandate, and to reinstate employees who were placed on leave or terminated pursuant to those unilaterally-implemented policies.

Similarly, in New York City Municipal Labor Committee v. The City of New York, 15 OCB2d 34 (2022), the Board of Collective Bargaining held that the City failed to provide sufficient time to negotiate policies relating to implementation of the Mandate (as opposed to the Mandate itself), failing even to bargain to impasse with the unions before unilaterally imposing those policies on employees.

Here, UFT and CSA respectively bargained to impasse with DOE regarding employment policies related to vaccination status, and—upon declaring impasse to PERB—submitted the matter to arbitration for legally valid and binding Awards that satisfy all due process obligations. As such, the Awards are in accordance with Matter of Suffolk and New York City Municipal Labor Committee, *supra*.

## III.    THE AWARDS PROVIDED APPELLANTS WITH CONSTITUTIONALLY SUFFICENT DUE PROCESS BEFORE PLACEMENT ON LWOP

Appellants conflate DOHMH's Mandate, which requires vaccination for DOE employees, with the terms of the Awards—which provide a process for

25

unvaccinated individuals to apply for vaccination exemptions or be placed on LWOP. Hence, Appellants make two distinct due process challenges:

(1) against only DOE and City Appellees: to the summary termination of certain unvaccinated employees, which is *not* provided for in the Awards or the Mandate; and

(2) as against UFT and CSA Appellees as well as against DOE and City Appellees: to the Awards' provisions regarding placement of unvaccinated employees on LWOP, and employees' ability to opt for severance or extended leave with benefits.

With regard to the former, UFT and CSA Appellees maintain, as they have previously argued both before the District Court below and the Supreme Court, New York County, that (a) the Awards do not give DOE the right to summarily terminate unvaccinated employees who have not selected from the personnel policies available to them by November 30, 2021; and (b) vaccination is not a "condition" or "qualification" for employment that removes employment decisions on that basis from the gamut of statutory or contractual disciplinary processes. Rather, the Awards state that the City can "seek to" terminate those employees from December 2021 onwards, which they have now done in a manner which Appellants *and* UFT and CSA Appellees believe impermissible, given the Awards' explicit reservation of rights.

26

With regard to the latter, as argued *supra*, the UFT and CSA Awards validly created a process for workers who opted not to comply with the Mandate to go on LWOP.  Although Appellants blend constitutional due process requirements with adherence to specific New York statutes and regulations, those frameworks are separate and distinct.  Regardless, the Awards pass scrutiny under each such framework.

Precedent cited by Appellants is not to the contrary.  UFT and CSA Appellees agree that tenured teachers have protected property interests in their position and to their pay, which may not be abridged absent due process of law. See, e.g., Shaffer v. Schenectady City Sch. Dist., 245 F.3d 41 (2d Cir. 2001); Tooly v. Schwaller, 919 F.3d 165 (2d Cir. 2019).  Yet, as held by the very cases Appellants cite, due process and state law may be satisfied even with "post-deprivation" procedures.  See Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist., 902 F.2d 208, 212 (2d Cir. 1990) (letters requiring provision of medical records prior to returning to work, and existence of pre-deprivation process, satisfied N.Y. Educ. Law 3020-a and the Fourteenth Amendment); Jackson v. Roslyn Bd. of Educ., 652 F. Supp. 2d 332, 343 (E.D.N.Y. 2009) (under New York Civil Service Law and the Fourteenth Amendment, "the constitutional protection of due process does not require a pre-deprivation hearing, so long as there is an adequate post-deprivation procedure available to address the alleged violation");

27

Palermo v. Eisenberg, 81 Misc. 2d 1014, 1016 (Sup. Ct. Nassau Cnty. 1975) (in context of New York Civ. Serv. Law §75 and Educ. Law § 3020-a, holding that suspending teachers without pay is constitutionally permissible provided that process is not "unreasonably delayed").

Here, the Awards gave unvaccinated employees an opportunity to go on extended LWOP and/or utilize Appellee SAMS to challenge exemption denials, thereby providing both pre- and post-deprivation process.

## IV.    THE DISTRICT COURT CORRECTLY DISMISSED APPELLANTS' § 1983 CONSPIRACY CLAIMS

The central assertion on which all of Plaintiffs' claims against the UFT and CSA Defendants hinge is that the Awards are contrary to law.  As argued *supra*, this is incorrect, and all of Plaintiffs' claims fail.  Even if the UFT and CSA were mistaken about their ability to agree to binding arbitration (which they were not), that honest mistake of law does not transform an adversarial process into a conspiracy to deny anyone any rights.  Thus, Appellants fail to allege facts sufficient to support violations of 42 U.S.C. § 1983 by UFT and CSA Appellees.

Notwithstanding the foregoing, Appellants' allegations of UFT and CSA Appellee conspiracy, state action, or something akin to state action, fail.  While Appellants appear to have abandoned their allegations below that UFT and CSA Appellees are state actors, the current characterization of their argument seems

28

premised on the assertion that UFT and CSA Appellees are acting under color of state law and/or participated in a conspiracy with DOE and/or City Appellees.  See App.Br. at 60.  This is patently erroneous.

Appellees UFT and CSA are public employee labor organizations pursuant to New York Civ. Serv. Law § 200 *et seq.*, and Appellees Mulgrew and Cannizzaro are private individuals who have been elected presidents of their respective unions.  State and federal courts have recognized that labor unions— including their agents—are not state actors.  See, e.g., Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (stating that New York's Civil Service Employees Association ("CSEA") was not a state actor for the purposes of 42 U.S.C. § 1983); Harmon v. Matarazzo, 162 F.3d 1147 (2d Cir. 1998) (Table) (dismissing plaintiff's § 1983 claim against president of the Patrolmen's Benevolent Association, and noting that the Patrolmen's Benevolent Association is an independent private entity that is in no way intertwined with the police department, except to the extent that its members are police officers); Driskell v. New York City, No. 11 Civ. 4915 (BMC), 2011 WL 6812516, at *3 (E.D.N.Y. Dec. 27, 2011) (citing Ciambriello, 292 F.3d at 323) ("Plaintiff does not allege that the UFT is a state actor, nor could she."); see also Callaghan v. United Fed'n of Teachers, 133 A.D.3d 412, 412 (1st Dep't 2015) (holding, in an action against the UFT and its president, that the UFT is a private actor, and that "[c]ourts in this

29

State have consistently held that unions, even those representing public employees, such as the UFT, are not state actors").

Rather, UFT and CSA Appellees maintain an "inherently advers[ar]ial" relationship with the state employers who employ their members and others they represent. See Mehrhoff v. William Floyd Union Free Sch. Dist., No. 04-CV-3850(JS)(MLO), 2005 WL 2077292, at * 4 (E.D.N.Y. Aug. 22, 2005); see also McGovern v. Local 456, Int'l Brotherhood of Teamsters, Chauffeurs & Warehousemen & Helpers of Am., AFL-CIO, 107 F. Supp. 2d 311, 317-18 (S.D.N.Y. 2000). This is true even where some union members are dissatisfied with the result of negotiations. See McGovern, 107 F. Supp. 2d. at 318 ("The Union's failure to 'win' on every point…and its compromise with the County result[ing] in the agreement, do not…transform the Union's activity into state action.").

Therefore, Appellants' burden is high, and unsatisfied. To survive a motion to dismiss, Appellants must allege facts showing that UFT and CSA Appellees were acting under the color of state law when engaging in the alleged violation. See Dennis v. Sparks, 449 U.S. 24, 27 (1980). In general, there are three main situations where private action is treated as state action under § 1983: "(1) when the private actor performs a traditional state function; (2) when a symbiotic relationship or close nexus exists between the private actor and the state; and (3)

30

when the private actor is a willful participant in joint activity with the State or its agents." See Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 373 (E.D.N.Y. 2000), aff'd, 62 F. App'x 28 (2d Cir. 2003) (internal citations and quotations omitted). None of these factors are satisfied here.

UFT and CSA Appellees are not performing a traditional state function, which is limited to actions which are "traditionally the exclusive prerogative of the State." See Nat'l Broadcasting Co. v. Commc'ns Workers of Am., AFL-CIO, 860 F.2d 1022, 1026 (11th Cir. 1988) (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1974)). Similarly, UFT and CSA Appellees have no close nexus with DOE or any other state institution, which exists when a private actor's conduct "has sufficiently received the imprimatur of the State so as to render it an action of the State." See Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013) (internal citations and quotations omitted).

There is also no symbiotic relationship between UFT and CSA Appellees and the City Appellees. To establish such a relationship, Appellants must show that UFT and CSA Appellees "ha[ve] so far insinuated [themselves] into a position of interdependence with [the City Appellees] that [they] must be recognized as a joint participant in the challenged activity." See Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961). Here, UFT and CSA Appellees have acted as a

31

bulwark *against* the very City mandates Appellants challenge—a far cry from the symbiotic relationship or "willful participation" required under §1983.

Nor have Appellants mustered more than "mere[ ] conclusory allegation[s] that [UFT and CSA Appellees,] private entit[ies,] acted in concert with" DOE, the City, or other Appellees. See Ciambriello, 292 F.3d at 324 (holding that CSEA was not acting under color of state law, and dismissing §1983). Such "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct[,]" which Appellants have not plead. See Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). To the contrary, as evidenced supra, UFT and CSA Appellees have actively sought to protect the interests of their respective members—including those who choose not to become vaccinated—throughout the announcement and implementation of the Mandate. These actions constitute significantly more adversity to the interests of the City than courts have found necessary to stave off a §1983 claim against a private actor.

Leahy v. Board of Trustees of Cmty. College Dist. No. 508, Cnty. of Cook, State of Ill., 912 F.2d 917 (7th Cir. 1990), is instructive. There, a college teacher brought suit against his public employee union under 42 U.S.C. §1983 on grounds that the union had refused to take his grievance to arbitration. The court found that he had alleged no facts "supporting the conclusion or inference that the Union has

32

either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in his complaint." See id. at 921. Rather, the allegations of conspiracy and refusal to arbitrate grievances were held conclusory. See id.; see also Ciambriello, 292 F.3d at 324 ("conclusory allegations of conspiracy [rang] especially hollow in light of the adversarial relationship between the County and CSEA").

In the instant case, Appellants allege no specific facts or instances of misconduct or conspiracy by the UFT or CSA Appellees. Instead, they make a series of nonspecific, repetitive claims that UFT and CSA Appellees conspired with the City Appellees, Arbitrator Scheinman, SAMS, and SAMS LLC (in various combinations) to have Arbitrator Scheinman issue the awards, JA-960-JA-1020 (¶¶ 135, 170-75, 179-86, 331-35, 341-47, 350, 359, 362, 367-371, 374-75, 377-83, 386, 395, 398, 438-442), purportedly as part of an unspecified "kickback" scheme that confoundingly included the goal of placing Appellants on LWOP, id. (¶¶ 335, 338-39, 371, 374-75).[19] Furthermore, allegations relating to Appellees Mulgrew and Cannizzaro ring especially hollow. Appellee Mulgrew is, and

---

[19] It is particularly perplexing what benefits the UFT or CSA Appellees are alleged to have sought from this fictional scheme, the purported goals of which run contra to the *many* suits brought by the UFT and CSA in defense of Appellants and others similarly situated. See supra n.7.

Appellee Cannizzaro was, the president of Appellees UFT and CSA, respectively. The Amended Complaint contains no specific allegations concerning actions Appellees Mulgrew or Cannizzaro took as individuals; instead, it imputes purported union malfeasance to their officers in conclusory fashion.

Contrary to Appellants' allegations, the negotiations and arbitrations which produced the Awards do not constitute evidence of a conspiracy; they are evidence of adversity. UFT and CSA Appellees protected the interests of their members— including those who choose not to become vaccinated—throughout the pandemic, challenging the Mandate and its implementation in both adversarial negotiations and in court. In fact, the UFT and CSA were part of the initial suit that compelled the City to consider medical and religious accommodation requests (which the City initially had declined to do).[20]

Appellants also make nothing but conclusory allegations that UFT and CSA Appellees' actions towards DOE and Arbitrator Scheinman constitute a conspiracy. The notion that submitting an adversarial dispute to a mediator (who by definition is called to help resolve a dispute) under the auspices of New York's Taylor Law, or an arbitrator, results in an actionable conspiracy under §1983

---

[20] N.Y.C. Mun. Labor Comm. et al. v. City of New York et al., 158368/2021 (Sup. Ct. N.Y. Cnty.).

would render essentially all public sector labor relations actions evidence of a conspiracy.  But that is not the law, and Appellants therefore have no claim.

Likewise, Appellants' "aiding and abetting"[21] theories are conclusory, unsupported by fact, and were properly dismissed.  As argued *supra*, UFT and CSA Appellees have engaged in no conduct with, or in support of, the City Appellees or any other Appellees capable of supporting an "aiding and abetting" claim under §1983.  Rather, the UFT and CSA's litigations against the City, arbitrations, and prior precedent on the topic point to the simple truth that UFT and CSA Appellees' actions are—and have always been—both inherently adversarial to the City Appellees, and in Appellants' interests.  See, e.g., N.Y.C. Mun. Labor Comm. v. City of New York, 73 Misc. 3d 621 (Sup. Ct. N.Y. Cnty.  2021); Mehrhoff, 2005 WL 2077292, at * 4.

Even if Appellants could support conspiracy or aiding and abetting theories (which they cannot), their allegations of due process harms stemming from the Awards are legally and logically flawed.  Appellants claim that but for the Awards, DOE would not have suspended Appellants without pay in supposed contravention

---

[21] While 42 U.S.C. §1983 does not explicitly account for "aiding and abetting" violations of the statute, several courts have recognized such claims as allegations of conspiracy.  See, Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995); Figueroa v. City of Camden, 580 F. Supp. 2d 390, 401-02 (D.N.J. 2008) ("While it is not entirely clear on the face of their Complaint, Appellants clarify that they intended to allege that the Unions conspired with state and local officials in order to deprive Plaintiffs of their rights.").

of their Fourteenth Amendment rights.  See, e.g., JA-1002 (¶¶ 338, 339), JA-1007 (¶¶ 374, 375).  This is untrue.  Absent the Awards, Appellants would still be subject to exclusion from facilities where students are present if those Appellants remain unvaccinated or could not obtain an accommodation—yet they would lack the myriad procedural and post-LWOP protections/options (severance and extended leave) provided for in the Awards.  See, e.g., Marciano v. de Blasio, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) (denying public employee's challenge to LWOP for failure to vaccinate, where relevant union and employer lacked any award or agreement between the relevant union and public employer, and process for LWOP did not "fall[ ] below the constitutional floor").

What Appellants fail to appreciate is that the Awards created a series of rights and procedures pertaining to the unvaccinated that would not otherwise be unavailable to them.  These include the ability to remain on paid leave while applications for accommodation are pending, the option to extend LWOP (and therefore health benefits), the ability to appeal to an outside arbitrator, and the availability of enhanced severance.  See JA-1034-JA-1052, JA-1053-JA-1067.

Accordingly, claims that the Awards have somehow infringed on Appellants' rights are simply inaccurate; rather, the Awards safeguarded and elevated Appellants' rights.

36

## V. APPELLANTS' "CLAIMS" FOR DECLARATORY JUDGMENT AND PUTATIVE CLASS CLAIMS WERE PROPERLY DISMISSED

Requests for declaratory relief and class action claims are dependent on the existence of viable underlying causes of action. Where, as here, all substantive claims have been properly dismissed, derivative applications for declaratory judgment and class certification necessarily fail, and should not be reinstated as independent causes of action.

### A. The District Court Properly Dismissed Appellants' Declaratory Judgement "Claims"

Applications for declaratory judgment do not exist in a vacuum, and their viability is inextricably linked to the sufficiency of a litigant's substantive non-declaratory causes of action. "This is because the statute that authorizes the declaratory judgment remedy expressly incorporates the Article III case or controversy limitation. 'Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.'" See KM Enters., Inc. v. McDonald, No. 11–cv–5098 (ADS)(ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), aff'd 518 F. App'x 12 (2d Cir. 2013), (citing In re: Joint Eastern and Southern Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993) and In re Methly Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 247 F.R.D. 420, 422-23 (S.D.N.Y. 2007)).

37

Appellants' argument regarding their declaratory judgment "claims" presuppose the validity of all other claims in this action; yet, as explained at length above, those other claims are deficient as a matter of law and were properly dismissed. Hence—without the existence of any valid underlying claims to buttress their requests for judicial declarations—Appellants declaratory relief applications are unviable.

Even Appellants recognize that declaratory judgment "claims" cannot exist in a vacuum, arguing that "Appellants were seeking judicial determinations *that were inter-related and intertwined* with the Appellants' causes of action based upon 42 U.S.C. § 1983 and the violations of the Appellants' constitutional rights." See App.Br. at 44 (emphasis added).

This is precisely the point. Those "inter-related and intertwined . . . causes of action" are deficient, and all requests for declaratory relief premised on those claims are equally deficient.

The caselaw cited by Appellants is unavailing, and supports the District Court's dismissal. In Aetna Life Ins. Co. v. Haworth of Hartford, Conn., the Supreme Court considered whether an action for declaratory judgment brought by an insurer—seeking a determination that an insured was not disabled such that they were entitled to payment under an insurance policy—was a valid standalone controversy. See 300 U.S. 227 (1937). The Court found that the application for

38

declaratory relief was viable as (essentially) a substantive contract repudiation claim, reasoning:

> If the insured had brought suit to recover the disability benefits currently payable under two of the policies there would have been no question that the controversy was of a justiciable nature, whether or not the amount involved would have permitted its determination in a federal court. Again, on repudiation by the insurer of liability in such a case and insistence by the insured that the repudiation was unjustified because of his disability, the insured would have 'such an interest in the preservation of the contracts that he might maintain a suit in equity to declare them still in being.'

See 300 U.S. at 243-44 (citations omitted).[22]

Here, however, Appellant's applications for declaratory relief depend entirely on their deficient substantive claims, and cannot be reformulated as independent standalone causes of action.

Reliance on Chevron Corp. v. Naranjo, 667 F.3d 232, 244-245 (2d Cir 2012), is likewise misplaced. There, the Second Circuit vacated a preliminary injunction under the New York Uniform Foreign Country Money Judgments Recognition Act—prohibiting Ecuadorian Amazon residents from attempting to enforce an Ecuadorian judgment against U.S. corporations—as, *inter alia*, a

---

[22] Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191 (2014), cited by Appellants, similarly found that the request for declaratory relief there could be characterized as a patent infringement action arising under federal patent law. See id. at 197.

39

violation of international comity.  See id. at 242-43.  The Second Circuit rejected

plaintiff's characterization of the sought injunction as "a simple declaratory

judgment action under the federal Declaratory Judgment Act," instead noting that:

> The DJA gives a district court the discretion to "declare
> the legal rights and other legal relations of any interested
> party seeking such declaration." Id. § 2201(a). But that
> discretion does not extend to the declaration of rights that
> do not exist under law. Like a preliminary injunction, a
> declaratory judgment relies on a valid legal predicate.

See id. at 244.

Indeed, Appellants here quote this very language, but omit necessary

context—the very next line from Chevron Corp. states: "*The DJA is 'procedural*

*only,' and 'does not create an independent cause of action[.]'*"  See id. (citations

omitted; emphasis added).[23]

Here, Appellant's request for declaratory judgment are procedural "claims"

dependent on their defunct substantive causes of action, which, in turn, renders

these "claims" deficient.

### B.    Likewise, Appellants' Class Claims Were Based on Deficient Causes of Action and Were Properly Dismissed

As held by the District Court and explained in detail *supra*, Appellants failed

to state any claims against Appellees.  Accordingly, Appellants' class claims—

---

[23] Norton v. Town of Islip, 678 F. App'x 17, 22 (2d Cir. 2017) is in accord, and cites to the exact Chevron quotation that Appellants omitted from their papers.

which were dependent on their deficient causes of action—were also infirm and properly dismissed.  See, e.g., McCabe v. Lifetime Entertainment, Servs., LLC, 761 F. App'x 38, 41 (2d Cir. 2019) ("Because [plaintiff's] individual claims were time barred, the district court also properly dismissed the class claims as moot.").

Moreover, Appellants fail to cite a single case in support of their contention that their class claims should be reinstated despite the insufficiency of all individual claims upon which they are predicated.

## VI.   LEAVE TO AMEND THE AMENDED COMPLAINT WAS PROPERLY DENIED

Courts review denials of leave to amend for abuse of discretion.  See, e.g., MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77, 90-91 (2d Cir. 2023) (affirming denial of leave to amend where plaintiff had shown repeated failures to cure their pleading despite multiple opportunities to do so, and had knowledge of their pleading's infirmities).  "If, however, 'the denial was based on an interpretation of law, such as futility,' [the Court] review[s] de novo that legal conclusion."  See id.; Rogers v. Capital One Servs., LLC, 447 F. App'x 246, 248 (2d Cir. 2011) (denying leave to amend, and noting that "[w]e review a denial of leave to amend only for abuse of discretion, which we will not identify if the proposed amendment would be futile.").  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the

41

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (affirming denial of of motion to amend complaint) (citation omitted).

The District Court properly exercised its discretion in denying Appellants' application to amend the complaint a second time. Appellants had multiple opportunities to make their arguments before the District Court; indeed, they appeal from three separate decisions from the years 2021 through 2023. Having amended their pleading once—and having received notice of the deficiencies in their allegations from the District Court multiple times in the form of, *inter alia*, two of the aforementioned decisions appealed from—Appellants sought leave at the eleventh hour to do so again.

Such procedural gamesmanship was properly rejected by the District Court. See MSP Recovery Claim, Series LLC, 66 F.4th at 90-91. Moreover, any further amendments would be futile, given that (a) Appellants have not identified any new or additional facts or arguments that would save their deficient pleading; and (b) the Awards are patently proper and in no way violate Appellants' constitutional, statutory, or collectively bargained-for rights. See, e.g., Rogers, 447 F. App'x at 248 (reasoning that leave to amend was properly denied where plaintiffs could not satisfy the elements of their claims or any proposed new claims).

42

Accordingly, Appellants should not be allowed to amend yet again.

## CONCLUSION

For the foregoing reasons, the District Court's decision should be affirmed.

Dated:  July 7, 2023                    Respectfully submitted,

                                           */s/ Dina Kolker*
                                           STROOCK & STROOCK & LAVAN LLP
                                           Dina Kolker, Esq.
                                           Alan M. Klinger, Esq.
                                           Arthur J. Herskowitz, Esq.
                                           180 Maiden Lane
                                           New York, New York 10038
                                           (212) 806-5400
                                           dkolker@stroock.com
                                           aklinger@stroock.com
                                           aherskowitz@stroock.com

43

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Local Rule 32.1(a)(4) because it contains 9,431 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated: July 7, 2023           Respectfully submitted,

                                     */s/ Dina Kolker*

STROOCK & STROOCK & LAVAN LLP
Dina Kolker, Esq.
180 Maiden Lane
New York, New York 10038
(212) 806-5400
dkolker@stroock.com

44