# 23-655

## United States Court of Appeals
## for the Second Circuit

NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA BRYAN, RENA GELLMAN, FONTINA LAMBROS, KERRY BEN-JACOB, EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA NARCISO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO, ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS,

*(caption continued on inside cover)*

On Appeal from the United States District Court
for the Eastern District of New York

---

**BRIEF FOR APPELLEES NEW YORK CITY
DEPARTMENT OF EDUCATION AND MEISHA PORTER**

---

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the
City of New York*
Attorney for the DOE and Porter
100 Church Street
New York, New York 10007
212-356-2611 or -2502
cmoon@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
CHLOE K. MOON
  *of Counsel*

July 10, 2023

CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANA PAGEN, LYNN PEPE, STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ, SORAYA SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY MUSSAFI, JESSICA NICCHIO, DORCA GENAO, RACHEL MANISCALCO, JAMES HOFFMAN, SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES DIPROSSIMO, CAROLA MARTINEZ-VANBOKKEM, AYSE USTARES, ELIZABETH FIGUEROA, DIANNE BAKER-PACIUS, NICOLE MOORE, ELIZABETH PLACENCIO, DEBBIE BERTRAM, KIMBERLI MADDEN, FRAN SCHMITTER, VICTORIA RUSSO, PAUL CIFARELLI, DANIELLE HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI BENEDUCE, ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO, JEANEAN SANCHEZ, MARIE MOSLEY, TARA PALLADINO, DANIELLE MCGUIRE, JULIA HARDING, LEAH KUKLA, STEPHANIE FRANZESE, JULIA BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE, AURA MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO, LORRAINE MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU, and HENRIETTA SHAYA,

*Plaintiffs-Appellants*,

*against*

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER, UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, MICHAEL MULGREW, COUNCIL OF SUPERVISORS AND ADMINISTRATORS, MARK CANNIZZARO, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, SHAUN D. FRANCOIS, I, FRANCINE FRANCIS, MARTIN F. SCHEINMAN, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, LLC, SCHEINMAN ARBITRATION AND MEDIATION SERVICES, DISTRICT 37, AFSCME AFL-CIO, LOCAL 372, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees*.

ii

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................... vi

PRELIMINARY STATEMENT ................................................................ 1

ISSUES PRESENTED FOR REVIEW ...................................................... 3

STATEMENT OF THE CASE

    A. The City of New York's requirement that public-school
       employees be vaccinated against COVID-19 ............................. 4

       1. The Health Commissioner's order requiring
          vaccination of public-school employees .................................. 4

       2. The arbitration award addressing the impact of the
          vaccination order on public-school teachers ......................... 6

       3. The multiple lawsuits that have unsuccessfully sought
          to stop the implementation of the vaccination
          requirements ............................................................................ 8

    B. This litigation by DOE employees who object to the
       vaccination requirement ............................................................. 11

       1. Plaintiffs' claims primarily alleging violations of due
          process on the basis of state-law violations .......................... 11

       2. Plaintiffs' attempts to restrain DOE's ability to place
          employees on leave without pay and terminate
          employees who failed to comply with the vaccination
          requirement .............................................................................. 13

       3. Defendants' motions to dismiss and the court's order
          and judgment ........................................................................... 19

# TABLE OF CONTENTS

**Page(s)**

STANDARD OF REVIEW  AND SUMMARY OF ARGUMENT ...........22

ARGUMENT

POINT I

PLAINTIFFS FAILED TO STATE A CLAIM THAT THEY
WERE DENIED DUE PROCESS .................................................25

A.  Plaintiffs received constitutionally adequate notice and
opportunity to be heard. ..........................................................27

B.  Plaintiffs lack standing to challenge the validity of the
arbitration awards via their procedural due process
claims. ......................................................................................33

C.  Plaintiffs' allegations of violations of state law do not
support a procedural due process claim in any event..............36

POINT II

PLAINTIFFS DID NOT ASSERT STATE-LAW CLAIMS
AND, IN ANY EVENT, THEIR CONTENTIONS ARE
UNAVAILING ............................................................................38

POINT III

PLAINTIFFS FAILED TO STATE PLAUSIBLE
CONSPIRACY CLAIMS AGAINST DOE .....................................46

POINT IV

PLAINTIFFS' REMAINING ARGUMENTS ARE ALSO
UNAVAILING ............................................................................48

CONCLUSION ...................................................................................52

iv

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF COMPLIANCE ........................................................ 53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABM Indus. Grps., LLC v. Int'l Union, Local 30, 30A, 30B*,
968 F.3d 158 (2d Cir. 2020) ............................................................... 32

*Adams v. Suozzi*,
517 F.3d 124 (2d Cir. 2008) ............................................................... 31

*Agudath Israel of Am. v. Cuomo*,
983 F.3d 620 (2d Cir. 2020) ............................................................... 22

*Ansbro v. de Blasio*,
Index No. 159738/2021
(Sup. Ct., N.Y. Cnty. Dec. 20, 2021) ................................................ 10

*Ass'n of Contracting Plumbers, Inc. v. Local Union No. 2*
*United Ass'n of Journeymen & Apprentices of Plumbing &*
*Pipefitting Industry*,
841 F.2d 461 (2d Cir. 1988) ............................................................... 35

*Barr v. United Parcel Service, Inc.*,
868 F.2d 36 (2d Cir. 1989) ........................................................... 34, 35

*Board of Education of City School Dist. v. New York State*
*Public Employment Relations Board*,
75 N.Y.2d 660 (1990) ........................................................................ 43

*Casey v. Merck & Co.*,
653 F.3d 95 (2d Cir. 2011) ................................................................. 40

*Ciambriello v. Cnty. of Nassau*,
292 F.3d 307 (2d Cir. 2022) ..................................................... 46, 47, 48

*Matter of City of Newburgh v. Newman*,
69 N.Y.2d 166 (1987) ........................................................................ 44

# TABLE OF AUTHORITIES

**Page(s)**

*Matter of Clarke v. Board of Educ. of the City Sch.*
  *Dist. of the City of N.Y.*,
  213 A.D.3d 548 (1st Dep't 2023) ............................................. 9, 40, 41

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ...................................................... 27, 29

*Correction Officers' Benevolent Ass'n v. City of N.Y.*,
  Index No. 161034/2021
  (Sup. Ct., N.Y. Cnty. Aug. 1, 2022) ...................................... 10

*Dixon v. Love*,
  431 U.S. 105 (1977) ........................................................ 31

*Erie R.R. v. Tompkins*,
  304 U.S. 64 (1938) ......................................................... 40

*Matter of Felix v. N.Y.C. Dep't of Citywide Amin. Servs.*,
  3 N.Y.3d 498 (2004) ....................................................... 39

*Fleischer v. Barnard Coll.*,
  2021 U.S. App. LEXIS 34226 (2d Cir. 2021) .............................. 34

*Foman v. Davis*,
  371 U.S. 178 (1962) ........................................................ 49

*Garland v. N.Y.C. Fire Dep't*,
  574 F. Supp. 3d 120 (E.D.N.Y. 2021) ................................... 9, 41

*Garvey v. City of New York*,
  77 Misc. 3d 585 (Sup. Ct., Richmond Cnty. 2022) ....................... 41

*Hellenic Am. Neighborhood Action Comm. v.*
  *City of New York*,
  101 F.3d 877 (2d Cir. 1996) .............................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

*Ifill v. New York State Court Officers Ass'n.*,
  655 F. Supp. 2d 382 (S.D.N.Y. 2009) .................................................. 36

*Kane v. de Blasio*,
  19 F.4th 152 (2d Cir. 2021) ................................................................ 8

*Kane v. de Blasio*,
  575 F. Supp. 3d 435 (S.D.N.Y. 2021) .................................................. 6

*Kane v. De Blasio*,
  623 F. Supp. 3d 339 (S.D.N.Y. 2022) ................................................ 41

*Katir v. Columbia Univ.*,
  15 F.3d 23 (2d Cir. 1994) .................................................................. 34

*Keil v. City of N.Y.*,
  No. 21-3043, 2022 U.S. App. LEXIS 5791
  (2d Cir. Mar. 3, 2022) ........................................................................ 8

*Matter of Koutros v. Dep't of Educ. of City of N.Y.*,
  129 A.D.3d 434 (1st Dep't 2015) ........................................................ 41

*Krug v. McNally*,
  368 F. App'x 269 (2d Cir. 2010) ........................................................ 47

*Locurto v. Safir*,
  264 F.3d 154 (2d Cir. 2001) ........................................................ 29, 31

*Loiacono v. Board of Educ. of the City of N.Y.*,
  2022 N.Y. Misc. LEXIS 9382
  (Sup. Ct., N.Y. Cnty. July 11, 2022) ................................................ 32

*Maniscalco v. N.Y.C. Dep't of Educ.*,
  No. 21-2343, 2021 U.S. App. LEXIS 30967
  (2d Cir. Oct. 15, 2021) ........................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

*McDarby v. Dinkins,*
907 F.2d 1334 (2d Cir. 1990) ................................................................ 37

*Morton v. Cty. of Erie,*
796 F. App'x 40 (2d Cir. 2019) ............................................................. 37

*N.Y.C. Mun. Lab. Comm. v. City of N.Y.,*
Case No. 2022-00618 (1st Dep't Mar. 10, 2022) ................................. 10

*N.Y.C. Mun. Lab. Comm. v. City of N.Y.,*
Index No. 158368/2021
(Sup. Ct., N.Y. Cnty. Oct. 19, 2021) .................................................... 10

*N.Y.C. Mun. Labor Comm. v. City of N.Y.,*
Index No. 151169/2022
(Sup. Ct., N.Y. Cnty. Apr. 21, 2022) .................................................... 10

*Matter of N.Y.C. Transit Auth. v.*
*Transp. Workers Union of Am., Local 100,*
99 N.Y.2d 1 (2002) . Civil .................................................................... 44

*Norton v. Town of Islip,*
678 F. App'x 17 (2d Cir. 2017) ............................................................. 25

*O'Connor v. Board of Education,*
48 A.D.3d 1254 (4th Dept. 2008) ......................................................... 41

*O'Connor v. Pierson,*
426 F.3d 187 (2d Cir. 2005) ................................................................. 28

*Matter of O'Reilly v. Board of Educ. of the City*
*Sch. Dist. of the City of N.Y.,*
213 A.D.3d 560 (1st Dep't 2023) ...................................................... 9, 40

*Old St. George's LLC v. Bianco,*
389 F. App'x 33 (2d Cir. 2010) ............................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

*Orchard Hill Master Fund Ltd. v. SBA Communs. Corp.,*
  830 F.3d 152 (2d Cir. 2016) .................................................. 22

*Pierce v. Woldenberg,*
  498 F. App'x 96 (2d Cir. 2012) ........................................... 22

*Plumber & Steamfitters Local 773 Pension Fund,*
  *Boston Ret. Sys. v. Danske Bank A/S,*
  11 F.4th 90 (2d Cir. 2021) ................................................... 48

*Plummer v. Klepak,*
  48 N.Y.2d 486 (1979) ......................................................... 32

*Police Benevolent Ass'n v. de Blasio,*
  Case No. 2021-07867
  (2d Dep't Oct. 29, 2021 & Dec. 8, 2021) ............................ 10

*Police Benevolent Ass'n v. de Blasio,*
  Index No. 85229/2021
  (Sup. Ct., Richmond Cnty. Feb. 16, 2022) ......................... 10

*Pollnow v. Glennon,*
  757 F.2d 496 (2d Cir. 1985) ............................................... 38

*Rivera-Powell v. N.Y. City Bd. of Elections,*
  470 F.3d 458 (2d Cir. 2006) ............................................... 31

*Robinson v. Via,*
  821 F.2d 913 (2d Cir. 1987) ............................................... 27

*Matter of Roma v. Ruffo,*
  92 N.Y.2d 489 (1998) ......................................................... 44

*Ruotolo v. City of New York,*
  514 F.3d 184 (2d Cir. 2008) ............................................... 49

x

# TABLE OF AUTHORITIES

**Page(s)**

*Russell v. Coughlin,*
  910 F.2d 75 (2d Cir. 1990) ................................................... 27

*Singer v. Fulton Cty. Sheriff,*
  63 F.3d 110 (2d Cir. 1995) ................................................... 47

*Spear v. West Hartford,*
  954 F.2d 63 (2d Cir. 1992) ................................................... 48

*United States v. City of New York,*
  717 F.3d 72 (2d Cir. 2013) ................................................... 50

*United States v. Djibo,*
  730 Fed. App'x 52 (2d Cir. 2018) ......................................... 50

*We the Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021)................................. 4, 9, 15, 41

**Statutes**

42 U.S.C. § 1983 (App. Br. 43) ...................................... *passim*

Civil Service Law § 201(4).................................................... 45

Civil Service Law § 209 ................................................. *passim*

Education Law § 2573(9).................................................... 45

Education Law § 3020-a.................................................. *passim*

New York Civil Service Law § 75...................................... 15, 19

## PRELIMINARY STATEMENT

Plaintiffs, current and former employees of the New York City Department of Education (DOE), brought this action after New York City adopted a vaccination requirement for DOE employees in mid-2021, at the peak of the COVID-19 pandemic. Arbitration with plaintiffs' unions produced awards setting procedures for employees to seek medical or religious accommodations as well as authorizing DOE to place employees on leave without pay, and eventually to terminate, employees who refused to submit proof of vaccination and did not obtain an accommodation. Plaintiffs were placed on leave without pay, and in some cases later were terminated, in accordance with those awards.

Plaintiffs brought this putative class action alleging the denial of constitutionally adequate process in connection with their placement on leave or termination and a conspiracy between DOE and their unions to deny them due process. As part of their federal claims, they alleged that the arbitration awards violated state law, but they pleaded no state-law claims. Plaintiffs now appeal from a judgment of the U.S. District Court for the Eastern District of New York (Matsumoto, J.), dismissing their amended complaint for failure to state a claim. This Court should affirm.

The district court correctly held that plaintiffs failed to state a procedural due process claim. Plaintiffs had ample notice of the vaccination requirement and the procedures to seek an accommodation, and they received both pre- and post-deprivation opportunities to be heard, thus satisfying constitutional requirements. As the district court recognized, plaintiffs' allegations that the arbitration awards were issued in violation of state law are unavailing. Plaintiffs, as members of a union, lack standing to challenge the validity of arbitration awards obtained by their union. Moreover, violations of state law do not establish a violation of federal due process rights. And the arbitration awards complied with state law in any event.

Given the lack of a viable federal due process claim, as well as the complete lack of nonconclusory factual allegations, the district court properly dismissed plaintiffs' conspiracy claims against DOE. So too, the court, having dismissed plaintiffs' individual claims, properly dismissed their class allegations. And neither plaintiffs' request for yet another opportunity to amend their complaint nor their insistence on a remand to a new judge is remotely warranted here.

## ISSUES PRESENTED FOR REVIEW

1. Did the district court correctly dismiss plaintiffs' procedural due process claims where (a) the arbitration awards provided notice of the vaccination requirement and both pre- and post-deprivation opportunity to be heard, (b) plaintiffs lack standing to challenge the validity of the arbitration awards that set the relevant procedures, and (c) the arbitration awards' supposed conflicts with state law would not establish a violation of procedural due process?

2. Are plaintiffs' assertions that the arbitration awards violated state law not pleaded as claims in the amended complaint and, in any event, meritless?

3. Did the district court properly dismiss plaintiffs' conspiracy claims against DOE given the lack of a cognizable constitutional violation or any plausible factual allegations of conspiracy?

4. Should plaintiffs' remaining arguments be rejected where (a) plaintiffs' class claims were properly dismissed along with their individual claims, (b) plaintiffs failed to establish entitlement to another opportunity to amend their complaint, and (c) the district judge showed no improper partiality, but simply dismissed plaintiffs' baseless claims?

3

## STATEMENT OF THE CASE

### A. The City of New York's requirement that public-school employees be vaccinated against COVID-19

#### 1. The Health Commissioner's order requiring vaccination of public-school employees

To put this case into context, when COVID-19 hit New York, it wreaked havoc (JA1493-94). It is a highly infectious and potentially deadly disease that "has caused widespread suffering in the State, country, and world." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272 (2d Cir. 2021) (per curiam), *op. clarified*, 17 F.4th 368, 368 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 552, 552 (2022). And COVID-19 didn't merely hit once and then fade away: New York City saw multiple surges and variants, resulting in over 3 million cases and 45,000 deaths between 2020 and 2023 (JA1494).[1]

But vaccines—the first of which received emergency-use authorization from the Food and Drug Administration less than a year after the pandemic began—proved safe and highly effective, making individuals who contract COVID-19 less likely to become seriously ill or

---

[1] N.Y.C. Dep't of Health, *COVID-19: Data, Trends and Totals, Totals*, https://www.nyc.gov/site/doh/covid/covid-19-data-totals.page (last assessed July 10, 2023).

die as well as reducing the risk of transmission (JA1495).[2] Especially during the periods when new variants emerged and the COVID-19 infection rates surged, unvaccinated individuals were particularly vulnerable (JA1496).[3]

Public schools presented a distinct challenge during these moments: in school, children regularly have extended contact with countless people while indoors. As a result, vaccination became "the most critical strategy to help schools safely resume full operations," and thus the CDC recommended that educators and other staff be "vaccinated as soon as possible" (JA780; *see* JA1499).[4]

In August 2021, shortly after a vaccine received full regulatory approval, the Commissioner of the New York City Department of Health and Mental Hygiene issued an order requiring public-school employees

---

[2] *See* U.S. Food and Drug Administration (FDA), *Learn More About COVID-19 Vaccines from the FDA*, https://perma.cc/9JWZ-KRM6 (captured Feb. 17, 2022).

[3] *See* Nancy Schimelpfening, *Why Unvaccinated People are Bearing the Brunt of the Omicron Surge*, Healthline (Jan. 10, 2022), https://perma.cc/9E4M-ZCRB.

[4] Although vaccines had received full regulatory approval for adults before the start of in-person schooling in September 2021, at the time that students returned to the classroom, no vaccine had been fully approved for them. *See* Pfizer, *Pfizer and BioNTech Announce U.S. FDA Approval of their COVID-19 Vaccine COMIRNATY® For Adolescents 12 through 15 Years of Age* (July 8, 2022), https://perma.cc/PV4W-PFLH.

submit proof of vaccination or receipt of an initial dose of a two-dose vaccination regimen by September 27, 2021 (JA779-82). The Health Commissioner's order was issued shortly before the City's public schools fully reopened for in-person instruction for the 2021-2022 school year.

The Health Commissioner's order dramatically increased vaccination rates among public-school employees: by October 2021, around 95% of DOE personnel had been vaccinated. *See* Bernstein Decl. ¶ 5, *Kane v. de Blasio*, 575 F. Supp. 3d 435 (S.D.N.Y. 2021), ECF No. 52. Building on this success, the Health Commissioner later required vaccination for all city employees,[5] which was also followed by a dramatic increase in vaccination rates.

### 2. The arbitration award addressing the impact of the vaccination order on public-school teachers

After the Health Commissioner issued his initial order, DOE and the unions of its employees attempted to negotiate the impact of the vaccination requirement on the terms and conditions of employment, including how to process accommodation requests and  unvaccinated

---

[5] *See* Order of Comm'r of Health and Mental Hygiene (Oct. 20, 2021), https://perma.cc/W2BQ-DX6E,

6

employees' placement on leave without pay (JA587). The United Federation of Teachers (UFT) filed an impasse declaration with the Public Employment Relations Board under New York Civil Service Law § 209 (*id.*). The board appointed Martin Scheinman—one of the named defendants here—to mediate between DOE and UFT, and the parties then agreed to arbitrate before him when they could not resolve all issues consensually (*id.*).

Scheinman's September 10, 2021 award (the "Impact Award") established a process for handling requests for religious and medical exemptions from the vaccination requirement (JA589-96). The Impact Award provided that any unvaccinated employee who had not requested an accommodation, or who had requested an accommodation and been denied, would be placed on leave without pay on September 28, 2021 (JA596). As the Impact Award explained, "[p]lacement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose" (*id.*). But the Impact Award also offered enhanced separation and extended leave options for employees who had been placed on leave (JA597-99). Finally, it made clear that beginning in December 2021, DOE would seek to terminate, or "unilaterally separate," employees who had

7

not opted into either the enhanced separation or the extended leave option (JA600-01).

Following the Impact Award, the City's Office of Labor Relations engaged in bargaining with the remaining unions representing DOE employees, including the Council of Supervisors and Administrators ("CSA") and District Council 37 ("DC 37") (JA602-16, 617-23). Those negotiations resulted in an arbitration award and an agreement that mirrored the material terms of the Impact Award for the employees of both of those unions as well (*id.*).

> **3. The multiple lawsuits that have unsuccessfully sought to stop the implementation of the vaccination requirements**

Numerous unions and employees have unsuccessfully challenged the Health Commissioner's orders as to DOE and other public employees in state and federal court. This Court has repeatedly rejected facial constitutional challenges brought by DOE employees. *See Kane v. de Blasio*, 19 F.4th 152, 164-67 (2d Cir. 2021); *Maniscalco v. N.Y.C. Dep't of Educ.*, No. 21-2343, 2021 U.S. App. LEXIS 30967, at *1 (2d Cir. Oct. 15, 2021) (summary order), *cert. denied*, 142 S. Ct. 1668, 1668 (2022); *Keil v. City of N.Y.*, No. 21-3043, 2022 U.S. App. LEXIS 5791, at *3-*4 (2d Cir.

Mar. 3, 2022) (summary order). And, like the district court here, other federal district courts have rejected attempts by public employees to require hearings before they are placed on leave or terminated. *See, e.g., Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 127-33 (E.D.N.Y. 2021).

Nor is the City the only government entity to require a COVID-19 vaccination as a condition of employment. New York State required healthcare workers to be vaccinated against COVID-19 as a condition of employment as well. *We the Patriots USA*, 17 F.4th at 294. In fact, numerous appellate courts have made clear that COVID-19 vaccination can be—and is—a lawful condition of employment. *See id.*; *Matter of Clarke v. Board of Educ. of the City Sch. Dist. of the City of N.Y.*, 213 A.D.3d 548, 550 (1st Dep't 2023), *lv. granted,* Motion No. 2023-01398; *Matter of O'Reilly v. Board of Educ. of the City Sch. Dist. of the City of N.Y.*, 213 A.D.3d 560, 566 (1st Dep't 2023), *lv. granted,* Motion No. 2023-01397. In both *Clarke* and *O'Reilly*, the First Department explicitly held that the COVID-19 vaccination requirement constituted a "condition of employment" for DOE employees, explaining that the Impact Award at issue here and the employees' placement on leave for failing to prove

9

vaccination did not constitute discipline and therefore did not require a hearing under New York Education Law §§ 3020 and 3020-a. *Id.*

Other challenges that public employee unions have brought against the Health Commissioner's orders in New York state courts have likewise been unsuccessful at enjoining implementation of the vaccination requirements, placement of employees on leave without pay, or employee terminations for noncompliance. *See N.Y.C. Mun. Lab. Comm. v. City of N.Y.*, Case No. 2022-00618 (1st Dep't Mar. 10, 2022), NYSCEF No. 7; *Police Benevolent Ass'n v. de Blasio*, Case No. 2021-07867 (2d Dep't Oct. 29, 2021 & Dec. 8, 2021); *N.Y.C. Mun. Lab. Comm. v. City of N.Y.*, Index No. 158368/2021 (Sup. Ct., N.Y. Cnty. Oct. 19, 2021), NYSCEF No. 38; *Ansbro v. de Blasio*, Index No. 159738/2021 (Sup. Ct., N.Y. Cnty. Dec. 20, 2021), NYSCEF No. 30; *Police Benevolent Ass'n v. de Blasio*, Index No. 85229/2021 (Sup. Ct., Richmond Cnty. Feb. 16, 2022), NYSCEF No. 51; *N.Y.C. Mun. Labor Comm. v. City of N.Y.*, Index No. 151169/2022 (Sup. Ct., N.Y. Cnty. Apr. 21, 2022), NYSCEF No. 76; *Correction Officers' Benevolent Ass'n v. City of N.Y.*, Index No. 161034/2021 (Sup. Ct., N.Y. Cnty. Aug. 1, 2022), NYSCEF No. 31.

10

**B. This litigation by DOE employees who object to the vaccination requirement**

**1. Plaintiffs' claims primarily alleging violations of due process on the basis of state-law violations**

The individual plaintiffs in this putative class action are current and former employees of DOE and members of UFT, CSA, or DC 37 who failed to provide proof of vaccination or receive an accommodation while the City's vaccination requirement was in effect. As a result, and in accordance with their unions' collective bargaining agreements and the Impact Award or the other arbitration agreements, plaintiffs were placed on leave without pay—during which they retained their health benefits under the terms of the arbitration awards—and some were later terminated.

In their initial complaint, plaintiffs alleged five causes of action: first, they sought a declaratory judgment on the basis of their allegations that they were placed on leave without due process in violation of the Fourteenth Amendment; second, they sought a permanent injunction on the basis that they possessed property-based due process rights in their pay; third and fourth, they sought damages on the basis of due process violations under § 1983 against the City defendants and the union

defendants; and, fifth, they alleged under § 1983 that defendants conspired to deprive them of their due process rights (JA68-77).

Plaintiffs later filed an amended complaint, asserting new causes of action and adding additional defendants (JA995). Like their initial Complaint, the amended complaint continued to challenge the arbitration awards on the basis of purported state-law violations. Plaintiffs' first cause of action sought an order declaring that placement on leave without pay was a due process violation based on a violation of statutory and contractual rights; the second sought an order declaring that the Impact Award was without statutory or contractual authority and in violation of due process; the third sought the same declaration with respect to the CSA arbitration award; the fourth sought the same declaration with respect to the DC 37 arbitration award; the fifth sought an order declaring that a release, provided for by the Impact Award, violated the Impact Award and was unenforceable; the sixth sought a permanent injunction on the basis of procedural due process violations—presumably those alleged with respect to the arbitration awards; the seventh, eighth, and ninth causes of action alleged a conspiracy between the defendants in violation of § 1983 with respect to the Impact Award,

12

the CSA arbitration award, and the DC 37 arbitration award on the basis that those awards served as "cover" to deprive plaintiffs of their due process rights; and the tenth alleged the individual defendants aided and abetted DOE in violation of plaintiffs' constitutional rights through the use of the arbitration awards placing plaintiffs on leave without pay (JA995-1018).

### 2. Plaintiffs' attempts to restrain DOE's ability to place employees on leave without pay and terminate employees who failed to comply with the vaccination requirement

Before defendants moved to dismiss the action in its entirety, plaintiffs twice sought a preliminary injunction. First, in November 2021, plaintiffs filed an emergency motion seeking to enjoin their placement on leave without pay and potential terminations during the pendency of this litigation. The district court declined to grant an injunction, stating that it was "dubious whether plaintiffs have standing to challenge the terms of the Impact Arbitration Award" given that their respective unions engaged on their behalf with DOE (SPA58). The court went on to address the merits, assuming *arguendo* that plaintiffs had standing (SPA61).

13

The court also found that plaintiffs had not demonstrated a likelihood of success on the merits because both the pre-deprivation and post-deprivation processes afforded to them were "constitutionally adequate" (SPA62). Specifically, the court held that plaintiffs had received ample notice of the vaccination requirement, their ability to seek an exemption, their placement on leave without pay if they continued to be noncompliant with the vaccination requirement, and their opportunities to respond (SPA64-65). As for the post-deprivation process, the court noted that plaintiffs could have challenged their placement on leave—or later, their termination—through N.Y. C.P.L.R. article 78 proceedings in state court (SPA65-67). Finally, the court rejected plaintiffs' claims of irreparable harm, as plaintiffs primarily sought monetary damages (JA68-70).

At the same time as the court denied plaintiffs' motion for a preliminary injunction, the court entered an order to show cause why the action should not be dismissed for lack of standing (JA22). The parties thus briefed the court on two additional matters: first, whether the vaccination requirement constituted a legitimate condition of

employment (JA825), and second, whether plaintiffs had standing to challenge the arbitration awards in the first place (JA24).

In the supplemental briefing, plaintiffs and UFT argued that the vaccination requirement was not a condition of employment, and thus DOE was required to provide a full adversarial hearing under New York Education Law §§ 3020 and 3020-a to each employee before termination (JA847-55, 856-79). In response, DOE pointed to this Court's recent decision in *We the Patriots*, holding that the COVID-19 vaccination was a condition of employment for healthcare employees (JA890). DOE also argued that the notice and processes provided by DOE were constitutionally adequate and, because vaccination was a condition of employment, DOE could terminate employees for failure to fulfill the requirement without a § 3020-a hearing or additional process under New York Civil Service Law § 75 (JA892-906).

The DOE defendants also submitted additional briefing on plaintiffs' standing (JA935). Because an employee represented by a union does not have standing to challenge an arbitration proceeding to which only the union and the employer were parties, DOE argued that plaintiffs here lacked standing (JA938). UFT took the position that the Impact

15

Award lawfully placed plaintiffs on leave without pay but did not vitiate plaintiffs' standing with respect to their challenges to termination (JA956). Accordingly, the court found that plaintiffs who were members of CSA or DC 37 did not have standing, but plaintiffs who were members of UFT did (JA24 (Scheduling Order, dated 12/23/21)).

Before those plaintiffs were dismissed from the matter, however, plaintiffs moved for a preliminary injunction once again. In that motion, plaintiffs argued again that the Health Commissioner had no authority to impose a new condition of employment (JA1421-22). And, once again, plaintiffs argued that due process required DOE to follow the disciplinary procedures set forth by Education Law §§ 3020 and 3020-a, including a full adversarial hearing, before terminating them (*id.*). UFT took the position that the Impact Award was lawful as to DOE's ability to place employees on leave without pay but not as to termination (JA1433-37). In response, the DOE defendants argued that plaintiffs could not establish irreparable harm, since any injury could be redressed through a monetary award, and were unlikely to succeed on the merits, given that plaintiffs were not subject to discipline—and therefore not entitled to § 3020-a protections—and plaintiffs had been provided with

constitutionally adequate notice and opportunity to be heard (JA1478-84).[6]

The district court denied plaintiffs' motion seeking to restrain DOE from terminating plaintiffs (SPA84-85). The court considered whether the procedures available to plaintiffs upon the deprivation of their property interest in continued employment were constitutionally adequate (SPA86). Again, the court found that the pre- and post-deprivation process plaintiffs had been afforded remained constitutionally adequate (*id.*). The court noted that DOE provided plaintiffs with notice of the procedures available to them on the basis of the arbitration awards "well in advance of any action"—indeed, all plaintiffs were put on notice of the possibility of termination at least four months before any action was taken to terminate them (SPA88). The court also made clear that the procedures required by the arbitration awards were incorporated into plaintiffs' collective bargaining

---

[6] While this motion was pending, the union defendants brought a motion for a preliminary injunction against the City of New York and DOE in state court, seeking to enjoin the termination of employees that had not complied with the vaccination requirement (JA1514-15). Supreme Court, New York County (Kim, J.), denied the request for interim injunctive relief, stating *inter alia* that the unions had failed to demonstrate a likelihood of success on the merits (JA1521).

agreements, and those agreements provided for expedited review of any accommodations requested by plaintiffs (SPA89-90). Finally, the court noted, plaintiffs could still avail themselves of N.Y. C.P.L.R. article 78 proceedings to challenge their terminations, which provided adequate post-deprivation process (SPA91).

The court separately held that the vaccination requirement was a "lawful condition of employment and, thus, upon termination, plaintiffs have been provided constitutionally adequate process" (SPA92). The court rejected plaintiffs' arguments that DOE or the Health Commissioner acted without statutory or administrative authority because plaintiffs had failed to "identify any authority that proscribes [DOE] from imposing a vaccine requirement during a global pandemic causing risks of severe illness and death to the unvaccinated, many of whom include school age children" (SPA94-95). The court also held that the termination of those who failed to comply with the vaccination requirement was "not disciplinary," but rather is due to "their failure to avail themselves of existing processes or comply with a lawful job condition" (SPA102). Accordingly, the court found that DOE did not need

18

to pursue the disciplinary processes contained in Education Law § 3020-a or Civil Service Law § 75 (SPA104).

### 3. Defendants' motions to dismiss and the court's order and judgment

The DOE defendants then moved to dismiss this action. First, they argued that the law of the case required dismissal, given the court's previous rulings in the preliminary injunction decisions (JA1596). Specifically, defendants pointed to the findings that DOE had provided adequate process when placing plaintiffs on leave without pay pursuant to the arbitration awards (JA1594-95), that DOE had provided adequate process when terminating plaintiffs (JA1595-96), and that the vaccination requirement was a lawful condition of employment (JA1595).

Even if plaintiffs' due process claims were not barred by the law of the case doctrine, defendants argued they were meritless and must be dismissed as a matter of law (JA1599). Not only had plaintiffs failed to show they were entitled to the disciplinary processes under Education Law § 3020-a and Civil Service Law § 75, but they were afforded constitutionally adequate pre- and post-deprivation process (JA1600-11).

Finally, defendants argued, plaintiffs' conspiracy and class claims must be dismissed (JA1611-13).[7]

In response, plaintiffs argued they had plausibly pled their claims (*see, e.g.*, JA1758). In essence, plaintiffs argued that the arbitration awards were illegal and without statutory authority (*see, e.g.*, JA1756 ("But what happens if this Court holds that the UFT Arbitration Award, or the CSA Arbitration Award, or the DC 37 Agreement are invalid, illegal, and unenforceable?")). Plaintiffs also argued their conspiracy claims were plausible, relying on their description of a connection between former Mayor de Blasio and Scheinman, the arbitrator responsible for the awards at issue (JA1775-91). Plaintiffs also asserted that their class action claims were plausibly pled and sought to file a Second Amended Complaint (JA1792).

Before the court issued its decision on the motions to dismiss, the City repealed the vaccination requirement for DOE and other city employees (*see* JA1862). After briefing on which—if any—issues were rendered moot by the end of the vaccination requirement, the court

---

[7] UFT moved to dismiss as well. UFT once again claimed that plaintiffs lacked standing to bring this suit (JA1670). DC 37 also moved to dismiss the claims against it (JA1618), as did defendant Scheinman and related entities (JA1686).

issued its decision (SPA1). The court determined that the law of the case doctrine did not compel or prevent reconsideration of the court's previous decisions, but the factual findings and legal analysis contained within them were "useful in considering the defendants' instant motions to dismiss" (SPA22-23). The court then found that the facts alleged in the amended complaint established that the pre- and post-deprivation procedures provided by the awards were constitutionally adequate to satisfy due process (SPA25).

The court recognized that plaintiffs' only defense of the sufficiency of their allegations relied on the question of whether the arbitration awards were invalid on the grounds that defendants lacked the state-law authority to arbitrate and agree to the awards (SPA30). But, the court noted, "the correct inquiry is whether state procedures, state laws and contract rights, satisfy federal constitutional requirements" (SPA32). The facts here, the court concluded, established that the awards and the collective bargaining agreements provided for expedited review and appeal processes, providing adequate opportunity to be heard (SPA34).

As to the conspiracy claims, the court found plaintiffs had failed to state a claim "for several reasons" (SPA36). Not only had they failed to

21

allege a violation of a federal right, but they failed to proffer any nonconclusory facts regarding the nature of the conspiracy or show any overt steps taken by defendants in furtherance of that conspiracy (SPA38). Because plaintiffs failed to state any individual claims, the court dismissed their class allegations as well (SPA40). Finally, the court found that allowing plaintiffs to amend their complaint for a second time would be futile (SPA41).

## STANDARD OF REVIEW
## AND SUMMARY OF ARGUMENT

Reviewing the district court's dismissal of the complaint *de novo*, *Orchard Hill Master Fund Ltd. v. SBA Communs. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016), this Court should affirm.[8]

At bottom, plaintiffs challenge their prior placement on leave without pay or their terminations as violations of their federal due process rights. But plaintiffs were afforded constitutionally adequate

---

[8] To the extent that plaintiffs purport to challenge the district court's denial of their requests for a preliminary injunction (Brief for Appellants ("App. Br.") 4), the Court would review those rulings for an abuse of discretion, assessing *de novo* whether the district court made errors of law, *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020). But plaintiffs' challenges to those earlier rulings would be moot, given that plaintiffs' placement on leave without pay or termination already occurred and the vaccination requirement has been discontinued. Plus, plaintiffs' challenge to the preliminary injunction rulings would be moot if this Court affirms dismissal of the complaint. *Pierce v. Woldenberg*, 498 F. App'x 96, 98 (2d Cir. 2012).

procedural due process here: they had ample notice of the vaccination requirement and the means to comply with it, and many of them took advantage of the processes to seek an accommodation, to appeal the accommodation decisions, or to maintain their health benefits while on leave. Plaintiffs also retained their ability to challenge any determination made by DOE through a N.Y. C.P.L.R. article 78 proceeding—and many of them did just that.

Plaintiffs' allegations, as their arguments on appeal make clear, are really state-law claims related to the validity of the arbitration award and agreements brought under the guise of federal procedural due process. But they have no standing to challenge those awards, given that they never brought claims against their unions on the ground of a breach of the duty of fair representation—a prerequisite to challenging the outcome of an arbitration to which the union was a party. So too, because the processes provided by the arbitration awards easily satisfied federal due process, those state-law arguments fail here since state law does not define what process is due. This Court should affirm the dismissal of their claims.

Even if plaintiffs had standing and had properly pled the state-law claims they now attempt to paint as procedural due process violations, those claims would be meritless. Because plaintiffs failed to satisfy a lawful condition of employment—compliance with the vaccination requirement—New York laws governing the process for imposing discipline for misconduct or incompetence do not apply. Nor was there any barrier under state law to DOE and the unions arbitrating their disputes over the vaccination requirement. Plaintiffs' misguided approach to these issues is clear from the plain language of the statutes plaintiffs invoke in support of their arguments.

Plaintiffs' failure to establish federal due process violations enfeeble the rest of their claims: plaintiffs cannot make out a claim for conspiracy under § 1983 where there is no underlying constitutional violation. Nor was another chance to amend their complaint appropriate, where they failed to fix the obvious pleading deficiencies—despite the court's forewarning—in their first amended complaint. And, of course, remand to another district court is inappropriate where there is nothing in this district court's rulings that an objective observer could view as

showing a lack of impartiality; indeed, if plaintiffs were correct, every adverse decision would merit remand and reassignment.

Simply put, plaintiffs' grab-bag of state-law claims masquerading as federal due process violations must be rejected as insufficiently pled and meritless in any event.

## ARGUMENT

## POINT I

## PLAINTIFFS FAILED TO STATE A CLAIM THAT THEY WERE DENIED DUE PROCESS

The district court correctly dismissed the claims alleging that plaintiffs were denied procedural due process in connection with their placement on leave without pay or their terminations (SPA24-25; JA995-98). As an initial matter, and as the court correctly recognized, these claims are deficiently pleaded because they identify no cause of action, instead just asserting violations of the law and seeking declaratory relief (SPA19). *Norton v. Town of Islip*, 678 F. App'x 17, 22-23 (2d Cir. 2017). Plaintiffs argue against this conclusion, asserting that their claims were pleaded under 42 U.S.C. § 1983 (App. Br. 43). But the claims do not invoke that cause of action, unlike the conspiracy claims that follow it

(*compare* JA995-98, *with* JA1001-18).[9] It is too late to rewrite the amended complaint to correct this basic deficiency.[10]

Even apart from the pleading inadequacy, plaintiffs' allegations fail to state a claim. The dispositive question is whether the procedures afforded plaintiffs provided constitutionally sufficient notice and opportunity to be heard. Here, the procedures did. Although it is clear on the face of the amended complaint that plaintiffs' due process challenges are premised entirely on an attack on the validity of the arbitration awards, plaintiffs, as union members, lack standing to challenge the awards. Moreover, assertions that government action violated state law do not sustain a procedural due process claim under the Constitution.

---

[9] Plaintiffs have not challenged the dismissal of their sixth cause of action—for a permanent injunction—and have therefore abandoned that claim.

[10] Plaintiffs point to ¶¶ 112 and 113 of their amended complaint as proof that their claims are based on § 1983 (App. Br. 43), but those paragraphs just confirm the insufficiency of their allegations. Paragraph 112 references "due process and property rights" under the Fourteenth Amendment without mention of § 1983 (JA975). Paragraph 113 invokes § 1983 as to "a *conspiracy* to violate Plaintiffs' constitutional rights to due process and property rights" (*id.* (emphasis added)), thus plainly referring to the separate conspiracy allegations that are expressly identified as claims under § 1983.

26

## A. Plaintiffs received constitutionally adequate notice and opportunity to be heard.

Despite plaintiffs' consistent choice to plead their claims in terms of the validity of the arbitration awards under state law, the district court correctly assessed whether the amended complaint stated a claim that plaintiffs were denied procedural due process without reference to the state-law questions, assessing instead whether plaintiffs received constitutionally sufficient notice and opportunity to be heard. This Court should also look to federal constitutional standards—rather than state statutes—to define the requirements of procedural due process here. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action … does not settle what protection the federal due process clause requires") (quotations and citations omitted).

The procedures afforded to plaintiffs under the arbitration awards and collective bargaining agreements more than satisfied the minimum federal due process requirements: "notice and the opportunity to

27

respond." *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005). Because the arbitration awards provided them with ample notice, and both a pretermination opportunity to be heard and post-deprivation review in state court via N.Y. C.P.L.R. article 78 proceedings, their allegations of federal due process violations must fail.

First, plaintiffs received ample notice of the vaccination requirement, the arbitration awards, and the procedures they could avail themselves of to challenge the consequences of noncompliance with the vaccination requirement. Indeed, as the district court concluded, employees had notice "well in advance of any action" taken against them (SPA14). Public notice of the implementation of the vaccination requirement was issued on August 24, 2021 (JA779). Plaintiffs who were UFT members had notice of the leave policy and potential separation starting on September 10, 2021—the date of the Impact Award (JA583). CSA members had notice on September 15, 2021 (JA602), and DC 37 members had notice as of October 3, 2021 (JA617). Plaintiffs were also notified then that if they were not in compliance with the vaccination requirement, they would be placed on leave without pay, and that DOE could seek their termination as of December 1, 2021 if they did not comply

with the requirement or opt to separate or extend their leave without pay status (JA600, 616, 622).

Thus, plaintiffs should have been aware well in advance of being placed on leave without pay or terminated that they needed to submit proof of vaccination or apply for an exemption from the requirement for religious or medical reasons. And indeed, plaintiffs have never disputed that they received multiple notifications of the imposition of the vaccination requirement, the arbitration awards, and the applicable dates, procedures, and consequences under those awards. Nor do not identify any additional notice that they believe they were due.

Second, plaintiffs had multiple opportunities to be heard, both before their placement on leave without pay or terminations and after. *See Loudermill*, 470 U.S. at 547-48 (1985) ("[A]ll the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures"); *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) (holding that, when terminated employees alleged that the administrative procedures leading to their termination were biased and contrary to law, due process was satisfied by a "minimal"

hearing followed by a "wholly adequate post-deprivation" article 78 hearing).

The Health Commissioner's order establishing the vaccination requirement itself provided plaintiffs with their first opportunity to be heard: by submitting proof of a receipt of a vaccination dose, employees could confirm whether they were compliant with the requirement. Indeed, plaintiffs have never disputed that they were noncompliant with the vaccination requirement. Nor have they alleged that employees lacked the opportunity to correct any erroneous classification as noncompliant. While some of the plaintiffs in this action appear to have since been vaccinated (*see* Dkt. No. 21-cv-6387, ECF No. 46), those plaintiffs did not assert that were denied an adequate opportunity to establish a change in their vaccination status. To the contrary, the arbitration awards provided a means to notify DOE of a change in status and return to work (*see, e.g.*, JA597 (arbitration award reserving vaccinated employees the "right of return to the same school as soon as is practicable")). These procedures safeguarded against a risk of an erroneous deprivation. Due process did not require DOE to go further and offer an opportunity for plaintiffs to voice general disagreement with the

vaccination requirement or ask that DOE disregard it. *See Dixon v. Love*, 431 U.S. 105, 114 (1977).

The arbitration awards also created additional opportunities for individual employees to be heard, including an expedited process to apply for an exemption from the requirement before the end of September. And if their request for an exemption was denied, under the terms of the awards, the employees could administratively appeal that determination (JA652; *see* JA593, 608, 618). There is no due process violation where "notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). In addition to those pre-deprivation procedures, employees could seek relief through an article 78 proceeding, a post-deprivation process recognized by this Court as providing a constitutionally adequate remedy. *See Locurto*, 264 F.3d at 175; *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996); *see also Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465-67 (2d Cir. 2006)

31

(concluding that an article 78 proceeding, plus "at least some form" of pre-deprivation procedure, afforded sufficient due process).[11]

That plaintiffs had adequate process is obvious from their own submissions: many of the plaintiffs ultimately took advantage of the processes laid out by the arbitration awards—submitting accommodation requests and appealing their denials, according to the awards' outlined procedures (*see, e.g.*, JA1709-15). And some plaintiffs have since brought article 78 proceedings—a constitutionally adequate post-deprivation process—to challenge determinations related to the vaccination requirement. *See, e.g.*, *Loiacono v. Board of Educ. of the City of N.Y.*, 2022 N.Y. Misc. LEXIS 9382, at *1 (Sup. Ct., N.Y. Cnty. July 11, 2022) (granting plaintiff Loiacono's article 78 petition related to accommodation request).

Thus, although plaintiffs may dispute the state-law statutory and contractual authority of DOE and the unions to enter into the arbitration

---

[11] In addition to these opportunities for individual employees to be heard, plaintiffs' unions represented all of their members in the arbitrations that led to the awards. Unions are agents of their members, and the members are bound by the terms negotiated on their behalf. *See ABM Indus. Grps., LLC v. Int'l Union, Local 30, 30A, 30B*, 968 F.3d 158, 164 (2d Cir. 2020); *Plummer v. Klepak*, 48 N.Y.2d 486, 489 (1979). Thus the unions' participation in the impact arbitrations gave plaintiffs an additional opportunity to be heard on the impact of the Health Commissioner's order.

awards, they cannot state a claim that the arbitration awards deprived them of the due process required under federal law.

### B. Plaintiffs lack standing to challenge the validity of the arbitration awards via their procedural due process claims.

Plaintiffs' procedural due process claims are all premised on the underlying (and mistaken) allegation that the arbitration awards are invalid as a matter of state law (*see, e.g.*, App. Br. 2-3 (describing the issues presented for review as whether DOE provided "constitutionally sufficient minimum procedural due process, when the process provided to the Appellants was the result of illegal arbitration awards")).[12] As plaintiffs explain, their position is that the awards are "all procedurally illegal and could not have served as the procedures for the implementation" of DOE's vaccination requirement "since they were all arrived at in violation of New York State law" (*id*. at 47).

But plaintiffs cannot challenge the validity of the arbitration awards in this action. As this Court has made clear, union members like

---

[12] In fact, every one of plaintiffs' ten claims is premised on the validity of the arbitration awards or the consequences of the enforcement of those awards. Even plaintiffs' claims alleging conspiracy under § 1983 place the validity of the arbitration awards at the center of their allegations.

33

plaintiffs do not have standing to challenge arbitration awards like the awards issued by the arbitrator to DOE and the unions. "[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994). Because plaintiffs were not parties to these arbitration awards, they do not have standing to challenge them.

An exception to this rule exists, but it does not apply to plaintiffs. Individual employees can "only challenge the arbitration through [a] claim against the union for breach of its duty of fair representation." *Fleischer v. Barnard Coll.*, 2021 U.S. App. LEXIS 34226, at *11 n.1 (2d Cir. 2021); *see Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) (holding arbitration award could not be disturbed where there was insufficient evidence to support a claim that the union breached its duty of fair representation). Although plaintiffs named their unions as defendants, they did not allege any claims herein against their unions for a breach of the duty "to fairly represent all members subject to its [collective bargaining agreement] with [the] employer." *Fleischer*, 2021 U.S. App. LEXIS 34226, at *3-4. Indeed, the course of this litigation

34

shows that the omission of such a claim was a deliberate choice. Even after defendants initially raised this standing issue in response to the original complaint (*see* JA559-60), plaintiffs filed an amended complaint that also failed to allege that the unions breached their duty of fair representation.[13]

As this Court has stated, the reasoning behind the requirement to challenge the adequacy of the union's representation stems from the concern that "allowing an individual employee to challenge the arbitration award would undermine the union's ability to pursue grievances on behalf of all its members and would destroy the employer's confidence in the union's authority." *Ass'n of Contracting Plumbers, Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industry*, 841 F.2d 461, 467 (2d Cir. 1988). Such would be the case here were plaintiffs' challenges to the validity of their

---

[13] Even if plaintiffs had pleaded a claim against their unions for breaching the duty of fair representation, such a claim would have been meritless. "Mere negligence or errors of judgment is insufficient" to show a breach of this duty; instead, the unions' actions would have needed to be "egregious" and "unrelated to legitimate union interests." *Barr*, 868 F.2d at 43. Establishing procedures for the provision of religious and medical accommodations in connection with a vaccination requirement that allowed public schools to safely reopen during a global pandemic can hardly be characterized as egregious or unrelated to legitimate union interests.

arbitration awards allowed to go forward: their personal allegations would undermine the entirety of these awards for the unions and their other represented employees.

Because plaintiffs have not alleged that their unions breached the duty of fair representation, they lack standing to challenge the validity of the arbitration awards.[14] Since plaintiffs hang their procedural due process claims on the invalidity of the awards, this Court need go no further to affirm.

### C. Plaintiffs' allegations of violations of state law do not support a procedural due process claim in any event.

Plaintiffs' laser focus on the validity of the arbitration awards under state law defeats their claims for a second reason. Allegations that those awards were issued in violation of state statutory or contractual authority simply do not sustain a constitutional action for procedural due

---

[14] Plaintiffs' post-hoc attempt to claim they did argue a breach of the duty of fair representation falls flat (*see* JA1754), as these claimed breaches were never alleged herein—only raised for the first time in plaintiffs' opposition to defendants' motions to dismiss. *See Ifill v. New York State Court Officers Ass'n.*, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (denying summary judgment where "the amended complaint does not state a claim for breach of the duty of fair representation … [plaintiff] may not amend his complaint to add new claims by raising them for the first time in his motion papers").

process. As the district court correctly noted, even assuming a violation of state law occurred as plaintiffs alleged, that "does not *per se* result in a violation of the Due Process Clause" (SPA33 (citing *Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019)). Rather, "once the constitutional minima have been satisfied … a state agency's non-compliance with promised, yet gratuitous procedural protections does not constitute a due process violation." *Morton v. Cty. of Erie*, 796 F. App'x 40, 44 (2d Cir. 2019) (quotations and citations omitted); *see also McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990). As this Court has stated, "[a] violation of state law procedure does not by itself give rise to a federal due process violation." *Morton*, 796 F. App'x at 44.

As discussed above, plaintiffs' procedural due process claims all assert a lack of adequate process based on the arbitration awards' supposed inconsistency with state law (*see* JA995-98). And plaintiffs' brief on appeal confirms as much. Plaintiffs argue that DOE and the unions lacked the authority to resolve an impasse in collective bargaining negotiations (App. Br. 23), that the vaccination requirement was not a condition of employment due to a violation of the New York Civil Service Law (*id*. at 30), and that the arbitration award process was illegal (*id*. at

37

50). Their procedural due process arguments are all premised on these assertions (*id.* at 47).

Even if plaintiffs could assert state-law claims raising these objections (but, as discussed below, they have not done so in this case), they cannot establish a violation of procedural due process under the federal Constitution based on these contentions. *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) (explaining that "a violation of state law is not cognizable under § 1983"); *Old St. George's LLC v. Bianco*, 389 F. App'x 33, 35 (2d Cir. 2010) (affirming dismissal of substantive and procedural due process claims on the ground that the complaint alleged only violations of state law). For this reason too, the dismissal of plaintiffs' procedural due process claims should be affirmed.

## POINT II

### PLAINTIFFS DID NOT ASSERT STATE-LAW CLAIMS AND, IN ANY EVENT, THEIR CONTENTIONS ARE UNAVAILING

Plaintiffs' brief on appeal contains several extended arguments why the arbitration awards are contrary to state law. But, as discussed above, the amended complaint raises various state-law objections to the validity of the awards only as supposed grounds to find a violation of procedural

38

due process. Although plaintiffs now appear to be trying to assert standalone state-law claims (*see, e.g.*, App. Br. 8), they did not plead even a single cause of action under state law. That failure, coupled with their lack of standing to bring challenges to the validity of the arbitration awards as discussed above, dooms their state-law objections. The Court should give these assertions about state law no further consideration.[15]

In any event, plaintiffs' state-law claims—even if properly pleaded—would be meritless. First, contrary to plaintiffs' contention (App. Br. 30), compliance with the vaccination requirement was a lawful condition of employment; therefore, employees who failed to satisfy this condition could be placed on leave without pay, or terminated, without following the procedures under New York State Education Law § 3020-a that apply when a tenured teacher is charged with incompetence or misconduct. *See Matter of Felix v. N.Y.C. Dep't of Citywide Amin. Servs.*, 3 N.Y.3d 498, 505 (2004) (explaining that failing to meet a condition of

---

[15] On appeal, plaintiffs make no arguments related to their fifth cause of action, claiming the release required by the arbitration awards should they remain noncompliant with the vaccination requirement was void and unenforceable as the releases had been signed under duress (JA1000)—waiving their arguments about this claim as well. In any event, plaintiffs utterly failed to plead a procedural due process claim through this cause of action, or indeed any claim with this vague and unsupported allegation.

employment "is separate and distinct from an act of misconduct by a municipal employee," and it is only the latter to which "civil service protections would apply").

Plaintiffs mistakenly assert that noncompliance with the vaccination requirement equates to incompetence or misconduct for which disciplinary measures procedures are required. But their argument bears no weight against the sea of contrary precedent that makes clear that the COVID-19 vaccination requirement is a lawful condition of employment that can be enforced without the additional civil service protections involved in cases of incompetence or misconduct. To begin, this Court looks to opinions of state courts to determine questions of state law. *Casey v. Merck & Co.*, 653 F.3d 95, 100 (2d Cir. 2011); *see generally Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Here, an appellate-level state court has already resolved this exact issue—in the exact same way as the district court did. *See Matter of Clarke v. Board of Educ. of the City Sch. Dist. of the City of N.Y.*, 213 A.D.3d 548, 550 (1st Dep't 2023); *Matter of O'Reilly v. Board of Educ. of the City Sch. Dist. of the City of N.Y.*, 213 A.D.3d 560, 566 (1st Dep't 2023). And, as the court below recognized, nearly all courts—state or federal—to address this issue have

come to the same conclusion and found COVID-19 vaccination requirements to be a lawful condition of employment. *See, e.g.*, *We the Patriots USA*, 17 F.4th at 294; *Garland*, 574 F. Supp. 3d at 129; *Kane v. De Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022).[16]

The district court's conclusion that a job requirement, like being vaccinated, is not disciplinary and therefore does not trigger the additional disciplinary procedures under Education Law § 3020-a is also well-supported by caselaw outside the vaccine context. *See, e.g.*, *Matter of Koutros v. Dep't of Educ. of City of N.Y.*, 129 A.D.3d 434, 435 (1st Dep't 2015); *O'Connor v. Board of Education*, 48 A.D.3d 1254 (4th Dept. 2008) (affirming teachers' terminations due to failure to maintain residency without a hearing as it was not a disciplinary matter and therefore was outside the scope of § 3020-a).

The courts' near-universal understanding that the vaccination requirement is a lawful condition of employment—that does not trigger the procedural protections of these statutes—makes perfect sense. Each

---

[16] Indeed, the only contrary precedent is a single trial-level decision in state court that is no longer good law in light of the Appellate Division's decisions in *Clarke* and *O'Reilly*. *Garvey v. City of New York*, 77 Misc. 3d 585, 598 (Sup. Ct., Richmond Cnty. Oct. 24, 2022).

41

of the arbitration awards expressly states that the consequences of noncompliance "shall not be considered a disciplinary action for any purpose" (JA596). That goes to the heart of plaintiffs' contentions on appeal—because the consequences of noncompliance were non-disciplinary, none of the protections for disciplinary proceedings, like § 3020-a hearings, were required over and above the pre- and post-deprivation process already provided to plaintiffs.

Second, plaintiffs' assertions that the arbitration awards were entered into in the absence of statutory or contractual authority pursuant to Civil Service Law § 209(3)(f) (App. Br. 37) are also plainly incorrect since that provision refers to a different mechanism for resolving disputes between a public employer and the union representing its employees. Section 209(3)(e) requires a legislative body to conduct a public hearing only if, after an appointment of a mediator, an impasse continues, the dispute remains unresolved, and either the public employer or the union does not accept the recommendations of a fact-finding board. In short, the steps provided for in this section were not triggered, as no fact-finding board was ever appointed, given that the impasse was resolved with the Impact Award. Section 209(3)(f), read in conjunction with the previous

section, provides that the requirement to conduct a public hearing does not apply when the public employer is a school district. Rather than aid plaintiffs' arguments, this statute makes clear that as to school districts—unlike other public employers—there is no obligation for a legislative body to conduct a public hearing or take actions regarding a fact-finding report (*see* JA1695-97).

In support of their argument that there was no authority to arbitrate the impasse in the negotiations over the impact of the vaccination requirement, plaintiffs cite *Board of Education of City School Dist. v. New York State Public Employment Relations Board*, 75 N.Y.2d 660, 671 (1990). But, if anything, that case supports DOE's, the unions', and Scheinman's authority here. There, in a case involving an impasse arbitration, the New York Court of Appeals, in comparing subsections (e) and (f) of Civil Service Law § 209(3), merely noted that it ascribed no significance to the fact that subsection (f) does not require the legislature to play a role in impasse negotiations for school districts. *Id*. Exactly as defendants argued here.

Of course, that the statute does not require legislative action has no bearing here on plaintiffs' ultimate argument that the arbitration

43

awards were negotiated without statutory authority. As explained above, the awards were the result of a voluntary agreement between DOE and the unions to arbitrate their disagreements about the impact of the Health Commissioner's Order pursuant to New York Civil Service Law § 209(3)(a).

To the extent that plaintiffs challenge the creation of a new condition of employment as the result of negotiations and arbitration awards, that argument can be easily rejected: the arbitration awards derived from the unions' invocation of the Public Employment Relations Board's authority to resolve an issue—like a new condition of employment—that is not "expressly provided for in the parties' agreement" pursuant to Civil Service Law § 209. *Matter of Roma v. Ruffo*, 92 N.Y.2d 489, 494 (1998). The parties here thus turned to arbitration to "establish future rights" about "basic terms and conditions of employment not previously agreed upon." *Matter of City of Newburgh v. Newman*, 69 N.Y.2d 166, 170-71 (1987); *see also Matter of N.Y.C. Transit Auth. v. Transp. Workers Union of Am., Local 100*, 99 N.Y.2d 1, 8 (2002) (noting that arbitrations between employers and unions are "part and parcel of the collective bargaining process itself" (quotation marks

44

omitted)). Civil Service Law § 209 thus makes clear that, rather than exceeding DOE's authority, the arbitration awards were precisely within its authority, and no legislative action was required here.

Plaintiffs point to two other statutes—easily dispatched by the district court (SPA 94-95)—that they believe aid them (App. Br. 33, 35). They are mistaken. First, plaintiffs point to Education Law § 2573(9) to argue that a vote of the Board of Education is required before imposing a new condition of employment. But, read in context, that provision is exclusively tailored to requiring extra qualifications for the teaching force—only principals, supervisors, directors, and teachers—and so its language about the Board of Education "prescrib[ing] additional or higher qualifications" for those "employed in any such positions" merely allows the Board to require additional qualifications from its pedagogical staff as opposed to its non-pedagogical staff (*see* JA1476). It does not change DOE's ability to negotiate with unions new conditions of employment for the entire DOE staff.

Second, plaintiffs renew their arguments about Civil Service Law § 201(4), suggesting that somehow DOE had not negotiated with UFT and CSA in reaching this outcome (App. Br. 35-37; *see also* JA1424). But

45

the challenged awards are the direct result of negotiations between those entities. DOE thus fully complied with the Taylor Law in negotiating awards that provided DOE the ability to unilaterally separate non-compliant employees (*see* JA1476). These arguments do not throw the negotiated condition of employment—or the well-settled conclusion that such a condition of employment is lawful—into any doubt.

## POINT III

### PLAINTIFFS FAILED TO STATE PLAUSIBLE CONSPIRACY CLAIMS AGAINST DOE

Plaintiffs failed to allege a conspiracy cognizable under § 1983. To state such a claim, plaintiffs needed to allege (1) an agreement between two or more state actors, or a state actor and a private party, (2) to act in concert to inflict unconstitutional injury, and (3) an overt act in furtherance of that goal. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2022). But plaintiffs' repetitive and unspecific allegations that defendants "conspired" satisfied none of these three requirements.

First, as discussed above, the purported underlying constitutional violation—a violation of federal due process protections—was insufficiently alleged. Without an underlying constitutional violation,

plaintiffs' allegations of conspiracy lacked the "*sine qua non* of a § 1983 action." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

Second, plaintiffs' conspiracy claims allege that DOE conspired with the unions. But, by their nature, the unions stand in adversarial positions with respect to DOE. *Ciambriello*, 292 F.3d at 324. Given that plaintiffs' only allegations of conspiracy are devoid of factual support and entirely conclusory, the adversarial character of the relationship between DOE and the unions renders their allegations of concerted action implausible.

Third, plaintiffs failed to identify an overt act—providing no "specific instances of misconduct" whatsoever. *See Krug v. McNally*, 368 F. App'x 269, 270 (2d Cir. 2010). Plaintiffs' amended complaint suggested only that DOE and the unions conspired to violate their constitutional rights by agreeing to binding arbitration when they had no authority to do so. But plaintiffs provide no specific examples of inappropriate actions, meetings, or discussions, simply repeating their assertions that defendants conspired to deprive them of their constitutional rights with no further factual detail (*see, e.g.*, JA1001 (the arbitration award was "a form of kickback scheme")). Those repeated conclusory allegations are

47

exactly the type of "diffuse and expansive allegation[s]" that are insufficient to withstand a motion to dismiss. *Ciambriello*, 292 F.3d at 324-25; *see also Spear v. West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Having failed to meet any of the requirements to allege a conspiracy under § 1983, these causes of actions must be dismissed.

## POINT IV

## PLAINTIFFS' REMAINING ARGUMENTS ARE ALSO UNAVAILING

Plaintiffs' remaining arguments should be rejected. First, contrary to their contention (App. Br. 71), because their other claims were appropriately dismissed, their class allegations were also properly dismissed. *See Plumber & Steamfitters Local 773 Pension Fund, Boston Ret. Sys. v. Danske Bank A/S*, 11 F.4th 90, 101 (2d Cir. 2021) ("[A] plaintiff must state a claim in its own right to survive a motion to dismiss"). As the district court recognized, because all of plaintiffs' other claims failed to state a claim, their class allegations also must fail.

Second, any further opportunity to amend the complaint would be futile (*see* App. Br. 73). As the district court noted below, despite being provided the opportunity to do so, plaintiffs failed to cure the deficiencies in their initial complaint when they filed their amended complaint

(JA1914). That provides ample reason to deny this request. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (recognizing that leave to amend may be denied for "repeated failure to cure deficiencies by amendments previously allowed"); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). On appeal, plaintiffs cited no support for their assertion that, in this circumstance, they must be granted leave to try again to plead their claims. Especially here, where the district court provided two thorough decisions on plaintiffs' requests for preliminary injunctions— detailing the factual failings in plaintiffs' initial complaint and providing plaintiffs with the opportunity to fix those failings—and plaintiffs did not identify (and still have not identified) anything they would include in a new complaint to address those failings (*see* JA1492), the court was not required to grant plaintiffs a third bite of the apple.

Third, and finally, plaintiffs' last-ditch effort, requesting remand to a different district judge (App. Br. 74), should also be rejected. Although this Court has the power to remand a case to a different judge, such reassignment occurs only when the facts "might reasonably cause an objective observer to question the judge's impartiality." *Pescatore v. Pan*

*Am. World Airways*, Inc., 97 F.3d 1, 21 (2d Cir. 1996). No such facts are present here.

Plaintiffs point only to the district court's appropriate dismissal of their requests for declaratory relief as evidence of impartiality (App. Br. 75). But an adverse ruling on the merits cannot be the basis for a showing of impartiality. That plaintiffs' only support for this request is the district court's well-reasoned legal analysis reveals how misguided the request is. Indeed, the facts here are nothing like those cases where this Court has remanded a case to a different judge. *See, e.g.*, *United States v. Djibo*, 730 Fed. App'x 52, 61 (2d Cir. 2018) (directing reassignment in light of "the district court's repeated denials of and failures to respond to requests for CJA resources, its granting a mere one-day adjournment of trial for defense counsel to review and translate voluminous and possibly key exculpatory evidence, and the multiple irregularities in the sentencing process"); *United States v. City of New York*, 717 F.3d 72, 100 (2d Cir. 2013) ("[W]here, as here, a judge makes an unwarranted venture into fact-finding at a preliminary stage and brands a party's evidence as 'incredible' without hearing any witnesses, an objective observer would have a reasonable basis to question the judge's impartiality ...."). Without

50

that kind of inexplicable reasoning by the district court here, even if this Court found remand appropriate, there would be no issue sending this matter back to the same district court judge.

## CONCLUSION

This Court should affirm.

Dated:  New York, NY
July 10, 2023

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for the City Appellees

By: _____
CHLOE K. MOON
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-2611
cmoon@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
CHLOE K. MOON
*of Counsel*

52

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 10,021 words, not including the table of contents, table of authorities, this certificate, and the cover.

CHLOE K. MOON