# 23-655

## In the
## United States Court of Appeals
### For the Second Circuit

◆

NICOLE BROECKER, MICHELLE MARTINO, GINA PORCELLO, AMOURA
BRYAN, RENA GELLMAN, FONTINA LAMBOS, KERRY BEN-JACOB,
EKATERINA UDINA, ANDREA TICHIO, MARIANNA CIACCA-LISS, ANITA
QUASH, KELLY DIXON, FELICIA HAGAN, MARITZA ROMERO, MARIA
RUSCELLI, BETZIADA CRUZ, FRANCINE TRAPANI, JEANNINE LAM, JESSICA
NARCISO, BRIANNA PEREZ, NICOLETTA MASULLO, ANASTASIA
CHRISTOPOULOS, FAYE KOTZER, BENEDICT LOPARRINO, YADITZA
RODRIGUEZ, RAFAEL TORO, SERINA MENDEZ, DINA HUSSEIN, HERENDYRA
PEREYRA, ROSA ABREU, LISA WILLIAMS, JOAN GIAMMARINO,

*Plaintiffs-Appellants,*

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040
agraff@scherlawfirm.com

APPELLATE INNOVATIONS
(914) 948-2240

19680

————————————————

ANDREA JACKSON, MARIA KLAPAKIS, STELLA PORTO, TONIANN
MIRAGLIA, ROSEANNA SILVERSTRI INCANTALUPO, JULIA MAVIS,
CHRISTOPHER HANSEN, ANNETTE BACKOF, DIANE PAGEN, LYNN PEPE,
STEPHANIE EDMONDS, YVONNE COSTELLO, DEBBIE HARTZ, SORAYA
SANCHEZ, MONIQUE MOORE, ANGELA VELEZ, SALLY MUSSAFI, JESSICA
NICCHIO, DORCA GENAO, RACHEL MANISCALCO, JAMES HOFFMAN,
SHARLAYNE JACOBS, CRYSTAL SALAS, FRANCES DIPROSSIMO, CAROLA
MARTINEZ-VANBOKKEM, AYSE USTARES, ELIZABETH FIGUEROA, DIANNE
BAKER-PACIUS, NICOLE MOORE, ELIZABETH PLACENCIO, DEBBIE
BERTRAM, KIMBERLI MADDEN, FRAN SCHMITTER, VICTORIA RUSSO, PAUL
CIFARELLI, DANIELLE HEAL, SARA COOMBS-MORENO, LISA SIMO, TAMI
BENEDUCE, ZABDIEL VALERA, NATHALIE CHARLES, JANELLE LOTITO,
JEANEAN SANCHEZ, MARIE MOSLEY, TARA PALLADINO,
DANIELLE MCGUIRE, JULIA HARDING, LEAH KUKLA, STEPHANIE
FRANZESE, JULIA BLASIS-MARING, BETH SCHIANO, LAURA SALAMONE,
AURA MOODY, AUBREY JOERGENS, MEAGAN VELEZ, JENNIFER
ZACCARIELLO, RICHARD JOSEPH, ELIZABETH LOIACONO, LORRAINE
MASCIARELLI, DEIDRA STATUTO, ELENI GERASIMOU and
HENRIETTA SHAYA,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, MEISHA PORTER,
UNITED FEDERATION OF TEACHERS, LOCAL 2, AMERICAN FEDERATION
OF TEACHERS, AFL-CIO, MICHAEL MULGREW, COUNCIL OF SUPERVISORS
AND ADMINISTRATORS, MARK CANNIZZARO, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, HENRY GARRIDO, SHAUN D. FRANCOIS, I,
FRANCINE FRANCIS, MARTIN F. SCHEINMAN, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES, LLC, SCHEINMAN
ARBITRATION AND MEDIATION SERVICES, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 372, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 1251,

*Defendants-Appellees.*

————————————————

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................ iii

PRELIMINARY STATEMENT ........................................................ 1

    A.       Response To The DC37 Defendants' Arguments ................................... 4

    B.       Response To UFT Defendants' And CSA Defendants' Arguments ................................................ 8

      1.   UFT Conspired With the NYCDOE Relating To The UFT Arbitration Award ...................................... 8

      2.   CSA Defendants Similarly Conspired With The NYCDOE Relating To The CSA Arbitration Award ................... 12

    C.       Response TO NYCDOE's Arguments ........................................ 13

    D.       Response To Scheinman Defendants' Arguments ................................ 18

POINT I.    PLAINTIFFS' STANDING TO CHALLENGE THE ARBITRATION AWARDS ...................................... 20

    A.       Plaintiffs Have Standing Because The Arbitration Awards Are Evidence Of The 42 U.S.C. § 1983 Conspiracy And The Plaintiffs Are Not Seeking To Challenge The Outcome Of the Awards ................................ 20

    B.       The UFT And The CSA Could Not Waive The Plaintiffs' Constitutional Rights And The Awards Did Not Waive The Plaintiffs' Rights ..................... 22

POINT II.   THE DEFENDANTS AGREE THAT THE DISTRICT COURT ERRED IN ITS ANALYSIS REGARDING THE PLAINTIFFS' CAUSES OF ACTION SEEKING DECLARATORY JUDGMENT ...................................... 24

POINT III.   THE     PLAINTIFFS     HAVE     STATED     A
              PLAUSIBLE  CLAIM  FOR  A  VIOLATION  OF
              THE    PLAINTIFFS'    PROCEDURAL    DUE
              PROCESS RIGHTS ................................................................. 25

   A.        Private  Interests  Affected  By  Official  Action  Was
              Enormous ............................................................................. 28

   B.        The  Risk  Of  An  Erroneous  Deprivation  Of  Such
              Interest Through The Procedures Used, And The
              Probable Value, If Any, Of Additional Or Substitute
              Procedural Safeguards ..................................................... 30

   C.        The Government's Interest, Including The Function
              Involved  And  The  Fiscal  And  Administrative
              Burdens  That  The  Additional  Or  Substitute
              Procedural Requirement Would Entail ....................................... 32

POINT IV.   THE     PLAINTIFFS     HAVE     STATED     A
              PLAUSIBLE        CLAIM        FOR
              COLLUSION/CONSPIRACY PURSUANT TO 42
              U.S.C. § 1983 .................................................................... 35

CONCLUSION ............................................................................................. 38

CERTIFICATE  OF  COMPLIANCE  WITH  TYPE-VOLUME
              LIMITATION,   TYPEFACE   REQUIREMENTS
              AND TYPE STYLE REQUIREMENTS ................................ 39

# TABLE OF AUTHORITIES

## Cases

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) ........................................ 23

*Abramovich v. Bd. of Educ.*, 46 N.Y.2d 450, 455 (1979)...................................... 22

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) ............................ 25

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ................................................... 31

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................................... 2

*Barrentine v. Arkansas-Best Frgt. Sys.*, 450 U.S. 728, 744 (1981) ................................................................................................................. 23

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir 2021) .............................................................................................................. 29

*Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir 2002) .......................................................................................................... 21, 24

*Coles v. Erie County*, 629 F.App'x 41, 42 (2d Cir 2015) .................................... 17

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)........................................................ 7

*Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016).................................................................................................. 23

*Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir 1995) ................................................. 26

*Hellenic Am. Neighborhood Action Comm. v. City of NY*, 101 F.3d 877, 880 (2d Cir 1996)................................................................................. 32

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir 2021) .............................................................................................................. 1

*Laboy v. Seabrook*, 1996 US Dist LEXIS 10452, at *6 (S.D.N.Y. 1996)................................................................................................... 7

*Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir 1998)...................................... 16

*Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir 2020) ................................................ 33

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) .............................. 15

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)........................................ 25, 27, 29

*New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.,* Eastern District of New York, Docket Number 2022-cv-00752............................................................................................. 15

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir 1999) ...................................... 35

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ...................................................................................................... 15

*Rivera-Powell v. NY City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir 2006) ............................................................................................ 26

*Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. Mar. 12, 2007) ....................................................................... 7

*Ryan v Illinois Dept. of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir 1999)........................................................................................ 16

*Sullivan v. Bd. of Educ. of the City Sch. Dist. of the City of NY*, 2023 NY Slip Op 31669[U] (Sup. Ct., N.Y. County 2023) .................................. 25

*Town of Southampton v. NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513 (2004) ......................................................................................................11

*Wagner v. City of Memphis*, 971 F.Supp. 308, 318-319 (W.D. Tenn 1997) ....................................................................................................... 16

*Ward v Monroeville*, 409 U.S. 57, 61-62 (1972)................................................... 16

*White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-1062 (2d Cir 1993) ............................................................................................... 25

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-81 (1998) ........................ 23

*Yu-Shih Chen v. Wharton*, 112 A.D.2d 636, 637-638 (3d Dept 1985) ................................................................................................. 22

**Statutes**

N.Y. Civil Service Law § 201.4. ........................................................................ 5

N.Y. Civil Service Law § 209.3(f) ...................................................................... 11

N.Y. Civil Service Law § 209.3. ......................................................................... 8

N.Y. CPLR § 7502 ......................................................................................... 9, 12

**Other Authorities**

https://abc7ny.com/new-york-back-to-school-vaccine-mandate-teachers-nyc-vaccination/10995266/ (visited July 17, 2023) ............................... 33

*https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/06/EricEichenholtz_Transcript.pdf* ................................................................................. 15, 30

https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (visited July 13, 2023) ............................................................................................. 33

https://www.reuters.com/lifestyle/sports/nyc-mayor-adams-lift-vaccine-mandate-pro-athletes-performers-2022-03-24 (visited July 13, 2023) ............................................................................................... 34

https://www.youtube.com/live/5xC1YlsQIpE?feature=share (visited July 10, 2023) ................................................................................. 10

# PRELIMINARY STATEMENT

This Reply Brief is submitted by the Plaintiffs-Appellants ("Plaintiffs") in response to the Briefs filed by: (1) the Defendants-Appellees District Council 37, AFSCME, AFL-CIO ("DC37"), Henry Garrido ("Garrido"), AFSME Local 372 ("Local 372") and Shaun Francois ("Francois") (collectively referred to as "DC37 Defendants"); (2) United Federation of Teachers ("UFT"), Michael Mulgrew ("Mulgrew") (collectively referred to as "UFT Defendants"); (3) Council of Supervisors and Administrators ("CSA"), Mark Cannizzaro ("Cannizzaro") (collectively referred to as "CSA Defendants"); (4) New York City Department of Education ("NYCDOE"), Meisha Porter ("Porter") (collectively referred to as "NYCDOE Defendants"); and (5) Martin F. Scheinman ("Scheinman"), Scheinman Arbitration and Mediation Services, LLC ("SAMS LLC"), Scheinman Arbitration and Mediation Services ("SAMS") (collectively referred to as "Scheinman Defendants") (collectively referred to as "Defendants").

The standard of review on this appeal is whether the Plaintiff's Amended Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir 2021).

The Plaintiffs do not have to prove the underlying allegations asserted in their causes of action on this Motion to Dismiss. The question is plausibility, which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … [Plausibility] is more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The District Court, instead of examining the Plaintiffs' allegations and causes of action on the lower standard of a Motion to Dismiss, examined the Plaintiffs' allegations as it did when denying the Plaintiffs' two Motions for Preliminary Injunctions

> under the higher pleading standard and found twice that Plaintiffs had failed to demonstrate a "clear" or "substantial" likelihood of success on the merits of their procedural due process claims, rather than merely a likelihood of success …. [And used] the legal analysis in the November 24, 2021 and February 12, 2022 Orders denying a preliminary injunction [which] addresses most of the issues presented by Defendants' motions to dismiss, specifically the sufficiency of Plaintiffs' allegations.

JA-1897.

The District Court placed a higher burden on the Plaintiffs in the Motions to Dismiss than a plausibility standard. The District Court's clear or substantial likelihood of success on the merits' standard was an erroneous standard.

The Defendants, likewise in their Briefs ignore the plausibility standard and instead have this Court rule that, as a matter of law, the Plaintiffs have no claims. However, the Plaintiffs have not had the opportunity to conduct discovery to determine the validity of the Defendants' arguments and factual assertions in opposition to the Plaintiffs' arguments and allegations.

The Defendants have not filed Motions for Summary Judgment, but Motions to Dismiss and the Plaintiffs have plausibly pled sufficient allegations to set forth causes of action against each of the Defendants. The lower standard of plausibility and not a higher standard of likelihood of success should be applied to the allegations set forth in the Plaintiffs' Amended Complaint.

Accordingly, when the District Court used the wrong standard to determine the Defendants' Motions to Dismiss, the District erred and this Court should now reverse.

### A.    Response To The DC37 Defendants' Arguments

The DC37 Defendants entered into a written agreement with the NYCDOE that allowed the NYCDOE to suspend DC37's members without pay and without the due process enjoyed under DC37's collective bargaining agreement with the NYCDOE and ultimately terminate DC37's members without that same due process ("DC37 Agreement" (JA-617-JA-623)), despite the fact the DC37 Defendants did not seek nor obtain ratification of the DC37 Agreement by the members of DC37.[1]

While the DC37 Defendants argue that no ratification was required by the members of DC37 (Docket Entry No. 104, at page 10-11), the DC37 Agreement radically changed the terms and conditions of DC37's members' employment with the NYCDOE and infringed upon and violated DC37's members' constitutional rights.  While the DC37 Defendants argue that no ratification was required, the DC37 Defendants do not support its argument with any proof.  The DC37 Defendants do not identify any authority for DC37 to enter into an agreement with the NYCDOE of such importance and of such a sweeping and fundamental change to the rights of

---

[1] The Scheinman Defendants, repeatedly, argue that Scheinman issued an arbitration award resolving DC37's impasse with the NYCDOE.  *See,* Docket Entry No. 99, at pages 3 and 10.

DC37's members without membership ratification. The absence of ratification raises serious questions regarding the enforceability of the DC37 Agreement.

Without the DC37 Agreement, the NYCDOE could not create the COVID-19 vaccine as a condition of employment. *See,* N.Y. Civil Service Law § 201.4. If the DC37 Agreement did not exist, the NYCDOE could not have suspended without pay and terminate, without due process, the Plaintiffs-members of DC37 who failed to take a COVID-19 vaccine.

Finally, DC37 argues that it and the NYCDOE were adversarial in their negotiations over the implementation of the COVID-19 vaccine mandate and therefore they could not have conspired with the NYCDOE to violate the Plaintiffs due process rights and violate the Plaintiffs' property right interest in their pay. However, the language of the DC37 Agreement reveals that the DC37 Defendants agreed to violate the Plaintiffs' due process rights and violate the Plaintiffs' property right interest in their pay by authorizing the NYCDOE to suspend without pay those DC37 members who did not take the COVID-19 vaccine. JA-620, at II.A.

The DC37 Defendants also authorized the NYCDOE to terminate DC37 members without due process because the member did not take the COVID-19 vaccine.  JA-622, at III.C.

As the UFT told the Public Employment Relations Board ("PERB"): "the City's extreme plan to place educators on involuntary leave violates statutory and related contractual disciplinary provisions, and strips teachers of their core due process rights as public employees."  JA-753.

The DC37 Defendants just kowtowed and agreed to "the City's extreme plan". JA-620, at II.A.; JA-622, at III.C.

If the DC37 Defendants were truly adversarial to the NYCDOE's "extreme plan", which, as the UFT told PERB: "eviscerates the due process and collective bargaining rights of educators who could lose their livelihoods, health benefits and pensions, and disregards those who for whom vaccination is medically contraindicated or violates a sincerely-held religious belief of employees", then the DC37 Defendants would not have agreed to the DC37 Agreement.  JA-748.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. Mar. 12, 2007) stated, a union "could be liable to Plaintiff under section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The Plaintiffs have stated a plausible claim for conspiracy against the DC37 Defendants who unquestionably agreed to deprive Plaintiffs-DC37 members of their constitutional rights. *See also, Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

What is a better example of a joint action than a written and executed agreement, like the DC37 Agreement (JA-622-JA-6233) to establish that the DC37 Defendants were willful participants and were involved in joint action. *See, Laboy v. Seabrook*, 1996 US Dist LEXIS 10452, at *6 (S.D.N.Y. 1996) (holding "Absent some concert of action between a union and the state, a union's actions do not constitute state action for the purposes of the First, Fifth and Fourteenth Amendments.").

Accordingly, the Plaintiffs have set forth a plausible claim for conspiracy between the NYCDOE and the DC37 Defendants in violation of 42 U.S.C. § 1983.

7

The DC37 Defendants' Motion to Dismiss should not have been granted.  This Court

should now reverse.

**B.     Response To UFT Defendants' And CSA Defendants' Arguments**

1.     UFT Conspired With the NYCDOE Relating To The UFT
        Arbitration Award

There can be no dispute that on September 1, 2021, the UFT and the

NYCDOE were at impasse over the implementation of the COVID-19 Vaccine

Mandate ("Mandate").  JA-745-JA-760.

Once the UFT declared impasse (JA-745), it triggered a statutory process by

which the impasse can be resolved.  *See,* N.Y. Civil Service Law § 209.3.

PERB took the first step in that process when it appointed Scheinman as the

mediator to mediate the impasse (not as an arbitrator).  JA-783.

However, at the time the UFT Defendants conspired with the NYCDOE to

agree to have Scheinman arbitrate the outcome of the impasse, it was at a time when

"the first day of school was fast approaching" and the UFT was "under significant

time pressure to resolve pay and personnel policy implantation vis-a-vis the Mandate". Docket Entry No. 89, at page 21, footnote 17.

But the time pressure was imposed by the NYCDOE and the UFT had no obligation nor was it compulsory for the UFT to agree to the "City's extreme plan to place educators on involuntary leave violat[ing] statutory and related contractual disciplinary provisions, and strip[ping] teachers of their core due process rights as public employees." JA-753.

But that is what the UFT actually did when it failed to challenge the UFT Arbitration Award in New York State Courts through a N.Y. Civil Service Law Article 75 proceeding. *See,* N.Y. CPLR § 7502.

While the UFT makes it seem like it was adversarial to the NYCDOE, the direct evidence of the UFT's conspiracy and collusion with the NYCDOE to violate the Plaintiff's constitutional rights to due process and their property right in their pay can be seen from the UFT's malfeasance and nonfeasance.

First, in agreeing to arbitrate the impasse in negotiations (JA-784), which is nowhere authorized by N.Y. Civil Service Law § 209 or the cases interpreting the

statute. In fact, while the UFT makes a public policy argument why it should be permitted to arbitrate an impasse in negotiations, it does not cite: (a) any other situation when the UFT arbitrated over an impasse in negotiations; or (b) to any other arbitrated resolution in a school district context of an impasse in negotiations. The UFT has reached impasse in negotiations with the NYCDOE in the past and instead of arbitrating, it resolved the matter at the bargaining table as required by N.Y. Civil Service Law § 209.3.(f). *See,* https://www.youtube.com/live/5xC1YlsQIpE?feature=share (visited July 10, 2023).

Finally, the UFT told PERB that "[t]he implementation of a vaccination protocol must be negotiated." JA-748. Yet, the UFT did not negotiate the implementation, but yielded its authority, power, and control over the outcome of the vaccination protocol to an arbitrator who imposed the NYCDOE's "extreme plan". JA-753.

Second, the UFT's utter failure to challenge the UFT Arbitration Award in New York State Supreme Court reveals the collusion and conspiracy. Before the UFT Arbitration Award was issued, the UFT called the NYCDOE's bargaining position an "extreme plan". JA-753. The UFT stated to PERB that

> [a]ll unvaccinated teachers who are placed on unpaid leave
> will be effectively suspended without pay without any of
> the due process protections codified in the State Education
> Law as well as the parties' collective bargaining
> agreement. These suspensions will also impact employee's
> pension rights and ability to accrue time, vest and/or retire
> as planned.

JA-753.

Yet, the UFT Arbitration Award did exactly what the UFT said violated the unvaccinated teachers' rights. But the UFT did nothing to challenge the Award.

Finally, the UFT relies upon the case of *Town of Southampton v. NY State Pub. Empl. Rels. Bd.*, 2 N.Y.3d 513 (2004) to support its argument that it had the authority to agree to arbitration to resolve the impasse in negotiations, but *Town of Southampton* involved the Town's collective bargaining agreement with the Police Benevolent Association of Southampton Town, Inc. and was not regarding school district negotiations.

The statute addressed in *Town of Southampton* does not apply to the NYCDOE since "where the public employer is a school district" there is no interest arbitration and no compulsory and binding arbitration to resolve an impasse in collective negotiations. N.Y. Civil Service Law § 209.3(f).

11

The Plaintiffs have pled sufficient facts that plausibly state a conspiracy between the UFT Defendants and the NYCDOE Defendants relating to the UFT Arbitration Award. Accordingly, the District Court erred when it dismissed the Plaintiffs' claims against the UFT Defendants and this Court should now reverse.

      2.    <u>CSA Defendants Similarly Conspired With The NYCDOE Relating To The CSA Arbitration Award</u>

The CSA Arbitration Award states that once the UFT Arbitration Award was issued, the CSA and the City reached out to Scheinman to impose the vaccination protocol as he did with respect to the UFT. JA-604.

Just like the UFT, the CSA agreed to resolve its impasse in negotiations over the vaccine protocols through arbitration, which is nowhere authorized by N.Y. Civil Service Law § 209. In addition, the CSA did not challenge the CSA Arbitration Award in New York State Court pursuant to CPLR article 75. *See,* N.Y. CPLR § 7502.

The CSA conspired with the NYCDOE to have Scheinman impose an outcome that he had no legal authority to do since the only way for a school district

and its public employees' union to resolve an impasse is through bargaining at the bargaining table.

The District Court erred when it dismissed the Plaintiffs' conspiracy cause of action against the CSA Defendants. Accordingly, this Court should now reverse.

## C.     Response TO NYCDOE's Arguments

The NYCDOE colluded with its public employee unions to implement the Mandate in a manner that "violate[d] statutory and related contractual disciplinary provisions, and strip[ped] teachers of their core due process rights as public employees." JA-753.

The NYCDOE relies heavily in opposition to the Plaintiffs' Brief on the argument that there was a procedure to seek an accommodation. However, the NYCDOE ignores that some of the Plaintiffs, did not have a medical or religious objection to the vaccine and therefore, for those Plaintiffs there was no due process before they were suspended without pay. In light of the NYCDOE's argument, an examination of the "due process" is necessary and upon review, it reveals that the process was a sham process.

The nature of the sham process can be shown from three well-documented examples:

First, the NYCDOE made it clear to the UFT that

> there can be no exceptions to the mandate – medical, religious or otherwise. In the latest bargaining session held on August 30, 2021, the City detailed how far the new policy goes in punishing teachers who may, through no fault of their own, be unable to take the vaccine.
>
> … Educators who have a legitimate religious exemption will also not be accommodated and will not even be permitted to use accrued sick time. They will be limited to other accrued time (according to the BOE, because they are not sick) and then also stripped of pay and benefits. Those who choose not to vaccinate for other sincerely held reasons will be placed on immediate unpaid leave without health insurance for an indeterminate period of time.

JA-752.

While the UFT Arbitration Award, the CSA Arbitration Award, and the DC37 Agreement (collectively referred to as "Awards") granted the Plaintiffs an opportunity to seek accommodations for religious or medical reasons (JA-589-JA-596, JA-605-JA-612, and JA-617-JA-620), in reality, the NYCDOE's stated clear policy was that there were no exceptions to the Mandate. JA-752.

14

Second, in reality, very few accommodation requests were actually granted.
In *New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.,*
Eastern District of New York, Docket Number 2022-cv-00752, New York City's
("NYC") witness testified that out of roughly 3,200 accommodation requests that
were processed by the Citywide Panel that reviewed accommodation requests to the
City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious
reasonable accommodation requests. *See, https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/06/EricEichenholtz_Transcript.pdf,*
deposition transcript of Eric Eichenholtz, dated May 24, 2022, at page 32, line 8
through page 33, line 5 (visited on July 17, 2023).[2] Not only did the NYCDOE tell
the UFT that there would be no exceptions to the Mandate, more than ninety-six
percent (96%) of the requests were denied. The accommodation protocol ("due
process" process) was a sham.

Third and most significantly, the people deciding the accommodation requests
were the Scheinman Defendants (JA-593, JA-608-JA-609, and JA-619) and
Scheinman was Mayor DeBlasio's fundraiser. Scheinman was not a neutral arbiter.
As a result, the people deciding on the accommodation requests were not neutral nor

---

[2] The Plaintiff asks the Court to take judicial notice of this document. *See, Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

detached. *See, Ward v Monroeville*, 409 U.S. 57, 61-62 (1972) (holding "Petitioner is entitled to a neutral and detached judge in the first instance."). The fact that the Scheinman Defendants were political supporters of Mayor DeBlasio, the person who imposed the Mandate and whose employees told the UFT that there would be no exceptions, reveals that the accommodation regime was a sham.

In *Ryan v Illinois Dept. of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir 1999), the Court held: "[a] plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim."

In *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir 1998), the Court held:

> his allegations that the procedures used were inadequate and biased were also enough to survive a motion to dismiss. Levenstein had notice of the charges and understood the evidence against him, but when the procedures used to investigate the charges are a sham through and through, there has not been a constitutionally sufficient opportunity to respond.

In *Wagner v. City of Memphis*, 971 F.Supp. 308, 318-319 (W.D. Tenn 1997) (internal citation omitted), the Court held:

16

it is clear that when the evidence establishes that the outcome of a municipal employee's pre-termination hearing has been predetermined regardless of the proof presented, the concerns and goals of the pre-termination hearing as set forth in *Loudermill* have not been met. In such cases, there is no meaningful opportunity to invoke the decision maker's discretion, and there is no possibility that a mistaken decision can be avoided. In sum, such a hearing does not fulfill its function as enunciated in *Loudermill* and *Duchesne* and is, in fact, nothing more than a sham proceeding. Such a proceeding, if countenanced by the Court, would eviscerate the protections afforded to municipal employees under the Due Process Clause of the Fourteenth Amendment.

Here, very few people who submitted requests for accommodations had their accommodations actually granted, indicating that the pre-termination process was a sham through and through and therefore was not constitutionally sufficient to provide the Plaintiffs' due process.

In addition, some of the Plaintiffs did not have a medical or religious objection and therefore their objections were never heard.

This Court in *Coles v. Erie County*, 629 F.App'x 41, 42 (2d Cir 2015) held "the question in a § 1983 suit claiming deprivation of a property interest without due process is not whether state procedural law was correctly followed or applied, but

whether the process actually provided satisfies the requirements imposed by the Constitution."

The Plaintiffs have stated plausible claims that the accommodation regiment, the pre-deprivation process relied upon by the NYCDOE as created in the Awards, was a sham.

As a result, the Plaintiffs have stated a plausible claim, pursuant to 42 U.S.C. § 1983, that the Plaintiffs' due process rights were violated when the NYCDOE suspended the Plaintiffs without pay and without due process and terminated the Plaintiffs without due process.

**D.    Response To Scheinman Defendants' Arguments**

Scheinman does not identify a single time when he or the Scheinman Defendants acted as an arbitrator to resolve an impasse in negotiations between a school district and its public employees' union.  The reason is that he cannot do so because it never happened.  While the Scheinman Defendants argue that arbitration was permissible, the Scheinman Defendants ignore the PERB decisions that require resolution of impasse in school district negotiations at the bargaining table.  The

Scheinman Defendants' interpretation of N.Y. Civil Service Law § 209.3(f) is not supported by PERB's decisions.

The Scheinman Defendants also argue that Scheinman has arbitrator immunity, but the Scheinman Defendants ignore the fact that in the Awards (JA-593, JA-608-JA-609, and JA-619) Scheinman included his company, SAMS, as the sole arbiter of the appeals of any denials of accommodation requests, creating a lucrative financial pipeline for him and his companies. The Scheinman Defendants became heavily involved and responsible for determining the outcome of the accommodation requests, which the NYCDOE relies upon as the "due process" granted to the Plaintiffs, pre-deprivation.

Scheinman and the Scheinman Defendants placed themselves as the appellate panel, which goes beyond the scope of the initial "agreement" to resolve the impasse in negotiations over the impact of the Mandate. JA-784.

Scheinman's inclusion of SAMS as the appellate panel created a financial windfall for him and his companies that defeats any claim for arbitrator immunity because the Scheinman Defendants were active participants in the pre-deprivation "due process" the NYCDOE argues it granted to the Plaintiffs.

19

Scheinman did not only issue the UFT Arbitration Award and the CSA Arbitration Award (and may have been involved in the DC37 Agreement), but was a cog in the due process system. Arbitrator immunity does not apply to the Scheinman Defendants.

The Plaintiffs have stated a plausible claim against the Scheinman Defendants that they conspired with the NYCDOE, UFT, and the CSA to violate the Plaintiffs' due process rights and infringe upon the Plaintiffs' property rights in their pay.

\*\*\*\*\*\*\*\*\*\*\*\*

This Court should reverse the District Court and remand this matter to a new Judge of the District Court.

**POINT I. PLAINTIFFS' STANDING TO CHALLENGE THE ARBITRATION AWARDS**

**A. Plaintiffs Have Standing Because The Arbitration Awards Are Evidence Of The 42 U.S.C. § 1983 Conspiracy And The Plaintiffs Are Not Seeking To Challenge The Outcome Of the Awards**

Unlike what the Defendants argue, the Plaintiffs are not challenging the merits of the UFT Arbitration Award or the CSA Arbitration Award.

20

Instead, the Plaintiffs are using the lack of statutory and contractual authority for the UFT and the CSA to agree to binding arbitration to establish a 42 U.S.C. § 1983 conspiracy between the UFT and the NYCDOE and the CSA and the NYCDOE.[3]

The UFT Arbitration Award and the CSA Arbitration Award (collectively referred to as "Scheinman Awards") were the mechanism by which the NYCDOE had any arguments to implement the Mandate as it did (Docket Entry No. 98, at page 1), resulting in the violation of the Plaintiffs' due process rights and infringed upon the Plaintiffs' property rights in their pay.

The Plaintiffs have standing because the Awards were arrived at through a conspiracy between the NYCDOE and the UFT, the CSA and the NYCDOE, and DC37 and the NYCDOE.  *See, Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir 2002) (holding "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

---

[3] The Defendants argue that only if the Plaintiffs plead a breach of the UFT's and the CSA's duty of fair representation can the Plaintiffs have standing to challenge the Awards.  The Plaintiffs submitted Affidavits in support of their Motion for an Injunction that describes the breaches of the duty of fair representation.  JA-503-JA-509; JA-514-JA-519.

The Plaintiffs have more than a conclusory allegation that the UFT and the CSA acted in concert with the NYCDOE. The UFT and the CSA agreed to violate N.Y. Civil Service Law § 209.3.(f). JA-784; JA-604.

The Plaintiffs have standing to assert claims, pursuant to 42 U.S.C. § 1983, against the NYCDOE, the UFT, and the CSA for violating the Plaintiffs' constitutional rights to due process and their property right in their pay.

**B.      The UFT And The CSA Could Not Waive The Plaintiffs' Constitutional Rights And The Awards Did Not Waive The Plaintiffs' Rights**

Under New York State law a public employee who has a constitutional right to due process cannot waive that constitutional right unless the "waiver is freely, knowingly and openly arrived at, without taint of coercion or duress…." *Abramovich v. Bd. of Educ.*, 46 N.Y.2d 450, 455 (1979); *Yu-Shih Chen v. Wharton*, 112 A.D.2d 636, 637-638 (3d Dept 1985).

The Plaintiffs, as the Defendants clearly argued, were not parties to the Awards and therefore could not freely, knowingly, and openly waive their constitutional right to due process.

While a collective bargaining agreement between the employer and the employee's union can waive the employee's individual rights, the waiver must be clear and unmistakable. *See, 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009); *Barrentine v. Arkansas-Best Frgt. Sys.*, 450 U.S. 728, 744 (1981); *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-81 (1998); *Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016).

Nowhere in the Awards is there a clear and unequivocal waiver of the Plaintiffs' due process rights or property rights in their pay.

Without a clear and unmistakable waiver of a union members' constitutional rights and statutory rights in the collective bargaining agreement, the Plaintiffs cannot be barred from asserting that their individual constitutional rights were violated as a result of the Awards, and thus they have standing to protect their individual liberties in federal court despite the fact that the UFT and the NYCDOE and the CSA and the NYCDOE and DC37 and the NYCDOE conspired to violate the Plaintiffs' constitutional rights by acquiescing to the Award, which was procured in violation of N.Y. Civil Service Law § 209.

\*\*\*\*\*\*\*\*\*\*

23

Therefore, under a 42 U.S.C. § 1983 theory, the Plaintiffs have standing to assert claims against the NYCDOE, the UFT, and the CSA for violating the Plaintiffs' constitutional rights to due process and their property right in their pay. *See, Ciambriello v. County of Nassau*, 292 F.3d at 324.

**POINT II.  THE DEFENDANTS AGREE THAT THE DISTRICT COURT ERRED IN ITS ANALYSIS REGARDING THE PLAINTIFFS' CAUSES OF ACTION SEEKING DECLARATORY JUDGMENT**

The District Court did not analyze the Plaintiffs' causes of action seeking declaratory judgment, but summarily dismissed each of the causes of action. *See,* JA-1892.

The Defendants each argue that the Plaintiffs' causes of action seeking declaratory judgment fail, not because there is no cause of action for declaratory judgment, but because the underlying basis for the claims, 42 U.S.C. § 1983, fail.

However, as discussed at length in the Plaintiffs' Brief and in this Plaintiffs' Reply Brief, the underlying causes of action based upon 42 U.S.C. § 1983 should

have survived the Defendants' Motions to Dismiss.  As a result, the Plaintiffs' causes

of action seeking declaratory judgment should be reinstated on remand.[4]

## POINT III. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF THE PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS

"Procedural due process imposes constraints on governmental decisions

which deprive individuals of "liberty" or "property" interests within the meaning of

the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v.

Eldridge*, 424 U.S. 319, 332 (1976).

"In order to succeed on a claim of deprivation of procedural due process, a

plaintiff must establish that state action deprived him of a protected property or

liberty interest." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-1062

(2d Cir 1993).

---

[4] The Plaintiffs did not intend to waive any arguments relating to the Fifth Cause of Action regarding the enforceability of releases the Plaintiffs were forced to execute under duress.  JA-998-JA-1000.  In fact, before the District Court, the NYCDOE made no arguments that the cause of action should be dismissed.  The Fifth Cause of Action should be re-instated because the NYCDOE has used the release as a defense to one of the NYCDOE's employee's N.Y. CPLR article 78 proceedings, placing the validity and enforceability of the release at issue.  *See, Sullivan v. Bd. of Educ. of the City Sch. Dist. of the City of NY*, 2023 NY Slip Op 31669[U] (Sup. Ct., N.Y. County 2023).  There is a justiciable controversy.  *See, Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937).  When this Court reverses the District Court's ruling and remands this case to a different Judge of the District Court, the Court should also re-instate the Fifth Cause of Action.

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir 1995).

The Defendants do not dispute that the Plaintiffs were deprived of protected property interests in their pay by the NYCDOE, as a State actor, who suspended the Plaintiffs without pay.

The question, therefore, is whether the NYCDOE provided the Plaintiffs with due process prior to the NYCDOE suspending the Plaintiffs without pay. The Plaintiffs have plausibly pled that the NYCDOE did not provide the Plaintiff with constitutionally sufficient due process.

To determine the proper test for whether the NYCDOE provided the Plaintiffs with the constitutionally sufficient procedural due process, this Court in *Rivera-Powell v. NY City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir 2006) (internal citation omitted and internal quotation marks omitted) held:

> When the state conduct in question is random and
> unauthorized, the state satisfies procedural due process
> requirements so long as it provides meaningful post-
> deprivation remedy. In contrast, when the deprivation is
> pursuant to an established state procedure, the state can
> predict when it will occur and is in the position to provide
> a pre-deprivation hearing. Under those circumstances, the
> availability of post-deprivation procedures will not, *ipso
> facto*, satisfy due process.

In this situation, the NYCDOE implemented the Mandate through an

established procedure in the Awards.  The deprivation of the Plaintiffs' constitutional

rights was not done by a random, unauthorized employee of the NYCDOE, but it

was done based upon the terms of the "agreements" with the NYCDOE's public

employee unions.

As a result, post-deprivation procedures, like a N.Y. CPLR article 78

proceeding will not satisfy due process.  Instead, the Court must look to the test in

*Mathews v. Eldridge*, 424 U.S. at 334-335 (internal citations and quotation marks

omitted), in which the Court opined:

> [d]ue process, unlike some legal rules, is not a technical
> conception with a fixed content unrelated to time, place
> and circumstances.  [D]ue process is flexible and calls for
> such procedural protections as the particular situation
> demands. Accordingly, resolution of the issue whether the
> administrative procedures provided here are
> constitutionally sufficient requires analysis of the

27

governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The NYCDOE cannot meet the three distinct factor standards set forth in *Mathews*.

## A.      Private Interests Affected By Official Action Was Enormous

First, the Plaintiffs' private interests that were affected by the NYCDOE's decision to suspend the Plaintiffs without pay was enormous.

The Plaintiffs, many of whom were tenured teachers and administrators employed by the NYCDOE for decades were suspended without pay even before final determinations were made on their requests for accommodations.  In addition, many of the Plaintiffs did not have the opportunity to timely apply for accommodations because of the limited amount of time granted to them.

The NYCDOE stole the Plaintiffs' only source of income, only source of health insurance, livelihood, and destroyed them economically.

In the District Court, several Plaintiffs offered Affidavits to the District Court describing the personal interests and detriment suffered when the NYCDOE suspended them without pay. JA-1386-JA-1395. Yet, the District Court ignored the private interests implicated by the NYCDOE's suspension without pay of the Plaintiffs without due process.

"[T]he Mandate threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir 2021).

"[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process." *Mathews v. Eldridge*, 424 U.S. at 341.

The private interests of the Plaintiffs cannot be understated. The deprivation of the Plaintiffs' constitutional property right in their pay was abrogated by the NYCDOE's implementation of the Mandate.

The private interest element in the *Mathews* test weighs heavily in the Plaintiffs' favor.

**B.  The Risk Of An Erroneous Deprivation Of Such Interest Through The Procedures Used, And The Probable Value, If Any, Of Additional Or Substitute Procedural Safeguards**

Ninety-six percent of those who applied for accommodations were denied. *See,*  *https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/06/EricEichenholtz_Transcript.pdf,* at page 32, line 8 through page 33, line 5.  The procedures set forth in the Awards permitted the NYCDOE to implement its stated intent of no exceptions to the vaccine.  JA-752.

The statistical analysis of the "due process" procedure relied upon by the NYCDOE resulted in the erroneous deprivation of the Plaintiffs' highly valued private interests.  The procedure was a sham.  *See, supra*, pages 13-18.

Taking the UFT Arbitration Award as an example, the UFT Arbitration Award was issued on September 10, 2021 (JA-583).  Accommodation requests were due on September 20, 2021 (JA-590).  The NYCDOE was required to make a decision on all of the requests for accommodations on September 23, 2021 (JA-593) and any

appeals of those denials were to be decided by September 25, 2021 (JA-594). So, according to the UFT Arbitration Award, in a period of 15 days, the whole due process procedure was to be completed.

The Plaintiffs did not have an opportunity to be heard at a meaningful time and in a meaningful manner. Fifteen days between application and second appeal determination is not an opportunity to be heard sufficient to meet the constitutional minimum of due process. *See, Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal quotation marks and citation omitted) (holding "A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner.").

There was a better alternative. There could have been a slower process that allowed a real review of the Plaintiffs' accommodation requests and a determination by independent, third parties whether the Plaintiffs had medical or religious reasons for not complying with the Mandate to avoid the risk of erroneous deprivation.

The NYCDOE was relying upon a CPLR article 78 process to correct any erroneous denials. *See,* Docket Entry No. 98, at page 32. However, as this Court held in *Hellenic Am. Neighborhood Action Comm. v. City of NY*, 101 F.3d 877, 880

(2d Cir 1996), "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.".

The Plaintiffs' deprivation of their due process rights occurred as a result of established state procedure and not random acts. The availability of a CPLR article 78 procedure does not satisfy due process in this situation.

The whole accommodation regime was a masquerade because no due process was granted.

**C.    The Government's Interest, Including The Function Involved And The Fiscal And Administrative Burdens That The Additional Or Substitute Procedural Requirement Would Entail**

There can be no question that the NYCDOE and the City had a substantial interest in protecting the NYCDOE's employees, the students, and parents against COVID-19.

However, no other school district in New York, with the same substantial interest as the NYCDOE had in protecting employees, students, and parents

suspended unvaccinated employees without pay and terminated unvaccinated employees.

The NYCDOE does not explain why the NYCDOE's interest was different from any other school district in New York when it came to the conclusion that the protection of the employees, students, and parents compelled it to suspend without pay and terminate unvaccinated NYCDOE employees.[5]

As in the case of *Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir 2020), where the government's initial interest may have initially outweighed the individual's liberty interest, the prolonged suspension without pay violated due process.

In the Fall of 2021, the NYCDOE's interest to keep employees, students, and parents safe from COVID was substantial. By February 2022 (when the first set of terminations began (JA-1396)) and certainly by September 2022 (when those on leave without pay, but on health insurance (JA-600; JA-616; JA-622) were required

---

[5] School districts in New York required weekly testing for COVID to protect against COVID. *See,* https://abc7ny.com/new-york-back-to-school-vaccine-mandate-teachers-nyc-vaccination/10995266/ (visited July 17, 2023). Even the City recognized that a testing regiment was a reasonable accommodation and did not cause an undue hardship. *See,* https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (visited July 13, 2023). Yet, the NYCDOE in collusion with the UFT, CSA, and DC37 made the decision that suspending without pay and terminating unvaccinated employees was a better way to control the spread of COVID.

to return to be vaccinated or they would lose their job), the Plaintiffs' private interests outweighed the NYCDOE's interest to require the vaccine as a method to keep employees, students, and parents safe from COVID, and it was no longer a compelling interest.

In fact, a month after many of the Plaintiffs were terminated and three months before other Plaintiffs were terminated, on March 24, 2022, the Mayor lifted the vaccine mandate for professional athletes and performers in New York City. *See,* https://www.reuters.com/lifestyle/sports/nyc-mayor-adams-lift-vaccine-mandate-pro-athletes-performers-2022-03-24 (visited July 13, 2023). This reflects the shift, alluded to in *Lopez.*

By the time the NYCDOE terminated employees in February 2022 (JA-1396) and in September 2022 (JA-600; JA-616; JA-622) the Plaintiffs' private interests outweighed the government interest based upon the Mayor's own act. Accordingly, the NYCDOE loses on the third element of the *Mathews* standard.

\*\*\*\*\*\*\*\*\*\*

The question is whether the Plaintiffs' sacred constitutional rights outweighed the governments' substantial interests in protecting employees, students, and parents against COVID.

Whatever the answer is to that question (which should not be decided on a Motion to Dismiss), the Plaintiffs have pled a plausible claim for a violation of the Plaintiffs' constitutional right to due process and property interest in their pay. Accordingly, this Court should reverse the District Court's decision and remand this matter to a different Judge of the District Court.

**POINT IV.  THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR COLLUSION/CONSPIRACY PURSUANT TO 42 U.S.C. § 1983**

In *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir 1999) (internal citations and quotation marks omitted), this Court opined:

> To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. While conclusory allegations of a § 1983 conspiracy are insufficient, we have recognized that such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence.

35

The NYDOE is a state actor.  JA-977, at ¶ 121.

The Plaintiffs have set forth plausible claims that the Defendants conspired to violate the Defendants' constitutional rights.  JA-983-JA-984, at ¶¶ 166 through 176 (UFT and the NYCDOE); JA-984-JA-986, at ¶¶ 177 through 187 (CSA and the NYCDOE); JA-986-JA-989, at ¶¶ 188 through 220 (DC37 and the NYCDOE); JA-981-JA-982, at ¶¶ 155 through 159; JA-983-JA-984, at ¶¶166 through 176 (Scheinman, UFT, and the NYCDOE); JA-982-JA-983, at ¶¶ 162 and 163; JA-984-JA-985, at ¶¶ 177 through 187 (Scheinman, CSA, and the NYCDOE).

The UFT, CSA, DC37, and Scheinman argue that they are not state actors and therefore cannot be liable to the Plaintiffs for a violation of 42 U.S.C. § 1983.

The Plaintiffs are not arguing that the UFT Defendants, the CSA Defendants, the DC37 Defendants, and the Scheinman Defendants are liable to the Plaintiffs for violating the Plaintiffs' constitutional rights directly.  The Plaintiffs are arguing, and have plausibly pled, that the UFT Defendants, the CSA Defendants, the DC37 Defendants, and the Scheinman Defendants conspired with the NYCDOE to violate the Plaintiffs' constitutional rights either by: (1) agreeing to an illegal process and not seeking judicial review of the arbitration awards that implemented a process that

violated the Plaintiffs' constitutional rights (UFT and CSA); or (2) entering into an agreement that violated the Plaintiffs' constitutional rights (DC37); or (3) issuing arbitration awards that in fact violated the Plaintiffs' constitutional rights and then participated in the alleged due process that was a sham (Scheinman).

The Plaintiffs have not conducted any discovery, but have set forth plausible allegations of a conspiracy between the Defendants to violate the Plaintiffs' constitutional rights and therefore have stated a cause of action.

This Court should reverse the District's Court's dismissal of the Action and remand the case to a different Judge of the District Court.[6]

---

[6] If the Court believes that the Plaintiffs have not adequately pled their causes of action, the Plaintiffs seek permission to amend their Amended Complaint.

## CONCLUSION

For the reasons argued, this Court should reverse the dismissal by the District Court of this Action and remand this matter to a different Judge of the District Court.

Dated:     Garden City, New York
            July 21, 2023

Respectfully submitted,

/s/ Austin Graff
_____

Austin Graff
The Scher Law Firm, LLP
Attorneys for the Appellants
600 Old Country Road, Suite 440
Garden City, NY 11530
Tel. # (516) 746-5040

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. I certify that this brief complies with the type-volume limitation of Local Rule 32.1.(a)(4)(B) because:

   This brief contains 6,946 words.

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word, in Times New Roman, 14pt Font.

Dated:      July 21, 2023